## Claim Coversheet Report

| Find | Clear | Print | Save | New | Help |

Admin Notes | Claim | Class | Correspond | Doc List | Medical | SPELL Letters

Claim Number 8741789    Claim Last Updated 04/16/2020    Printed On 5/12/2020

### Claimant Information

| | | | | | |
|---|---|---|---|---|---|
| Name | VICKI COLLIER | SSN | ▮▮▮▮ | Birth Date | ▮▮▮▮ |
| Address | ▮▮▮▮ | Salary Amount $ | 11279.88 | Mode | M |
| | | Date of Hire | 06/18/2013 | | |
| | | Last Work Date | 05/14/2018 | | |
| | VALENCIA, CA 91354-0000 | Federal Tax | Employee Option | State Tax | No |
| Phone | | Phys Demands | Sedentary | | |

JobDesc SALES AGENT

| | | | | | |
|---|---|---|---|---|---|
| Claim Status | Denied | Status Reason | Not TD Own Occ | Received Date | 02/12/2019 |
| Disability Date | 05/15/2018 | Close Date | 05/15/2018 | Reopen Date | |
| Sick Days Left | 185 | Max Ben Date | 06/06/2030 | RTW FT / PT | |
| Ben Begin Date | 11/16/2018 | Apprv Thru Date | | Gross Ben $ | |

Diagnosis 1 Code/Desc S43.40    Unspecified sprain of shoulder joint

Diagnosis 2 Code/Desc

### Policyholder Information

| | | | |
|---|---|---|---|
| Customer ID | 06 - 444185 | AUTO CLUB OF SO CALIFORNIA | |
| Subsidiary | ACSC | AUTO CLUB SOUTHERN CALIFORNIA | |
| Location | ACSC0000 | AUTOMOBILE CLUB OF SOUTHERN CA | |

Symb GF    Numeral 01    Product LTD    Funding CON    Bank Y    Calcs Y    Cntr Eff 01/01/2014

Class 02    ALL EMPLOYEES (EXCLUDING PLEASANT HOLIDAYS) CLASSIFIED BY THE RESPE(

Waiting Period: New/Mode-Current/Mode 90 Day 90 Day    Days in WRKWK    Pre-X 3-1

Elimination Period: Days/Type 182 Sickness    COLA: Mode/Duration

Successive Period: Period/Mode 6 Month    SS Integration:Type/Value FSS

Partial Disability Type/Pct QRP+ 7.00    Survivor Ben Months/Wait Period 3 180

Non-Verifiable Symptoms Limit 24    Own Occupation Definition Limit 12    M/N Limit 24

Benefit %    Max Benefit $    Min Benefit $    Employer Contr % 33.33    Subro Ind Y

### Selected Benefits

| Symbol | Numeral | Product Type | Class | Eligibility Date | |
|---|---|---|---|---|---|
| GF | 01 | LTD | 02 | 09/16/2013 | |

Additional Information:

**LIB000001**



**05/11/2020 10:52 AM - CLAIM Note 60**
Claim/Event/Leave: 8741789
NoteSubject : Legal
Other Subject : LAWSUIT FILED
Text: [05/11/2020 - ODGAARD, EDITH]CLAIMANT HAS FILED A LAWSUIT. PLEASE DIRECT ANY FURTHER INQUIRY ON THIS CLAIM TO THE LITIGATION MANAGER.

**04/16/2020 12:34 PM - CLAIM Note 59**
Claim/Event/Leave: 8741789
NoteSubject : Appeal
Other Subject : OUT
Text: [04/16/2020 - MURRAY, KIMBERLY]APPEAL UH. IME FOUND SUPPORTED R/L'S WHICH WERE IN LINE WITH PRIOR AP R/L'S. RTR PROVIDED. TOLLING:70 DAYS. LETTER TO ATTY

**04/08/2020 3:20 PM - PHONE Note 18**
Claim/Event/Leave: 8741789
NoteSubject : Other Called
Other Subject : ATTNY OFFICE
Text: [04/08/2020 - AVERILL, REBECCA]ATTNY OFFICE CALLED REQ AN UPDATE ON THE REVIEW. INFORMED ITS UNDER REVIEW STILL, THE ARC IS NOT AVAILABLE AND ATTNY WAS SENT TO VM

**03/13/2020 12:45 PM - CLAIM Note 58**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [03/13/2020 - YEREMIAN, KEVORK]INVOICE RECEIVED ON 03/12/2020 AND DATED 02/03/2020 FROM NETWORK MEDICAL REVIEW COMPANY, LTD. INV# 307803-1, IN THE AMOUNT OF $4625.00 FOR PEER REVIEW PERFORMED BY KATRINA M VLACHOS WITH A SPECIALTY OF PM&R. PAID INVOICE IN FULL

**03/12/2020 9:35 AM - CLAIM Note 57**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : INVOICE
Text: [03/12/2020 - MURRAY, KIMBERLY]REC'D INVOICE FROM NMR FOR IME. OK TO PAY AS NOTED. INVOICE 307803-1, DATE: 02/03/2020. AMOUNT $4625.00

**03/05/2020 7:29 AM - CLAIM Note 56**
Claim/Event/Leave: 8741789
NoteSubject : Appeal
Other Subject : STATUS
Text: [03/05/2020 - MURRAY, KIMBERLY]APPEAL UNDER REVIEW. REC'D FAX FROM ATTY INDICATING THE SUBMISSION OF RECORDS AND RESPONSE TO RTR. ADDITIONAL INFO WILL BE SENT VIA MAIL.

**02/11/2020 2:00 PM - CLAIM Note 55**
Claim/Event/Leave: 8741789
NoteSubject : Appeal
Other Subject : STATUS
Text: [02/11/2020 - MURRAY, KIMBERLY]COPY OF IME AND RTR LETTER SENT TO ATTY. DUE DATE: 03/03/2020

**01/13/2020 10:32 AM - CLAIM Note 54**
Claim/Event/Leave: 8741789
NoteSubject : Appeal
Other Subject : IME INFO

LIB000002

Other Subject : IME INFO

Text: [01/13/2020 - MURRAY, KIMBERLY]FROM VENDOR: I HAVE SCHEDULED THE BELOW DESCRIBED IME FOR CLAIM 8741789 IME APPT DATE: 1/27/2020 11:00 AM - 12:00 PM MILEAGE: 40 MILES IME EXAMINER & QUOTE: KATRINA M VLACHOS, MD PHYSICAL MEDICINE & REHABILITATION 13160 MINDANAO WAY SUITE #300 MARINA DEL REY, CA 90292 IME FEE: $4625 (OUT OF NETWORK) NS/LC FEE: $4000 (OUT OF NETWORK) NMR WILL NEED A 3 BUSN DAYS NOTICE OF CANCELLATION OR NEED TO RESCHEDULE TO AVOID FEES. LATE CANCELLATION DATE BEGINS: 1/21/2020 8:00AM REPORT TAT: 7 BUSINESS DAYS SPECIAL INSTRUCTIONS: PLEASE ARRIVE 15 MINUTES EARLY WITH A PHOTO ID. PLEASE BE AWARE THAT THE ABOVE PRICING IS BASED ON THE INFORMATION WE CURRENTLY HAVE AVAILABLE FOLLOWING THE RECEIPT OF YOUR REFERRAL. SHOULD THE EXAMINER FEEL THE CASE IS MORE COMPLEX THAN ORIGINALLY ANTICIPATED AND REQUEST ADDITIONAL FEES, WE WILL NOTIFY YOU IMMEDIATELY AND PROVIDE A DETAILED EXPLANATION FOR THE ADDITIONAL FEE REQUEST.

**01/13/2020 10:31 AM - CLAIM Note 53**
Claim/Event/Leave: 8741789
NoteSubject : Appeal
Other Subject : STATUS
Text: [01/13/2020 - MURRAY, KIMBERLY]FILE REMAINS UNDER REVIEW PENDING IME. IME SCHEDULED FOR 01/247/2020 W/DR. VLACHOS. LETTER WAS SENT TO ATTY

**01/03/2020 8:50 PM - CLAIM Note 52**
Claim/Event/Leave: 8741789
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 1/3/2020 - REFERRED TO NETWORK MEDICAL REVIEW (NMR) FOR IME.

**01/03/2020 3:41 PM - CLAIM Note 51**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : COPY JOB
Text: [01/03/2020 - PILAR, SARAH]COPY OF DOC LIST EXCEPT OUTBOUND CORRESPONDENCE SENT TO NMR VIA ONE DRIVE.

**01/03/2020 8:11 AM - CLAIM Note 50**
Claim/Event/Leave: 8741789
NoteSubject : Appeal
Other Subject : SCORE - IME
Text: [01/03/2020 - MURRAY, KIMBERLY]SENT SCORE REFERRAL TO SCHEDULE IME THRU NMR.

**11/21/2019 7:21 AM - CLAIM Note 49**
Claim/Event/Leave: 8741789
NoteSubject : Appeal
Other Subject : IME
Text: [11/21/2019 - MURRAY, KIMBERLY]IME SCHEDULED FOR 12/20/19

**11/21/2019 7:03 AM - PHONE Note 17**
Claim/Event/Leave: 8741789
NoteSubject : Called Other
Other Subject : KANTOR & KANTOR
Text: [11/21/2019 - MURRAY, KIMBERLY]LATE ENTRY: CALLED ZOYA AT ATTY'S OFF. LEFT VMM APOLOGIZING FOR THE MISCOMMUNICATION OF THE VENDOR SENDING THE IME LETTER TO THE EE DIRECTLY. PROVIDED DIRECT CONTACT INFO FOR ANY QUESTIONS. REVIEWED VMM FROM ATTY, SUSAN FROM OFFICE HAD CALLED. RETURNED CALL TO HER, AGAIN APOLOGIZED FOR THE OVERSIGHT. SHE REQUESTED A COPY OF LETTER TO BE FAXED. CONFIRMED WILL DO SO. OBTAINED COPY OF LETTER, FAXED TO SUSAN AT 510-280-7564.

**11/20/2019 12:50 PM - PHONE Note 16**
Claim/Event/Leave: 8741789
NoteSubject : Other Called
Other Subject : ATTORNEY
Text: [11/20/2019 - COTE, SHANA]ATTORNEY'S OFFICE CALLED - CLMT NOTIFIED THEM SHE RECEIVD NOTICE FROM US IN THE MAIL ABOUT IME AND ALL CORRESPONDENCE SHOULD GO THRU ATTNY. REVIEWED DOC LIST AND ALL COMMUNICATION WAS SENT TO THEIR OFFICE, BUT ADV I DO SEE ANOTE IN THE SYSTEM ABOUT A REFERRAL SO THAT COULD BE WHAT SHE RECD. ADV I WILL TRANSFER HER TO ARC TO LEAVE A VM (ADV ARC IS CURRENTLY ON THE PHONE) FOR FURTHER DISCUSSION. SHE AGREED. WARM TRANSFER TO ARC K. MURRAY VM.

**11/13/2019 11:59 AM - CLAIM Note 48**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : ADMIN
Text: [11/13/2019 - HOFFNER, FAYE]REQUEST FOR NON CORRESPONDENCE ONLY TO BE SENT TO ECN: ADMIN PULLED TOGETHER THE ALL NON CORRS FROM DOC LISTING AND SUBMITTED TO THE EMAIL PROVIDED. LEGACY@ECNIME.COM VIA SECURE ONE DRIVE. RESPONDED TO REQUESTOR WITH COMPLETION, NO FURTHER ACTION NEEDED.

**11/12/2019 8:50 PM - CLAIM Note 47**
Claim/Event/Leave: 8741789
NoteSubject : Ref to Other

LIB000003

Other Subject : SCORE REFERRAL
Text: 11/12/2019 - REFERRED TO EXAM COORDINATORS - ECN FOR IME.

**11/01/2019 3:03 PM - CLAIM Note 46**
Claim/Event/Leave: 8741789
NoteSubject : Appeal
Other Subject : STATUS
Text: [11/01/2019 - MURRAY, KIMBERLY]FILE UNDER REVIEW. ADDITIONAL RECORDS REC'D INCLUDING FCE. CONTINUE REVIEW.

**10/31/2019 10:09 AM - CLAIM Note 45**
Claim/Event/Leave: 8741789
NoteSubject : Appeal
Other Subject : ASSIGNED TO ARC
Text: [10/31/2019 - COTE, SHANA]ASSIGNED TO KIM MURRAY, ACK LTR SENT TO ATTNY

**10/31/2019 10:07 AM - CLAIM Note 44**
Claim/Event/Leave: 8741789
NoteSubject : Med Records Rcvd
Other Subject : MULTIPLE PROVIDERS
Text: [10/31/2019 - COTE, SHANA]RECEIVED 514 PAGES OF RECORDS FROM ATTNY

**10/28/2019 11:54 AM - CLAIM Note 43**
Claim/Event/Leave: 8741789
NoteSubject : Appeal
Other Subject : ACTION PLAN
Text: [10/28/2019 - COTE, SHANA]ONCE CD W/ EXHIBITS ADDED TO FILE, ASSIGN TO ARC

**10/28/2019 11:54 AM - CLAIM Note 42**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : APPEAL LETTER
Text: [10/28/2019 - COTE, SHANA]RECEIVED APPEAL LTR DATED 10/24/19 FROM ATTNY - CD W/ EXHIBITS TO BE MAILED

**08/02/2019 1:02 PM - CLAIM Note 41**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : COPY SHIPPED
Text: [08/02/2019 - BOWMAN, CASEY]THUMB DRIVE COPY OF CORRESPONDENCE, DOC LIST, CLAIM NOTES, COVERSHEET, AND LTD POLICY SHIPPED TO KANTOR & KANTOR, 19839 NORDHOFF STREET, NORTHRIDGE, CA 91324 VIA 2ND DAY AIR

**08/02/2019 11:23 AM - CLAIM Note 40**
Claim/Event/Leave: 8741789
NoteSubject : Ref to Other
Other Subject : ADMIN
Text: [08/02/2019 - COTE, SHANA]SENT TO ADMIN TO ISSUE COPY OF CLAIM FILE TO ATTORNEY - COVER LETTER AND POLICY ATTACHED

**07/29/2019 2:37 PM - CLAIM Note 39**
Claim/Event/Leave: 8741789
NoteSubject : Appeal
Other Subject : PRESCREEN COMPLETE
Text: [07/29/2019 - COTE, SHANA]CODING IS ACCURATE. CLAIM FILED 2/12/19 - FI, LTD, ERISA. JD/AUTH ON FILE. DENIED NOT TD OO - LETTER SENT 5/9/19. 180 DAY APPEAL TIMEFRAME - DEADLINE 11/4/19. APPEAL LETTER RECEIVED 7/23/19 FROM ATTORNEY WITH REQUEST FOR CLAIM FILE. AA TO SEND GATHER INFO ACK LTR AND CLAIM FILE TO ATTORNEY.

**07/25/2019 7:51 AM - CLAIM Note 38**
Claim/Event/Leave: 8741789
NoteSubject : Appeal
Other Subject : REFERRAL RECEIVED
Text: [07/25/2019 - COTE, SHANA]ASSIGNED TO SHANA COTE

**07/25/2019 2:28 AM - CLAIM Note 37**
Claim/Event/Leave: 8741789
NoteSubject : Ref to Appeals
Other Subject : SCORE REFERRAL
Text: 7/24/2019 - REFERRED TO APPEALS UNIT FOR CLAIM REVIEW AND DETERMINATION.

**07/24/2019 10:23 AM - CLAIM Note 36**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : MGR REVIEW
Text: [07/24/2019 - BREWSTER, TRISHA]AGREE WITH RECOMMENDATION AS OUTLINED TO REFER CLAIM TO ARU

**07/24/2019 9:19 AM - CLAIM Note 35**

**LIB000004**

**07/24/2019 9:19 AM - CLAIM Note 35**
Claim/Event/Leave: 8741789
NoteSubject : Ref to Appeals
Other Subject : MANAGER REC
Text: [07/24/2019 - BELANGER, JESSICA]56YOF, SALES AGENT FOR AUTO CLUB. (SED TO LIGHT OA) CALIFORNIA. LTD ONLY. EDD PAYING AT MAX. WC DENIED NOW PENDING ADDT'L REVIEW PER EE. EE H/O BILATERAL SHOULDER SURGERY 7/25/17 WITH RTW 11/1/17. THEN EE WENT BACKOOW 5/15/18 (DOD) DUE TO PAIN IN LEFT SHOULDER. R&LS OF NO USE OF EITHER SHOULDER, NO REPETITIVE MOTION, REACHING OVERHEAD, LIMITED LIFTING (WT NOT KNOWN). EE STATES R&LS DON T IMPACT HER OCC (DURING FIELD ICP) HOWEVER PAIN AFFECTS HER SLEEP AND EECANT DO ANY CLEANING. CLMT REPORTS PROVIDERS WITH SYNAPSE ARE ADVISING R&LS. KAISER RECORDS INDICATE FULL RTW ON 11/1/18. FILE ESCALATED AT 2WK MARK. DCM EXTENDED N&P 2WKS THEN EE MAILED RECORDS ADDING AN ADDT'L WK TO OBTAINING MEDICAL. THUS ADELAY IN OUR REVIEW TIME. FILE TO PMR PEER. PEER ATTEMPTED TO S/W SYNAPSE PROVIDERS LEAVING 4VM WITHOUT RTC. NO R&LS SUPPORTED. CLAIM DENIED. HAVE RECEIVED INTENT TO APPEAL FROM ATTY - REQUEST CLAIM BE TRANSFERRED TO ARU FOR ADDITIONAL REVIEW.

**07/24/2019 9:17 AM - CLAIM Note 34**
Claim/Event/Leave: 8741789
NoteSubject : Appeal
Other Subject : INTENT
Text: [07/24/2019 - BELANGER, JESSICA]RECEIVED INTENT TO APPEAL FROM ATTY WITH REQUEST FOR ADDITIONAL INFORMATION.

**06/10/2019 6:31 AM - CLAIM Note 33**
Claim/Event/Leave: 8741789
NoteSubject : LTR to EE
Other Subject : REG 1 LEVEL OF APPEA
Text: [06/10/2019 - LAROCCA, KRISTIE]LTR TO EE VIA USPS

**06/06/2019 1:55 PM - PHONE Note 15**
Claim/Event/Leave: 8741789
NoteSubject : Called EE
Other Subject :
Text: [06/06/2019 - LAROCCA, KRISTIE]EE LEFT F/U OF APPEAL PROCESS. DCM RTC AND S/W. DCM ADVISED PER HER REQUEST DCM REACHED OUT TO APPEAL UNIT AND ASKED HOW MANY LEVELS OF APPEAL. DCM WAS TOLD ONE. EE STATES SHE WAS TOLD IT WAS MORE THAN THAT. EE ASKED THAT DCM SEND THIS INFO TO HER IN WRITING. DCM WILL CIRCLE BACK WITH ARU TO ENSURE INFO IS ACCURATE AND THEN F/U WITH EE.

**06/06/2019 1:55 PM - CLAIM Note 32**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : FILE REQUEST
Text: [06/06/2019 - CAPP, STAN]THUMB DRIVE SENT TO CLAIMANT VIA UPS 2ND DAY AIR. TRACKING #1Z0269350299464062

**06/06/2019 1:48 PM - CLAIM Note 31**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : REQUEST FOR FILE
Text: [06/06/2019 - LAROCCA, KRISTIE]RCVD REQUEST FOR FILE FROM EE

**06/05/2019 1:17 PM - CLAIM Note 30**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : REQ THUMB DRIVE
Text: [06/05/2019 - LAROCCA, KRISTIE]DCM REQUESTED THUMB DRIVE

**06/05/2019 11:11 AM - PHONE Note 14**
Claim/Event/Leave: 8741789
NoteSubject : EE Called
Other Subject :
Text: [06/05/2019 - LAROCCA, KRISTIE]EE STATES SHE S/W AN ATTORNEY AND THEY ASKED HER TO INQUIRE HOW MANY TIMES SHE CAN APPEAL. EE WOULD LIKE A COPY OF HER FILE AND POLICY. DCM WILL SEND IT OUT TO EE. EE WILL FAX A WRITTEN REQUEST

**05/13/2019 1:51 PM - PHONE Note 13**
Claim/Event/Leave: 8741789
NoteSubject : Called EE
Other Subject : DENIAL
Text: [05/13/2019 - LAROCCA, KRISTIE]DCM S/W EE REG THE DENIAL. DCM ADVISED EE'S RIGHT TO APPEAL. EE UPSET ABOUT DENIAL. EE INTENDS ON APPEALING. EE NOT SURE IF SHE WILL OBTAIN AN ATTNY. DCM EXPLAINED APPEAL PROCESS. EE THANKED DCM FOR CALL REG DENIAL

**05/09/2019 2:47 PM - CLAIM Note 29**
Claim/Event/Leave: 8741789
NoteSubject : LTR to EE
Other Subject : SENT 2ND DAY

LIB000005

Text: [05/09/2019 - HOWARD, HOLLY]TRACKING 1Z24896X0290443322

**05/09/2019 11:20 AM - CLAIM Note 28**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : MGR REVIEW
Text: [05/09/2019 - CRAM, BRIAN]AGREE WITH DENIAL.

**05/09/2019 9:12 AM - CLAIM Note 27**
Claim/Event/Leave: 8741789
NoteSubject : Denied
Other Subject : RECOMMENDATION
Text: [05/09/2019 - LAROCCA, KRISTIE]54YOF, SALES AGENT FOR AUTO CLUB. (SED TO LIGHT OA) CALIFORNIA. LTD ONLY. EDD PAYING AT MAX. WC DENIED NOW PENDING ADDT'L REVIEW PER EE. EE H/O BILATERAL SHOULDER SURGERY 7/25/17 WITH RTW 11/1/17. THEN EE WENT BACKOOW 5/15/18 (DOD) DUE TO PAIN IN LEFT SHOULDER. R&LS OF NO USE OF EITHER SHOULDER, NO REPETITIVE MOTION, REACHING OVERHEAD, LIMITED LIFTING (WT NOT KNOWN). EE STATES R&LS DON T IMPACT HER OCC (DURING FIELD ICP) HOWEVER PAIN AFFECTS HER SLEEP AND EECANT DO ANY CLEANING. CLMT REPORTS PROVIDERS WITH SYNAPSE ARE ADVISING R&LS. KAISER RECORDS INDICATE FULL RTW ON 11/1/18. FILE ESCALATED AT 2WK MARK. THIS DCM EXTENDED N&P 2WKS THEN EE MAILED RECORDS ADDING AN ADDT'L WK TO OBTAINING MEDICAL. THUS A DELAY IN OUR REVIEW TIME. FILE TO PMR PEER. PEER ATTEMPTED TO S/W SYNAPSE PROVIDERS LEAVING 4VM WITHOUT RTC. NO R&LS SUPPORTED. BASED ON MEDICAL REVIEW DCM RECOMMENDS DENIAL OF LTD AT THIS TIME

**04/25/2019 2:28 AM - CLAIM Note 26**
Claim/Event/Leave: 8741789
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 4/24/2019 - REFERRED TO NETWORK MEDICAL REVIEW FOR PEER REVIEW.

**04/24/2019 10:27 AM - CLAIM Note 25**
Claim/Event/Leave: 8741789
NoteSubject : LTR to EE
Other Subject : ERISA / STATUS
Text: [04/24/2019 - LAROCCA, KRISTIE]ERISA / STATUS LTR TO EE

**04/24/2019 9:51 AM - CLAIM Note 24**
Claim/Event/Leave: 8741789
NoteSubject : Med Records Rcvd
Other Subject : WC
Text: [04/24/2019 - LAROCCA, KRISTIE]DCM RCVD WC RECORDS[04/24/2019 - LAROCCA, KRISTIE]INCLUDING RECORDS FROM SYNAPSE

**04/11/2019 5:57 PM - PHONE Note 12**
Claim/Event/Leave: 8741789
NoteSubject : Called EE
Other Subject : LVMM
Text: [04/11/2019 - LAROCCA, KRISTIE]EE LEFT VMM ADVISING SHE RCVD SYNAPSE RECORDS AND WILL MAIL THEM INTO DCM. DCM RTC AND LEFT VMM. DCM PROVIDED MAILING AND FAX ADDRESS/ NUMBER FOR EE. ADVISED ONCE RCVD WE WILL CONDUCT A FILE REVIEW

**04/10/2019 1:14 PM - CLAIM Note 23**
Claim/Event/Leave: 8741789
NoteSubject : LTR to Other
Other Subject : WC
Text: [04/10/2019 - LAROCCA, KRISTIE]REQUEST FOR MEDICAL DUE 4/16

**04/10/2019 1:03 PM - PHONE Note 11**
Claim/Event/Leave: 8741789
NoteSubject : Called EE
Other Subject : LVMM
Text: [04/10/2019 - LAROCCA, KRISTIE]EE LEFT VM STATING SHE S/W SYNAPSE AND WAS TOLD SHE OR WE WOULD NEED A SUBPOENA FOR THE RECORDS. DCM RTC AND LEFT VMM STATING WE WILL REACH OUT TO WC FOR A COPY OF THEIR RECORDS. DCM SUGGESTED EE F/U WITH WC AS WELL.DCM NOTED WE WILL REVIEW WHAT WE HAVE ON FILE AT N&P DEADLINE.

**04/02/2019 1:24 PM - PHONE Note 10**
Claim/Event/Leave: 8741789
NoteSubject : Called EE
Other Subject : REG N&P
Text: [04/02/2019 - LAROCCA, KRISTIE]DCM S/W EE AND ADVISED WE ARE EXTENDING DEADLINE TWO WKS TO 4/12 FOR SYNAPSE RECORDS. EE THANKED DCM AND SHE WILL F/U WITH SYNAPSE

**04/02/2019 12:44 PM - CLAIM Note 22**
Claim/Event/Leave: 8741789

LIB000006

NoteSubject : Med Records Rcvd
Other Subject : WC IME 1/31/19
Text: [04/02/2019 - LAROCCA, KRISTIE]RCVD DR. HARONIAN ORTHO IME 1/31/19

**03/29/2019 1:24 PM - PHONE Note 9**
Claim/Event/Leave: 8741789
NoteSubject : EE Called
Other Subject :
Text: [03/29/2019 - LAROCCA, KRISTIE]EE CALLED WITH SAME QUESTIONS. EE DIDN'T RCV DCM VM.

**03/29/2019 11:33 AM - PHONE Note 8**
Claim/Event/Leave: 8741789
NoteSubject : Called EE
Other Subject : LVMM
Text: [03/29/2019 - LAROCCA, KRISTIE]EE LEFT VMM ASKING IF WE RCVD SYNOPSES MEDICAL. EE HAD ATTNY FAX SUMMARY. ASKED IF DCM RCVD. DCM RTC AND LEFT VMM ADVISING WE HAVE NOT RCVD MEDICAL FROM SYNAPSES. WE LEFT VMM TO F/U WITH THEM ON 3/27. DCM WILL REVIEW TO SEE IF WE RCVD TX SUMMARY FROM ATTNY AND RTC TO EE WHEN SYSTEM IS BACK UP.

**03/29/2019 10:31 AM - CLAIM Note 21**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : RP UPDATE
Text: [03/29/2019 - LAROCCA, KRISTIE]REG SYNAPSE RECORDS - 03/27/2019 11:41 AM (PT) TIME @PROVIDER: 11:41 AM (PT) CONTACT: NOTE: DAY 10 STATUS CHECK - RELEASEPOINT WILL CONTINUE PHONE AND FAX FOLLOWUP UNTIL RECORDS ARE RELEASED: ** I CALLED 8187882400 AND REACHED THE FACILITY'S VOICEMAIL. I LEFT A MESSAGE REGARDING CHECK STATUS ON RECORDS REQUESTED. I ALSO PROVIDED THE PATIENT'S NAME AND DOB. I ALSO PROVIDED RELEASEPOINT'S CALL BACK AND REFERENCE NUMBER TWICE. SEARCH ONLINE FOUND THE SAMEINFORMATION. REFERENCE LINK: HTTPS://WWW.HEALTHGRADES.COM/GROUP-DIRECTORY/CA-CALIFORNIA/SHERMAN-OAKS/SYNAPSE-ORTHOPEDIC-GROUP-OOMPVHL

**03/26/2019 1:31 PM - PHONE Note 7**
Claim/Event/Leave: 8741789
NoteSubject : EE Called
Other Subject : LEFT VMM
Text: [03/26/2019 - LAROCCA, KRISTIE]EE LEFT VMM STATING SHE CONTACTED SYNAPSE TO SEND RECORDS. THEY SHOULD BE SENDING. EE ALSO S/W HER ATTNY WHO HAS TX SUMMARIES AND WILL TRY TO SEND THOSE TO DCM. EE ASKED DCM TO CALL IF ANY QUESTIONS. DCM HAD NO QUESTIONS SO NO RTC

**03/26/2019 10:32 AM - CLAIM Note 20**
Claim/Event/Leave: 8741789
NoteSubject : Action Plan
Other Subject : PENDED LTD
Text: [03/26/2019 - LAROCCA, KRISTIE]TD ONLY. SALES AGENT. WC DENIED NOW PENDING ADDT'L REVIEW PER EE. EE H/O BILATERAL SHOULDER SURGERY 7/25/17 WITH RTW 11/1/17. THEN EE WENT BACK OOW 5/15/18 (DOD) DUE TO PAIN IN LEFT SHOULDER. R&LS OF NO USE OF EITHER SHOULDER, NO REPETITIVE MOTION, REACHING OVERHEAD, LIMITED LIFTING (WT NOT KNOWN). EE STATES R&LS DON T IMPACT HER OCC (DURING FIELD ICP) HOWEVER PAIN AFFECTS HER SLEEP AND EE CANT DO ANY CLEANING. KAISER RECORDS INDICATE FULL TIME RTW 11/1/18.EE STATES SYNAPSE IS ADVISING R&LS. AWAITING MEDICAL FROM SYNAPSE N&P 3/30

**03/20/2019 1:33 PM - CLAIM Note 19**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : LTD FORMS
Text: [03/20/2019 - LAROCCA, KRISTIE]RCVD AUTH, EDD, CIF, SUP, WC, AQ, ACB, FAM, RA, TEE, SS,

**03/19/2019 4:03 PM - CLAIM Note 18**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : RP UPDATE
Text: [03/19/2019 - LAROCCA, KRISTIE]RP UPDATE ON SYNAPSE RECORDS DATED 3/18 - SPOKE TO OPERATOR: DAY 10 STATUS CHECK - RELEASEPOINT WILL CONTINUE PHONE AND FAX FOLLOWUP UNTIL RECORDS ARE RELEASED: ** I CALLED 8187882400 EXT 118 AND REACHED THE FACILITY'SVOICEMAIL. I LEFT A MESSAGE REGARDING REQUEST. I ALSO PROVIDED THE PATIENT'S NAME AND DOB. I ALSO PROVIDED RELEASEPOINT'S CALL BACK AND REFERENCE NUMBER TWICE. I CALLED AGAIN AND ASKED HELP FROM THE OPERATOR. SHE TOLD ME THAT THE ONLY PERSON CAN CHECK FOR THE STATUS IS ANGEL AND SHE'S NOT IN TODAY. SHE SAID THAT SHE WILL BE IN TOMORROW

**03/19/2019 12:32 PM - CLAIM Note 17**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : BENEFIT CALCULATION
Text: [03/19/2019 - BRYANT, DIANE]SET UP SCHEDULED PAYMENT BASED ON SALARY AND COMMISSION INFORMATION FROM ER (IN DOC LIST 2/11/19) SHOWING BASE SALARY OF $27,560.00 ANNUALLY + 2017 COMMISSION $107,798.54 = $135,358.54 / 12 = $11,279.88 BME. THE BENEFIT IS66.67% OR $7,520.30. OFFSET(S) SET UP AS FOLLOWS: STCA OFFSET IN THE AMOUNT OF $5,269.33/MONTH ($1,216/WEEK * 52 / 12). THE INITIAL PAYMENT WORKSHEET HAS BEEN SAVED TO THE

LIB000007

THE AMOUNT OF $3,269.33/MONTH ($1,216/WEEK * 52 / 12). THE INITIAL PAYMENT WORKSHEET HAS BEEN SAVED TO THE DOC LIST.

**03/18/2019 3:28 PM - PHONE Note 6**
Claim/Event/Leave: 8741789
NoteSubject : Called EE
Other Subject :
Text: [03/18/2019 - LAROCCA, KRISTIE]EE LEFT VMM ASKING ADDRESS TO SEND FORMS AND IF SYNAPSE SENT RECORDS. DCM RTC AND S/W EE. EE ALREADY MAILED FORMS. SHE WILL F/U WITH SYNAPSE

**03/11/2019 2:41 PM - CLAIM Note 16**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [03/11/2019 - YEREMIAN, KEVORK]INVOICE RECEIVED ON 03/04/2019 AND DATED 03/02/2019 FROM LIBERTY MUTUAL MANAGED CARE, LLC. REFERENCE NUMBER: 5698351 / 1114488, IN THE AMOUNT OF $143.62 FOR JOB TASK ANALYSIS. INVOICE PAID IN FULL.

**03/08/2019 12:42 PM - CLAIM Note 15**
Claim/Event/Leave: 8741789
NoteSubject : LTR to EE
Other Subject : 2ND N&P LTR
Text: [03/08/2019 - LAROCCA, KRISTIE]2ND N&P LTR

**03/05/2019 1:00 PM - PHONE Note 5**
Claim/Event/Leave: 8741789
NoteSubject : Called EE
Other Subject :
Text: [03/05/2019 - LAROCCA, KRISTIE]EE LEFT VMM WITH QUESTION REG FORMS. DCM RTC AND S/W EE. EE STATES SHE HAS BEEN CALLING KARA FOR A WHILE AND DIDN'T RCV A RTC. EE FEELS THIS IS UNPROFESSIONAL. DCM APOLOGIZED. EE HAS PENDING WC CLAIM. CLAIM WAS DENIED AND EE IS NOW APPEALING WITH ATTNY. EE HAS CLMT FORMS AND WILL SEE ATTNY NEXT MONDAY. EE WOULD LIKE TO SHOW HIM THESE FORMS BEFORE COMPLETING. DCM ADVISED THIS WAS OKAY. DCM REMINDED EE OF N&P DATE 3/30. DCM ADVISED WE HAVE KAISER RECORDS AND AWAITING SYNAPSE. DCM ASKED WHO IS KEEPING EE OOW. EE STATES DR. HERONIAN AT SYNAPSE. DCM ADVISED THAT IT IS IMPORTANT TO OBTAIN THOSE RECORDS. EE VOICED UNDERSTANDING. NO OTHER PROVIDERS. DCM ADVISED EDD AND WC OFFSET TO LTD

**03/05/2019 10:09 AM - CLAIM Note 14**
Claim/Event/Leave: 8741789
NoteSubject : Med Records Rcvd
Other Subject : KAISER
Text: [03/05/2019 - LAROCCA, KRISTIE]KAISER RECORDS INDICATE MOST RECENT WORK RELEASE IS RTW FULL TIME 11/1/18

**03/04/2019 11:24 AM - CLAIM Note 13**
Claim/Event/Leave: 8741789
NoteSubject : Voc Rehab
Other Subject : REPORT COMPLETE
Text: [03/04/2019 - HOWARD, JANE]FILE REVIEWED AND RESEARCH CONDUCTED. REPORT COMPLETED AND POSTED DIRECTLY TO SYSTEMONE, ALONG WITH INVOICE. NO FURTHER VCM ACTIVITY.

**02/26/2019 12:59 PM - PHONE Note 4**
Claim/Event/Leave: 8741789
NoteSubject : Called EE
Other Subject : LVMM
Text: [02/26/2019 - LAROCCA, KRISTIE]EE LEFT VMM ASKING IF DCM RCVD AUTH. EE STATES SHE DIDN'T RCV CLMT FORMS PACKAGE. DCM RTC AND LEFT VMM STATING FORMS SENT 2/15

**02/26/2019 2:42 AM - CLAIM Note 12**
Claim/Event/Leave: 8741789
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND INITIAL PAYMENT CALCULATION HAS BEEN RECEIVED AND ASSIGNED TO DIANE BRYANT.

**02/26/2019 2:42 AM - CLAIM Note 11**
Claim/Event/Leave: 8741789
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR INITIAL PAYMENT CALCULATION.

**02/26/2019 1:37 AM - DOCUMENT Note 7**
Claim/Event/Leave: 8741789
NoteSubject : eSignature
Other Subject : Document Expired

LIB000008

**02/25/2019 1:45 PM - DOCUMENT Note 6**
Claim/Event/Leave: 8741789
NoteSubject : eSignature
Other Subject : Document Will Expire

**02/25/2019 11:48 AM - CLAIM Note 10**
Claim/Event/Leave: 8741789
NoteSubject : LTR to AP
Other Subject : MED REQ
Text: [02/25/2019 - LAROCCA, KRISTIE]DCM RCVD SIGNED AUTH AND REQUESTED MEDICAL FROM PROVIDERS IN LINKED
PROVIDERS FROM RELEASE POINT

**02/24/2019 1:45 PM - DOCUMENT Note 5**
Claim/Event/Leave: 8741789
NoteSubject : eSignature
Other Subject : Document Not Signed Day 5

**02/23/2019 2:32 AM - CLAIM Note 9**
Claim/Event/Leave: 8741789
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 2/22/2019-REFERRAL RECEIVED BY VCM AND ASSIGNED TO HOWARD, JANE. CLAIM/AS EVENT IS PENDING REVIEW.

**02/22/2019 5:04 PM - DOCUMENT Note 4**
Claim/Event/Leave: 8741789
NoteSubject : eSignature
Other Subject : Document Signed

**02/22/2019 3:34 PM - DOCUMENT Note 3**
Claim/Event/Leave: 8741789
NoteSubject : eSignature
Other Subject : Document Requested

**02/22/2019 3:34 PM - PHONE Note 3**
Claim/Event/Leave: 8741789
NoteSubject : EE Called
Other Subject :
Text: [02/22/2019 - CAMPBELL, CARA]EE CALLED TO ADV THOUGH SHE DID ESIGNS FOR AUTH BUT SHE GOT A REMINDER
FOR THEM AND THE CODE SHE RECEIVED THE FIRST TIME ISN'T WORKING. DCM ADV CAN RESEND AND START FRESH, EE
ACK, NGQS, THANKS EXCHANGED, CC.

**02/22/2019 2:32 AM - CLAIM Note 8**
Claim/Event/Leave: 8741789
NoteSubject : Ref to Voc Rehab
Other Subject : SCORE REFERRAL
Text: 2/21/2019 - REFERRED TO THE VOC UNIT FOR OCCUPATIONAL ANALYSIS.

**02/21/2019 1:45 PM - DOCUMENT Note 2**
Claim/Event/Leave: 8741789
NoteSubject : eSignature
Other Subject : Document Not Signed Day 2

**02/21/2019 11:48 AM - CLAIM Note 7**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : NO AUTH. NO MEDICAL
Text: [02/21/2019 - LAROCCA, KRISTIE]NO AUTH ON FILE THEREFORE WE CANNOT REQUEST MEDICAL AT THIS TIME

**02/20/2019 9:54 AM - CLAIM Note 6**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : CLM ASSIGNED
Text: [02/20/2019 - CRAM, BRIAN]CLAIM ASSIGNED TO DCM LAROCCA.

**02/20/2019 2:33 AM - CLAIM Note 5**
Claim/Event/Leave: 8741789
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 2/19/2019 - REFERRED TO TCMS FOR REVIEW AND POTENTIAL MANAGEMENT.

**02/19/2019 1:56 PM - CLAIM Note 4**
Claim/Event/Leave: 8741789
NoteSubject : Ref to Other
Other Subject : TCMS

LIB000009

Other Subject : TCMS
Text: [02/19/2019 - CAMPBELL, CARA]REFERRAL FOR REVIEW OF CLAIM REASSIGNMENT

**02/19/2019 1:54 PM - CLAIM Note 3**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : CLOSE NP MAR 2019
Text: [02/19/2019 - CAMPBELL, CARA]LTD CLASS 1 BASE BENS: ALL EE ENROLLED IN CORE PLAN: 50% BME NOT TO EXCEED MAX MONTHLY BEN OF $12,000 LESS BENEFITS FROM OTHER INCOME; LTD CLASS 2 BUY-UP BENS: ALL EE ELECTING BUY-UP: 66.67% BME NOT TO EXCEED MAX MONTHLYBEN OF $12,000 LESS BENEFITS FROM OTHER INCOME. EE CONTRIBUTIONS: CLASS 1: NO; CLASS 2: YES. OWN OCC: 6 MONTHS. EMPLOYED WITH ER SINCE 6/18/13; EWP: 90 DAYS, EDOC = 9/16/2013. LDW: 5/14/2018, DOD: 5/15/2018. LTD BBD: EP IS GREATER OF END OF STD (MAX: 11/15/2018) OR 26 WEEKS = 11/16/2018. LTD MAX BENEFIT: EE WAS UNDER AGE 60 AT DOD= GREATER OF SSNRA OR 65 (BUT NOT LESS THAN 5 YEARS) = 6/6/2030. PRE-X: 3/12; EE IS NOT SUBJECT TO PRE-X AS DID NOT GO OOW W/IN 12MO EDOC ***54YOF, JOB TITLE: SALES AGENT, WHOSE DUTIES ARE REPORTED AS: SALES AGENT. OTHER INCOME: PENDING WC, EDD PAYING AT MAX. EE OOW DUE TO: SHOULDER INJURY, NO ACCIDENT, DEVELOPED OVER TIME. EE TX WITH SYNAPSE MEDICAL GROUP, KAISER PANORAMA AND SANTA CLARITA. DCM SENT TO EE NEW LTD CLAIM LETTER WITH N&P AND LTD FORMS. FORMS DEADLINE: 3/30/2019. DCM SENT ESIGN, ONCE RECEIVED WILL REQ MEDICAL FROM TREATING PROVIDERS. UPON RECEIPT OF COMPLETED FORMS, DCM TO SUBMIT REQUESTS TO ALL OTHER AP PROVIDED FOR MED RECS, UPON RECEIPT OF MED RECS DCM TO PROCEED WITH MEDICAL REVIEW FOR OO DETERMINATION. ***DCM FINDS REASONABLE WITH AGE, INCOME AND DX TO REFER TO TCMS FOR REVIEW OF CLAIM REASSIGNMENT.

**02/19/2019 1:45 PM - DOCUMENT Note 1**
Claim/Event/Leave: 8741789
NoteSubject : eSignature
Other Subject : Document Requested

**02/19/2019 1:42 PM - PHONE Note 2**
Claim/Event/Leave: 8741789
NoteSubject : Initial EE Interview
Other Subject : COMPLETE
Text: [02/19/2019 - CAMPBELL, CARA]PC TO EE FOR II. EE AVAILABLE TO SPEAK. DCM CX DOB, ADDRESS, PH#, EMAIL. CX JD SALES AGENT. JOB DUTIES INCLUDE AT DESK, COMPUTER, PHONES, 1 OFFICE LOCATION NO TRAVEL. DOH 6/18/2013. LDW 5/14/2018. DOD 5/15/2018. DX INCLUDE EE HAD SHOULDER SX, C. WORK RELATED, EE ADV YES, WC CLAIM WAS DENIED, AND NOW WC STATUS IS PENDING FOR ADDITIONAL REVIEW. ANY PREVIOUS TIME OUT OF WORK FOR SAME CONDITION, YES, EE HAS SX ON RIGHT SHOULDER 7/25/2017, BILATERAL REPAIR, RETURNED TO WORK 11/1/2017 AND WENT IN FOR CORTISONE SHOT TXS AND WAS BACK OOW IN MAY 2018. EE NOW EXPERIENCING PAIN IN LEFT SHOULDER. COMORBIDS NONE, GENETIC HIGH CHOLESTEROL, NO MEDICATION NEEDED. EE HAD OV WITH AP HAROUIAN (SP?) 2/14/2019 AND NOV SCHED4/11/19. AP WORKS IN SAME FACILITY IN WHICH EE TX PAIN MANAGEMENT, SYNOPSE IN SHERMAN OAKS, CA. EE ADV WORKING WITH PM FOR 3-4 MONTHS. CURRENT R/LS, NO USE OF EITHER SHOULDER, NO REPETITIVE MOTION, NO REACHING OVERHEAD, NO LIFTING ABOVE A CERTAIN WEIGHT, WHICH EE ADV DOESN'T IMPACT HER OCC. EE ADV CAN TAKE CARE OF MOST THINGS TO AN EXTENT, BUT WHEN SHE SLEEPS BEING STILL AFFECTS IT, REPETITIVE MOTION WHEN CLEANING/ETC. TREATING PROVIDERS, KAISER, PANORAMIC CITY AND SANTA CLARITA. EE AGREED TO ESIGN NOW THAT EM ADDED TO CLAIM TO EXPEDITE KAISER MED REQ ON BEHALF OF EE. SALARY EE ADV LAST FULL YEAR WAS $134K WHICH IS WHAT THE STATE WENT OFF OF, DCM ADV NOT SURE HOW INCOME WOULD BE CALC'D WITH OOW BUT ADV PSU WORKS DIRECTLY WITH ER ON ISSUE. OTHER INCOME, STCA, EE AWARE WE NEED COPY OF EDD AWARD LETTER, EE CX RECEIVING MAX BNFTS FROM STATE. APPLIED FOR SSDI OR RETIREMENT, NO. MARITAL STATUS SINGLE. DEPENDENTS UNDER AGE OF 18? NONE. DCM EXPLAINED EP, BBD, BNFTS % & HOW BNFT PAID. EXPLAINED OWN OCC, ANY OCC, CLAIM PROCESS AND HOW DISABILITY IS DETERMINED. ADV OF LTD FORMS REQUIRED, MED RECS, AND NP DL OF 45 DAYS. EE ACK, NFQS, THANKS EXCHANGED, CC.

**02/15/2019 6:15 PM - PHONE Note 1**
Claim/Event/Leave: 8741789
NoteSubject : Initial EE Interview
Other Subject : ATTEMPT
Text: [02/15/2019 - CAMPBELL, CARA]LATE CLAIM NOTED, DCM LVM FOR II 2/14/2019.

**02/14/2019 10:14 AM - CLAIM Note 2**
Claim/Event/Leave: 8741789
NoteSubject : Other
Other Subject : ELIG
Text: [02/14/2019 - CAMPBELL, CARA]LDW 5/14/2018. DOD 5/15/2018. DOH 6/18/13. EWP 90 DAYS CONTINUOUS EMPLOYMENT. EDOC 9/16/13. LTD CLASS 2. STD MBD 11/15/2018. LTD BBD 11/13/2018. LTD MBD EE AGE 54 @ DOD = TO AGE 67 = 6/6/2030. PRIMARY DX UNKNOWN. OWN OCC REVIEW THRU 12 MONTHS. SALARY $ 10034.08/MONTH. JD SALES AGENT.

**02/13/2019 2:46 PM - CLAIM Note 1**
Claim/Event/Leave: 8741789
NoteSubject : Initial Entry
Other Subject :
Text: [02/13/2019 - NEWTON, CYNTHIA]CLAIM CREATED PER EMAIL.

LIB000010



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5855

| | |
|---|---|
| Date: April 16, 2020 | |
| To: KANTOR & KANTOR<br>19839 NORDHOFF ST<br>NORTHRIDGE CA 91324 | |
| Attn: | |
| Fax: (818) 350-6272 | |
| From: Kimberly Murray<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5855 | |
| Total Pages<br>(Including Cover): 9 | |
| RE:<br><br>Claim #: 8741789<br>Claimant: Vicki Collier<br><br>Auto Club Enterprises | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.º de septiembre de 2019, Liberty Life Assurance Company of Boston cambió su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto plazo recibirá un Endoso que debe adjuntarse a su póliza una vez recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**LIB000011**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5855

April 16, 2020

Kantor & Kantor
19839 NORDHOFF ST
NORTHRIDGE, CA 91324

RE:    Long Term Disability (LTD) Benefits
       Auto Club Enterprises
       Claim #: 8741789
       Claimant: Vicki Collier

To Whom It May Concern:

We reviewed your appeal request for Long Term Disability ("LTD") benefits and maintained the decision to deny benefits for your client, Vicki Collier.

**Initial Claim Decision**

Ms. Collier submitted a claim for her absence from work as of May 15, 2018, as a result of shoulder pain.  LTD benefits were due to begin on November 16, 2018 after the Policy's elimination period was completed.  However, Ms. Collier's claim was denied as the evaluation concluded she was not disabled throughout and beyond the Policy's elimination period.

The basis for the decision was outlined in a letter dated May 9, 2019. Ms. Collier was provided an opportunity to request an appeal review of the denial, stating the reasons why she felt that her claim should not have been denied, and submit additional information to support her claim. Specifically, Ms. Collier was advised to submit the following information: *All treatment notes, consultation reports, diagnostic test results, lab results, procedure reports, admit and discharge summaries, and pharmacy records from February 14, 2019 to the present from Kaiser. All treatment notes, consultation reports, diagnostic test results, lab results, procedure reports, admit and discharge summaries, and pharmacy records from February 26, 2019 to the present from Synapse.*

**Appeal**

In your letter of appeal dated October 24, 2019, you indicated Ms. Collier is totally disabled due to cervical radiculopathy, lumbosacral radiculopathy, bilateral shoulder impingement syndrome, bilateral elbow tendinitis/bursitis, bilateral wrist tendinitis/bursitis, and migraines.  She has functional limitations in multiple body parts.  She is unable to work full time in a job that she is qualified by training or experience.

In support of Ms. Collier's claim, you submitted a CD which contained over 500 pages of medical

1  of 8

LIB000012

information from various providers, including but not limited to a Functional Capacity Evaluation, Declarations, medical records, job performance evaluation and medical articles.

**Appeal Evaluation**

During the initial claim evaluation, Ms. Collier's claim was reviewed by Dr. Akhil Chhatre, an independent physician board certified in physical medicine and rehabilitation.   Based on his review of the medical records, Dr. Chhatre concluded the following:

> *The diagnoses are supported by the aforementioned surgery, cervical exam findings of spasms and tenderness over the paravertebral muscles and trapezius and interscapular area, discomfort with ROM, 4/5 strength of the right deltoid, positive impingement, positive Yergason test and Hawkins sign bilaterally, tenderness over the lateral epicondyle bilaterally, pain with resisted wrist extension, and positive Phalen bilaterally. On lumbar exam, she had tenderness and spasms in the paravertebral muscle, tender sciatic notch bilaterally, pain with toe and heel walks, pain with squatting, pain with ROM in all planes, negative SLR test, and 5/5 strength in BLE. The 10/10/16 MRI of the cervical spine showed a 1mm disc bulge at C3-4, a 2mm disc bulge at C4-5, and a 2mm disc bulge at C5-6 and C6-7. There is mild narrowing of the left neural foramen and moderate significant narrowing of the right neural foramen at the C6-7 level. The MRI of the right shoulder showed partial thickness of the articular surface supraspinatus tendon tear with moderate tendinosis, and AC joint osteoarthrosis is noted.*
>
> *From 05/15/18 to the present, there are no supported impairments. The claimant has stable exam findings with no new diagnostic testing or exam changes to suggest an acute neurologic or (musculoskeletal) MSK derangement.*

During the review of Ms. Collier's appeal, she attended an independent medical examination with Dr. Katrina Vlachos, an independent physician board certified in physical medicine and rehabilitation. The initial exam was scheduled for December 20, 2019; however, your office advised Ms. Collier was not able to attend that date. The examination was rescheduled and took place on January 27, 2020.   Based on her review of the medical records and the physical examination, Dr. Vlachos concluded the following:

> *Based on my evaluation of the claimant as well as review of the medical records and imaging studies, the claimant has impairments with regards to her neck, shoulders, and upper extremities as well as to her low back. The claimant's impairments with regard to her neck are based on pain with cervical range of motion and imaging studies showing loss of cervical lordosis as well as disc protrusion. With regard to her shoulders, the claimant has limitations with shoulder range of motion. She has limitation of right shoulder movement to 130 degrees of abduction and pain with Hawkins test on the right side. She has pain with range of motion as well as positive Hawkins' test and Speed's test on the left shoulder on examination as described in the physical examination portion. Her MRI of the right shoulder showed partial thickness tear of the supraspinatus and tendinosis of the infraspinatus and biceps tendon and she had well-healed surgical scars on the right shoulder. With regards to the elbows and forearms, she had tenderness along the medial and lateral epicondyle on the left. She had tenderness along the lateral*

**LIB000013**

*epicondyle on the right and pain with resisted finger extension bilaterally. She also had some discomfort to palpation along the left wrist. She perceives numbness in her fingers and toes. This however has not been corroborated with any electrodiagnostic finding, although she does have diminished sensation in the left thumb and the medical records do document diminished sensation in the C5 and C6 distribution as well as documented weakness in the deltoid region, which was not appreciated on my examination. An MRI of the cervical spine showed loss of the normal cervical lordosis with degenerative changes and disc bulges with no significant foraminal stenosis. With regards to the low back, she has pain with lumbar range of motion particularly with lumbar flexion. Her lumbar MRI showed an annular fissure as well as mild disc desiccation. She has had her medical providers document her cervical spine and shoulder findings as well as her lumbar spine diagnoses in their medical records and give restrictions for these areas as well.*

*Based on my evaluation of the claimant, there are medically supported impairments with regard to the claimant's cervical spine, bilateral shoulders, bilateral elbows and forearms, and the lumbar spine. These would translate into the following medically supported restrictions and limitations.*

*The claimant indicates that she has low sitting tolerance and her self-reported sitting tolerance is 30-45 minutes. Sitting causes her discomfort in her neck and low back. Lumbar examination shows diminished range of motion with pain and spasm. It is my medical opinion that the claimant can sit for up to 30 minutes at a time after which she will require a position break for up to 5 minutes before she can resume a seated position. She can continue to work during this break. The claimant can sit for a total of 6 hours in an 8-hour workday. She would benefit from a sit-stand desk.*

*The claimant indicates a self-reported standing limitation of 30-45 minutes that causes her pain in the low back. She indicates that she does not have any limitation and is able to walk relatively comfortably. It is my professional opinion that the claimant can stand or walk up to 30 minutes at a time with the ability to change positions for at least 5 minutes before resuming standing or walking. She can continue to work during this break. She can stand and walk for a combined total of 4 hours in an 8-hour workday. The claimant would benefit from an ergonomic workstation and again a sit-stand at desk, so she is able to change positions frequently as this would mitigate her symptoms such that she would be in less pain and be able to function at a higher level.*

*With regards to reaching, the claimant may reach on an occasional basis in all planes. The basis for this reaching restriction is based on her perceived shoulder pain and the fact that she has had prior shoulder surgery and has partial thickness rotator cuff tear, she has pain in her cervical spine as well as in her lumbar spine and it is felt that reaching on a more frequent basis than occasionally in all planes would result in pain such that she would not be able to continue working and her symptoms would exacerbate.*

*She may lift and carry up to 10 pounds occasionally. She may push and pull up to 20 pounds occasionally.*

*The claimant may perform tasks with regards to fingering, feeling, gripping, and grasping*

3  of 8

LIB000014

*on an occasional basis. She may benefit from voice activated software should she require any computer work. The basis for her upper extremity gripping, grasping, etc limitations are based on the fact that she has pain with her upper extremities, she has tenderness along the medial and lateral epicondyle on the left and the lateral epicondyle on the right. She has pain with resistant finger extension bilaterally at the elbow. Limiting the claimant's fingering and typing to occasional would not only take into account her perceived limitations, but also minimize any flare-ups of pain such that she would be able to function at a higher level.*

*It is my professional opinion that in describing these restrictions and limitations, it is important take into account the medical provider's restrictions and limitations, observations and examination findings of the claimant as well as the claimant's perceived limitations. There have been restrictions and limitations that were provided by her treating physician, Dr. Haronian in her permanent and stationary report. The work restrictions by Dr. Haronian were noted to be "cervical spine, the claimant is precluded from extended upward and extended downward gazing; lumbar spine, the claimant is precluded from repetitive bending and twisting of the lumbar spine; bilateral shoulders, the claimant is precluded from repetitive activities at or above the shoulder levels; bilateral elbows, the claimant is precluded from repetitive torquing; bilateral wrists, the claimant is precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching." Additionally, she had a QME report by Dr. Arora, which gave her restrictions of "avoid heavy lifting more than 20 pounds and reaching above her head." It is my opinion that these restrictions and limitations are accounted for in my restrictions that were noted above and that based on the claimant's ongoing pain and the fact that she has been made permanent and stationary, these restrictions would likely be permanent.*

On February 11, 2020, a letter was sent to you which included a copy of the Independent Medical Evaluation to you.  The purpose of the letter was to provide you with an opportunity to review and comment on new/additional evidence that has been received before a decision was rendered on Ms. Collier's appeal.

On March 10, 2020, we received your response, along with 180 pages of additional information in support of Ms. Collier's appeal. This information disputed the findings of the independent medical evaluation(IME). The letter indicated Ms. Collier has a previous QME which supported restrictions and limitations.  The information also included a statement from Ms. Collier which outlined her disagreement with the information contained in the IME report.

Ms. Collier's claim was previously reviewed by a vocational consultant, who completed an occupational analysis in order to identify the material and substantial duties of her occupation as it is normally performed in the national economy. The analysis showed the occupation as Insurance Sales Agent is typically performed at both the sedentary and light physical demand levels.

This occupation can be completed as an inside sales agent or as an outside sales agent. Sales agents, at the light physical demand level, may be on their feet more than occasionally when meeting with customers, presenting and traveling to meetings. Inside sales agents complete more work via computer, in person meetings, and telephone in an office setting.

LIB000015

"**S-Sedentary Work -** Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."

Positional requirements in sedentary environments include:

- **Constant** sitting
- **Frequent** handling and fingering
- **No and Occasional** standing, walking
- **No** reaching (reaching can be eliminated by moving objects an ergonomically correct distance from the body), bending/stooping, twisting, kneeling, crouching/squatting, crawling, climbing or balancing

The Department of Labor defines light work as,

"**L-Light Work -** Exerting up to 20 pounds of force occasionally, and /or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects. Physical demand requirements are in excess of those for sedentary work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible."

Positional requirements in light environments include:
- **Frequent** standing, handling and fingering
- **Occasional and Frequent** reaching, sitting
- **Occasional**, walking, bending/stooping, twisting
- **No** climbing, kneeling, crouching/squatting, crawling or balancing

Based on the standard vocational resources outlined above, coupled with my vocational expertise, part-time opportunity does exist in this occupation.

Our role in reviewing Ms. Collier's file is to determine whether her medical condition and the medical documentation contained in her file supports that she was unable to perform the material and substantial duties of her own occupation. We are not required to ensure the availability of this occupation or that she return to active employment with her former employer in the same or different position.

Based on our review, which includes an independent medical evaluation, we have determined the records does not support Ms. Collier met the definition of disability from May 15, 2018 forward.

5  of  8

LIB000016

The independent medical examiner's conclusions were in line with the restrictions and limitations outlined by Dr. Haronian and Dr. Arona.

Ms. Collier indicates she would not be able to do her job duties at Auto Club of Southern California. She is insured for his own occupation, so job specific tasks are only relevant insofar as they assist the expert in identifying the appropriate occupation.  There are a myriad of jobs in the national economy that have occupations that do not match with regard to physical demands where the job may be heavier than the occupation.  It is the tasks and essential functions that are paramount and lead a vocational expert in identifying the correct occupation.  The job and occupational physical requirements do not need to match. Given what appears to be a loose interchange of the terms job and occupation, it may be helpful to clarify them. They are described in detail in The Quick Desk Reference for Forensic Rehabilitation Consultants (Elliott & Fitzpatrick, Inc., 2005). It reads,

> "A **job** is a group of positions within an establishment which are identical with respect to their major or significant tasks and sufficiently alike to justify their being covered by a single analysis. There may be one or many persons employed in the same job.

> An **occupation** is a group of jobs, found at more than one establishment, in which a common set of tasks are performed or are related in terms of similar objectives, methodologies, materials, products, worker actions, or worker characteristics." (page 48).

It is also important to circle back to the purpose of this review. This is a review of the **occupation** as it is normally performed in the national economy (not the **job** at Auto Club of Southern California).

In addition, ergonomic equipment is readily available and the occupation can be performed in a part time capacity.

## Conclusion

We conducted a thorough and independent review of Ms. Collier's entire claim.  In summary, we acknowledge that she may have continued to experience some impairments and symptoms associated with her condition.  However, the information does not contain physical exam findings, diagnostic test results or other forms of medical documentation supporting her impairments and symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering her unable to perform the duties of her occupation throughout and beyond the Policy's elimination period.

Having carefully considered all of the information submitted in support of her claim, our position remains that proof of her continued disability in accordance with the Policy provisions has not been provided.  Therefore, no benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

## Policy Provisions

In order to receive benefits, you must satisfy the requirements of all Policy provisions that state, in

LIB000017

part:

*"Disability" or "Disabled" means:*
*i. that during the Elimination Period and the next 12 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way; and*

*"Own Occupation" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by Lincoln Life Assurance Company of Boston, and to submit any additional information you wished to be considered as part of the appeal. Lincoln Life Assurance Company of Boston has conducted a full and fair review of Ms. Collier's appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, Ms. Collier's administrative right to review has been exhausted; no further review will be conducted by Lincoln Life Assurance Company of Boston and her claim will remain closed.  You may request to receive, free of charge, copies of all documents relevant to her claim.  You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.  In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law.  Your employer's plan has a contractual limitations period of 3 years, which means that a lawsuit must be brought within 3 years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is June 15, 2023.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Life Assurance Company of Boston rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Life Assurance Company of Boston are based on the provisions outlined in Auto Club of Southern California's Policy.  These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities.  No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

7  of 8

Shá ata' hane'go shíká a'doowoł nínizingo saad hosinitįį' dóó ná'ookąąh nííní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bąąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Kimberly Murray
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16399
Secure Fax No.: (603) 334-5855

LIB000019



**Northern CA Office:**

1050 MARINA VILLAGE PKWY., STE. 105   ALAMEDA, CA 94501

TEL (510) 992-6130 ▪ FAX (510) 280-7564

*www.lifeanddisabilitylaw.com*

From: Kantor and Kantor LLP

DATE: 3/20/2020 4:25:28 PM PDT

TO:

Company:

Reference: Vicki Collier; Claim No.: 8741789

Message:

Nicole Herbert, Paralegal
**KANTOR & KANTOR, LLP**
T: 510.992.6130   |   F: 510.280.7564
1050 Marina Village Pkwy., Suite 105
Alameda, CA 94501
Los Angeles | Bay Area | San Diego
California Offices. Nationwide Capabilities.
www.kantorlaw.net

**LIB000020**



**Northern CA Office:**

1050 MARINA VILLAGE PKWY., STE. 105
ALAMEDA, CA  94501

TEL (510) 992-6130 ▪ FAX (510) 280-7564

*www.lifeanddisabilitylaw.com*

Sender's e-mail:
zyarnykh@kantorlaw.net

March 20, 2020

**VIA FACSIMILE ONLY {603.334.0419}**

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group Company
*Attn: Kimberly Murray, Appeal Consultant*
Appeal Review Unit
P.O. Box 7213
London, KY 40742-7213

|  |  |  |
|---|---|---|
| RE: | **Appeal of Denial of LTD Benefits** | |
| | Name: | Vicki Collier |
| | Claim No.: | 8741789 |
| | Plan: | Auto Club Enterprises |

Dear Ms. Murray:

I am writing concerning the above-referenced claimant and the appeal which is currently under submission.  Please be advised that on March 19, 2020, California Governor Gavin Newsom issued Executive Order N-33-20 ("Order"), directing all individuals living in the State of California to stay home or at their place of residence, except as to maintain continuity of operations of the federal critical infrastructures.  In compliance with the Order, our firm's employees are working primarily from their residences and we will not be able to monitor mail on a daily basis.  We also anticipate future difficulty with the ability to send and receive physical correspondence, whether through the United States Postal Service or by private carriers.

**To ensure that there is no delay in our receipt of communications about this claim, please fax all future communications to 510-280-7564.  This is to ensure that we can promptly address any requests for information.**  If you have any questions about this request, please feel free to call me directly at 510-379-5818 or via zyarnykh@kantorlaw.net.

Sincerely,
KANTOR & KANTOR, LLP

Zoya Yarnykh, Esq.

**LIB000021**



## Network Medical Review Co. Ltd.
### An ExamWorks Company

| | | |
|---|---|---|
| **REFERRED BY:** | Kimberly Murray | |
| **CLIENT NAME:** | LINCOLN FINANCIAL GROUP (IME) - LLAOB | |
| **CLAIMANT NAME:** | Vicki Collier | |
| **CLAIM #:** | 8741789 | |
| **NMR #:** | 307803 | |
| **JOB TITLE:** | Sales agent | |
| **DOD:** | 05/15/2018 | |
| **REFERRAL DATE:** | 01/03/2020 | |
| **DOE:** | 01/27/2020 | |
| **REPORT DATE:** | 01/30/2020 | |

### INDEPENDENT MEDICAL EXAMINATION

**REFERRING DIAGNOSIS:**     Unspecified sprain of shoulder joint

### RECORDS PROVIDED FOR REVIEW:

| | | |
|---|---|---|
| PROGRESS NOTES | Kaiser Permanente | 05/10/18-08/30/19 |
| PROGRESS NOTES | Synapse Medical Group | 09/05/18-10/15/19 |
| FCE | S. Jurado, D.P.T., CEAS | 09/13/19 |
| IME | R. Arora, M.D. | 10/11/18-10/24/18 |
| IME | S. A. Rubin, M.D. | 11/15/19-11/21/19 |
| FILE REVIEWS | A. Chhatre, M.D. | 05/08/19 |
| LAB/DIAGNOSTICS | Kaiser Permanente | 07/30/18-02/14/19 |
| CT/MRI | Kaiser Permanente | 10/10/16-04/09/18 |
| MRI | A. Safvi, M.D. | 02/21/19 |
| JOB | | |
| OTHER | J. G. Howard, M.R.C., C.R.C. | 03/02/19 |
| MISC | | 06/18/13-11/22/19 +Undated |
| ROI | | 09/15/18-07/08/19 |

To Whom It May Concern:

At your request, Ms. Vicki Collier was seen for an independent medical evaluation on 01/27/20. Prior to the evaluation, it was explained to Ms. Collier that this appointment was for the purpose of evaluation only and not for care, treatment, nor consultation. Therefore, no doctor-patient relationship would result. Ms. Collier has also been advised that I am an independent doctor and have been requested to conduct this evaluation by the group noted above. Ms. Collier was examined at my Marina del Rey office. She arrived on time and was by herself. She provided photographic identification consisting of her driver's license for the purpose of the visit.

**4960 East State Street** ● **Rockford, IL 61108** ● **Phone  815.964.6334** ● **Fax  815.977.9882**

*website*  **www.nmrco.com**  ■  *email*  **RockfordIMEDepartment@examworks.com**

**LIB000022**


Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803
**Page 2**

**MEDICAL RECORDS REVIEW:** On 05/10/18, this is a progress note by Patrick Anthony Dimartini, MD. The patient complains of tinnitus, got worse over the last week, no change in hearing. Assessment is bilateral subjective tinnitus. The plan is perhaps eustachian tube plugged, try Sudafed, try Flonase, referred to audiology.

Progress note, 05/14/18, by Sovanrith Tun, MD. Chief complaint is persistent pain in bilateral shoulders, had left cortisone injection in the shoulder helped, has tried Norco, meloxicam, and Neurontin. There is moderate pain, working on an ergonomic workstation. No atrophy is noted. Abduction is noted to be 90, forward flexion 90, external rotation 70, internal rotation 20. Impingement sign is positive. Impression is bilateral shoulder rotator cuff syndrome. Plan is activity modification, meloxicam, Norco, will be stopping her current job, follow-up is p.r.n.

On 05/14/18, this is a work status report by Dr. Tun. Diagnosis, bilateral rotator cuff syndrome. The patient is placed on modified duties from 05/14/18 through 07/15/18 with restrictions of no typing, no use of both shoulders and arms.

07/06/18, progress note by Dr. Tun., right shoulder partial rotator cuff tear, partial intratendinous supraspinatus tendon tear, persistent pain in bilateral shoulders, does physical therapy at Henry Mayo. Range of motion and exam was unchanged. Impression, bilateral shoulder rotator cuff syndrome. Plan is activity modifications, meloxicam, stop current job, bilateral cortisone injections for forearms, right shoulder arthroscopy, right rotator cuff repair if pain persists, follow-up p.r.n.

07/06/18, work status report by Dr. Tun, the patient on modified duties from 07/16/18 to 08/31/18 with restrictions of no typing or use of both shoulders and arms. The patient was scheduled for Botox on 07/20/18.

Neurology follow-up on 07/20/18 by Esther Chuanwah Wang-O'Connell, MD, the patient has diagnosis of chronic migraines and headaches, feels Botox helped. She denies any migraines in the past three months, feels shoulder and neck much relaxed. Assessment is chronic migraine headache, failed multiple treatments and is now exploring Botox. Injections of Botox were performed. Follow-up in three months. Keep headache diary. Plan is chemodenervation muscles innervated by facial, trigeminal, cervical spinal, and accessory nerves bilateral.

07/30/18, progress note by Dr. Colleen Bogdanich, the patient is afraid that she might have genital warts, has some discomfort with sex. Exam performed. Plan is HPV test, hormone, gynecology, cytology.

Progress note, 08/22/18, by Brian Brosnan, MD, the patient received Botox to her lips.

08/27/18, telephone conversation by Dr. Tun, the patient complains of bilateral shoulder pain, pain with prolonged activity, requests work restrictions, offered earlier surgery, but not possible because of health coverage.

Work status report, 08/27/18, the patient was placed on modified work from 09/01/18 to 10/31/18. Restrictions are no typing or use of shoulders and arms bilaterally.

4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882
*website* www.nmrco.com ■ *email* RockfordIMEDepartment@examworks.com

**LIB000023**



10/16/18, progress note by Shahram Gharibshahi, MD, the patient received Botox for headaches for chronic migraine.

Progress note by Maria Oculam, PA. The patient has right rotator cuff tear, booked for postop visit, but canceled surgery due to family issues, to ask for Norco, will rebook. Plan is Norco prescribed. The patient will call for surgery.

01/17/19, progress note by Sonu Brara, MD, the patient presents for Botox for headaches, received Botox injections for chronic migraine.

01/31/19, progress note by Esther Chuanwah Wang-O'Connell, MD, the patient presents with vulvar itching. Assessment and plan is overactive bladder, start Ditropan, check urine, postmenopausal atrophic vaginitis, wear comfortable underwear, use Estrogen cream, will follow up on bladder findings, ultrasound of bladder and urinalysis is ordered.

02/04/19, telephone visit with Esther Chuanwah Wang-O'Connell, MD, the patient is concerned about carotid arteries. She said that her mother had problem with them. Plan is advised regular exercise and healthy eating. ASCVD risk score discussed. Carotid duplex ordered. CBC ordered.

02/13/19, carotid artery duplex, right side normal and left side normal.

03/21/19, Catherine Close, MD, the patient presented for skin check. She was seen and examined.

03/28/19, progress note with Sylvia Mann, MD, follow-up for genital warts and vaginal itching.

This is a progress note by Edwin Haronian, MD, progress note date of service 09/05/18, Ms. Collier states she was sustained cumulative trauma injuries to her neck, shoulders, bilateral upper extremities, forearms, elbows, hands, wrists, back, head, lower extremities, during the course of her employment as an insurance agent for The Auto Club. She has noted pain since late 2016, developing gradually. She had cortisone injections, had x-rays and MRI of her shoulder. On 07/25/17, Dr. Tun performed right shoulder surgery and she received physical therapy. She remained on total temporary disability through 11/21/17. She also received an epidural injection to her lower back and Botox injections to her shoulder and neck. She is presently not working and last worked on 05/22/18. She complains of headaches, constant pain in the neck with numbness radiating into her arms, frequent pain in the shoulder with stiffness, frequent bilateral elbow pain, intermittent bilateral wrist and hand pain, and frequent middle and low back pain. On examination, there was no spasm. She had normal range of motion of the cervical spine. Normal reflexes and diminished strength to the bilateral deltoid at 4/5. Sensation was intact. Impingement and Hawkins signs were present on the right and left. Elbow examination showed normal range of motion. There was tenderness along the distal radius. Lumbar examination showed straight leg raise positive bilaterally. Reduced tendon reflexes at the ankle bilaterally. She had normal strength in lower extremities. Diagnoses, cervical radiculopathy, lumbosacral radiculopathy, bilateral shoulder impingement, bilateral elbow tendinitis/bursitis, and bilateral wrist tendinitis/bursitis.

4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882

*website* www.nmrco.com ■ *email* RockfordIMEDepartment@examworks.com

LIB000024



Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 4

Discussion, the patient presents complaining of neck pain radiating to the upper extremities with associated numbness, shoulder pain, with decreased range of motion and strength, elbow pain, and wrist pain. Request authorization for neurodiagnostics of the upper and lower extremities, request 12 sessions of physical therapy, and request gabapentin. She may return to the workplace, but should not lift, push, or pull more than 10 pounds. She should not perform bending, twisting activities, or place the spine in unusual or awkward positions. She should not perform repetitive hand motions, pinching or grasping bilaterally. She will return in four weeks, at which time further recommendations will be made. Whole person impairment was noted to be 21%.

This is a PR2 by Dr. Haronian. Date is 09/05/18. Subjective complaint is cervical pain. Objective findings, loss of range of motion. Diagnoses, radiculopathy, lumbosacral region; impingement syndrome, shoulders; olecranon bursitis, elbows; and periarthritis, unspecific wrist. Treatment plan is non-surgical. Request EMG upper and lower extremities, physical therapy, and Neurontin. Work status is modified work with the following restrictions: Avoid lifting over 10 pounds, avoid pushing or pulling over 10 pounds, avoid bending and twisting completely, restrict from placing the spine in unusual and awkward positions, avoid repetitive hand motions completely with both hands, and avoid pinching and grasping completely with both hands. The patient should remain on totally temporary disability if work modifications cannot be accommodated by the employer.

This is a note by Dr. Haronian dated 09/07/18, referred to physical therapy.

This is a progress note by Dr. Haronian dated 10/10/18. She continues to complain of neck and back pain radiating to the upper extremities and lower extremities. Exam showed spasm, tenderness, and guarding in the paravertebral musculature of the cervical spine. Decreased sensation was noted in the C5 dermatome. She has mild impingement and Hawkins signs with range of motion of the shoulders with flexion of over 120 degrees on the left and 100 degrees on the right. Current work restrictions will continue. She will return in four weeks' time with prior medical records. Diagnoses are unchanged.

Progress note by Dr. Haronian dated 11/14/18. The patient has brought with her some MRI studies from Kaiser, which were reviewed. Waiting for QME report. The patient is complaining of left shoulder pain and severe low back pain. Until QME report is available, he will continue modified work duties, follow up few weeks and make further recommendations then.

11/29/18, progress note by Dr. Haronian, the patient is requesting refill of Norco. She was provided with 30 tablets. Request referral to pain management if she is to continue to use opioids. The work restrictions are unchanged.

12/13/18, this is a progress note by Jonathan Kohan, MD, secondary treating physician pain management initial report. The patient was seen for pain management. Present complaints include headaches, electrical type neck pain, bilateral shoulder pain, bilateral elbow pain, intermittent pain in both wrists and hands, upper and lower back pain, intermediate sharp knee pain, and ongoing numbness and tingling in both feet. She was noted to have spasm and pain in the cervical spine with normal range of motion and normal strength. She had decreased sensation in the C5 and C6 dermatomes on the right and C5 on the left. Shoulder examination showed normal range of motion. Lumbar spine exam showed diminished range of motion with pain and spasm and a negative straight leg raise bilaterally. She was

**4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882**
*website* **www.nmrco.com ■** *email* **RockfordIMEDepartment@examworks.com**

**LIB000025**



Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                                    **NMR#:** 307803
**Page** 5

noted to have normal strength and sensation.  MRIs were reviewed.  Impression, cervical disc protrusion, cervical radiculopathy, history of right shoulder surgery with residual pain, exacerbated lumbar pain with a component of sacroiliitis, and lumbar radiculopathy.  Recommendation is to continue Norco, await MRI findings, and may benefit from spinal injections.

01/03/19, this is a progress note by Dr. Haronian.  The patient continues with upper and lower back pain with radiation to the upper and lower extremities.  She is under the care of pain management receiving Norco and taking gabapentin.  She has spasm and tenderness in the paravertebral muscles with decreased range of motion on flexion and extension.  Request MRI of the low back, request authorization for Neurontin, work status is unchanged for modified duty, follow-up in four weeks.

Supplemental report by Dr. Haronian dated 01/20/19.  The QME report of Dr. Arora was reviewed.  It appears that the neck and lower back issues are non-industrial.  He provided the patient with 4% impairment of the whole person and provided the patient with future medical.  Dr. Haronian feels that due to deferring opinions between Dr. Arora and himself, it is likely that no further authorizations would be provided.  As such, the patient would be declared permanent and stationary as he will be unable to provide the claimant any further treatment.

01/28/19, this is a progress note by Dr. Kohan, a review of medical records was performed.  The patient is not undergoing therapy for treatment, but continues to have difficulty controlling her pain in the neck, shoulder, and low back.  She ran out of Norco.  Naprosyn and over-the-counter medicines have not been helpful.  She has tenderness and spasm over the cervical spine extending to the trapezius and deltoid.  Lumbar spine tenderness over the sacroiliac joint.  Impression is history of right shoulder arthroscopic surgery with residual pain, cervical disc protrusion with component of radiculopathy, and exacerbated lumbar pain with component of sacroiliitis.  Considering her work duties at AAA with her capacity, pain seemed reasonable and work-related.  The patient's options are limited.  MRI was not done, but she has component of sacroiliitis.  Norco will be refilled and increase gabapentin, follow-up in one month.

01/31/19, permanent and stationary report from Dr. Haronian, history and job description were reviewed.  Physical exam showed tenderness and spasm over the paravertebral musculature in the upper trapezius region.  Range of motion was accomplished with discomfort and spasms.  Reflexes were normal and symmetric with negative Hawkins.  She had 4/5 strength in the right deltoid, otherwise 5/5 strength.  She had intact sensation.  Impingement signs showed positive Hawkins on the right and left.  She had tenderness over the lateral epicondyle bilaterally.  She had tenderness over the distal radius bilaterally.  Lumbar exam showed tenderness and pain in the paravertebral musculature with spasm and pain.  She had normal strength in the lower extremities.  She had diminished sensation in the right L5 distribution.  Hip range of motion was normal.  Diagnoses are cervical spine radiculopathy, lumbar spine radiculopathy, bilateral shoulder impingement, status post right shoulder arthroscopy, bilateral elbow tendinitis, and bilateral wrist tendinitis.  The patient has been seen by a number of physicians and has had conservative treatment, which is unlikely to help her.  She has reached maximum medical improvement.  The patient is precluded from extended upward and extended downward gazing, precluded from repetitive bending and twisting of the lumbar spine, precluded from repetitive activities at or above the shoulder level, precluded from repetitive torqueing, and precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching.  The patient can return to work with restrictions that have been provided.  The patient should have access to future medical care.  It is

4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882
*website*  www.nmrco.com  ■  *email*  RockfordIMEDepartment@examworks.com

LIB000026

**NMR**
Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier          **NMR#:** 307803
**Page** 6

within reasonable medical probability the patient has sustained injuries to the cervical and lumbar spine, bilateral shoulders, elbows, bilateral wrists due to continuous trauma activities at work. Apportion 20% of preexisting degenerative changes of the cervical and lumbar spine and 80% to direct effect of the continuous trauma. For the shoulders, elbows, and wrists, 100% of the patient's disability is the direct effect of the continuous trauma. She is noted to have final whole person impairment of 30%.

02/14/19, this is a follow-up report and review of records from Dr. Haronian, reviewing the report from Dr. Arora. The patient was declared permanent and stationary. She could return to Dr. Haronian on an as needed basis.

02/25/19, progress note by Dr. Kohan, the patient continues to have pain and difficulty with her neck and shoulder with moderate-to-severe spasm over the cervical spine extending to the trapezius and deltoid. No additional treatment has been allowed through Dr. Haronian's office. She was given Norco. Follow up next month.

03/13/19, supplemental report from Dr. Haronian. He would respectfully disagree with Dr. Arora regarding the opinion on industrial causation. Dr. Arora did not feel that the cervical and lumbar spine were industrially related. Part of Dr. Haronian's whole person impairment was related to the cervical and lumbar spine based on information provided to him. He requests the medical records provided to and the ability to change his opinion should any additional records be available.

04/01/19, progress note by Dr. Kohan. Lumbar spine MRI from 02/15/19 showed a small disc protrusion at L5-S1. She will continue with Norco and gabapentin as injections have not provided her with much relief. She was reminded to make any attempt to reduce anxiety or any issues with her sleep to avoid any further exacerbations of myofascial pain.

Progress note dated 04/11/19 by Dr. Haronian, the patient is back without significant change. She has been declared permanent and stationary due to lack of authorization. She continues to suffer from pain. She can continue using nonopioid anti-inflammatory medications. Her work restrictions are guarded by the permanent and stationary report. She will follow up in six weeks.

05/07/19, progress note by Jonathan Kohan, MD. She is not undergoing therapy or any modes of treatment. She has not been back to work, but reports increasing level of low back pain. She is taking Norco and gabapentin. She has tenderness over the paravertebral area, which extends to the SI joint. She has tenderness and moderate spasm in the trapezius and deltoid. He does not believe injection would be beneficial aside from trigger point injections. Recommended Norco and Neurontin and follow-up in one month.

05/16/19, progress note by Dr. Haronian, the patient has been made permanent and stationary. She continues to show spasm, tenderness, and guarding in the paravertebral musculature of the cervical and lumbar spine. She has flexion and abduction to 120 degrees. She has decreased grip strength. Medications will be refilled. Work restrictions per the permanent and stationary report. Follow up in eight weeks.

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  **www.nmrco.com** ■ *email*  **RockfordIMEDepartment@examworks.com**

**LIB000027**

NMR
Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier                                    **NMR#:** 307803
**Page** 7

06/04/19, progress note by Dr. Kohan, she has ongoing neck and shoulder pain. Low back pain is less, but has difficulty lifting, pushing, and pulling. She has tenderness over the cervical spine extending to the trapezius and deltoid. She has not been able to get treatment because of issues surrounding her claim. She will continue with Norco and gabapentin.

07/09/19, progress note by Dr. Kohan, she developed depression due to exposure of modus operandi of the carrier. She has been taking Norco and gabapentin. Her exam is unchanged. Plan is prescribed Cymbalta to address insomnia, depression, and neuropathic pain. Follow up in four weeks.

This is a supplemental report and record review by Dr. Haronian dated 07/10/19, he was provided with notes from Dr. Arora and he remained in disagreement with the assessment of the QME over the body part in question regarding her cervical and lumbar spine and the acceptance of the claim regarding these areas.

07/11/19, progress note by Dr. Haronian, she continues to have pain and has seen pain management, who prescribes her medications. He recommends continuing and reducing the opioid medications as much as possible. Ibuprofen will be provided with Prevacid. He will see her back at a lesser frequency as she has been declared permanent and stationary.

09/26/19, supplemental report and review of records by Dr. Haronian, MRI of the right shoulder revealed a partial thickness supraspinatus tendon tear. MRI of the cervical spine was reviewed. He disputes the medical-legal evaluator's note. Dr. Haronian provided restrictions to avoid lifting more than 10 pounds and avoid repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching due to her wrist complaints. It would be reasonable to indicate that the patient will not be able to perform her previous work activities as indicated in his report dated 01/31/19. Ms. Collier underwent a functional capacity evaluation on 09/12/19 and 09/13/19 to obtain objective measurement of her physical capacity for work. It was recommended that the claimant can sit occasionally up to 3 hours per day, stand occasionally up to 3 hours per day, walk occasionally up to 3 hours per day, climb 5 flights, bend and squat 10 reps, reach overhead 40 reps, and push and pull 36 pounds. She is unable to return to work with the above parameters. This is a functional capacity evaluation report dated 09/13/19 indicating that based on the test results, the client gave maximum effort with testing. She had 98% consistency with coefficient of variance measurements below 15%. Although the claimant presented with functional limitations on the first day of testing, her performance and activity tolerance declined on day 2. She presents with deficits in strength of her upper and lower extremities. She has difficulty with tasks involving repetitive bending, squatting, and stair climbing and activity tolerance declined on day 2. Based on testing, the client is unable to perform sedentary work as she is unable to maintain static sitting for approximately 2 hours continuously and up to 6 hours a day.

10/11/18, this is a qualified medical examination in pain management by Ripu Arora, MD. She has pain in her neck, shoulder, lower extremities, headaches, forearm, elbows, and shoulder blade pain, upper back pain because of the lack of the ergonomic furniture provided to her at the work location. She has been seeking medical attention. Neck shows trigger point spasm and tenderness on the left side. She has diminished shoulder range of motion on the right and left. She is able to flex and extend her lumbar spine to 60 and 20 degrees bilaterally. Diagnoses are cervical radiculopathy, right shoulder status post rotator cuff repair with pain, left shoulder pain, sacroiliac pain bilaterally and low back pain. No

LIB000028



medical records were available for review.  He is unable to comment on apportionment or permanent and stationary status.

10/24/18, this is a supplemental report by Dr. Arora.  A record review was performed.  He indicates that after reviewing the records, there are differences between her history and the examination of the medical records provided.  She has been complaining of symptoms during the 2005 to 2009 timeframe and it is his medical records that the back pain and neck pain as well as hemorrhoids are not out of employment. She started complaining of shoulder pain in 2015.  It is his medical opinion that the right shoulder injury is related to employment.  It is his opinion that she has reached permanent and stationary status.  There is no apportionment for the right shoulder.  The neck and back are 100% non-industrial.  She has 9% total whole person impairment.  She is healing from shoulder surgery and should avoid heavy lifting more than 20 pounds and reaching above her head and follow-up would be advised by an orthopedic surgeon.  She may need physical therapy 6-12 sessions for pain.

This is a peer review by Akhil Chhatre, MD.  Records were reviewed and response to questions were performed.  He was unable to talk with Dr. Haronian.  The diagnoses supported by the medical evidence are chronic low back pain, neck pain, and right shoulder pain, status post right shoulder arthroscopy. There are no supported impairments from 05/15/18 to the present.  She has stable exam findings with no new diagnostic testing.  The MRI of the cervical spine from 2016 is without any updated findings.  The right shoulder MRI is undated.  The claimant has stable exam findings with no new testing to suggest acute neurologic or musculoskeletal derangement.  The claimant does not have supported impairment. The claimant is medically stable with diagnostic testing.  The severity and scope are not in line with the chronic and stable conditions that are supported by the medical records.  There is no evidence to support impairments related to prescribed medications.

MRI of the cervical spine dated 10/10/16 shows straightening of the normal lordotic curvature.  1 mm broad-based posterior disc bulge at C3-C4 indenting the anterior aspect of the thecal sac.  2 mm central posterior disc protrusion at C4-C5 causing pressure over the anterior aspect of the thecal sac.  There is a 2 mm broad-based posterior disc endplate osteophyte complex at C5-C6 causing pressure over the anterior thecal sac.  There is a 2 mm broad-based posterior disc protrusion at C6-C7 causing pressure over the anterior thecal sac.  There is mild narrowing of the left neural foramen and moderately significant narrowing of the right neural foramen.

MRI of the right shoulder dated 07/05/17 was reviewed showing impression 9 mm approximately 50% partial-thickness articular surface supraspinatus tendon tear on a background of moderate tendinosis. Infraspinatus and superior fiber subscapularis mild tendinosis.  Proximal long head of biceps mild tendinosis.  Minimal subacromial-subdeltoid bursitis and acromioclavicular joint osteoarthrosis.

MRI of the lumbar spine dated 02/15/19 shows impression anterior osteophytes at T12 down through L5.  Mild disc desiccation at L2-L3 down through L5-51.  Anterior loss of disc height is seen at L5-S1. There is no significant disc herniation or neural foraminal narrowing visualized.  The spinal canal is patent.  Exiting nerve roots are normal.  Left lateral annular fissure is identified.  A mild disc bulge is identified at L5-S1 measures 2.6 mm.  Exiting nerve roots are normal.

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  **www.nmrco.com ■** *email*  **RockfordIMEDepartment@examworks.com**

**LIB000029**

**NMR**
Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier                                    **NMR#:** 307803
**Page** 9

An occupational analysis dated 03/02/19 was reviewed with a summary indicating that the job that she performed at AAA was within the sedentary and light physical demand profile. It is reasonable to conclude that the occupation exists in both full-time and part-time positions. This is performed by Jane Howard, and she has not met with the claimant.

Blood work from Kaiser Permanente was reviewed and correspondence was also reviewed between the claimant's attorney as well as Liberty Mutual and treating physicians.

The claimant's job title as well as her job performance were reviewed.

This is a functional capacity evaluation done by Ergo Links Sebastian Jurado, DPT performing functional capacity evaluation with recommended physical demands of sitting less than 30 minutes continuously up to 3 hours per day, standing up to 30 minutes continuously up to 3 hours per day, walking less than 30 minutes continuously up to 3 hours per day, climbing five flights continuously, bending 10 reps continuously, squatting 10 reps continuously, these are all in the occasional range. She may reach overhead 40 reps continuously. Pushing and pulling are 36 pounds and 34 pounds. Lifting capacity is 15 pounds. It was felt that the claimant is unable to work within the parameters above.

**HISTORY OF PRESENT ILLNESS**: Ms. Collier is a 56-year-old woman who states that she has had no history of missed work or lapses where she had an industrial or other injury that required her to miss a period of time at work. She states that around 2015, she started to note neck pain that would radiate to the right shoulder. She states that in 2016, she went on a trip to Mexico that she had one at work and started to feel "kink" in the left neck with certain positions. She continued to have ongoing pain in the shoulder and upper arm region. She states that she had symptoms in her low back as well. She eventually sought treatment where she underwent imaging studies of her shoulder and she had cortisone injections, which initially helped, but then stopped working. She states that in May of 2017, she underwent right shoulder rotator cuff repair and was off work for approximately three months. She went to physical therapy and was able to return to work. She states that initially she had been doing well then she started to have radiating pain once again. She started to have pain on the right shoulder, but also in addition on the left upper extremity as well. It was then decided that the symptoms were work related and she states that she stopped seeking treatment from Kaiser through which she had her prior care and her surgery. She states that she started to see a doctor through Workers' Compensation and she states that she has not been able to get treatment authorized and she states that she has only been using medications as no treatment has been authorized to Workers' Compensation. She states that she has had an MRI of her lumbar spine, but has not had any other up to date imaging studies of other areas. She has undergone treatment consisting of cortisone injections in the shoulder. She also had an epidural in her neck, which should not help. She has been through physical therapy, chiropractic, and acupuncture treatments. She states that when she was working, she had requested an ergonomic evaluation, but she was unable to get one in a timely manner and states that she had tried for two years to get an ergonomic workstation. She states that she has not had an epidural in her low back. She takes Norco for the pain up to 1-2 per day as well as gabapentin and Cymbalta. She has been doing stretching. She has not had an electrodiagnostic study and has not seen a rheumatologist.

**PRESENT SYMPTOMS**: She states that presently she has neck pain radiating to both shoulders and upper arms and occasional radiation to the wrist. She states that the pain is constant. She states that

4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882
*website* www.nmrco.com ■ *email* RockfordIMEDepartment@examworks.com

LIB000030



there is no relation of the pain to activity. She states that her shoulders are bothersome, but she does not note any increased pain with shoulder range of motion more than the usual constant level of pain. She states that at the present time, the left arm is more bothersome than the right. She states that the pain will awaken her. The pain is worse with sitting and will radiate into the periscapular area. She states that additionally she will have intermittent numbness in her hands and her fingers will turn white. She also has pain in her low back that radiates to the hip as well as the knee, the left side is worse than the right. She notes intermittent numbness and tingling and occasional right lower extremity numbness and tingling and pain with driving. The pain is worse with sitting and she needs to change positions frequently. She will occasionally limp when she tries to favor her hip and the pain will awaken her. She has bilateral elbow pain with right side more bothersome than the left. The elbow will occasionally lock and she has pain that radiates down into the forearm. She states that when she massages her forearms, she will have improvement of the pain that radiates into her index and middle fingers. The pain at times will radiate up into the shoulders.

**PAIN DIAGRAM**: Her pain diagram shows numbness on the top of her head as well as in both forearms and in her toes and the finger on her right hand. She has aching in the neck, bilateral shoulders and periscapular regions as well as in the elbow and in the right knee. She has pins and needles in the toes. She notes burning in the buttock region and radiating pain in the hip region as well as in the back of her head. She describes the pain as anywhere from 6 to 9, which varies in place. The pain is continuous, positional, intermittent and unable to rate.

**PAST MEDICAL HISTORY**: Significant for depression, for which she takes Cymbalta.

**MEDICATIONS**: Norco, gabapentin, Cymbalta, and hormone cream.

**PAST SURGICAL HISTORY**: Significant for hernia repair in 2002, breast augmentation in 2005, tonsil removal as a kid, and rotator cuff repair in 2017.

**REVIEW OF SYSTEMS**: Significant for fatigue, depression, sleep difficulty, headaches, nervousness, stress, numbness, weakness, bowel problems, memory loss, loss of concentration, itching, tingling, and early awakening.

**ALLERGIES**: None.

**SOCIAL HISTORY**: She does not smoke and drinks occasional alcohol. She has no history of alcohol or drug abuse. She states that she is presently single with three children; ages 26, 23, and 19. She lives with her boyfriend who works fulltime out of the house. She lives in a house that is two stories. She states that prior to her disability, she would enjoy swimming and going to the gym. She states that presently for exercise she will walk, stretch, take classes at a gym, and use a foam roller on a daily basis.

**EDUCATION AND WORK HISTORY**: Ms. Collier earned her high school diploma. She states that she was raising children until 2007. From 2007 to 2013, she was working in insurance as an independent producer where she was working from home. From 2013 until November of 2018, which was her last time working, she was working as an insurance agent. She states that her job consisted of

4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882
*website* www.nmrco.com ■ *email* RockfordIMEDepartment@examworks.com

LIB000031



Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                              **NMR#:** 307803
**Page** 11

sitting, using the computer and talking on a telephone, inspecting homes, occasionally bending, and minimal lifting.

**FUNCTIONAL HISTORY**: Ms. Collier indicates she is able to sit for 30-45 minutes at a time before she has to stand. She is able to walk and able to drive. She sleeps anywhere from 6-10 hours per night. She states that her last travel was to driving to Las Vegas. She states that she is able to stand 30-45 minutes at a time. She states that she is able to perform her health care, but finds difficulty blowing dry her hair and taking off a sports bra. She states that she exercises daily, walking, stretching, taking classes at the gym, and biking. She is able to type for approximately 15-30 minutes at a time. She states that housekeeping is performed by herself, her daughter, and her boyfriend and she does her own grocery shopping when needed.

Her typical day consists of getting up at 07:00-08:00 a.m., meditating, reading, stretching, walking her dog, going to the gym, sitting or lying down, reading, watching TV, tidying the house, stretching, occasionally cooking and watching TV.

**PHYSICAL EXAMINATION**: On physical exam, Ms. Collier's stated height and weight are 5'6" tall and 118 pounds. On evaluation of the cervical spine, she shows no loss normal cervical lordosis. There are no noted abnormal curvatures. Active cervical range of motion is noted to be flexion to 45 degrees, extension to 30 degrees, and rotation to 45 degrees bilaterally. She states that she has more pain with left greater than right rotation. There was no tenderness noted of the cervical paraspinal muscles nor in the parascapular region. She had mild tightness along the trapezius bilaterally.

On evaluation of the shoulders, she had well healed surgical portal sites on the right shoulder. She was noted to have no tenderness along the anterior or posterior shoulder. Active shoulder range of motion on the right side was noted to be 130 degrees of abduction, 80 degrees of external rotation, and 60 degrees of internal rotation. She had no pain with resisted internal or external rotation. She had pain with Hawkins' test on the right side, but no pain with Speed's test. On evaluation of the left shoulder, she had abduction actively to 30 degrees, external rotation was noted to be 80 degrees, and internal rotation to 30 degrees before she noted discomfort. She had pain with Hawkins' and Speed's test on the left side.

On evaluation of the elbow, she had flexion to 140 degrees, extension to 0 degrees, supination and pronation to 70 and 80 degrees bilaterally. She had no pain or limitation with range of motion on the right side. She had tenderness along the lateral epicondyle on the right side. No tenderness along the medial epicondyle and she did note pain on the right side with resisted finger extension. On the left side, she had full range of motion with pain noted with supination. She had tenderness along the medial and lateral epicondyles and pain with resisted finger extension. No swelling or erythema was noted.

On evaluation of the wrist, she had no swelling or discoloration noted in the wrist. She had well manicured fingernails, which had polish on from a nail salon. She had no tenderness to palpation on the right wrist. Wrist range of motion was noted to be 60 degrees of flexion bilaterally, 60 degrees of extension bilaterally, radial and ulnar deviation were 20 and 30 degrees bilaterally. She had no pain or limitation on right wrist range of motion. She had tenderness to palpation along the dorsal aspect of the wrist. On the left side, she was noted to have discomfort with left wrist flexion, but no limitation in motion. She was able to fully flex and extend the fingers on both hands. There was no tenderness or

**4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882**
*website* **www.nmrco.com** ■ *email* **RockfordIMEDepartment@examworks.com**

**LIB000032**



joint enlargement noted.  She had 5/5 strength in the deltoid, elbow flexors and extensors, wrist flexors and extensors, and hand intrinsics.  Sensation was diminished to 80% on the left thumb.  Otherwise, sensation was intact to light touch on the right and along all other myotomes tested on the left side.  Reflexes were 1+ at the biceps and 1+ at the triceps and symmetric.

Ms. Collier had a normal appearing non-antalgic gait.  She was able to go up on her toes and back on her heels.  Upon palpation of the thoracolumbar spine and lumbar, there was tenderness to palpation.  Lumbar range of motion was noted to be flexion to 60 degrees, extension to 30 degrees, and side bending to 30 degrees bilaterally.  She has no pain with whole body rotation to the right, but there was pain with whole body rotation to the left.  She had a negative straight leg raise bilaterally.

On evaluation of the hip, there was no tenderness along the lateral trochanteric region bilaterally.  Hip range of motion to 100 degrees of flexion, 30 degrees external rotation, and 30 degrees of internal rotation with no limitation on motion.  She had no pain with right hip range of motion.  She noted pain with left hip internal rotation.

On evaluation of the knee, there was no swelling or deformity of the knee.  She was noted to have pain in the left knee with knee extension.  Knee range of motion was noted to be flexion to 130 degrees and extension to 0 degrees.  There was no significant medial or lateral laxity.  There was no limitation in range of motion.  The claimant was noted to have tenderness along the medial and lateral left knee.  She was noted to have pain with knee flexion, which caused pain to radiate up into her hip region.  She had no tenderness to palpation along the right knee along the medial or lateral joint line.  There was negative Hawkins' test on the right side and on the left side, she had pain with Hawkins' test, but there was no palpable clicking.  She had a negative Lachman's test.  There was no significant medial or lateral laxity.

On evaluation of the foot and ankle, there was no swelling or erythema noted.  No visible deformity was noted of the ankle or foot.  Ankle range of motion was noted to be 40 degrees of plantarflexion bilaterally with no limitation.  Dorsiflexion was noted to be 20 degrees.  Inversion and eversion were noted to be 30 degrees and 20 degrees bilaterally.  She had no tenderness along the right medial or lateral malleolus and no pain with right ankle range of motion.  Upon left ankle range of motion, she was noted to have tenderness along the lateral malleolus and mild pain with inversion with otherwise no limitation in motion.

Upon evaluation of strength, she had 5/5 strength in the hip flexors, knee extensors, ankle and plantar and dorsiflexors, and extensor hallucis longus.  She had giving way of the left extensor hallucis longus.

On evaluation of sensory testing, she had intact sensation to light touch, however, she noted a tingling sensation, which she stated that otherwise she felt was not diminished along the dorsal aspect of the left foot.  Reflexes were 1+ at the biceps, 1+ at the triceps and symmetric, 1+ at the knee, and 1+ at the ankle and symmetric.  Limb girth measurements were noted to be 25 cm on the right arm, 25.5 cm on the left arm, right forearm was 22.5 cm and left forearm was 22 cm.  Right thigh circumference was 40.5 cm and left thigh circumference was 40 cm, right calf circumference was 33.5 cm and left calf circumference was 33 cm.

**LIB000033**

**Network Medical Review Co. Ltd.**

**An ExamWorks Company**

**RE:** Vicki Collier                **NMR#:** 307803

**Page** 13

On evaluation of Waddell's testing, she noted superficial non-anatomic tenderness to light touch along the low thoracic and lumbar region, along the medial and lateral joint line of the left knee, along the lateral malleolus of the left ankle, and along the forearm region. She had a positive stimulation test with pain on whole body rotation to the left. She had a positive distraction test with no pain on straight leg raise, but on evaluation of the left knee, she had pain with knee extension and flexion. She had regional disturbance with non-dermatomal sensory loss with diminished sensation in the hand and mild give-way weakness of the great toe on the left side. There was no significant overreaction during the examination.

**DIAGNOSES**:

1. Cervical pain.
2. Cervical radiculopathy.
3. Bilateral shoulder pain.
4. Status post right shoulder rotation cuff tear.
5. Bilateral elbow pain.
6. Bilateral wrist pain.
7. Lumbar pain.
8. Lumbar degenerative disc disease.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS**:

1. **Please provide a complete physical description of the claimant including her gait upon entering the office, capacity for sitting, and ability to get on and off the exam table correlate this with exam findings.**

The claimant ambulated into the office, during the exam, as well as away from the office in a normal manner with no assistive device and no outward appearance of any pain from ambulation. She was dressed in a sweat outfit and tennis shoes and otherwise well groomed. She had manicured nails and her hair was down. She appeared to have no difficulty changing positions from sitting to standing position. She was able to get on and off the exam bed without difficulty. She was able to sit for the duration of the exam and did not appear to be moving, fidgeting or in a significant amount of pain. She did not request to change position during the exam. The claimant appeared to move with relative ease. She was cooperative for the examination and was able to perform all movements asked of her. During range of motion testing the claimant had smooth, fluid movements, and there was no outward manifestation of pain other than what the claimant verbalized.

2. **Are any observations or behaviors demonstrated that are inconsistent with the exam or medical records?**

Based on my evaluation of the claimant, the claimant reports symptoms predominately in the neck, shoulders, upper extremities, and low back. She has positive exam findings in these areas as well. She was noted to have pain and limitation with shoulder range of motion. She was noted to have tenderness to palpation in the areas described in the medical records and upon examination. In an examination by Dr. Haronian on 09/05/18, he noted no spasm, normal range of motion of the cervical spine, normal reflexes, diminished strength of bilateral deltoid muscles, intact sensation, impingement and Hawkins'

**LIB000034**



Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                **NMR#:** 307803
**Page** 14

signs were present on the left.  Normal range of motion of the elbow with tenderness along the distal radius.  Normal strength in the lower extremities.  These findings are consistent with my findings on examination, however, I did not find any weakness in the shoulder and deltoid region.  She also saw Dr. Jonathan Kohan for an initial evaluation in December of 2018.  His exam showed spasm and pain in the cervical region with normal range of motion and strength.  She has diminished sensation in the C5 and C6 dermatomes on the left and right.  Shoulder examination shows normal range of motion.  Lumbar examination shows diminished range of motion with pain and spasm and a negative straight leg raise. She has normal sensation and strength in the lower extremities.  The claimant on my examination did note diminished sensation in the left thumb, but otherwise normal sensation.  This is consistent with T5 dermatomal distribution.  Based on my evaluation of the notes of Dr. Haronian and Dr. Kohan, it appears that there are not significant differences in the examination and upon my review of the medical records I did not view any observation of behaviors that were inconsistent with my exam.

3.  **Was there any evidence of symptom magnification during the exam?**

The claimant did have positive Waddell's findings during my examination.  She did have tenderness in a number of different areas to relatively light touch palpation.  She did have some giving way of the left great toe.  She had a positive whole body rotation on simulation test with pain on left whole body rotation.  She indicated no pain with straight leg raise, however, during knee examination she did note some pain with knee range of motion.  During my evaluation of the claimant, the claimant gave good effort during the examination.  She does not appear to overreact or grimace during the examination, but she does have a number of areas of tenderness noted.  It should be noted that the MRI of the claimant's right shoulder from July of 2017, which was after her surgery was reviewed showing a partial thickness supraspinatus tendon tear with tendinosis of the infraspinatus and longhead of the biceps.  She also had an MRI of the cervical spine dated 10/10/16 showing straightening of the normal lordosis with 1-2 mm disc bulges and an MRI of the lumbar spine showing mild disc desiccation and a 2.6 mm disc bulge with a left lateral annular fissure.  It is my opinion based on these MRI findings that the claimant's symptoms appear to be out of proportion to what would be expected based on these MRI findings.  The claimant's upper extremity pain would not be consistent with the cervical MRI as there was no significant neural foraminal narrowing and the findings on cervical MRI appeared to be relatively minor.  Additionally, she has been off work for over one year and she continues to have significant symptoms with no apparent improvement upon rest and not working.  She has had MRI of the lumbar spine, which shows an annular tear and degenerative changes which are commensurate with her age.  She continues to have significant limiting symptoms with regards to her low back that appeared to more than would be expected based on the findings on cervical MRI, lumbar MRI as well as the MRI of her right shoulder. She has not had an MRI of her left shoulder that is in the medical records, and it would appear that the claimant's symptoms appeared to be out of proportion to what would be expected on the exam findings as well as imaging findings and there are some positive Waddell's findings, which lead to the conclusions that there are likely some nonorganic contributions to the claimant's symptoms.

4.  **Comment on whether the insured claimed pain severity and claimed functional limitations correlate with any clinical exam and/or diagnosis test findings.  Does the severity on scope of claimed impairment correlate with medical and functional evidence?**

LIB000035

**NMR**
Network Medical Review Co. Ltd.

**An ExamWorks Company**

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 15

As indicated in my response to question 3, it is my opinion based on the MRI findings for her right shoulder and cervical spine that the claimant's symptoms appear to be out of proportion to what would be expected based on these MRI findings. The claimant's upper extremity pain would not be consistent with the cervical MRI as there was no significant neural foraminal narrowing and the findings on cervical MRI appeared to be relatively minor. Additionally, she had no apparent improvement upon rest while being off work for many months. She continues to have significant limiting symptoms with regards to her low back that appeared to more than would be expected based on the findings on cervical MRI, lumbar MRI as well as the MRI of her right shoulder. While there is no record of her having an MRI of her left shoulder, the claimant's symptoms appear to be out of proportion to what would be expected based on exam findings, and there are positive Waddell's findings, which lead to the conclusions that there are likely some nonorganic contributions to the claimant's symptoms. Based on my review of the medical records and based on 20 years of examining patients in an orthopedic nonsurgical specialty, it does appear that the claimant's claimed pain severity is out of proportion to what would be expected based on the imaging findings. The claimant had good functional range of motion of both shoulders and upper extremities. She had intact strength and minimal loss of sensation in the upper and lower extremities. She has good range of motion of the cervical and lumbar spine, but indicates pain that is limiting her such that she is unable to work. The claimant is working out and is exercising on a daily basis and as indicated in the above question. There were findings on Waddell's testing as well as pain that appears to be out of proportion to imaging studies as well as exam findings that would indicate potentially the presence of a nonorganic source that is contributing to the claimant's pain. The claimant was visualized sitting for the duration of the examination other than during the examination portion, which was at least for 45 minutes. She did not appear to have any outward displays of pain. During range of motion testing, she was advised to tell the examiner when she experienced pain and the examination did account for her active range of motion. She was not pushed past her active range of motion when indicating pain to see if she was able to push further. Based on the claimant's examination and functional activities, the claimant appeared to be capable of more activity and she tends to underestimate her functional capabilities.

5. **Please address any physical impairments, if any, based on clinical exam, diagnostic test findings, and any functional evidence. For any impairment identified, please provide the clinical, diagnostic, and/or functional evidence supporting your opinion.**

Based on my evaluation of the claimant as well as review of the medical records and imaging studies, the claimant has impairments with regards to her neck, shoulders, and upper extremities as well as to her low back. The claimant's impairments with regard to her neck are based on pain with cervical range of motion and imaging studies showing loss of cervical lordosis as well as disc protrusion. With regard to her shoulders, the claimant has limitations with shoulder range of motion. She has limitation of right shoulder movement to 130 degrees of abduction and pain with Hawkins test on the right side. She has pain with range of motion as well as positive Hawkins' test and Speed's test on the left shoulder on examination as described in the physical examination portion. Her MRI of the right shoulder showed partial thickness tear of the supraspinatus and tendinosis of the infraspinatus and biceps tendon and she had well-healed surgical scars on the right shoulder. With regards to the elbows and forearms, she had tenderness along the medial and lateral epicondyle on the left. She had tenderness along the lateral epicondyle on the right and pain with resisted finger extension bilaterally. She also had some discomfort to palpation along the left wrist. She perceives numbness in her fingers and toes. This

4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882
*website*  **www.nmrco.com**  ■  *email*  **RockfordIMEDepartment@examworks.com**

**LIB000036**



however has not been corroborated with any electrodiagnostic finding, although she does have diminished sensation in the left thumb and the medical records do document diminished sensation in the C5 and C6 distribution as well as documented weakness in the deltoid region, which was not appreciated on my examination. An MRI of the cervical spine showed loss of the normal cervical lordosis with degenerative changes and disc bulges with no significant foraminal stenosis.  With regards to the low back, she has pain with lumbar range of motion particularly with lumbar flexion.  Her lumbar MRI showed an annular fissure as well as mild disc desiccation.  She has had her medical providers document her cervical spine and shoulder findings as well as her lumbar spine diagnoses in their medical records and give restrictions for these areas as well.

> **6. Please identify the medically-supported physical restrictions/limitations, if any. Please define by the type of task [sitting, standing, lifting, fingering, etc.], as well as frequency of tasks [never, occasional, frequent, constant]. Include duration of physical restrictions and limitations.**

Based on my evaluation of the claimant, there are medically supported impairments with regard to the claimant's cervical spine, bilateral shoulders, bilateral elbows and forearms, and the lumbar spine.  These would translate into the following medically supported restrictions and limitations.

The claimant indicates that she has low sitting tolerance and her self-reported sitting tolerance is 30-45 minutes.  Sitting causes her discomfort in her neck and low back.  Lumbar examination shows diminished range of motion with pain and spasm. It is my medical opinion that the claimant can sit for up to 30 minutes at a time after which she will require a position break for up to 5 minutes before she can resume a seated position. She can continue to work during this break. The claimant can sit for a total of 6 hours in an 8-hour workday.  She would benefit from a sit-stand desk.

The claimant indicates a self-reported standing limitation of 30-45 minutes that causes her pain in the low back.  She indicates that she does not have any limitation and is able to walk relatively comfortably.  It is my professional opinion that the claimant can stand or walk up to 30 minutes at a time with the ability to change positions for at least 5 minutes before resuming standing or walking.  She can continue to work during this break. She can stand and walk for a combined total of 4 hours in an 8-hour workday. The claimant would benefit from an ergonomic workstation and again a sit-stand at desk, so she is able to change positions frequently as this would mitigate her symptoms such that she would be in less pain and be able to function at a higher level.

With regards to reaching, the claimant may reach on an occasional basis in all planes.  The basis for this reaching restriction is based on her perceived shoulder pain and the fact that she has had prior shoulder surgery and has partial thickness rotator cuff tear, she has pain in her cervical spine as well as in her lumbar spine and it is felt that reaching on a more frequent basis than occasionally in all planes would result in pain such that she would not be able to continue working and her symptoms would exacerbate.

She may lift and carry up to 10 pounds occasionally.  She may push and pull up to 20 pounds occasionally.

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website* **www.nmrco.com** ■ *email* **RockfordIMEDepartment@examworks.com**

**LIB000037**

**NMR**
Network Medical Review Co. Ltd.
**An ExamWorks Company**

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 17

The claimant may perform tasks with regards to fingering, feeling, gripping, and grasping on an occasional basis. She may benefit from voice activated software should she require any computer work. The basis for her upper extremity gripping, grasping, etc limitations are based on the fact that she has pain with her upper extremities, she has tenderness along the medial and lateral epicondyle on the left and the lateral epicondyle on the right. She has pain with resistant finger extension bilaterally at the elbow. Limiting the claimant's fingering and typing to occasional would not only take into account her perceived limitations, but also minimize any flare-ups of pain such that she would be able to function at a higher level.

It is my professional opinion that in describing these restrictions and limitations, it is important take into account the medical provider's restrictions and limitations, observations and examination findings of the claimant as well as the claimant's perceived limitations. There have been restrictions and limitations that were provided by her treating physician, Dr. Haronian in her permanent and stationary report. The work restrictions by Dr. Haronian were noted to be "cervical spine, the claimant is precluded from extended upward and extended downward gazing; lumbar spine, the claimant is precluded from repetitive bending and twisting of the lumbar spine; bilateral shoulders, the claimant is precluded from repetitive activities at or above the shoulder levels; bilateral elbows, the claimant is precluded from repetitive torquing; bilateral wrists, the claimant is precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching." Additionally, she had a QME report by Dr. Arora, which gave her restrictions of "avoid heavy lifting more than 20 pounds and reaching above her head." It is my opinion that these restrictions and limitations are accounted for in my restrictions that were noted above and that based on the claimant's ongoing pain and the fact that she has been made permanent and stationary, these restrictions would likely be permanent.

**7. Does the medical evidence support any side effects from the prescribed medications? If yes, please provide the supported impairments and outline how any impairment affects functional capacity?**

The medical records do not support any impairments or side effects from any medications.

**8. Please comment on the claimant's capacity for sustained, full-time work within these supported restrictions/limitations.**

It is my opinion based on my observation of the claimant and findings of the claimant's examination that the claimant would be able to work on a fulltime consistent basis. The claimant has had restrictions and limitations by the QME as well as her treating physicians that have been provided. The claimant was not deemed by her treating physician to be totally functionally impaired, and therefore it is presumed that the claimant would be able to work within these restrictions and limitations provided by her primary physician.

Based on my evaluation of the claimant and review of the medical records, I do not find clinical evidence that would limit the claimant's ability to work on a full-time sustained basis. The claimant can work full time, 8 hours per day, 5 days per week, for a total of 40 hours per week with the restrictions and limitations outlined in my response to question 6. The claimant has functional range of motion and the limitations that are based on her self-reported levels of pain. The MRIs of her cervical and lumbar

**LIB000038**



spine as well as her shoulder do not show significant changes that would limit her ability to function and her pain appears to be out of proportion to the physical exam findings. She did have a functional capacity evaluation, which indicated that she may sit for up to three hours per day, stand for up to three hours per day, and walk for up to three hours per day. While the FCE examiner opined that she was unable to work on a full-time or part-time basis, these timeframes do constitute eight hours in a day, which would be considered full time. Her primary treating physician, Dr. Haronian indicated the work restrictions that had again been outlined "precluded from extended upward and extended downward gazing, precluded from repetitive bending and twisting of the lumbar spine, precluded from repetitive activities at or above the shoulder level; precluded from repetitive torqueing; and precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching." Based on my evaluation of the claimant, the claimant has functional capability in her upper and lower extremities. She does have pain in her low back with sitting and standing, but I do not feel that these preclude her from working on a full-time basis. Her practitioners did not indicate that she was completely functional impaired, but that she would be able to return to work with restrictions if the restrictions were able to be accommodated. It is my professional opinion that if she were provided with a sit-stand desk to be able to change positions periodically as well as with voice activated software and an ergonomic workstation that these would enhance her ability to work on a sustained basis without exacerbating her symptoms. Functionally when she moved in the examination room, she did not appear to have any significant pain behaviors nor did she appear to be functionally limited such that she would not be able to carry out a full-time job within the restrictions and limitations identified above. Despite these findings of the functional capacity evaluation performed by the physical therapist, it is my opinion based on the medical records reviewed, the opinions of her treating physicians as well as my physical examination that the claimant would be able to work on a full-time sustained basis within the restrictions and limitations outlined in my response to question 6. Her physicians have also provided restrictions and limitations at which she would be able to work and it's my professional opinion that these restrictions as well as the restrictions that I have imposed are very similar and would allow her to be functional at some job within the restrictions outlined.

**CONFLICT OF INTEREST ATTESTATION:**
I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review (I do not have a contract to provide health care services to enrollees of the health benefit plan of the insurance issuer or group health plan that is the subject of this review); the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; (I do not have staff privileges at the facility where the recommended health care service or treatment would be provided if the insurance issuer's or group health plan's previous non-certification is reversed) or the developer or manufacturer

**LIB000039**



**RE:** Vicki Collier                                    **NMR#:** 307803
**Page** 19

of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

Physician Advisor

Katrina Vlachos, M.D.
Board Certified in Physical Medicine & Rehabilitation
Licensed in State of CA #68888

**NMR CONFLICT OF INTEREST ATTESTATION:** *NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

**4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882**
*website* **www.nmrco.com** ■ *email* **RockfordIMEDepartment@examworks.com**

**LIB000040**



**Network Medical Review Co. Ltd.**

**An ExamWorks Company**

| | |
|---|---|
| **REFERRED BY:** | Kimberly Murray |
| **CLIENT NAME:** | LINCOLN FINANCIAL GROUP (IME) - LLAOB |
| **CLAIMANT NAME:** | Vicki Collier |
| **CLAIM #:** | 8741789 |
| **NMR #:** | 307803 |
| **JOB TITLE:** | Sales agent |
| **DOD:** | 05/15/2018 |
| **REFERRAL DATE:** | 01/03/2020 |
| **DOE:** | 01/27/2020 |
| **REPORT DATE:** | 01/30/2020 |

### INDEPENDENT MEDICAL EXAMINATION

**REFERRING DIAGNOSIS:**     Unspecified sprain of shoulder joint

### RECORDS PROVIDED FOR REVIEW:

| | | |
|---|---|---|
| PROGRESS NOTES | Kaiser Permanente | 05/10/18-08/30/19 |
| PROGRESS NOTES | Synapse Medical Group | 09/05/18-10/15/19 |
| FCE | S. Jurado, D.P.T., CEAS | 09/13/19 |
| IME | R. Arora, M.D. | 10/11/18-10/24/18 |
| IME | S. A. Rubin, M.D. | 11/15/19-11/21/19 |
| FILE REVIEWS | A. Chhatre, M.D. | 05/08/19 |
| LAB/DIAGNOSTICS | Kaiser Permanente | 07/30/18-02/14/19 |
| CT/MRI | Kaiser Permanente | 10/10/16-04/09/18 |
| MRI | A. Safvi, M.D. | 02/21/19 |
| JOB | | |
| OTHER | J. G. Howard, M.R.C., C.R.C. | 03/02/19 |
| MISC | | 06/18/13-11/22/19 +Undated |
| ROI | | 09/15/18-07/08/19 |

To Whom It May Concern:

At your request, Ms. Vicki Collier was seen for an independent medical evaluation on 01/27/20.  Prior to the evaluation, it was explained to Ms. Collier that this appointment was for the purpose of evaluation only and not for care, treatment, nor consultation.  Therefore, no doctor-patient relationship would result.  Ms. Collier has also been advised that I am an independent doctor and have been requested to conduct this evaluation by the group noted above.  Ms. Collier was examined at my Marina del Rey office.  She arrived on time and was by herself.  She provided photographic identification consisting of her driver's license for the purpose of the visit.

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  **www.nmrco.com** ■ *email*  **RockfordIMEDepartment@examworks.com**

**LIB000041**



**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 2

**MEDICAL RECORDS REVIEW:**  On 05/10/18, this is a progress note by Patrick Anthony Dimartini, MD.  The patient complains of tinnitus, got worse over the last week, no change in hearing.  Assessment is bilateral subjective tinnitus.  The plan is perhaps eustachian tube plugged, try Sudafed, try Flonase, referred to audiology.

Progress note, 05/14/18, by Sovanrith Tun, MD.  Chief complaint is persistent pain in bilateral shoulders, had left cortisone injection in the shoulder helped, has tried Norco, meloxicam, and Neurontin.  There is moderate pain, working on an ergonomic workstation.  No atrophy is noted.  Abduction is noted to be 90, forward flexion 90, external rotation 70, internal rotation 20.  Impingement sign is positive.  Impression is bilateral shoulder rotator cuff syndrome.  Plan is activity modification, meloxicam, Norco, will be stopping her current job, follow-up is p.r.n.

On 05/14/18, this is a work status report by Dr. Tun.  Diagnosis, bilateral rotator cuff syndrome.  The patient is placed on modified duties from 05/14/18 through 07/15/18 with restrictions of no typing, no use of both shoulders and arms.

07/06/18, progress note by Dr. Tun., right shoulder partial rotator cuff tear, partial intratendinous supraspinatus tendon tear, persistent pain in bilateral shoulders, does physical therapy at Henry Mayo.  Range of motion and exam was unchanged.  Impression, bilateral shoulder rotator cuff syndrome.  Plan is activity modifications, meloxicam, stop current job, bilateral cortisone injections for forearms, right shoulder arthroscopy, right rotator cuff repair if pain persists, follow-up p.r.n.

07/06/18, work status report by Dr. Tun, the patient on modified duties from 07/16/18 to 08/31/18 with restrictions of no typing or use of both shoulders and arms.  The patient was scheduled for Botox on 07/20/18.

Neurology follow-up on 07/20/18 by Esther Chuanwah Wang-O'Connell, MD, the patient has diagnosis of chronic migraines and headaches, feels Botox helped.  She denies any migraines in the past three months, feels shoulder and neck much relaxed.  Assessment is chronic migraine headache, failed multiple treatments and is now exploring Botox.  Injections of Botox were performed.  Follow-up in three months.  Keep headache diary.  Plan is chemodenervation muscles innervated by facial, trigeminal, cervical spinal, and accessory nerves bilateral.

07/30/18, progress note by Dr. Colleen Bogdanich, the patient is afraid that she might have genital warts, has some discomfort with sex.  Exam performed.  Plan is HPV test, hormone, gynecology, cytology.

Progress note, 08/22/18, by Brian Brosnan, MD, the patient received Botox to her lips.

08/27/18, telephone conversation by Dr. Tun, the patient complains of bilateral shoulder pain, pain with prolonged activity, requests work restrictions, offered earlier surgery, but not possible because of health coverage.

Work status report, 08/27/18, the patient was placed on modified work from 09/01/18 to 10/31/18.  Restrictions are no typing or use of shoulders and arms bilaterally.

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  **www.nmrco.com** ■ *email*  **RockfordIMEDepartment@examworks.com**

**LIB000042**

**NMR**
Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 3

10/16/18, progress note by Shahram Gharibshahi, MD, the patient received Botox for headaches for chronic migraine.

Progress note by Maria Oculam, PA. The patient has right rotator cuff tear, booked for postop visit, but canceled surgery due to family issues, to ask for Norco, will rebook. Plan is Norco prescribed. The patient will call for surgery.

01/17/19, progress note by Sonu Brara, MD, the patient presents for Botox for headaches, received Botox injections for chronic migraine.

01/31/19, progress note by Esther Chuanwah Wang-O'Connell, MD, the patient presents with vulvar itching. Assessment and plan is overactive bladder, start Ditropan, check urine, postmenopausal atrophic vaginitis, wear comfortable underwear, use Estrogen cream, will follow up on bladder findings, ultrasound of bladder and urinalysis is ordered.

02/04/19, telephone visit with Esther Chuanwah Wang-O'Connell, MD, the patient is concerned about carotid arteries. She said that her mother had problem with them. Plan is advised regular exercise and healthy eating. ASCVD risk score discussed. Carotid duplex ordered. CBC ordered.

02/13/19, carotid artery duplex, right side normal and left side normal.

03/21/19, Catherine Close, MD, the patient presented for skin check. She was seen and examined.

03/28/19, progress note with Sylvia Mann, MD, follow-up for genital warts and vaginal itching.

This is a progress note by Edwin Haronian, MD, progress note date of service 09/05/18, Ms. Collier states she was sustained cumulative trauma injuries to her neck, shoulders, bilateral upper extremities, forearms, elbows, hands, wrists, back, head, lower extremities, during the course of her employment as an insurance agent for The Auto Club. She has noted pain since late 2016, developing gradually. She had cortisone injections, had x-rays and MRI of her shoulder. On 07/25/17, Dr. Tun performed right shoulder surgery and she received physical therapy. She remained on total temporary disability through 11/21/17. She also received an epidural injection to her lower back and Botox injections to her shoulder and neck. She is presently not working and last worked on 05/22/18. She complains of headaches, constant pain in the neck with numbness radiating into her arms, frequent pain in the shoulder with stiffness, frequent bilateral elbow pain, intermittent bilateral wrist and hand pain, and frequent middle and low back pain. On examination, there was no spasm. She had normal range of motion of the cervical spine. Normal reflexes and diminished strength to the bilateral deltoid at 4/5. Sensation was intact. Impingement and Hawkins signs were present on the right and left. Elbow examination showed normal range of motion. There was tenderness along the distal radius. Lumbar examination showed straight leg raise positive bilaterally. Reduced tendon reflexes at the ankle bilaterally. She had normal strength in lower extremities. Diagnoses, cervical radiculopathy, lumbosacral radiculopathy, bilateral shoulder impingement, bilateral elbow tendinitis/bursitis, and bilateral wrist tendinitis/bursitis.

**LIB000043**

**NMR**
Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier                                    **NMR#:** 307803
**Page** 4

Discussion, the patient presents complaining of neck pain radiating to the upper extremities with associated numbness, shoulder pain, with decreased range of motion and strength, elbow pain, and wrist pain. Request authorization for neurodiagnostics of the upper and lower extremities, request 12 sessions of physical therapy, and request gabapentin. She may return to the workplace, but should not lift, push, or pull more than 10 pounds. She should not perform bending, twisting activities, or place the spine in unusual or awkward positions. She should not perform repetitive hand motions, pinching or grasping bilaterally. She will return in four weeks, at which time further recommendations will be made. Whole person impairment was noted to be 21%.

This is a PR2 by Dr. Haronian. Date is 09/05/18. Subjective complaint is cervical pain. Objective findings, loss of range of motion. Diagnoses, radiculopathy, lumbosacral region; impingement syndrome, shoulders; olecranon bursitis, elbows; and periarthritis, unspecific wrist. Treatment plan is non-surgical. Request EMG upper and lower extremities, physical therapy, and Neurontin. Work status is modified work with the following restrictions: Avoid lifting over 10 pounds, avoid pushing or pulling over 10 pounds, avoid bending and twisting completely, restrict from placing the spine in unusual and awkward positions, avoid repetitive hand motions completely with both hands, and avoid pinching and grasping completely with both hands. The patient should remain on totally temporary disability if work modifications cannot be accommodated by the employer.

This is a note by Dr. Haronian dated 09/07/18, referred to physical therapy.

This is a progress note by Dr. Haronian dated 10/10/18. She continues to complain of neck and back pain radiating to the upper extremities and lower extremities. Exam showed spasm, tenderness, and guarding in the paravertebral musculature of the cervical spine. Decreased sensation was noted in the C5 dermatome. She has mild impingement and Hawkins signs with range of motion of the shoulders with flexion of over 120 degrees on the left and 100 degrees on the right. Current work restrictions will continue. She will return in four weeks' time with prior medical records. Diagnoses are unchanged.

Progress note by Dr. Haronian dated 11/14/18. The patient has brought with her some MRI studies from Kaiser, which were reviewed. Waiting for QME report. The patient is complaining of left shoulder pain and severe low back pain. Until QME report is available, he will continue modified work duties, follow up few weeks and make further recommendations then.

11/29/18, progress note by Dr. Haronian, the patient is requesting refill of Norco. She was provided with 30 tablets. Request referral to pain management if she is to continue to use opioids. The work restrictions are unchanged.

12/13/18, this is a progress note by Jonathan Kohan, MD, secondary treating physician pain management initial report. The patient was seen for pain management. Present complaints include headaches, electrical type neck pain, bilateral shoulder pain, bilateral elbow pain, intermittent pain in both wrists and hands, upper and lower back pain, intermediate sharp knee pain, and ongoing numbness and tingling in both feet. She was noted to have spasm and pain in the cervical spine with normal range of motion and normal strength. She had decreased sensation in the C5 and C6 dermatomes on the right and C5 on the left. Shoulder examination showed normal range of motion. Lumbar spine exam showed diminished range of motion with pain and spasm and a negative straight leg raise bilaterally. She was

**4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882**
*website* **www.nmrco.com ■** *email* **RockfordIMEDepartment@examworks.com**

**LIB000044**

**NMR**
Network Medical Review Co. Ltd.
**An ExamWorks Company**

**RE:** Vicki Collier                                    **NMR#:** 307803
**Page 5**

noted to have normal strength and sensation.   MRIs were reviewed.   Impression, cervical disc protrusion, cervical radiculopathy, history of right shoulder surgery with residual pain, exacerbated lumbar pain with a component of sacroiliitis, and lumbar radiculopathy.  Recommendation is to continue Norco, await MRI findings, and may benefit from spinal injections.

01/03/19, this is a progress note by Dr. Haronian.  The patient continues with upper and lower back pain with radiation to the upper and lower extremities.  She is under the care of pain management receiving Norco and taking gabapentin.   She has spasm and tenderness in the paravertebral muscles with decreased range of motion on flexion and extension.   Request MRI of the low back, request authorization for Neurontin, work status is unchanged for modified duty, follow-up in four weeks.

Supplemental report by Dr. Haronian dated 01/20/19.  The QME report of Dr. Arora was reviewed.  It appears that the neck and lower back issues are non-industrial.  He provided the patient with 4% impairment of the whole person and provided the patient with future medical.  Dr. Haronian feels that due to deferring opinions between Dr. Arora and himself, it is likely that no further authorizations would be provided.  As such, the patient would be declared permanent and stationary as he will be unable to provide the claimant any further treatment.

01/28/19, this is a progress note by Dr. Kohan, a review of medical records was performed.  The patient is not undergoing therapy for treatment, but continues to have difficulty controlling her pain in the neck, shoulder, and low back.  She ran out of Norco.  Naprosyn and over-the-counter medicines have not been helpful.  She has tenderness and spasm over the cervical spine extending to the trapezius and deltoid.  Lumbar spine tenderness over the sacroiliac joint.  Impression is history of right shoulder arthroscopic surgery with residual pain, cervical disc protrusion with component of radiculopathy, and exacerbated lumbar pain with component of sacroiliitis.  Considering her work duties at AAA with her capacity, pain seemed reasonable and work-related.  The patient's options are limited.  MRI was not done, but she has component of sacroiliitis.  Norco will be refilled and increase gabapentin, follow-up in one month.

01/31/19, permanent and stationary report from Dr. Haronian, history and job description were reviewed.  Physical exam showed tenderness and spasm over the paravertebral musculature in the upper trapezius region.   Range of motion was accomplished with discomfort and spasms.   Reflexes were normal and symmetric with negative Hawkins.  She had 4/5 strength in the right deltoid, otherwise 5/5 strength.  She had intact sensation.  Impingement signs showed positive Hawkins on the right and left.  She had tenderness over the lateral epicondyle bilaterally.  She had tenderness over the distal radius bilaterally.  Lumbar exam showed tenderness and pain in the paravertebral musculature with spasm and pain.  She had normal strength in the lower extremities.  She had diminished sensation in the right L5 distribution.  Hip range of motion was normal.  Diagnoses are cervical spine radiculopathy, lumbar spine radiculopathy, bilateral shoulder impingement, status post right shoulder arthroscopy, bilateral elbow tendinitis, and bilateral wrist tendinitis.  The patient has been seen by a number of physicians and has had conservative treatment, which is unlikely to help her.   She has reached maximum medical improvement.   The patient is precluded from extended upward and extended downward gazing, precluded from repetitive bending and twisting of the lumbar spine, precluded from repetitive activities at or above the shoulder level, precluded from repetitive torqueing, and precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching.  The patient can return to work with restrictions that have been provided.  The patient should have access to future medical care.  It is

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  www.nmrco.com  ■ *email*  RockfordIMEDepartment@examworks.com

LIB000045



**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 6

within reasonable medical probability the patient has sustained injuries to the cervical and lumbar spine, bilateral shoulders, elbows, bilateral wrists due to continuous trauma activities at work. Apportion 20% of preexisting degenerative changes of the cervical and lumbar spine and 80% to direct effect of the continuous trauma. For the shoulders, elbows, and wrists, 100% of the patient's disability is the direct effect of the continuous trauma. She is noted to have final whole person impairment of 30%.

02/14/19, this is a follow-up report and review of records from Dr. Haronian, reviewing the report from Dr. Arora. The patient was declared permanent and stationary. She could return to Dr. Haronian on an as needed basis.

02/25/19, progress note by Dr. Kohan, the patient continues to have pain and difficulty with her neck and shoulder with moderate-to-severe spasm over the cervical spine extending to the trapezius and deltoid. No additional treatment has been allowed through Dr. Haronian's office. She was given Norco. Follow up next month.

03/13/19, supplemental report from Dr. Haronian. He would respectfully disagree with Dr. Arora regarding the opinion on industrial causation. Dr. Arora did not feel that the cervical and lumbar spine were industrially related. Part of Dr. Haronian's whole person impairment was related to the cervical and lumbar spine based on information provided to him. He requests the medical records provided to and the ability to change his opinion should any additional records be available.

04/01/19, progress note by Dr. Kohan. Lumbar spine MRI from 02/15/19 showed a small disc protrusion at L5-S1. She will continue with Norco and gabapentin as injections have not provided her with much relief. She was reminded to make any attempt to reduce anxiety or any issues with her sleep to avoid any further exacerbations of myofascial pain.

Progress note dated 04/11/19 by Dr. Haronian, the patient is back without significant change. She has been declared permanent and stationary due to lack of authorization. She continues to suffer from pain. She can continue using nonopioid anti-inflammatory medications. Her work restrictions are guarded by the permanent and stationary report. She will follow up in six weeks.

05/07/19, progress note by Jonathan Kohan, MD. She is not undergoing therapy or any modes of treatment. She has not been back to work, but reports increasing level of low back pain. She is taking Norco and gabapentin. She has tenderness over the paravertebral area, which extends to the SI joint. She has tenderness and moderate spasm in the trapezius and deltoid. He does not believe injection would be beneficial aside from trigger point injections. Recommended Norco and Neurontin and follow-up in one month.

05/16/19, progress note by Dr. Haronian, the patient has been made permanent and stationary. She continues to show spasm, tenderness, and guarding in the paravertebral musculature of the cervical and lumbar spine. She has flexion and abduction to 120 degrees. She has decreased grip strength. Medications will be refilled. Work restrictions per the permanent and stationary report. Follow up in eight weeks.

**4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882**
*website* **www.nmrco.com** ■ *email* **RockfordIMEDepartment@examworks.com**

**LIB000046**

06/04/19, progress note by Dr. Kohan, she has ongoing neck and shoulder pain. Low back pain is less, but has difficulty lifting, pushing, and pulling. She has tenderness over the cervical spine extending to the trapezius and deltoid. She has not been able to get treatment because of issues surrounding her claim. She will continue with Norco and gabapentin.

07/09/19, progress note by Dr. Kohan, she developed depression due to exposure of modus operandi of the carrier. She has been taking Norco and gabapentin. Her exam is unchanged. Plan is prescribed Cymbalta to address insomnia, depression, and neuropathic pain. Follow up in four weeks.

This is a supplemental report and record review by Dr. Haronian dated 07/10/19, he was provided with notes from Dr. Arora and he remained in disagreement with the assessment of the QME over the body part in question regarding her cervical and lumbar spine and the acceptance of the claim regarding these areas.

07/11/19, progress note by Dr. Haronian, she continues to have pain and has seen pain management, who prescribes her medications. He recommends continuing and reducing the opioid medications as much as possible. Ibuprofen will be provided with Prevacid. He will see her back at a lesser frequency as she has been declared permanent and stationary.

09/26/19, supplemental report and review of records by Dr. Haronian, MRI of the right shoulder revealed a partial thickness supraspinatus tendon tear. MRI of the cervical spine was reviewed. He disputes the medical-legal evaluator's note. Dr. Haronian provided restrictions to avoid lifting more than 10 pounds and avoid repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching due to her wrist complaints. It would be reasonable to indicate that the patient will not be able to perform her previous work activities as indicated in his report dated 01/31/19. Ms. Collier underwent a functional capacity evaluation on 09/12/19 and 09/13/19 to obtain objective measurement of her physical capacity for work. It was recommended that the claimant can sit occasionally up to 3 hours per day, stand occasionally up to 3 hours per day, walk occasionally up to 3 hours per day, climb 5 flights, bend and squat 10 reps, reach overhead 40 reps, and push and pull 36 pounds. She is unable to return to work with the above parameters. This is a functional capacity evaluation report dated 09/13/19 indicating that based on the test results, the client gave maximum effort with testing. She had 98% consistency with coefficient of variance measurements below 15%. Although the claimant presented with functional limitations on the first day of testing, her performance and activity tolerance declined on day 2. She presents with deficits in strength of her upper and lower extremities. She has difficulty with tasks involving repetitive bending, squatting, and stair climbing and activity tolerance declined on day 2. Based on testing, the client is unable to perform sedentary work as she is unable to maintain static sitting for approximately 2 hours continuously and up to 6 hours a day.

10/11/18, this is a qualified medical examination in pain management by Ripu Arora, MD. She has pain in her neck, shoulder, lower extremities, headaches, forearm, elbows, and shoulder blade pain, upper back pain because of the lack of the ergonomic furniture provided to her at the work location. She has been seeking medical attention. Neck shows trigger point spasm and tenderness on the left side. She has diminished shoulder range of motion on the right and left. She is able to flex and extend her lumbar spine to 60 and 20 degrees bilaterally. Diagnoses are cervical radiculopathy, right shoulder status post rotator cuff repair with pain, left shoulder pain, sacroiliac pain bilaterally and low back pain. No

LIB000047

Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier
**Page** 8

**NMR#:** 307803

medical records were available for review.  He is unable to comment on apportionment or permanent and stationary status.

10/24/18, this is a supplemental report by Dr. Arora.  A record review was performed.  He indicates that after reviewing the records, there are differences between her history and the examination of the medical records provided.  She has been complaining of symptoms during the 2005 to 2009 timeframe and it is his medical records that the back pain and neck pain as well as hemorrhoids are not out of employment.  She started complaining of shoulder pain in 2015.  It is his medical opinion that the right shoulder injury is related to employment.  It is his opinion that she has reached permanent and stationary status.  There is no apportionment for the right shoulder.  The neck and back are 100% non-industrial.  She has 9% total whole person impairment.  She is healing from shoulder surgery and should avoid heavy lifting more than 20 pounds and reaching above her head and follow-up would be advised by an orthopedic surgeon.  She may need physical therapy 6-12 sessions for pain.

This is a peer review by Akhil Chhatre, MD.  Records were reviewed and response to questions were performed.  He was unable to talk with Dr. Haronian.  The diagnoses supported by the medical evidence are chronic low back pain, neck pain, and right shoulder pain, status post right shoulder arthroscopy.  There are no supported impairments from 05/15/18 to the present.  She has stable exam findings with no new diagnostic testing.  The MRI of the cervical spine from 2016 is without any updated findings.  The right shoulder MRI is undated.  The claimant has stable exam findings with no new testing to suggest acute neurologic or musculoskeletal derangement.  The claimant does not have supported impairment.  The claimant is medically stable with diagnostic testing.  The severity and scope are not in line with the chronic and stable conditions that are supported by the medical records.  There is no evidence to support impairments related to prescribed medications.

MRI of the cervical spine dated 10/10/16 shows straightening of the normal lordotic curvature.  1 mm broad-based posterior disc bulge at C3-C4 indenting the anterior aspect of the thecal sac.  2 mm central posterior disc protrusion at C4-C5 causing pressure over the anterior aspect of the thecal sac.  There is a 2 mm broad-based posterior disc endplate osteophyte complex at C5-C6 causing pressure over the anterior thecal sac.  There is a 2 mm broad-based posterior disc protrusion at C6-C7 causing pressure over the anterior thecal sac.  There is mild narrowing of the left neural foramen and moderately significant narrowing of the right neural foramen.

MRI of the right shoulder dated 07/05/17 was reviewed showing impression 9 mm approximately 50% partial-thickness articular surface supraspinatus tendon tear on a background of moderate tendinosis.  Infraspinatus and superior fiber subscapularis mild tendinosis.  Proximal long head of biceps mild tendinosis.  Minimal subacromial-subdeltoid bursitis and acromioclavicular joint osteoarthrosis.

MRI of the lumbar spine dated 02/15/19 shows impression anterior osteophytes at T12 down through L5.  Mild disc desiccation at L2-L3 down through L5-51.  Anterior loss of disc height is seen at L5-S1.  There is no significant disc herniation or neural foraminal narrowing visualized.  The spinal canal is patent.  Exiting nerve roots are normal.  Left lateral annular fissure is identified.  A mild disc bulge is identified at L5-S1 measures 2.6 mm.  Exiting nerve roots are normal.

LIB000048

NMR
Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 9

An occupational analysis dated 03/02/19 was reviewed with a summary indicating that the job that she performed at AAA was within the sedentary and light physical demand profile. It is reasonable to conclude that the occupation exists in both full-time and part-time positions. This is performed by Jane Howard, and she has not met with the claimant.

Blood work from Kaiser Permanente was reviewed and correspondence was also reviewed between the claimant's attorney as well as Liberty Mutual and treating physicians.

The claimant's job title as well as her job performance were reviewed.

This is a functional capacity evaluation done by Ergo Links Sebastian Jurado, DPT performing functional capacity evaluation with recommended physical demands of sitting less than 30 minutes continuously up to 3 hours per day, standing up to 30 minutes continuously up to 3 hours per day, walking less than 30 minutes continuously up to 3 hours per day, climbing five flights continuously, bending 10 reps continuously, squatting 10 reps continuously, these are all in the occasional range. She may reach overhead 40 reps continuously. Pushing and pulling are 36 pounds and 34 pounds. Lifting capacity is 15 pounds. It was felt that the claimant is unable to work within the parameters above.

**HISTORY OF PRESENT ILLNESS**: Ms. Collier is a 56-year-old woman who states that she has had no history of missed work or lapses where she had an industrial or other injury that required her to miss a period of time at work. She states that around 2015, she started to note neck pain that would radiate to the right shoulder. She states that in 2016, she went on a trip to Mexico that she had one at work and started to feel "kink" in the left neck with certain positions. She continued to have ongoing pain in the shoulder and upper arm region. She states that she had symptoms in her low back as well. She eventually sought treatment where she underwent imaging studies of her shoulder and she had cortisone injections, which initially helped, but then stopped working. She states that in May of 2017, she underwent right shoulder rotator cuff repair and was off work for approximately three months. She went to physical therapy and was able to return to work. She states that initially she had been doing well then she started to have radiating pain once again. She started to have pain on the right shoulder, but also in addition on the left upper extremity as well. It was then decided that the symptoms were work related and she states that she stopped seeking treatment from Kaiser through which she had her prior care and her surgery. She states that she started to see a doctor through Workers' Compensation and she states that she has not been able to get treatment authorized and she states that she has only been using medications as no treatment has been authorized to Workers' Compensation. She states that she has had an MRI of her lumbar spine, but has not had any other up to date imaging studies of other areas. She has undergone treatment consisting of cortisone injections in the shoulder. She also had an epidural in her neck, which should not help. She has been through physical therapy, chiropractic, and acupuncture treatments. She states that when she was working, she had requested an ergonomic evaluation, but she was unable to get one in a timely manner and states that she had tried for two years to get an ergonomic workstation. She states that she has not had an epidural in her low back. She takes Norco for the pain up to 1-2 per day as well as gabapentin and Cymbalta. She has been doing stretching. She has not had an electrodiagnostic study and has not seen a rheumatologist.

**PRESENT SYMPTOMS**: She states that presently she has neck pain radiating to both shoulders and upper arms and occasional radiation to the wrist. She states that the pain is constant. She states that

4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882
*website* www.nmrco.com ■ *email* RockfordIMEDepartment@examworks.com

LIB000049



Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier          **NMR#:** 307803
**Page** 10

there is no relation of the pain to activity. She states that her shoulders are bothersome, but she does not note any increased pain with shoulder range of motion more than the usual constant level of pain. She states that at the present time, the left arm is more bothersome than the right. She states that the pain will awaken her. The pain is worse with sitting and will radiate into the periscapular area. She states that additionally she will have intermittent numbness in her hands and her fingers will turn white. She also has pain in her low back that radiates to the hip as well as the knee, the left side is worse than the right. She notes intermittent numbness and tingling and occasional right lower extremity numbness and tingling and pain with driving. The pain is worse with sitting and she needs to change positions frequently. She will occasionally limp when she tries to favor her hip and the pain will awaken her. She has bilateral elbow pain with right side more bothersome than the left. The elbow will occasionally lock and she has pain that radiates down into the forearm. She states that when she massages her forearms, she will have improvement of the pain that radiates into her index and middle fingers. The pain at times will radiate up into the shoulders.

**PAIN DIAGRAM**: Her pain diagram shows numbness on the top of her head as well as in both forearms and in her toes and the finger on her right hand. She has aching in the neck, bilateral shoulders and periscapular regions as well as in the elbow and in the right knee. She has pins and needles in the toes. She notes burning in the buttock region and radiating pain in the hip region as well as in the back of her head. She describes the pain as anywhere from 6 to 9, which varies in place. The pain is continuous, positional, intermittent and unable to rate.

**PAST MEDICAL HISTORY**: Significant for depression, for which she takes Cymbalta.

**MEDICATIONS**: Norco, gabapentin, Cymbalta, and hormone cream.

**PAST SURGICAL HISTORY**: Significant for hernia repair in 2002, breast augmentation in 2005, tonsil removal as a kid, and rotator cuff repair in 2017.

**REVIEW OF SYSTEMS**: Significant for fatigue, depression, sleep difficulty, headaches, nervousness, stress, numbness, weakness, bowel problems, memory loss, loss of concentration, itching, tingling, and early awakening.

**ALLERGIES**: None.

**SOCIAL HISTORY**: She does not smoke and drinks occasional alcohol. She has no history of alcohol or drug abuse. She states that she is presently single with three children; ages 26, 23, and 19. She lives with her boyfriend who works fulltime out of the house. She lives in a house that is two stories. She states that prior to her disability, she would enjoy swimming and going to the gym. She states that presently for exercise she will walk, stretch, take classes at a gym, and use a foam roller on a daily basis.

**EDUCATION AND WORK HISTORY**: Ms. Collier earned her high school diploma. She states that she was raising children until 2007. From 2007 to 2013, she was working in insurance as an independent producer where she was working from home. From 2013 until November of 2018, which was her last time working, she was working as an insurance agent. She states that her job consisted of

**LIB000050**

**NMR**

Network Medical Review Co. Ltd.

**An ExamWorks Company**

**RE:** Vicki Collier                                            **NMR#:** 307803
**Page** 11

sitting, using the computer and talking on a telephone, inspecting homes, occasionally bending, and minimal lifting.

**FUNCTIONAL HISTORY**: Ms. Collier indicates she is able to sit for 30-45 minutes at a time before she has to stand. She is able to walk and able to drive. She sleeps anywhere from 6-10 hours per night. She states that her last travel was to driving to Las Vegas. She states that she is able to stand 30-45 minutes at a time. She states that she is able to perform her health care, but finds difficulty blowing dry her hair and taking off a sports bra. She states that she exercises daily, walking, stretching, taking classes at the gym, and biking. She is able to type for approximately 15-30 minutes at a time. She states that housekeeping is performed by herself, her daughter, and her boyfriend and she does her own grocery shopping when needed.

Her typical day consists of getting up at 07:00-08:00 a.m., meditating, reading, stretching, walking her dog, going to the gym, sitting or lying down, reading, watching TV, tidying the house, stretching, occasionally cooking and watching TV.

**PHYSICAL EXAMINATION**: On physical exam, Ms. Collier's stated height and weight are 5'6" tall and 118 pounds. On evaluation of the cervical spine, she shows no loss normal cervical lordosis. There are no noted abnormal curvatures. Active cervical range of motion is noted to be flexion to 45 degrees, extension to 30 degrees, and rotation to 45 degrees bilaterally. She states that she has more pain with left greater than right rotation. There was no tenderness noted of the cervical paraspinal muscles nor in the parascapular region. She had mild tightness along the trapezius bilaterally.

On evaluation of the shoulders, she had well healed surgical portal sites on the right shoulder. She was noted to have no tenderness along the anterior or posterior shoulder. Active shoulder range of motion on the right side was noted to be 130 degrees of abduction, 80 degrees of external rotation, and 60 degrees of internal rotation. She had no pain with resisted internal or external rotation. She had pain with Hawkins' test on the right side, but no pain with Speed's test. On evaluation of the left shoulder, she had abduction actively to 30 degrees, external rotation was noted to be 80 degrees, and internal rotation to 30 degrees before she noted discomfort. She had pain with Hawkins' and Speed's test on the left side.

On evaluation of the elbow, she had flexion to 140 degrees, extension to 0 degrees, supination and pronation to 70 and 80 degrees bilaterally. She had no pain or limitation with range of motion on the right side. She had tenderness along the lateral epicondyle on the right side. No tenderness along the medial epicondyle and she did note pain on the right side with resisted finger extension. On the left side, she had full range of motion with pain noted with supination. She had tenderness along the medial and lateral epicondyles and pain with resisted finger extension. No swelling or erythema was noted.

On evaluation of the wrist, she had no swelling or discoloration noted in the wrist. She had well manicured fingernails, which had polish on from a nail salon. She had no tenderness to palpation on the right wrist. Wrist range of motion was noted to be 60 degrees of flexion bilaterally, 60 degrees of extension bilaterally, radial and ulnar deviation were 20 and 30 degrees bilaterally. She had no pain or limitation on right wrist range of motion. She had tenderness to palpation along the dorsal aspect of the wrist. On the left side, she was noted to have discomfort with left wrist flexion, but no limitation in motion. She was able to fully flex and extend the fingers on both hands. There was no tenderness or

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  **www.nmrco.com** ■ *email*  **RockfordIMEDepartment@examworks.com**

**LIB000051**

**NMR**
Network Medical Review Co. Ltd.
**An ExamWorks Company**

**RE:** Vicki Collier                                    **NMR#:** 307803
**Page** 12

joint enlargement noted.  She had 5/5 strength in the deltoid, elbow flexors and extensors, wrist flexors and extensors, and hand intrinsics.  Sensation was diminished to 80% on the left thumb.  Otherwise, sensation was intact to light touch on the right and along all other myotomes tested on the left side.  Reflexes were 1+ at the biceps and 1+ at the triceps and symmetric.

Ms. Collier had a normal appearing non-antalgic gait.  She was able to go up on her toes and back on her heels.  Upon palpation of the thoracolumbar spine and lumbar, there was tenderness to palpation. Lumbar range of motion was noted to be flexion to 60 degrees, extension to 30 degrees, and side bending to 30 degrees bilaterally.  She has no pain with whole body rotation to the right, but there was pain with whole body rotation to the left.  She had a negative straight leg raise bilaterally.

On evaluation of the hip, there was no tenderness along the lateral trochanteric region bilaterally.  Hip range of motion to 100 degrees of flexion, 30 degrees external rotation, and 30 degrees of internal rotation with no limitation on motion.  She had no pain with right hip range of motion.  She noted pain with left hip internal rotation.

On evaluation of the knee, there was no swelling or deformity of the knee.  She was noted to have pain in the left knee with knee extension.  Knee range of motion was noted to be flexion to 130 degrees and extension to 0 degrees.  There was no significant medial or lateral laxity.  There was no limitation in range of motion.  The claimant was noted to have tenderness along the medial and lateral left knee.  She was noted to have pain with knee flexion, which caused pain to radiate up into her hip region.  She had no tenderness to palpation along the right knee along the medial or lateral joint line.  There was negative Hawkins' test on the right side and on the left side, she had pain with Hawkins' test, but there was no palpable clicking.  She had a negative Lachman's test.  There was no significant medial or lateral laxity.

On evaluation of the foot and ankle, there was no swelling or erythema noted.  No visible deformity was noted of the ankle or foot.  Ankle range of motion was noted to be 40 degrees of plantarflexion bilaterally with no limitation.  Dorsiflexion was noted to be 20 degrees.  Inversion and eversion were noted to be 30 degrees and 20 degrees bilaterally.  She had no tenderness along the right medial or lateral malleolus and no pain with right ankle range of motion.  Upon left ankle range of motion, she was noted to have tenderness along the lateral malleolus and mild pain with inversion with otherwise no limitation in motion.

Upon evaluation of strength, she had 5/5 strength in the hip flexors, knee extensors, ankle and plantar and dorsiflexors, and extensor hallucis longus.  She had giving way of the left extensor hallucis longus.

On evaluation of sensory testing, she had intact sensation to light touch, however, she noted a tingling sensation, which she stated that otherwise she felt was not diminished along the dorsal aspect of the left foot. Reflexes were 1+ at the biceps, 1+ at the triceps and symmetric, 1+ at the knee, and 1+ at the ankle and symmetric.  Limb girth measurements were noted to be 25 cm on the right arm, 25.5 cm on the left arm, right forearm was 22.5 cm and left forearm was 22 cm.  Right thigh circumference was 40.5 cm and left thigh circumference was 40 cm, right calf circumference was 33.5 cm and left calf circumference was 33 cm.

**LIB000052**



**RE:** Vicki Collier          **NMR#:** 307803
**Page** 13

On evaluation of Waddell's testing, she noted superficial non-anatomic tenderness to light touch along the low thoracic and lumbar region, along the medial and lateral joint line of the left knee, along the lateral malleolus of the left ankle, and along the forearm region. She had a positive stimulation test with pain on whole body rotation to the left. She had a positive distraction test with no pain on straight leg raise, but on evaluation of the left knee, she had pain with knee extension and flexion. She had regional disturbance with non-dermatomal sensory loss with diminished sensation in the hand and mild give-way weakness of the great toe on the left side. There was no significant overreaction during the examination.

**DIAGNOSES**:

1. Cervical pain.
2. Cervical radiculopathy.
3. Bilateral shoulder pain.
4. Status post right shoulder rotation cuff tear.
5. Bilateral elbow pain.
6. Bilateral wrist pain.
7. Lumbar pain.
8. Lumbar degenerative disc disease.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS**:

1. **Please provide a complete physical description of the claimant including her gait upon entering the office, capacity for sitting, and ability to get on and off the exam table correlate this with exam findings.**

The claimant ambulated into the office, during the exam, as well as away from the office in a normal manner with no assistive device and no outward appearance of any pain from ambulation. She was dressed in a sweat outfit and tennis shoes and otherwise well groomed. She had manicured nails and her hair was down. She appeared to have no difficulty changing positions from sitting to standing position. She was able to get on and off the exam bed without difficulty. She was able to sit for the duration of the exam and did not appear to be moving, fidgeting or in a significant amount of pain. She did not request to change position during the exam. The claimant appeared to move with relative ease. She was cooperative for the examination and was able to perform all movements asked of her. During range of motion testing the claimant had smooth, fluid movements, and there was no outward manifestation of pain other than what the claimant verbalized.

2. **Are any observations or behaviors demonstrated that are inconsistent with the exam or medical records?**

Based on my evaluation of the claimant, the claimant reports symptoms predominately in the neck, shoulders, upper extremities, and low back. She has positive exam findings in these areas as well. She was noted to have pain and limitation with shoulder range of motion. She was noted to have tenderness to palpation in the areas described in the medical records and upon examination. In an examination by Dr. Haronian on 09/05/18, he noted no spasm, normal range of motion of the cervical spine, normal reflexes, diminished strength of bilateral deltoid muscles, intact sensation, impingement and Hawkins'

4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882
*website* **www.nmrco.com** ■ *email* **RockfordIMEDepartment@examworks.com**

LIB000053

signs were present on the left. Normal range of motion of the elbow with tenderness along the distal radius. Normal strength in the lower extremities. These findings are consistent with my findings on examination, however, I did not find any weakness in the shoulder and deltoid region. She also saw Dr. Jonathan Kohan for an initial evaluation in December of 2018. His exam showed spasm and pain in the cervical region with normal range of motion and strength. She has diminished sensation in the C5 and C6 dermatomes on the left and right. Shoulder examination shows normal range of motion. Lumbar examination shows diminished range of motion with pain and spasm and a negative straight leg raise. She has normal sensation and strength in the lower extremities. The claimant on my examination did note diminished sensation in the left thumb, but otherwise normal sensation. This is consistent with T5 dermatomal distribution. Based on my evaluation of the notes of Dr. Haronian and Dr. Kohan, it appears that there are not significant differences in the examination and upon my review of the medical records I did not view any observation of behaviors that were inconsistent with my exam.

3. **Was there any evidence of symptom magnification during the exam?**

The claimant did have positive Waddell's findings during my examination. She did have tenderness in a number of different areas to relatively light touch palpation. She did have some giving way of the left great toe. She had a positive whole body rotation on simulation test with pain on left whole body rotation. She indicated no pain with straight leg raise, however, during knee examination she did note some pain with knee range of motion. During my evaluation of the claimant, the claimant gave good effort during the examination. She does not appear to overreact or grimace during the examination, but she does have a number of areas of tenderness noted. It should be noted that the MRI of the claimant's right shoulder from July of 2017, which was after her surgery was reviewed showing a partial thickness supraspinatus tendon tear with tendinosis of the infraspinatus and longhead of the biceps. She also had an MRI of the cervical spine dated 10/10/16 showing straightening of the normal lordosis with 1-2 mm disc bulges and an MRI of the lumbar spine showing mild disc desiccation and a 2.6 mm disc bulge with a left lateral annular fissure. It is my opinion based on these MRI findings that the claimant's symptoms appear to be out of proportion to what would be expected based on these MRI findings. The claimant's upper extremity pain would not be consistent with the cervical MRI as there was no significant neural foraminal narrowing and the findings on cervical MRI appeared to be relatively minor. Additionally, she has been off work for over one year and she continues to have significant symptoms with no apparent improvement upon rest and not working. She has had MRI of the lumbar spine, which shows an annular tear and degenerative changes which are commensurate with her age. She continues to have significant limiting symptoms with regards to her low back that appeared to more than would be expected based on the findings on cervical MRI, lumbar MRI as well as the MRI of her right shoulder. She has not had an MRI of her left shoulder that is in the medical records, and it would appear that the claimant's symptoms appeared to be out of proportion to what would be expected on the exam findings as well as imaging findings and there are some positive Waddell's findings, which lead to the conclusions that there are likely some nonorganic contributions to the claimant's symptoms.

4. **Comment on whether the insured claimed pain severity and claimed functional limitations correlate with any clinical exam and/or diagnosis test findings. Does the severity on scope of claimed impairment correlate with medical and functional evidence?**

**LIB000054**

**NMR**
Network Medical Review Co. Ltd.
**An ExamWorks Company**

**RE:** Vicki Collier                                                    **NMR#:** 307803
**Page** 15

As indicated in my response to question 3, it is my opinion based on the MRI findings for her right shoulder and cervical spine that the claimant's symptoms appear to be out of proportion to what would be expected based on these MRI findings. The claimant's upper extremity pain would not be consistent with the cervical MRI as there was no significant neural foraminal narrowing and the findings on cervical MRI appeared to be relatively minor. Additionally, she had no apparent improvement upon rest while being off work for many months. She continues to have significant limiting symptoms with regards to her low back that appeared to more than would be expected based on the findings on cervical MRI, lumbar MRI as well as the MRI of her right shoulder. While there is no record of her having an MRI of her left shoulder, the claimant's symptoms appear to be out of proportion to what would be expected based on exam findings, and there are positive Waddell's findings, which lead to the conclusions that there are likely some nonorganic contributions to the claimant's symptoms. Based on my review of the medical records and based on 20 years of examining patients in an orthopedic nonsurgical specialty, it does appear that the claimant's claimed pain severity is out of proportion to what would be expected based on the imaging findings. The claimant had good functional range of motion of both shoulders and upper extremities. She had intact strength and minimal loss of sensation in the upper and lower extremities. She has good range of motion of the cervical and lumbar spine, but indicates pain that is limiting her such that she is unable to work. The claimant is working out and is exercising on a daily basis and as indicated in the above question. There were findings on Waddell's testing as well as pain that appears to be out of proportion to imaging studies as well as exam findings that would indicate potentially the presence of a nonorganic source that is contributing to the claimant's pain. The claimant was visualized sitting for the duration of the examination other than during the examination portion, which was at least for 45 minutes. She did not appear to have any outward displays of pain. During range of motion testing, she was advised to tell the examiner when she experienced pain and the examination did account for her active range of motion. She was not pushed past her active range of motion when indicating pain to see if she was able to push further. Based on the claimant's examination and functional activities, the claimant appeared to be capable of more activity and she tends to underestimate her functional capabilities.

5. **Please address any physical impairments, if any, based on clinical exam, diagnostic test findings, and any functional evidence. For any impairment identified, please provide the clinical, diagnostic, and/or functional evidence supporting your opinion.**

Based on my evaluation of the claimant as well as review of the medical records and imaging studies, the claimant has impairments with regards to her neck, shoulders, and upper extremities as well as to her low back. The claimant's impairments with regard to her neck are based on pain with cervical range of motion and imaging studies showing loss of cervical lordosis as well as disc protrusion. With regard to her shoulders, the claimant has limitations with shoulder range of motion. She has limitation of right shoulder movement to 130 degrees of abduction and pain with Hawkins test on the right side. She has pain with range of motion as well as positive Hawkins' test and Speed's test on the left shoulder on examination as described in the physical examination portion. Her MRI of the right shoulder showed partial thickness tear of the supraspinatus and tendinosis of the infraspinatus and biceps tendon and she had well-healed surgical scars on the right shoulder. With regards to the elbows and forearms, she had tenderness along the medial and lateral epicondyle on the left. She had tenderness along the lateral epicondyle on the right and pain with resisted finger extension bilaterally. She also had some discomfort to palpation along the left wrist. She perceives numbness in her fingers and toes. This

4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882
*website*  www.nmrco.com  ■  *email*  RockfordIMEDepartment@examworks.com

**LIB000055**

**Network Medical Review Co. Ltd.**
An ExamWorks Company

**RE:** Vicki Collier     **NMR#:** 307803
**Page** 16

however has not been corroborated with any electrodiagnostic finding, although she does have diminished sensation in the left thumb and the medical records do document diminished sensation in the C5 and C6 distribution as well as documented weakness in the deltoid region, which was not appreciated on my examination. An MRI of the cervical spine showed loss of the normal cervical lordosis with degenerative changes and disc bulges with no significant foraminal stenosis.  With regards to the low back, she has pain with lumbar range of motion particularly with lumbar flexion.  Her lumbar MRI showed an annular fissure as well as mild disc desiccation.  She has had her medical providers document her cervical spine and shoulder findings as well as her lumbar spine diagnoses in their medical records and give restrictions for these areas as well.

6. **Please identify the medically-supported physical restrictions/limitations, if any. Please define by the type of task [sitting, standing, lifting, fingering, etc.], as well as frequency of tasks [never, occasional, frequent, constant]. Include duration of physical restrictions and limitations.**

Based on my evaluation of the claimant, there are medically supported impairments with regard to the claimant's cervical spine, bilateral shoulders, bilateral elbows and forearms, and the lumbar spine.  These would translate into the following medically supported restrictions and limitations.

The claimant indicates that she has low sitting tolerance and her self-reported sitting tolerance is 30-45 minutes.  Sitting causes her discomfort in her neck and low back.  Lumbar examination shows diminished range of motion with pain and spasm. It is my medical opinion that the claimant can sit for up to 30 minutes at a time after which she will require a position break for up to 5 minutes before she can resume a seated position. She can continue to work during this break. The claimant can sit for a total of 6 hours in an 8-hour workday.  She would benefit from a sit-stand desk.

The claimant indicates a self-reported standing limitation of 30-45 minutes that causes her pain in the low back.  She indicates that she does not have any limitation and is able to walk relatively comfortably. It is my professional opinion that the claimant can stand or walk up to 30 minutes at a time with the ability to change positions for at least 5 minutes before resuming standing or walking.  She can continue to work during this break. She can stand and walk for a combined total of 4 hours in an 8-hour workday. The claimant would benefit from an ergonomic workstation and again a sit-stand at desk, so she is able to change positions frequently as this would mitigate her symptoms such that she would be in less pain and be able to function at a higher level.

With regards to reaching, the claimant may reach on an occasional basis in all planes.  The basis for this reaching restriction is based on her perceived shoulder pain and the fact that she has had prior shoulder surgery and has partial thickness rotator cuff tear, she has pain in her cervical spine as well as in her lumbar spine and it is felt that reaching on a more frequent basis than occasionally in all planes would result in pain such that she would not be able to continue working and her symptoms would exacerbate.

She may lift and carry up to 10 pounds occasionally.  She may push and pull up to 20 pounds occasionally.

4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882
website  www.nmrco.com  ■  email  RockfordIMEDepartment@examworks.com

LIB000056

The claimant may perform tasks with regards to fingering, feeling, gripping, and grasping on an occasional basis. She may benefit from voice activated software should she require any computer work. The basis for her upper extremity gripping, grasping, etc limitations are based on the fact that she has pain with her upper extremities, she has tenderness along the medial and lateral epicondyle on the left and the lateral epicondyle on the right. She has pain with resistant finger extension bilaterally at the elbow. Limiting the claimant's fingering and typing to occasional would not only take into account her perceived limitations, but also minimize any flare-ups of pain such that she would be able to function at a higher level.

It is my professional opinion that in describing these restrictions and limitations, it is important take into account the medical provider's restrictions and limitations, observations and examination findings of the claimant as well as the claimant's perceived limitations. There have been restrictions and limitations that were provided by her treating physician, Dr. Haronian in her permanent and stationary report. The work restrictions by Dr. Haronian were noted to be "cervical spine, the claimant is precluded from extended upward and extended downward gazing; lumbar spine, the claimant is precluded from repetitive bending and twisting of the lumbar spine; bilateral shoulders, the claimant is precluded from repetitive activities at or above the shoulder levels; bilateral elbows, the claimant is precluded from repetitive torquing; bilateral wrists, the claimant is precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching." Additionally, she had a QME report by Dr. Arora, which gave her restrictions of "avoid heavy lifting more than 20 pounds and reaching above her head." It is my opinion that these restrictions and limitations are accounted for in my restrictions that were noted above and that based on the claimant's ongoing pain and the fact that she has been made permanent and stationary, these restrictions would likely be permanent.

7. **Does the medical evidence support any side effects from the prescribed medications?  If yes, please provide the supported impairments and outline how any impairment affects functional capacity?**

The medical records do not support any impairments or side effects from any medications.

8. **Please comment on the claimant's capacity for sustained, full-time work within these supported restrictions/limitations.**

It is my opinion based on my observation of the claimant and findings of the claimant's examination that the claimant would be able to work on a fulltime consistent basis. The claimant has had restrictions and limitations by the QME as well as her treating physicians that have been provided. The claimant was not deemed by her treating physician to be totally functionally impaired, and therefore it is presumed that the claimant would be able to work within these restrictions and limitations provided by her primary physician.

Based on my evaluation of the claimant and review of the medical records, I do not find clinical evidence that would limit the claimant's ability to work on a full-time sustained basis. The claimant can work full time, 8 hours per day, 5 days per week, for a total of 40 hours per week with the restrictions and limitations outlined in my response to question 6. The claimant has functional range of motion and the limitations that are based on her self-reported levels of pain. The MRIs of her cervical and lumbar

**LIB000057**

spine as well as her shoulder do not show significant changes that would limit her ability to function and her pain appears to be out of proportion to the physical exam findings.  She did have a functional capacity evaluation, which indicated that she may sit for up to three hours per day, stand for up to three hours per day, and walk for up to three hours per day.  While the FCE examiner opined that she was unable to work on a full-time or part-time basis, these timeframes do constitute eight hours in a day, which would be considered full time.  Her primary treating physician, Dr. Haronian indicated the work restrictions that had again been outlined "precluded from extended upward and extended downward gazing, precluded from repetitive bending and twisting of the lumbar spine, precluded from repetitive activities at or above the shoulder level; precluded from repetitive torqueing; and precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching."  Based on my evaluation of the claimant, the claimant has functional capability in her upper and lower extremities.  She does have pain in her low back with sitting and standing, but I do not feel that these preclude her from working on a full-time basis.  Her practitioners did not indicate that she was completely functional impaired, but that she would be able to return to work with restrictions if the restrictions were able to be accommodated.  It is my professional opinion that if she were provided with a sit-stand desk to be able to change positions periodically as well as with voice activated software and an ergonomic workstation that these would enhance her ability to work on a sustained basis without exacerbating her symptoms.  Functionally when she moved in the examination room, she did not appear to have any significant pain behaviors nor did she appear to be functionally limited such that she would not be able to carry out a full-time job within the restrictions and limitations identified above.  Despite these findings of the functional capacity evaluation performed by the physical therapist, it is my opinion based on the medical records reviewed, the opinions of her treating physicians as well as my physical examination that the claimant would be able to work on a full-time sustained basis within the restrictions and limitations outlined in my response to question 6.  Her physicians have also provided restrictions and limitations at which she would be able to work and it's my professional opinion that these restrictions as well as the restrictions that I have imposed are very similar and would allow her to be functional at some job within the restrictions outlined.

**CONFLICT OF INTEREST ATTESTATION:**
I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review (I do not have a contract to provide health care services to enrollees of the health benefit plan of the insurance issuer or group health plan that is the subject of this review); the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; (I do not have staff privileges at the facility where the recommended health care service or treatment would be provided if the insurance issuer's or group health plan's previous non-certification is reversed) or the developer or manufacturer

**LIB000058**



Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 19

of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

Physician Advisor

Katrina Vlachos, M.D.
Board Certified in Physical Medicine & Rehabilitation
Licensed in State of CA #68888

*NMR CONFLICT OF INTEREST ATTESTATION: NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  **www.nmrco.com** ■ *email*  **RockfordIMEDepartment@examworks.com**

**LIB000059**

# Network Medical Review Company, LTD.

*An Examworks company*

**INVOICE**

Attn: Kimberly Murray
8801 INDIAN HILLS DRIVE
OMAHA, NE 68114

Invoice Number: 307803-1
Invoice Date: 2/3/2020 3:05 PM CST
Account Number: 519192
File Number: 307803-1

Service Date: 2/3/2020 3:05 PM CST
Claim Number: 8741789
Claimant Name: VICKI COLLIER

| Description | | Amount |
|---|---|---|
| Initial | LTD | **$4625** |

**Physician Name/Specialty**
KATRINA M VLACHOS / Physical
Medicine & Rehabilitation

**Comments**

**Please pay this amount:**        **$4625**

Remit to: Network Medical Review Company, LTD
PO Box 492260
Redding, CA 96049-2260
Tax ID 76-0711128

**LIB000060**

# EXHIBIT 11

# EXHIBIT 11

COLLIER APL 0515

**LIB000061**



HELPING THOSE WHO ARE IN THE BUSINESS OF HELPING OTHERS™

Friday, February 21st 2020

### Peer Review Rebuttal – Vicki Collier – IM2185

To whom it may concern,

The Medical records provided were reviewed, which included an IME report by Katrina Vlachos, MD. She opined that Ms. Collier is able to perform full-time work, 40 hours a week. Although her examination appeared to have some consistencies with my observations during the FCE from 9/13-9/14/2019, she believes that the client's symptoms are out of proportion based on the MRI findings for the cervical and lumbar spine as well as right shoulder MRI. MRI results of the cervical and lumbar spine do not provide a complete picture of a patient's symptoms in the upper and lower extremities as it relates to the client's functional capacity.

Dr. Vlachos indicates normal to hypermobile lumbar spine range of motion, which is a drastic difference from my observations during the two-day FCE.  However, during the FCE, cervical and lumbar spine range of motion was measured using dual inclinometers in conjunction with a computerized system in order to accurately isolate the true range of motion in each region.

For strength, Dr. Vlachos indicates in her report that the client presented with 5/5 strength in her bilateral upper and lower extremities. With this measurement recording it is apparent that manual muscle testing was used to evaluate strength. During the FCE, her muscle testing is assessed using an electronic muscle tester, which has proven sensitivity and specificity. The results from the FCE show a deficit in her upper and lower extremities which is more indicative of her real strength measures as the device utilized is proven to be more accurate.

Although Dr. Vlachos believes that the client may work a full-time position, 40-hours a week, her evaluation mentions how symptoms may be affected one day to another depending on the amount of physical activity performed. The client's ROM, strength, posture and functional performance declined

COLLIER APL 0516

**LIB000062**

on the second day of testing. The client presented with increased muscular guarding. During the first day of testing, the client was able to sit for up to 30 minutes until she had to stand up due to back pain. On the second day, the client's posture was more guarded and she was able to sit for up to 15 minutes continuously and the transition from sit to stand was slower and cautious. Although the client ambulated with a normal gait pattern on the first day of testing, her cadence slowed down on day two and her posture was guarded throughout all phases of gait. Therefore, it could be expected for the client to have greater difficulty on a third or fourth day of work based on objective findings. The client was consistent with testing on both days and her physical performance correlated with her subjective complaints of pain.

The IME report by Dr. Vlachos provides recommendations for standing and walking restrictions based on the client's self-reported abilities rather than functional testing, in contrast to the FCE. I agree with Dr. Vlachos's recommendation to limit reaching to an occasional basis as well as providing an ergonomic sit to stand desk if the client were to work, though this would not enable full-time productivity. It is unclear whether Dr. Vlachos's lifting restriction of 10 lbs is based on functional testing. During the FCE, lifting was assessed using a dynamic lift test as well as heart rate monitoring to validate consistent effort

If there are any questions, feel free to reach out to me at 877-399-3746.

Best regards,

Sebastian Jurado, DPT

COLLIER APL 0517

LIB000063

# EXHIBIT 12

# EXHIBIT 12

COLLIER APL 0518

**LIB000064**

DocuSign Envelope ID: 4B61355B-1F18-4686-AC1B-D50F2C1B56B4

**Declaration of Vicki Collier in Response to IME**

I, Vicki Collier, declare as follows:

1.  Each of the facts stated herein is true and correct within my personal knowledge and, if called as a witness, I would testify competently thereto.

2.  I have read the Independent Medical Evaluation report of Katrina Vlachos, MD dated January 30, 2020. I disagree with several statements therein and my corrections are expressed below and relay statements made by my treating providers which bear on Dr. Vlachos's conclusions.  This was prepared with the assistance of my attorney.

3.  Dr. Sovanrith Tun's Work Status Report dated August 27, 2018 states: "This patient is placed on modified activity at work and at home. . . If modified activity is not accommodated by the employer then this patient is considered temporarily and totally disabled from their regular work for the designated time and a separate off work order is not required." Dr. Tun's restrictions were "NO TYPING. NO USE OF BOTH SHOULDERS AND ARMS". Similar restrictions were provided on July 6, 2018, and on May 14, 2018. These records were sent to Liberty Life.

4.  Dr. Edwin Haronian's Permanent and Stationary Report dated September 5, 2018 listed the following restrictions: no lifting, pushing, or pulling over 10 pounds; no bending, twisting activities; no placing the spine in unusual or awkward positions; no repetitive hand motions, pinching, or grasping bilaterally. On January 31, 2019, Dr. Haronian provided the following restrictions which, if were not accommodated by the employer, rendered me permanent and stationary: no extended upward or downward gazing; no repetitive bending and twisting of the lumber spine; no repetitive activities at or above the shoulder level; no repetitive torqueing; and no repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching.

5.  Drs. Tun and Haronian have seen me as their patient, evaluated, and treated me on several occasions. Dr. Vlachos, on the other hand, simply talked with me for 40 minutes and then did a 10-minute physical evaluation. Drs. Tun and Haronian listed several specific restrictions and limitations which Auto Club was unable to accommodate.

6.   I was and currently am unable to perform my job duties: Responsible for obtaining goals for all lines of insurance, memberships and referrals to other departments.  Process and underwrite accurate applications with proper documents/documentation, meet proper guidelines and required to complete within company deadlines. Responsible for servicing accounts, cross selling, and following up with delinquent accounts. Inspections done as needed on home and auto.   Hours required 40+ per week, including every other Saturday for

COLLIER APL 0519

**LIB000065**

DocuSign Envelope ID: 4B61355B-1F18-4686-AC1B-D50F2C1B56B4

four hours.  As one can see from my Kronos which is provided as part of the response to the IME, this was more like a 60+ hours a week, plus Saturdays. And at the end of month all policies required to be uploaded which would require me to work sometimes 10-12 hours a day.  Even if another employer only required 40 hours a week to do the same or similar job, I cannot do that job because of my limitations.

7. I was hired by the Auto Club in June 2013 and was required to agree to 12 weeks paid training away from home before hiring took place. In those 12 weeks I was trained to perform my duties working for the Auto Club. Prior to my hiring I held a Property and Casualty License #0G44476.

8. In 2015/2016 I started experiencing pain in my shoulder, back, and neck and head. It gradually became worse. I saw my regular Kaiser HMO doctor and I was referred to specialists.  At the time of this visit my doctor had asked me about my profession and hours worked. She suggested that I should be evaluated by an ergonomic specialist regarding my work station and provided me with a letter dated February 2017 requesting the evaluation.  I provided that letter to my manager (copy attached). I then saw my regular physician in June 2017 as the condition was worsening. My physician also provided me with a letter requesting for my work station to be evaluated because it may have been contributing to my pain. I provided the letter to my manager (copy attached).  I then saw a chiropractor, in network, for help in relieving the pain.  He also provided a letter suggesting to have my station evaluated which I gave to upper management (copy attached). I then was referred to Orthopedics/Kaiser Dr. Tun, who administered cortisone shots in my right arm and provided yet another letter requesting that my work station be evaluated. Again, I provided that letter to upper management. It wasn't until February 2017, after pleading to upper management, that an inside vendor ergonomic specialist came out and did an evaluation.  After numerous requests for the report, it was finally provided and I was told by the Regional Manager they were working on getting approval to provide me with the recommendations (see attached recommendations). I made several attempts by phone and email to my contact person Lori Alexander in Human Resources regarding my condition and to expedite getting the recommended ergonomic items, but never received a response by phone or email. In January or early February of 2018, I went into see the Regional Sales Manager Jonathon and Branch Manager Scott Derryberry, and was shocked to see that both had ergonomic desks and furniture in their offices. They assured me that my furniture was on the way.

9. The pain continued to worsen and I made numerous visits to doctors, specialists, and a chiropractor. I had physical therapy, cortisone shots, epidural injections, CAT scans, MRI, Botox injections (head, neck, trapezius muscles), acupuncture, and was prescribed medications.

COLLIER APL 0520

LIB000066

DocuSign Envelope ID: 4B61355B-1F18-4686-AC1B-D50F2C1B56B4

10. In July 2017, an MRI revealed that I required bilateral rotator cuff surgery. Dr. Tun performed the surgery on my right shoulder on July 25, 2017. I presented my work restrictions issued by Dr. Tun to my manager, who forwarded it to HR. The restrictions were not using my right arm. I received a call from the branch manager, Scott Derryberry, stating that they will accommodate me coming back to work. I was told that I would not have to use my right arm, and that they will allow me to perform my job (majority commission-based) with the use of my left hand at my own pace. I am right-handed. I explained how I would not be able perform my job with only a left hand. My job required daily typing /writing for eight hours while meeting with clients. What would usually take me an hour with two good hands would probably take me 4-8 hours using only my left and would not be fair to a customer sitting in front of me. I had asked if they could provide me something else to do while I was healing and they stated no, and gave me options: for me to come back to my position by using just my left hand, or provide another letter from my doctor that was more detailed on the limitations. Otherwise, I was in jeopardy of losing my job if I did not return. I then had to go back to Dr. Tun to explain my options. Dr. Tun expressed surprise to me about these options and revised the letter for 90 days off work.  After healing form the surgery for 90 days, I was released back to work with no limitations on November 1, 2017.

11. I went back to work on November 1st, successfully selling policies and maintaining my performance goals. I am providing a copy of hours that were recorded for that month. After a few weeks I started experiencing the same throbbing pain in my right shoulder. I called Dr. Tun and he scheduled an appointment for me to come in and administered yet another cortisone shot. The cortisone shot masked the pain for a few weeks but then came back with a vengeance, not only in my right shoulder, but this time, in my left shoulder, as well. Dr. Tun administered a cortisone shot now in my left arm. For the next few months, I was seen by Dr. Tun as my right shoulder was not only continuing to have pain, but I was experiencing incredible pain in my left shoulder, too. It was so incredibly painful that my manager would see me crying at my desk.  I again asked about my work station and was told it was ordered.

12. On my visit to Dr. Tun on May 14, 2018, he stated that I would need surgery on my right arm a second time to see if there was another tear and also to schedule an MRI for my left arm. At that time, he issued limitations and restrictions (already part of Liberty Life's claim file), and if the Auto Club could not accommodate, to consider me temporary and totally disabled.  I went back to work and asked to meet with my Regional Sales Manager, Johnathon and Branch manager, Scott. I provided them with the letter that states "This patient is placed on modified activity at work and at home " "if modified activity is not accommodated by the employer then this patient is considered temporarily and totally disabled from their regular work for the designated time and a separate off work order is not required" "RESTRICTIONS" "NO TYPING. NO USE OF BOTH SHOULDERS AND ARMS". They both read the letter and said they would get back to me shortly.  Thereafter they called me

COLLIER APL 0521

LIB000067

DocuSign Envelope ID: 4B61355B-1F18-4686-AC1B-D50F2C1B56B4

into the office and said they had spoken with HR and were unable to accommodate the restrictions.

13. Dr. Vlachos's report contains many mistakes and assumptions which have no basis in reality. For example, she stated I arrived on time and by myself. That is incorrect. My partner, Duane Raha, accompanied me and when I was called into the office he asked if he was able to attend and they said "no". They were aware I was with someone.

14. In Dr. Vlachos's History of Present Illness there are some mistakes, as well. After returning back to work after three months off from surgery, I started to experience pain again in my right shoulder. By the end of the month it was excruciating, and I saw Dr. Tun for a cortisone shot. It was some time after that I started having the same pain in my left arm. I had two cortisone shots, the second shot only lasted a week or two. I never said I had an epidural in my lower back. I have only had one epidural and that was in my upper back, not my neck. The doctor asked if I had any electro tapping testing or seen a rheumatologist; however, she said she reviewed all medical records, which clearly show that I have not, nor was I ever told to.

15. Present Symptoms: I advised the doctor that I am in constant pain in the left side of my neck, trapezius, both shoulders, shoulder blades, and that pain radiates down my shoulders into my elbows through my forearms down to my wrists and on my right hand between the index, middle and ring fingers. She had asked where I thought the pain was coming from - my neck or from my shoulders. I said I have no idea where it is coming from but it seems as though my whole left side is affected and it is the left side of my neck that has the excruciating pain and causes headaches and numbness in top of my head and migraines behind my left eye and left side of my nose. When the doctor asked me to reach up it was only one time and for a second. That usually does not cause more pain. It is the repeated activity that causes pain and will show up later in the day. I expressed that I have numbness in my fingers, feet, and toes. I also expressed that it was really activated that morning. I told her that I have circulation problems as my fingertips and toes will turn white as if they are not getting blood to them. I said I bet if I take my shoe off my toes will be white. I took my shoe off to show her (and they were white) and she said "oh yes, ok" and moved on. There is nothing in the report that it was brought to her attention.

16. Physical Examination: My weight at the exam 118 pounds, nothing was mentioned or noted about the weight loss from 130 – 118 in the last 2 years. There was no discussion on how my body has changed in the last couple of years such as muscle loss, muscle atrophy, weight loss, etc. However, it was mentioned twice that I had well-manicured fingernails, and not only were they well-manicured, but she also stated it mist have been done at a salon. This is

COLLIER APL 0522

LIB000068

DocuSign Envelope ID: 4B61355B-1F18-4686-AC1B-D50F2C1B56B4

an assumption as I was never asked where my nails were done, and in fact, they were not done at a salon, but by my daughter.

17. There was no mention in the report that the doctor asked to see me walk. We were in a small room. I thought she was going to ask me to walk out in the hallway, rather she asked me to start at a certain point while she sat in her swivel doctor chair. The room was not even the length of the medical bed. I was able to take two steps forward, turn around and two steps back. I never said I could not walk a couple of feet. The results of this "exam" does not genuinely reflect my limitations.

18. Changing positions from sitting to standing will not show difficulty unless I am asked to do it over and over again. However, if I am sitting for a long time and need to stand up, then one would see difficulty. The doctor did not address my current issues (I will be seeing a specialist on March 10), rectal bleeding, itching, discomfort from sitting. It is not in the report.

19. As I sat in my seat talking with the doctor, the first thing I mentioned was that I was in excruciating pain on the left side of my neck down into the shoulders and upper back, and also that I have been having the rectal issues. I was sitting at the edge of the front of the chair leaning forward, with my back swayed, and had pain when I turned my head. To relieve the pressure/pain, I often roll my head around, and I did that in the room. At times, I would stretch my legs out straight and flex them, which I find helps to relieve the pain on my left side, as well as crossing a leg over and pushing on my inside of knee to release the pain. But these movements do not appear to be moving or fidgeting in the doctor's opinion. She stated I was not in a significant amount of pain. Within the first ten minutes, she asked if I was experiencing pain and I had said yes, in my neck and rectal area, at which point I began to cry and she had to go out of the room to get me tissue. There is no mention of that. At best, her statement that I was not in pain is a mistake, and it worst, it's outright deliberately misleading.

20. When asked to perform all movements, the doctor did not ask if I had taken a pain pill before the exam (or within the last 24 hours) which I had at bedtime and in the morning. Again, I was having excruciating pain in my neck. The movements I was asked to perform were basic movements that took one or two seconds to complete. A job/my job does not consist of a movement for just one or two seconds. It is the repetitive motion over and over again for 8, 10, or 12 hours a day. It is the repetitiveness my body cannot withstand (sitting, standing, keying, gazing, writing, looking right to left). I simply cannot do this.

21. The doctor evaluation consisted of a total of 50 minutes. There was no repetitive testing done. I can sit for 45 minutes (including with pain), I can reach over my head (not to its full

COLLIER APL 0523

LIB000069

DocuSign Envelope ID: 4B61355B-1F18-4686-AC1B-D50F2C1B56B4

extension) I can type for 15 minutes.  It is the continuous repetitive motion that causes additional pain that affects me even in my sleep.

22. In contrast, the FCE required doing activities for at least four hours a day, two days in a row. After the first day, I was sore and in pain. The second day upon awakening, I could not sit up and when I tried, it cut my breath off.  I almost called 911 as I could not move and catch my breath.  After an hour of slowly stretching, manipulating and rising I was able to get dressed and go to the appointment, still out of breath. I had to very carefully position myself as some movement would again cut my breath off.  After the exam, I went to the chiropractor for an adjustment and he had said my rib was out of place.

23. Dr. Vlachos states that the medical reports do not support any impairments; this is not true. Dr. Vlachos stated my evaluation/pain was consistent with Dr. Haronian and Dr. Arora's findings. She states there is no support of side effects from any medications; however, she did not ask me if I had any side effects, how I felt while on the medication, or if I felt I could accurately do a job while on these types of medications.

24. Norco causes anxiety, dizziness, drowsiness, constipation, lightheadedness, headache, brain fog, dry mouth, ringing in ears, blurred vision, and mood changes. Cymbalta causes dry mouth, constipation, fatigue, brain fog, hypersomnia, insomnia, restlessness, tension, agitation. Gabapentin causes constipation, unsteadiness, dry mouth, fatigue, brain fog, dizziness, blurred vision. These side effects further impair my functioning. Dr. Vlachos did not ask about side effects.

25. Dr. Vlachos opines that I can work on a fulltime basis. This determination is based in a 40-minute conversation and 10-minute evaluation. While she did review some medical records, those very same records were reviewed by Dr. Akhil Chhatre, Liberty Life's peer reviewer, but his findings were found to be unsupported by my treating orthopedist Dr. Haronian.  The same result is warranted here. Based on Dr. Haronian's treatment relationship with me and collaboration with my pain specialist Dr. Kohan, he opined that I am precluded from extended upward and downward gazing, repetitive bending and twisting, repetitive activities at or above the shoulder level, elbows, torqueing, power griping, keying, grasping and pinching. Also, avoid heavy lifting more than 20 pounds and reaching above head. These limitations and restrictions should be accounted for.  Dr. Tun, another treating doctor, provided restrictions of no use of shoulders and no typing. Even Dr. Vlachos opined that I can only type on an occasional basis. I must type at my job, and most sedentary jobs require typing.

26. The doctor added that I had functional capability in my upper and lower extremities, and pain in the low back while sitting and standing. However, she did not feel that this precluded me

COLLIER APL 0524

LIB000070

DocuSign Envelope ID: 4B61355B-1F18-4686-AC1B-D50F2C1B56B4

from working on a fulltime basis. Earlier she documented that I had pain in my shoulders and neck. However, now she is only indicating I have pain in my lower back that prevents me from sitting and standing.  Her first question was where is most of the pain and I stated my neck, shoulders, upper back, elbows, tingling in fingers and sometimes wrists. In regard to my lower extremities, it is tingling in feet and left buttock while sitting for period of time, left knee, and tingling when I stand for a long period of time. However, there is more pain in my upper body.

27. Dr. Vlachos stated that I functionally moved in the room and did not appear to have any significant pain behaviors, and that I did she appear to be functionally limited such that I would not be able to carry out a fulltime job within the restrictions and limitations she identified.  I was only in there for 50 minutes. I was not under strenuous testing nor was it repetitive. I did advise the doctor I was in excruciating pain. She also came to this conclusion in 10 minutes of testing/evaluation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on ___2/21/2020___ at ___Valencia___,
California.
                                              (date)             (city)



DocuSigned by:
Vicki Collier

COLLIER APL 0525

LIB000071



## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 4B61355B1F184686AC1BD50F2C1B56B4 | | Status: Completed |
| Subject: Please DocuSign: Collier - Client dec re IME 4831-7172-9333 v.1.pdf | | |
| Source Envelope: | | |
| Document Pages: 7 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 1 | Initials: 0 | Michelle Roberts |
| AutoNav: Enabled | | 19839 Nordhoff St. |
| EnvelopeId Stamping: Enabled | | Los Angeles, CA  91324 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | mroberts@kantorlaw.net |
| | | IP Address: 96.90.204.189 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Michelle Roberts | Location: DocuSign |
| 2/21/2020 1:25:53 PM | mroberts@kantorlaw.net | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| VICKI COLLIER<br>colliervicki@gmail.com<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>VICKI COLLIER<br>D1EDE33C21B14A8...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 76.170.114.116 | Sent: 2/21/2020 1:27:18 PM<br>Viewed: 2/21/2020 2:36:33 PM<br>Signed: 2/21/2020 3:24:16 PM |

**Electronic Record and Signature Disclosure:**
Not Offered via DocuSign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Zoya Yarnykh<br>ZYarnykh@kantorlaw.net<br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 2/21/2020 1:27:18 PM |

**Electronic Record and Signature Disclosure:**
Not Offered via DocuSign

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 2/21/2020 1:27:18 PM |
| Certified Delivered | Security Checked | 2/21/2020 2:36:34 PM |
| Signing Complete | Security Checked | 2/21/2020 3:24:16 PM |
| Completed | Security Checked | 2/21/2020 3:24:16 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

COLLIER APL 0526

**LIB000072**

# EXHIBIT 13

# EXHIBIT 13

COLLIER APL 0527

**LIB000073**

DocuSign Envelope ID: 584906E2-B695-4FF1-AFB4-0717A3FC7C71

**Declaration of Lisa Tetreault**

I, Lisa Tetreault, declare as follows:

1.  Each of the facts stated herein is true and correct within my personal knowledge, and if called as a witness, I would testify competently thereto.

2.  I have known Vicki Collier since 2006. I am a certified personal trainer and hold three certifications. I met Vicki at our local gym and shortly thereafter became friends and worked out together as I found we had the same drive.

3.  When I first met her, Vicki was a healthy strong woman in her 40s that came to the gym every single day. She was the epitome of someone who works hard to stay in amazing shape. We continued to work out together for many years.

4.  I recall that when Vicki started working for the Auto Club, she worked very long hours and wasn't able to work out as often as she used to, but it was still 4-5 times a week.

5.  About three-four years ago, Vicki started complaining that something was causing pain in her neck and shoulder. The pain continued and seemed to get worse. She completely stopped any exercises that focused on her upper body. She also complained that she couldn't sleep at night because the pain was so intense that it kept her up. She described it as a migraine-type pounding headache. It got to the point it was so bad that she stopped working out. She never had a problem performing any exercises prior to this. Vicki said she visited the chiropractor, on my recommendation, her primary doctor and then a specialist where they found she needed shoulder surgery. After surgery, she continued to work but seemed to get worse and more body parts were affected. It was then she discovered it may be her environment at work.

6.  From three years ago to now Vicki has changed in so many ways physically. She can no longer work out as she once did. She has confided in me that she has been on pain pills for a very long time. I have witnessed her body, once strong lean muscle mass, become very thin, with very little muscle mass and limited in what she can do as exercise or hobbies. I know Vicki would like to work out like she used to and to be able to do things she once enjoyed. She complains that she feels her body is turning into a bag of bones and that her skin is starting to hang off the bones. She is unable to visit her daughters as much as she would like as she said it is difficult for her to drive or fly. She would like to play golf with her partner but unable.

7.  I have seen countless arm and shoulder surgeries over the years in my profession. Vicki's surgery was expected to have restored her back to a somewhat normal status.  Instead, the pain spread shortly after the surgery and it just continued to get worse and has affected many other parts of her body.  I have not seen any improvements in her health since returning to the same issues at work.

COLLIER APL 0528

**LIB000074**

DocuSign Envelope ID: 584906E2-B695-4FF1-AFB4-0717A3FC7C71

8. To conclude: I have witnessed her body deteriorate over the last several years because of this injury and surgery. She spent a lifetime of dedicated healthy living to be now reduced to a weaker version of herself. She no longer gets to enjoy the daily activities of a normal life. In the few times I do get to see her now, she cannot do the normal weight training or other workouts we did (which I am still able to do, and we are close in age).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on 2/25/2020 at valencia , California.

                                                                  (date)         (city)

DocuSigned by:

*Lisa Tetreault*

7A6088A0C0B245E...

Lisa Tetreault

COLLIER APL 0529

LIB000075



## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 584906E2B6954FF1AFB40717A3FC7C71 | | Status: Completed |
| Subject: Please DocuSign: Collier  - Tetreault dec  (4842-0735-6341.1) (003) 4830-8047-1990 v.1.pdf | | |
| Source Envelope: | | |
| Document Pages: 2 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 1 | Initials: 0 | Michelle Roberts |
| AutoNav: Enabled | | 19839 Nordhoff St. |
| EnvelopeId Stamping: Enabled | | Los Angeles, CA  91324 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | mroberts@kantorlaw.net |
| | | IP Address: 96.90.204.189 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Michelle Roberts | Location: DocuSign |
| 2/25/2020 12:16:59 PM | mroberts@kantorlaw.net | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Lisa Tetreault<br>PCstaffing@outlook.com<br>Security Level: Email, Account Authentication (None) | *Lisa Tetreault*<br>DocuSigned by:<br>7A6088A0C0B245E...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 107.205.237.65 | Sent: 2/25/2020 12:18:50 PM<br>Viewed: 2/25/2020 12:56:46 PM<br>Signed: 2/25/2020 12:57:11 PM |

**Electronic Record and Signature Disclosure:**
    Not Offered via DocuSign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Zoya Yarnykh<br>ZYarnykh@kantorlaw.net<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 2/25/2020 12:18:51 PM |

**Electronic Record and Signature Disclosure:**
    Not Offered via DocuSign

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 2/25/2020 12:18:51 PM |
| Certified Delivered | Security Checked | 2/25/2020 12:56:46 PM |
| Signing Complete | Security Checked | 2/25/2020 12:57:11 PM |
| Completed | Security Checked | 2/25/2020 12:57:11 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

COLLIER APL 0530

**LIB000076**

# EXHIBIT 14

# EXHIBIT 14

COLLIER APL 0531

**LIB000077**



COLLIER APL 0532

LIB000078



COLLIER APL 0533

**LIB000079**

☑ **Jonathan Kohan, MD**   ☐ **Michael Nadzhafov, P.A.-C., M.P.H.**

Pain Management
DEA# BK6077502
LIC# A66353

DEA# MN1731656
LIC# PA19506

001340
19175150226
Serial# WCL190624A10390

☑ 5651 Sepulveda Blvd. Sherman Oaks, CA 91411 • Ph: (818) 788-2400 Fax: (818) 788-2453
☐ 724 Corporate Ctr. Dr. Pomona, CA 91768 • Ph: (909) 622-6222 Fax: (909) 622-6220
☐ 5211 East Washington Blvd., Suite 18 Los Angeles, CA 90040 • Ph: (818) 788-2400 Fax: (818) 788-2453

| SECURITY FEATURES LISTED ON BACK | |
|---|---|
| PATIENT NAME Vicki Collier | DOB |
| ADDRESS | PH. NO- |

Norco 5/325 1 qd to b.i.

1)

**Quantity:** ☐ 1-24 ☑ 25-49 ☐ 50-74 ☐ 75-100
☐ 101-150 ☐ 151and over  Unit 45
Refills: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5
☐ Do Not Substitute   Initials _____
Dispense As: ☐ First Time Fill  ☐ Refill

Neuronton 300mg 1 b.i.

2)

**Quantity:** ☐ 1-24 ☐ 25-49 ☐ 50-74 ☐ 75-100
☐ 101-150 ☐ 151and over  Unit 120
Refills: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5
☐ Do Not Substitute   Initials _____
Dispense As: ☐ First Time Fill  ☐ Refill

3) Cymbalta 30mg 1

**Quantity:** ☐ 1-24 ☑ 25-49 ☐ 50-74 ☐ 75-100
☐ 101-150 ☐ 151and over  Unit 30
Refills: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5
☐ Do Not Substitute   Initials _____
Dispense As: ☐ First Time Fill  ☐ Refill

**Signature**                    3   Date 8/13/19

SP 98    Prescription is void if the number of drugs prescribed is not noted: _____

FP03503-04-19

**BLUE BACKGROUND, REFLECTIVE WATERMARK ON BACK.**

COLLIER APL 0534

**LIB000080**



COLLIER APL 0535

**LIB000081**



COLLIER APL 0536

**LIB000082**



COLLIER APL 0537

**LIB000083**



COLLIER APL 0538

LIB000084

# Jonathan F. Kohan., M.D.
\* 5651 Sepulveda Blvd.# 201 Sherman Oaks, CA 91411 \*

## Authorization Request

**Today's Date: 08/13/2019**

**Our Chart No.** 20050164
**Patient Name:** Vicki COLLIER
**DOB:** ███████████
**Claim #:** 17G44F696159
**Claim #:** Unassigned
**Request from Office Visit date:** 08 13, 2019

You can contact us by phone, fax or email

**\*Phone # : (909)622-6222 Ext: 104**
**\*Fax: (909) 992-3109**
**\*Email: ur@synapsedoctor.com**

Thank you.
Paulina Delgado

Labor Code Section 4610, section (0) states that "no person other than a licensed physician.., may modify, delay or deny request for authorization of medical treatment. Labor Code Section 4610 section (g) states the time frame for UR. (1) Prospective or concurrent decisions shall be made in a timely fashion that is appropriate for the nature of the employee's condition, not to exceed five working days from the receipt of the information reasonably necessary to make the determination, but in no event more than 14 days from the date of the medical treatment recommendation by the physician. In cases where the review is retrospective, the decision shall be communicated to the individual who received services, or to the individual's designee, within 30 days of receipt of information that is reasonably necessary to make this determination. All of the denial or medication procedures contained in Labor Code section 4610 (g) (2) and (3) are mandatory, and if the statutory requirements are not met, the utilization review report is not admissible. The only other procedure for disputing the treatment is a QME, pursuant to Labor Code section 4062.

## Proof of Service State of California, County of Los Angeles

I am a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within entitled action.  My  business address is: 5651 Sepulveda Blvd. Suite 201 Sherman Oaks, CA 91411 or  724 Corporate Center Drive. 2nd Floor, Pomona, CA 91768

On this date  08/13/2019 I served this report to the above Insurance Co. by transmitting via US Postal Services/facsimile this document between the hours of 8:00am and  5:00pm. The fascimile was reported as completed and without error by the transmitting fascimile machine.I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed in Los Angeles, CA

  Executed on 08/13/2019  at Sherman Oaks, California. I declare under penalty of perjury that the above is true and correct.

  Signature: *Paulina Delgado*

          Paulina Delgado

State of California

COLLIER APL 0539

**LIB000085**

Division of Workers' Compensation
**REQUEST FOR AUTHORIZATION**
DWC Form RFA - California Code of Regulations, title 8, section 9785.

| |
|---|
| **This form must accompany the Doctor's First Report of Occupational Injury or Illness, Form DLSR 5021, a Treating Physician's Progress Report, DWC Form PR-2, or narrative report substantiation the requested treatment.** |

[ ] New Request [ ] Resubmission - Change in Material Facts
[ ] Expedite Review: Check box if employee faces an imminent and serious threat this or her health
[ ] Check box if request is a written confirmation of prior oral request.

**Employee Information**

Employee Name (Last, First, Middle): COLLIER,Vicki

| Date of Injury (MM/DD/YYYY): | Date of Birth(MM/DD/YYYY) ███████ |
|---|---|
| Claim Number:  17G44F696159 | Employer: Automobile Club |

**Provider Information**

Provider Name: Jonathan F. Kohan.M.D.

| Practice Name: | Contact Name: |
|---|---|
| Address: 5651 Sepulveda Blvd.# 201 | City: Sherman Oaks | State: CA |
| Zip Code: 91411 | Phone: 818-788-2400 | Fax Number: 818-788-2453 |
| Provider Specialty: Orthopedics | NPI Number: 1518028422 |

**Claims Administrator Information**

| Claims Administrator Name: CCMSI Irvine | Contact Name:Mendoza, Miguel |
|---|---|
| Address: P.O.  Box 53550 | City: Irvine | State: CA |
| Zip Code: 92619 | Phone:949-474-6500 | Fax Number: 949-222-5424 |

E-mail Address:

**Requested Treatment (see instruction for guidance; attached additional pates if necessary**

Either state the requested treatment in the below space or indicate the specific page number(s) of the accompanying medical report on which the request treatment can be found. Up to five (5) procedures may be entered; attached additional request on a separate sheet.

| Diagnosis | M50.00 Cervical Radiculopathy |
|---|---|
| ICD-Code | |
| Procedure Requested | Norco 5/325mg #45 Neurontin 300mg #60 Cymbalta 30mg #30 |
| CPT/HCPCS Code | |
| Other Information: (Frequency, Duration, Quantity, Facility, etc.) | |

| | Date:08/13/2019 |
|---|---|
| Treating Physician Signature: | |

**Claims Administrator Response**

[ ] Approved   [ ] Denied or Modified (see separate decision letter  [ ] Delay (See separate notification of delay)
[ ] Requested treatment has been previously denied  [ ] Liability for treatment is disputed

| Authorization Number (if assigned): | Date: |
|---|---|
| Authorized Agent Name: | Signature: |
| Phone: | Fax Number: | E-mail Address: |

Comments:

DWC Form RFA (Version 7/2013)

COLLIER APL 0540

LIB000086



## California Department of Justice
### Controlled Substance Utilization Review & Evaluation System (CURES)

CONFIDENTIAL DOCUMENT

**CURES 2.0**

### PATIENT/CLIENT ACTIVITY : CONSOLIDATED REPORT

**Prescription Drug Transaction Details:**

| Number of Records: 6 | | | | | Start Date: 01/06/2019 | | | | | End Date: 01/06/2020 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date Filled | Last Name | First Name | DOB | Address | Drug Name | Form | Str | Qty | Days Sup. | PHY Name | PHY# | Presc. DEA# | Prescriber Name | RX# |
| 2019-07-19 | COLLIER | VICKI | | | HYDROCODONE BITARTRATE-ACETAMINOPHE | TAB | 325 MG-5 MG | 50 | 25 | VALENCIA TOWN CENTER PHARMACY | PHY53357 | MN1731656 | NADZHAFOV, MICHAEL | 438 |
| 2019-06-25 | COLLIER | VICKI | | | HYDROCODONE BITARTRATE-ACETAMINOPHE | TAB | 325 MG-5 MG | 50 | 25 | VALENCIA TOWN CENTER PHARMACY | PHY53357 | BK6077502 | KOHAN, JONATHAN FARSHAD | 436 |
| 2019-05-23 | COLLIER | VICKI | | | HYDROCODONE BITARTRATE-ACETAMINOPHE | TAB | 325 MG-5 MG | 30 | 30 | VALENCIA TOWN CENTER PHARMACY | PHY53357 | BK6077502 | KOHAN, JONATHAN FARSHAD | 433 |
| 2019-04-23 | COLLIER | VICKI | | | HYDROCODONE BITARTRATE-ACETAMINOPHE | TAB | 325 MG-5 MG | 30 | 30 | VALENCIA TOWN CENTER PHARMACY | PHY53357 | BK6077502 | KOHAN, JONATHAN FARSHAD | 430 |
| 2019-03-09 | COLLIER | VICKI | | | HYDROCODONE BITARTRATE-ACETAMINOPHE | TAB | 325 MG-5 MG | 30 | 30 | VALENCIA TOWN CENTER PHARMACY | PHY53357 | BK6077502 | KOHAN, JONATHAN FARSHAD | 426 |
| 2019-01-28 | COLLIER | VICKI | | | HYDROCODONE BITARTRATE-ACETAMINOPHE | TAB | 325 MG-5 MG | 30 | 30 | VALENCIA TOWN CENTER PHARMACY | PHY53357 | BK6077502 | KOHAN, JONATHAN FARSHAD | 421 |

*Disclaimer: This report is compiled from information maintained in the California Department of Justice's Controlled Substance Utilization Review & Evaluation System (CURES). The CURES Database contains Schedule II, Schedule III, Schedule IV prescription dispensation information reported by California-licensed pharmacies and direct dispensers, and is therefore only as accurate as the information provided by these entities. The Department of Justice does not independently verify the accuracy of the data reported by pharmacies and direct dispensers.*

Page 1 of 1

JONATHAN KOHAN, JOKOHAN
01/06/2020 01:08 PM

COLLIER APL 0541

LIB000087



Jonathan F. Kohan, M.D.
SPECIALIZING IN PAIN DISORDERS

MULTI-DISCIPLINARY
TREATMENT OF
CRPS (RSD)
CHRONIC PAIN SYNDROMES
CANCER PAIN
FIBROMYALGIA
NEURALGIAS
HEADACHE

SPINAL CORD STIMULATION
INTRATHECAL PUMP
PLACEMENT
DISCOGRAPHY
RADIOFREQUENCY ABLATION
SPINAL INJECTIONS

Edwin Haronian, MD
5651 Sepulveda Blvd., #201
Sherman Oaks, CA 91411

| Patient Name | : | Vicki Collier |
|---|---|---|
| Date of Service | : | January 6, 2020 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ▮▮▮▮▮▮▮ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

**SECONDARY PHYSICIAN PAIN MANAGEMENT FOLLOW-UP REPORT**

*This special narrative report is reimbursable (1994) Official Medical Fee Schedule because one of the following: There was an unexpected or significant change in the patient's condition or the treatment plan; there is a change in patient care or status; submitted records were reviewed or specific questions were answered.*

Ms Collier is a 56-year-old female whose last visit with me was on November 11, 2019. She reports that she missed an appointment and was able to obtain Neurontin and Cymbalta from Dr. Haronian, but not Norco. As a result, she has had significant increase in her pain complaints with diminished sleep especially in her neck. This is associated with stiffness and spasm radiating to back of her head with more severe headaches in addition to her low back and right shoulder pain for which she has not undergone any treatment. With the regimen, there are no side effects as before, and she reports partial improvement of at least 40% and sometimes 30%.

DIPLOMATE, AMERICAN BOARD
OF ANESTHESIOLOGY
FELLOWSHIP TRAINED IN PAIN
MEDICINE

**PHYSICAL EXAMINATION:**
No signs of sedation. She is alert and oriented. Tenderness and moderate spasm over the cervical spine is noted extends to trapezius and deltoid on the left side, but neck and shoulder range of motions are within normal limits on the left side. On the right shoulder, slight

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH. (818) 788-2400

COLLIER APL 0542

**LIB000088**

**Collier, Vicki**
**January 6, 2020**
**Page 2 of 3**

weakness on flexion and extension is noted.

**IMPRESSION:**
Cervical disc protrusions with radicular complaints.
Lumbar disc protrusions with radicular complaints.
History of right shoulder arthroscopic surgery with residual pain.

**RECOMMENDATION:**
Her exacerbation is noted, and I advised the patient not to run out of her medication. CURES report does not show otherwise any aberrant activity since last time seen. She should be doing exercises on her own for the recent exacerbation, but if she does not improve by next time, she may consider trigger point injections in the affected area. For now, I do not recommend any increase in her medication dosage and refill will include Norco 5 mg 45 tablets, Cymbalta 30 mg 30 tablets, and Neurontin 300 mg 60 tablets.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Please be advised that Dr. Kohan has a financial interest in the Pacific Anesthesia Group.*

January 11,
2020
Date

Jonathan F. Kohan, M.D.
Diplomate American Board of
Anesthesiology
Fellowship-Trained in Pain
Medicine

JFK/11099/

*Robert L. Palty Esq.
16921 Parthenia St #202
Ste 211
Northridge, CA  91343

*CCMSI Irvine
P.O. Box 53550

COLLIER APL 0543

LIB000089

**Collier, Vicki**
**January 6, 2020**
**Page 3 of 3**

Irvine, CA  92619
Attn: Miguel Mendoza

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 1/15/2020 served the foregoing document described as:

JONATHAN F. KOHAN, M.D.
EVALUATION REPORT

**Patient Name:** **Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 1/6/2020**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Edwin Haronian, MD                          Robert L. Palty Esq.
5651 Sepulveda Blvd., #201                  16921 Parthenia St #202
Sherman Oaks, CA  91411                     Ste 211
                                            Northridge, CA  91343

Miguel Mendoza
CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 1/15/2020 at

_____
Emily Shemwell

COLLIER APL 0544

**LIB000090**


Jonathan F. Kohan, M.D.
SPECIALIZING IN PAIN DISORDERS

MULTI-DISCIPLINARY
TREATMENT OF
CRPS (RSD)
CHRONIC PAIN SYNDROMES
CANCER PAIN
FIBROMYALGIA
NEURALGIAS
HEADACHE

SPINAL CORD STIMULATION
INTRATHECAL PUMP
PLACEMENT
DISCOGRAPHY
RADIOFREQUENCY ABLATION
SPINAL INJECTIONS

Edwin Haronian, MD
5651 Sepulveda Blvd., #201
Sherman Oaks, CA 91411

| Patient Name | : | Vicki Collier |
|---|---|---|
| Date of Service | : | February 3, 2020 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

**SECONDARY PHYSICIAN PAIN MANAGEMENT FOLLOW-UP REPORT**

*This special narrative report is reimbursable (1994) Official Medical Fee Schedule because one of the following: There was an unexpected or significant change in the patient's condition or the treatment plan; there is a change in patient care or status; submitted records were reviewed or specific questions were answered.*

DIPLOMATE, AMERICAN BOARD
OF ANESTHESIOLOGY
FELLOWSHIP TRAINED IN PAIN
MEDICINE

Ms. Collier is a 56-year-old female whose last visit with me was on January 6, 2020. With respect to her medication, no side effects and she continues to benefit partially from Norco 5 mg, Cymbalta 10 mg, and Neurontin 20 mg. This regimen continues to help her consistently about 40% to 50% and her complaints of neck pain, low back pain, and shoulder pain. Since last time, however, she has had bouts of dizziness which are worse in the morning when she gets up with a feeling of falling, but denies actual falls. It has been going on more frequently over the past week or so.

Aside from the current regimen, she is not taking anything else, and has not been able to go back to work. CURES report reviewed does not show any aberrant activity. The patient has been consistent with all the recommendations and visits, but CURES report does not show any activity in fact from July 2019.

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH. (818) 788-2400

COLLIER APL 0545

**LIB000091**

**Collier, Vicki**
**February 3, 2020**
**Page 2 of 4**

Her regimen will be refilled due to lack of side effects, improved pain and function. The patient has been compliant with all the recommendations and visits with no aberrant behavior. She will need additional treatment, but her case is being disputed still and currently her only way of treatment is current regimen.

With respect to her dizziness, I will not be able to evaluate or treat her further. It appears to me that the patient may be having some type of vertigo like symptoms, and I advised her to see her doctors at Kaiser for further evaluation, since I do not believe what she is experiencing is from her exacerbated neck pain. I will see her back in a month.

DIAGNOSIS:
M50.00 Cervical Radiculopathy,
M54.17 Radiculopathy, lumbosacral region,
M75.40 Impingement syndrome, shoulder,
M70.20 Olecranon bursitis, elbow,
M77.20 Periarthritis, unspecified wrist

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Please be advised that Dr. Kohan has a financial interest in the Pacific Anesthesia Group.*

February 9,
2020
_____
Date

Jonathan F. Kohan, M.D.
Diplomate American Board of
Anesthesiology
Fellowship-Trained in Pain
Medicine

JFK/11099/

*Robert L. Palty Esq.
16921 Parthenia St #202

COLLIER APL 0546

**LIB000092**

**Collier, Vicki**
**February 3, 2020**
**Page 3 of 4**


Northridge, CA  91343

*CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619
Attn: Miguel Mendoza


## PROOF OF SERVICE
## STATE OF CALIFORNIA


I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 2/14/2020 served the foregoing document described as:

JONATHAN F. KOHAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 2/3/2020**


On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Edwin Haronian, MD                         Robert L. Palty Esq.
5651 Sepulveda Blvd., #201                 16921 Parthenia St #202
Sherman Oaks, CA  91411                    Northridge, CA  91343


Miguel Mendoza
CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619


I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 2/14/2020 at

Emily Shemwell
_____
Emily Shemwell


COLLIER APL 0547

LIB000093

**Collier, Vicki**
**February 3, 2020**
**Page 4 of 4**

COLLIER APL 0548

**LIB000094**

State of California, Division of Worker's Compensation

## *Jonathan F. Kohan., M.D.*
## PRIMARY PHYSICIAN PROGRESS REPORT (PR – 2)

**Reason of PR-2:**

**Patient**:

**Name:**  Vicki  COLLIER

**Street:**

**City:**    Valencia, CA 91354

**Phone:**

**DOB:**

**SSN:**

**DOI:**

**Employer:** Automobile Club

**Occupation:**

**Claims Administrator:**

**Name:**    CCMSI Irvine

**Address:** P.O.  Box 53550

**City:**      Irvine, CA 92619

**Phone:**    949-474-6500

**Fax:**      949-222-5424

**Claim # :** 17G44F696159

**Subjective Complaints:**   Neck Pain

**Objective Findings:**   Loss of Range of Motion

**Diagnoses:**  M50.00    Cervical Radiculopathy

**Treatment Plan**:  Norco 5/325mg #45, Neurontin 300mg #60, Cymbalta 30mg #30

**Work Status:** My recommendation is:The patient has reached Maximal Medical Improvement and is Permanent and Stationary.

**Primary Treating Physician**:                      **Date of Exam:** Aug 13, 2019

I declare under penalty of perjury that this report is true and correct to the best of my knowledge and that I have not violated Labor Code 139.3.

**Signature**                                     **Cal. Lic #**    A66353

| | | | |
|---|---|---|---|
| **Name** | Jonathan F.  Kohan  M.D. | **Specialty** | Pain Management |
| **Address** | 5651 Sepulveda Blvd.# 201  Sherman Oaks, CA 91411 | **Phone** | 818-788-2400 |

**DWC Form PR-2**
**(Rev. 06-05)**

COLLIER APL 0549

**LIB000095**



Jonathan F. Kohan, M.D.
SPECIALIZING IN PAIN DISORDERS

MULTI-DISCIPLINARY
TREATMENT OF
CRPS (RSD)
CHRONIC PAIN SYNDROMES
CANCER PAIN
FIBROMYALGIA
NEURALGIAS
HEADACHE

SPINAL CORD STIMULATION
INTRATHECAL PUMP
PLACEMENT
DISCOGRAPHY
RADIOFREQUENCY ABLATION
SPINAL INJECTIONS

Edwin Haronian, M.D.
5651 Sepulveda Bvld #201
Sherman Oaks, CA 91411

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | August 13, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ██████████ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

### SECONDARY PHYSICIAN PAIN MANAGEMENT FOLLOW-UP REPORT

*This special narrative report is reimbursable (1994) Official Medical Fee Schedule because one of the following: There was an unexpected or significant change in the patient's condition or the treatment plan; there is a change in patient care or status; submitted records were reviewed or specific questions were answered.*

Ms. Collier is a 56-year-old female whose last visit with me was on July 9, 2019. Since then she has had a reevaluation with Dr. Haronian, but reports that she still has not been able to go back to work and significant pain remains in her multiple body parts. She has had difficulty with any lifting, pushing, pulling, bending, twisting, or over-the-shoulder activity, and a pain level without her medication will be unbearable. She is taking Norco 5 mg half a tablet about three times a day, and reports that Cymbalta has been beneficial for her depression and anxiety and she continues to benefit from gabapentin. These are the only three medications she is taking, and since last time does not report any changes in her health.

### PHYSICAL EXAMINATION:

No sign of sedation. She is alert and oriented. Tenderness over the cervical spine is noted which extends to both shoulders with weakness in flexion and extension. With respect to the lumbar spine area,

DIPLOMATE, AMERICAN BOARD
OF ANESTHESIOLOGY
FELLOWSHIP TRAINED IN PAIN
MEDICINE

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH. (818) 788-2400

COLLIER APL 0550

**LIB000096**

**Collier, Vicki**
**August 13, 2019**
**Page 2 of 3**

straight leg raise is negative but tenderness over the lumbar paravertebral area is noted that extends to sciatic notch mainly on the left side.

## IMPRESSION:

Exacerbated lumbar pain with no radicular complaints.
Bilateral shoulder tendinosis with history of surgery on the right.
Cervical disc protrusion with radicular complaints.
Depression and anxiety.

## RECOMMENDATION:

She has failed several rounds of treatment and physical therapy, but the issue is that none of these have been provided to the patient now for a while. As I stated, the patient may consider local injection, but I do not believe she will benefit from a spinal injection. On today's visit, her medical regimen were discussed in great length, and she would like to continue on Cymbalta which has been beneficial, and, therefore, I will increase her dosage to 30 mg one per day. Norco 5 mg will be reduced five tablets of 45 tablets. She should be considering reducing this medication gradually over the next several visits. Neurontin 300 mg twice a day has been beneficial, however, with her complaints of numbness, tingling, pins and needles sensation, which usually occurs on the left lower extremity compared to the right and also in her upper extremities. CURES report does not show any aberrant activity. The patient will be seen again next month.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Please be advised that Dr. Kohan has a financial interest in the Pacific Anesthesia Group.*

September 4, 2019
_____
Date

Jonathan F. Kohan, M.D.
Diplomate American Board of
Anesthesiology
Fellowship-Trained in Pain
Medicine

JFK

*Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211

COLLIER APL 0551

**LIB000097**

**Collier, Vicki**
**August 13, 2019**
**Page 3 of 3**

Encino, CA  91316

*CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619
Attn: Miguel Mendoza

## PROOF OF SERVICE
## STATE OF CALIFORNIA

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 9/5/2019 served the foregoing document described as:

JONATHAN F. KOHAN, M.D.
EVALUATION REPORT

**Patient Name:** **Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 8/13/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Edwin Haronian, M.D.                          Robert L. Palty Esq.
5651 Sepulveda Bvld #201                     6345 Balboa Blvd, Ste 211
Sherman Oaks, CA  91411                      Ste 211
                                             Encino, CA  91316

Miguel Mendoza
CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 9/5/2019 at

_Emily Shemwell_
_____
Emily Shemwell

COLLIER APL 0552

**LIB000098**



# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

  - Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery

- Fellow, American Academy of Orthopedic Surgeons



- Member, North American Spine Society



- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

•

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | September 5, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | █████████ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

### FOLLOW-UP REPORT OF A PRIMARY TREATING PHYSICIAN

Ms. Vicki is a very pleasant female who presents with complaint of a chronic pain in the low back with radiation to left lower extremity and postoperative pain in the right shoulder.  Pain is of such severity that it dominates virtually every conscious moment producing physical and psychological debilitations.  Treatment course was marked by delays and denials.  At this point, we are seeing her based on her future medical care.  We do not have any plans for aggressive treatment.  Ms. Vicki is under care of pain management physician who prescribes her medications for the neuropathic and nociceptive pain, and depression. She is tolerating medications well.  CURES is unremarkable.

On physical examination, she is alert and oriented x3, there are no signs of sedation.  Ms. Vicki is interacting with alacrity.  Discomfort is noted on abduction of right shoulder against the gravity.

At this point, we do not have any plans for aggressive treatment. Without a doubt, options of physical and acupuncture therapies and TENS unit should be open for the patient to supplement nonaggressive course of treatment.

Having said that, we will see her in 12 weeks and after that will be seen on p.r.n. basis.  At the same time, she needs to keep all the

COLLIER APL 0553

LIB000099

**Collier, Vicki**
**September 5, 2019**
**Page 2 of 3**

appointments with pain management physician.  Work status remains to be unchanged.

## DIAGNOSIS:

M50.00 Cervical Radiculopathy,

M54.17 Radiculopathy, lumbosacral region,

M75.40 Impingement syndrome, shoulder,

M70.20 Olecranon bursitis, elbow,

M77.20 Periarthritis, unspecified wrist

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles.*

*To complete this examination I have been assisted, as needed, for taking histories, taking x-rays, assisting with the patient, transcription of reports by some or all of the following personnel Alma Azucar, Natasha Yokum, Carmen Garcia and Emily Shemwell. Sherry Leoni, DC, or Randy Cockrell, DC, may also have assisted in compiling and editing of this report. If required an interpreter was provided. All of the above individuals are qualified to perform the described activities by reason of individual training or under my direct supervision.*

*Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

September 12, 2019

Date

Michael Nadzhafov, P.A.C, M.P.H.

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385
MN

*Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211
Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

COLLIER APL 0554

**LIB000100**

**Collier, Vicki**
**September 5, 2019**
**Page 3 of 3**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 9/19/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 9/5/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

| | |
|---|---|
| Miguel Mendoza | Robert L. Palty Esq. |
| CCMSI Irvine | 6345 Balboa Blvd, Ste 211 |
| P.O. Box 53550 | Ste 211 |
| Irvine, CA  92619 | Encino, CA  91316 |

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 9/19/2019 at

_Emily Shemwell_ (signature)
_____
Emily Shemwell

COLLIER APL 0555

LIB000101



Jonathan F. Kohan, M.D.
SPECIALIZING IN PAIN DISORDERS

MULTI-DISCIPLINARY
TREATMENT OF
CRPS (RSD)
CHRONIC PAIN SYNDROMES
CANCER PAIN
FIBROMYALGIA
NEURALGIAS
HEADACHE

SPINAL CORD STIMULATION
INTRATHECAL PUMP
PLACEMENT
DISCOGRAPHY
RADIOFREQUENCY ABLATION
SPINAL INJECTIONS

Edwin Haronian, MD
5651 Sepulveda Blvd., #201
Sherman Oaks, CA 91411

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | September 17, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ███████████ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

### SECONDARY PHYSICIAN PAIN MANAGEMENT FOLLOWUP REPORT

*This special narrative report is reimbursable (1994) Official Medical Fee Schedule because one of the following: There was an unexpected or significant change in the patient's condition or the treatment plan; there is a change in patient care or status; submitted records were reviewed or specific questions were answered.*

DIPLOMATE, AMERICAN BOARD
OF ANESTHESIOLOGY
FELLOWSHIP TRAINED IN PAIN
MEDICINE

Ms. Collier is a 56-year-old female who returns for evaluation stating no changes in her health or condition since last time. Her pain regimen has been helpful and this include Norco 5 mg, Neurontin 300 mg, and Cymbalta 30 mg with no nausea, vomiting, constipation, oversedation, or epigastric pain. It has been helping her for the complaints of back pain, neck pain, shoulder pain; she otherwise has difficulty doing her daily chores. She reports no interference with the current medication with her activities of daily living. She reports that Cymbalta has been helping her not only for her pain but also for her depression.

CURES report does not show any aberrant activity and refill of the regimen will be provided with no significant change. CURES report reviewed does not show any aberrant activity, and the patient has been compliant with all the recommendations and visits. Possible side effects of the current medication have been discussed with the

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH. (818) 788-2400

COLLIER APL 0556

**LIB000102**

**Collier, Vicki**
**September 17, 2019**
**Page 2 of 3**

patient, but she has denied any.

DIAGNOSIS:
M50.00 Cervical Radiculopathy,
M54.17 Radiculopathy, lumbosacral region,
M75.40 Impingement syndrome, shoulder,
M70.20 Olecranon bursitis, elbow,
M77.20 Periarthritis, unspecified wrist

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Please be advised that Dr. Kohan has a financial interest in the Pacific Anesthesia Group.*

September 26, 2019
_____
Date

Jonathan F. Kohan, M.D.
Diplomate American Board of
Anesthesiology
Fellowship-Trained in Pain
Medicine

JFK/8872/

  *CCMSI Irvine
  P.O. Box 53550
  Irvine, CA  92619
  Attn: Miguel Mendoza

  *Robert L. Palty Esq.
  6345 Balboa Blvd, Ste 211
  Ste 211
  Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

COLLIER APL 0557

**LIB000103**

**Collier, Vicki**
**September 17, 2019**
**Page 3 of 3**

On 10/2/2019 served the foregoing document described as:

JONATHAN F. KOHAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 9/17/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Edwin Haronian, MD
5651 Sepulveda Blvd., #201
Sherman Oaks, CA  91411

Miguel Mendoza
CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619

Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211
Encino, CA  91316

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 10/2/2019 at

_____
Emily Shemwell

COLLIER APL 0558

**LIB000104**

# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

- Comprehensive Spine Care



- Certified, American Board of
  Orthopedic Surgery



- Fellow, American Academy of
  Orthopedic Surgeons



- Member, North American
  Spine Society

- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic
  Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

•

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

**WWW • ESPINEDOCTOR • COM**

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | September 25, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ████████████ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

### SUPPLEMENTAL MEDICAL-LEGAL REPORT AND REVIEW OF MEDICAL RECORDS OF A PRIMARY TREATING PHYSICIAN ML-106

**Six hours were spent to review the medical records along with editing and preparation of this report.**

As you recall, the patient was seen in my office previously.  The patient has noted to have sustained a continuous trauma injury while working for the Automobile Club.  The patient has been employed as an insurance agent and she was performing repetitive motion activities which resulted in continued pain.  She was seen at Kaiser and she was provided with some conservative treatment.

The patient worked for the Automobile Club since June 2013.  Medical records have been received and reviewed and they are as follows.

### MEDICAL RECORD REVIEW:
06-14-12, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient is here for a routine checkup.  Periods

COLLIER APL 0559

**LIB000105**

**Collier, Vicki**
**September 25, 2019**
**Page 2 of 27**

are becoming irregular. Right bunion. Had an abdominal ultrasound 5-7 yrs ago and was told she had some kind of liver cyst or benign tumor; patient would like follow-up abdomen ultrasound. ASSESSMENT/PLAN: 1. Health check up, adult. Advised regular exercise and healthy eating. Regular self breast exams advised. 2. Negative mammography done outside Kaiser Permanente in 2011. 3. Negative pap smear done outside Kaiser Permanente in 2011. 4. Prophylactic vaccine for tetanus, diphtheria, acellular pertussis. 5. Bunion. Referral to podiatry done. 6. Screening. Orders Placed This Encounter: Ordered laboratory studies.

06-21-12, Kaiser Permanente
Laboratory Report
TESTS: CBC no differential: WBC's auto – Low; TSH; ALT, serum; Creatinine, serum; Electrolyte panel; Glucose, fasting; Lipid panel: Cholesterol – Abnormal; LDL calculated – Abnormal.

07-05-12, Kaiser Permanente
Laboratory Report
TEST: CBC with differential, auto test was performed.

07-17-12, Kaiser Permanente, Alan J. Karpman, M.D.
US of Abdomen, Complete
IMPRESSION: Single hepatic mass.

07-19-12, Kaiser Permanente, Kurtis H. Chin, DPM
Progress Notes
PRESENTING COMPLAINTS: Patient complains of bunion right foot. Bunion is not painful, but she does not like the looks. States she has seen Facey podiatrist in the past and was told it was a cyst. He had aspirated it 2x. ALLERGIES: NKA. ASSESSMENT: Hallux valgus with asymp bunion right foot. PLAN: No surgery to be had, as she is asymptomatic. Surgery discussed if symptoms increase.

07-27-12, Kaiser Permanente
Laboratory Report
TESTS: Albumin, serum: Albumin – High; Alkaline phosphatase; Alpha-1-fetoprotein, serum; ALT, serum; Amylase, serum; ANA; AST, serum; Bilirubin, total, serum.

08-10-12, Kaiser Permanente, Gina Lin, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presents for evaluation of liver mass found on ultrasound showed hypoechoic mass in right lobe of liver. Patient reports she was told she had a liver mass 1 cm found on ultrasound 5 years ago at Facey. Patient asymptomatic. ASSESSMENT: Liver mass. PLAN: Will check CT abdomen triple phase liver to further characterize liver lesion.

09-15-12, Kaiser Permanente
Laboratory Report

COLLIER APL 0560

LIB000106

**Collier, Vicki**
**September 25, 2019**
**Page 3 of 27**

TESTS: BUN, serum; Creatinine, serum tests were performed.

09-29-12, Kaiser Permanente, Christopher Patton, M.D.
US of Pelvis, Transabdominal and Transvaginal, Complete
IMPRESSION: Pelvic ultrasound within normal limits.

10-14-12, Kaiser Permanente, Julie L. Alexander, M.D.
Bilateral Screening Mammogram Report
IMPRESSION: Negative. There is no mammographic evidence of malignancy. A 1 year screening mammogram is recommended.

10-25-12, Kaiser Permanente, Sandra J. Wilkinson, CNM
Abnormal Bleeding Note
PRESENTING COMPLAINTS: Patient is here for pap and gyn exam. ASSESSMENT: Menorrhagia/MMR/hypermenorrhea. PLAN: Advised of need for endometrial; biopsy. Patient at first agreed, but is unable to do today for personal reasons. Patient states she understands reasons to eliminate hyperplasia and will schedule for endometrial biopsy next week.

10-25-12, Kaiser Permanente
Laboratory Report
TEST: CBC no differential test was performed.

10-25-12, Kaiser Permanente
Laboratory Report
TESTS: Cervical or vaginal Bethesda screen. COMMENT: Atypical squamous cells of undetermined significance.

10-25-12, Kaiser Permanente
Laboratory Report
TEST/RESULT: HPV cotest. COMMENT: Positive for human papilloma virus high/intermediate risk group.

11-08-12, Kaiser Permanente, Odin H. Chan, M.D.
Colposcopy Visit Note
PRESENTING COMPLAINTS: Patient is presented here for Colposcopy visit. IMPRESSION: HPV. PROCEDURE: Colposcopy performed with 4% acetic acid and Schiller's solution. Patient tolerated the procedure well without complications. PLAN: Follow-up pending pathology report.

11-08-12, Kaiser Permanente, Gerald R. Higgins, M.D.
Surgical Pathology Report
FINAL PATHOLOGIC DIAGNOSIS: Endocervical Curettings: Hemorrhagic mucoid material with only very scanty superficial minute endocervical glandular fragments with focal inflammatory reactive change plus squamous epithelial debris of probable ectocervical and/or vaginal origin (no dysplastic squamous epithelium identified).

COLLIER APL 0561

LIB000107

**Collier, Vicki**
**September 25, 2019**
**Page 4 of 27**

<u>11-08-12, Kaiser Permanente</u>
<u>Laboratory Report</u>
TEST/RESULT: Pregnancy test, urine, POCT – negative.

<u>01-09-14, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.</u>
<u>Progress Notes</u>
PRESENTING COMPLAINTS: Patient is here for a routine checkup. Periods every 6 months x2 years. ASSESSMENT/PLAN: 1. Routine adult health check up exam. Advised regular exercise and healthy eating. Regular self breast exams advised. 2. Screening for colon cancer. Colonoscopy ordered. 3. Screening. Orders Placed This Encounter: Ordered laboratory studies. Referral GI.

<u>01-13-14, Kaiser Permanente, David L. Robinson, M.D.</u>
<u>X-ray of Bilateral Screening Mammogram Report</u>
IMPRESSION: Negative. There is no mammographic evidence of malignancy. A routine screening mammogram is recommended within 2 years.

<u>02-06-14, Kaiser Permanente, Vijayanti K. Reddy, M.D.</u>
<u>Progress Notes</u>
PRESENTING COMPLAINTS: Patient is here for urgent care visit/same day visit with above complaint of 2 weeks of palpitations lasting few seconds, works out with weights daily no association physical exertion, runs 3-4 days a week. ASSESSMENT/PLAN: 1. Palpitations. New job since 7 months denies unusual stress. Advised to watch for triggering factors. 2. Screening for colon cancer. 3. Screening for breast cancer. Orders Placed This Encounter: X-ray mammogram screening bilateral, sequential. Ordered laboratory studies. Prescribed cholecalciferol, vitamin D3, 2000 unit and magnesium oxide 400 mg. Return if not better or condition persists.

<u>02-06-14, Kaiser Permanente</u>
<u>Laboratory Report</u>
TESTS: Glucose, fasting; Lipid panel: Cholesterol – High; LDL calculated – High; CBC no differential; TSH; ALT, serum; Creatinine, serum; Electrolyte panel.

<u>02-11-14, Kaiser Permanente</u>
<u>Laboratory Report</u>
TESTS: Globin, fecal test was performed.

<u>03-24-14, Kaiser Permanente, Vijayanti K. Reddy, M.D.</u>
<u>Progress Notes</u>
PRESENTING COMPLAINTS: Patient presents with vaginal problem-bumps with liquid. Patient is here for urgent care visit/same day visit with above complaint, itchy clear blisters in vulva after intercourse x months minimal, resolve after bursting, no pain. ASSESSMENT/PLAN: Dyshidrotic eczema. Usually is seen in palms and soles, this is unusual. Orders Placed This Encounter: Herpes simplex virus culture, rapid shell vial. Return if not better or condition persists.

COLLIER APL 0562

**LIB000108**

**Collier, Vicki**
**September 25, 2019**
**Page 5 of 27**

03-24-14, Kaiser Permanente
Laboratory Report
TESTS/RESULT: Herpes simplex virus culture, rapid shell vial. RESULT: Herpes simplex virus isolated in cell culture. Confirmed by fluorescent antigen test.

03-24-14, Kaiser Permanente
ECG Report
IMPRESSION: Sinus bradycardia with 1st degree A-V block otherwise normal ECG. No previous ECGs available.

08-29-14, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient is here today because she has had 5-6 months of anxiety. Gets palpitations, having difficult time concentrating at work. Works for AAA and has a stressful job. Also feels like she might have ADHD. Also having neck and low back pain for several months. Patient thinks it's due to the way she sits all day at her job. Also would like to see derm for a spot on her nose that never heals. ASSESSMENT/PLAN: 1. Neck pain. Heat/massage/stretch. 2. Anxiety. Rx for Celexa given. Risks, side effects, alternatives and benefits of the medication reviewed with the patient. Patient told that the beneficial effects of Celexa may take 4-6 wks to take effect. Patient told to not abruptly stop the medication. Patient told that Celexa may at first cause the depression/anxiety to worsen. Patient understands that she has to follow-up with me or with mental health regularly while on this medication. 3. Back pain. 4. Melanocytic nevus. Orders Placed This Encounter: Referral dermatology. Referral physical therapy/occupational therapy. Prescribed citalopram 10 mg.

07-15-15, Kaiser Permanente, Magued Beshay, M.D.
Colonoscopy w/Biopsy Report
INDICATION: The patient here for colorectal cancer screening. IMPRESSION: Colonic polyps. Diverticulosis coli. Hemorrhoids. Screening for colon cancer. RECOMMENDATIONS: Diet modification and avoid offending agents. Follow-up on biopsy report. Repeat exam in 5 years or p.r.n. Post-procedure findings and plain were discussed with the patient. The patient is also to continue regular follow-up and monitoring with primary physician.

01-22-16, Kaiser Permanente, David L. Robinson, M.D.
X-ray of Bilateral Screening Mammogram Report
IMPRESSION: Negative. There is no mammographic evidence of malignancy. A routine screening mammogram is recommended within 2 years.

01-26-16, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient is here for a routine checkup. Right shoulder pain x2 yrs; taking T#3 p.r.n. at night but would like Vicodin instead. Can cortisone shot at Facey 6-8 months with some relief. Right nipple itching x2 yrs. Toenail fungus. Anxiety at work.

COLLIER APL 0563

LIB000109

**Collier, Vicki**
**September 25, 2019**
**Page 6 of 27**

Wants to see derm.  ASSESSMENT/PLAN: 1. Routine adult health check up exam.  Advised regular exercise and healthy eating.  2. Screening.  Abdomen ultrasound to follow-up on liver lesion.  3. Vaccination for influenza.  Colonoscopy done outside Kaiser Permanente in 2015.  4. Right shoulder joint pain.  Norco p.r.n.  Risks, side effects, alternatives and benefits of the medication reviewed with the patient.  5. Onychomycosis.  6. Anxiety.  7. Melanocytic nevus.  Pap smear done outside Kaiser Permanente in 2015.  Orders Placed This Encounter: X-ray of the right shoulder, 2 or more views.  Ultrasound of the abdomen complete. Vaccine influenza, trivalent, split virus, 3 yr to adult, 0.5 ml IM.  Ordered laboratory studies. Referral orthopedic and dermatology.  Prescribed Ciclopirox 8% top soln, citalopram 10 mg and hydrocodone-acetaminophen 5-325 mg.

02-08-16, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient with a chief complaint of right shoulder pain x2 years. Pain location: Anterolateral.  There is moderate pain.  Positive night pain.  Pain is not improving.  Pain worse with reaching and lifting.  Relieved with rest.  DIAGNOSIS: Right shoulder rotator cuff syndrome.  TREATMENT PLAN: Activity modification.  Ice.  Discussed right shoulder arthroscopy.  Right shoulder cortisone injection.  Patient gave verbal informed consent after risks and benefits discussed.  Area prepped and draped in the usual sterile fashion.  Subacromial space located and marked.  5 ml of 1% lidocaine and 1 ml of Kenalog 40 mg/ml injected.  Patient tolerated procedure well without complications.  RTC p.r.n.

02-08-16, Kaiser Permanente, Jennifer Kim, M.D.
X-ray of Right Shoulder 2 or more views
IMPRESSION: No significant abnormality.

02-20-16, Kaiser Permanente, David L. Robinson, M.D.
US of Abdomen Complete
IMPRESSION: Normal abdominal ultrasound.

04-02-16, Kaiser Permanente, Lamar A. Nelson, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient presents for skin screening exam.  She has pimples on face and itchy rash on back.  ASSESSMENT: 1. History of basal cell skin cancer. 2. Screening for skin cancer.  3. Acne.  4. Poikiloderma of civatte.  5. Sun damaged skin.  6. Dermatitis.  PLAN: Orders Placed This Encounter: Adapalene 0.1% topical cream #45 and triamcinolone acetonide 0.1% topical cream #60.

04-17-16, Kaiser Permanente, Alan D. Jacknow, M.D.
DEXA Bone Density Hip and Spine Report
DEXA DIAGNOSIS: Normal.  LOWEST T SCORE: -0.5; REGION: AP Spine L1-L4 and femur neck right.  LOWEST Z SCORE: 0; REGION: AP Spine L1-L4.

04-23-16, Kaiser Permanente, Alexander Y. Park, O.D.
Progress Notes

COLLIER APL 0564

LIB000110

**Collier, Vicki**
**September 25, 2019**
**Page 7 of 27**

PRESENTING COMPLAINTS: Patient is here for an eye examination. Patient presents with blurred vision. ASSESSMENT: 1. Bilateral dry eye syndrome. 2. Disorder of refraction. PLAN: 1. Recommended artificial tears b.i.d. to t.i.d. OU. 2. Spectacle Rx dispensed. Polycarbonate lenses recommended. Dispensed AVS. RTC in 12-24 months for general eye exam or sooner p.r.n.

06-15-16, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient was taken to Henry Mayo last week b/c she fainted at a restaurant. Was at the dentist for 4 hours that day and given lidocaine. No further episodes of fainting. Occasionally patient will feel like her heart flutters. Lasts for a few seconds. Drinks 1.5 cups of coffee every day. Also will feel like she is wearing a hat on her head even though she isn't. Is in front of a computer for 12 hours day. Positive neck pain. ASSESSMENT/PLAN: 1. Neck pain. Heat/massage/stretch. Patient referral sent. Could be why patient feels abnormal of her head. 2. History of syncope. Likely b/c of lidocaine and being at dentist's office for so long. Labs and EKG at Henry Mayo were neg per patient. 3. Palpitations. Patient declines Holter for now. Decrease caffeine intake. Orders Placed This Encounter: Referral physical therapy/occupational therapy.

08-18-16, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: Patient has noted some pinkish d/c on the underwear, 3 times in the past 1.5 weeks. Some urinary frequency. No period x3 years. Also having right nipple itching x1 year. Not better with steroid creams. ASSESSMENT/PLAN: 1. Postmenopausal bleeding. Referral to gyn done. 2. Dermatitis. Derm referral done. Advised patient not to scratch nipple. Order Placed This Encounter: Ordered laboratory studies. Referral OB-GYN. Referral dermatology.

08-18-16, Kaiser Permanente
Laboratory Report
TEST: Urinalysis, automated without micro: Leukocyte esterase, UA – Abnormal; Urinalysis, microscopic only: WBC's, UA/HPF – Abnormal; Bacterial, urine HPF – Abnormal; Squamous epithelial cells, urine sed, automated count, qual – Abnormal.

08-18-16, Kaiser Permanente
Laboratory Report
TEST: Culture, urine. RESULT: Multiple organisms present, probable contamination. Please repeat the culture if clinically indicated.

08-29-16, Kaiser Permanente, Kosha B. Soneji, M.D.
Outpatient Progress Note
PRESENTING COMPLAINTS: The patient presented with vaginal bleeding. HPI: The patient reported last menstrual period was 12-31-13, who presents with PMP spotting a couple times. Typically occurs after intercourse. Denies cramping, dyspareunia. She has no other gynecologic complaints. ASSESSMENT/PLAN: 1. Postmenopausal bleeding. Note: Will follow-up results of EMB. If EMB WNL, PMB likely secondary to atrophy. Would return if

COLLIER APL 0565

**Collier, Vicki**
**September 25, 2019**
**Page 8 of 27**

she continues to have spotting over the course of another year for further evaluation. Recommended endometrial biopsy and surgical pathology. 2. Cervical high risk HPV test positive. Note: History of HPV positive. Per patient, had a negative pap/HPV test done last year at Fahey. If this pap/HPV is WNL, would recommend contesting in 5 years. Recommended gyn cytology and HPV cotest screening, age 30-65, high risk types, amplified probe.

08-29-16, Kaiser Permanente, Andrea D. Chang, M.D.
Surgical Pathology Report
FINAL PATHOLOGIC DIAGNOSIS: Endometrium, Biopsy: Scanty superficial strips of benign endometrial glands and stroma. Fragments of benign exo an endocervix.

08-29-16, Kaiser Permanente, Harout Yaghsezian, M.D.
Gyn Cytology Report
FINAL CYTOLOGIC INTERPRETATION: Cervix, Liquid Based Pap Test: Negative for intraepithelial lesion or malignancy.

08-29-16, Kaiser Permanente
Laboratory Report
TEST: HPV cotest screening age 30-65, high risk types, amplified probe test was performed.

09-27-16, Kaiser Permanente, Kari K. Scott, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: Patient presents with back pain neck pain x1 week. Acute upon chronic (2-3 years) back pain x1 week. Started when turned neck to the right while in Mexico, left side of neck pulled and started to hurt. Tried chiropractic, ice and Advil (200 mg) – no lasting help. Has phone appointment with Dr. Wang in 2 days. Wants Vicodin and MRI. Has right arm symptoms, but also has had right shoulder pain in the past. No prior history of MVA/back injury. No history of MRI or CT, but recalls an x-ray looking for a leg length issue. No missed work. Pain level of 8-10. Has had steroids as well – for hearing loss and for shoulder pain/arm pain in past – no side effects. Can't take muscle relaxants due to excess prolonged sedation. PAST MEDICAL HISTORY: Menorrhagia, low back pain and shoulder pain. ASSESSMENT/PLAN: Right neck pain with possible cervical radiculopathy – apparently recurrent per patient. Discussed with patient. Will give pred pack and tramadol. To follow-up with primary care provider call this week. Consider physical med referral if not improving or if patient desires MRI. RTC p.r.n. Declines work note.

09-29-16, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS: The patient presented here for TAV of neck pain. Patient was seen in UCC 2 days ago for cervical radiculopathy x1.5 wks. Given prednisone and tramadol with some relief. Would like MRI of her neck. ASSESSMENT: Cervical radiculopathy. PLAN: Continue with current meds. Physical medicine referral done.

LIB000112

**Collier, Vicki**
**September 25, 2019**
**Page 9 of 27**

10-05-16, Kaiser Permanente, Dilipkumar H. Shah, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: Patient complaining of neck pain and pain in right upper back area. ASSESSMENT: Cervical radiculopathy. PLAN: Condition was explained to patient. MRI of c-spine ordered. Discussed neck care program and advised to avoid/limit any aggravating activities. Discussed posture awareness and use of contour pillow etc. Discussed use of local heat and also stretching exercises. Prescription given for Meloxicam and Flexeril. Referral sent to physical therapy. Advised to avoid any aggravating activities. Follow-up after MRI.

10-10-16, Saeed Yadegar, M.D.
MRI of the Cervical Spine, no contrast
CONCLUSION: 1. There is straightening of normal lordotic curvature, usually secondary to muscular spasm. 2. There is a 1 mm broad-based posterior disk bulge at C3-C4 level indenting the anterior aspect of the thecal sac. 3. There is a 2 mm central posterior disk protrusion at C4-C5 level causing pressure over the anterior aspect of the thecal sac. 4. There is a 2 mm broad-based posterior disk/endplate osteophyte complex at C5-C6 level causing pressure over the anterior aspect of the thecal sac. 5. There is a 2 mm broad-based posterior disk protrusion at C6-C7 level causing pressure over the anterior aspect of the thecal sac. There is mild narrowing of the left neural foramen and moderately significant narrowing of the right neural foramen.

10-11-16, Kaiser Permanente, Colleen D. Bogdanich, N.P.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: Patient presents with eye problem. Excessive tearing. History of wearing contacts. Was recently in Mexico was in water. Fell asleep with the contacts in a few times. Blurred or double vision. Has not been wearing them for a few days. ASSESSMENT/PLAN: 1. Bilateral dry eye syndrome. 2. Bilateral epiphora. Plan: Case discussed with Dr. Rosen. Get rid of contacts. Drops for one week. If the patient is worse or not improving RTC. She can contact me and I will place referral. Patient agrees with plan of care and verbalizes understanding. Orders Placed This Encounter: Carboxymethyl-gyl-poly 80-PF 0.5-1-0.2% opht dropperette and gatifloxacin 0.5% opht drop.

10-14-16, Kaiser Permanente, Irina Chernishof, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: Patient presents to clinic for possible left lower extremity infection. Patient states having had acupuncture for her back and also having a needle on her thigh next to a heat lamp. She noticed the area becoming inflamed and raised with a blister forming. In the next several days she noticed that there was purulent discharge and increase redness of the area. ASSESSMENT/PLAN: 1. Skin infection. 2. Left lower leg blister. 3. Back pain. Skin infection post blister from acupuncture. No systemic signs and symptoms of infection. Current infection of lower left extremity; trial course of antibiotics. ER precautions provided. Patient further advised to mark borders of redness to ensure healing and be able to noticed change. Patient was educated on the nature of diagnosis and symptoms. Relevant educational materials were provided during the clinic visit. Patient was also informed regarding possible future symptoms which may be

COLLIER APL 0567

LIB000113

**Collier, Vicki**
**September 25, 2019**
**Page 10 of 27**

considered alarming and in need of medical attention. Orders Placed This Encounter: Prescribed cephalexin 500 mg.

10-19-16, Kaiser Permanente, Kristen M. Yanez, PT
Physical Therapy Evaluation Report
PRESENTING COMPLAINTS: The patient complained of sharp pain to cervical spine rated at 8/10 with numbness and intermittently down to right arm into hand. Patient reported pain began more than one month ago insidious in onset. Patient denies any injury or trauma. Since of symptoms pain is unresolved. Scheduled for epidural November 1st. REFERRAL DIAGNOSIS: Cervical radiculopathy. PLAN: Recommended physical therapy treatment 1x/wk for 3 wks including manual therapy, therex, neuromuscular re-ed, functional training, gait training patient education and instruction in HEP, as well as modalities p.r.n.

10-25-16, Kaiser Permanente, Eric L. Mendoza, PT
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported feeling much better in cervical spine region since last CTX treatment and yoga classes she's been doing. REFERRAL DIAGNOSIS: Cervical radiculopathy. PLAN: Continue therapy treatment per plan of care.

10-26-16, Kaiser Permanente, Ronald M. Rosen, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient presents with follow-up exam dry eyes. Patient is complaining of watering, blister inner corner OD, for duration of 6 weeks which occurs always. Patient here for conjunctional cyst nasally OD. I have reviewed the information contained in the nursing notes as well as in health connect. IMPRESSION: Right sub-conjunctival cyst. PLAN: Artificial tears and trial of FML.

10-28-16, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported no change, going for epidural next week. Still with right hand numbness and pain triceps and scapular area, sharp. REFERRAL DIAGNOSIS: Cervical radiculopathy. PLAN: Continue with CTX trial.

11-04-16, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported doing better, did well with last visit, has postponed epidural. Occasionally with shoulder blade pain now, hand goes numb but not as often. REFERRAL DIAGNOSIS: Cervical radiculopathy. PLAN: Continue with CTX trial.

12-12-16, Kaiser Permanente, Kristen M. Yanez, PT
Physical Therapy Discharge Summary Notes
PRESENTING COMPLAINTS: Status at time of discharge is unknown as patient failed to follow-up with therapy treatment. PLAN: Patient discharged from therapy treatment.

12-15-16, Kaiser Permanente, Catherine C. Close, M.D.

COLLIER APL 0568

LIB000114

Collier, Vicki
September 25, 2019
Page 11 of 27

Progress Notes
PRESENTING COMPLAINTS/HPI: Patient presents with two pinpoint pearly papules on nose – present for a month or so. No prior treatment. One on right side has bleed in the past. Also with itchy skin on right nipple – present for years. On and off. Used a prescription cream (cannot remember name) for a few months with no relief. Mammograms are normal and up to date. Yes past history of skin cancer basal cell carcinoma on chest. ASSESSMENT/PLAN: 1. Eczema. Note: Pink eczematous plaque on right nipple. Dx: Nipple eczema. Use hypoallergenic detergent to wash bras. Use only all cotton bras or cotton linear. Plan: Betamethasone, augmented 0.05% top cream b.i.d. x2-3 weeks, then stop d/c all scratching or rubbing. Use ice to relieve itch. 2. Basal cell carcinoma, face. Note: Two pin point pearly papules on nose, right and left side and on mid chest. Dx: Lesion consistent with early BCCs. Discussed treatment options. Patient opted for Aldara. Plan: Imiquimod 5% top CRPK M-F x2-8 weeks. Discussed expected reaction. RTC in 2-3 weeks for skin check or sooner.

01-17-17, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient presents with bilateral shoulder pain x3-4 weeks. Saw ortho last year for it and cortisone shot helped for almost a year. Wants some Norco. Says Motrin not helping enough. Also having a headache x2 years. Feels like there is a helmet on her head. No visual changes, nausea or balance problems. Worried about a tumor. Gets palpitations very occasionally. Drinks 1.5 cups of caffeine daily. No chest pain or shortness of breath with exertion. No palpitations with exertion. Yoga currently helping with neck pain. Hasn't needed epidural. ASSESSMENT/PLAN: 1. Headache. Neuro referral sent. 2. Bilateral shoulder joint pain. To ortho given. Norco only p.r.n. Risks, side effects, alternatives and benefits of the medication reviewed with the patient. 3. Palpitations. Advised patient to decrease caffeine intake. EKG ordered. Patient declines Holter. 4. Screening. Ordered Placed This Encounter: Ordered laboratory studies. Referral neurology. ECG, 12 lead, back office now. Prescribed Norco 5-325 mg.

01-17-17, Kaiser Permanente
ECG Report
RESULT: Sinus bradycardia with 1st degree A-V block. When compared with ECG of 03-24-14. No significant change was found.

01-17-17, Kaiser Permanente
Laboratory Report
TEST: CBC no differential; TSH; ALT; Creatinine; Electrolyte panel; Hemoglobin A1c, screening or prediabetic monitoring; Lipid panel: Cholesterol – High; LDL – High; Triglyceride, nonfasting – High.

02-16-17, Kaiser Permanente, Sonu M. Brara, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: Patient has been having pain in the feels like is wearing a helmet, all the time. Also has left side neck spasm. Has a vice like sensation on her scalp. Pressure sensation. Has back pain. Also has right arm pain. Seen PMR and

COLLIER APL 0569

**Collier, Vicki**
**September 25, 2019**
**Page 12 of 27**

ortho for that. ALLERGIES: NKA. ASSESSMENT/PLAN: Tension headache. Note: Patient with tension headaches, also has neck spasm which could be contributing to the headaches. Will give trial of muscle relaxant and gabapentin. Side effects drowsiness. Plan: Prescribed gabapentin 100 mg and cyclobenzaprine 5 mg.

02-16-17, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient complained of moderate increasing right shoulder pain x2 months. The cortisone injection helped for several months. IMPRESSION: Right shoulder rotator cuff syndrome. PLAN: Administered right shoulder cortisone injection. Provided ice pack. Recommended activity modification. RTC p.r.n. PROCEDURE: Patient gave verbal informed consent after risks and benefits discussed. Area prepped and draped in the usual sterile fashion. Subacromial space located and marked. 5 ml of 1% lidocaine and 1 ml of Kenalog 40 mg/mL injected. Patient tolerated procedure well without complications.

04-03-17, Kaiser Permanente, Michael V. Tran, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presented with irregular heart beat this morning approximately 4 a.m. and lasting until about 6 am. ASSESSMENT: Palpitations. Note: Benign, reassurance. Event holter ordered. PLAN: Ordered ECG. Referral cardiology. RTC if no change or worse.

04-03-17, Kaiser Permanente
ECG Report
RESULT: Sinus bradycardia with 1st degree A-V block. Otherwise normal ECG. When compared with ECG of 01-17-17. No significant change was found.

05-03-17, Kaiser Permanente
ECG Wearable Monitor Test Report
CONCLUSION: 1. Benign event monitor. Predominant rhythm was normal sinus rhythm and 1st degree AV block with average heart rate of 73 bpm, range 44-168. 2. Rare isolated ventricular and supraventricular ectopic beats occurring less than 1% of the time. No sustained arrhythmias observed. 3. Patient reported heart fluttering and several triggered events which were predominantly associated with normal sinus rhythm.

06-09-17, Kaiser permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient complained of bilateral lower leg pain x1 month. No swelling/injury. Still having neck pain. Think headaches are because of neck pain. Never went to pain management for epidural because was hesitant. Still having right shoulder pain. Needs letter for work written to get ergonomic workspace. Neuro wrote letter but her work (AAA) says it need to be more specific. Also having ringing in the ears for years but getting worse. Normal hearing. ASSESSMENT/PLAN: 1. Bilateral subjective tinnitus. Audiology referral done. 2. Cervical radiculopathy. Referral to pain management resent. 3. Bilateral leg pain. Voltaren gel given to use p.r.n.

COLLIER APL 0570

LIB000116

**Collier, Vicki**
**September 25, 2019**
**Page 13 of 27**

06-10-17, Kaiser Permanente
Laboratory Report
TESTS: Tissue exam.  DIAGNOSIS/COMMENT: Hyperplastic polyp.  No evidence of dysplasia or malignancy.

06-30-17, Kaiser Permanente, Martine D, Parekh, AuD.
Progress Notes
PRESENTING COMPLAINTS: Patient is here for audiological evaluation with history of bilateral sudden hearing loss.  Patient stated that in 2007 she experienced sudden hearing loss in both ears and her hearing was restored as a result of a steroid injection.  Patient reported that a couple of years later she experienced that same thing and again a steroid injection restored her hearing.  Patient complains today of bilateral tinnitus and some dizziness.  She stated that the dizziness began a few days ago.  Family history of hearing loss includes her mother.  IMPRESSION: Bilateral ultra high hearing loss.  PLAN: Results discussed with patient.  Follow-up with PCP.  Audio re-test in 2-3 years.

06-30-17, Kaiser Permanente, Harrison Kibe, M.D.
Procedure Report
PRE-OPERATIVE DIAGNOSIS: 1. Cervical radiculopathy.  2. Cervical spinal stenosis.  3. Cervical degenerative disc disease.  POST-OPERATIVE DIAGNOSIS: 1. Cervical radiculopathy.  2. Cervical spinal stenosis.  3. Cervical degenerative disc disease.  PROCEDURE TITLE: 1. C7-T1 interlaminar cervical epidural steroid injection (right paramedian).  2. Intraoperative fluoroscopy.

06-30-17, Kaiser Permanente, Payman Moin, M.D.
MRI of the Right Shoulder, no contrast
IMPRESSION: 1. 9 mm AP approximately 50% partial-thickness articular surface supraspinatus tendon tear on a background of moderate tendinosis.  2. Infraspinatus and superior fiber subscapularis mild tendinosis.  3. Proximal long head of biceps mild tendinosis.  4. Minimal subacromial subdeltoid bursitis.  5. Acromioclavicular joint osteoarthrosis.

07-10-17, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: The patient presented here for TAV of diagnostic imaging results.  ASSESSMENT: Nontraumatic partial right rotator cuff tear.  PLAN: Surgical case requested right shoulder arthroscopy, rotator cuff repair.  The risks, benefits and alternatives of the proposed surgery were discussed with the patient, including the option of further non-operative treatment.  She understands the risks of surgery and she is willing to proceed.  Prescribed Norco 5-325 mg.

07-19-17, Kaiser Permanente, Sylvia R. Hanna, D.O.
Progress Notes
PRESENTING COMPLAINTS: Patient presented here for black mold testing.  Her employer has confirmed black mold growing inside the walls.  She complained of HA, nasal

COLLIER APL 0571

LIB000117

**Collier, Vicki**
**September 25, 2019**
**Page 14 of 27**

congestion, and head heaviness.  While away on vacation, she did not have these symptoms, but they presented again when she returned to work.  States a few coworkers had testing done here with Kaiser - some tests were positive and they are being treated.  Concerned for her safety - requesting same labs as coworkers had. ASSESSMENT: Exposure to mold. DISCUSSION/PLAN: To my knowledge, there is no specific testing here done for black mold.  Will check with immunology/allergy.  Also asked patient to find out specific tests her coworkers had done.  Will await email from patient.

07-20-17, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient complained of moderate right shoulder pain located at anterolateral x3 years.  She experiences pain at night.  Pain is not improving.  The symptoms are exacerbated by reaching and lifting and are lessened by rest. PAST MEDICAL HISTORY: Menorrhagia.  Right conjunctival cyst. PAST SUGICAL HISTORY: Tonsillectomy.  Breast augmentation bilateral.  Repair of umbilical hernia. ALLERGIES: NKA. DIAGNOSIS: Right shoulder partial rotator cuff tear. TREATMENT: Right shoulder arthroscopy, rotator cuff repair.  The risks, benefits and alternatives of the proposed surgery were discussed with the patient.  Vicki's questions were answered in depth and she is willing to proceed.  The informed surgical consent indicating full understanding of the issues described above was signed during the pre-operative visit by Vicki.

07-26-17, Kaiser Permanente, Sovanrith Tun, M.D.
Operative Report
PREOPERATIVE DIAGNOSIS: Right shoulder partial rotator cuff tear. POSTOPERATIVE DIAGNOSIS: 1. Right shoulder partial rotator cuff tear, subscapularis tendon.  2. Partial intratendinous supraspinatus tendon tear. OPERATION PERFORMED: 1. Right shoulder arthroscopic rotator cuff repair.  2. Subacromial decompression.

07-31-17, Kaiser Permanente, Susan M. Bemis, PT
Physical Therapy Evaluation Report
PRESENTING COMPLAINTS: The patient reported that she had status post shoulder surgery on 08-26-17, complained of pain in right shoulder described as sharp and stabbing, rated at 5/10.  Patient is in lot of pain today – did not take pain meds, she was crying with evaluation. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17.  PLAN: Recommended physical therapy treatment 2x/wk for 12 wks including manual therapy, therex, neuromuscular re-ed and pain modalities.

08-02-17, Kaiser Permanente, Lori A. Robinson, PT
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that she had less pain on right shoulder, not needing pain meds. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17.  PLAN: Continue therapy treatment per plan of care.

08-08-17, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient reported that she had right shoulder partial rotator

COLLIER APL 0572

LIB000118

**Collier, Vicki**
**September 25, 2019**
**Page 15 of 27**

cuff tear repair, subscapularis tendon and partial intratendinous supraspinatus tendon tear on 07-25-17. She presented here today for follow-up of mild right shoulder pain. She is going to physical therapy. DIAGNOSIS: 1. Orthopedic aftercare. 2. Nontraumatic partial right rotator cuff tear. IMPRESSION/PLAN: Doing well. Prescribed Norco. Provided sling. Recommended physical therapy treatment. RTC in 2 months.

08-09-17, Kaiser Permanente, Jessica L. Mena, PT
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that she had less pain on right shoulder, not needing pain meds. She is doing home exercise program daily. She states she is able to lift arm when on her back-recommended to avoid doing this. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

08-11-17, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that no real right shoulder pain. She has some nerve pain at lower arm to thumb when let's arm hang. She has some shoulder stiffness. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

08-15-17, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that she is sleeping well, really no pain. Pain pill 1-1.5 if needed after exercises. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

08-17-17, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that she has some right elbow pain now and also inner forearm numbness continues. Being careful not to actively use right UE. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

08-23-17, Kaiser Permanente, Susan M. Bemis, PT
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient may take off sling this coming Sunday – worried, work wants her to come back with restrictions. Being careful not to actively use right UE. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

08-31-17, Kaiser Permanente, Eric L. Mendoza, PT
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient complained of pain in lateral aspect of the right shoulder rated at 5/10. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

COLLIER APL 0573

LIB000119

**Collier, Vicki**
**September 25, 2019**
**Page 16 of 27**

09-06-17, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient complained of pain at right posterior shoulder/scapular area and radiated to front of shoulder throbbing pain, notices especially at night. Taking Norco at night and 1 during the day. Daughter massaged scapular area and helped. Pain goes up to the neck. Sleep disturbed 2x/night. Elbow and triceps stiff. Pain rated at 7-8/10. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

09-13-17, Kaiser Permanente, Susan M. Bemis, PT
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that she is doing well, still does not have full shoulder range of motion. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

09-20-17, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported right neck and upper arm, triceps pain. She is being careful with right upper extremities activities. She takes Norco p.r.n. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

09-28-17, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient reported that she had right shoulder partial rotator cuff tear repair, subscapularis tendon and partial intratendinous supraspinatus tendon tear on 07-25-17. She presented here today for follow-up of mild right shoulder pain. She is going to physical therapy. IMPRESSION/PLAN: Doing well. Recommended physical therapy treatment. Increase activities as tolerated. RTC p.r.n.

09-28-17, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that she is doing exercises, right shoulder blade and neck sore. Shooting pain in middle and index finger and numbness at right anterior forearm area. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

10-12-17, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that still painful at night but overall doing better with motion and strength. She is using bands, weights for biceps. Able to lie on right side at night a little now. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

11-22-17, Kaiser Permanente, Susan M. Bemis, PT

LIB000120

Collier, Vicki
September 25, 2019
Page 17 of 27

Physical Therapy Discharge Summary Report
PRESENTING COMPLAINTS: Status at time of discharge is unknown as patient failed to follow-up with therapy treatment. PLAN: Patient discharged from therapy.

11-30-17, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient reported that she had right shoulder partial rotator cuff tear repair, subscapularis tendon and partial intratendinous supraspinatus tendon tear on 07-25-17. She presented here today for follow-up of having increased right shoulder pain. She is working long hours again. IMPRESSION/PLAN: Doing well. Recommended physical therapy treatment. Increase activity as tolerated. Administered cortisone injection. PROCEDURE: Patient gave verbal informed consent after risks and benefits discussed. Area prepped and draped in the usual sterile fashion. Subacromial space located and marked. 5 ml of 1% lidocaine and 1 ml of Kenalog 40 mg/mL injected. Patient tolerated procedure well without complications. RTC p.r.n.

12-10-17, Kaiser Permanente, David L. Robinson, M.D.
US of Pelvis, Transabdominal and Transvaginal Non OB Complete
IMPRESSION: Pelvic ultrasound exam within normal limits.

12-10-17, Kaiser Permanente, Eliho A. Pakravan, M.D.
Bilateral Screening Mammogram Report
IMPRESSION: Benign. There is no mammographic evidence of malignancy. A routine screening mammogram is recommended within 2 years.

12-12-17, Kaiser Permanente, Jarrett G. Williams, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presented with bug bite. She noticed today mild pain on the left elbow. With small mass that has become larger through the day. ALLERGIES: NKA. ASSESSMENT: Cellulitis. PLAN: Prescribed Keflex 500 mg #40. MEDICAL DECISION MAKING: Patient clinically stable. Problem/medication lists reviewed and non-pharmacologic measures discussed. Discussed management of above diagnosis. Return if symptoms worsen or fail to improve in expected time frame. DISPOSITION TO: Home.

12-27-17, Kaiser Permanente, Colleen D. Bogdanich, DNP
Progress Notes
PRESENTING COMPLAINTS: The patient presented with blood in stool - bright red bloody mucus last night and this a.m. Patient with history of feeling stomach cramps and then bloody diarrhea last night. Was at worked. Laid on the floor felt weak and that she could pass out thinks she may have for a short while. Intermittent discomfort on the left lower abdomen x2 months. This am was not cramped. It was mucous with a hint of blood. After that it a mushy bowel movement there was blood not weak or sweaty like yesterday. Did eat this am. Last night had broth. Seemed to tolerate it. She had toppers salad and a pizza at 130 symptoms about 530. Antibiotics a few weeks ago. ASSESSMENT: Rectal bleeding. PLAN: Ordered lab studies and measure orthostatic vital signs. If she worse RTC. Will check stool cultures. See patient ED information. Call or return to clinic p.r.n. if these

COLLIER APL 0575

LIB000121

**Collier, Vicki**
**September 25, 2019**
**Page 18 of 27**

symptoms worsen or fail to improve as anticipated. Patient agrees with plan of care and verbalizes understanding.

12-27-17, Kaiser Permanente
Laboratory Report
TEST: CBC with automated differential; Alkaline phosphatase; Bilirubin, direct – High; Bilirubin, total; AST; ALT; Creatinine; Electrolyte panel: Anion gap (NA-(CL+CO2) – Low; Glucose; Lipid panel: Cholesterol – High; LDL – High; INR; BUN; WBC automated differential.

12-29-17, Kaiser Permanente
Laboratory Report
TEST/RESULT: Stool culture. COMMENT: No salmonella, shigella, campylobacter jejuni or campylobacter spp, isolated. Stool WBC. COMMENT: No white blood cells seen.

01-18-18, Kaiser Permanente, Gina Lin, M.D.
Progress Notes
PRESENTING COMPLAINTS: The patient presented here for consultation for recent blood in stool. She had a colonoscopy done outside of Kaiser in 2015. Colonoscopy has been ordered for her but patient requesting to talk to GI before proceeding with the procedure. She had an episode of severe LUQ pain, followed by diarrhea which helped relieve the pain, lasted about 45 mints brief syncopal episode and then symptoms subsided. Then she noticed mucous, tint of blood on paper the day after. She has had mild LLQ discomfort for past three months. The patient has been constipated since July-since taking Norco for shoulder pain. Noticed blood when she strained. Patient reported increased discomfort with constipation. ASSESSMENT: 1. LLQ abdominal pain, possibly related to constipation, less likely diverticulitis. 2. Rectal bleeding, possibly due to internal hemorrhoids. Will check CT scan abdomen/pelvis first. Can take stool softeners or MiraLax p.r.n. Follow-up afterwards-discussed possibly scheduling flex sig (since patient had recent colonoscopy in 2015).

01-25-18, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS: The patient is here today to discuss her cholesterol result. Does not want to start statin. Has always had high cholesterol and has a healthy lifestyle. Also has a small bump on the left forearm. Treatment with antibiotics a few months ago and it is now smaller. Doesn't really bother.

01-25-18, Kaiser Permanente
Laboratory Report
TESTS: Urinalysis, automated: Specific gravity, UA – Low; Leukocyte esterase, UA – Abnormal; Urinalysis, microscopy – WBC's, UA/HPF – Abnormal; Bacteria, urine HPF – Abnormal; Squamous epithelial cells, urine sed, automated count, qual – Abnormal.

01-25-18, Kaiser Permanente
Laboratory Report

COLLIER APL 0576

LIB000122

**Collier, Vicki**
**September 25, 2019**
**Page 19 of 27**

TEST/RESULT: Urine culture.  FINAL RESULT: Less than 1000 CFU/mL (no growth).

02-01-18, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient reported that she had right shoulder partial rotator cuff tear repair, subscapularis tendon and partial intratendinous supraspinatus tendon tear on 07-25-17.  She presented here today for follow-up of having increased right shoulder pain at anterior chest, lateral deltoid, elbow and forearm. DIAGNOSIS: Right shoulder interstitial partial tear.  PLAN: Recommended physical therapy treatment.  Increased activities as tolerated.  Discussed repeat shoulder arthroscopy.  RTC p.r.n.

03-08-18, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient reported that she had right shoulder partial rotator cuff tear repair, subscapularis tendon and partial intratendinous supraspinatus tendon tear on 07-25-17.  She presented here today for follow-up of moderate left shoulder pain for 3 months.  Pain located at lateral deltoid aspects.  Pain is not improving and worse with reaching and lifting and relieved with rest.  DIAGNOSIS: Left shoulder rotator cuff syndrome.  PLAN: Provided ice.  Prescribed meloxicam 15 mg.  Discussed left shoulder arthroscopy and left shoulder cortisone injection.  RTC p.r.n.  PROCEDURE: Patient gave verbal informed consent after risks and benefits discussed.  Area prepped and draped in the usual sterile fashion.  Subacromial space located and marked.  5 ml of 1% lidocaine and 1 ml of Kenalog 40 mg/ml injected.  Patient tolerated procedure well without complications.

03-23-18, Kaiser Permanente, Sonu M. Brara, M.D.
Progress Notes
PRESENTING COMPLAINTS: The patient presented here for follow-up of headaches and having pain in the neck and ringing in ears.  She feels like is wearing a helmet, all the time and also has left side neck spasm.  She has a vice like constant pressure sensation on her scalp.  She also has back pain and right arm pain.  She was seen PMR and ortho for that.  She stopped taking gabapentin after shoulder surgery.  ASSESSMENT/PLAN: Tension headaches.  Also has neck spasm which could be contributing to the headaches.  Etiology cervico myofascial vs tension, daily headaches.  Restart gabapentin.  Ordered MRI of the brain.  Trial of Botox.

03-27-18, Kaiser Permanente, Shahram Gharibshahi, M.D.
Neurology Follow-Up Visit Notes
PRESENTING COMPLAINTS: The patient complained of chronic migraine headaches daily.  She also complained of lots of tension on the shoulders.  ASSESSMENT/PLAN: Chronic daily headache.  Obtained signed consent form.  Administered Botox 100 unit injection.  RTC in 3 months.

03-27-18, Kaiser Permanente

COLLIER APL 0577

**LIB000123**

Collier, Vicki
September 25, 2019
Page 20 of 27

Laboratory Report
TEST: Globin, fecal test was performed.

04-10-18, Kaiser Permanente, Joy M. Nelson, PT
Physical Therapy Evaluation Report
PRESENTING COMPLAINTS: The patient complained of pain at multiple sites of upper quadrant at bilateral shoulders, neck and head.  Onset all the pain c/os x about 2 years old, except left shoulder 2/18 onset - insidiously.  Tired of the pain.  Had right shoulder surgery last year - here in physical therapy until about 10/17 - surgeon has offered her right shoulder surgery again but patient wants to avoid that.  Pain level: At rest feels discomfort at bilateral shoulders - points to deltoids, right elbow and back of head.  7-8/10 at rest at visit (combined sites) 10/10 at night when awakens her mid night like last night.  Pain Description: Pounding pain at shoulders, shoulder, neck and back - headaches, tension, blades, back of head - Feels like heavy helmet on top of head, tender at back of neck/head, left side near ear.  Ringing in ears.  REFERRAL DIAGNOSIS: Bilateral rotator cuff syndrome.  PLAN: Recommended physical therapy treatment.

04-17-18, Kaiser Permanente
Laboratory Report
TEST: Throat screening culture.  RESULT: No group A beta streptococci isolated.

04-17-18, Kaiser Permanente, Jarrett G. Williams, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: The patient presented with sore throat since Friday.  She stated that she experienced bad sore throat with positive swollen lymph nodes, fevers, body aches and cough.  Cough is clear with some green.  Positive hear and ear pressure.  She has taken some over the counter meds like elderberry, Advil, throat spray and Lozenges.  ASSESSMENT/PLAN: Cough – negative rapid strep.  Ordered lab studies.  Prescribed Proair/Proventil/Ventolin 90 mg, Zithromax 250 mg and mouthwash diphenhydramine-lidocaine viscous-Maalox oral suspension.  Follow-up p.r.n. if symptoms do not improve or worsen.

04-25-18, Kaiser Permanente, Joy M. Nelson, PT
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that Botox injections at left neck, upper trap region helped some but plateau effect from it.  Bilateral shoulders really bothering her, pounding pain at shoulders even at rest.  She experienced stretch pulling pain at right under arm region when doing self pressure massage at right elbow for tennis elbow problem.  Gets upper back complaints and tingling at bilateral hands to down to shoulders, left greater than right frequently but doesn't seem related to neck position.  Does feel tight, stuck at neck for turning, looking up.  Also has tingling at legs, feet sometimes when at work.  Had ergo assessment - to have corrections made.  Going to gym and doing light workouts now and then - avoiding machines/overhead stuff per ortho.  Knot sensation at left side of neck/head.  Doing her home exercise program; just wants to make sure shoulders don't get frozen.  Cortisone injection at shoulder didn't help last time.  REFERRAL DIAGNOSIS: Bilateral rotator cuff syndrome.  PLAN: Continue therapy

COLLIER APL 0578

LIB000124

**Collier, Vicki**
**September 25, 2019**
**Page 21 of 27**

treatment per plan of care including HEP and follow-up for recheck in next 2-3 weeks.

05-10-18, Kaiser Permanente, Patrick A. Dimartini, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: The patient complains of tinnitus. She has history of this but got worse over the last week. No known change in hearing. Works in insurance and not having any noise pollution. Had URI a month ago. She stated that she still has occasional dry cough. Doesn't take ASA. ASSESSMENT/PLAN: Bilateral subjective tinnitus, worsening. Questionable if due to worsening hearing or perhaps ET plugging. Try Sudafed and Flonase daily. Referral audiology to compare to last year.

05-14-18, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: The patient reported that she had right shoulder partial rotator cuff tear repair, subscapularis tendon and partial intratendinous supraspinatus tendon tear on 07-25-17. She presented here today for a follow-up of persistent moderate pain in bilateral shoulders. Previously, she had left shoulder cortisone injection which helped her and also had Botox injections, Norco and Meloxicam. She is still working on an ergonomic workstation. IMPRESSION/PLAN: Bilateral shoulder rotator cuff syndrome. Prescribed Norco and Meloxicam. Will be stopping her current job. Activity modification. RTC p.r.n.

05-29-18, Kaiser Permanente, Joy M. Nelson, PT
Physical Therapy Discharge Summary Report
PRESENTING COMPLAINTS: Status at time of discharge is unknown as patient failed to follow-up with therapy treatment. PLAN: Patient discharged from therapy.

10-11-18, Ripu Arora, M.D.
Panel Qualified Medical Evaluation In Pain Management Report
PRESENTING COMPLAINTS: She is complaining of: 1. Neck pain and gets headache, which has gone since the Botox injections. 2. Lower back pain. Recently she claimed that the pain is worse when driving and sitting, especially on her buttocks area, and she also felt that the pain was worse when she was driving to San Luis Obispo three to four hours or having a flight to Chicago for four hours. 3. Hemorrhoids, which are healed. Pain in the different areas of head, neck and buttocks is 6-7/10 and sometimes reaches 10/10 on the VAS. It is in the form of achiness and stabbing pain in the upper arms and her lower back pain going towards the buttocks and in the posterior lower extremities and the feet in the form of achiness, numbness and pins and needles. Her pain feels like a pressure-like tightness, sometimes sharp stabbing. She has a pain that is aggravated on twisting, looking up, reaching or sitting. JOB DESCRIPTION: She works as a sales agent and she was hired in AAA Auto Club in June of 2013 and last worked on 05-15-18. Her job included obtaining sales goal, process application services to existing clients, obtaining membership goal, service personal customers, and 99% of her work was on the computer, receiving phone calls, cradling the phone on her left shoulder. She was working on a commission and her job sometimes included reaching, bending and twisting. Previous employment, from 2007 to 2018, she worked in Farmers Insurance, and from 2012 to 2013, she worked in Cumbre

COLLIER APL 0579

LIB000125

Collier, Vicki
September 25, 2019
Page 22 of 27

Insurance as independent contractor. She denies any history of injury at previous employment. HISTORY OF INJURY: As I am examining the examinee today, there have been no medical records available to me and the history is taken purely from the examinee. Apparently, on 07-25-17, she had a right shoulder surgery, rotator cuff repair, and she was working since 11-01-17 after the repair of the rotator cuff. However, on 11-30-17, she started getting pain on the right shoulder and she went to see her orthopedic surgeon, who gave her a cortisone injection, which helped her. She says that she was visiting Mexico in 2016 and at that time she had some neck pain radiating to her left shoulder and left arm to the middle finger and she came back to see the Kaiser physician who examined her with an MRI and diagnosed her with a cervical C5-6 disc herniation and she was treated with a cervical epidural injection. On 02-16-17, she was seen by a neurologist at Kaiser due to the right-sided shoulder pain and advised to have an ergonomic seat and furniture in the office where she was working, but she was not provided one. So, apparently in October 2017, she saw Dr. Tun, orthopedics, for her right shoulder pain, who again recommended the ergonomic furniture. Her claim is pain in her neck, shoulder, and lower extremities, hemorrhoids internal and external, headaches, forearm, elbows, and shoulder blade pain and upper back pain because of the lack of the ergonomic furniture provided to her at the work location. She says that she was seeking medical attention at that time but did not realize it was work related until she was advised that she should seek this as a part of the work related injuries. In January or February of 2018, she had bleeding hemorrhoids and she fainted twice, once in a restaurant and once at work. She was advised to have a colonoscopy but she refused to have one in 2018 because she said she had one in three/four years prior to that and she was told that she has diverticulosis and that it is normal. She was getting treatment in Kaiser for neck injury and pain in the right shoulder. She apparently had right shoulder steroid injection three times, which is not helping, and she also had cervical epidural injection for the neck pain and the shoulder pain. Again, I have no medical records available to me to compare her personal history provided to me with the medical records. History of medications, she was given Norco, meloxicam, cyclobenzaprine, MiraLax, and gabapentin. She also had physical therapy for three months. On 07-25-17, she had a rotator cuff tear repair on the right shoulder by the orthopedic surgeon. She claimed she had an MRI of the neck and the shoulder but I have no records available. On 11-01-17 when she went back to work after the right shoulder rotator cuff repair was healed, she developed throbbing pain on 11-30-17, which recovered with a cortisone injection. In February 2018, she claimed she started having left shoulder pain and she was again given a cortisone injection. She was off work until March 2018. She does not remember any MRI done on her left shoulder. Periods of temporary disability, 07-26-17 to 11-01-17, after a rotator cuff repair on the right shoulder. On 05-16-18 to current, she is on temporary disability. She has been doing physical therapy and chiropractic treatment with Botox injection to the neck and head and also is being treated at Kaiser with a neurologist, orthopedic surgeon and PCP. PAST MEDICAL HISTORY: Past Medical Illnesses: The examinee denies any major medical problems. History of previous surgeries, she has had breast augmentation, had hernia repair, had tonsillectomy, and had right side rotator cuff repair, right shoulder. SOCIAL HISTORY: She denies any smoking or drinking abuse or use of street drugs. HABITS: Tobacco: She denies any smoking. Alcohol: She denies any drinking abuse. Illicit Drugs: She denies any use of street drugs. DIAGNOSES: 1. Cervical radiculopathy. 2. Right shoulder, status post rotator cuff repair, with pain. 3. Left

COLLIER APL 0580

LIB000126

Collier, Vicki
September 25, 2019
Page 23 of 27

shoulder pain.  4. Sacroiliac joint pain bilaterally and low back pain.  RECOMMENDATIONS: I would like to get medical records to review.  I would like to get MRIs of the shoulders, neck and lumbosacral spine to review so that I can complete the supplemental report with a review of the medical records and make my comments on the causation, permanent and stationary status, apportionment, and whole person impairment.  PERMANENT AND STATIONARY: I have no medical records available to me on the day of examination and I am unable to make any comments on this.  PERMANENT IMPAIRMENT: I have no medical records available to me on the day of examination and I am unable to make any comments on this.  CAUSATION: I am unable to make any medical opinion as regards to causation because I have no medical records available to me.  APPORTIONMENT: I have no medical records available to me on the day of examination and I am unable to make any comments on this.

10-24-18, Ripu Arora, M.D.
Panel Qualified Medical Evaluator Supplemental Report In Pain Management
REVIEW OF RECORDS: Extensive medical records were reviewed. DISCUSSION/COMMENTS: As you are aware, I gave my QME report on 10-11-18 when the examinee came into my office for examination and she gave me a history.  I had no medical records available to me for review and to match her history.  Apparently she is claiming a continuous trauma claim from 2013 to 07-24-17 when she claims that she was working in the AAA where she was not given any ergonomic seat and furniture and it caused pain to her right shoulder for which she sought medical treatment from Dr. Tun, orthopedic surgeon on 10/17.  She claimed that her pain in the neck, shoulder, lower extremities and headaches and pain in the forearm and elbows and shoulder blade, etc., along with the hemorrhoids, are all secondary to the continuous trauma during her work between 2013 to 2017 at the AAA office.  She also gave a history on January or February 2018, she had bleeding hemorrhoids and she fainted.  She was advised to have colonoscopy, which she refused to have at that time because she had one sometime before 2013 or 2014.  Now, I have received her medical records and there are a lot of differences between her history provided to me at the time of the October 11th examination and the medical records provided to me.  I have two sets of medical records starting from the year 2002 all the way to 2018 with almost 2000 pages and I have reviewed the medical records and as per her history she injured her shoulder in October 2017 as she had told me that she was visiting Mexico sometime in 2016 and that is when she hurt herself in the neck and the left shoulder.  However, when I reviewed the history from the previous years, the first time she complained about pain in her shoulder was in 03-27-15 medical records, she complained to her internal medicine physician, Dr. Patterson-Judd that she had a right shoulder pain ongoing for several months and also she had elbow pain ongoing for several months and she was treated conservatively with medications like Norco as well as Medrol pack.  Also reviewing the history of past between 2002 to 2008, she has a history of hemorrhoids ongoing for several years in the medical records, complaining to her family physicians.  I also noticed from the medical records that she has been having pain in her neck as well as low back for several years as far back as 2007 for the low back and 2009 for the neck and shoulder pain.  Since 05-16-18, she has been on total temporary disability.  Over the last 16 years, she has received several treatments with chiropractic treatment for her different musculoskeletal problems including the neck and the lower back, right shoulder especially

COLLIER APL 0581

LIB000127

Collier, Vicki
September 25, 2019
Page 24 of 27

in the past 10 years or so, which is reflected in her medical records sent to me. Present complaints, please refer to my PQME report on 10-11-18, she does complain of pain in the neck, lower back and complains that she has healed hemorrhoids, however, she is presently trying to claim the continuous trauma, with all these present complaints. Please refer to the rest of my physical examination as well as the history from the PQME report and now I will address the following: FUTURE MEDICAL NEEDS: She might need physical therapy between 6 to 12 sessions for any aggravated pain in her shoulder for the next 12 months. FUTURE DISABILITY: Presently, she is healing from the shoulder surgery and she should avoid any heavy lifting more than 20 pounds and reaching above her head and follow-up would be advised by an orthopedic surgeon who did the shoulder surgeries. WHOLE PERSON IMPAIRMENT: Using the AMA Guides, Fifth Edition: Regarding her lower back, I used the DRE method, Table 15-3 and I gave her 0%. Regarding her cervical spine, I used the DRE Method and gave her Category II with 5% whole person impairment. Shoulders, I used the Range of Motion Method and 0% for the left shoulder. For the right shoulder, using Range of Motion Method with Table 16-40 for flexion of under 70 degrees 1% upper extremity impairment, for extension 40 degrees 1% upper extremity and using Table 16-43 for abduction 110 degrees I gave 3% upper extremity and for adduction of 30 degrees 1% upper extremity and using Table 16-46 with external rotation of 40 degrees, I gave 1% upper extremity and total upper extremity impairment is equal to 7% and that will equal to 4% whole person impairment as per 16-3 Table on Page 439. Although, the cervical spine is 100% nonindustrial, with her total impairment of 5% plus the upper extremity 4% using combined value table on Page 604, she has a 9% whole person impairment. PERMANENT AND STATIONARY: It is my medical opinion that she has reached permanent and stationary regarding her right shoulder since 10-31-17. CAUSATION: As regards causation, her symptoms of low back pain and neck pain as well as hemorrhoids are way prior to the job she took in Automobile Club of Southern California. She has her medical records from 2002 onwards and apparently she had started complaining of these symptoms sometime during 2005 to 2009 and it is my medical opinion that the back pain and the neck pain as well as hemorrhoids are not out of this employment. As regards to her right shoulder, she started complaining of right shoulder pain on 03-27-15, then she was treated conservatively after that. On 06-09-17, she started having more pain in her right shoulder and the MRI done on 06-12-17, showed torn rotator cuff with mild tendinosis and subacromial and subdeltoid bursitis. She was also having cervical radiculopathy and she was seen by Dr. Kibe in Pain Management on 06-30-17 and the treatment plan for the cervical radiculopathy with cervical epidural injection and eventually on 07-20-17, she was given right shoulder arthroscopic surgery with rotator cuff tear. It is my medical opinion with reasonable probability that the right shoulder injury is related out of employment, as a continuous trauma from 03-27-15 to 07-25-17. APPORTIONMENT: It is my medical opinion with reasonable probability that there is no apportionment for the right shoulder injury. As regards her neck and low back and claim for the hemorrhoids, this is a 100% nonindustrial trauma as she already had pre-existing disease prior to this employment.

04-29-19, Ripu Arora, M.D.
Panel Qualified Medical Evaluator Supplemental Report In Pain Management
REVIEW OF RECORDS: Medical records were reviewed. DISCUSSION/COMMENTS: Her

LIB000128

Collier, Vicki
September 25, 2019
Page 25 of 27

original PQME report was given on 10-11-18. At that time, I had no medical records available to me and the report was based purely on the examinee's history and thorough history was taken and the examinee's present complaint at that time were pain in the neck, pain in the low back and hemorrhoids. She did tell me that she had a rotator cuff repair on the right shoulder and she is healing from that. During the examination, I examined her both shoulders, neck and low back as is seen on my report. Diagnoses were cervical radiculopathy, status post rotator cuff repair right shoulder and bilateral shoulder pain and low back pain with sacroiliac joint pain. After I reviewed the medical records, a supplemental report was given on 10-24-18. The records were over 2000 pages between 2002 all the way to 2018 and I made some salient points in my discussion where I understand that the examinee is claiming neck, shoulder, lower back, lower extremity pain, elbows and forearm pain along with hemorrhoids to the cumulative trauma and she has been very active as a patient visiting her physicians at Kaiser as well as see regularly her primary care physicians since 2002 and she also had injuries to the neck and left shoulder in 2016 while she was visiting Mexico. I also reviewed the orthopedic surgeon primary treating physician's report. My point of discussions were as follows: As the examinee has been very active in visiting physicians and reporting every single complaint from 2002 onwards, I see she never complained about pain in her elbows and wrists on the day of her PQME report. She reported pain in the neck and lower back and hemorrhoids and status post healing from right shoulder surgery and there was no mention of elbows or wrists pain. She did mention to me that after reviewing her charts from the primary treating physician that she was advised that she should report all the above as well as pain in the wrists, elbows as a cumulative trauma and claim that as a workers' compensation injury. My examination on the PQME that was limited to the neck, lower back and the right shoulder as those were the specific complaints. She was putting a claim towards workers' compensation injury. After reviewing further medical records, I found that she has had lower back pain and neck pain several years ago even before her employment 2013 at the Auto Club. I as mentioned in my causation in the supplemental report, I was unable to define the back pain and neck pain as a part of her cumulative trauma from 2013 to 2017 especially when she has had these complaints in some other times between 2005 and 2009 and so it is my medical opinion with a reasonable probability that she did not have lower back pain and neck pain arising out of her employment between 2013 and 2017. As regards to her right shoulder pain, I had mentioned in my supplemental report that this is related to her continuous trauma from 03-27-15 to 07-25-17. I respectfully disagree with the primary treating physicians who add all the other musculoskeletal issues into cumulative trauma and also I respectfully disagree with the primary treating physician's assessment. I also feel that if there is a need for further assistance, a PQME report can be obtained by orthopedic spine surgeon.

**DISCUSSION:**

The records go back to the year of 2012, when the patient was seen at Kaiser. In 2012, she was complaining of foot pain and has received some treatment for a mass within her liver. Non-orthopedic issues were also noted along with psychological complaints of anxiety in 2014. In the year of 2016, the patient was complaining of shoulder pain and was diagnosed

COLLIER APL 0583

LIB000129

Collier, Vicki
September 25, 2019
Page 26 of 27

with rotator cuff syndrome. Recommendation was made for activity modifications and medications. However, the x-ray studies of the shoulder were noted to be normal.

In September 2016, the patient was also complaining of neck pain and an MRI was obtained revealing 2 mm disc protrusions in multiple levels.

It seems that the complaints at Kaiser were at the same time that the patient has noted industrial connectivity to her complaints.

Furthermore, the patient underwent right shoulder arthroscopy in July 2017 which is related to the same time that she has claimed to have been injured at work.

The patient did receive physical therapy postoperatively and has been seen by the QME which has been reviewed previously. Considering all of the above, there is no changes to the opinions that I have provided previously and the apportion section does not require changes despite the Kaiser records.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). In order to prepare this report and complete the evaluation, time was spent without face to face with the patient. The billings reflect such time spent by the physician with the code 99358. The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Furthermore, all the information contained in this report and its attachment, if any, is true and correct to the best of my knowledge and belief, except as to information I have indicated I have received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.*

*Per labor code 139.3: If I have referred this patient for clinical laboratory, diagnostic nuclear medicine, radiation oncology, physical therapy, physical rehabilitation, psychometric testing, home infusion therapy or diagnostic imaging goods or services whether for treatment or medical-legal purposes, it should be noted that I do not have a financial interest nor does my immediate family have a financial interest with the person or in the entity that receives the referral.*

*This report is for medical/legal assessment of the injury noted and is not to be construed as a complete physical examination for general health purposes. Only those symptoms which are believed to have been involved in the injury or that might be related to the injury have been assessed by this examiner. Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

October 1, 2019
Date

Edwin Haronian, M.D.
Certified Diplomate American

COLLIER APL 0584

LIB000130

**Collier, Vicki**
**September 25, 2019**
**Page 27 of 27**

Board of Orthopedic Surgery
California License #A71385

_____

EH

*Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 10/3/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 9/25/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Miguel Mendoza                          Robert L. Palty Esq.
CCMSI Irvine                            6345 Balboa Blvd, Ste 211
P.O. Box 53550                          Encino, CA  91316
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 10/3/2019 at

_____
Emily Shemwell

COLLIER APL 0585

**LIB000131**

# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

- Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery


- Fellow, American Academy of Orthopedic Surgeons


- Member, North American Spine Society

- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

•

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

Kantor & Kantor
1050 Marina Village Parkway
Alameda, CA 94501

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | September 26, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

### SUPPLEMENTAL REPORT AND REVIEW OF MEDICAL RECORDS OF AN ORTHOPEDIC PRIMARY TREATING PHYSICIAN

I have received a letter provided with a copy of a document from Lincoln Financial Group.  This was for long-term disability benefits.  A claim was filed in regards to shoulder pain along with documentation from Kaiser.

The letter indicates that the medical records were not received on time and that the MRI studies were reviewed.  The MRI of the right shoulder did reveal partial thickness supraspinatus tendon tear, however, there was no supported impairment.  The MRI of the cervical spine was also reviewed within the medical records.

The letter indicates that the physical demands of an insurance agent is sedentary and light and the letter also indicates that the occupation can be completed as an insight sales agent.

The letter does not conclude the fact that the patient did have surgery and has continued to have limitations.

LIB000132

**Collier, Vicki**
**September 26, 2019**
**Page 2 of 4**

There is also no indication that reviewing physician has actually examined the patient.

The physician is not an orthopedic surgeon, but seems to be a Physical Medicine Rehabilitation Specialist. It also seems that the reviewing physician for some unknown reason has licensed to practice in five different states and perhaps performs evaluation only without actual treatment of patients. There is no indication that her range of motion was measured. The patient was declared permanent and stationary on January 31, 2019. At that time, the patient was still complaining of neck and shoulder pain. It was unlikely that the patient's condition would improve further for at least one year and that was the timing of the permanent and stationary status. In fact, the patient continued to be seen in my office and has continued to suffer from pain.

In light of the above, the patient has been seen by a pain management specialist who has been treating the patient for the continued symptoms. Range of motion measurements were performed using double electronic inclinometers on the day that the patient was declared permanent and stationary. This was in January 2019. Right shoulder flexion was 132 degrees and extension was 45 degrees. Abduction was 92 degrees and adduction was 43 degrees. Internal rotation was 64 degrees and external rotation was 81 degrees. This resulted in 8% impairment of the right upper extremity which would convert into 5% impairment of the whole person just for the right shoulder. The patient was also complaining of wrist and elbow pain and there was significant limitation in the range of motion of other body parts. Although, the disc herniation in the cervical spine was not severe, there was indication of continued radiculopathy. In fact, the patient was also seen by a medical-legal evaluator on October 2018 and a report was provided indicating that the patient has had ongoing pain to the elbow and the shoulders.

The QME indicated that the patient's complaints to the lower back and the neck were present prior to her job at the Automobile Club. However, that does not dismiss the fact that the patient has continued to suffer from pain. Her right shoulder injury was considered related to the industrial activity.

In fact the medical-legal evaluator also indicated that the patient should avoid lifting more than 20 pounds above her head, however, in my assessment, when the patient was declared permanent and stationary, I did provide work restrictions to multiple body parts including the shoulders that the patient would be precluded from working at/or above the shoulder level. It would be reasonable that the patient should avoid lifting more than 10 pounds and the patient should avoid repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching due to her wrist complaints. Considering the above, it would be reasonable to indicate that the patient will not be able to perform her previous work activities as indicated in my report from January 31, 2019.

I hope the above clarifies any ambiguities.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my*

COLLIER APL 0587

**LIB000133**

**Collier, Vicki**
**September 26, 2019**
**Page 3 of 4**

*knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). In order to prepare this report and complete the evaluation, time was spent without face to face with the patient. The billings reflect such time spent by the physician with the code 99358. The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Furthermore, all the information contained in this report and its attachment, if any, is true and correct to the best of my knowledge and belief, except as to information I have indicated I have received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.*

*Per labor code 139.3: If I have referred this patient for clinical laboratory, diagnostic nuclear medicine, radiation oncology, physical therapy, physical rehabilitation, psychometric testing, home infusion therapy or diagnostic imaging goods or services whether for treatment or medical-legal purposes, it should be noted that I do not have a financial interest nor does my immediate family have a financial interest with the person or in the entity that receives the referral.*

*This report is for medical/legal assessment of the injury noted and is not to be construed as a complete physical examination for general health purposes. Only those symptoms which are believed to have been involved in the injury or that might be related to the injury have been assessed by this examiner. Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

_October 1, 2019_
Date

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385

EH

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 10/3/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name:** **Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 9/26/2019**

COLLIER APL 0588

**LIB000134**

**Collier, Vicki**
**September 26, 2019**
**Page 4 of 4**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Kantor & Kantor
1050 Marina Village Parkway
Alameda, CA  94501

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 10/3/2019 at

_____
Emily Shemwell

COLLIER APL 0589

**LIB000135**

# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

- Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery



- Fellow, American Academy of Orthopedic Surgeons



- Member, North American Spine Society



- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH: (818)788-2400
FAX: (818) 788-2453

•

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | October 6, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | █████████ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## SUPPLEMENTAL MEDICAL-LEGAL REPORT AND REVIEW OF MEDICAL RECORDS OF A PRIMARY TREATING PHYSICIAN - ML-106

**Six hours and forty-five minutes were spent to review the medical records along with dictation, editing and preparation of this report.**

## MEDICAL RECORD REVIEW:
06-14-12, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient is here for a routine checkup. Periods are becoming irregular. Right bunion. Had an abdominal ultrasound 5-7 yrs ago and was told she had some kind of liver cyst or benign tumor; patient would like follow-up abdomen ultrasound. ASSESSMENT/PLAN: 1. Health check up, adult. Advised regular exercise and healthy eating. Regular self breast exams advised. 2. Negative mammography done outside Kaiser Permanente in 2011. 3. Negative pap smear done outside Kaiser Permanente in 2011. 4. Prophylactic vaccine for tetanus, diphtheria, acellular pertussis. 5. Bunion. Referral to podiatry done. 6. Screening. Orders Placed This Encounter: Ordered laboratory studies.

COLLIER APL 0590

**LIB000136**

**Collier, Vicki**
**October 6, 2019**
**Page 2 of 28**

06-21-12, Kaiser Permanente
Laboratory Report
TESTS: CBC no differential: WBC's auto – Low; TSH; ALT, serum; Creatinine, serum; Electrolyte panel; Glucose, fasting; Lipid panel: Cholesterol – Abnormal; LDL calculated – Abnormal.

07-05-12, Kaiser Permanente
Laboratory Report
TEST: CBC with differential, auto test was performed.

07-17-12, Kaiser Permanente, Alan J. Karpman, M.D.
US of Abdomen, Complete
IMPRESSION: Single hepatic mass.

07-19-12, Kaiser Permanente, Kurtis H. Chin, DPM
Progress Notes
PRESENTING COMPLAINTS: Patient complains of bunion right foot.  Bunion is not painful, but she does not like the looks.  States she has seen Facey podiatrist in the past and was told it was a cyst.  He had aspirated it 2x.  ALLERGIES: NKA.  ASSESSMENT: Hallux valgus with asymp bunion right foot.  PLAN: No surgery to be had, as she is asymptomatic.  Surgery discussed if symptoms increase.

07-27-12, Kaiser Permanente
Laboratory Report
TESTS: Albumin, serum: Albumin – High; Alkaline phosphatase; Alpha-1-fetoprotein, serum; ALT, serum; Amylase, serum; ANA; AST, serum; Bilirubin, total, serum.

08-10-12, Kaiser Permanente, Gina Lin, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presents for evaluation of liver mass found on ultrasound showed hypoechoic mass in right lobe of liver.  Patient reports she was told she had a liver mass 1 cm found on ultrasound 5 years ago at Facey.  Patient asymptomatic.  ASSESSMENT: Liver mass. PLAN: Will check CT abdomen triple phase liver to further characterize liver lesion.

09-15-12, Kaiser Permanente
Laboratory Report
TESTS: BUN, serum; Creatinine, serum tests were performed.

09-29-12, Kaiser Permanente, Christopher Patton, M.D.
US of Pelvis, Transabdominal and Transvaginal, Complete
IMPRESSION: Pelvic ultrasound within normal limits.

10-14-12, Kaiser Permanente, Julie L. Alexander, M.D.
Bilateral Screening Mammogram Report

COLLIER APL 0591

LIB000137

**Collier, Vicki**
**October 6, 2019**
**Page 3 of 28**

IMPRESSION: Negative. There is no mammographic evidence of malignancy. A 1 year screening mammogram is recommended.

10-25-12, Kaiser Permanente, Sandra J. Wilkinson, CNM
Abnormal Bleeding Note
PRESENTING COMPLAINTS: Patient is here for pap and gyn exam. ASSESSMENT: Menorrhagia/MMR/hypermenorrhea. PLAN: Advised of need for endometrial; biopsy. Patient at first agreed, but is unable to do today for personal reasons. Patient states she understands reasons to eliminate hyperplasia and will schedule for endometrial biopsy next week.

10-25-12, Kaiser Permanente
Laboratory Report
TEST: CBC no differential test was performed.

10-25-12, Kaiser Permanente
Laboratory Report
TESTS: Cervical or vaginal Bethesda screen. COMMENT: Atypical squamous cells of undetermined significance.

10-25-12, Kaiser Permanente
Laboratory Report
TEST/RESULT: HPV cotest. COMMENT: Positive for human papilloma virus high/intermediate risk group.

11-08-12, Kaiser Permanente, Odin H. Chan, M.D.
Colposcopy Visit Note
PRESENTING COMPLAINTS: Patient is presented here for Colposcopy visit. IMPRESSION: HPV. PROCEDURE: Colposcopy performed with 4% acetic acid and Schiller's solution. Patient tolerated the procedure well without complications. PLAN: Follow-up pending pathology report.

11-08-12, Kaiser Permanente, Gerald R. Higgins, M.D.
Surgical Pathology Report
FINAL PATHOLOGIC DIAGNOSIS: Endocervical Curettings: Hemorrhagic mucoid material with only very scanty superficial minute endocervical glandular fragments with focal inflammatory reactive change plus squamous epithelial debris of probable ectocervical and/or vaginal origin (no dysplastic squamous epithelium identified).

11-08-12, Kaiser Permanente
Laboratory Report
TEST/RESULT: Pregnancy test, urine, POCT – negative.

01-09-14, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes

COLLIER APL 0592

LIB000138

**Collier, Vicki**
**October 6, 2019**
**Page 4 of 28**

PRESENTING COMPLAINTS: Patient is here for a routine checkup. Periods every 6 months x2 years. ASSESSMENT/PLAN: 1. Routine adult health check up exam. Advised regular exercise and healthy eating. Regular self breast exams advised. 2. Screening for colon cancer. Colonoscopy ordered. 3. Screening. Orders Placed This Encounter: Ordered laboratory studies. Referral GI.

01-13-14, Kaiser Permanente, David L. Robinson, M.D.
X-ray of Bilateral Screening Mammogram Report
IMPRESSION: Negative. There is no mammographic evidence of malignancy. A routine screening mammogram is recommended within 2 years.

02-06-14, Kaiser Permanente, Vijayanti K. Reddy, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient is here for urgent care visit/same day visit with above complaint of 2 weeks of palpitations lasting few seconds, works out with weights daily no association physical exertion, runs 3-4 days a week. ASSESSMENT/PLAN: 1. Palpitations. New job since 7 months denies unusual stress. Advised to watch for triggering factors. 2. Screening for colon cancer. 3. Screening for breast cancer. Orders Placed This Encounter: X-ray mammogram screening bilateral, sequential. Ordered laboratory studies. Prescribed cholecalciferol, vitamin D3, 2000 unit and magnesium oxide 400 mg. Return if not better or condition persists.

02-06-14, Kaiser Permanente
Laboratory Report
TESTS: Glucose, fasting; Lipid panel: Cholesterol – High; LDL calculated – High; CBC no differential; TSH; ALT, serum; Creatinine, serum; Electrolyte panel.

02-11-14, Kaiser Permanente
Laboratory Report
TESTS: Globin, fecal test was performed.

03-24-14, Kaiser Permanente, Vijayanti K. Reddy, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presents with vaginal problem-bumps with liquid. Patient is here for urgent care visit/same day visit with above complaint, itchy clear blisters in vulva after intercourse x months minimal, resolve after bursting, no pain. ASSESSMENT/PLAN: Dyshidrotic eczema. Usually is seen in palms and soles, this is unusual. Orders Placed This Encounter: Herpes simplex virus culture, rapid shell vial. Return if not better or condition persists.

03-24-14, Kaiser Permanente
Laboratory Report
TESTS/RESULT: Herpes simplex virus culture, rapid shell vial. RESULT: Herpes simplex virus isolated in cell culture. Confirmed by fluorescent antigen test.

LIB000139

**Collier, Vicki**
**October 6, 2019**
**Page 5 of 28**

03-24-14, Kaiser Permanente
ECG Report
IMPRESSION: Sinus bradycardia with 1st degree A-V block otherwise normal ECG. No previous ECGs available.

08-29-14, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient is here today because she has had 5-6 months of anxiety. Gets palpitations, having difficult time concentrating at work. Works for AAA and has a stressful job. Also feels like she might have ADHD. Also having neck and low back pain for several months. Patient thinks it's due to the way she sits all day at her job. Also would like to see derm for a spot on her nose that never heals. ASSESSMENT/PLAN: 1. Neck pain. Heat/massage/stretch. 2. Anxiety. Rx for Celexa given. Risks, side effects, alternatives and benefits of the medication reviewed with the patient. Patient told that the beneficial effects of Celexa may take 4-6 wks to take effect. Patient told to not abruptly stop the medication. Patient told that Celexa may at first cause the depression/anxiety to worsen. Patient understands that she has to follow-up with me or with mental health regularly while on this medication. 3. Back pain. 4. Melanocytic nevus. Orders Placed This Encounter: Referral dermatology. Referral physical therapy/occupational therapy. Prescribed citalopram 10 mg.

07-15-15, Kaiser Permanente, Magued Beshay, M.D.
Colonoscopy w/Biopsy Report
INDICATION: The patient here for colorectal cancer screening. IMPRESSION: Colonic polyps. Diverticulosis coli. Hemorrhoids. Screening for colon cancer. RECOMMENDATIONS: Diet modification and avoid offending agents. Follow-up on biopsy report. Repeat exam in 5 years or p.r.n. Post-procedure findings and plain were discussed with the patient. The patient is also to continue regular follow-up and monitoring with primary physician.

01-22-16, Kaiser Permanente, David L. Robinson, M.D.
X-ray of Bilateral Screening Mammogram Report
IMPRESSION: Negative. There is no mammographic evidence of malignancy. A routine screening mammogram is recommended within 2 years.

01-26-16, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient is here for a routine checkup. Right shoulder pain x2 yrs; taking T#3 p.r.n. at night but would like Vicodin instead. Can cortisone shot at Facey 6-8 months with some relief. Right nipple itching x2 yrs. Toenail fungus. Anxiety at work. Wants to see derm. ASSESSMENT/PLAN: 1. Routine adult health check up exam. Advised regular exercise and healthy eating. 2. Screening. Abdomen ultrasound to follow-up on liver lesion. 3. Vaccination for influenza. Colonoscopy done outside Kaiser Permanente in 2015. 4. Right shoulder joint pain. Norco p.r.n. Risks, side effects, alternatives and benefits of the medication reviewed with the patient. 5. Onychomycosis. 6. Anxiety. 7. Melanocytic

COLLIER APL 0594

LIB000140

**Collier, Vicki**
**October 6, 2019**
**Page 6 of 28**

nevus. Pap smear done outside Kaiser Permanente in 2015. Orders Placed This Encounter: X-ray of the right shoulder, 2 or more views. Ultrasound of the abdomen complete. Vaccine influenza, trivalent, split virus, 3 yr to adult, 0.5 ml IM. Ordered laboratory studies. Referral orthopedic and dermatology. Prescribed Ciclopirox 8% top soln, citalopram 10 mg and hydrocodone-acetaminophen 5-325 mg.

02-08-16, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient with a chief complaint of right shoulder pain x2 years. Pain location: Anterolateral. There is moderate pain. Positive night pain. Pain is not improving. Pain worse with reaching and lifting. Relieved with rest. DIAGNOSIS: Right shoulder rotator cuff syndrome. TREATMENT PLAN: Activity modification. Ice. Discussed right shoulder arthroscopy. Right shoulder cortisone injection. Patient gave verbal informed consent after risks and benefits discussed. Area prepped and draped in the usual sterile fashion. Subacromial space located and marked. 5 ml of 1% lidocaine and 1 ml of Kenalog 40 mg/ml injected. Patient tolerated procedure well without complications. RTC p.r.n.

02-08-16, Kaiser Permanente, Jennifer Kim, M.D.
X-ray of Right Shoulder 2 or more views
IMPRESSION: No significant abnormality.

02-20-16, Kaiser Permanente, David L. Robinson, M.D.
US of Abdomen Complete
IMPRESSION: Normal abdominal ultrasound.

04-02-16, Kaiser Permanente, Lamar A. Nelson, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient presents for skin screening exam. She has pimples on face and itchy rash on back. ASSESSMENT: 1. History of basal cell skin cancer. 2. Screening for skin cancer. 3. Acne. 4. Poikiloderma of civatte. 5. Sun damaged skin. 6. Dermatitis. PLAN: Orders Placed This Encounter: Adapalene 0.1% topical cream #45 and triamcinolone acetonide 0.1% topical cream #60.

04-17-16, Kaiser Permanente, Alan D. Jacknow, M.D.
DEXA Bone Density Hip and Spine Report
DEXA DIAGNOSIS: Normal. LOWEST T SCORE: -0.5; REGION: AP Spine L1-L4 and femur neck right. LOWEST Z SCORE: 0; REGION: AP Spine L1-L4.

04-23-16, Kaiser Permanente, Alexander Y. Park, O.D.
Progress Notes
PRESENTING COMPLAINTS: Patient is here for an eye examination. Patient presents with blurred vision. ASSESSMENT: 1. Bilateral dry eye syndrome. 2. Disorder of refraction. PLAN: 1. Recommended artificial tears b.i.d. to t.i.d. OU. 2. Spectacle Rx dispensed. Polycarbonate lenses recommended. Dispensed AVS. RTC in 12-24 months for general eye

LIB000141

**Collier, Vicki**
**October 6, 2019**
**Page 7 of 28**

exam or sooner p.r.n.

06-15-16, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient was taken to Henry Mayo last week b/c she fainted at a restaurant. Was at the dentist for 4 hours that day and given lidocaine. No further episodes of fainting. Occasionally patient will feel like her heart flutters. Lasts for a few seconds. Drinks 1.5 cups of coffee every day. Also will feel like she is wearing a hat on her head even though she isn't. Is in front of a computer for 12 hours day. Positive neck pain. ASSESSMENT/PLAN: 1. Neck pain. Heat/massage/stretch. Patient referral sent. Could be why patient feels abnormal of her head. 2. History of syncope. Likely b/c of lidocaine and being at dentist's office for so long. Labs and EKG at Henry Mayo were neg per patient. 3. Palpitations. Patient declines Holter for now. Decrease caffeine intake. Orders Placed This Encounter: Referral physical therapy/occupational therapy.

08-18-16, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: Patient has noted some pinkish d/c on the underwear, 3 times in the past 1.5 weeks. Some urinary frequency. No period x3 years. Also having right nipple itching x1 year. Not better with steroid creams. ASSESSMENT/PLAN: 1. Postmenopausal bleeding. Referral to gyn done. 2. Dermatitis. Derm referral done. Advised patient not to scratch nipple. Order Placed This Encounter: Ordered laboratory studies. Referral OB-GYN. Referral dermatology.

08-18-16, Kaiser Permanente
Laboratory Report
TEST: Urinalysis, automated without micro: Leukocyte esterase, UA – Abnormal; Urinalysis, microscopic only: WBC's, UA/HPF – Abnormal; Bacterial, urine HPF – Abnormal; Squamous epithelial cells, urine sed, automated count, qual – Abnormal.

08-18-16, Kaiser Permanente
Laboratory Report
TEST: Culture, urine. RESULT: Multiple organisms present, probable contamination. Please repeat the culture if clinically indicated.

08-29-16, Kaiser Permanente, Kosha B. Soneji, M.D.
Outpatient Progress Note
PRESENTING COMPLAINTS: The patient presented with vaginal bleeding. HPI: The patient reported last menstrual period was 12-31-13, who presents with PMP spotting a couple times. Typically occurs after intercourse. Denies cramping, dyspareunia. She has no other gynecologic complaints. ASSESSMENT/PLAN: 1. Postmenopausal bleeding. Note: Will follow-up results of EMB. If EMB WNL, PMB likely secondary to atrophy. Would return if she continues to have spotting over the course of another year for further evaluation. Recommended endometrial biopsy and surgical pathology. 2. Cervical high risk HPV test positive. Note: History of HPV positive. Per patient, had a negative pap/HPV test done last

LIB000142

**Collier, Vicki**
**October 6, 2019**
**Page 8 of 28**

year at Fahey. If this pap/HPV is WNL, would recommend contesting in 5 years. Recommended gyn cytology and HPV cotest screening, age 30-65, high risk types, amplified probe.

08-29-16, Kaiser Permanente, Andrea D. Chang, M.D.
Surgical Pathology Report
FINAL PATHOLOGIC DIAGNOSIS: Endometrium, Biopsy: Scanty superficial strips of benign endometrial glands and stroma. Fragments of benign exo an endocervix.

08-29-16, Kaiser Permanente, Harout Yaghsezian, M.D.
Gyn Cytology Report
FINAL CYTOLOGIC INTERPRETATION: Cervix, Liquid Based Pap Test: Negative for intraepithelial lesion or malignancy.

08-29-16, Kaiser Permanente
Laboratory Report
TEST: HPV cotest screening age 30-65, high risk types, amplified probe test was performed.

09-27-16, Kaiser Permanente, Kari K. Scott, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: Patient presents with back pain neck pain x1 week. Acute upon chronic (2-3 years) back pain x1 week. Started when turned neck to the right while in Mexico, left side of neck pulled and started to hurt. Tried chiropractic, ice and Advil (200 mg) – no lasting help. Has phone appointment with Dr. Wang in 2 days. Wants Vicodin and MRI. Has right arm symptoms, but also has had right shoulder pain in the past. No prior history of MVA/back injury. No history of MRI or CT, but recalls an x-ray looking for a leg length issue. No missed work. Pain level of 8-10. Has had steroids as well – for hearing loss and for shoulder pain/arm pain in past – no side effects. Can't take muscle relaxants due to excess prolonged sedation. PAST MEDICAL HISTORY: Menorrhagia, low back pain and shoulder pain. ASSESSMENT/PLAN: Right neck pain with possible cervical radiculopathy – apparently recurrent per patient. Discussed with patient. Will give pred pack and tramadol. To follow-up with primary care provider call this week. Consider physical med referral if not improving or if patient desires MRI. RTC p.r.n. Declines work note.

09-29-16, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS: The patient presented here for TAV of neck pain. Patient was seen in UCC 2 days ago for cervical radiculopathy x1.5 wks. Given prednisone and tramadol with some relief. Would like MRI of her neck. ASSESSMENT: Cervical radiculopathy. PLAN: Continue with current meds. Physical medicine referral done.

10-05-16, Kaiser Permanente, Dilipkumar H. Shah, M.D.
Progress Notes

COLLIER APL 0597

LIB000143

**Collier, Vicki**
**October 6, 2019**
**Page 9 of 28**

PRESENTING COMPLAINTS/HISTORY: Patient complaining of neck pain and pain in right upper back area. ASSESSMENT: Cervical radiculopathy. PLAN: Condition was explained to patient. MRI of c-spine ordered. Discussed neck care program and advised to avoid/limit any aggravating activities. Discussed posture awareness and use of contour pillow etc. Discussed use of local heat and also stretching exercises. Prescription given for Meloxicam and Flexeril. Referral sent to physical therapy. Advised to avoid any aggravating activities. Follow-up after MRI.

10-10-16, Saeed Yadegar, M.D.
MRI of the Cervical Spine, no contrast
CONCLUSION: 1. There is straightening of normal lordotic curvature, usually secondary to muscular spasm. 2. There is a 1 mm broad-based posterior disk bulge at C3-C4 level indenting the anterior aspect of the thecal sac. 3. There is a 2 mm central posterior disk protrusion at C4-C5 level causing pressure over the anterior aspect of the thecal sac. 4. There is a 2 mm broad-based posterior disk/endplate osteophyte complex at C5-C6 level causing pressure over the anterior aspect of the thecal sac. 5. There is a 2 mm broad-based posterior disk protrusion at C6-C7 level causing pressure over the anterior aspect of the thecal sac. There is mild narrowing of the left neural foramen and moderately significant narrowing of the right neural foramen.

10-11-16, Kaiser Permanente, Colleen D. Bogdanich, N.P.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: Patient presents with eye problem. Excessive tearing. History of wearing contacts. Was recently in Mexico was in water. Fell asleep with the contacts in a few times. Blurred or double vision. Has not been wearing them for a few days. ASSESSMENT/PLAN: 1. Bilateral dry eye syndrome. 2. Bilateral epiphora. Plan: Case discussed with Dr. Rosen. Get rid of contacts. Drops for one week. If the patient is worse or not improving RTC. She can contact me and I will place referral. Patient agrees with plan of care and verbalizes understanding. Orders Placed This Encounter: Carboxymethyl-gyl-poly 80-PF 0.5-1-0.2% opht dropperette and gatifloxacin 0.5% opht drop.

10-14-16, Kaiser Permanente, Irina Chernishof, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: Patient presents to clinic for possible left lower extremity infection. Patient states having had acupuncture for her back and also having a needle on her thigh next to a heat lamp. She noticed the area becoming inflamed and raised with a blister forming. In the next several days she noticed that there was purulent discharge and increase redness of the area. ASSESSMENT/PLAN: 1. Skin infection. 2. Left lower leg blister. 3. Back pain. Skin infection post blister from acupuncture. No systemic signs and symptoms of infection. Current infection of lower left extremity; trial course of antibiotics. ER precautions provided. Patient further advised to mark borders of redness to ensure healing and be able to noticed change. Patient was educated on the nature of diagnosis and symptoms. Relevant educational materials were provided during the clinic visit. Patient was also informed regarding possible future symptoms which may be considered alarming and in need of medical attention. Orders Placed This Encounter:

COLLIER APL 0598

LIB000144

**Collier, Vicki**
**October 6, 2019**
**Page 10 of 28**

Prescribed cephalexin 500 mg.

10-19-16, Kaiser Permanente, Kristen M. Yanez, PT
Physical Therapy Evaluation Report
PRESENTING COMPLAINTS: The patient complained of sharp pain to cervical spine rated at 8/10 with numbness and intermittently down to right arm into hand. Patient reported pain began more than one month ago insidious in onset. Patient denies any injury or trauma. Since of symptoms pain is unresolved. Scheduled for epidural November 1st. REFERRAL DIAGNOSIS: Cervical radiculopathy. PLAN: Recommended physical therapy treatment 1x/wk for 3 wks including manual therapy, therex, neuromuscular re-ed, functional training, gait training patient education and instruction in HEP, as well as modalities p.r.n.

10-25-16, Kaiser Permanente, Eric L. Mendoza, PT
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported feeling much better in cervical spine region since last CTX treatment and yoga classes she's been doing. REFERRAL DIAGNOSIS: Cervical radiculopathy. PLAN: Continue therapy treatment per plan of care.

10-26-16, Kaiser Permanente, Ronald M. Rosen, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient presents with follow-up exam dry eyes. Patient is complaining of watering, blister inner corner OD, for duration of 6 weeks which occurs always. Patient here for conjunctional cyst nasally OD. I have reviewed the information contained in the nursing notes as well as in health connect. IMPRESSION: Right sub-conjunctival cyst. PLAN: Artificial tears and trial of FML.

10-28-16, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported no change, going for epidural next week. Still with right hand numbness and pain triceps and scapular area, sharp. REFERRAL DIAGNOSIS: Cervical radiculopathy. PLAN: Continue with CTX trial.

11-04-16, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported doing better, did well with last visit, has postponed epidural. Occasionally with shoulder blade pain now, hand goes numb but not as often. REFERRAL DIAGNOSIS: Cervical radiculopathy. PLAN: Continue with CTX trial.

12-12-16, Kaiser Permanente, Kristen M. Yanez, PT
Physical Therapy Discharge Summary Notes
PRESENTING COMPLAINTS: Status at time of discharge is unknown as patient failed to follow-up with therapy treatment. PLAN: Patient discharged from therapy treatment.

12-15-16, Kaiser Permanente, Catherine C. Close, M.D.

COLLIER APL 0599

**LIB000145**

**Collier, Vicki**
**October 6, 2019**
**Page 11 of 28**

Progress Notes
PRESENTING COMPLAINTS/HPI: Patient presents with two pinpoint pearly papules on nose – present for a month or so. No prior treatment. One on right side has bleed in the past. Also with itchy skin on right nipple – present for years. On and off. Used a prescription cream (cannot remember name) for a few months with no relief. Mammograms are normal and up to date. Yes past history of skin cancer basal cell carcinoma on chest. ASSESSMENT/PLAN: 1. Eczema. Note: Pink eczematous plaque on right nipple. Dx: Nipple eczema. Use hypoallergenic detergent to wash bras. Use only all cotton bras or cotton linear. Plan: Betamethasone, augmented 0.05% top cream b.i.d. x2-3 weeks, then stop d/c all scratching or rubbing. Use ice to relieve itch. 2. Basal cell carcinoma, face. Note: Two pin point pearly papules on nose, right and left side and on mid chest. Dx: Lesion consistent with early BCCs. Discussed treatment options. Patient opted for Aldara. Plan: Imiquimod 5% top CRPK M-F x2-8 weeks. Discussed expected reaction. RTC in 2-3 weeks for skin check or sooner.

01-17-17, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient presents with bilateral shoulder pain x3-4 weeks. Saw ortho last year for it and cortisone shot helped for almost a year. Wants some Norco. Says Motrin not helping enough. Also having a headache x2 years. Feels like there is a helmet on her head. No visual changes, nausea or balance problems. Worried about a tumor. Gets palpitations very occasionally. Drinks 1.5 cups of caffeine daily. No chest pain or shortness of breath with exertion. No palpitations with exertion. Yoga currently helping with neck pain. Hasn't needed epidural. ASSESSMENT/PLAN: 1. Headache. Neuro referral sent. 2. Bilateral shoulder joint pain. To ortho given. Norco only p.r.n. Risks, side effects, alternatives and benefits of the medication reviewed with the patient. 3. Palpitations. Advised patient to decrease caffeine intake. EKG ordered. Patient declines Holter. 4. Screening. Ordered Placed This Encounter: Ordered laboratory studies. Referral neurology. ECG, 12 lead, back office now. Prescribed Norco 5-325 mg.

01-17-17, Kaiser Permanente
ECG Report
RESULT: Sinus bradycardia with 1st degree A-V block. When compared with ECG of 03-24-14. No significant change was found.

01-17-17, Kaiser Permanente
Laboratory Report
TEST: CBC no differential; TSH; ALT; Creatinine; Electrolyte panel; Hemoglobin A1c, screening or prediabetic monitoring; Lipid panel: Cholesterol – High; LDL – High; Triglyceride, nonfasting – High.

02-16-17, Kaiser Permanente, Sonu M. Brara, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: Patient has been having pain in the feels like is wearing a helmet, all the time. Also has left side neck spasm. Has a vice like sensation on

COLLIER APL 0600

**LIB000146**

**Collier, Vicki**
**October 6, 2019**
**Page 12 of 28**

her scalp. Pressure sensation. Has back pain. Also has right arm pain. Seen PMR and ortho for that. ALLERGIES: NKA. ASSESSMENT/PLAN: Tension headache. Note: Patient with tension headaches, also has neck spasm which could be contributing to the headaches. Will give trial of muscle relaxant and gabapentin. Side effects drowsiness. Plan: Prescribed gabapentin 100 mg and cyclobenzaprine 5 mg.

02-16-17, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient complained of moderate increasing right shoulder pain x2 months. The cortisone injection helped for several months. IMPRESSION: Right shoulder rotator cuff syndrome. PLAN: Administered right shoulder cortisone injection. Provided ice pack. Recommended activity modification. RTC p.r.n. PROCEDURE: Patient gave verbal informed consent after risks and benefits discussed. Area prepped and draped in the usual sterile fashion. Subacromial space located and marked. 5 ml of 1% lidocaine and 1 ml of Kenalog 40 mg/mL injected. Patient tolerated procedure well without complications.

04-03-17, Kaiser Permanente, Michael V. Tran, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presented with irregular heart beat this morning approximately 4 a.m. and lasting until about 6 am. ASSESSMENT: Palpitations. Note: Benign, reassurance. Event holter ordered. PLAN: Ordered ECG. Referral cardiology. RTC if no change or worse.

04-03-17, Kaiser Permanente
ECG Report
RESULT: Sinus bradycardia with 1st degree A-V block. Otherwise normal ECG. When compared with ECG of 01-17-17. No significant change was found.

05-03-17, Kaiser Permanente
ECG Wearable Monitor Test Report
CONCLUSION: 1. Benign event monitor. Predominant rhythm was normal sinus rhythm and 1st degree AV block with average heart rate of 73 bpm, range 44-168. 2. Rare isolated ventricular and supraventricular ectopic beats occurring less than 1% of the time. No sustained arrhythmias observed. 3. Patient reported heart fluttering and several triggered events which were predominantly associated with normal sinus rhythm.

06-09-17, Kaiser permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient complained of bilateral lower leg pain x1 month. No swelling/injury. Still having neck pain. Think headaches are because of neck pain. Never went to pain management for epidural because was hesitant. Still having right shoulder pain. Needs letter for work written to get ergonomic workspace. Neuro wrote letter but her work (AAA) says it need to be more specific. Also having ringing in the ears for years but getting worse. Normal hearing. ASSESSMENT/PLAN: 1. Bilateral subjective tinnitus.

COLLIER APL 0601

LIB000147

**Collier, Vicki**
**October 6, 2019**
**Page 13 of 28**

Audiology referral done.  2. Cervical radiculopathy.  Referral to pain management resent.  3. Bilateral leg pain.  Voltaren gel given to use p.r.n.

06-10-17, Kaiser Permanente
Laboratory Report
TESTS: Tissue exam.  DIAGNOSIS/COMMENT: Hyperplastic polyp.  No evidence of dysplasia or malignancy.

06-30-17, Kaiser Permanente, Martine D, Parekh, AuD.
Progress Notes
PRESENTING COMPLAINTS: Patient is here for audiological evaluation with history of bilateral sudden hearing loss.  Patient stated that in 2007 she experienced sudden hearing loss in both ears and her hearing was restored as a result of a steroid injection.  Patient reported that a couple of years later she experienced that same thing and again a steroid injection restored her hearing.  Patient complains today of bilateral tinnitus and some dizziness.  She stated that the dizziness began a few days ago.  Family history of hearing loss includes her mother.  IMPRESSION: Bilateral ultra high hearing loss.  PLAN: Results discussed with patient.  Follow-up with PCP.  Audio re-test in 2-3 years.

06-30-17, Kaiser Permanente, Harrison Kibe, M.D.
Procedure Report
PRE-OPERATIVE DIAGNOSIS: 1. Cervical radiculopathy.  2. Cervical spinal stenosis.  3. Cervical degenerative disc disease.  POST-OPERATIVE DIAGNOSIS: 1. Cervical radiculopathy.  2. Cervical spinal stenosis.  3. Cervical degenerative disc disease.  PROCEDURE TITLE: 1. C7-T1 interlaminar cervical epidural steroid injection (right paramedian).  2. Intraoperative fluoroscopy.

06-30-17, Kaiser Permanente, Payman Moin, M.D.
MRI of the Right Shoulder, no contrast
IMPRESSION: 1. 9 mm AP approximately 50% partial-thickness articular surface supraspinatus tendon tear on a background of moderate tendinosis.  2. Infraspinatus and superior fiber subscapularis mild tendinosis.  3. Proximal long head of biceps mild tendinosis.  4. Minimal subacromial subdeltoid bursitis.  5. Acromioclavicular joint osteoarthrosis.

07-10-17, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: The patient presented here for TAV of diagnostic imaging results.  ASSESSMENT: Nontraumatic partial right rotator cuff tear.  PLAN: Surgical case requested right shoulder arthroscopy, rotator cuff repair.  The risks, benefits and alternatives of the proposed surgery were discussed with the patient, including the option of further non-operative treatment.  She understands the risks of surgery and she is willing to proceed.  Prescribed Norco 5-325 mg.

07-19-17, Kaiser Permanente, Sylvia R. Hanna, D.O.

COLLIER APL 0602

LIB000148

**Collier, Vicki**
**October 6, 2019**
**Page 14 of 28**

Progress Notes
PRESENTING COMPLAINTS: Patient presented here for black mold testing. Her employer has confirmed black mold growing inside the walls. She complained of HA, nasal congestion, and head heaviness. While away on vacation, she did not have these symptoms, but they presented again when she returned to work. States a few coworkers had testing done here with Kaiser - some tests were positive and they are being treated. Concerned for her safety - requesting same labs as coworkers had. ASSESSMENT: Exposure to mold. DISCUSSION/PLAN: To my knowledge, there is no specific testing here done for black mold. Will check with immunology/allergy. Also asked patient to find out specific tests her coworkers had done. Will await email from patient.

07-20-17, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient complained of moderate right shoulder pain located at anterolateral x3 years. She experiences pain at night. Pain is not improving. The symptoms are exacerbated by reaching and lifting and are lessened by rest. PAST MEDICAL HISTORY: Menorrhagia. Right conjunctival cyst. PAST SUGICAL HISTORY: Tonsillectomy. Breast augmentation bilateral. Repair of umbilical hernia. ALLERGIES: NKA. DIAGNOSIS: Right shoulder partial rotator cuff tear. TREATMENT: Right shoulder arthroscopy, rotator cuff repair. The risks, benefits and alternatives of the proposed surgery were discussed with the patient. Vicki's questions were answered in depth and she is willing to proceed. The informed surgical consent indicating full understanding of the issues described above was signed during the pre-operative visit by Vicki.

07-26-17, Kaiser Permanente, Sovanrith Tun, M.D.
Operative Report
PREOPERATIVE DIAGNOSIS: Right shoulder partial rotator cuff tear. POSTOPERATIVE DIAGNOSIS: 1. Right shoulder partial rotator cuff tear, subscapularis tendon. 2. Partial intratendinous supraspinatus tendon tear. OPERATION PERFORMED: 1. Right shoulder arthroscopic rotator cuff repair. 2. Subacromial decompression.

07-31-17, Kaiser Permanente, Susan M. Bemis, PT
Physical Therapy Evaluation Report
PRESENTING COMPLAINTS: The patient reported that she had status post shoulder surgery on 08-26-17, complained of pain in right shoulder described as sharp and stabbing, rated at 5/10. Patient is in lot of pain today – did not take pain meds, she was crying with evaluation. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Recommended physical therapy treatment 2x/wk for 12 wks including manual therapy, therex, neuromuscular re-ed and pain modalities.

08-02-17, Kaiser Permanente, Lori A. Robinson, PT
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that she had less pain on right shoulder, not needing pain meds. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

COLLIER APL 0603

LIB000149

**Collier, Vicki**
**October 6, 2019**
**Page 15 of 28**

08-08-17, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient reported that she had right shoulder partial rotator cuff tear repair, subscapularis tendon and partial intratendinous supraspinatus tendon tear on 07-25-17. She presented here today for follow-up of mild right shoulder pain. She is going to physical therapy. DIAGNOSIS: 1. Orthopedic aftercare. 2. Nontraumatic partial right rotator cuff tear. IMPRESSION/PLAN: Doing well. Prescribed Norco. Provided sling. Recommended physical therapy treatment. RTC in 2 months.

08-09-17, Kaiser Permanente, Jessica L. Mena, PT
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that she had less pain on right shoulder, not needing pain meds. She is doing home exercise program daily. She states she is able to lift arm when on her back-recommended to avoid doing this. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

08-11-17, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that no real right shoulder pain. She has some nerve pain at lower arm to thumb when let's arm hang. She has some shoulder stiffness. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

08-15-17, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that she is sleeping well, really no pain. Pain pill 1-1.5 if needed after exercises. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

08-17-17, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that she has some right elbow pain now and also inner forearm numbness continues. Being careful not to actively use right UE. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

08-23-17, Kaiser Permanente, Susan M. Bemis, PT
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient may take off sling this coming Sunday – worried, work wants her to come back with restrictions. Being careful not to actively use right UE. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

LIB000150

**Collier, Vicki**
**October 6, 2019**
**Page 16 of 28**

08-31-17, Kaiser Permanente, Eric L. Mendoza, PT
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient complained of pain in lateral aspect of the right shoulder rated at 5/10. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

09-06-17, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient complained of pain at right posterior shoulder/scapular area and radiated to front of shoulder throbbing pain, notices especially at night. Taking Norco at night and 1 during the day. Daughter massaged scapular area and helped. Pain goes up to the neck. Sleep disturbed 2x/night. Elbow and triceps stiff. Pain rated at 7-8/10. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

09-13-17, Kaiser Permanente, Susan M. Bemis, PT
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that she is doing well, still does not have full shoulder range of motion. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

09-20-17, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported right neck and upper arm, triceps pain. She is being careful with right upper extremities activities. She takes Norco p.r.n. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

09-28-17, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient reported that she had right shoulder partial rotator cuff tear repair, subscapularis tendon and partial intratendinous supraspinatus tendon tear on 07-25-17. She presented here today for follow-up of mild right shoulder pain. She is going to physical therapy. IMPRESSION/PLAN: Doing well. Recommended physical therapy treatment. Increase activities as tolerated. RTC p.r.n.

09-28-17, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that she is doing exercises, right shoulder blade and neck sore. Shooting pain in middle and index finger and numbness at right anterior forearm area. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

10-12-17, Kaiser Permanente, Melani Rude, PTA
Physical Therapy Progress Report

**LIB000151**

**Collier, Vicki**
**October 6, 2019**
**Page 17 of 28**

PRESENTING COMPLAINTS: The patient reported that still painful at night but overall doing better with motion and strength. She is using bands, weights for biceps. Able to lie on right side at night a little now. REFERRAL DIAGNOSIS: Right shoulder rotator cuff repair on 07-26-17. PLAN: Continue therapy treatment per plan of care.

11-22-17, Kaiser Permanente, Susan M. Bemis, PT
Physical Therapy Discharge Summary Report
PRESENTING COMPLAINTS: Status at time of discharge is unknown as patient failed to follow-up with therapy treatment. PLAN: Patient discharged from therapy.

11-30-17, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient reported that she had right shoulder partial rotator cuff tear repair, subscapularis tendon and partial intratendinous supraspinatus tendon tear on 07-25-17. She presented here today for follow-up of having increased right shoulder pain. She is working long hours again. IMPRESSION/PLAN: Doing well. Recommended physical therapy treatment. Increase activity as tolerated. Administered cortisone injection. PROCEDURE: Patient gave verbal informed consent after risks and benefits discussed. Area prepped and draped in the usual sterile fashion. Subacromial space located and marked. 5 ml of 1% lidocaine and 1 ml of Kenalog 40 mg/mL injected. Patient tolerated procedure well without complications. RTC p.r.n.

12-10-17, Kaiser Permanente, David L. Robinson, M.D.
US of Pelvis, Transabdominal and Transvaginal Non OB Complete
IMPRESSION: Pelvic ultrasound exam within normal limits.

12-10-17, Kaiser Permanente, Eliho A. Pakravan, M.D.
Bilateral Screening Mammogram Report
IMPRESSION: Benign. There is no mammographic evidence of malignancy. A routine screening mammogram is recommended within 2 years.

12-12-17, Kaiser Permanente, Jarrett G. Williams, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presented with bug bite. She noticed today mild pain on the left elbow. With small mass that has become larger through the day. ALLERGIES: NKA. ASSESSMENT: Cellulitis. PLAN: Prescribed Keflex 500 mg #40. MEDICAL DECISION MAKING: Patient clinically stable. Problem/medication lists reviewed and non-pharmacologic measures discussed. Discussed management of above diagnosis. Return if symptoms worsen or fail to improve in expected time frame. DISPOSITION TO: Home.

12-27-17, Kaiser Permanente, Colleen D. Bogdanich, DNP
Progress Notes
PRESENTING COMPLAINTS: The patient presented with blood in stool - bright red bloody mucus last night and this a.m. Patient with history of feeling stomach cramps and then bloody diarrhea last night. Was at worked. Laid on the floor felt weak and that she could

LIB000152

**Collier, Vicki**
**October 6, 2019**
**Page 18 of 28**

pass out thinks she may have for a short while. Intermittent discomfort on the left lower abdomen x2 months. This am was not cramped. It was mucous with a hint of blood. After that it a mushy bowel movement there was blood not weak or sweaty like yesterday. Did eat this am. Last night had broth. Seemed to tolerate it. She had toppers salad and a pizza at 130 symptoms about 530. Antibiotics a few weeks ago. ASSESSMENT: Rectal bleeding. PLAN: Ordered lab studies and measure orthostatic vital signs. If she worse RTC. Will check stool cultures. See patient ED information. Call or return to clinic p.r.n. if these symptoms worsen or fail to improve as anticipated. Patient agrees with plan of care and verbalizes understanding.

12-27-17, Kaiser Permanente
Laboratory Report
TEST: CBC with automated differential; Alkaline phosphatase; Bilirubin, direct – High; Bilirubin, total; AST; ALT; Creatinine; Electrolyte panel: Anion gap (NA-(CL+CO2) – Low; Glucose; Lipid panel: Cholesterol – High; LDL – High; INR; BUN; WBC automated differential.

12-29-17, Kaiser Permanente
Laboratory Report
TEST/RESULT: Stool culture. COMMENT: No salmonella, shigella, campylobacter jejuni or campylobacter spp, isolated. Stool WBC. COMMENT: No white blood cells seen.

01-18-18, Kaiser Permanente, Gina Lin, M.D.
Progress Notes
PRESENTING COMPLAINTS: The patient presented here for consultation for recent blood in stool. She had a colonoscopy done outside of Kaiser in 2015. Colonoscopy has been ordered for her but patient requesting to talk to GI before proceeding with the procedure. She had an episode of severe LUQ pain, followed by diarrhea which helped relieve the pain, lasted about 45 mints brief syncopal episode and then symptoms subsided. Then she noticed mucous, tint of blood on paper the day after. She has had mild LLQ discomfort for past three months. The patient has been constipated since July-since taking Norco for shoulder pain. Noticed blood when she strained. Patient reported increased discomfort with constipation. ASSESSMENT: 1. LLQ abdominal pain, possibly related to constipation, less likely diverticulitis. 2. Rectal bleeding, possibly due to internal hemorrhoids. Will check CT scan abdomen/pelvis first. Can take stool softeners or MiraLax p.r.n. Follow-up afterwards-discussed possibly scheduling flex sig (since patient had recent colonoscopy in 2015).

01-25-18, Kaiser Permanente, Esther C. Wang - O'Connell, M.D.
Progress Notes
PRESENTING COMPLAINTS: The patient is here today to discuss her cholesterol result. Does not want to start statin. Has always had high cholesterol and has a healthy lifestyle. Also has a small bump on the left forearm. Treatment with antibiotics a few months ago and it is now smaller. Doesn't really bother.

LIB000153

**Collier, Vicki**
**October 6, 2019**
**Page 19 of 28**

01-25-18, Kaiser Permanente
Laboratory Report
TESTS: Urinalysis, automated: Specific gravity, UA – Low; Leukocyte esterase, UA – Abnormal; Urinalysis, microscopy – WBC's, UA/HPF – Abnormal; Bacteria, urine HPF – Abnormal; Squamous epithelial cells, urine sed, automated count, qual – Abnormal.

01-25-18, Kaiser Permanente
Laboratory Report
TEST/RESULT: Urine culture.  FINAL RESULT: Less than 1000 CFU/mL (no growth).

02-01-18, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient reported that she had right shoulder partial rotator cuff tear repair, subscapularis tendon and partial intratendinous supraspinatus tendon tear on 07-25-17.  She presented here today for follow-up of having increased right shoulder pain at anterior chest, lateral deltoid, elbow and forearm. DIAGNOSIS: Right shoulder interstitial partial tear.  PLAN: Recommended physical therapy treatment.  Increased activities as tolerated.  Discussed repeat shoulder arthroscopy.  RTC p.r.n.

03-08-18, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient reported that she had right shoulder partial rotator cuff tear repair, subscapularis tendon and partial intratendinous supraspinatus tendon tear on 07-25-17.  She presented here today for follow-up of moderate left shoulder pain for 3 months.  Pain located at lateral deltoid aspects.  Pain is not improving and worse with reaching and lifting and relieved with rest. DIAGNOSIS: Left shoulder rotator cuff syndrome.  PLAN: Provided ice.  Prescribed meloxicam 15 mg.  Discussed left shoulder arthroscopy and left shoulder cortisone injection.  RTC p.r.n. PROCEDURE: Patient gave verbal informed consent after risks and benefits discussed.  Area prepped and draped in the usual sterile fashion.  Subacromial space located and marked.  5 ml of 1% lidocaine and 1 ml of Kenalog 40 mg/ml injected.  Patient tolerated procedure well without complications.

03-23-18, Kaiser Permanente, Sonu M. Brara, M.D.
Progress Notes
PRESENTING COMPLAINTS: The patient presented here for follow-up of headaches and having pain in the neck and ringing in ears.  She feels like is wearing a helmet, all the time and also has left side neck spasm.  She has a vice like constant pressure sensation on her scalp.  She also has back pain and right arm pain.  She was seen PMR and ortho for that.  She stopped taking gabapentin after shoulder surgery. ASSESSMENT/PLAN: Tension headaches.  Also has neck spasm which could be contributing to the headaches.  Etiology cervico myofascial vs tension, daily headaches.  Restart gabapentin.  Ordered MRI of the brain.  Trial of Botox.

LIB000154

**Collier, Vicki**
**October 6, 2019**
**Page 20 of 28**

03-27-18, Kaiser Permanente, Shahram Gharibshahi, M.D.
Neurology Follow-Up Visit Notes
PRESENTING COMPLAINTS: The patient complained of chronic migraine headaches daily. She also complained of lots of tension on the shoulders.  ASSESSMENT/PLAN: Chronic daily headache.  Obtained signed consent form.  Administered Botox 100 unit injection.  RTC in 3 months.

03-27-18, Kaiser Permanente
Laboratory Report
TEST: Globin, fecal test was performed.

04-10-18, Kaiser Permanente, Joy M. Nelson, PT
Physical Therapy Evaluation Report
PRESENTING COMPLAINTS: The patient complained of pain at multiple sites of upper quadrant at bilateral shoulders, neck and head.  Onset all the pain c/os x about 2 years old, except left shoulder 2/18 onset - insidiously.  Tired of the pain.  Had right shoulder surgery last year - here in physical therapy until about 10/17 - surgeon has offered her right shoulder surgery again but patient wants to avoid that.  Pain level: At rest feels discomfort at bilateral shoulders - points to deltoids, right elbow and back of head.  7-8/10 at rest at visit (combined sites) 10/10 at night when awakens her mid night like last night.  Pain Description: Pounding pain at shoulders, shoulder, neck and back - headaches, tension, blades, back of head - Feels like heavy helmet on top of head, tender at back of neck/head, left side near ear.  Ringing in ears.  REFERRAL DIAGNOSIS: Bilateral rotator cuff syndrome. PLAN: Recommended physical therapy treatment.

04-17-18, Kaiser Permanente
Laboratory Report
TEST: Throat screening culture.  RESULT: No group A beta streptococci isolated.

04-17-18, Kaiser Permanente, Jarrett G. Williams, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: The patient presented with sore throat since Friday.  She stated that she experienced bad sore throat with positive swollen lymph nodes, fevers, body aches and cough.  Cough is clear with some green.  Positive hear and ear pressure.  She has taken some over the counter meds like elderberry, Advil, throat spray and Lozenges.  ASSESSMENT/PLAN: Cough – negative rapid strep.  Ordered lab studies. Prescribed Proair/Proventil/Ventolin 90 mg, Zithromax 250 mg and mouthwash diphenhydramine-lidocaine viscous-Maalox oral suspension.  Follow-up p.r.n. if symptoms do not improve or worsen.

04-25-18, Kaiser Permanente, Joy M. Nelson, PT
Physical Therapy Progress Report
PRESENTING COMPLAINTS: The patient reported that Botox injections at left neck, upper trap region helped some but plateau effect from it.  Bilateral shoulders really bothering her,

COLLIER APL 0609

**LIB000155**

**Collier, Vicki**
**October 6, 2019**
**Page 21 of 28**

pounding pain at shoulders even at rest. She experienced stretch pulling pain at right under arm region when doing self pressure massage at right elbow for tennis elbow problem. Gets upper back complaints and tingling at bilateral hands to down to shoulders, left greater than right frequently but doesn't seem related to neck position. Does feel tight, stuck at neck for turning, looking up. Also has tingling at legs, feet sometimes when at work. Had ergo assessment - to have corrections made. Going to gym and doing light workouts now and then - avoiding machines/overhead stuff per ortho. Knot sensation at left side of neck/head. Doing her home exercise program; just wants to make sure shoulders don't get frozen. Cortisone injection at shoulder didn't help last time. REFERRAL DIAGNOSIS: Bilateral rotator cuff syndrome. PLAN: Continue therapy treatment per plan of care including HEP and follow-up for recheck in next 2-3 weeks.

05-10-18, Kaiser Permanente, Patrick A. Dimartini, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: The patient complains of tinnitus. She has history of this but got worse over the last week. No known change in hearing. Works in insurance and not having any noise pollution. Had URI a month ago. She stated that she still has occasional dry cough. Doesn't take ASA. ASSESSMENT/PLAN: Bilateral subjective tinnitus, worsening. Questionable if due to worsening hearing or perhaps ET plugging. Try Sudafed and Flonase daily. Referral audiology to compare to last year.

05-14-18, Kaiser Permanente, Sovanrith Tun, M.D.
Progress Notes
PRESENTING COMPLAINTS: The patient reported that she had right shoulder partial rotator cuff tear repair, subscapularis tendon and partial intratendinous supraspinatus tendon tear on 07-25-17. She presented here today for a follow-up of persistent moderate pain in bilateral shoulders. Previously, she had left shoulder cortisone injection which helped her and also had Botox injections, Norco and Meloxicam. She is still working on an ergonomic workstation. IMPRESSION/PLAN: Bilateral shoulder rotator cuff syndrome. Prescribed Norco and Meloxicam. Will be stopping her current job. Activity modification. RTC p.r.n.

05-29-18, Kaiser Permanente, Joy M. Nelson, PT
Physical Therapy Discharge Summary Report
PRESENTING COMPLAINTS: Status at time of discharge is unknown as patient failed to follow-up with therapy treatment. PLAN: Patient discharged from therapy.

10-11-18, Ripu Arora, M.D.
Panel Qualified Medical Evaluation In Pain Management Report
PRESENTING COMPLAINTS: She is complaining of: 1. Neck pain and gets headache, which has gone since the Botox injections. 2. Lower back pain. Recently she claimed that the pain is worse when driving and sitting, especially on her buttocks area, and she also felt that the pain was worse when she was driving to San Luis Obispo three to four hours or having a flight to Chicago for four hours. 3. Hemorrhoids, which are healed. Pain in the different areas of head, neck and buttocks is 6-7/10 and sometimes reaches 10/10 on the VAS. It is

LIB000156

**Collier, Vicki**
**October 6, 2019**
**Page 22 of 28**

in the form of achiness and stabbing pain in the upper arms and her lower back pain going towards the buttocks and in the posterior lower extremities and the feet in the form of achiness, numbness and pins and needles. Her pain feels like a pressure-like tightness, sometimes sharp stabbing. She has a pain that is aggravated on twisting, looking up, reaching or sitting. JOB DESCRIPTION: She works as a sales agent and she was hired in AAA Auto Club in June of 2013 and last worked on 05-15-18. Her job included obtaining sales goal, process application services to existing clients, obtaining membership goal, service personal customers, and 99% of her work was on the computer, receiving phone calls, cradling the phone on her left shoulder. She was working on a commission and her job sometimes included reaching, bending and twisting. Previous employment, from 2007 to 2018, she worked in Farmers Insurance, and from 2012 to 2013, she worked in Cumbre Insurance as independent contractor. She denies any history of injury at previous employment. HISTORY OF INJURY: As I am examining the examinee today, there have been no medical records available to me and the history is taken purely from the examinee. Apparently, on 07-25-17, she had a right shoulder surgery, rotator cuff repair, and she was working since 11-01-17 after the repair of the rotator cuff. However, on 11-30-17, she started getting pain on the right shoulder and she went to see her orthopedic surgeon, who gave her a cortisone injection, which helped her. She says that she was visiting Mexico in 2016 and at that time she had some neck pain radiating to her left shoulder and left arm to the middle finger and she came back to see the Kaiser physician who examined her with an MRI and diagnosed her with a cervical C5-6 disc herniation and she was treated with a cervical epidural injection. On 02-16-17, she was seen by a neurologist at Kaiser due to the right-sided shoulder pain and advised to have an ergonomic seat and furniture in the office where she was working, but she was not provided one. So, apparently in October 2017, she saw Dr. Tun, orthopedics, for her right shoulder pain, who again recommended the ergonomic furniture. Her claim is pain in her neck, shoulder, and lower extremities, hemorrhoids internal and external, headaches, forearm, elbows, and shoulder blade pain and upper back pain because of the lack of the ergonomic furniture provided to her at the work location. She says that she was seeking medical attention at that time but did not realize it was work related until she was advised that she should seek this as a part of the work related injuries. In January or February of 2018, she had bleeding hemorrhoids and she fainted twice, once in a restaurant and once at work. She was advised to have a colonoscopy but she refused to have one in 2018 because she said she had one in three/four years prior to that and she was told that she has diverticulosis and that it is normal. She was getting treatment in Kaiser for neck injury and pain in the right shoulder. She apparently had right shoulder steroid injection three times, which is not helping, and she also had cervical epidural injection for the neck pain and the shoulder pain. Again, I have no medical records available to me to compare her personal history provided to me with the medical records. History of medications, she was given Norco, meloxicam, cyclobenzaprine, MiraLax, and gabapentin. She also had physical therapy for three months. On 07-25-17, she had a rotator cuff tear repair on the right shoulder by the orthopedic surgeon. She claimed she had an MRI of the neck and the shoulder but I have no records available. On 11-01-17 when she went back to work after the right shoulder rotator cuff repair was healed, she developed throbbing pain on 11-30-17, which recovered with a cortisone injection. In February 2018, she claimed she started having left shoulder

COLLIER APL 0611

**LIB000157**

**Collier, Vicki**
**October 6, 2019**
**Page 23 of 28**

pain and she was again given a cortisone injection. She was off work until March 2018. She does not remember any MRI done on her left shoulder. Periods of temporary disability, 07-26-17 to 11-01-17, after a rotator cuff repair on the right shoulder. On 05-16-18 to current, she is on temporary disability. She has been doing physical therapy and chiropractic treatment with Botox injection to the neck and head and also is being treated at Kaiser with a neurologist, orthopedic surgeon and PCP. PAST MEDICAL HISTORY: Past Medical Illnesses: The examinee denies any major medical problems. History of previous surgeries, she has had breast augmentation, had hernia repair, had tonsillectomy, and had right side rotator cuff repair, right shoulder. SOCIAL HISTORY: She denies any smoking or drinking abuse or use of street drugs. HABITS: Tobacco: She denies any smoking. Alcohol: She denies any drinking abuse. Illicit Drugs: She denies any use of street drugs. DIAGNOSES: 1. Cervical radiculopathy. 2. Right shoulder, status post rotator cuff repair, with pain. 3. Left shoulder pain. 4. Sacroiliac joint pain bilaterally and low back pain. RECOMMENDATIONS: I would like to get medical records to review. I would like to get MRIs of the shoulders, neck and lumbosacral spine to review so that I can complete the supplemental report with a review of the medical records and make my comments on the causation, permanent and stationary status, apportionment, and whole person impairment. PERMANENT AND STATIONARY: I have no medical records available to me on the day of examination and I am unable to make any comments on this. PERMANENT IMPAIRMENT: I have no medical records available to me on the day of examination and I am unable to make any comments on this. CAUSATION: I am unable to make any medical opinion as regards to causation because I have no medical records available to me. APPORTIONMENT: I have no medical records available to me on the day of examination and I am unable to make any comments on this.

10-24-18, Ripu Arora, M.D.
Panel Qualified Medical Evaluator Supplemental Report In Pain Management
REVIEW OF RECORDS: Extensive medical records were reviewed. DISCUSSION/COMMENTS: As you are aware, I gave my QME report on 10-11-18 when the examinee came into my office for examination and she gave me a history. I had no medical records available to me for review and to match her history. Apparently she is claiming a continuous trauma claim from 2013 to 07-24-17 when she claims that she was working in the AAA where she was not given any ergonomic seat and furniture and it caused pain to her right shoulder for which she sought medical treatment from Dr. Tun, orthopedic surgeon on 10/17. She claimed that her pain in the neck, shoulder, lower extremities and headaches and pain in the forearm and elbows and shoulder blade, etc., along with the hemorrhoids, are all secondary to the continuous trauma during her work between 2013 to 2017 at the AAA office. She also gave a history on January or February 2018, she had bleeding hemorrhoids and she fainted. She was advised to have colonoscopy, which she refused to have at that time because she had one sometime before 2013 or 2014. Now, I have received her medical records and there are a lot of differences between her history provided to me at the time of the October 11th examination and the medical records provided to me. I have two sets of medical records starting from the year 2002 all the way to 2018 with almost 2000 pages and I have reviewed the medical records and as per her history she injured her shoulder in October 2017 as she had told me that she was visiting

COLLIER APL 0612

LIB000158

Case 8:20-cv-00839-JVS-KES    Document 17-1    Filed 01/29/21    Page 159 of 630
Page ID #:221

**Collier, Vicki**
**October 6, 2019**
**Page 24 of 28**

Mexico sometime in 2016 and that is when she hurt herself in the neck and the left shoulder. However, when I reviewed the history from the previous years, the first time she complained about pain in her shoulder was in 03-27-15 medical records, she complained to her internal medicine physician, Dr. Patterson-Judd that she had a right shoulder pain ongoing for several months and also she had elbow pain ongoing for several months and she was treated conservatively with medications like Norco as well as Medrol pack. Also reviewing the history of past between 2002 to 2008, she has a history of hemorrhoids ongoing for several years in the medical records, complaining to her family physicians. I also noticed from the medical records that she has been having pain in her neck as well as low back for several years as far back as 2007 for the low back and 2009 for the neck and shoulder pain. Since 05-16-18, she has been on total temporary disability. Over the last 16 years, she has received several treatments with chiropractic treatment for her different musculoskeletal problems including the neck and the lower back, right shoulder especially in the past 10 years or so, which is reflected in her medical records sent to me. Present complaints, please refer to my PQME report on 10-11-18, she does complain of pain in the neck, lower back and complains that she has healed hemorrhoids, however, she is presently trying to claim the continuous trauma, with all these present complaints. Please refer to the rest of my physical examination as well as the history from the PQME report and now I will address the following: FUTURE MEDICAL NEEDS: She might need physical therapy between 6 to 12 sessions for any aggravated pain in her shoulder for the next 12 months. FUTURE DISABILITY: Presently, she is healing from the shoulder surgery and she should avoid any heavy lifting more than 20 pounds and reaching above her head and follow-up would be advised by an orthopedic surgeon who did the shoulder surgeries. WHOLE PERSON IMPAIRMENT: Using the AMA Guides, Fifth Edition: Regarding her lower back, I used the DRE method, Table 15-3 and I gave her 0%. Regarding her cervical spine, I used the DRE Method and gave her Category II with 5% whole person impairment. Shoulders, I used the Range of Motion Method and 0% for the left shoulder. For the right shoulder, using Range of Motion Method with Table 16-40 for flexion of under 70 degrees 1% upper extremity impairment, for extension 40 degrees 1% upper extremity and using Table 16-43 for abduction 110 degrees I gave 3% upper extremity and for adduction of 30 degrees 1% upper extremity and using Table 16-46 with external rotation of 40 degrees, I gave 1% upper extremity and total upper extremity impairment is equal to 7% and that will equal to 4% whole person impairment as per 16-3 Table on Page 439. Although, the cervical spine is 100% nonindustrial, with her total impairment of 5% plus the upper extremity 4% using combined value table on Page 604, she has a 9% whole person impairment. PERMANENT AND STATIONARY: It is my medical opinion that she has reached permanent and stationary regarding her right shoulder since 10-31-17. CAUSATION: As regards causation, her symptoms of low back pain and neck pain as well as hemorrhoids are way prior to the job she took in Automobile Club of Southern California. She has her medical records from 2002 onwards and apparently she had started complaining of these symptoms sometime during 2005 to 2009 and it is my medical opinion that the back pain and the neck pain as well as hemorrhoids are not out of this employment. As regards to her right shoulder, she started complaining of right shoulder pain on 03-27-15, then she was treated conservatively after that. On 06-09-17, she started having more pain in her right shoulder and the MRI done on 06-12-17, showed torn rotator

COLLIER APL 0613

**LIB000159**

cuff with mild tendinosis and subacromial and subdeltoid bursitis. She was also having cervical radiculopathy and she was seen by Dr. Kibe in Pain Management on 06-30-17 and the treatment plan for the cervical radiculopathy with cervical epidural injection and eventually on 07-20-17, she was given right shoulder arthroscopic surgery with rotator cuff tear. It is my medical opinion with reasonable probability that the right shoulder injury is related out of employment, as a continuous trauma from 03-27-15 to 07-25-17. APPORTIONMENT: It is my medical opinion with reasonable probability that there is no apportionment for the right shoulder injury. As regards her neck and low back and claim for the hemorrhoids, this is a 100% nonindustrial trauma as she already had pre-existing disease prior to this employment.

04-29-19, Ripu Arora, M.D.
Panel Qualified Medical Evaluator Supplemental Report In Pain Management
REVIEW OF RECORDS: Medical records were reviewed. DISCUSSION/COMMENTS: Her original PQME report was given on 10-11-18. At that time, I had no medical records available to me and the report was based purely on the examinee's history and thorough history was taken and the examinee's present complaint at that time were pain in the neck, pain in the low back and hemorrhoids. She did tell me that she had a rotator cuff repair on the right shoulder and she is healing from that. During the examination, I examined her both shoulders, neck and low back as is seen on my report. Diagnoses were cervical radiculopathy, status post rotator cuff repair right shoulder and bilateral shoulder pain and low back pain with sacroiliac joint pain. After I reviewed the medical records, a supplemental report was given on 10-24-18. The records were over 2000 pages between 2002 all the way to 2018 and I made some salient points in my discussion where I understand that the examinee is claiming neck, shoulder, lower back, lower extremity pain, elbows and forearm pain along with hemorrhoids to the cumulative trauma and she has been very active as a patient visiting her physicians at Kaiser as well as see regularly her primary care physicians since 2002 and she also had injuries to the neck and left shoulder in 2016 while she was visiting Mexico. I also reviewed the orthopedic surgeon primary treating physician's report. My point of discussions were as follows: As the examinee has been very active in visiting physicians and reporting every single complaint from 2002 onwards, I see she never complained about pain in her elbows and wrists on the day of her PQME report. She reported pain in the neck and lower back and hemorrhoids and status post healing from right shoulder surgery and there was no mention of elbows or wrists pain. She did mention to me that after reviewing her charts from the primary treating physician that she was advised that she should report all the above as well as pain in the wrists, elbows as a cumulative trauma and claim that as a workers' compensation injury. My examination on the PQME that was limited to the neck, lower back and the right shoulder as those were the specific complaints. She was putting a claim towards workers' compensation injury. After reviewing further medical records, I found that she has had lower back pain and neck pain several years ago even before her employment 2013 at the Auto Club. I as mentioned in my causation in the supplemental report, I was unable to define the back pain and neck pain as a part of her cumulative trauma from 2013 to 2017 especially when she has had these complaints in some other times between 2005 and 2009 and so it is my medical opinion with a reasonable probability that she did not have lower

**LIB000160**

**Collier, Vicki**
**October 6, 2019**
**Page 26 of 28**

back pain and neck pain arising out of her employment between 2013 and 2017. As regards to her right shoulder pain, I had mentioned in my supplemental report that this is related to her continuous trauma from 03-27-15 to 07-25-17. I respectfully disagree with the primary treating physicians who add all the other musculoskeletal issues into cumulative trauma and also I respectfully disagree with the primary treating physician's assessment. I also feel that if there is a need for further assistance, a PQME report can be obtained by orthopedic spine surgeon.

**DISCUSSION:**
The patient has been seen in my office previously. Multiple reports have been provided on this case. The patient has been employed as an insurance agent and sustained a continuous trauma injury while performing those repetitive activities over four years. There is indication that the patient was seen by the panel QME. The panel QME indicated that her symptoms to the lower back and the neck as well as her hemorrhoids are way prior to the job she took in the Automobile Club of Southern California. Apparently, she has been complaining of pain sometime during 2005 to 2009 and the QME opined that the back pain as well as the neck pain along with her hemorrhoids are not related to her work-related activities. In regards to the right shoulder, she began having pain in March 2015 and she received treatment. Apparently, a rotator cuff tear was noted. She was having neck pain and was seen by a pain management specialist. It was the medical opinion of the QME that the right shoulder injury was related to her employment on a continuous trauma injury.

In this case, it is important to mention that the patient began her employment with the employer in 2013. Apparently, this is the most important factor in considering the issue of causation by the QME. He simply used the medical records to find out exactly when the patient began having pain and he attributed the body part that became painful after the date of hire to be related to the industrial activity. However, the QME fails to mention that it is accepted position to hold that a patient who is predisposed to an injury can worsen a preexisting condition while performing work-related activities. In deed the Kaiser records that are provided do point to the fact that the patient received treatment prior to her employment with the Automobile Club. There were some discussions about a liver mass and an ultrasound and gynecological examination which are not related to the orthopedic complaints. There are no significant indication of treatment prior to her employment with the Automobile Club based on the records provided.

I have reviewed my own clinical notes. I reviewed my permanent and stationary report from January 31, 2019. Within that report, I reviewed the diagnostic studies. I discussed causation and also provided opinions and apportionment. In fact, the apportionment that I have provided was for nonindustrial causes and preexisting degeneration which is not related to the activities performed at the Auto Club. As such, my conclusions in the section for apportionment on my January 31, 2019, seems appropriate. It seems that the QME has been provided with some of the records dating back to 2002. There was some indication that a family practitioner in 2002 saw the patient and diagnosed back pain.

In 2006, the patient was complaining of upper back pain as well as neck pain. In 2007, the

COLLIER APL 0615

**LIB000161**

**Collier, Vicki**
**October 6, 2019**
**Page 27 of 28**

patient was again complaining of back pain with history of scoliosis. In fact, in the year of 2007, the patient has been seen by orthopedic surgeon Dr. Kayvanfar. The patient was recommended to proceed with x-rays. In 2009, there was indication of an x-ray revealing a transitional L5 segment, but otherwise normal findings were noted. Considering the new medical records as well as the fact that the patient has had some pain which was prior to her employment at the Auto Club, I am now amending my previous opinions to indicate that 30% of the patient's disability and impairment to the neck and the lower back would be attributed to preexisting non-industrial activities and 70% would be attributed to the effects of the industrial injury. The above opinions are being provided based on reasonable medical probability.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). In order to prepare this report and complete the evaluation, time was spent without face to face with the patient. The billings reflect such time spent by the physician with the code 99358. The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Furthermore, all the information contained in this report and its attachment, if any, is true and correct to the best of my knowledge and belief, except as to information I have indicated I have received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.*

*Per labor code 139.3: If I have referred this patient for clinical laboratory, diagnostic nuclear medicine, radiation oncology, physical therapy, physical rehabilitation, psychometric testing, home infusion therapy or diagnostic imaging goods or services whether for treatment or medical-legal purposes, it should be noted that I do not have a financial interest nor does my immediate family have a financial interest with the person or in the entity that receives the referral.*

*This report is for medical/legal assessment of the injury noted and is not to be construed as a complete physical examination for general health purposes. Only those symptoms which are believed to have been involved in the injury or that might be related to the injury have been assessed by this examiner. Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

October 10, 2019
_____
Date

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385

EH

COLLIER APL 0616

**LIB000162**

**Collier, Vicki**
**October 6, 2019**
**Page 28 of 28**

\*Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 10/16/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name:** **Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 10/6/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Miguel Mendoza                           Robert L. Palty Esq.
CCMSI Irvine                             6345 Balboa Blvd, Ste 211
P.O. Box 53550                           Encino, CA  91316
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 10/16/2019 at

_____
Emily Shemwell

COLLIER APL 0617

**LIB000163**



Jonathan F. Kohan, M.D.
SPECIALIZING IN PAIN DISORDERS

MULTI-DISCIPLINARY
TREATMENT OF
CRPS (RSD)
CHRONIC PAIN SYNDROMES
CANCER PAIN
FIBROMYALGIA
NEURALGIAS
HEADACHE

SPINAL CORD STIMULATION
INTRATHECAL PUMP
PLACEMENT
DISCOGRAPHY
RADIOFREQUENCY ABLATION
SPINAL INJECTIONS

DIPLOMATE, AMERICAN BOARD
OF ANESTHESIOLOGY
FELLOWSHIP TRAINED IN PAIN
MEDICINE

Edwin Haronian, M.D.
724 Corporate Center Dr. 2nd Floor
Pomona, CA 91768

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | October 14, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ▮▮▮▮▮▮▮ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## SECONDARY PHYSICIAN PAIN MANAGEMENT FOLLOW-UP REPORT

*This special narrative report is reimbursable (1994) Official Medical Fee Schedule because one of the following: There was an unexpected or significant change in the patient's condition or the treatment plan; there is a change in patient care or status; submitted records were reviewed or specific questions were answered.*

Ms. Collier is a 56-year-old female whose last visit with me was on September 17, 2019. She does not report any side effects with the regimen of Norco 5 mg, Neurontin 300 mg, and Cymbalta 30 mg. These include no nausea, vomiting, constipation, oversedation, or epigastric pain, but also has been taking naproxen and ibuprofen 10% cream at times. This regimen continues to help her at least 40% with her complaints that remain in her low back, neck, shoulder with difficulty with any significant lifting, pushing, pulling, or over-the-shoulder activity.

## PHYSICAL EXAMINATION:
No signs of sedation. She is alert and oriented. Tenderness over the cervical spine at multiple level is noted extending to both shoulders. There is weakness in flexion and abduction of the right shoulder.

## IMPRESSION:

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH. (818) 788-2400

COLLIER APL 0618

**LIB000164**

**Collier, Vicki**
**October 14, 2019**
**Page 2 of 3**

Cervical disc protrusions.
Lumbar disc protrusions.
History of right shoulder arthroscopic surgery with residual pain.

<u>**RECOMMENDATION:**</u>

CURES report does not show any aberrant activity. The patient has had residuals despite course of therapy and surgeries, but has been able to do her daily chores with at least 40% to 50% improvement.  This includes 45 tablets of Norco 5 mg for a one month's supply, as well as 60 tablets of Neurontin 300 mg, and 30 tablets of Cymbalta 30 mg in addition to naproxen.  Possible side effects of the entire regimen has been discussed with the patient, who will be reevaluated again next month.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Please be advised that Dr. Kohan has a financial interest in the Pacific Anesthesia Group.*

October 25, 2019
_____
Date

Jonathan F. Kohan, M.D.
Diplomate American Board of Anesthesiology
Fellowship-Trained in Pain Medicine

JFK

*Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Encino, CA  91316

*CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619
Attn: Miguel Mendoza

**PROOF OF SERVICE**
<u>**STATE OF CALIFORNIA**</u>

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:

COLLIER APL 0619

**Collier, Vicki**
**October 14, 2019**
**Page 3 of 3**

**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 10/28/2019 served the foregoing document described as:

JONATHAN F. KOHAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 10/14/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Edwin Haronian, M.D.                Robert L. Palty Esq.
724 Corporate Center Dr. 2nd Floor  6345 Balboa Blvd, Ste 211
Pomona, CA  91768                   Encino, CA  91316

Miguel Mendoza
CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 10/28/2019 at

_____
Emily Shemwell

COLLIER APL 0620

**LIB000166**

# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

- Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery




- Fellow, American Academy of Orthopedic Surgeons

- Member, North American Spine Society



- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

·

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

**WWW • ESPINEDOCTOR • COM**

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | October 17, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ▮▮▮▮▮▮▮ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## SUPPLEMENTAL MEDICAL-LEGAL REPORT AND REVIEW OF MEDICAL RECORDS OF A PRIMARY TREATING PHYSICIAN - ML-106

**Nine hours and fifteen minutes were spent to review the medical records along with dictation, editing, and preparation of this report.**

## MEDICAL RECORD REVIEW:
05-08-02, Facey Medical Group, Chad Cox, M.D.
Urgent Care Notes
PRESENTING COMPLAINTS: The patient complained of abdominal pain x5 days, feels like labor pain per patient.  The patient reported epigastric pain occurs immediately after eating better with antacids.  DIAGNOSIS: PUD. PLAN: Prescribed Prevacid 30 mg.  RTC on 05-09-02.

05-09-02, Facey Medical Group, Chad Cox, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: She is here complaining of stomach pain.  It is actually already resolving.  She says last Friday, six days ago, she had epigastric pain associated with some diarrhea.  The diarrhea has since resolved, but she is having some abdominal aching, especially after eating.

COLLIER APL 0621

**LIB000167**

**Collier, Vicki**
**October 17, 2019**
**Page 2 of 44**

She denies any melanotic stools, any nausea, vomiting or heartburn. Denies any weight loss. ASSESSMENT/PLAN: Epigastric pain, differential includes ulcer versus gastritis versus dyspepsia. Plan at this time is avoidance of many herbs and over-the-counter vitamins that she seems to be heavily dosing on, sounds like 20 different things. I told her that it is really unnecessary, and also I have told her to avoid nonsteroidal anti-inflammatories which she used to take quite a bit of, and I have put her on Pepcid and we will see how she does over the next month or so.

08-14-02, Facey Medical Group, Mary Kasem, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: This is a 39-year-old female who is complaining of three to four month history of occasional chest tightness with deep breathing. The patient denies any chest pain, cough, history of allergies or night symptoms. Also, the patient complained of a four to six month history of upper and mid back pain and stiffness, relieved with Motrin p.r.n. The patient does carry her 2-year-old daughter frequently and usually on the left side. The patient was seen about a year ago with the same complaint and was recommended to follow-up with a chiropractor, but never did. PAST MEDICAL HISTORY: History of hyperlipidemia. ALLERGIES: None. ASSESSMENT: 1. Chronic upper back pain. 2. Reactive airway disease. 3. History of hyperlipidemia. PLAN: Recommended albuterol one puff to two puffs q. 4-6h. p.r.n. Reviewed medication use, precautions and side effects. Discussed back care, healthy back range of motion and stretching exercises. Given a referral to chiropractor. Check x-ray, labs and spirometry. RTC in 1 to 2 wks or earlier p.r.n.

08-14-02, Facey Medical Group
ECG Report
IMPRESSION: Sinus rhythm. Normal ECG.

08-23-02, Facey Medical Group, Gregory Paranay, M.D.
X-ray of Chest PA and Lateral Views
CONCLUSION: 1. Hyperinflation of both lungs. 2. No acute infiltrate or mass.

08-23-02, Facey Medical Group
Spirometry Report
INTERPRETATION: Testing indicates mild obstruction.

09-03-02, Facey Medical Group
Progress Notes
PRESENTING COMPLAINTS: The patient complained of mild bilateral hernia pain. ASSESSMENT/PLAN: Umbilical hernia and left inguinal hernia. Recommended repair of tubal ligation and umbilical hernia repair. Referral to gyn.

10-10-02, Facey Medical Group
Progress Notes
PRESENTING COMPLAINT: The patient presented here for annual pap. IMPRESSION: Normal. PLAN: Ordered lab studies and mammogram.

COLLIER APL 0622

LIB000168

**Collier, Vicki**
**October 17, 2019**
**Page 3 of 44**

10-10-02, Unilab Corporation
Laboratory Report
TESTS: Current Pap – Thinprep.  INTERPRETATION: Negative for intraepithelial lesion or malignancy.

10-17-02, Facey Medical Group, Ramon Quesada, M.D.
Bilateral Mammography Report
IMPRESSION: 1. BIRADS category I: Negative.  2. Her next recommended annual screening is due at the age of 40.

10-17-02, Facey Medical Group, Martin E. Applebaum, M.D.
US of Pelvic
IMPRESSION: 1. Retroverted uterus.  2. Prominent endometrial echo.  3. Small right ovarian cyst.

10-23-02, Facey Medical Group, Maher Sadra, M.D.
Progress Notes
PRESENTING COMPLAINTS/HISTORY: This is a 34-year-old female, was seen before for umbilical hernia.  The patient desired tubal ligation at that time and so the patient was sent to Dr. Marter to arrange for the tubal ligation, but now the patient changed her mind and she does not want the tubal ligation.  The patient is here to discuss the surgery and she states that she has increased pain in her left lower quadrant.  The patient was examined before and diagnosed with also small left inguinal hernia, which was easily reducible.  ASSESSMENT/PLAN: This is a 34 years old with umbilical hernia, needs repair.  Doubtful if we proceed with left inguinal hernia repair, we can achieve good results given the tiny size of it, so our recommendation is to observe the left inguinal hernia right now, repair the umbilical hernia and follow-up on the left groin hernia.  If increase in size or symptoms, we will proceed with the repair in the future.  I doubt very much if the pain in the left groin was due to the hernia.

12-04-02, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note
PRESENTING COMPLAINTS: Patient comes in today stating that she pulled a muscle while doing pull-ups at the gym two days ago.  She iced it down and went back to the gym, did pull-ups again and noticed severe pain.  She noticed that this pain is on the lateral aspect of her left chest and it is painful to palpation.  There is a small lump almost in to the axilla where her pain is.  ASSESSMENT: Costochondritis versus muscle strain.  PLAN: 1. Ibuprofen 800 mg one, times three days then p.r.n. #20 and Vicodin #10 one.  No refills.  Called to pharmacy.  Return if symptoms persist or get worse.  Use ice to the area for the next two days and then she can switch to heat and see which works better.

01-14-03, Facey Medical Group, Mary Kasem, M.D.
Progress Notes
PRESENTING COMPLAINT: This is a 39-year-old female who is here for preoperative physical for umbilical hernia repair.  The patient is doing well.  No complaints.  PAST

**LIB000169**

**Collier, Vicki**
**October 17, 2019**
**Page 4 of 44**

MEDICAL HISTORY: Measles and chickenpox. PAST SURGICAL HISTORY: Tonsillectomy and abortion. ALLERGIES: Erythromycin. SOCIAL HISTORY: Married, no smoking, quit smoking five years ago, used to smoke 10 cigars a day, social drinking, no drugs and regular exercise. ASSESSMENT AND PLAN: A 34-year-old female in good physical condition for umbilical hernia repair. We will check EKG, labs and chest x-ray. Follow-up in clinic postoperatively, or earlier p.r.n.

01-14-03, Facey Medical Group, Ramon Quesada, M.D.
X-ray of Chest two views
CONCLUSION: Negative.

01-14-03, Facey Medical Group
ECG Report
IMPRESSION: Sinus rhythm. 1st degree AV block. Abnormal ECG.

01-15-03, Facey Medical Group, Maher Sadra, M.D.
Progress Note
SUMMARY: This patient is actually presented with a large umbilical hernia. The patient first seen was in September 2002, and the patient was supposed to have a tubal ligation at the same time and then the patient had changed her mind about the tubal ligation and was reexamined again and she put her surgery off till January. The patient is scheduled to have the surgery on Monday and the patient is here for follow-up. Had some questions about the surgery and why we have fixed the surgery. Again all the procedure in detail was discussed with the patient. All the risk, complications and alternatives discussed also with the patient in detail. The hernia is getting a little bit bigger, it was not easily reducible right now, so it is chronic incarceration, requires the repair with a mesh, umbilical hernia. Again all the risk, complications and alternatives of the procedure discussed with the patient in detail. The patient agreed and wants to proceed.

01-23-03, Facey Medical Group, David Shaw, M.D.
Progress Notes
PRESENTING COMPLAINT: The patient states she is approximately four days status post repair of an umbilical hernia. She states she has had a lot of bed rest over the last week. She states she had an onset of pain in her low back with tingling in her lower extremities. ASSESSMENT: 1. Back spasm. TREATMENT PLAN: The patient was placed on Flexeril 10 mg.

01-27-03, Facey Medical Group, Maher Sadra, M.D.
Progress Note
SUMMARY: This patient is status post umbilical hernia repair with mesh. The patient is here for follow-up. All her questions were answered. The wound has healed very good. The suture was trimmed. The patient was reassured and told to follow-up with us on a p.r.n. basis. Call us earlier, if she has any problems.

02-20-03, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note

LIB000170

**Collier, Vicki**
**October 17, 2019**
**Page 5 of 44**

PRESENTING COMPLAINTS: Patient comes in today with several problems. 1. She has left sided abdominal pain. She told she had a cyst, was supposed to be rechecked by her PMD about four months ago by transvaginal ultrasound. 2. She has a mole that is changing flaky on the left side of her chest. ASSESSMENT: 1. Ovarian cyst. 2. Mole. PLAN: 1. Ultrasound of the abdomen per her request. 2. I will send her to Dermatology for excision of this mole per her request also. It does not appear that this mole is dangerous, however, she appears nervous about it. Return p.r.n.

03-18-03, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note
PRESENTING COMPLAINTS: Patient comes in today stating she has one-day pain in her back. She notices a lump there and is concerned if it is cancer. States she does not have any history of cancer, but she noticed a lump and she reports that was cancer. ASSESSMENT: Lipoma. PLAN: I reassured the patient it is not cancerous. Ibuprofen for pain. If symptoms get worse, she should be seen.

05-14-03, Facey Medical Group, Martin E. Applebaum, M.D.
US of Pelvic
IMPRESSION: 1. Retroverted uterus. 2. Prominent endometrial echo.

06-16-03, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note
PRESENTING COMPLAINTS: Patient comes in today for birth control counseling. States she is ending her period today and she would like to go back on birth control pills. She does not smoke. She does not drink alcohol. States she understands the side effects of the medication. She did have some scaling of her upper lip, secondary to her birth control pills last time, it was mild and she wants to try them again. ASSESSMENT: Birth control counseling. PLAN: I will start her on Lo/Ovral, give her three months worth. We discussed breakthrough bleeding. We discussed problems with birth control pills. We discussed abnormal bleeding. Asked her to return, if there are any problems. She can start the pills tonight as she has just finished her period.

07-31-03, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note
PRESENTING COMPLAINTS: Patient comes in today stating that she has been under a lot of pressure lately. She states her husband gives her no help with the children and she finds herself running to keep up with all the things they are doing. She does not like to slow down and keeps up with what is going on, she just wants to keep running. Patient is tearful when she discussed the parameters of her life and that she does not feel like she is in control. She states she knows that she is running too hard and her friends are telling her that she is running too hard and that she is running away from the problems she is having in her marriage and she does not want to deal with it. She does notice symptoms of panic attack, her heart beat fast and she is unable to concentrate on things. ASSESSMENT: Anxiety and depression. PLAN: CBC with diff. Complete UA, TSH, basic metabolic panel today. I will start her on Celexa 20 mg half tablet times seven days at night and then a whole tablet, gave her Behavioral Medicine referral and hopefully we talked about the

COLLIER APL 0625

LIB000171

**Collier, Vicki**
**October 17, 2019**
**Page 6 of 44**

advantages of counseling. I will see her back in two weeks to see how she is doing. Review the lab test to see if there is anything else we need to do and also basically for moral support.

08-06-03, Unilab Corporation
Laboratory Report
TESTS: Basic metabolic panel: Glucose – High; TSH, serum; CBC with differential; Urinalysis with microscopic: Ketones – Trace; occult blood – Abnormal; Leukocyte esterase – Abnormal.

08-26-03, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note
PRESENTING COMPLAINTS: Patient comes in today stating the Celexa has helped her measurably in dealing with problems. She states her family has noticed that she has done better with situations. She is glad to have the Celexa. She states she is going to rather argue with family situation and is trying to find a way out of that and still takes care of children. ASSESSMENT: 1. Anxiety/depression. 2. Abnormal labs. PLAN: 1. We talked about the source of her anxiety, which is a non-supportive relationship and fear of growing old. She is working really hard at addressing these problems, but is glad to have Celexa, does not want to make any change in the dosage at this point. 2. Glucose was 152, was not fasting at that time, so we will see what that shows. She also had trace occult blood and trace leukocyte esterase at that time. I was on vacation and she was not called for recheck. We will do a urine recheck today along with LFTs and cholesterol today. I will see her back to reevaluate in three weeks. If any further problems, let me know.

08-26-03, Unilab Corporation
Laboratory Report
TESTS: Urinalysis with microscopic: Appearance – Hazy; Leukocyte esterase – Trace; Bacteria – Abnormal.

08-26-03, Unilab Corporation
Laboratory Report
TEST: Urine culture. RESULT: No organisms isolated.

08-28-03, Facey Medical Group
Laboratory Report
TESTS: Chloride – High.

11-13-03, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note
PRESENTING COMPLAINTS: Patient comes in today for a Pap smear. She also has a chest cough, green mucus times five days. No fevers. She did have body aches at the beginning of her symptoms. GYN HISTORY: Her last menstrual period was 10-25-03. She is not currently sexually active. She has no abnormal Pap smear. She has no history of breast cancer. Last mammogram was a year ago. Her periods were regular. She is P3, G4 with one abortion. She has got no thyroid problems in her history. ASSESSMENT: 1. Sinusitis. 2.

COLLIER APL 0626

LIB000172

**Collier, Vicki**
**October 17, 2019**
**Page 7 of 44**

Well woman care with Pap. PLAN: 1. Z-Pak as directed. Increase fluids. If symptoms persist or get worse she should let us know. 2. Any abnormals in her Pap smear I will let her know. Mammogram referral was generated. If she has got any further problems she will return.

11-13-03, Unilab Corporation
Laboratory Report
TESTS: Current Pap – Thinprep. INTERPRETATION: Negative for intraepithelial lesion or malignancy.

01-21-04, Facey Medical Group, Martin E. Applebaum, M.D.
US of Pelvic
IMPRESSION: 1. Retroverted uterus. 2. Prominent endometrial echo complex. 3. Multiple cysts left ovary, one containing a septation, which was the largest cyst.

01-30-04, Facey Medical Group, Roscoe Marter, M.D.
Progress Note
PRESENTING COMPLAINTS: The patient is gravida 4, para 3, AB 1 Caucasian female, presenting for a family planning consult. The patient was previously seen in September 2002, and at that point was first interested in tubas ligation. At this point, she is interested in IUD placement. After a successful discussion with the patient given her situation at present and that she is separating from her husband, planning on divorcing in the near future, then may be with a new partner at some point in the relatively near future, opted to not proceed with any method at this time, but should she need further work in this area would return at that time and may consider birth control pills in addition to condoms or something to that extent. Multiple options were discussed, risks, benefits and alternatives. The patient was previously noted to have increased urinary leakage consistent with GSUI, but the patient was counseled to decrease her coffee and has noted that when she does that, does not seem to have any significant problem. The patient continues to complain of enlarged right labia minora, which is still symptomatic to her. The patient wishes it removed and so we will schedule for that as well. IMPRESSION: 1. Family planning consult. 2. Symptomatic right labia majora. PLAN: We will proceed with labioplasty and the patient can schedule. Risks, benefits and alternatives were discussed with the patient including risk of bleeding, infection and postoperative pain. The patient is aware and was given a prescription for Darvocet-N 100 #18, two of them to be taken prior to the procedure.

02-05-04, Facey Medical Group, Maher Sadra, M.D.
Progress Note
PRESENTING COMPLAINTS: This patient is status post umbilical hernia repair with mesh, which was done almost one year ago. The patient indicated that she feels some little bit of scar tissue, which she was concerned about. ASSESSMENT AND PLAN: This patient is status post umbilical hernia repair one year ago. There is a scar tissue that the patient is feeling. No signs of recurrence of the hernia. The patient is to continue with her exercise routine and to follow-up with us on a p.r.n. basis.

03-04-04, Facey Medical Group, Roscoe Marter, M.D.

COLLIER APL 0627

**LIB000173**

Collier, Vicki
October 17, 2019
Page 8 of 44

Progress Note
PRESENTING COMPLAINTS: The patient is a gravida 4, para 3, AB 1, Caucasian female, presented for a follow-up of an ultrasound result. The patient presents as a referral from nurse practitioner Mary Haynes. The ultrasound showed a thickened endometrial lining of 1 cm, otherwise normal-appearing uterus, normal ovaries, except for some multiple small cysts. The ultrasound was reviewed with the patient in detail. Discussion revolving around the size of the lining in a reproductive age women, this being a normal thickness. The patient is to be reassured by this ultrasound. The patient is advised that if she is postmenopausal and the lining is thickened then that may be the cause of concern, but at this time in the presence of normal cycle that she has at this time is not concern. The patient's birth control method at this time is abstinence. IMPRESSION: Thickened endometrial lining in reproductive age women. PLAN: The patient to follow-up her regular exams, but not to be concerned with this ultrasound at this time. May consider follow-up of the ultrasound for ovarian cyst at sometime, but the size of these cysts are not concerning at this time.

04-09-04, Facey Medical Group, Martin E. Applebaum, M.D.
Bilateral Mammography Report
IMPRESSION: 1. No evidence of malignancy. 2. Assessment: BIRADS category II, benign.

06-02-04, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note
PRESENTING COMPLAINTS: Patient comes in today to discuss medications. She states she is leaving her husband and is putting the house up for sale and states this has been a difficult decision for her to make and her children having difficulty accepting this. States she is not sleeping well. She is trying very hard to be consistent for her kids. She has longstanding problems with hemorrhoids and they are painful. She denies any bleeding. She would like medication for this. ASSESSMENT: 1. Anxiety and depression. 2. Hemorrhoids. PLAN: 1. Patient denies suicidal ideation and states she lives for her children. She is asking me for Xanax and we have had several conversations that she does use a lot of Xanax. I told how important it is that she understands it is habit forming. She does understand that. She is asking for another month's worth of pills so she can get through this month and then she will move out and see how she does with that. We will also start on Prozac 20 mg one p.o. q.h.s. 2. Anusol HC one suppository q. 6h. p.r.n. hemorrhoid pain, if symptoms persist we should look in to surgery. She understands and states she will comply.

08-16-04, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note
PRESENTING COMPLAINTS: Patient comes in today for two reasons. 1. She has had a chronic coryza and chest tightness for about three months. She states that for one week out of the last two months she felt okay, the rest of the time she felt coryza and chest tightness. 2. She needs a TB test. ASSESSMENT: 1. Seasonal allergies. PLAN: 1. I told her to take Claritin D for the next three weeks, once this has resolved her coryza, we will start her on albuterol significantly for her chest tightness. If her symptoms persist and she is unable to exercise secondary to coughing, we will try Advil and we will start her on albuterol. If

COLLIER APL 0628

LIB000174

**Collier, Vicki**
**October 17, 2019**
**Page 9 of 44**

she has any further problems, she will let me know.  2. TB test was ordered.  She has always had negative TB tests in the past.  Any further problems, she will let me know.

11-18-04, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note
PRESENTING COMPLAINTS: Patient comes in today for a Pap smear and physical.  States she feels generally well.  Actually better than she has been.  She got herself off the Xanax and Prozac because states she is feeling better.  Her home situation is better.  We reviewed her last Pap smear, which was November 2003 and it was within normal limits and things has not changed.  SURGICAL HISTORY: Includes hernia surgery in 2002, cosmetic surgery, tonsillectomy in 1968.  No other hospitalizations other than the birth of her children.  ALLERGIES: Erythromycin gives her rash.  ASSESSMENT: Well care.  PLAN: Any abnormals in her Pap smear, I will let her know.  All of her labs came out really good last year, so we will forego them unless she has some problems she will let me know about that otherwise return p.r.n.

11-18-04, Unilab Corporation
Laboratory Report
TESTS: Current Pap – Thinprep.  INTERPRETATION: Negative for intraepithelial lesion or malignancy.

12-02-04, Facey Medical Group, Roscoe Marter, M.D.
Progress Note
PRESENTING COMPLAINTS: The patient is complaining of right labiomegaly.  The patient complains of the labia becoming irritated and rubbed and so wishes it removed.  The patient has been considering this for over two years.  Risks, benefits and alternatives were discussed with the patient and after extensive discussion the patient agreed to proceed with the procedure and requested to proceed with the certain procedure.  Consent was signed.  The patient was placed on a dorsal lithotomy position and the right labia was then injected with 1% lidocaine with epinephrine solution, approximately 4 cc.  The area was prepped with Betadine and draped sterilely.  The right labium was then clamped using a straight clamp.  The excess labia was then excised and then the cut edge of the labium was then sewn using running continuous suture of #4-0 Vicryl with several interrupted sutures as well.  The patient tolerated the procedure very well and was then subsequently discharged home once she was cleaned up.  IMPRESSION: Symptomatic right labial enlargement.  PLAN: The patient to take a prescription of Vicodin #30.  To use cold packs on the area for the next 12-24 hours, to minimize activity for the next few days and to return to clinic in two weeks.

12-07-04, Facey Medical Group, Roscoe Marter, M.D.
Progress Note
PRESENTING COMPLAINTS: The patient is status post labioplasty on the right side on 12-02-04.  The patient feels that the lower edge of it is more tender than the others.  IMPRESSION: Status post labioplasty times five days.  PLAN: The patient to try warm sitz baths with Epsom salts or salt water, to do that once a day.  Follow-up p.r.n.

COLLIER APL 0629

LIB000175

**Collier, Vicki**
**October 17, 2019**
**Page 10 of 44**

12-07-04, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note
PRESENTING COMPLAINTS: Patient comes in today stating she has had lymph node enlargement. She has just had a surgery on one of her labia and started feeling well. She just notes a mildly enlargement node on both sides. She also is also having sore throat for several weeks. ALLERGIES: Erythromycin. ASSESSMENT: Lymphadenopathy. PLAN: We will start her on Augmentin 500 mg one. Asked to do CBC on her and I will see her back in two weeks for further evaluation if symptoms persist or worse she would let me know.

12-08-04, Unilab Corporation
Laboratory Report
TESTS: Basic metabolic panel; CBC with differential: WBC – Low.

12-15-04, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note
PRESENTING COMPLAINTS: Patient comes in today, little upset because of lymph nodes in her groin that are enlarging. States that the antibiotics that we gave her before are helping her. ALLERGIES: She is allergic to erythromycin. SUMMARY: Vicki has had some surgery on her labia approximately two weeks ago and I told her this could be the reason why she has lymph nodes that are enlarged. She is very anxious. She refuses to wait any longer. Dr. Karlin evaluated the patient and we discussed. She states that she would like a biopsy right away, so we will send her for General Surgery evaluation. Got a chest x-ray. Dr. Karlin evaluates the chest x-ray and finds it to be negative.

12-15-04, Facey Medical Group, Timothy Sprague, M.D./Mary Haynes, RNP
X-ray of Chest, two views
CONCLUSION: 1. Hyperinflation. 2. No evidence of acute cardiopulmonary disease.

12-22-04, Facey Medical Group, Roscoe Marter, M.D.
Progress Note
PRESENTING COMPLAINTS: This patient is following up, status post right labioplasty. The patient is doing well. It appears to be well healed at this time. The patient still notes some knots from the suture and wishes those removed. These were removed. The patient is still very tender in the area and complaining that the procedure itself is very painful which she recovered from and at this time it appears to be healing well. The patient has seen by General Surgery and by Internal Medicine for inguinal lymph nodes. The patient is encouraged to wait until this has properly healed before she _____ [sic].

12-22-04, Facey Medical Group, Maher Sadra, M.D.
Progress Note
PRESENTING COMPLAINTS: Bilateral swollen lymph nodes. This patient is status post surgery for her vulva. The patient had partial vulvectomy by Dr. Marter almost four months ago. The patient developed some lymph node in bilateral groin for which she was seen by Dr. Mary Haynes who put her some antibiotics. According to her, the patient was wondering about its increasing size and is concerned about it being cancer. The patient denied chronic cough or fever. The patient had a chest x-ray today that was negative. PAST

COLLIER APL 0630

**LIB000176**

**Collier, Vicki**
**October 17, 2019**
**Page 11 of 44**

MEDICAL HISTORY: According to the chart. PAST SURGICAL HISTORY: Umbilical hernia in the patient in the past. ALLERGIES: Erythromycin. HABITS: None. ASSESSMENT AND PLAN: This patient is presented with most likely active lymphadenopathy, bilateral groins. The patient is instructed there is no need for shave excision in this area, and we will reexamine the patient again in one more month. More than likely, it is an active lymphadenopathy, no malignancy spotted.

01-03-05, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note
PRESENTING COMPLAINTS: Patient comes in today stating she has a lump on her breast she would like to evaluate it. She is crying. She states she is having a lot of trouble at home. She states she understands that she may be little overzealous about her medical condition, but she finds it really difficult to handle three kids and her husband does not acknowledge her. ASSESSMENT: 1. Probable fibrocystic breast. 2. Anxiety/depression. PLAN: 1. Vitamin E q.d. 400 IU. We will do an ultrasound to try to calm her. 2. We will start her on Zoloft 50 mg one. She has had Ativan in the past, but she finds herself depending on it too much, so she stopped that over the course. I will see her back for any further problems.

01-17-05, Facey Medical Group, Martin Applebaum, M.D./Mary Haynes, RNP
Ultrasound of Pelvic
IMPRESSION: 1. Prominent endometrial echo. 2. Cysts left ovary. 3. Free fluid noted in the pelvis.

01-25-05, Facey Medical Group, Maher Sadra, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient is presented with a history of nonspecific lymphadenitis and lymphadenopathy in bilateral groins. The patient is here for follow-up. Indicated that it is still the same. The patient has had no other medical problem except she has a common cold right now and she is coughing and sneezing. She feels nauseous. ASSESSMENT AND PLAN: This patient is presented with bilateral inguinal shotty lymphadenopathy. No signs of malignancy. The patient is reassured and told to wait for three more months and to be reevaluated. To keep an eye, if it increases in size, let us know immediately. The patient understands the plan, agrees and she will follow-up according to the plan.

01-29-05, Facey Medical Group, Khoa Nguyen, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient presented complaining of epigastric abdominal pain for about four days. There is pain in the epigastric area. She also noticed some heartburn. She notices that every time she eats, the pain would come back. She also has loose stools with bowel movements as well. She denies any nausea or vomiting, fever, chills, bloody stool or mucus reported. No history of GI problems. ALLERGIES: Erythromycin. IMPRESSION AND PLAN: 1. Dyspepsia. 2. Gastritis. She was given GI cocktail, tolerated well. She states that pain resolved after GI cocktail. She was discharged on prescription of Aciphex 20 mg q.d. for 10 days, Donnatal p.r.n. for abdominal cramps. Increase fluids and

**LIB000177**

**Collier, Vicki**
**October 17, 2019**
**Page 12 of 44**

rests. Dietary changes recommended. Follow-up return if symptoms worsen or any other problem.

01-31-05, Facey Medical Group, Henry Shih, M.D./Mary Haynes, RNP
Ultrasound of Right Breast
IMPRESSION: There is a small subcutaneously located nodule at the right 9 o'clock position corresponding to a palpable abnormality. The sonographic appearance is suggestive of a dermal lymph node. Please correlate clinically.

02-10-05, Facey Medical Group, Stella Tanedo, M.D.
Progress Note
PRESENTING COMPLAINTS: The patient is presented with complaint of left upper back pain. The patient exercises a lot. Does weight lifting. The patient has had intermittent back pain. The patient had a chest x-ray done. Because of this, the patient had also been found to have lymph nodes on her breast and lymph nodes in her groin. Was concerned about the number of lymph nodes. She has had blood test. White count was mildly suppressed; however, a normal distribution of white count. The patient did state that she had an infection six months ago in which she was very sick and after that the patient had been feeling fatigue. The patient otherwise without any other previous medical problems. She exercises on a regular basis p.r.n. fitness instructor. ASSESSMENT: 1. Back pain. 2. Fatigue with history of upper respiratory tract infection. 3. Mild suppression of white count. PLAN: The patient is to go ahead and have CBC and basic metabolic panel check. The patient is also to have Ebstein-Barr virus titer, mono. Follow-up with me in three months or sooner. The patient may use capsaicin cream of her back region. Discussed with the patient the possible side effect of sedation with use of muscle relaxants. She will first try capsaicin cream.

02-17-05, Facey Medical Group, Mary Chau, M.D.
Progress Note
PRESENTING COMPLAINTS: Midsternal chest discomfort. 1. This patient is with no CAD risk factor, no tobacco, no family history, presents here complaining of midsternal chest discomfort that started intermittently about six weeks ago. She indicated that this is not associated with exertion, although today the episode happened when she was working. She indicated that the midsternal discomfort lasted for less than 10 seconds is self-resolved. Currently, she is not having any pain. She indicated that usually when she gets these chest discomforts, sometimes she will get palpitation sensation as well, but no one-sided weakness. No shortness of breath. She was diaphoretic due to working now, so it is difficult to tell for her when it occurs. She indicated that the pain was about 4/10. Currently, she is pain free. 2. The patient indicated that she has been having a left shoulder scapular pulled muscle for sometime. She is requesting for some muscle relaxant. ALLERGIES: Erythromycin. ASSESSMENT: 1. Atypical chest discomfort with biphasic T wave noted. The patient was educated regarding any recurrent chest discomfort to go to the ER immediately. Otherwise, she is to follow-up with PCP either tomorrow or Monday for further evaluation. 2. Left subscapularis muscle strain. PLAN: The patient was given Flexeril 10 mg one p.r.n. for muscle spasm. Educated regarding signs and symptoms to return p.r.n., otherwise follow-up with PMD.

COLLIER APL 0632

LIB000178

**Collier, Vicki**
**October 17, 2019**
**Page 13 of 44**

02-17-05, Unilab Corporation
Laboratory Report
TESTS: TSH, serum; CBC with differential tests were performed.

02-17-05, Facey Medical Group
Laboratory Report
TESTS: Glucose – High.

02-21-05, Facey Medical Group, Stella Tanedo, M.D.
Progress Note
PRESENTING COMPLAINTS: The patient is a woman here for follow-up. The patient had gone to Urgent Care because she had some chest discomfort. The patient teaches exercise classes. The patient generally exercises strenuously on a regular basis. She does not experience any chest pain during this time. The patient had chest pain limited to substernal region. Reportedly, her chest EKG was normal. The patient denies any numbness, tingling or shortness of breath. The patient has had continuous left upper back pain. This has improved with massaging the left upper back. The patient denies any weakness. The patient denies any dizziness or lightheadedness. The patient also has been going through multiple stressors and she is presently going through a separation at home. The patient had been given Celexa, Lexapro and Zoloft in the past; however, she did not like the feeling, so she is instead dealing with the anxiety and learning how to control it. The patient is also with sensation of feeling hot at times. She has had a chest x-ray, which was normal and she is here for follow-up of her blood count. Her mother was in her late 50s when she went through menopause. ASSESSMENT: 1. History of left upper back pain with mild improvement; however, persistent pain. 2. Atypical chest pain without any chest pain teaching aerobic classes. PLAN: We will check her risk factors. She does not have any hypertension and no history of tobacco use. The patient in the past with no history of elevated cholesterol. We will check lipid homocysteine level and C-reactive protein. The patient also has been having abdominal bloating and gas. We will check stool for O&P. She is to be referred to physical therapy for massage and ultrasound treatment. Follow-up after physical therapy.

02-23-05, Unilab Corporation
Laboratory Report
TESTS: Ova & Parasites #1. RESULT: No ova or parasites found on trichrome permanent stain or concentration. No leukocytes seen.

03-01-05, 03-03-05, 03-08-05, Facey Medical Group
Physical Therapy Treatment Notes
The patient participated in physical therapy which included US and STM.

03-03-05, Unilab Corporation
Laboratory Report
TESTS: Cholesterol– High.

COLLIER APL 0633

LIB000179

**Collier, Vicki**
**October 17, 2019**
**Page 14 of 44**

04-08-05, Facey Medical Group, Maher Sadra, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient is presented with history of bilateral inguinal lymphadenopathy with shotty in nature and there is no need for biopsy at this time. The patient was instructed to sit tight and to follow-up with us in three more months for reevaluation, and the patient is here for follow-up and indicates that she is feeling better. Lymphadenopathy treated accordingly. ASSESSMENT AND PLAN: This is a patient with shotty inguinal lymphadenopathy, resolve by itself that is a good sign. The patient reassured and told to follow-up with her primary care physician and to return for consultation with us on a p.r.n. basis.

11-02-05, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note
PRESENTING COMPLAINTS: Patient comes in today for a physical. States she feels generally well. Patient is going through divorce currently and seems to be happier with that than when she was with her husband. GYN HISTORY: Her last period was 10-20-05. She is not currently sexually active. No abnormal Pap smears. She has no history of breast cancer. Her last mammogram was a year ago. Her periods are regular. She is P3, G4 with one abortion. She has no thyroid problems in her history. Last year she had breast implant. ALLERGIES: She is allergic to erythromycin, which gives her rash. SURGICAL HISTORY: Includes umbilical hernia surgery, breast augmentation, tonsil removal and facelift. SOCIAL HISTORY: She smokes less than a pack a day for about 15 years. She quit in 1994. Does not drink regularly, once a week or once a month. She does not do street drugs. ALLERGIES: Allergic to erythromycin. ASSESSMENT: 1. Anxiety and depression. 2. Well-care. PLAN: 1. I will give her Xanax. Talked about the addictive problems with Xanax and she understands 20 should last her a month. 2. CBC, UA, TSH, chemistries, lipid panel and mammogram today. Any abnormals, we will let her know. Otherwise return p.r.n.

11-02-05, Unilab Corporation
Laboratory Report
TESTS: Basic metabolic panel; Cholesterol– High; CBC with differential; Absolute counts; Urinalysis with microscopic.

11-30-05, Facey Medical Group, Lloyd Wagner, M.D./Mary Haynes, RNP
Transabdominal and Transvaginal US of the Pelvis
IMPRESSION: 1. 3 cm fibroid identified. 2. No free fluid or adnexal masses. 3. Comparison is made with a prior study from 01-21-04. The previously noted left ovarian cysts are no longer seen. The fibroid currently appreciated was not definitely seen on the prior study.

01-09-06, Facey Medical Group, Gregory Paranay, M.D./Mary Haynes, RNP
Bilateral Mammography Report
CONCLUSIONS: 1. Bilateral breast implants. 2. Fibrocystic changes with no radiographic evidence of malignancy. 3. BIRADS Category II: Benign findings.

04-03-06, Facey Medical Group, David Shaw, M.D.
Progress Note

LIB000180

**Collier, Vicki**
**October 17, 2019**
**Page 15 of 44**

PRESENTING COMPLAINTS: Burning and frequency on urination. The patient states that she has had burning and frequency on urination for the last few days. ASSESSMENT: Urinary tract infection. TREATMENT PLAN: The patient was placed on Bactrim DS one for seven days. She is to follow-up with her regular physician p.r.n.

06-19-06, Facey Medical Group, Mary Haynes, R.N.P.
Progress Note
PRESENTING COMPLAINTS: The patient comes in to my office for what she states is urinary tract infection. She has pain on urination, frequency, and states that she cannot urinate very much when she does urinate; she does have frequency. ALLERGIES: She is allergic to erythromycin. ASSESSMENT: UTI. PLAN: Cipro 250 mg one x5 days. Increase fluids. Buy Uristat for the symptoms, which is over-the-counter. If she has any other problem, she should return; otherwise, return p.r.n.

06-19-06, Quest Diagnostics
Laboratory Report
TESTS: Urine culture. RESULT: No organisms isolated.

08-14-06, Facey Medical Group, Arash Matian, D.O.
Progress Note
PRESENTING COMPLAINTS: Patient needs referral to dermatologist. Has need for dermatology referral for lesion on upper lip, easily reformes q. 24-48h. Has had also lesion on right upper leg, worried re CA given personal history of BSC on right shoulder. Also needs US of left ovary. Last pap and mamo in June 06. IMPRESSION: Suspicious dermal lesions - dermatology referral. Chronic ovarian cyst. Bilateral ovarian us.

08-15-06, Facey Medical Group, Arash Matian, D.O.
Progress Note
PRESENTING COMPLAINTS: The patient presents today for left ear pain for 1 day. Has been experiencing left ear fullness and hallow and windy feeling. Continued tinnitus bilaterally. Went to gym today, didn't get dizzy with cardio but felt loud music was painful/sharp felt above symptoms worse near vibration source like refrigerator. IMPRESSION: Acute left ear hearing decrease. Patient worried about tumor, reassured, to RTC or ED if worsens or if severe headache or neurological symptoms occur. Audiology/ENT referral per patient request. RTC p.r.n. or sooner if not better. Trial of OTC PSE to rule out Eustachian tube d/f.

08-16-06, Facey Medical Group, Linh Ngo, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient complains her left ear has been plugged for the past few weeks, feeling that she has some dysequilibrium with dizziness, nauseousness, and difficulty to concentrate. Denied any sensation of things spinning. Complaining of nauseousness as well, but no vomiting. IMPRESSION: Dizziness, etiology uncertain. PLAN: Trial of Antivert 25 mg three times a day. Referral to ENT for further evaluation and treatment. Request form has been filled out.

LIB000181

**Collier, Vicki**
**October 17, 2019**
**Page 16 of 44**

08-17-06, Facey Medical Group, Linh Ngo, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient is here for another steroid injection. She was seen yesterday complaining of muffling of the left ear with some dizziness and difficulty with concentration. She was referred to ENT, where she was seen on the same day and impression was that she may have some irritation of her nerve versus edema at the vestibular nerve and recommended that we place on prednisone dose. I gave her Solu-Medrol 125 mg injection, which she tolerated it well. That night she stated that her left ear was almost 80% better and she went to bed, but as she woke up this morning, her left ear gradually worsened and now the right ear is the same. She started to have the same signs and symptoms. She did start taking her tapering dose of steroids 60 mg p.o. today. IMPRESSION: Vestibular nerve involvement versus irritation. PLAN: Solu-Medrol 150 mg injection given in the clinic and continue with her tapering dose of steroids. ENT referral done again for reevaluation of her symptoms.

09-07-06, Quest Diagnostics
Laboratory Report
TESTS: Basic metabolic panel; Hepatic function panel; Lipid panel: Cholesterol total – High; LDL-cholesterol – High; CBC with automated differentia; TSH.

10-22-06, Facey Medical Group, Zinat Choudhury, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient is complaining of excessive gas formation in the stomach. She was concerned about having a stomach cancer because recently her friend was diagnosed with a stomach cancer. She wanted to have a colonoscopy from urgent care. Otherwise, no history of diarrhea and no history of irritable bowel syndrome. She has a history of ovarian cyst, which is following up with repeated ultrasound. Next ultrasound is scheduled two days from today. PAST MEDICAL PROBLEM: None. ALLERGIES: Erythromycin. IMPRESSION: Dyspepsia. TREATMENT: Mylicon 160 mg and advised the patient to follow-up with PCP regarding discussion of colonoscopy.

10-25-06, Facey Medical Group, Joan Rhee, N.P.
Progress Note
PRESENTING COMPLAINTS: Patient is here with multiple medical issues stating that she went to urgent care on 10-22-06, regarding abdominal pain with increased gas formation. She has been taking ranitidine 150 mg without much improvement. She denies any nausea, vomiting, diarrhea, or constipation. The pain is in upper mid gastric area and down to her lower abdominal area as well. She denies any family history of GI cancer or OB/GYN cancer. She has a history of ovarian cyst and did have a pelvic ultrasound recently, which was on 11-30-06, and it shows a 3 cm uterine fibroid and no ovarian cyst or mass, but the recent ultrasound is not available. She has been going through a lot of stress. She is undergoing a divorce right now. Symptoms is not associated with diet pattern, whether before meals or after meals. She noticed increased bowel sounds at times. Complained of upper back pain , wants to have PT; feeling of tightness at times. Denies any tingling or numbness sensation of upper extremity. ALLERGIES: Erythromycin. ASSESSMENT AND PLAN: 1. Upper mid gastric pain, more like either gastritis or GERD symptoms. Continue

COLLIER APL 0636

LIB000182

**Collier, Vicki**
**October 17, 2019**
**Page 17 of 44**

ranitidine 150 mg and Levsin. 2. Lower abdominal pain with increased gas pattern, intermittent. I will order barium enema to see and follow-up with PCP in two weeks. I advised the patient to go to emergency room or urgent care if sign and symptom persists or gets worse when office is closed. The patient verbalized understanding. 3. History of upper back pain and neck pain secondary to stress and anxiety. I advised the patient to take Flexeril 10 mg p.r.n., but do not drive or work when she is on medication. The patient verbalized understanding and agreed with the plan. So, I will order barium enema and referral to PT is done as well. The patient also will be sent for routine lab including BMP, amylase, lipase, AST, ALT, H. pylori, IgG, and IgM today.

10-25-06, Quest Diagnostics
Laboratory Report
TESTS: Urinalysis complete: Occult blood – Abnormal; Basic metabolic panel; CBC with automated differential; H. pylori antibody IgM.

10-27-06, Facey Medical Group, Nicholas Tuso, M.D.
Progress Note
PRESENTING COMPLAINTS: This patient presents with onset of abdominal pain for one month's duration. She also has lower pelvic pain. She will be due for her annual Pap smear next month. Patient is not sexually active and not at risk for STD. PAST SURGICAL HISTORY: Labioplasty and breast implants. PAST MEDICAL HISTORY: Negative the patient is currently under treatment for GERD. ASSESSMENT: Upper abdominal pain probably unrelated to anything gynecologic. Lower pelvic pain left side greater than right possibly related to the cyst. PLAN: Recommend repeat ultrasound and follow-up after this for further advice. Option of CA-125 is discussed. She is provided with a laboratory requisition for CBC and amylase and lipase. If she wishes to have a CA-125, she may also request this. The disadvantage of this test is a false positive risk and a false negative. I would prefer to rely on ultrasound findings and symptoms to decide if surgical management would be prudent at her follow-up visit after the ultrasound, we can also take care of her annual visit needs.

11-02-06, Facey Medical Group, Stella Tanedo, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient is here with complaint of abdominal pain. She has been taking ranitidine 150 mg without improvement. She denies any nausea, vomiting, diarrhea, or constipation. The pain is in upper mid gastric area and down to her lower abdominal area as well. She has a history of ovarian cyst and did have a pelvic ultrasound recently and is receiving follow-up with gyn for her ovarian cyst. She has been going through a lot of stress. She is undergoing a divorce right now. She has multiple issues related to the divorce, and she is under a lot of stress, per the patient. She recently was on oral steroids due to hearing loss due to inflammation. She had an MRI of the brain negative for a mass or CVA. Her hearing has improved and has been under the care of Dr. Roesler. She hears a lot of hyperactive bowel sounds. Whatever she eats, after she eats, she hears a lot of bubbling gas sounds from her stomach and lower abdomen. ALLERGIES: Erythromycin. ASSESSMENT AND PLAN: 1. Gastritis will start protonix 40 mg daily. 2. History of upper back pain and neck pain secondary to stress and anxiety. I advised the

COLLIER APL 0637

**LIB000183**

**Collier, Vicki**
**October 17, 2019**
**Page 18 of 44**

patient to take Flexeril 10 mg p.r.n.  Patient is to have an abdominal ultrasound.  Follow-up two weeks after abdominal ultrasound.  Follow bland diet.

11-14-06, Quest Diagnostics
Laboratory Report
TESTS: Fecal leukocyte stain.  RESULT: No leukocytes seen.  Culture, campylobacter.  RESULT: No enteric campylobacter isolated.  Culture, salmonella and shigella.  RESULT: No salmonella or shigella isolated.  Ova & Parasites.  RESULT: No ova or parasites seen.

11-22-06, Facey Medical Group, Stella Tanedo, M.D.
Progress Note
PRESENTING COMPLAINTS: The patient is here for follow-up.  The patient denies any new complaints.  She never used the Protonix.  She has history of ovarian cyst.  The patient denies any other problems.  She is here to review her results.  Labs show stool is negative for fecal leukocytes, also culture is negative, ova and parasite negative.  Abdominal ultrasound shows only evidence of cyst in the right lobe of the liver.  There is borderline to mild liver enlargement, otherwise no other abnormalities. ASSESSMENT: Liver cyst.  PLAN: The patient and I had extensive discussion.  She denies any heavy alcohol use.  She only drank when she was younger, occasionally.  The patient is to have follow-up ultrasound in 6 months to ensure the stability of cyst.  The patient is with negative ova and parasite and negative fecal leukocyte.  Doubt abscess is causative.  Ultrasound leads simple cyst in appearance.  She is to follow-up with me in 6 months' time.  She is not interested in taking any further medication.

12-08-06, Facey Medical Group, Barry Wilen, M.D./Nicholas Tuso, M.D.
Transvaginal Pelvic Ultrasound
IMPRESSION: Uterine fibroid again demonstrated otherwise normal pelvic ultrasound.

12-11-06, 12-15-06, 12-22-06, 12-26-06, Facey Medical Group
Physical Therapy Treatment Notes
The patient participated in physical therapy which included HP, STM, HEP, graded A/PROM activities, graded strengthening activities and pain management.

12-14-06, Facey Medical Group, Nicholas Tuso, M.D.
Progress Note
PRESENTING COMPLAINTS: This patient presents for follow-up after ultrasound resolves evidence of any ovarian cysts.  She is no longer symptomatic from a pelvic pain standpoint.  She declined CA-125 testing.  Also her upper gastrointestinal symptoms have resolved.  She is currently at the end of her menstrual cycle and would like to do for her annual visit until the next time. ASSESSMENT: Resolved pelvic pain and reassuring ultrasound with small incidental uterine fibroid.  PLAN: Follow-up with us for her annual examination.

01-26-07, Facey Medical Group, Timothy Sprague, M.D./Nicholas Tuso, M.D.
Bilateral Mammography Report
IMPRESSION: 1. Bilateral implants.  2. No significant change and no radiographic evidence of malignancy.  3. BIRADS category II: Benign findings.

COLLIER APL 0638

**LIB000184**

**Collier, Vicki**
**October 17, 2019**
**Page 19 of 44**

01-26-07, Facey Medical Group, Nicholas Tuso, M.D.
Progress Note
PRESENTING COMPLAINTS: This patient presents today for annual visit. She also has symptoms of urinary urgency which does not result in incontinence unless she is not careful. She does have a problem of rectal gas incontinence. She also has right upper quadrant flank pain. This has been going on approximately 2 years. An ultrasound was done and showed evidence of a hepatic cyst otherwise negative. Investigation is ongoing at this point with her primary physician. She denies any low back pain symptoms. No urinary problems other than above. She has a history of uterine fibroid by ultrasound recently. Previous ovarian cyst resolved. Her menstrual cycles are regular but they are heavy when she has them. PAST SURGICAL HISTORY: Breast implants, umbilical hernia, tonsillectomy and vaginal delivery times three her last one was 10 pounds. MEDICAL HISTORY: No change. SOCIAL HISTORY: She is going through divorce, she is not essentially active and currently not working. ASSESSMENT: Annual visit #2 pelvic relaxation. PLAN: Options for therapy including medical and surgical are discussed with patient she is interested in conservative management. Kegel exercises are recommended and discussed. Calcium 1500 milligrams and vitamin D 1500 units discussed. Pap smear notification discussed. Follow-up with primary care for her back problem. AMENDMENTS: 1. Also ordered CBC, urinalysis amylase lipase bilirubin alkaline phosphatase ALT and AST and urine culture for further investigation into her symptoms. 2. I spoke with the patient provided her the results of the reassuring mammogram although it is not finalized. I also spoke with her and discussed Ascus Pap smear result. Options for management including repeat Pap smear at one year, wet mount examination with earlier Pap test and other treatment modalities are discussed. She was transferred to the front office to schedule an appointment with me 6-8 weeks away.

01-26-07, Quest Diagnostics, Fen Chen, M.D.
Laboratory Report
TEST: Surepath Rfx  INTERPRETATION/RESULT: Atypical squamous cells of undetermined significance (ASC-US).  HPV DNA – Not detected.

02-08-07, Quest Diagnostics
Laboratory Report
TESTS: CBC with automated differential; Urinalysis complete: Urine appearance – Abnormal; Leukocyte esterase – Abnormal; WBC urinalysis – Abnormal; Bacteria – Abnormal; Squamous epithelial cells – Abnormal.

02-08-07, Quest Diagnostics
Laboratory Report
TESTS: Culture, urine, routine.  RESULT: No growth.

02-13-07, Facey Medical Group, Mary Kasem, M.D.
Progress Note
PRESENTING COMPLAINTS: This patient is here to establish care.  The patient complains of back pain off and on for the last couple of months. She denies any specific history of injury.

COLLIER APL 0639

LIB000185

**Collier, Vicki**
**October 17, 2019**
**Page 20 of 44**

No weakness or numbness. No pain medication required on regular basis. No abdominal pain. No fever or chills, or unintentional weight loss. No abdominal pain. No urinary or bowel problems. The patient is concerned about history of scoliosis that contributed to her back problems and has questions what she can do about it. ASSESSMENT/PLAN: Patient is presented with back pain. Reviewed with the patient back care and range of motion and stretching exercises. Discussed symptomatic measure. Follow-up back x-ray, patient is not back. Referral to physical therapy. Follow-up labs. Follow-up in the clinic for complete physical in next couple of weeks or earlier p.r.n.

02-21-07, Facey Medical Group, Stuart Shear, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient presents with the lesion on her central lip. ASSESSMENT: Actinic keratosis. PLAN: As soon as the patient has this party over the weekend, she is going to come back and then have it frozen with liquid nitrogen. In addition, she has some benign lentigines, for which I have prescribed for her some Solage to use twice a day in conjunction with SPF #30 sunscreen.

02-23-07, Facey Medical Group, Nicholas Tuso, M.D.
Progress Note
PRESENTING COMPLAINTS: This patient is followed for ASCUS. She has no vaginal symptoms. Her last menstrual period was 01-28-07. ASSESSMENT: Follow-up of ASCUS with negative HPV. Repeat Pap smear today. PLAN: Follow-up at annual visit unless this Pap smear is abnormal. AMENDMENTS: 1. I spoke with the patient today regarding the results of a second ASCUS result. The patient is referred upfront for colposcopy appointment.

02-23-07, Quest Diagnostics, Kenneth E. Francus, M.D.
Laboratory Report
TEST: Surepath Rfx: INTERPRETATION/RESULT: Atypical squamous cells of undetermined significance (ASC-US). HPV DNA – Not detected.

03-14-07, Facey Medical Group, Nicholas Tuso, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient is here for ASCUS negative HPV results. Most recently in last month. ASSESSMENT: changes consistent with cervicitis, doubt dysplasia. PLAN: To review results with patient. CIN 2/3 requires LEEP. If low-grade or less, repeat Pap smear 6 months for the next specimens, followed by similar intervals the next year. Patient understands the need for close follow-up with this condition. Patient has a secondary problem of stress urinary incontinence, she is a G4 P3 Abl. Nonsmoker. AMENDMENTS: 1. Patient formed of benign results of colposcopy. She should follow-up between 6 and 12 months for her next Pap smear. She has had ASCUS with negative HPV. She has the urine lab slip for the culture and will wait until after her menstrual cycle to complete this.

03-14-07, Quest Diagnostics, Joseph Tang, M.D.

COLLIER APL 0640

**LIB000186**

**Collier, Vicki**
**October 17, 2019**
**Page 21 of 44**

Tissue Pathology Report
DIAGNOSIS: A. Chronic cervicitis with squamous metaplasia. No tumor or dysplasia identified. B. Chronic cervicitis with squamous metaplasia. No tumor or dysplasia identified. C. Scant pieces of benign endocervical epithelium. D. Chronic cervicitis with squamous metaplasia. Separate fragment of benign ectocervical squamous epithelium present. No tumor or dysplasia identified.

04-09-07, Quest Diagnostics
Laboratory Report
TESTS: Urinalysis complete test were performed.

04-09-07, Quest Diagnostics
Laboratory Report
TESTS: Culture, urine, routine. RESULT: No growth.

04-15-07, Quest Diagnostics
Laboratory Report
TESTS/RESULTS: Culture anaerobic bacteria with gram stain. RESULT: No anaerobes isolated.

04-15-07, Facey Medical Group, Yongmoon Park, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient came here because of the redness, swelling, and tender on the left fourth finger. At the near to the fingernail, she had a hangnail and then after that there was redness and swelling with some pus discharges. No other active medical problem. ALLERGIES: No known allergies. ASSESSMENT: Paronychia and cellulitis of the left fourth finger. PLAN: I gave the Keflex 500 mg one capsule three times a day for 10 days. The patient should be followed by the primary care doctor.

06-05-07, Facey Medical Group, Shendee Teng, M.D./Stella Tanedo, M.D.
Abdominal Ultrasound
IMPRESSION: No change. There is no active disease.

06-21-07, Facey Medical Group, Yongmoon Park, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient came here because of the rashes on bilateral arms and anterior chest after exposing herself under the sun at the beach two days ago. She said there is some mild degree of itchiness. She took some hydrocortisone cream and Benadryl but that was not helping. Also, she noticed that discoloration of the toenails. She was told that she has nail fungus. ALLERGIES: She is allergic to erythromycin. ASSESSMENT AND PLAN: Onychomycosis. Eczema secondary to the sun exposure. I gave 0.1% Kenalog cream apply twice a day for about a week and Lotrimin solution was given to apply to the affected toenails for the next two months. The patient should be followed by the primary care doctor if there is no improvement.

06-25-07, Facey Medical Group, Mary Kasem, M.D.

COLLIER APL 0641

**LIB000187**

Collier, Vicki
October 17, 2019
Page 22 of 44

Progress Note
PRESENTING COMPLAINTS: Patient initially made the appointment for a skin lesion on her back that looked like a scab, but now healing in the last week and a lot better since she made the appointment. However, recently she was seen in Urgent Care for a rash that appeared on her arm after she used a new sunscreen product. It finished off hydrocortisone and actually started using Benadryl that seems to help. No fever or cough. No shortness of breath. No nausea or vomiting. ASSESSMENT/PLAN: Patient presented with unspecific dermatitis. Discussed skin care, symptomatic measures, and alarming sign for precancerous and cancerous skin lesions. Referral to dermatology. Follow-up labs. Follow-up in the clinic for complete physical in next couple of weeks or earlier p.r.n.

07-23-07, Facey Medical Group, Zinat Choudhury, M.D.
Progress Note
PRESENTING COMPLAINTS: Unable to hear. Patient has stated that she went Las Vegas last week and just came back and since last night she has decreased hearing on the left ear. She stated that she had same symptom about a year ago and at that time was concerned about having any cerebral tumor, so MRI or CT scan was done, everything came negative. ENT referral was done and audiologist referral also was done and then was found out that she has some kind of ear problem, which need steroid shots. So she asked for steroid shot today. She denied any fever. Denied any nausea or vomiting. Denied any other symptom. PAST MEDICAL HISTORY: None. ALLERGIES: Erythromycin. IMPRESSION: Mild otitis media with effusion with ET tube dysfunction and decreased hearing. TREATMENT: Stat referral to ENT doctor. Advised the patient to follow-up with ENT for steroid shot and continue this treatment, but the patient was concerned about having hearing deficit overnight, she demanded for steroid shot, but at this moment I do not recommend steroid shot. Advised the patient to follow-up ENT specialist and for further evaluation and treatment.

07-24-07, Facey Medical Group, Linh Ngo, M.D.
Urgent Care Visit
PRESENTING COMPLAINTS: Patient is complaining of for decreased hearing. This occurred about two days ago after coming back from Nevada, denied any trauma or injury. No flu like symptoms. She was exposed to loud music, and change in altitude one was in Nevada. This seemed to be similar incidents about last year, in which she had a decrease in hearing, and was seen by an ENT. At that time we were advised to acute Solu-Medrol injection as wells as a tapering course of prednisone, and which seemed to improved hearing. Etiology of the decrease in hearing is uncertain. Patient seen Dr. Ginny Newman, audiologist, and was confirmed to have low frequency hearing loss on the left ear. This appeared to be the same low-frequency hearing loss as of last year. She currently has an appointment for ENT on Thursday. Allergies: Erythromycin. IMPRESSION/PLAN: Decrease in hearing in the left, low-frequency hearing loss confirmed on audiology examination. Solu-Medrol 125 mg given IM in clinic, discharge home on tapering course of prednisone. She is to follow-up with the ENT on Thursday.

07-29-07, Facey Medical Group, Yongmoon Park, M.D.
Progress Note

LIB000188

Collier, Vicki
October 17, 2019
Page 23 of 44

PRESENTING COMPLAINTS: Patient came here for the decrease of hearing on the left side. She was seen by the ENT doctor who has been working on her hearing loss. There is a low-frequency hearing loss. Whenever this happens, she receives Solu-Medrol 125 mg IM injection and tapering dose of prednisone. ALLERGIES: She is allergic to erythromycin. ASSESSMENT AND PLAN: Decreasing hearing loss of the left ear with low-frequency hearing loss confirmed in the audiology examination. As per the ENT doctor, we gave the SoluMedrol 125 mg IM injection and then the patient will be followed by the ENT doctor for the tapering dose of prednisone.

09-10-07, Facey Medical Group, Khosro Sadeghani, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient is here today with chief complaint of lesion in the left upper back started in past few months. She has history of basal cell removed from right upper shoulder in the past. No other complaints except for some sun damaged spots. IMPRESSION: 1. A birthmark in the right lower back consistent with cafe au fait with no asymmetric changes no color variation no irregular border. 2. Basal cell carcinoma by dermoscopic exam on the left upper back. Advised patient to proceed with excision. All the complications of excision were discussed with the patient in detail including but not limited to the risk of bleeding, scar formation, infection and keloid. Post prep & drape and infiltration of 2% lidocaine the lesion completely removed by an elliptical excision 1.2-cm in size fallowed by superficial and deep repair with Vicryl 4-0. I gave the patient wound instructions including Polysporin plus water-proof band aid daily for 10 days. Follow-up for wound recheck and removal of stitches in 10 days. 3. Lentigines on anterior thighs negative ABCD criteria. Solar protection is recommended. Follow-up in 10 days.

09-24-07, Facey Medical Group, Khosro Sadeghani, M.D.
Progress Note
PRESENTING COMPLAINTS: She is here today for follow-up. The surgical wound looks good except for mild erythematous changes on the left upper back. Pathology report showed basal cell carcinoma focally involving margin. The patient has no complains. IMPRESSION: 1. Basal cell carcinoma on left upper back. I offered the patient to proceed with re-excision. She would like to proceed with observation at this point. For prevention of scar formation Kelo-cote gel for 6 weeks. 2. Two small actinic keratosis as mentioned above. All the complications of cryotherapy discussed with the patient in detail including but not limited to the risk of blister, scab, scar, discoloration, keloid and pigmentary changes. Liquid nitrogen applied on the lesions as mentioned above. Solar protection is recommended. Follow-up in my office in 6 to 8 weeks. AMENDMENTS: 2. I notified the patient today that she missed her appointment with me on 11-05-07. She stated that she totally forgot about her appointment. I strongly advised patient to call my office tomorrow to make an another appointment in the next couple of weeks for skin re-examination and evaluation. She must call my office tomorrow to reschedule her appointment.

10-05-07, Facey Medical Group, Mary Kasem, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient presents for numbness and pain left arms off and on for the last couple months. Her symptoms usually start in the neck and shoulder, and

COLLIER APL 0643

LIB000189

**Collier, Vicki**
**October 17, 2019**
**Page 24 of 44**

radiates down her arm. Symptoms usually worse with poor posture and stress. For example, recently, she was at her divorce court for over two days and had more symptoms. It actually got really only recently with back father issues, but it's probably just a matter of time until this resolves and life goes on and she feels about. Also complains that her scoliosis is both has been more bothersome. Everybody noticed it recently, even her gynecologist. She's always had bad scoliosis. Also, her left leg is shorter by approximately half inch compared to her right leg. She feels that a lot of her symptoms are clearly related to her bad back. It's been awhile since she last saw her orthopedics. She had physical therapy, but it did not do anything for her. No specific injury recently. No weakness. No unusual headache, vision changes, focal weakness or loss of consciousness. No loss of urine. No seizure disorder. No fever or chills, or unintentional weight loss. No pain medication required frequently, but she had to use her friends, Tylenol with codeine the other day. Also taking muscle relaxants which helps her to relax and sleep better at night. She continues to exercise regularly at the gym and taking Pilates classes. She feels that she has good exercise tolerance and good balance. ALLERGIES: Erythromycin Base TABS; Rash. ASSESSMENT: Patient presented with multiple musculoskeletal complaints, stress, and insomnia. PLAN: Avoid heavy lifting. Apply ice packs for two days, then heat thereafter. Careful reintroduction of activity, along with stretches and walking. Tylenol as directed p.r.n. NSAIDs as directed p.r.n. Vicodin as directed p.r.n. Muscle relaxer as directed p.r.n. Discussed alarming signs. Referral to Ortho for consideration for Epidurals. Follow-Up: 1 Week(s). Sooner if symptoms worsen.

10-05-07, Quest Diagnostics
Laboratory Report
TESTS: Culture, urine, routine. RESULT: 50,000-100,000 CFU/mL of lactobacillus species may represent colonizers from external and internal genitalia. No further testing (including susceptibility) will be performed.

10-05-07, Quest Diagnostics
Laboratory Report
TESTS: Basic metabolic panel: GFR estimated – Low; Hepatic function panel: Globulin – Low; CBC with automated differential; TSH; Urinalysis complete: Urine appearance – Abnormal.

10-18-07, Facey Medical Group, Shendee Teng, M.D./Mary Kasem, M.D.
X-Ray of the Entire Spine
IMPRESSION: 1. Very mild reversal of the cervical curvature. 2. Minimal end plate osteophyte formation. 3. Mild demineralization. 4. No other significant finding.

11-08-07, Facey Medical Group, Nicholas Tuso, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient is here for follow-up pap. Pap History: ASCUS + HPV. Reports spotting/bleeding and denies discharge. PAST MEDICAL HISTORY: History of cervical dysplasia. PAST SURGICAL HISTORY: History of a vaginal delivery only; History of tonsillectomy; History of enlargement procedure of both breasts; History of dilation and curettage. SOCIAL HISTORY: Behavioral history: No tobacco use. Alcohol: A social drinker.

COLLIER APL 0644

**LIB000190**

**Collier, Vicki**
**October 17, 2019**
**Page 25 of 44**

Allergies: Erythromycin Base TABS; Rash.  ASSESSMENT: History of abnormal Pap smear.
PLAN: Follow-Up: 1 year for annual.  Pap smear notification discussed.

11-28-07, Facey Medical Group, James Kayvanfar, M.D.
Progress Notes
PRESENTING COMPLAINT: The patient complained of painful popping on left hip with
ROM.  Also complained of neck pain, low back pain and left shoulder blade pain.
ASSESSMENT/PLAN: Cervical spondylosis with radiculopathy.  Left scapular pain.
Asymptomatic left shoulder popping.  Minimal scoliosis thoracic lumbar spine.  Low back
pain.  Left hip pain.  Follow-up with spine x-ray and left hip x-ray.  To check MRI of the
cervical spine done if not will order MRI of the cervical spine.  RTC with x-ray.

12-05-07, Facey Medical Group, Khosro Sadeghani, M.D.
Progress Note
PRESENTING COMPLAINTS: She is here today for follow-up on basal cell carcinoma
removed from her left upper back in September.  The margin was focally involved.  She
hasn't noticed any recurrent lesion in her back.  IMPRESSION: Based cell carcinoma
removed from the left upper back.  The margin was focally involved.  I offered the patient to
proceed with re-excision.  The patient decided to proceed with observation instead.  I don't
see any evidence of a basal cell carcinoma by inspection or dermoscopy.  There is a very
small risk of recurrent basal cell carcinoma at the edge of the scar of surgery.  The risk of
metastatic BCC is a very small.  All of the above discussed with the patient in great detail.
She already decided to proceed with observation.  Solar protection is recommended.
Follow-up for reevaluation in 3 months or sooner if any recurrent BCC lesion.

12-07-07, Facey Medical Group, Gregory Paranay, M.D./Nicholas Tuso, M.D.
Transabdominal and Transvaginal Ultrasound of the Pelvis
CONCLUSION: 1. Mildly enlarged retroverted uterus with at least three fibroids.  2. Left
ovarian cyst or follicle.  3. Normal appearing right ovary.

12-19-07, Facey Medical Group, Nicholas Tuso, M.D.
Progress Note
PRESENTING COMPLAINTS: This patient present for endometrial biopsy today.  She is
presented with symptoms of endometrial cells on Pap smear.  Her symptoms have been
present for several weeks.  She is not at risk of being pregnant currently secondary to: no
menstrual delay.  PAST MEDICAL HISTORY: Cervical Dysplasia.  PAST SURGICAL HISTORY:
Breast Surgery Enlargement Procedure Bilateral.  Dilation And Curettage.  Obstetrical
Services Vaginal Delivery Only.  Tonsillectomy.  SOCIAL HISTORY: Being a social drinker.
No        tobacco        use.        ASSESSMENT:        Abnormal        pap        test        atypical
glandular/endocervical/endometrial cells.  PLAN: Follow-Up: Six months for Pap smear
and for annual.  1. A copy of the gyn cancer brochure is provided for the patient.  2. She is
advised to follow-up with a phone call to me if she has not received her results from today's
visit within 4 weeks.

02-19-08, Facey Medical Group, Mary Kasem, M.D.
Progress Note

COLLIER APL 0645

LIB000191

**Collier, Vicki**
**October 17, 2019**
**Page 26 of 44**

PRESENTING COMPLAINTS: Patient presents for recurrent right elbow pain and requesting steroid injection, she did a lot of work in her backyard couple of weeks ago and she's been trying all sorts measure including brace anti-inflammatory without improvement of her symptoms. She is also requesting referral for podiatrist for symptomatic bunions, and follow-up with chiropractor for recurrent back pain. No specific injury recently. No weakness no numbness no pain medication required frequently. No fever. ALLERGIES: Erythromycin Base TABS; Rash. ASSESSMENT: Right elbow tendinitis. PLAN: OTC NSAIDs p.r.n. ACE Wrap. X-ray patient did not come back. Refer to Orthopedics. Follow-Up: If symptoms persist or worsen.

03-19-08, Facey Medical Group, Timothy Sprague, M.D./Mary Kasem, M.D.
X-Ray of the Right Elbow
CONCLUSION: Negative.

03-19-08, Facey Medical Group, Timothy Sprague, M.D./Mary Kasem, M.D.
X-Ray of the Right Foot
CONCLUSION: Negative.

04-08-08, Facey Medical Group, Martin Applebaum, M.D./Nicholas Tuso, M.D.
Mammography Report
IMPRESSION: 1. Implants. 2. No evidence of malignancy. ASSESSMENT: 1. BIRADS category II: Benign findings.

05-14-08, Facey Medical Group, Mary Kasem, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient presents to disc meds and needs podiatry referral for persistent foot pain. She's been under a lot of stress recently going through a divorce and a lot of stress at home, but doing better. She continued use Xanax just p.r.n. No depression. ALLERGIES: Erythromycin Base TABS; Rash. ASSESSMENT: Anxiety. PLAN: Refill on Xanax p.r.n. discussed medication use, precaution and side effects. Encouraged follow-up in counseling. Follow in clinic for complete physical earlier p.r.n.

05-21-08, Facey Medical Group, Nicholas Tuso, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient is here for follow-up pap. Patient presents for annual gyn exam. She denies symptoms of irregular bleeding, discharge, or pelvic pain. She has no fever, weight loss, chest pain and remainder of systems are negative as well. She is not sexually active. PERTINENT PAST HISTORY: Abnormal Pap. ALLERGIES: Erythromycin Base TABS; Rash. ASSESSMENT: Annual gyn exam. DIAGNOSIS: #2 inguinal swelling NOS. PLAN: Follow-up in 6 months as discussed. Importance of compliance stressed. Result notification reviewed with patient. Gyn brochure provided in room for patient use.

06-25-08, Facey Medical Group, Jeffrey Joung Lee, D.P.M.
Progress Note
PRESENTING COMPLAINTS: Patient presents to clinic complaining of a painful bump on the right foot. Patient reports that is painful when she wears tight shoes. PAST MEDICAL

COLLIER APL 0646

**LIB000192**

**Collier, Vicki**
**October 17, 2019**
**Page 27 of 44**

HISTORY: Anxiety.  ALLERGIES: Erythromycin.  ASSESSMENT: 1. Ganglion cyst.  2. Pain.  PLAN: Patient's diagnoses and treatment plan were discussed today.  Discussed treatment options for the ganglion cyst.  Patient would like to try aspiration.  Patient does not want to do the aspiration today.  Patient will be scheduled for an aspiration in one week.

06-25-08, Facey Medical Group, Gregory Paranay, M.D./Jeffrey Joung Lee, D.P.M.
X-Ray of the Right Foot
CONCLUSION: 1. Pes planus.  2. Soft tissue prominence about the right first metatarsal.  3. No acute bony changes.

07-02-08, Facey Medical Group, Jeffrey Joung Lee, D.P.M.
Progress Note
PRESENTING COMPLAINTS: Patient presents to clinic for aspiration of a ganglion cyst on the right foot.  The patient reports irritation when exercising. PAST MEDICAL HISTORY: Anxiety.  ALLERGIES: Erythromycin.  ASSESSMENT: 1. Ganglion cyst.  2. Pain.  PLAN: Patient's diagnoses and treatment plan were discussed today.  Discussed risk complications versus benefits of aspiration.  Advised patient that there is a possibility the cyst can grow back.  Patient understood and signed consent.  Anesthesia was achieved with 5 cc of 0.5% Marcaine plain in a field block.  An 18-gauge needle was introduced into the cyst.  The cyst was aspirated of clear gelatinous fluid.  Any remaining clear gelatinous fluid was expressed.  Applied dry sterile dressings and a compressive manner.  Return in two weeks for follow-up.

08-27-08, Facey Medical Group, Nicholas Tuso, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient in to follow on her heavy bleeding per Dr Tuso.  This patient is presented with a complaint of abnormal vaginal bleeding.  She states the problem has been present for approximately 2 months' duration.  Symptoms are moderate in her estimation.  Symptoms are not associated with pelvic pain.  Symptoms are not associated with postcoital bleeding.  Bleeding is described as cyclic in timing. ACTIVE PROBLEMS: Hypercholesterolemia.  PAST MEDICAL HISTORY: Cervical dysplasia.  PAST SURGICAL HISTORY: Breast Surgery Enlargement Procedure Bilateral.  Dilation and curettage. Obstetrical Services Vaginal Delivery Only.  Tonsillectomy.  SOCIAL HISTORY: Being a social drinker.  No tobacco use.  ASSESSMENT: Menorrhagia.  PLAN: Follow-Up: 1 week after scheduled date for pelvic ultrasound.  Labs ordered.

08-27-08, Facey Medical Group, Maher Sadar, M.D.
Progress Note
PRESENTING COMPLAINTS: 1. Rule out umbilical hernia.  2. Bilateral inguinal lymphadenopathy that we have been following the patient for.  This female well known to me with a history of umbilical hernia repair.  She had some pain around her bellybutton, above like 5 cm and was complaining of mild pain. PAST MEDICAL HISTORY: None.  PAST SURGICAL HISTORY: Umbilical hernia repair.  ALLERGIES: NKDA.  HABITS: None. ASSESSMENT AND PLAN: This patient is presented with the following problems: 1. Possible small ventral hernia.  It is asymptomatic at the moment.  We will observe the patient.  The patient is to follow-up with us in 6 months for reevaluation.  2. Bilateral

COLLIER APL 0647

**LIB000193**

**Collier, Vicki**
**October 17, 2019**
**Page 28 of 44**

inguinal lymphadenopathy. It is still very small and shy. There are no signs of malignancy. We recommend the patient to be observed and then to follow-up with us in 6 months for reevaluation. The plan of the treatment was discussed with the patient in details. The patient will follow-up according to the plan.

08-27-08, Facey Medical Group, Jeffrey Joung Lee, D.P.M.
Progress Note
PRESENTING COMPLAINTS: Patient returns to clinic for follow-up of a ganglion cyst on the right foot. The patient reports the aspiration worked well. However, a small portion of the cyst appears to be growing back. Patient reports that there is pain with pressure. PAST MEDICAL HISTORY: Anxiety. ALLERGIES: Erythromycin. ASSESSMENT: 1. Ganglion cyst. 2. Pain. PLAN: Patient's diagnoses and treatment plan were discussed today. Discussed risk complications versus benefits of aspiration. Advised patient that there is a possibility the cyst can grow back. Patient understood and signed consent. An 18-gauge needle was introduced into the cyst. The cyst was aspirated of clear gelatinous fluid. Applied a Band-Aid. Return p.r.n.

09-09-08, Quest Diagnostics
Laboratory Report
TEST: Lipid panel: Cholesterol, total – High; FSH; LH (serum); TSH.

09-11-08, Quest Diagnostics
Laboratory Report
TEST: CBC with automated differential: Hematocrit – Low; Hemoglobin – Low; POC urine pregnancy – Negative.

09-11-08, Quest Diagnostics
Laboratory Report
TEST: Culture, urine. RESULT: No growth.

09-11-08, Facey Medical Group, Nicholas Tuso, M.D.
Progress Note
PRESENTING COMPLAINTS: Patient has been heavy bleeding today pain on her left side. The patient reports over two months duration of heavy vaginal bleeding. It is associated with some cramping otherwise no other additional symptoms. She does have some possible hormonal or irritability symptoms however. ACTIVE PROBLEM: Hypercholesterolemia. ALLERGIES: Erythromycin. ASSESSMENT: Abnormal uterine bleeding. PLAN: Follow-up after ultrasound consideration for hysteroscopic endometrial ablation. The patient is interested in non-hysterectomy therapy.

09-12-08, Facey Medical Group, Nicholas Tuso, M.D.
Transabdominal and Transvaginal Pelvic Ultrasound
IMPRESSION: 1. 8.4 cm left adnexal hypoechoic mass. 2. Fundal uterine fibroid.

09-18-08, Quest Diagnostics
Laboratory Report

COLLIER APL 0648

LIB000194

**Collier, Vicki**
**October 17, 2019**
**Page 29 of 44**

TEST: CBC with automated differential; CA 125.

09-18-08, Facey Medical Group, Nicholas Tuso, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presents follow-up on her ultrasound. ASSESSMENT: Lesion left ovary. PLAN: Follow-up ultrasound ordered, CA 125 also.

10-13-08, Facey Medical Group, Jeffrey J. Lee, DPM
Podiatry Note
PRESENTING COMPLAINTS: Patient returns to clinic for follow-up of a ganglion cyst on the right foot. The patient reports a small portion of the cyst appears to be growing back. Patient reports that there is pain with pressure. PAST MEDICAL HISTORY: Anxiety. ALLERGIES: Erythromycin. ASSESSMENT: 1. Ganglion cyst. 2. Pain. PLAN: Patient's diagnoses and treatment plan were discussed today. Discussed risk complications versus benefits of aspiration. Advised patient that there is a possibility the cyst can grow back. Patient understood and signed consent. An 18-gauge needle was introduced into the cyst. The cyst was aspirated of clear gelatinous fluid. Applied a Band-Aid. RTC p.r.n.

10-23-08, Facey Medical Group, David Broumandi, M.D./Nicholas Tuso, M.D.
Ultrasound of the Pelvic
IMPRESSION: 1. Small adnexal cysts as described. 2. Endometrial echo complex measuring approximately 13 mm.

10-30-08, Facey Medical Group, Nicholas Tuso, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient is here today to discuss ultrasound results. Patient presents with a complaint of cyst. ASSESSMENT: Cysts. PLAN: RTC in 1 year.

11-17-08, Facey Medical Group, Christopher Hougen, M.D.
Progress Notes
PRESENTING COMPLAINTS: The patient fell on her left elbow last week and has a laceration with swelling and redness. She also noted it has gotten slightly worse. ALLERGIES: Erythromycin causing a rash. ASSESSMENT AND PLAN: Left elbow cellulitis. I will go ahead and treat with Keflex 500 mg and I will give Bactrim double Strength b.i.d, as well. The patient is to follow-up as we discussed if symptoms do not resolve. The patient is to follow-up within a week as well.

03-02-09, Facey Medical Group, Jeffrey J. Lee, DPM
Podiatry Note
PRESENTING COMPLAINTS: Patient returns to clinic for follow-up of a ganglion cyst on the right foot. The patient reports a small portion of the cyst appears to be growing back. Patient reports that there is pain with pressure. PAST MEDICAL HISTORY: Anxiety. ALLERGIES: Erythromycin. ASSESSMENT: 1. Ganglion cyst. 2. Pain. PLAN: Patient's diagnoses and treatment plan were discussed today. Discussed risk complications versus benefits of aspiration or excision. Recommended wider shoes as patient reports that the pain is only present when she wears tight shoes. RTC p.r.n.

COLLIER APL 0649

**LIB000195**

**Collier, Vicki**
**October 17, 2019**
**Page 30 of 44**

04-08-09, Facey Medical Group, Gregory Paranay, M.D./Mary Kasem, M.D.
Mammogram Bilateral Breast
IMPRESSION: 1. Bilateral breast implants.  2. No radiographic evidence of malignancy with no change since 04-08-08.  3. Bi-rads category II: Benign findings.

05-20-09, Facey Medical Group, Nicholas Tuso, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient is due for annual gynecologic exam.  She states her LMP was regular.  She does not notice any breast lumps or problems.  ASSESSMENT: The exam has reassuring findings.  PLAN: RTC in 6 months.  Medications and Instructions: Barrier contraception.

05-20-09, Quest Diagnostics
Laboratory Report
TEST: Surepath Rfx HPV.  INTERPRETATION/RESULT:  Negative for intraepithelial lesion or malignancy.

06-30-09, Quest Diagnostics
Laboratory Report
BIOPSY (UP TO 9 SPECIMEN): DIAGNOSIS: Benign endometrial tissue showing focal glandular and stromal breakdown, no evidence of hyperplasia or malignancy.

06-30-09, Facey Medical Group, Ajit Kittur, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient here for heavy bleeding.  Last night very heavy.  Has noticed a very heavy menstrual cycles which started 3 days ago.  She had similar episode of menorrhagia requiring omental biopsy.  In December 2007 which showed secretory endometrium.  Patient has been feeling bloated and pelvic discomfort the last several months.  Her last ultrasound in October of 2008 had revealed.  Enlarged uterus 15x6.8 side.  She was followed for ovarian cyst which was rather small less than 3 cm.  She has regular menstrual cycles.  Her previous menstrual period was in mid May 2009.  Generally does not have dysmenorrhea.  Does have occasional dyspareunia because of a retroverted uterus.  History of anemia one and a half year ago.  Patient is not a smoker.  Using condoms for contraception.  ASSESSMENT: Menorrhagia secondary to fibroids with severe dysmenorrhea.  PLAN: Control bleeding with high-dose birth control pills.  Zofran given in case patient experiences nausea.  RTC in 2 weeks.

10-12-09, Facey Medical Group, Jeffrey J. Lee, DPM
Podiatry Note
PRESENTING COMPLAINTS: Patient returns to clinic for follow-up of a ganglion cyst on the right foot.  The patient also complains of fungus in her right great toenail.  PAST MEDICAL HISTORY: Anxiety.  ALLERGIES: Erythromycin.  ASSESSMENT: 1. Ganglion cyst, resolved.  2. Onychomycosis.  PLAN: Patient's diagnoses and treatment plan were discussed today.  Advised patient that there is no ganglion cyst noted at this time.  Discussed treatment options for Onychomycosis.  Patient deferred oral medication.  RTC p.r.n.

LIB000196

**Collier, Vicki**
**October 17, 2019**
**Page 31 of 44**

10-12-09, Facey Medical Group, Mary Kasem, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presents for recurrent tingling in her feet and back issue, possibly stress-related and she is concerned about diabetes. Needs refill on topical medication for acne p.r.n. also need referral to dermatology for skin check with history of basal cell carcinoma. ASSESSMENT: Patient with anxiety, back pain, acne. PLAN: Reviewed healthy lifestyle stress reduction, relaxation exercises and sleep hygiene, skin care and symptomatic measures, p.r.n. Discussed medication use precaution side effects. Discussed alarming signs for precancerous and cancerous skin lesions. Referral to dermatology. Follow-up labs and follow-up in clinic for complete physical earlier p.r.n.

10-12-09, Facey Medical Group, Edward Gabriel, M.D.
X-Ray of the Lumbar Spine, Five Views
IMPRESSION: Transitional L5 segment with slight asymmetry of the facet joints, otherwise normal study.

10-12-09, Quest Diagnostics
Laboratory Report
TESTS: Urinalysis complete with reflex to culture; Basic metabolic panel: CBC with automated differential; Folate, serum; TSH; Vitamin B12.

10-12-09, Quest Diagnostics
Laboratory Report
TESTS: Culture, urine: RESULT: No growth.

12-02-09, Facey Medical Group, Mary Kasem, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presents for follow-up. Her back is bothering her the most recently and she's interested in chiropractic therapy. Otherwise, doing well. ASSESSMENT: Lower back pain. PLAN: Reviewed back care and symptomatic measures, p.r.n. Refer to chiropractic therapy. Reviewed medication use precaution side effects. Follow-up labs a complete physical and follow-up in clinic earlier p.r.n. if symptoms worsen or persist.

01-06-10, Facey Medical Group, Nicholas Tuso, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presents for follow-up pap. ASSESSMENT: Cycles regular, history of pap abnormal. PLAN: RTC in 6 months.

02-15-10, Facey Medical Group, Zinat Choudhury, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient stated that had injury right elbow about 2 weeks before, after that having pain, swelling, decreased range of motion and difficulty of weightbearing. DIAGNOSIS: Sprain vs. small avulsion fracture ulna. PLAN: Rest, ice, elevation. Prescribed ibuprofen 800 mg. Follow-up as advised.

COLLIER APL 0651

**LIB000197**

**Collier, Vicki**
**October 17, 2019**
**Page 32 of 44**

03-02-10, Facey Medical Group, Mary Kasem, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presents for follow-up on elbow. She complained of chronic right elbow problem. She was seen in urgent care status post recent injury and x-ray were negative. Continues to complain of recurrent pain and swelling right elbow. She had multiple injections to her elbow without much improvement. ASSESSMENT: Elbow tendonitis. PLAN: Discussed symptomatic measures with rest, ice, anti-inflammatory brace, avoid aggravating activities and discuss medication use precaution and side effects. Referral to orthopedics and follow-up in clinic earlier p.r.n.

04-12-10, Facey Medical Group, Edward Gabriel, M.D.
Mammogram Bilateral Breast
IMPRESSION: Benign findings. RECOMMENDATION: Annual imaging. Bi-rads category 1.

05-10-10, Facey Medical Group, Robert Roth, M.D.
Ortho Consult Note
PRESENTING COMPLAINTS: Patient has been referred by Dr. Kasem for hand surgery consultation. Patient has had pain to her right LHE for approximately 2 years. She has received three steroid injections to this area that helped to relieve the pain temporarily. She sustained an injury to the lateral right elbow around 02-01-10 when she fell during one of her aerobic exercises at the gym. She had significant pain. She was seen 2 weeks later at the UC for persistent swelling and pain to the area. X-rays were taken by Dr. Chowdhury which showed a possible bone spur versus bone chip. She is referred to my clinic for evaluation. RECOMMENDATIONS: Since patient shows excellent response to displacing the focus of pressure distal leg, I have recommended conservative treatment. This includes tennis elbow strap, heat and stretching, massage and anti-inflammatories. If she slowly improves no further treatment would be required. I do not recommend steroid injections. Should she fail conservative treatment, then MRI and surgery are recommended. I have discussed this at length with patient. She understands and agrees with the above plan. I have described the specific tennis elbow strap that I usually recommend, the Band-it. She will be seen again in three weeks. I have also indicated that failure to rest and allow the area to heal will perpetuate the problem.

06-23-10, Facey Medical Group, Nicholas Tuso, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient is having irregular cycles/constipation/cramping pain. PLAN: Plan follow-up after ultrasound and FSH and LH.

07-09-10, Facey Medical Group, Inna Berdichevsky, N.P.
Progress Notes
PRESENTING COMPLAINTS: Patient presented with a complaint of right nipple itching on and off for past 3 months. Patient has applying teat tree oil with no improvement. Her mammogram was done in 04/2010 was normal. ASSESSMENT: Dermatitis. PLAN: The patient was advised to wear cotton bra. RTC in 1 week. Patient agrees with the plan. Prescribed triamcinolone acetonide 0.1% cream.

COLLIER APL 0652

LIB000198

**Collier, Vicki**
**October 17, 2019**
**Page 33 of 44**


07-09-10, Quest Diagnostics
Laboratory Report
TESTS: FSH; Lipid panel: Cholesterol, total – High; LH (serum).


07-19-10, Facey Medical Group, Inna Berdichevsky, N.P.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient presenting for follow-up uneventful itching. Her symptoms have improved. Patient feels elongated density between 9 to 12:00 along areola area. ASSESSMENT: Palpable nodule, right breast. PLAN: Patient was referred for targeted breast ultrasound. Patient will be notified of the results. Patient to continue using them for one more week. Patient was advised to inform me if the symptoms did not completely resolve by then. Patient agrees with the plan. RTC p.r.n.


07-20-10, Facey Medical Group, Christopher Cumings, M.D.
Ultrasound of the Pelvic with Transvaginal Non-OB
IMPRESSION: 1. Left ovarian cysts and small left hyperechoic nodule adjacent to the cysts. 2. There is a prominent endometrial strips of 1.2 cm in AP diameter. 3. Follow-up examination may be useful.


07-21-10, Facey Medical Group, Edward Gabriel, M.D.
Ultrasound of the Right Breast
IMPRESSION: No mass lesion by ultrasound.


08-02-10, Facey Medical Group, Nicholas Tuso, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presented here for follow-up on ultrasound. PLAN: Patient has had very light cycles lately. Results from her ultrasound are reviewed recommend repeat in 6 weeks follow-up with me in October. Patient requests laboratory screening for liver function as well as for anemia.


08-30-10, Facey Medical Group, Linda Mar, D.O.
Ultrasound of the Pelvic with Transvaginal Non-OB
IMPRESSION: Stable 1.1x0.9x 1 cm hypoechoic structure within the left ovary which could represent a dermoid. Further evaluation with CT or MRI of the pelvis may be considered.


10-01-10, Facey Medical Group, Nicholas Tuso, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presented here for follow-up on ultrasound. ASSESSMENT/PLAN: Patient presents today for follow-up of ultrasound results and management. She has not had a period now for 6 weeks and has symptoms of menopause, hot flashes mainly. Plan is repeat ultrasound in mid-November if there is any increased size of the ovarian lesion we would then act surgically. If she has problems with menorrhagia of any sort she should have endometrial biopsy. The alternative of surgical management was discussed but declined by her based on the low probability of anything significant on surgical evaluation.

COLLIER APL 0653

**Collier, Vicki**
**October 17, 2019**
**Page 34 of 44**

11-03-10, Facey Medical Group, Mary Kasem, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient presents for referral. She is here requesting referral back to see Dr. Sadra on recurrent umbilical hernia. She pushes it and sometimes for cosmetic purposes. Needs refill on Retin-A. Otherwise, doing well. She was not happy with the wait today. ASSESSMENT: 1. Hernia. 2. Acne. PLAN: Discussed symptomatic measures, p.r.n. and warning signs pending further evaluation. Discussed medication. Follow-up labs a complete physical or earlier p.r.n.

11-11-10, Facey Medical Group, Linda Mar, D.O.
Ultrasound of the Pelvic with Transvaginal Non-OB
IMPRESSION: Stable 9x8x9 cm hypoechoic lesion in the left ovary which could represent a dermoid. Further evaluation with CT or MRI of the pelvis may be considered.

11-19-10, Facey Medical Group, Nicholas Tuso, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presents for repeat breast exam. ASSESSMENT: Normal exam. PLAN: Follow-up in for routine annual as indicated.

12-08-10, Facey Medical Group, Maher Sadra, M.D.
Surgery Consult Note
PRESENTING COMPLAINTS/HPI: Patient referred by Dr. Kasem for umbilical mass. Patient is here for consultation regarding abdominal wall mass patient had a history of a umbilical hernia repair with mesh 2002, patient had the decubitus with balanced the old incision and was seen by the PCP who diagnosed him with possible umbilical hernia, patient denied any pain or any discomfort. IMPRESSION/PLAN: Patient with scar tissue from the previous repair, no signs of recurrence, patient reassured and instructed to follow-up with us p.r.n. basis.

10-10-11, Facey Medical Group, Christopher Cumings, M.D.
Mammogram Bilateral Breast
ASSESSMENT: Benign findings. Bi-rads category II. RECOMMENDATIONS: Annual screening.

10-13-11, Facey Medical Group, Nicholas Tuso, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient presents for annual gynecology exam. Patient is due for annual gynecologic exam. She does not notice breast lumps. She does not have urinary symptoms. She states her LMP was regular. Occasionally patient does pelvic pain related to ovarian cysts. ASSESSMENT/PLAN: Normal annual exam. Prescribed hydrocodone-acetaminophen 7.5-650 mg. RTC in 1 year.

10-13-11, Quest Diagnostics
Laboratory Report
TEST: Surepath with HPV. INTERPRETATION/RESULT: Negative for intraepithelial lesion

LIB000200

**Collier, Vicki**
**October 17, 2019**
**Page 35 of 44**

or malignancy.  HPV DNA (High risk): Not detected.

06-13-13, Facey Medical Group, Nicholas Tuso, M.D.
Progress Notes
PRESENTING COMPLAINTS: Patient presents for a complaint of moderate severity genital pruritis.  She felt like she had a cold about a week ago were a few weeks ago.  Her partner of 3 years, monogamous has had a cold sore recently.  She has had normal bowel and bladder function except for some pressure.  She notes 12 other systems on review are negative.  PLAN: Follow-up if symptoms persist or recur after treatment.  Vicodin for pelvic pain this follow-up for annual recommended.  Prescribed hydrocodone-acetaminophen 7.5-650 mg.

09-27-13, Facey Medical Group, Kitty Puktarasiri, N.P.
Progress Notes
PRESENTING COMPLAINTS: Patient presents annual gynecology exam.  Her last pap smear was May/2012.  HPI: Patient presents for annual gynecological exam.  She noted vaginal lesions occurred on and off for the past 2-3 months.  Patient thought it might be from her underwear or shaving cream: Nare.  Patient described menstrual bleeding as stopped for 10 months but returned in August 2013.  Patient had pap smear done at Kaiser last year, it revealed HPV.  She underwent Colposcopy, biopsy was negative.  She needed a follow-up.  ASSESSMENT: 1. Visit for: Screening for malignant breast neoplasm.  2. Cervical high risk human papilloma virus DNA test was positive.  3. Routine gynecological exam with cervical pap smear.  PLAN: Pap smear and breast examination were done.  Schedule her for a mammogram.  Patient is advised to do warm sitz bath and apply Neosporin to ablation on perineum twice a day x5 days.  Good hygiene is advised, recommend one percent cotton underwear.  Return to clinic for gynecological exam in one year.  New guidelines on pap smear were discussed.  Appropriate timing on the test was advised.  DISCUSSED: Today your visit included the annual gynecologic examination.  While pap smear tests are useful for screening for cervical cancer, recent guidelines have shown that testing at 3-5 year intervals for individuals at low risk is the best practice.  However, other parts of the pelvic exam continue to be important annually for screening.  Exercise: Regular exercise has been shown to reduce the risk of osteoporosis, cardiovascular disease and stroke.  Regular exercise is also helpful for weight management.  Diet and Supplements: Most supplements, vitamins and nutritional pills have not been clinically proven to benefit your health and some have been shown to be actually harmful.  Calcium in the amount of 1,500 milligrams and vitamin D in 1000-2000 IU is of uncertain benefit in the most recent studies.  Generally, the best approach is a balanced diet low in saturated fats and of the proper caloric amount to optimize your future health.  PAP smear testing was done and results will be forwarded to you by mail.  If you have not received results within 3-4 weeks you need to call the office to find out the results.  Cervical cultures for gonorrhea and chlamydia testing were done and results will be forwarded to you by mail.  The following studies were ordered today mammogram you should schedule this at the front desk with our staff.

09-27-13, Quest Diagnostics
Laboratory Report
TEST: Surepath pap with HPV and GC/chlamydia.  INTERPRETATION/RESULT:  Negative for intraepithelial lesion or malignancy.  HPV DNA (High risk): Not detected.  Chlamydia

COLLIER APL 0655

**LIB000201**

**Collier, Vicki**
**October 17, 2019**
**Page 36 of 44**

Trachomatis DNA, SDA, PAP vial – Not detected.  Neisseria gonorrhoeae DNA, SDA, PAP vial – Not detected.

01-26-15, Facey Medical Group, Maritess Zareno, N.P.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient presents today for a preventive health visit with pap.  Presents today for a routine physical exam.  She is generally feeling well.  Gyn: G 3 P 3 menopause since 12/14 no HRT.  On calcium/vitamin D.  LPS 2014 thru Kaiser at least 3 pap smears all negative.  Her issues include: 1. Mammogram requested has breast augmentation gets an itch to the right areola only.  2. Colonoscopy screening requested.  3. Had ovarian cysts denies pain request for pelvic ultrasound follow-up.  4. Bunion painful at the right only request for podiatry referral had ganglion cyst in the past.  Has Onychomycosis having to cut nails short.  5. Derm consult as she has the cheek lesion on the right side which bleed.  Gets intermittent scaliness at the right side of the nose comes and goes.  ASSESSMENT/PLAN: 1. Neoplasm of uncertain behavior of skin; right side of cheek.  2. Bunion, right.  3. Lump of skin; right inner auricle.  4. Ovarian cyst; 2010 pelvic UTZ showed stable hypoechoic lesion in the left ovary could represent a dermoid.  5. Encounter for preventive health examination.  PLAN: 1. Right cheek uncertain lesion easily bleeds will refer to Derm.  2. Skin nodule likely cyst to the right inner auricle discussed if bothersome or increases in size to follow-up.  3. Follow-up on pelvic ultrasound.  4. Right painful bunion refer to podiatry will order x-rays.  Discussed rx options on onychomycosis otherwise exam findings mild at the right big and second toes.  Pap smear not performed discussed every 3 years from LPS.  Weight bearing exercise, supplemental calcium with vitamin D.  Referral colonoscopy, podiatry and dermatology.  Mammogram bilateral diagnostic.  X-ray of the bilateral foot comp 3 views weightbearing.  Ultrasound of the pelvic with transvaginal non-ob.  EKG-electrocardiogram.  Follow-up: EKG to be done she will return for this see task.

01-26-15, Facey Medical Group, Linda Mar, M.D.
X-ray of Bilateral Foot, 3 views
IMPRESSION: Mild bilateral hallux valgus deformities.  No evidence of acute fracture or dislocation.  Mild degenerative changes at the bilateral first metatarsophalangeal joint.

02-02-15, Facey Medical Group, Christopher Cumings, M.D.
Bilateral Mammogram Report
ASSESSMENT: Benign findings.  BIRADS category II.  RECOMMENDATIONS: Annual screening.

02-06-15, Facey Medical Group, Christopher Cumings, M.D.
US of Pelvic with Transvaginal Non-OB
IMPRESSION: Echogenic left ovarian focus persists suspect as noted previously for possible dermoid.  Possible 1 cm uterine fibroid.

02-25-15, Facey Medical Group, Nicholas Tuso, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient follow-up on ultrasound results.  Patient is due

COLLIER APL 0656

**LIB000202**

**Collier, Vicki**
**October 17, 2019**
**Page 37 of 44**

for annual gyn exam. She has a history of an abnormal pap smear/dysplasia. Last 3 pap smears have been normal. She does not notice breast masses. She does not have urinary symptoms. She states her LMP was 1 year ago. ASSESSMENT/PLAN: 1. High risk human papilloma cervical smear. 2. Amenorrhea. 3. Routine gyn exam. Prescribed acyclovir 400 mg. Ordered laboratory studies.

02-25-15, Quest Diagnostics
Laboratory Report
TEST: Thinprep Imaging system Pap. RESULT: Negative for intraepithelial lesion or malignancy. HPV mRNA E6/E7. RESULT: Not detected.

02-27-15, Facey Medical Group, Shohreh Sayani, DPM
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient here for consult right foot bunion and toenail discoloration. Patient presents for right foot bunion and toenail discoloration. Patient states that she has had bunion for the last 4 years. Reports mild dull non-radiating pain in the morning with first step in the joint. She states the pain can happen in any shoe but she does have some shoes that she's comfortable in. She states the pain has not affected her lifestyle since she does continue to exercise. Secondarily patient reports discoloration of the feet toenails of both feet at the distal tip. She states she is to get pedicures and notices that there is thickness at the end of some of the toenails. Patient also reports she may have a limb length discrepancy. ACTIVE PROBLEMS: Amenorrhea. Bunion, right. Elbow enthesopathy. Hernia. High risk human papilloma cervical smear. Hypercholesterolemia. Lower back pain. Lump of skin; right inner auricle. Neoplasm of uncertain behavior of skin; right side of cheek. Onychomycosis. Ovarian cyst; 2010 pelvic UTZ showed stable hypoechoic lesion in the left ovary could represent a dermoid. PAST MEDICAL HISTORY: Breast mass, right 07-19-10; palpated July 19, imaging was negative. Cervical dysplasia. Herpetic ulceration of vulva 01-14-13; culture was negative for HSV. Obstetrical services vaginal delivery only. PAST SURGICAL HISTORY: Breast surgery enlargement procedure bilateral. Dilation and curettage. Tonsillectomy. SOCIAL HABITS: Never smoker. Denied tobacco use. ASSESSMENT: 1. Lower limb length difference. 2. Bunion, right. 3. Onychomycosis. PLAN/TREATMENT: Discussed bunion deformity and treatment option including continued conservative care versus surgical treatment in which patient's foot type a Lapidus bunionectomy is indicated. Patient will continue with conservative care. Discussed thick toenails and treatment option including ciclopirox solution which was prescribed today. I highly recommend custom-made orthotics and we will get authorization. We will get a bone length examination to see how much of a heel lift she needs. Ordered bone length x-ray studies.

03-11-15, Facey Medical Group, Jihad Batah, M.D.
GI Consult Note
PRESENTING COMPLAINTS: Patient presented here for screening for colon cancer. ASSESSMENT: Screening for colon cancer. GI evaluation for colon cancer screen and a screening colonoscopy. Colonoscopy alternatives, benefits and risks including, but not limited to perforation, hemorrhage, missing the lesion, failure of complete evaluation and poor tolerance to procedure were discussed. Risks related to IV sedation including, but not

COLLIER APL 0657

**Collier, Vicki**
**October 17, 2019**
**Page 38 of 44**

limited to cardiorespiratory arrest were discussed with the patient in full details. Advised to avoid alcohol and nonsteroidal anti-inflammatory drugs for one week before the planned procedure. Cancellation of the test might carry a risk of missing or delaying diagnosis of a cancerous or precancerous lesion or any other clinically significant lesion. The patient showed full understanding of all of the above. The patient requested to proceed with colonoscopy.

03-11-15, Quest Diagnostics
Laboratory Report
TESTS: Lipid panel: Cholesterol, total – High; LDL-cholesterol – High; Non-HDL cholesterol – High; BMP (fasting): CBC with automated differential: WBC count – Low; Absolute neutrophils – Low; Estradiol, serum; FSH; Hepatic panel; LH 9serum); TSH; Urinalysis complete with reflex culture: Leukocyte esterase – Abnormal; WBC – Abnormal; Vitamin D 25-hydroxy LC/MS/MS: Vitamin D, 25-oh, total – Low.

03-11-15, Quest Diagnostics
Laboratory Report
TESTS: Culture, urine. RESULT: Multiple organisms present, each less than 10,000 CFU/mL. These organisms, commonly found on external and internal genitalia, are considered to be colonizers. No further testing performed.

03-27-15, Facey Medical Group, Rebecca Patterson-Judd, M.D.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient presents with right shoulder pain. Patient here to follow-up on right shoulder pain. She has limited range of motion and pain with outstretched distance then lifting. ACTIVE PROBLEMS: Bunion, right. Elbow enthesopathy. Hernia. High risk human papilloma cervical smear. Hypercholesterolemia. Leukopenia. Lower back pain. Lower limb length difference. Lump of skin; right inner auricle. Neoplasm of uncertain behavior of skin; right side of cheek. Onychomycosis. Ovarian cyst; 2010 pelvic UTZ showed stable hypoechoic lesion in the left ovary could represent a dermoid. Screening for colon cancer. Vitamin D deficiency. SOCIAL HABITS: Never smoker. Denied tobacco use. ASSESSMENT: Elbow enthesopathy. PLAN: Right shoulder exercises given, strengthening and range of motion worksheet, use of NSAIDs/ice advised, patient is to follow-up, other possibility would include physical therapy and or steroid injection.

04-14-15, Facey Medical Group, Jihad Batah, M.D.
GI Procedure Note
COMMENTS: Patient canceled her scheduled colonoscopy for today patient will be contacted for rescheduling as per standard policy otherwise patient's care as directed by PCP.

04-14-15, Facey Medical Group, Ruben Brechner, M.D.
X-ray of Right Shoulder 2 views
IMPRESSION: No acute osseous injury.

COLLIER APL 0658

LIB000204

**Collier, Vicki**
**October 17, 2019**
**Page 39 of 44**

04-14-15, Facey Medical Group, Ruben Brechner, M.D.
X-ray of Bone Length
FEMUR LENGTH: Right Femur 64.4 – 18.8 cm = 45.6 cm. Left Femur 64-19.1 = 44.9 cm.
TIBIAL LENGTH: Right Tibia 101.2 – 64.45 = 36.75 cm. Left Tibia 101.2-64.5 = 36.7 cm.

04-14-15, Facey Medical Group, Maritess Zareno, N.P.
Progress Notes
PRESENTING COMPLAINTS/HPI: Patient presents for right shoulder pain/requesting MRI. It has been several months of having pains in the deltoid area of shoulder as well as pain in the proximal forearm also at the posterior above the elbow. Pain at the shoulder is worse upon sleeping can't lay on that side and when she goes to take her shirt off it causes so much pain sometimes unable to sleep. The pain seems to be relieved if she were to apply pressure and massage the right forearm. She did try seeing the chiropractor since does have upper back/neck pains as well. She did try some exercises by use of bands. No direct trauma although reports did fall skating 6 months ago recalls having some pain at the right hand only. She is requesting for an MRI and does not think she needs physical therapy. She does lots of typing and is right-hand dominant. ACTIVE PROBLEMS: Bunion, right. Elbow enthesopathy. Hernia. High risk human papilloma cervical smear. Hypercholesterolemia. Leukopenia. Lower back pain. Lower limb length difference. Lump of skin; right inner auricle. Neoplasm of uncertain behavior of skin; right side of cheek. Onychomycosis. Ovarian cyst; 2010 pelvic UTZ showed stable hypoechoic lesion in the left ovary could represent a dermoid. Screening for colon cancer. Vitamin D deficiency. SOCIAL HABITS: Never smoker. Denied tobacco use. ASSESSMENT: 1. Shoulder pain; right deltoid. 2. Arm pain; dorsal mid FA and medial/posterior elbow. PLAN: Discussed possible shoulder tendonitis and FA/elbow tendonitis - discussed appropriate ergonomics, icing, obtain shoulder x-rays and trial of Medrol dose taper. Referral to ortho for possible cortisone injections/consultation. Prescribed Norco 5/325 mg #10. As discussed or p.r.n.

05-29-15, Facey Medical Group, Charles Young, M.D.
Ortho Consult Note
PRESENTING COMPLAINTS/HPI: Patient presents for consultation relating to right shoulder. The patient is here for evaluation of her right shoulder. She is right-hand dominant. She has been having pain over the last 6 months to one year, without any specific injury or other inciting event. Pain is associated with stiffness. Pain severity is reported to be up to 10/10, worse with overhead activities, working out and sleeping on the affected side. She has taken over-the-counter medications and hydrocodone. She has also tried a Medrol Dosepak which gave her about one week of improvement, followed by return of her discomfort. Pain is localized over the anterolateral shoulder and deltoid region. There is some radiation to the elbow area, which seems to have some separate discomfort as well. ACTIVE PROBLEMS: Arm pain; dorsal mid FA and medial/posterior elbow. Bunion, right. Elbow enthesopathy. Hernia. High risk human papilloma cervical smear. Hypercholesterolemia. Leukopenia. Lower back pain. Lower limb length difference. Lump of skin; right inner auricle. Neoplasm of uncertain behavior of skin; right side of cheek. Onychomycosis. Ovarian cyst; 2010 pelvic UTZ showed stable hypoechoic lesion in the left ovary could represent a dermoid. Screening for colon cancer. Shoulder pain. Vitamin D deficiency. PAST SURGICAL HISTORY: Breast surgery enlargement

COLLIER APL 0659

LIB000205

**Collier, Vicki**
**October 17, 2019**
**Page 40 of 44**

procedure bilateral. Dilation and curettage. Tonsillectomy. SOCIAL HABITS: Never smoker. Denied tobacco use. ASSESSMENT: 1. Subdeltoid bursitis, right. 2. Right lateral epicondylitis. PLAN: I reviewed the findings with the patient in detail. Clinical symptoms of subacromial bursitis/impingement are identified on physical examination. There is no current evidence of full-thickness rotator cuff defect. Conservative and operative treatment options were discussed. Conservative treatments include activity modification, physical therapy for rotator cuff and parascapular strengthening, anti-inflammatory/topical medications, icing, rest or corticosteroid injection. If these measures are unsuccessful, arthroscopic subacromial decompression could be considered. The risks, benefits and expected postoperative limitations/rehabilitation of surgery were discussed. Surgery, if elected, would be performed on an outpatient basis. Preoperative medical evaluation would be necessary. She was amenable to a corticosteroid injection which was given as noted above. A handout with appropriate exercises was also provided. She will return in the future symptoms worsen or persist. We also discussed elbow pain, which demonstrates some evidence of lateral epicondylitis on clinical examination. Conservative treatments are recommended at this point including forearm exercises, use of a counterforce brace, anti-inflammatory topical medications. If this persists, corticosteroid injection could be considered at this location as well. Ordered Arthro aspir major joint bursa and administered injection dexamethasone ace to 1 mg. RTC p.r.n.

07-09-15, Facey Medical Group, Magued Beshay, M.D.
GI Consult Note
PRESENTING COMPLAINTS: Patient referred for screening colonoscopy. ASSESSMENT/PLAN: Screening for colon cancer. GI evaluation for colon cancer screen and a screening colonoscopy. Colonoscopy alternatives, benefits and risks including, but not limited to perforation, hemorrhage, missing the lesion, failure of complete evaluation and poor tolerance to procedure were discussed. Risks related to IV sedation including, but not limited to cardiorespiratory arrest were discussed with the patient in full details. The patient showed full understanding of all of the above. The patient requested to proceed with colonoscopy. Prescribed PEG 3350/electrolytes 240 mg. Referral to colonoscopy. RTC in 3 months.

07-15-15, Facey Medical Group, Magued Beshay, M.D.
GI Procedure Note
INDICATION: Patient is here for colorectal cancer screening. The procedure was recommended to rule out polyp, neoplasm, or any other underlying significant colon pathology. The procedure, benefits, risks and alternatives were discussed with the patient. The patient signed the informed consent form. Interval history and physical updated p.r.n. PROCEDURE PERFORMED: Colonoscopy with biopsy. IMPRESSION: 1. Colonic polyps. 2. Diverticulosis coli. 3. Hemorrhoids. 4. Screening for colon cancer. RECOMMENDATIONS: Diet modification and avoid offending agents. Follow-up on biopsy report. Repeat exam in 5 years or p.r.n. Post-procedure findings and plan were discussed with the patient. The patient is also to continue regular follow-up and monitoring with primary physician. I was present and personally performed the entire endoscopic procedure, from insertion to removal of the endoscope. Follow-up p.r.n. RTC in 3-4 weeks.

COLLIER APL 0660

**LIB000206**

**Collier, Vicki**
**October 17, 2019**
**Page 41 of 44**

07-15-15, Quest Diagnostics, Rodelio C. Guintu, M.D.
Laboratory Report
TEST: Biopsy.  DIAGNOSIS: Hyperplastic polyp no evidence of dysplasia or malignancy.

08-31-15, Dermatology Surgical Medical Clinic/Santa Clarita Valley Inc., G.B. Klein, M.D.
Progress Note
IMPRESSION: Angioma's and brown keratoses, benign – nose and legs.  TREATMENT: Light electrodessication.  FOLLOW-UP: RTC 2 weeks, persists.

12-06-15, Facey Medical Group, Christopher Hougen, M.D.
Urgent Care Note
PRESENTING COMPLAINTS: Patient is in complaining of right shoulder pain for several weeks.  Patient states she was told by a friend and looked on the internet that this is shoulder pain could be a sign of lung cancer.  Patient was very concerned.  Decrease range of motion, particularly abduction. ACTIVE PROBLEMS: Arm pain; dorsal mid FA and medial/posterior elbow.  Bunion, right.  Colon polyps.  Diverticulosis.  Hemorrhoids.  Hernia.  High risk human papilloma cervical smear.  Hypercholesterolemia.  Leukopenia.  Lower back pain.  Lower limb length difference.  Lump of skin; right inner auricle.  Neoplasm of uncertain behavior of skin; right side of cheek.  Onychomycosis.  Ovarian cyst; 2010 pelvic UTZ showed stable hypoechoic lesion in the left ovary could represent a dermoid.  Right lateral epicondylitis.  Screening for colon cancer.  Subdeltoid bursitis, right.  Vitamin D deficiency.  SOCIAL HABITS: Never smoker.  Denied tobacco use.  ASSESSMENT/PLAN: 1. Chest pain.  2. Shoulder strain.  3. Neck strain.  Ordered x-ray of the chest PA (AP)/lateral, 2 views.  Prescribed acetaminophen-codeine 300-30 mg.  DISCUSSION: Patient with her abnormal concerned about lung cancer.  I discussed with patient question if this is an abnormal concerns as opposed to just a typical heard something somewhere.  I offered to do chest x-ray and patient was very thankful for that.  I discussed risks of the chest x-ray and recommend following up with PCP as we discussed to discuss medical concerns and how she can make or medical decision-making and simplest and difference in going on the Internet.  Discuss rice.  High-dose anti-inflammatories 800 milligrams of Motrin 3 times a day possible antacids as well.  Prilosec discussed.  Risks of frozen shoulder discussed in detail.  Range of motion exercises describes.  Follow-up primary care Dr. 3 weeks.  If symptoms aren't resolved as we discussed.

12-06-15, Facey Medical Group, Michael Neglio, M.D.
X-ray of Chest, 2 views
IMPRESSION: No acute cardiopulmonary disease.

**DISCUSSION:**
The patient has been seen in my office previously in relation to the continuous trauma injury that occurred from 2013 to 2017 while employed by the Automobile Club.  This was related to her work as an Insurance Agent.  She was employed in the same capacity for about four years.  Multiple reports have been provided.  There was indication that the patient has had symptoms prior to her work at the Automobile Club.  She started working for the Automobile Club in 2013.

COLLIER APL 0661

**LIB000207**

**Collier, Vicki**
**October 17, 2019**
**Page 42 of 44**

I am now being provided with further medical records from Facey Medical Group. There is indication that in 2002, the patient was having issues related to a hernia and cardiac complaints. In 2003, the patient was seen at Facey and was complaining of back spasm.

However, that was relatively minor and there was no further discussion in regards to back spasm in 2003. The patient continued to have discussions in regards to her hernia repair for a few years. Other than that in 2005, there was discussion in regards to some upper back pain. This was a report from February 10, 2005, but that was due to exercising and was not related to any specific work-related activities. The symptoms were not significant and there was no further mention of her complaints.

Much of the medical records were related to non-orthopedic issues and were related to gynecological issues.

She was suffering from ovarian cyst and some gastrointestinal complaints which are not significant to her industrial injury. In 2007, she was having issues with her lips. In 2007, there was discussion in regards to some finger complaints and she was provided with antibiotics for an infection.

Although, there were x-ray studies of her entire spine in October 2007, there was no significant findings. In November 28, 2007, however, she was complaining of neck pain as well as lower back pain and left-sided shoulder blade pain. She was also complaining of hip pain. However, after that date of evaluation, she was not seen in 2007, for any orthopedic complaints up until February 2008, when she was performing arduous work in her own backyard. She was provided with some antiinflammatory medications. The x-ray studies were normal at that time.

It did not seem that her orthopedic complaints were ongoing as she was not seen again for sometime after the 2008 examination. She was then seen by a podiatrist and continues to see her regular internist for non-orthopedic complaints.

The patient was also seen by a podiatrist in 2009, and her treatment was relatively benign. The ganglion cyst was noted over the foot with some fungus infection of the toes.

There was no significant orthopedic treatment up until 2015, when she was seen once again by the podiatrist.

On April 14, 2015, the patient was seen for right shoulder pain. However that entry was after she started working for the Automobile Club. In May 29, 2015, she was seen at Facey and was again complaining of shoulder pain. In fact, gastrointestinal issues were also discussed at the same time and it seems that there was some internal issues that she continued to suffer from.

She was also seen at an Urgent Care Center in 2015.

COLLIER APL 0662

**LIB000208**

**Collier, Vicki**
**October 17, 2019**
**Page 43 of 44**

Considering the medical records, it seems that her orthopedic complaints were mainly after she started working for the Automobile Club and the provided medical records only strength and abuse that the patient's complaints were in relation to the work-related activities that she was performing at the Automobile Club. As such, at this time, I remain with the opinions that I have provided previously and the updated medical records do not change the opinions that I have provided before. It seems that there is a temporary relationship between the patient's orthopedic complaints as well as the time that she worked at the Automobile Club.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). In order to prepare this report and complete the evaluation, time was spent without face to face with the patient. The billings reflect such time spent by the physician with the code 99358. The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Furthermore, all the information contained in this report and its attachment, if any, is true and correct to the best of my knowledge and belief, except as to information I have indicated I have received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.*

*Per labor code 139.3: If I have referred this patient for clinical laboratory, diagnostic nuclear medicine, radiation oncology, physical therapy, physical rehabilitation, psychometric testing, home infusion therapy or diagnostic imaging goods or services whether for treatment or medical-legal purposes, it should be noted that I do not have a financial interest nor does my immediate family have a financial interest with the person or in the entity that receives the referral.*

*This report is for medical/legal assessment of the injury noted and is not to be construed as a complete physical examination for general health purposes. Only those symptoms which are believed to have been involved in the injury or that might be related to the injury have been assessed by this examiner. Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

October 18, 2019
_____
Date

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385

EH

\*Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Encino, CA  91316

COLLIER APL 0663

**LIB000209**

**Collier, Vicki**
**October 17, 2019**
**Page 44 of 44**

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 10/21/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name:** **Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 10/17/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Miguel Mendoza                          Robert L. Palty Esq.
CCMSI Irvine                            6345 Balboa Blvd, Ste 211
P.O. Box 53550                          Encino, CA  91316
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 10/21/2019 at

_____
Emily Shemwell

COLLIER APL 0664

**LIB000210**



Jonathan F. Kohan, M.D.
SPECIALIZING IN PAIN DISORDERS

MULTI-DISCIPLINARY
TREATMENT OF
CRPS (RSD)
CHRONIC PAIN SYNDROMES
CANCER PAIN
FIBROMYALGIA
NEURALGIAS
HEADACHE

SPINAL CORD STIMULATION
INTRATHECAL PUMP
PLACEMENT
DISCOGRAPHY
RADIOFREQUENCY ABLATION
SPINAL INJECTIONS

Edwin Haronian, MD
5651 Sepulveda Blvd., #201
Sherman Oaks, CA 91411

| Patient Name | : | Vicki Collier |
|---|---|---|
| Date of Service | : | November 11, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ███████████ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

**SECONDARY PHYSICIAN PAIN MANAGEMENT FOLLOW-UP
REPORT**

*This special narrative report is reimbursable (1994) Official Medical Fee Schedule because one of the following: There was an unexpected or significant change in the patient's condition or the treatment plan; there is a change in patient care or status; submitted records were reviewed or specific questions were answered.*

DIPLOMATE, AMERICAN BOARD
OF ANESTHESIOLOGY
FELLOWSHIP TRAINED IN PAIN
MEDICINE

Ms. Collier is a 56-year-old female whose last visit with me was on October 14, 2019. As before, she denies any side effects with Norco, Neurontin, Cymbalta, and this include no nausea, vomiting, constipation, oversedation, epigastric pain or any dizziness. All three medications have helped the patient's chronic pain which is in the neck, in the right shoulder and low back with difficulty with any lifting, pushing, pulling, bending, twisting, over-the-shoulder activity as a result of which she has not been able to go back to work. Relief is at least 40%.

**PHYSICAL EXAMINATION:**
No signs of sedation. Gait is normal. Tenderness over the lumbar spine is noted with decreased range of motion flexion and extension, but limited range of motion of the right shoulder remains.

**IMPRESSION:**

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH. (818) 788-2400

COLLIER APL 0665

**LIB000211**

**Collier, Vicki**
**November 11, 2019**
**Page 2 of 3**

Lumbar disc protrusion with radicular complaints.
Cervical disc protrusion with radicular complaints.
History of right shoulder arthroscopic surgery with residual pain.

**RECOMMENDATION:**
The patient has been compliant with all the recommendations and visits. CURES report on today's visit does not show any aberrant activity. Refill of the entire regimen will be prescribed, until I see her back in one month for further evaluation.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Please be advised that Dr. Kohan has a financial interest in the Pacific Anesthesia Group.*

November 21, 2019
Date

Jonathan F. Kohan, M.D.
Diplomate American Board of
Anesthesiology
Fellowship-Trained in Pain
Medicine

JFK

*Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211
Encino, CA  91316

*CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619
Attn: Miguel Mendoza

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:

COLLIER APL 0666

**LIB000212**

**Collier, Vicki**
**November 11, 2019**
**Page 3 of 3**

**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 11/22/2019 served the foregoing document described as:

JONATHAN F. KOHAN, M.D.
EVALUATION REPORT

**Patient Name:** **Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 11/11/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Edwin Haronian, MD                     Robert L. Palty Esq.
5651 Sepulveda Blvd., #201             6345 Balboa Blvd, Ste 211
Sherman Oaks, CA  91411                Ste 211
                                       Encino, CA  91316

Miguel Mendoza
CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 11/22/2019 at

_____
Emily Shemwell

COLLIER APL 0667

**LIB000213**

# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery
- Complex & Revision Spine Surgery
- Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery

- Fellow, American Academy of Orthopedic Surgeons



- Member, North American Spine Society



- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

•

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

**WWW • ESPINEDOCTOR • COM**

---

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | December 11, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ▓▓▓▓▓▓▓ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

### FOLLOW-UP REPORT OF A PRIMARY TREATING PHYSICIAN

The patient is back in my office still complaining of residual pain.  The patient apparently has missed her appointment with Dr. Kohan.  I will hold off on providing her with the opioid medications.  Cymbalta and Neurontin will be provided however.  She can follow-up with Dr. Kohan.

The patient has been declared permanent and stationary.  The patient was also seen by the QME.  Her condition is essentially unchanged.  The patient will be seen in my office periodically based on her future medical care.

### DIAGNOSIS:
M50.00 Cervical Radiculopathy,
M54.17 Radiculopathy, lumbosacral region,
M75.40 Impingement syndrome, shoulder,
M70.20 Olecranon bursitis, elbow,
M77.20 Periarthritis, unspecified wrist

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration*

COLLIER APL 0668

**LIB000214**

**Collier, Vicki**
**December 11, 2019**
**Page 2 of 3**

*is executed on the date of this report and signed by myself in the County of Los Angeles.*

*To complete this examination I have been assisted, as needed, for taking histories, taking x-rays, assisting with the patient, transcription of reports by some or all of the following personnel Alma Azucar, Natasha Yokum, Carmen Garcia and Emily Shemwell. Sherry Leoni, DC, or Randy Cockrell, DC, may also have assisted in compiling and editing of this report. If required an interpreter was provided. All of the above individuals are qualified to perform the described activities by reason of individual training or under my direct supervision.*

*Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

December 13, 2019

Date

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385

EH

   *Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211
Encino, CA 91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 12/23/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name:** **Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 12/11/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

COLLIER APL 0669

**LIB000215**

**Collier, Vicki**
**December 11, 2019**
**Page 3 of 3**

Miguel Mendoza
CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619

Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211
Encino, CA  91316

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 12/23/2019 at

_____
Emily Shemwell

COLLIER APL 0670

LIB000216

Sent by: nyoakum,  09/05/2019 - 10:50 AM

# Edwin Haronian, M.D.

Orthopedic Surgery, Spine Surgery  Lic: A71385
5651 Sepulveda Blvd.# 201
Sherman Oaks, CA 91411
Tel: 818-788-2400  Fax: 818-788-2453

## DISABILITY STATUS

**Date:  09 05, 2019**                     **Our Chart No.** 20050164

| | | |
|---|---|---|
| **Patient Name:** Phone No. Cellphone #: | Vicki  COLLIER 661-510-0518 | |
| **Employer Name:** **Insurance:** **Claim No.** **DOI:** | Automobile Club CCMSI Irvine P.O.  Box 53550 Irvine, CA 92619 17G44F696159; Unassigned ; CT:7/13/2013-7/24/2017 | |

**Work Status:** The patient has reached Maximal Medical Improvement and is Permanent and Stationary.

**Return to Clinic:  12 Week(s)**

This note has been electronically signed by Edwin Haronian, M.D.

## RETURN TO WORK SECTION TO BE REVIEWED AND COMPLETED BY EMPLOYER

You have 14 calendar days from receipt to accept or reject this offer of modified or alternative work.*(L.A.U.S.D. IS NOT REQUIRED TO SIGN OR COMPLETE THIS FORM)*

__ I accept this offer of Modified or Alternative work.

**__ I feel I cannot accept this offer of Modified or Alternative work indicating the need to declare the employee TTD.**

**Name**_____ **Signature**_____ **Date:**_____

COLLIER APL 0671

**LIB000217**

# SYNAPSE MEDICAL GROUP

**Jonathan F. Kohan M.D.**
5651 Sepulveda Blvd.# 201  Sherman Oaks  CA  91411
Tel: 818-788-2400  Fax: 818-788-2453
Lic.#: A66353            DEA#: BK6077502        **CCMSI Irvine**

## PRESCRIPTION

**PATIENT NAME:** COLLIER, Vicki                **DOB:** ▮▮▮▮▮▮                12:04 PM

| PRESCRIPTION(S): | # of Bottles | QTY | SIG: | REF: |
|---|---|---|---|---|
| **1.** IBUPROFEN GEL | | 30 | | No Refill |
| **2.** Naproxen 500mg | 1 Bottle | 30 | | No Refill |
| **3.** Prevacid  15 mg  cap | 1 AV | 90 | Take 1 every 12 hours as needed (for stomach protection and/or gastritis) | No Refill |

**No substitutions**

Lansoprazole Delayed-Release
Capsules 15mg
Qty: 90
Insurance NDC: 55111-0398-90
Lot:L1619U Bat:L1619U311      Billing

EnovaRX-Ibuprofen 10%
NDC: 76420-980-06
S/N:125432
Qty: 60

Naproxen Tablets, USP 500mg
Qty: 100
Insurance NDC: 65162-0190-10
Lot:L1719Q Bat:L1719Q206      Billing

**Signature:** _____                _____        **DATE:** 02/03/2020
            KOHAN, JONATHAN F.

If you have any further questions regarding your medications please ask any of our staff members including your doctors and we will provide you answers to any remaining questions. <u>By signing below</u> I confirm that I was explained the instructions, side effects, interactions, and directions on how to use the medications.  You have a choice between obtaining the prescription medication from our office or a pharmacy. If you wish, please inform our staff and we will give you a written prescription that you can use at a pharmacy.

*\* Si tiene preguntas acerca de su medicina por favor de preguntar al personnal de la oficina, o doctores, y le proveeran respuestas a cualquier pregunta que tengan. <u>Firmando en la liena indicada a bajo</u>, usted esta bajo el entendimento que se le a esplicado las insturcciones, effectos secondiaros, interacciones, e instructuciones de como tomar el medicamento. Usted tiene la opcion de obtener una receta para medicina de nuestra oficina o de la farmacia. Si usted desea obtener una receta que puede usar en una farmacia de su preferencia porfavor de informarnos.*

**Patient Signature:**_____
            COLLIER, Vicki

COLLIER APL 0672

LIB000218

# SYNAPSE MEDICAL GROUP

**Jonathan F. Kohan M.D.**
5651 Sepulveda Blvd.# 201  Sherman Oaks  CA  91411
Tel: 818-788-2400  Fax: 818-788-2453
Lic.#: A66353              DEA#: BK6077502          **CCMSI Irvine**

## PRESCRIPTION

**PATIENT NAME:** COLLIER, Vicki          **DOB:** ▉▉▉▉          11:07 AM

| PRESCRIPTION(S): | # of Bottles | QTY | SIG: | REF: |
|---|---|---|---|---|
| **1.** IBUPROFEN GEL | | 30 | | No Refill |
| **2.** Naproxen 500mg | 1 Bottle | 30 | | No Refill |
| **3.** Prevacid  15 mg  cap | 1 AV | 90 | Take 1 every 12 hours as needed (for stomach protection and/or gastritis) | No Refill |

ENOVARX-IBUPROFEN 10%
NDC 76420098006
SN #15020228        Qty :60

Naproxen Tablets, USP 500mg
Qty: 100
Insurance NDC: 65162-0190-10
Lot:H1919P  Bat:H1919P537       Billing

Lansoprazole Delayed-Release
Capsules 15mg
Qty: 90
Insurance NDC: 55111-0398-90
Lot:H0919M  Bat:H0919M298       Billing

**No substitutions**

Signature: _____          _____          **DATE:** 09/17/2019
          KOHAN, JONATHAN F.

If you have any further questions regarding your medications please ask any of our staff members including your doctors and we will provide you answers to any remaining questions. By signing below I confirm that I was explained the instructions, side effects, interactions, and directions on how to use the medications.  You have a choice between obtaining the prescription medication from our office or a pharmacy. If you wish, please inform our staff and we will give you a written prescription that you can use at a pharmacy.

*\* Si tiene preguntas acerca de su medicina por favor de preguntar al personnal de la oficina, o doctores, y le proveeran respuestas a cualquier pregunta que tengan. Firmando en la liena indicada a bajo, usted esta bajo el entendimento que se le a esplicado las insturcciones, effectos secondiaros, interacciones, e instructuciones de como tomar el medicamento. Usted tiene la opcion de obtener una receta para medicina de nuestra oficina o de la farmacia. Si usted desea obtener una receta que puede usar en una farmacia de su preferencia porfavor de informarnos.*

**Patient Signature:** _____
                COLLIER, Vicki

COLLIER APL 0673

LIB000219



# SYNAPSE
## ORTHOPEDIC GROUP

## Disorders & Surgery Of The Spine

5651 Sepulveda Blvd. Suite #201 Sherman Oaks, CA 91411
Ph: 818-788-2400 Fx: 818-788-2453

Date: 9-5-10

Name: Vicki Collier      DOB: █████      Chart: 70050164

X-RAY: C/S, L/S, Bi-Shoulders

(Dr. Haronian)

COLLIER APL 0674

**LIB000220**

# EXHIBIT 15

# EXHIBIT 15

COLLIER APL 0675

**LIB000221**



LIB000222

Kronos Workforce Central(R)                                                                 Page 1 of 1



EARNINGS HISTORY DETAIL          Name & ID: COLLIER, VICKI D (653024)

Primary Account | Timecard | Back to Earnings Summary

3333 Fairview Road Costa Mesa, CA 92626

| Selected Check Date | 10/25/2017 ∨ |
| Period | 10/01/2017 - 10/15/2017 |
| Check Number | 6285565 FOR: COLLIER VICKI D |
| Payment Type | Deposit FROM: AUTO CLUB OF SOUTHERN CALIF |

| Total Hours | Gross Pay | Taxes | Deductions | Total Net Pay |
|---|---|---|---|---|
| 80.00 | 991.26 | 64.52 | 437.87 | 463.34 |

**GROSS PAY**

| Date | Type of Pay | Hours | Rate | Amount | YTD Amount |
|---|---|---|---|---|---|
| 10/25/2017 | *GROSS EARNINGS | | | | 119547.30 |
| 10/25/2017 | AUTO NB | | | | 39372.67 |
| 10/25/2017 | CA-CEA | | | | 1253.16 |
| 10/25/2017 | COMM OT | | | | 9470.41 |
| 10/25/2017 | CONFERNC | | | | 1440.00 |
| 10/25/2017 | COPDTAX | | | | 966.03 |
| 10/25/2017 | DI/MIADJ | | | -2513.57 | -12735.42 |
| 10/25/2017 | GIFTCRDS | | | | 50.00 |
| 10/25/2017 | GPLIFE | | | 25.53 | 516.84 |
| 10/25/2017 | H/O NB | | | | 13044.27 |
| 10/25/2017 | MBRAURNL | | | | 2095.97 |
| 10/25/2017 | MEALPREM | | | | 3015.10 |
| 10/25/2017 | MEMB NB | | | | 2669.10 |
| 10/25/2017 | MSI | | | | 8416.66 |
| 10/25/2017 | PELP NB | | | | 579.36 |
| 10/25/2017 | PERSISY | | | | 6750.03 |
| 10/25/2017 | REFAGNCY | | | | 250.00 |
| 10/25/2017 | REFLIFE | | | | 100.00 |
| 10/25/2017 | RTNTEG | | | | 20318.54 |
| 10/25/2017 | SICK | | | | 1909.84 |
| 10/25/2017 | STDSK66% | 80.00 | | 3479.30 | 18788.25 |
| 10/25/2017 | WCNB | | | | 1192.09 |

**DEDUCTIONS**

| Deduction | Amount | YTD Amount | Employer Paid | YTD Employer Paid |
|---|---|---|---|---|
| DENTAL | 15.00 | 300.00 | | |
| EXP RPT | | -170.00 | | |
| FURSAV | | 8782.79 | | |
| FURSAVS | 250.00 | 4500.00 | | |
| LTDBUYUP | 20.36 | 411.46 | | |
| MEDICAL | 124.00 | 2480.00 | | |
| VISION | 8.92 | 178.40 | | |
| VOLEAD&D | 3.27 | 66.06 | | |
| VOLLIFE | 16.32 | 330.00 | | |

**TAXES**

| Tax | Taxable Wages | Tax Amount | YTD Taxes |
|---|---|---|---|
| *CA WH | | | 7810.67 |
| *CADIPFL | | | 998.12 |
| *FED WH | 593.34 | | 21646.77 |
| *MEDCARE | | 12.23 | 1690.54 |
| *OASDI | | 52.29 | 7228.51 |
| FEDERAL Single 3 | 103306.11 | | |
| STATE Single 3 | | | |

**DIRECT DEPOSIT**

| Direct Deposit | Routing Number | Account Number | Amount |
|---|---|---|---|
| Account | | XXXXX8700 | 463.34 |

https://kronos7.ace.aaaclubnet.com/wfc/applications/AAA/html/earnings-history-detail.js...    11/09/2017

COLLIER APL 0677

LIB000223

Kronos Workforce Central(R)

Page 1 of 1



EARNINGS HISTORY DETAIL          Name & ID: COLLIER, VICKI D (653024)

Primary Account | Timecard | Back to Earnings Summary

3333 Fairview Road Costa Mesa, CA 92626

| | |
|---|---|
| Selected Check Date | 5/25/2017 ∨ |
| Period | 5/01/2017 - 5/15/2017 |
| Check Number | 6169444 FOR: COLLIER VICKI D |
| Payment Type | Deposit FROM: AUTO CLUB OF SOUTHERN CALIF |

*prior to Surgery*

| Total Hours | Gross Pay | Taxes | Deductions | Total Net Pay |
|---|---|---|---|---|
| 112.75 | 5587.54 | 1657.18 | 907.96 | 2946.87 |

### GROSS PAY

| Date | Type of Pay | Hours | Rate | Amount | YTD Amount |
|---|---|---|---|---|---|
| 05/25/2017 | *GROSS EARNINGS | | | | 79280.77 |
| 05/25/2017 | AUTO NB | | | 2040.42 | 27435.42 |
| 05/25/2017 | CA-CEA | | | 160.00 | 1060.60 |
| 05/25/2017 | COMM OT | | | 201.91 | 7109.75 |
| 05/25/2017 | CONFERNC | | | | 1440.00 |
| 05/25/2017 | COPDTAX | | | | 966.03 |
| 05/25/2017 | GIFTCRDS | | | 50.00 | 50.00 |
| 05/25/2017 | GPLIFE | | | 25.53 | 261.54 |
| 05/25/2017 | H/O NB | | | 859.75 | 9232.63 |
| 05/25/2017 | HRSONLY | 86.50 | | | |
| 05/25/2017 | LTMEALHR | 1.00 | | | |
| 05/25/2017 | MBRAURNL | | | | 1313.84 |
| 05/25/2017 | MBRAUTRE | | | 5.00 | 10.00 |
| 05/25/2017 | MEALPREM | 19.00 | | 57.11 | 2616.66 |
| 05/25/2017 | MEMB NB | | | | 1717.08 |
| 05/25/2017 | MSI | | | 520.83 | 5562.51 |
| 05/25/2017 | OT1HRS | 7.25 | | | |
| 05/25/2017 | PERSISY | | | 479.17 | 4354.18 |
| 05/25/2017 | REFAGNCY | | | 20.00 | 170.00 |
| 05/25/2017 | RTNTEG | | | 1163.04 | 14452.15 |
| 05/25/2017 | XTRAOT | | | 4.78 | 28.81 |
| 05/25/2017 | XXSCKBAL | 16.00 | | | |

### DEDUCTIONS

| Deduction | Amount | YTD Amount | Employer Paid | YTD Employer Paid |
|---|---|---|---|---|
| DENTAL | 15.00 | 150.00 | | |
| EXP RPT | | -170.00 | | |
| FURSAV | 470.09 | 5987.53 | | |
| FURSAVS | 250.00 | 2500.00 | | |
| LTDBUYUP | 20.36 | 207.86 | | |
| MEDICAL | 124.00 | 1240.00 | | |
| VISION | 8.92 | 89.20 | | |
| VOLEAD&D | 3.27 | 33.36 | | |
| VOLLIFE | 16.32 | 166.80 | | |

### TAXES

| Tax | Taxable Wages | Tax Amount | YTD Taxes |
|---|---|---|---|
| *CA WH | | 331.86 | 5574.70 |
| *CADIPFL | | 48.73 | 697.86 |
| *FED WH | 4719.53 | 860.46 | 15565.03 |
| *MEDCARE | | 78.87 | 1128.12 |
| *OASDI | | 337.26 | 4823.70 |
| FEDERAL Single 3 | 69314.04 | | |
| STATE Single 3 | | | |

### DIRECT DEPOSIT

| Direct Deposit | Routing Number | Account Number | Amount |
|---|---|---|---|
| Account | | XXXXX8700 | 2946.87 |

COLLIER APL 0678

LIB000224



COLLIER APL 0679

LIB000225





LIB000227



LIB000228

Kronos Workforce Central(R)                                                            Page 1 of 1



EARNINGS HISTORY DETAIL                 Name & ID: COLLIER, VICKI D (653024)

Primary Account | Timecard | Back to Earnings Summary

3333 Fairview Road Costa Mesa, CA 92626

| Selected Check Date | 11/09/2017 |
| Period | 10/16/2017 - 10/31/2017 |
| Check Number | 6297274 FOR: COLLIER VICKI D |
| Payment Type | Deposit FROM: AUTO CLUB OF SOUTHERN CALIF |

| Total Hours | Gross Pay | Taxes | Deductions | Total Net Pay |
|---|---|---|---|---|
| 96.00 | 1519.55 | 168.86 | 437.87 | 887.29 |

### GROSS PAY

| Date | Type of Pay | Hours | Rate | Amount | YTD Amount |
|---|---|---|---|---|---|
| 11/09/2017 | *GROSS EARNINGS | | | | 121066.85 |
| 11/09/2017 | AUTO NB | | | | 39372.67 |
| 11/09/2017 | CA-CEA | | | | 1253.16 |
| 11/09/2017 | COMM OT | | | | 9470.41 |
| 11/09/2017 | CONFERNC | | | | 1440.00 |
| 11/09/2017 | COPDTAX | | | | 966.03 |
| 11/09/2017 | DI/MIADJ | | | -2681.14 | -15416.56 |
| 11/09/2017 | GIFTCRDS | | | | 50.00 |
| 11/09/2017 | GPLIFE | | | 25.53 | 542.37 |
| 11/09/2017 | H/O NB | | | | 13044.27 |
| 11/09/2017 | MBRAURNL | | | | 2095.92 |
| 11/09/2017 | MEALPREM | | | | 3015.10 |
| 11/09/2017 | MEMB NB | | | | 2669.10 |
| 11/09/2017 | MSI | | | | 8416.66 |
| 11/09/2017 | PELP NB | | | | 579.36 |
| 11/09/2017 | PERSISY | | | | 6750.03 |
| 11/09/2017 | REFAGNCY | | | | 250.00 |
| 11/09/2017 | REFLIFE | | | | 100.00 |
| 11/09/2017 | RTNTEG | | | | 20318.54 |
| 11/09/2017 | SICK | | | | 1909.84 |
| 11/09/2017 | STDSK66% | 96.00 | | 4175.15 | 22963.41 |
| 11/09/2017 | WCNB | | | | 1192.09 |

### DEDUCTIONS

| Deduction | Amount | YTD Amount | Employer Paid | YTD Employer Paid |
|---|---|---|---|---|
| DENTAL | 15.00 | 315.00 | | |
| EXP RPT | | -170.00 | | |
| FURSAV | | 8782.79 | | |
| FURSAVS | 250.00 | 4750.00 | | |
| LTDBUYUP | 20.36 | 431.82 | | |
| MEDICAL | 124.00 | 2604.00 | | |
| VISION | 8.92 | 187.32 | | |
| VOLEAD&D | 3.27 | 69.33 | | |
| VOLLIFE | 16.32 | 346.32 | | |

### TAXES

| Tax | Taxable Wages | Tax Amount | YTD Taxes |
|---|---|---|---|
| *CA WH | | 5.43 | 7816.10 |
| *CADIPFL | | | 998.12 |
| *FED WH | 1121.63 | 58.50 | 21705.27 |
| *MEDCARE | | 19.89 | 1710.43 |
| *OASDI | | 85.04 | 7313.55 |
| FEDERAL Single 3 | 104427.74 | | |
| STATE Single 3 | | | |

### DIRECT DEPOSIT

| Direct Deposit | Routing Number | Account Number | Amount |
|---|---|---|---|
| Account | | XXXXX8700 | 887.29 |

https://kronos7.ace.aaaclubnet.com/wfc/applications/AAA/html/earnings-history-detail.js...  11/09/2017

COLLIER APL 0683

LIB000229







LIB000232



COLLIER APL 0687

LIB000233



COLLIER APL 0688

LIB000234





COLLIER APL 0690

LIB000236

# EXHIBIT 16

# EXHIBIT 16

COLLIER APL 0691

**LIB000237**

 **KAISER PERMANENTE.**

6/9/2017                                    MR#000010372397

Re: Vicki D Collier

Valencia CA 91354

To Whom it May Concern:

Ms. Collier has arm pain.  Please have an ergonomic specialist at her work
evaluate her work space.

Sincerely,

E C WANG-O'CONNELL MD
27107 Tourney Road
Santa Clarita CA 91355-1860
888-773-5000

COLLIER APL 0692

LIB000238

 **KAISER PERMANENTE.**

2/16/2017                              MR#000010372397

Re: Vicki D Collier

███████████████

Valencia CA 91354

To whom it may concern

This is to state that Ms Vicki D Collier is under my care.
Due to persistent arm pain, I strongly recommend using
ergonomically approved furniture to help reduce the chronic pain and improve
her quality of life.


Please call if any questions.
 electronically signed by
 SONU  BRARA  MD
Department of Neurology
Panorama City
2/16/2017
3:57 PM


Sincerely,

SONU MALIK BRARA MD
8001 Ventura Canyon Ave
Panorama City CA 91402-6312
818-375-2000

COLLIER APL 0693

**LIB000239**

# THE GOOD CHIROPRACTIC CLINIC

Dr. Randy A. Good

July 11, 2017

To Whom it May Concern:

Vicki Collier is being treated in my office for a spinal condition. She is being treated with chiropractic adjustments and therapeutic exercise.

I recommend that she refrain from prolonged sitting. I recommend a standing desk so that her condition does not have exacerbations.

Sincerely,

Randy A. Good, D.C.

25864 Tournament Road, Suite D • Santa Clarita, California 91355
Telephone: (661) 254-8890 • Fax: (661) 254-8891

COLLIER APL 0694

LIB000240



**Northern CA Office:**

1050 MARINA VILLAGE PKWY., STE. 105
ALAMEDA, CA 94501

TEL (510) 992-6130 · FAX (510) 280-7564

*www.lifeanddisabilitylaw.com*

Sender's e-mail:
zyarnykh@kantorlaw.net

March 2, 2020

**VIA PRIORITY MAIL & FACSIMILE {603-334-0419} (fax w/o exhibits)**

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group Company
*Attn: Kimberly Murray, Appeal Consultant*
Appeal Review Unit
P.O. Box 7213
London, KY 40742-7213

RE:    **SUPPLEMENTAL APPEAL/RESPONSE TO IME**
       Name:         Vicki Collier
       Claim No.:    8741789
       Plan:         Auto Club Enterprises

Dear Ms. Murray:

We are submitting the following evidence in support of Ms. Collier's appeal following the receipt of the IME report of Dr. Vlachos:

- Exh. 11 – Letter from Sebastian Jurado, DPT dated 2/21/20 [COLLIER APL 0515-0517]

  Dr. Jurado performed a two-day FCE and reviewed Dr. Vlachos's IME report. He disagrees with her conclusion that Ms. Collier is capable of full-time employment as supported by objective evidence, including testing that is more precise than the methods used by Dr. Vlachos.

- Exh. 12 – Declaration of Vicki Collier re: IME [COLLIER APL 0518-0526]

  Ms. Collier recounts the IME procedure and the many inaccuracies in Dr. Vlachos's report, and the insufficiency of tasks she was asked to perform to fully understand the nature and extent of her disability.

- Exh. 13 – Declaration of Lisa Tetreault [COLLIER APL 0527-0530]

  Ms. Tetreault is a long-time friend of Ms. Collier who has personally observed her deteriorating condition.

**LIB000241**

Kimberly Murray
March 2, 2020
Page 2

- Exh. 14 – Updated records from Dr. Jonathan Kohan and Dr. Edwin Haronian [COLLIER APL 0531-0674]

- Exh. 15 – KRONOS report evidencing the hours Ms. Collier worked prior to becoming disabled [COLLIER APL 0675-0690]

- Exh. 16 – Letter from doctors regarding a need for ergonomic workstation [COLLIER APL 0691-0694]

Please consider this additional evidence in evaluating Ms. Collier's claim. If there are any issues with complying with this request, please contact the undersigned.

Yours truly,
KANTOR & KANTOR, LLP

Zoya Yarnykh. Esq.

Encl.

LIB000242

*IRMLY TO SEAL*

FLAT RATE
POSTAGE REQUIRED



US POSTAGE & FEES PAID
PRIORITY MAIL
FLAT-RATE ENVELOPE
ComBasPrice

06250005522107
FROM 91324

stamps
endicia
03/02/2020

# PRIORITY MAIL 3-DAY™

Kantor & Kantor, LLP
1050 Marina Village Pkwy., Suite 105
Alameda CA 94501

B900

**SHIP TO:** Liberty Life Assurance Company of Boston, now a Lincol
Appeal Review Unit
Attn: Kimberly Murray, Appeal Consultant
P.O. Box 7213
London KY 40742-7213

## USPS TRACKING #



9405 5118 9956 1072 6664 77

chedule free
tage Pickup,
the QR code.



COM/PICKUP

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments.
Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; October 2018; All rights reserved.

oments, the maximum weight is 4 lbs.

LIB000243

**KANTOR & KANTOR**

**Northern CA Office:**

1050 MARINA VILLAGE PKWY., STE. 105   ALAMEDA, CA 94501

TEL (510) 992-6130 ▪ FAX (510) 280-7564

*www.lifeanddisabilitylaw.com*

From: Kantor and Kantor LLP

DATE: 3/2/2020 11:06:22 AM PST

TO:

Company:

Reference: Vicki Collier; Claim No.: 8741789

Message:
Please note that exhibits will follow on CD via mail.

Nicole Herbert, Paralegal
**KANTOR & KANTOR, LLP**
T: 510.992.6130  |  F: 510.280.7564
1050 Marina Village Pkwy., Suite 105
Alameda, CA  94501
Los Angeles | Bay Area | San Diego
California Offices. Nationwide Capabilities.
www.kantorlaw.net

LIB000244



**Northern CA Office:**

1050 MARINA VILLAGE PKWY., STE. 105
ALAMEDA, CA 94501

TEL (510) 992-6130 ▪ FAX (510) 280-7564

*www.lifeanddisabilitylaw.com*

Sender's e-mail:
zyarnykh@kantorlaw.net

March 2, 2020

**VIA PRIORITY MAIL & FACSIMILE {603-334-0419} (fax w/o exhibits)**

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group Company
*Attn: Kimberly Murray, Appeal Consultant*
Appeal Review Unit
P.O. Box 7213
London, KY 40742-7213

> RE:    **SUPPLEMENTAL APPEAL/RESPONSE TO IME**
> Name:            Vicki Collier
> Claim No.:       8741789
> Plan:            Auto Club Enterprises

Dear Ms. Murray:

We are submitting the following evidence in support of Ms. Collier's appeal following the receipt of the IME report of Dr. Vlachos:

- Exh. 11 — Letter from Sebastian Jurado, DPT dated 2/21/20 [COLLIER APL 0515-0517]

  Dr. Jurado performed a two-day FCE and reviewed Dr. Vlachos's IME report. He disagrees with her conclusion that Ms. Collier is capable of full-time employment as supported by objective evidence, including testing that is more precise than the methods used by Dr. Vlachos.

- Exh. 12 — Declaration of Vicki Collier re: IME [COLLIER APL 0518-0526]

  Ms. Collier recounts the IME procedure and the many inaccuracies in Dr. Vlachos's report, and the insufficiency of tasks she was asked to perform to fully understand the nature and extent of her disability.

- Exh. 13 — Declaration of Lisa Tetreault [COLLIER APL 0527-0530]

  Ms. Tetreault is a long-time friend of Ms. Collier who has personally observed her deteriorating condition.

**LIB000245**

Kimberly Murray
March 2, 2020
Page 2

- <u>Exh. 14</u>  – Updated records from Dr. Jonathan Kohan and Dr. Edwin Haronian [COLLIER APL 0531-0674]

- <u>Exh. 15</u> – KRONOS report evidencing the hours Ms. Collier worked prior to becoming disabled [COLLIER APL 0675-0690]

- <u>Exh. 16</u> – Letter from doctors regarding a need for ergonomic workstation [COLLIER APL 0691-0694]

Please consider this additional evidence in evaluating Ms. Collier's claim. If there are any issues with complying with this request, please contact the undersigned.

Yours truly,
KANTOR & KANTOR, LLP

Zoya Yarnykh. Esq.

Encl.

LIB000246



**KANTOR KANTOR**

Northern CA Office:

1050 MARINA VILLAGE PKWY., STE. 105
ALAMEDA, CA 94501

TEL (510) 992-6130 • FAX (510) 280-7564

*www.lifeanddisabilitylaw.com*

Sender's e-mail:
zyarnykh@kantorlaw.net

February 13, 2020

**VIA USPS & FACSIMILE {603-334-0419}**

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group Company
*Attn: Kimberly Murray, Appeal Consultant*
Appeal Review Unit
P.O. Box 7213
London, KY 40742-7213

Katrina Vlachos, M.D. **(VIA USPS ONLY)**
13160 Mindanao Way, Suite 300
Marina Del Rey, CA 90292

> RE:  Name:          Vicki Collier
>      Claim No.:     8741789
>      Plan:          Auto Club Enterprises

Dear Ms. Murray and Dr. Vlachos:

We are in receipt of the IME report prepared by Dr. Vlachos. We intend to provide a response within 21 days as instructed in the letter from Ms. Murray accompanying the report. In the meantime, however, I write to request ANY and ALL documents related to the examination of Vicki Collier by Dr. Vlachos, including, without limitation, Dr. Vlachos's complete file relating to Ms. Collier, records of communications between Liberty/Lincoln and Dr. Vlachos (including email), drafts, invoices, billing records, and payment records. Please be further advised that this request encompasses communications with Network Medical Review Co. Ltd related in any way to the examination of Ms. Collier by Dr. Vlachos.

If there are any issues with complying with this request, please contact the undersigned.

Yours truly,
KANTOR & KANTOR, LLP

Zoya Yarnykh. Esq.

Enc.

LIB000247

## AUTHORIZATION FOR RELEASE OF CONFIDENTIAL INFORMAT<u>I</u>

TO: <u>Katrina Vlachos, M.D.</u>
<u>Network Medical Review Co. Ltd.</u>

You are hereby authorized to release to Kantor & Kantor, 19839 Nord Street, Northridge, California 91324, any and all confidential information of nature (including juvenile records) in your custody, possession, or con pertaining to the undersigned person and specifically including, though not lin to, all information set forth below:

**NAME:** Vicki Collier
**DOB:**
**SSN:**
**SEX:** Female

## A. AUTHORIZATION FOR RELEASE OF PROTECTED HEAL INFORMATION (PHI) UNDER HEALTH INSURAN PORTABILITY AND ACCOUNTABILITY ACT (HIPAA)

1. The undersigned patient named below, hereby executes authorization in compliance with the federal Health Insurance Portability Accountability Act, HIPAA, 45 CFR 164.104.

2. **PROTECTED HEALTH INFORMATION:** All me( information of any nature whatsoever, from any source whatsoever, whic maintained by you in your records regarding the referenced patient and whic requested by Kantor & Kantor. If you are a physician or out-patient clinic, you authorized to send your entire chart upon their request, including not only records dictated or written up by you, but also insurance records, handwr notes, telephone memoranda, outside records, correspondence, or any ( tangible item maintained in my chart. If you are a hospital, you are authorize release my complete records including x-rays or similar studies. I recognize there are laws protecting the confidentiality of such records, including e; disorders, alcohol, drug, psychological and psychiatric records, HIV testing, / and/or AID diagnosis. I specifically direct you to include any such records sensitive nature among those sent to Kantor & Kantor. You are also authorize

Page 1 of 3

LIB000248

provide Kantor & Kantor with an office conference and a medical report, if you requested to do so by them.

## REQUIRED DISCLOSURES - 45 CFR 164.508(c)

$    This protected health information is to be used for the following purp attorney's use in civil action.

$        This authorization may be revoked by a signed and properly d written revocation, delivered to the healthcare provider named above, provided this release cannot be revoked as to protected health information that had l previously released in reliance on this document.

$        The undersigned acknowledges that a refusal to sign this form will not re in a denial of health care by the hospital or any other health care provider and this release has not been coerced by a health care entity or any of its busi associates.

$        The undersigned acknowledges that once the PHI is disclosed, it may be disclosed to individuals or organizations that are not subject to the federal pri regulations such as expert witnesses, litigants, insurance companies, and even become public record if filed with a court of law.

$        This authorization will expire twenty-four (24) months after the executed, unless earlier revoked in writing.

Page 2 of 3

LIB000249

## AUTHORIZATION FOR RELEASE OF CONFIDENTIAL INFORMATI

**B.    AUTHORIZATION TO RELEASE CONFIDENTIAL MATERIAL:
OTHER THAN PHI**

**1.    INSURANCE INFORMATION:** Any and all information in ʏ custody, possession, or control, relating in any way to any application insurance, correspondence, or claim for payment of benefits to or on behalf of above-named individual under any form of insurance or similar plan, inclu employee welfare benefit plans, and any other such information in your custɩ possession, or control.

**2.    EDUCATION & EMPLOYMENT INFORMATION:** All scl and educational information, including transcripts and all information relatin any way to employment, past or present, of the above-named individual, includ but not limited to, information pertaining to wages and salary, hours worked, d of disability from employment, disciplinary records, commendations, applicat for employment, and any other such information in your custody, possessior control.

**3.    MEDICAID/MEDICARE/SOCIAL SECURITY
INFORMATION:** Any and all information, including benefit payment and lic information, medical records, applications for Medicaid, Medicare, Social Security, or other such benefits, and any other information pertaining to applica for or receipt of such benefits.

**4.    TAX RECORDS:** Any and all local, state, and/or federal information relating to the above-named person, specifically including tax retu

**5.    LAW ENFORCEMENT/COURT RECORDS:** Any and information and records pertaining to criminal prosecutions or civil acti including records pertaining to arrest, detention, incarceration, and all confide or public records generated or obtained in connection with same.

THIS AUTHORIZATION WILL EXPIRE TWENTY-FOUR (24) MON' AFTER THE DATE EXECUTED, UNLESS EARLIER REVOKED WRITING.

Dated: July 8, 2019

Vicki Collier

Page 3 of 3

LIB000250

Case 8:20-cv-00839-JVS-KES    Document 17-1    Filed 01/29/21    Page 251 of 630
Page ID #:313
To:    Page 1 of 5                    2/13/2020 10:05:54 AM PST                    1-510-280-7564  From: Kantor and Kantor LLP



**Northern CA Office:**

1050 MARINA VILLAGE PKWY., STE. 105   ALAMEDA,
CA  94501

TEL (510) 992-6130 ▪ FAX (510) 280-7564

*w w w . l i f e a n d d i s a b i l i t y l a w . c o m*

From: Kantor and Kantor LLP

## DATE: 2/13/2020 10:05:31 AM PST

TO:

Company:

Reference: Fw: Message from KM_C368

Message:
**Please see the attached regarding:**

**Vicki Collier**
**Claim No.: 8741789**

From: sfoley.kantorlaw@gmail.com <sfoley.kantorlaw@gmail.com>
Sent: Thursday, February 13, 2020 10:01 AM
To: Kim McDonald
Subject: Message from KM_C368

**LIB000251**



**Northern CA Office:**

1050 MARINA VILLAGE PKWY., STE. 105
ALAMEDA, CA 94501

TEL (510) 992-6130 ▪ FAX (510) 280-7564

*www.lifeanddisabilitylaw.com*

Sender's e-mail:
zyarnykh@kantorlaw.net

February 13, 2020

<u>**VIA USPS & FACSIMILE {603-334-0419}**</u>

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group Company
*Attn: Kimberly Murray, Appeal Consultant*
Appeal Review Unit
P.O. Box 7213
London, KY 40742-7213

Katrina Vlachos, M.D. **(VIA USPS ONLY)**
13160 Mindanao Way, Suite 300
Marina Del Rey, CA 90292

|       | RE: | Name: | Vicki Collier |
|-------|-----|-------|---------------|
|       |     | Claim No.: | 8741789 |
|       |     | Plan: | Auto Club Enterprises |

Dear Ms. Murray and Dr. Vlachos:

We are in receipt of the IME report prepared by Dr. Vlachos. We intend to provide a response within 21 days as instructed in the letter from Ms. Murray accompanying the report. In the meantime, however, I write to request ANY and ALL documents related to the examination of Vicki Collier by Dr. Vlachos, including, without limitation, Dr. Vlachos's complete file relating to Ms. Collier, records of communications between Liberty/Lincoln and Dr. Vlachos (including email), drafts, invoices, billing records, and payment records. Please be further advised that this request encompasses communications with Network Medical Review Co. Ltd related in any way to the examination of Ms. Collier by Dr. Vlachos.

If there are any issues with complying with this request, please contact the undersigned.

Yours truly,
KANTOR & KANTOR, LLP

Zoya Yarnykh. Esq.

Enc.

LIB000252

## AUTHORIZATION FOR RELEASE OF CONFIDENTIAL INFORMATION

TO:  Katrina Vlachos, M.D.

Network Medical Review Co. Ltd.

You are hereby authorized to release to Kantor & Kantor, 19839 Nordhoff Street, Northridge, California 91324, any and all confidential information of any nature (including juvenile records) in your custody, possession, or control, pertaining to the undersigned person and specifically including, though not limited to, all information set forth below:

NAME: 

DOB: 

SSN: 

SEX:   Female

## A.   AUTHORIZATION FOR RELEASE OF PROTECTED HEALTH INFORMATION (PHI) UNDER HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT (HIPAA)

1.     The undersigned patient named below, hereby executes this authorization in compliance with the federal Health Insurance Portability and Accountability Act, HIPAA, 45 CFR 164.104.

2.     PROTECTED HEALTH INFORMATION:     All medical information of any nature whatsoever, from any source whatsoever, which is maintained by you in your records regarding the referenced patient and which is requested by Kantor & Kantor. If you are a physician or out-patient clinic, you are authorized to send your entire chart upon their request, including not only the records dictated or written up by you, but also insurance records, handwritten notes, telephone memoranda, outside records, correspondence, or any other tangible item maintained in my chart. If you are a hospital, you are authorized to release my complete records including x-rays or similar studies. I recognize that there are laws protecting the confidentiality of such records, including eating disorders, alcohol, drug, psychological and psychiatric records, HIV testing, ARC and/or AID diagnosis. I specifically direct you to include any such records of a sensitive nature among those sent to Kantor & Kantor. You are also authorized to

Page 1 of 3

LIB000253

provide Kantor & Kantor with an office conference and a medical report, if you are requested to do so by them.

### REQUIRED DISCLOSURES - 45 CFR 164.508(c)

$    This protected health information is to be used for the following purpose: attorney's use in civil action.

$    This authorization may be revoked by a signed and properly dated written revocation, delivered to the healthcare provider named above, provided that this release cannot be revoked as to protected health information that had been previously released in reliance on this document.

$    The undersigned acknowledges that a refusal to sign this form will not result in a denial of health care by the hospital or any other health care provider and that this release has not been coerced by a health care entity or any of its business associates.

$    The undersigned acknowledges that once the PHI is disclosed, it may be re-disclosed to individuals or organizations that are not subject to the federal privacy regulations such as expert witnesses, litigants, insurance companies, and even may become public record if filed with a court of law.

$    This authorization will expire twenty-four (24) months after the date executed, unless earlier revoked in writing.

Page 2 of 3

LIB000254

Case 8:20-cv-00839-JVS-KES    Document 17-1    Filed 01/29/21    Page 255 of 630
Page ID #:317
To:    Page 5 of 5                    2/13/2020 10:05:54 AM PST              1-510-280-7564  From: Kantor and Kantor LLP

## AUTHORIZATION FOR RELEASE OF CONFIDENTIAL INFORMATION

### B.    AUTHORIZATION TO RELEASE CONFIDENTIAL MATERIALS, OTHER THAN PHI

1.    **INSURANCE INFORMATION:**  Any and all information in your custody, possession, or control, relating in any way to any application for insurance, correspondence, or claim for payment of benefits to or on behalf of the above-named individual under any form of insurance or similar plan, including employee welfare benefit plans, and any other such information in your custody, possession, or control.

2.    **EDUCATION & EMPLOYMENT INFORMATION:**  All school and educational information, including transcripts and all information relating in any way to employment, past or present, of the above-named individual, including, but not limited to, information pertaining to wages and salary, hours worked, dates of disability from employment, disciplinary records, commendations, applications for employment, and any other such information in your custody, possession, or control.

3.    **MEDICAID/MEDICARE/SOCIAL SECURITY INFORMATION:**  Any and all information, including benefit payment and lien information, medical records, applications for Medicaid, Medicare, Social Security, or other such benefits, and any other information pertaining to application for or receipt of such benefits.

4.    **TAX RECORDS:**   Any and all local, state, and/or federal tax information relating to the above-named person, specifically including tax returns.

5.    **LAW ENFORCEMENT/COURT RECORDS:**    Any and all information and records pertaining to criminal prosecutions or civil actions, including records pertaining to arrest, detention, incarceration, and all confidential or public records generated or obtained in connection with same.

THIS AUTHORIZATION WILL EXPIRE TWENTY-FOUR (24) MONTHS AFTER THE DATE EXECUTED, UNLESS EARLIER REVOKED IN WRITING.

Dated: July 8, 2019

Vicki Collier

Page 3 of 3

LIB000255



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5855

| | |
|---|---|
| Date:  February 11, 2020 | |
| To:    KANTOR & KANTOR<br>19839 NORDHOFF ST<br>NORTHRIDGE CA 91324 | |
| Attn: | |
| Fax:   (818) 350-6272 | |
| From:  Kimberly Murray<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5855 | |
| Total Pages<br>(Including Cover):    21 | |
| RE:<br><br>Claim #:    8741789<br>Claimant:  Vicki Collier<br><br>Auto Club Enterprises | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.º de septiembre de 2019, Liberty Life Assurance Company of Boston cambió su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto plazo recibirá un Endoso que debe adjuntarse a su póliza una vez recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**LIB000256**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5855

February 11, 2020

Kantor & Kantor
19839 NORDHOFF ST
NORTHRIDGE, CA 91324

RE:    Long Term Disability (LTD) Benefits
       Auto Club Enterprises
       Claim #: 8741789
       Claimant: Vicki Collier

To Whom It May Concern:

Lincoln Financial Group is responsible for managing claims for benefits under Auto Club of South California's long-term disability (LTD) insurance policy.

We are in process of reviewing your appeal of our decision regarding the above-referenced claim. The purpose of this letter and enclosure(s) is to provide you with an opportunity to review and comment on new/additional evidence that has been received before a decision is rendered on the appeal.

Please find attached a copy of the independent medical evaluation conducted on January 27, 2020, which is new or additional evidence in connection with the appeal.  You may review this report and provide a response to us, which we will consider in making our decision on the appeal.  If we do not receive your response within 21 days of the date of this letter, we will proceed with making a determination on the appeal.

Under ERISA, the period for making a benefit determination shall be tolled (suspended) from the date of this notice until we receive your timely response.  Upon receipt of  your response, we will promptly complete our review and render a determination on the appeal.  If your response is not received by March 3, 2020 we will render a determination based on the information contained in the file.

If you have any questions regarding this matter, please contact me.

Sincerely,

Kimberly Murray
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16399
Secure Fax No.: (603) 334-5855

Attachments:   8741789-MEDICAL-CP/PEER REVIEW-02.03.2020

1  of  1

LIB000257



Network Medical Review Co. Ltd.

An ExamWorks Company

| | |
|---|---|
| **REFERRED BY:** | Kimberly Murray |
| **CLIENT NAME:** | LINCOLN FINANCIAL GROUP (IME) - LLAOB |
| **CLAIMANT NAME:** | Vicki Collier |
| **CLAIM #:** | 8741789 |
| **NMR #:** | 307803 |
| **JOB TITLE:** | Sales agent |
| **DOD:** | 05/15/2018 |
| **REFERRAL DATE:** | 01/03/2020 |
| **DOE:** | 01/27/2020 |
| **REPORT DATE:** | 01/30/2020 |

## INDEPENDENT MEDICAL EXAMINATION

**REFERRING DIAGNOSIS:**     Unspecified sprain of shoulder joint

### RECORDS PROVIDED FOR REVIEW:

| | | |
|---|---|---|
| PROGRESS NOTES | Kaiser Permanente | 05/10/18-08/30/19 |
| PROGRESS NOTES | Synapse Medical Group | 09/05/18-10/15/19 |
| FCE | S. Jurado, D.P.T., CEAS | 09/13/19 |
| IME | R. Arora, M.D. | 10/11/18-10/24/18 |
| IME | S. A. Rubin, M.D. | 11/15/19-11/21/19 |
| FILE REVIEWS | A. Chhatre, M.D. | 05/08/19 |
| LAB/DIAGNOSTICS | Kaiser Permanente | 07/30/18-02/14/19 |
| CT/MRI | Kaiser Permanente | 10/10/16-04/09/18 |
| MRI | A. Safvi, M.D. | 02/21/19 |
| JOB | | |
| OTHER | J. G. Howard, M.R.C., C.R.C. | 03/02/19 |
| MISC | | 06/18/13-11/22/19 +Undated |
| ROI | | 09/15/18-07/08/19 |

To Whom It May Concern:

At your request, Ms. Vicki Collier was seen for an independent medical evaluation on 01/27/20. Prior to the evaluation, it was explained to Ms. Collier that this appointment was for the purpose of evaluation only and not for care, treatment, nor consultation. Therefore, no doctor-patient relationship would result. Ms. Collier has also been advised that I am an independent doctor and have been requested to conduct this evaluation by the group noted above. Ms. Collier was examined at my Marina del Rey office. She arrived on time and was by herself. She provided photographic identification consisting of her driver's license for the purpose of the visit.

4960 East State Street · Rockford, IL 61108 · Phone 815.964.6334 · Fax 815.977.9882
website  www.nmrco.com  ▪ email  RockfordIMEDepartment@examworks.com

LIB000258



**RE:** Vicki Collier                                 NMR#: 307803

**Page** 2

**MEDICAL RECORDS REVIEW:** On 05/10/18, this is a progress note by Patrick Anthony Dimartini, MD. The patient complains of tinnitus, got worse over the last week, no change in hearing. Assessment is bilateral subjective tinnitus. The plan is perhaps eustachian tube plugged, try Sudafed, try Flonase, referred to audiology.

Progress note, 05/14/18, by Sovanrith Tun, MD. Chief complaint is persistent pain in bilateral shoulders, had left cortisone injection in the shoulder helped, has tried Norco, meloxicam, and Neurontin. There is moderate pain, working on an ergonomic workstation. No atrophy is noted. Abduction is noted to be 90, forward flexion 90, external rotation 70, internal rotation 20. Impingement sign is positive. Impression is bilateral shoulder rotator cuff syndrome. Plan is activity modification, meloxicam, Norco, will be stopping her current job, follow-up is p.r.n.

On 05/14/18, this is a work status report by Dr. Tun. Diagnosis, bilateral rotator cuff syndrome. The patient is placed on modified duties from 05/14/18 through 07/15/18 with restrictions of no typing, no use of both shoulders and arms.

07/06/18, progress note by Dr. Tun., right shoulder partial rotator cuff tear, partial intratendinous supraspinatus tendon tear, persistent pain in bilateral shoulders, does physical therapy at Henry Mayo. Range of motion and exam was unchanged. Impression, bilateral shoulder rotator cuff syndrome. Plan is activity modifications, meloxicam, stop current job, bilateral cortisone injections for forearms, right shoulder arthroscopy, right rotator cuff repair if pain persists, follow-up p.r.n.

07/06/18, work status report by Dr. Tun, the patient on modified duties from 07/16/18 to 08/31/18 with restrictions of no typing or use of both shoulders and arms. The patient was scheduled for Botox on 07/20/18.

Neurology follow-up on 07/20/18 by Esther Chuanwah Wang-O'Connell, MD, the patient has diagnosis of chronic migraines and headaches, feels Botox helped. She denies any migraines in the past three months, feels shoulder and neck much relaxed. Assessment is chronic migraine headache, failed multiple treatments and is now exploring Botox. Injections of Botox were performed. Follow-up in three months. Keep headache diary. Plan is chemodenervation muscles innervated by facial, trigeminal, cervical spinal, and accessory nerves bilateral.

07/30/18, progress note by Dr. Colleen Bogdanich, the patient is afraid that she might have genital warts, has some discomfort with sex. Exam performed. Plan is HPV test, hormone, gynecology, cytology.

Progress note, 08/22/18, by Brian Brosnan, MD, the patient received Botox to her lips.

08/27/18, telephone conversation by Dr. Tun, the patient complains of bilateral shoulder pain, pain with prolonged activity, requests work restrictions, offered earlier surgery, but not possible because of health coverage.

Work status report, 08/27/18, the patient was placed on modified work from 09/01/18 to 10/31/18. Restrictions are no typing or use of shoulders and arms bilaterally.

4960 East State Street ◇ Rockford, IL 61108 ◇ Phone 815.964.6334 ◇ Fax 815.977.9882
*website* www.nmrco.com ■ *email* RockfordIMEDepartment@examworks.com

LIB000259



**RE:** Vicki Collier                    NMR#: 307803
**Page** 3

10/16/18, progress note by Shahram Gharibshahi, MD, the patient received Botox for headaches for chronic migraine.

Progress note by Maria Oculam, PA. The patient has right rotator cuff tear, booked for postop visit, but canceled surgery due to family issues, to ask for Norco, will rebook. Plan is Norco prescribed. The patient will call for surgery.

01/17/19, progress note by Sonu Brara, MD, the patient presents for Botox for headaches, received Botox injections for chronic migraine.

01/31/19, progress note by Esther Chuanwah Wang-O'Connell, MD, the patient presents with vulvar itching. Assessment and plan is overactive bladder, start Ditropan, check urine, postmenopausal atrophic vaginitis, wear comfortable underwear, use Estrogen cream, will follow up on bladder findings, ultrasound of bladder and urinalysis is ordered.

02/04/19, telephone visit with Esther Chuanwah Wang-O'Connell, MD, the patient is concerned about carotid arteries. She said that her mother had problem with them. Plan is advised regular exercise and healthy eating. ASCVD risk score discussed. Carotid duplex ordered. CBC ordered.

02/13/19, carotid artery duplex, right side normal and left side normal.

03/21/19, Catherine Close, MD, the patient presented for skin check. She was seen and examined.

03/28/19, progress note with Sylvia Mann, MD, follow-up for genital warts and vaginal itching.

This is a progress note by Edwin Haronian, MD, progress note date of service 09/05/18, Ms. Collier states she was sustained cumulative trauma injuries to her neck, shoulders, bilateral upper extremities, forearms, elbows, hands, wrists, back, head, lower extremities, during the course of her employment as an insurance agent for The Auto Club. She has noted pain since late 2016, developing gradually. She had cortisone injections, had x-rays and MRI of her shoulder. On 07/25/17, Dr. Tun performed right shoulder surgery and she received physical therapy. She remained on total temporary disability through 11/21/17. She also received an epidural injection to her lower back and Botox injections to her shoulder and neck. She is presently not working and last worked on 05/22/18. She complains of headaches, constant pain in the neck with numbness radiating into her arms, frequent pain in the shoulder with stiffness, frequent bilateral elbow pain, intermittent bilateral wrist and hand pain, and frequent middle and low back pain. On examination, there was no spasm. She had normal range of motion of the cervical spine. Normal reflexes and diminished strength to the bilateral deltoid at 4/5. Sensation was intact. Impingement and Hawkins signs were present on the right and left. Elbow examination showed normal range of motion. There was tenderness along the distal radius. Lumbar examination showed straight leg raise positive bilaterally. Reduced tendon reflexes at the ankle bilaterally. She had normal strength in lower extremities. Diagnoses, cervical radiculopathy, lumbosacral radiculopathy, bilateral shoulder impingement, bilateral elbow tendinitis/bursitis, and bilateral wrist tendinitis/bursitis.

4960 East State Street ◇ Rockford, IL 61108 ◇ Phone 815.964.6334 ◇ Fax 815.977.9882
*website* www.nmrco.com ■ *email* RockfordIMEDepartment@examworks.com

LIB000260



**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 4

Discussion, the patient presents complaining of neck pain radiating to the upper extremities with associated numbness, shoulder pain, with decreased range of motion and strength, elbow pain, and wrist pain. Request authorization for neurodiagnostics of the upper and lower extremities, request 12 sessions of physical therapy, and request gabapentin. She may return to the workplace, but should not lift, push, or pull more than 10 pounds. She should not perform bending, twisting activities, or place the spine in unusual or awkward positions. She should not perform repetitive hand motions, pinching or grasping bilaterally. She will return in four weeks, at which time further recommendations will be made. Whole person impairment was noted to be 21%.

This is a PR2 by Dr. Haronian. Date is 09/05/18. Subjective complaint is cervical pain. Objective findings, loss of range of motion. Diagnoses, radiculopathy, lumbosacral region; impingement syndrome, shoulders; olecranon bursitis, elbows; and periarthritis, unspecific wrist. Treatment plan is non-surgical. Request EMG upper and lower extremities, physical therapy, and Neurontin. Work status is modified work with the following restrictions: Avoid lifting over 10 pounds, avoid pushing or pulling over 10 pounds, avoid bending and twisting completely, restrict from placing the spine in unusual and awkward positions, avoid repetitive hand motions completely with both hands, and avoid pinching and grasping completely with both hands. The patient should remain on totally temporary disability if work modifications cannot be accommodated by the employer.

This is a note by Dr. Haronian dated 09/07/18, referred to physical therapy.

This is a progress note by Dr. Haronian dated 10/10/18. She continues to complain of neck and back pain radiating to the upper extremities and lower extremities. Exam showed spasm, tenderness, and guarding in the paravertebral musculature of the cervical spine. Decreased sensation was noted in the C5 dermatome. She has mild impingement and Hawkins signs with range of motion of the shoulders with flexion of over 120 degrees on the left and 100 degrees on the right. Current work restrictions will continue. She will return in four weeks' time with prior medical records. Diagnoses are unchanged.

Progress note by Dr. Haronian dated 11/14/18. The patient has brought with her some MRI studies from Kaiser, which were reviewed. Waiting for QME report. The patient is complaining of left shoulder pain and severe low back pain. Until QME report is available, he will continue modified work duties, follow up few weeks and make further recommendations then.

11/29/18, progress note by Dr. Haronian, the patient is requesting refill of Norco. She was provided with 30 tablets. Request referral to pain management if she is to continue to use opioids. The work restrictions are unchanged.

12/13/18, this is a progress note by Jonathan Kohan, MD, secondary treating physician pain management initial report. The patient was seen for pain management. Present complaints include headaches, electrical type neck pain, bilateral shoulder pain, bilateral elbow pain, intermittent pain in both wrists and hands, upper and lower back pain, intermediate sharp knee pain, and ongoing numbness and tingling in both feet. She was noted to have spasm and pain in the cervical spine with normal range of motion and normal strength. She had decreased sensation in the C5 and C6 dermatomes on the right and C5 on the left. Shoulder examination showed normal range of motion. Lumbar spine exam showed diminished range of motion with pain and spasm and a negative straight leg raise bilaterally. She was

4960 East State Street ◦ Rockford, IL 61108 ◦ Phone 815.964.6334 ◦ Fax 815.977.9882
*website* www.nmrco.com ◾ *email* RockfordIMEDepartment@examworks.com

Network Medical Review Co Ltd.
An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 5

noted to have normal strength and sensation. MRIs were reviewed. Impression, cervical disc protrusion, cervical radiculopathy, history of right shoulder surgery with residual pain, exacerbated lumbar pain with a component of sacroiliitis, and lumbar radiculopathy. Recommendation is to continue Norco, await MRI findings, and may benefit from spinal injections.

01/03/19, this is a progress note by Dr. Haronian. The patient continues with upper and lower back pain with radiation to the upper and lower extremities. She is under the care of pain management receiving Norco and taking gabapentin. She has spasm and tenderness in the paravertebral muscles with decreased range of motion on flexion and extension. Request MRI of the low back, request authorization for Neurontin, work status is unchanged for modified duty, follow-up in four weeks.

Supplemental report by Dr. Haronian dated 01/20/19. The QME report of Dr. Arora was reviewed. It appears that the neck and lower back issues are non-industrial. He provided the patient with 4% impairment of the whole person and provided the patient with future medical. Dr. Haronian feels that due to deferring opinions between Dr. Arora and himself, it is likely that no further authorizations would be provided. As such, the patient would be declared permanent and stationary as he will be unable to provide the claimant any further treatment.

01/28/19, this is a progress note by Dr. Kohan, a review of medical records was performed. The patient is not undergoing therapy for treatment, but continues to have difficulty controlling her pain in the neck, shoulder, and low back. She ran out of Norco. Naprosyn and over-the-counter medicines have not been helpful. She has tenderness and spasm over the cervical spine extending to the trapezius and deltoid. Lumbar spine tenderness over the sacroiliac joint. Impression is history of right shoulder arthroscopic surgery with residual pain, cervical disc protrusion with component of radiculopathy, and exacerbated lumbar pain with component of sacroiliitis. Considering her work duties at AAA with her capacity, pain seemed reasonable and work-related. The patient's options are limited. MRI was not done, but she has component of sacroiliitis. Norco will be refilled and increase gabapentin, follow-up in one month.

01/31/19, permanent and stationary report from Dr. Haronian, history and job description were reviewed. Physical exam showed tenderness and spasm over the paravertebral musculature in the upper trapezius region. Range of motion was accomplished with discomfort and spasms. Reflexes were normal and symmetric with negative Hawkins. She had 4/5 strength in the right deltoid, otherwise 5/5 strength. She had intact sensation. Impingement signs showed positive Hawkins on the right and left. She had tenderness over the lateral epicondyle bilaterally. She had tenderness over the distal radius bilaterally. Lumbar exam showed tenderness and pain in the paravertebral musculature with spasm and pain. She had normal strength in the lower extremities. She had diminished sensation in the right L5 distribution. Hip range of motion was normal. Diagnoses are cervical spine radiculopathy, lumbar spine radiculopathy, bilateral shoulder impingement, status post right shoulder arthroscopy, bilateral elbow tendinitis, and bilateral wrist tendinitis. The patient has been seen by a number of physicians and has had conservative treatment, which is unlikely to help her. She has reached maximum medical improvement. The patient is precluded from extended upward and extended downward gazing, precluded from repetitive bending and twisting of the lumbar spine, precluded from repetitive activities at or above the shoulder level, precluded from repetitive torqueing, and precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching. The patient can return to work with restrictions that have been provided. The patient should have access to future medical care. It is

4960 East State Street ◊ Rockford, IL 61108 ◊ Phone 815.964.6334 ◊ Fax 815.977.9882
website www.nmrco.com ■ email RockfordIMEDepartment@examworks.com

LIB000262



Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier            **NMR#:** 307803
**Page** 6

within reasonable medical probability the patient has sustained injuries to the cervical and lumbar spine, bilateral shoulders, elbows, bilateral wrists due to continuous trauma activities at work. Apportion 20% of preexisting degenerative changes of the cervical and lumbar spine and 80% to direct effect of the continuous trauma. For the shoulders, elbows, and wrists, 100% of the patient's disability is the direct effect of the continuous trauma. She is noted to have final whole person impairment of 30%.

02/14/19, this is a follow-up report and review of records from Dr. Haronian, reviewing the report from Dr. Arora. The patient was declared permanent and stationary. She could return to Dr. Haronian on an as needed basis.

02/25/19, progress note by Dr. Kohan, the patient continues to have pain and difficulty with her neck and shoulder with moderate-to-severe spasm over the cervical spine extending to the trapezius and deltoid. No additional treatment has been allowed through Dr. Haronian's office. She was given Norco. Follow up next month.

03/13/19, supplemental report from Dr. Haronian. He would respectfully disagree with Dr. Arora regarding the opinion on industrial causation. Dr. Arora did not feel that the cervical and lumbar spine were industrially related. Part of Dr. Haronian's whole person impairment was related to the cervical and lumbar spine based on information provided to him. He requests the medical records provided to and the ability to change his opinion should any additional records be available.

04/01/19, progress note by Dr. Kohan. Lumbar spine MRI from 02/15/19 showed a small disc protrusion at L5-S1. She will continue with Norco and gabapentin as injections have not provided her with much relief. She was reminded to make any attempt to reduce anxiety or any issues with her sleep to avoid any further exacerbations of myofascial pain.

Progress note dated 04/11/19 by Dr. Haronian, the patient is back without significant change. She has been declared permanent and stationary due to lack of authorization. She continues to suffer from pain. She can continue using nonopioid anti-inflammatory medications. Her work restrictions are guarded by the permanent and stationary report. She will follow up in six weeks.

05/07/19, progress note by Jonathan Kohan, MD. She is not undergoing therapy or any modes of treatment. She has not been back to work, but reports increasing level of low back pain. She is taking Norco and gabapentin. She has tenderness over the paravertebral area, which extends to the SI joint. She has tenderness and moderate spasm in the trapezius and deltoid. He does not believe injection would be beneficial aside from trigger point injections. Recommended Norco and Neurontin and follow-up in one month.

05/16/19, progress note by Dr. Haronian, the patient has been made permanent and stationary. She continues to show spasm, tenderness, and guarding in the paravertebral musculature of the cervical and lumbar spine. She has flexion and abduction to 120 degrees. She has decreased grip strength. Medications will be refilled. Work restrictions per the permanent and stationary report. Follow up in eight weeks.

4960 East State Street ⬥ Rockford, IL 61108 ⬥ Phone 815.964.6334 ⬥ Fax 815.977.9882
*website* www.nmrco.com ◼ *email* RockfordIMEDepartment@examworks.com

LIB000263



**RE:** Vicki Collier                                   **NMR#:** 307803
**Page** 7

06/04/19, progress note by Dr. Kohan, she has ongoing neck and shoulder pain. Low back pain is less, but has difficulty lifting, pushing, and pulling. She has tenderness over the cervical spine extending to the trapezius and deltoid. She has not been able to get treatment because of issues surrounding her claim. She will continue with Norco and gabapentin.

07/09/19, progress note by Dr. Kohan, she developed depression due to exposure of modus operandi of the carrier. She has been taking Norco and gabapentin. Her exam is unchanged. Plan is prescribed Cymbalta to address insomnia, depression, and neuropathic pain. Follow up in four weeks.

This is a supplemental report and record review by Dr. Haronian dated 07/10/19, he was provided with notes from Dr. Arora and he remained in disagreement with the assessment of the QME over the body part in question regarding her cervical and lumbar spine and the acceptance of the claim regarding these areas.

07/11/19, progress note by Dr. Haronian, she continues to have pain and has seen pain management, who prescribes her medications. He recommends continuing and reducing the opioid medications as much as possible. Ibuprofen will be provided with Prevacid. He will see her back at a lesser frequency as she has been declared permanent and stationary.

09/26/19, supplemental report and review of records by Dr. Haronian, MRI of the right shoulder revealed a partial thickness supraspinatus tendon tear. MRI of the cervical spine was reviewed. He disputes the medical-legal evaluator's note. Dr. Haronian provided restrictions to avoid lifting more than 10 pounds and avoid repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching due to her wrist complaints. It would be reasonable to indicate that the patient will not be able to perform her previous work activities as indicated in his report dated 01/31/19. Ms. Collier underwent a functional capacity evaluation on 09/12/19 and 09/13/19 to obtain objective measurement of her physical capacity for work. It was recommended that the claimant can sit occasionally up to 3 hours per day, stand occasionally up to 3 hours per day, walk occasionally up to 3 hours per day, climb 5 flights, bend and squat 10 reps, reach overhead 40 reps, and push and pull 36 pounds. She is unable to return to work with the above parameters. This is a functional capacity evaluation report dated 09/13/19 indicating that based on the test results, the client gave maximum effort with testing. She had 98% consistency with coefficient of variance measurements below 15%. Although the claimant presented with functional limitations on the first day of testing, her performance and activity tolerance declined on day 2. She presents with deficits in strength of her upper and lower extremities. She has difficulty with tasks involving repetitive bending, squatting, and stair climbing and activity tolerance declined on day 2. Based on testing, the client is unable to perform sedentary work as she is unable to maintain static sitting for approximately 2 hours continuously and up to 6 hours a day.

10/11/18, this is a qualified medical examination in pain management by Ripu Arora, MD. She has pain in her neck, shoulder, lower extremities, headaches, forearm, elbows, and shoulder blade pain, upper back pain because of the lack of the ergonomic furniture provided to her at the work location. She has been seeking medical attention. Neck shows trigger point spasm and tenderness on the left side. She has diminished shoulder range of motion on the right and left. She is able to flex and extend her lumbar spine to 60 and 20 degrees bilaterally. Diagnoses are cervical radiculopathy, right shoulder status post rotator cuff repair with pain, left shoulder pain, sacroiliac pain bilaterally and low back pain. No

4960 East State Street ◦ Rockford, IL 61108 ◦ Phone 815.964.6334 ◦ Fax 815.977.9882
*website* www.nmrco.com ◾ *email* RockfordIMEDepartment@examworks.com

**LIB000264**



Network Medical Review Co.Ltd.
An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 8

medical records were available for review.  He is unable to comment on apportionment or permanent and stationary status.

10/24/18, this is a supplemental report by Dr. Arora.  A record review was performed.  He indicates that after reviewing the records, there are differences between her history and the examination of the medical records provided.  She has been complaining of symptoms during the 2005 to 2009 timeframe and it is his medical records that the back pain and neck pain as well as hemorrhoids are not out of employment.  She started complaining of shoulder pain in 2015.  It is his medical opinion that the right shoulder injury is related to employment.  It is his opinion that she has reached permanent and stationary status.  There is no apportionment for the right shoulder.  The neck and back are 100% non-industrial.  She has 9% total whole person impairment.  She is healing from shoulder surgery and should avoid heavy lifting more than 20 pounds and reaching above her head and follow-up would be advised by an orthopedic surgeon.  She may need physical therapy 6-12 sessions for pain.

This is a peer review by Akhil Chhatre, MD.  Records were reviewed and response to questions were performed.  He was unable to talk with Dr. Haronian.  The diagnoses supported by the medical evidence are chronic low back pain, neck pain, and right shoulder pain, status post right shoulder arthroscopy.  There are no supported impairments from 05/15/18 to the present.  She has stable exam findings with no new diagnostic testing.  The MRI of the cervical spine from 2016 is without any updated findings.  The right shoulder MRI is undated.  The claimant has stable exam findings with no new testing to suggest acute neurologic or musculoskeletal derangement.  The claimant does not have supported impairment.  The claimant is medically stable with diagnostic testing.  The severity and scope are not in line with the chronic and stable conditions that are supported by the medical records.  There is no evidence to support impairments related to prescribed medications.

MRI of the cervical spine dated 10/10/16 shows straightening of the normal lordotic curvature.  1 mm broad-based posterior disc bulge at C3-C4 indenting the anterior aspect of the thecal sac.  2 mm central posterior disc protrusion at C4-C5 causing pressure over the anterior aspect of the thecal sac.  There is a 2 mm broad-based posterior disc endplate osteophyte complex at C5-C6 causing pressure over the anterior thecal sac.  There is a 2 mm broad-based posterior disc protrusion at C6-C7 causing pressure over the anterior thecal sac.  There is mild narrowing of the left neural foramen and moderately significant narrowing of the right neural foramen.

MRI of the right shoulder dated 07/05/17 was reviewed showing impression 9 mm approximately 50% partial-thickness articular surface supraspinatus tendon tear on a background of moderate tendinosis.  Infraspinatus and superior fiber subscapularis mild tendinosis.  Proximal long head of biceps mild tendinosis.  Minimal subacromial-subdeltoid bursitis and acromioclavicular joint osteoarthrosis.

MRI of the lumbar spine dated 02/15/19 shows impression anterior osteophytes at T12 down through L5.  Mild disc desiccation at L2-L3 down through L5-51.  Anterior loss of disc height is seen at L5-S1.  There is no significant disc herniation or neural foraminal narrowing visualized.  The spinal canal is patent.  Exiting nerve roots are normal.  Left lateral annular fissure is identified.  A mild disc bulge is identified at L5-S1 measures 2.6 mm.  Exiting nerve roots are normal.

4960 East State Street ◇ Rockford, IL 61108 ◇ Phone  815.964.6334 ◇ Fax  815.977.9882
*website*  www.nmrco.com  ■  *email*  RockfordIMEDepartment@examworks.com

LIB000265

**RE:** Vicki Collier                                     **NMR#:** 307803
**Page** 9

An occupational analysis dated 03/02/19 was reviewed with a summary indicating that the job that she performed at AAA was within the sedentary and light physical demand profile. It is reasonable to conclude that the occupation exists in both full-time and part-time positions. This is performed by Jane Howard, and she has not met with the claimant.

Blood work from Kaiser Permanente was reviewed and correspondence was also reviewed between the claimant's attorney as well as Liberty Mutual and treating physicians.

The claimant's job title as well as her job performance were reviewed.

This is a functional capacity evaluation done by Ergo Links Sebastian Jurado, DPT performing functional capacity evaluation with recommended physical demands of sitting less than 30 minutes continuously up to 3 hours per day, standing up to 30 minutes continuously up to 3 hours per day, walking less than 30 minutes continuously up to 3 hours per day, climbing five flights continuously, bending 10 reps continuously, squatting 10 reps continuously, these are all in the occasional range. She may reach overhead 40 reps continuously. Pushing and pulling are 36 pounds and 34 pounds. Lifting capacity is 15 pounds. It was felt that the claimant is unable to work within the parameters above.

**HISTORY OF PRESENT ILLNESS**: Ms. Collier is a 56-year-old woman who states that she has had no history of missed work or lapses where she had an industrial or other injury that required her to miss a period of time at work. She states that around 2015, she started to note neck pain that would radiate to the right shoulder. She states that in 2016, she went on a trip to Mexico that she had one at work and started to feel "kink" in the left neck with certain positions. She continued to have ongoing pain in the shoulder and upper arm region. She states that she had symptoms in her low back as well. She eventually sought treatment where she underwent imaging studies of her shoulder and she had cortisone injections, which initially helped, but then stopped working. She states that in May of 2017, she underwent right shoulder rotator cuff repair and was off work for approximately three months. She went to physical therapy and was able to return to work. She states that initially she had been doing well then she started to have radiating pain once again. She started to have pain on the right shoulder, but also in addition on the left upper extremity as well. It was then decided that the symptoms were work related and she states that she stopped seeking treatment from Kaiser through which she had her prior care and her surgery. She states that she started to see a doctor through Workers' Compensation and she states that she has not been able to get treatment authorized and she states that she has only been using medications as no treatment has been authorized to Workers' Compensation. She states that she has had an MRI of her lumbar spine, but has not had any other up to date imaging studies of other areas. She has undergone treatment consisting of cortisone injections in the shoulder. She also had an epidural in her neck, which should not help. She has been through physical therapy, chiropractic, and acupuncture treatments. She states that when she was working, she had requested an ergonomic evaluation, but she was unable to get one in a timely manner and states that she had tried for two years to get an ergonomic workstation. She states that she has not had an epidural in her low back. She takes Norco for the pain up to 1-2 per day as well as gabapentin and Cymbalta. She has been doing stretching. She has not had an electrodiagnostic study and has not seen a rheumatologist.

**PRESENT SYMPTOMS**: She states that presently she has neck pain radiating to both shoulders and upper arms and occasional radiation to the wrist. She states that the pain is constant. She states that

LIB000266



**RE:** Vicki Collier                    **NMR#:** 307803                    Network Medical Review Co.Ltd.
**Page** 10                                                                                                An ExamWorks Company

there is no relation of the pain to activity. She states that her shoulders are bothersome, but she does not note any increased pain with shoulder range of motion more than the usual constant level of pain. She states that at the present time, the left arm is more bothersome than the right. She states that the pain will awaken her. The pain is worse with sitting and will radiate into the periscapular area. She states that additionally she will have intermittent numbness in her hands and her fingers will turn white. She also has pain in her low back that radiates to the hip as well as the knee, the left side is worse than the right. She notes intermittent numbness and tingling and occasional right lower extremity numbness and tingling and pain with driving. The pain is worse with sitting and she needs to change positions frequently. She will occasionally limp when she tries to favor her hip and the pain will awaken her. She has bilateral elbow pain with right side more bothersome than the left. The elbow will occasionally lock and she has pain that radiates down into the forearm. She states that when she massages her forearms, she will have improvement of the pain that radiates into her index and middle fingers. The pain at times will radiate up into the shoulders.

**PAIN DIAGRAM**: Her pain diagram shows numbness on the top of her head as well as in both forearms and in her toes and the finger on her right hand. She has aching in the neck, bilateral shoulders and periscapular regions as well as in the elbow and in the right knee. She has pins and needles in the toes. She notes burning in the buttock region and radiating pain in the hip region as well as in the back of her head. She describes the pain as anywhere from 6 to 9, which varies in place. The pain is continuous, positional, intermittent and unable to rate.

**PAST MEDICAL HISTORY**: Significant for depression, for which she takes Cymbalta.

**MEDICATIONS**: Norco, gabapentin, Cymbalta, and hormone cream.

**PAST SURGICAL HISTORY**: Significant for hernia repair in 2002, breast augmentation in 2005, tonsil removal as a kid, and rotator cuff repair in 2017.

**REVIEW OF SYSTEMS**: Significant for fatigue, depression, sleep difficulty, headaches, nervousness, stress, numbness, weakness, bowel problems, memory loss, loss of concentration, itching, tingling, and early awakening.

**ALLERGIES**: None.

**SOCIAL HISTORY**: She does not smoke and drinks occasional alcohol. She has no history of alcohol or drug abuse. She states that she is presently single with three children; ages 26, 23, and 19. She lives with her boyfriend who works fulltime out of the house. She lives in a house that is two stories. She states that prior to her disability, she would enjoy swimming and going to the gym. She states that presently for exercise she will walk, stretch, take classes at a gym, and use a foam roller on a daily basis.

**EDUCATION AND WORK HISTORY**: Ms. Collier earned her high school diploma. She states that she was raising children until 2007. From 2007 to 2013, she was working in insurance as an independent producer where she was working from home. From 2013 until November of 2018, which was her last time working, she was working as an insurance agent. She states that her job consisted of

**LIB000267**



**RE:** Vicki Collier                                    **NMR#:** 307803
**Page** 11

sitting, using the computer and talking on a telephone, inspecting homes, occasionally bending, and minimal lifting.

**FUNCTIONAL HISTORY**: Ms. Collier indicates she is able to sit for 30-45 minutes at a time before she has to stand. She is able to walk and able to drive. She sleeps anywhere from 6-10 hours per night. She states that her last travel was to driving to Las Vegas. She states that she is able to stand 30-45 minutes at a time. She states that she is able to perform her health care, but finds difficulty blowing dry her hair and taking off a sports bra. She states that she exercises daily, walking, stretching, taking classes at the gym, and biking. She is able to type for approximately 15-30 minutes at a time. She states that housekeeping is performed by herself, her daughter, and her boyfriend and she does her own grocery shopping when needed.

Her typical day consists of getting up at 07:00-08:00 a.m., meditating, reading, stretching, walking her dog, going to the gym, sitting or lying down, reading, watching TV, tidying the house, stretching, occasionally cooking and watching TV.

**PHYSICAL EXAMINATION**: On physical exam, Ms. Collier's stated height and weight are 5'6" tall and 118 pounds. On evaluation of the cervical spine, she shows no loss normal cervical lordosis. There are no noted abnormal curvatures. Active cervical range of motion is noted to be flexion to 45 degrees, extension to 30 degrees, and rotation to 45 degrees bilaterally. She states that she has more pain with left greater than right rotation. There was no tenderness noted of the cervical paraspinal muscles nor in the parascapular region. She had mild tightness along the trapezius bilaterally.

On evaluation of the shoulders, she had well healed surgical portal sites on the right shoulder. She was noted to have no tenderness along the anterior or posterior shoulder. Active shoulder range of motion on the right side was noted to be 130 degrees of abduction, 80 degrees of external rotation, and 60 degrees of internal rotation. She had no pain with resisted internal or external rotation. She had pain with Hawkins' test on the right side, but no pain with Speed's test. On evaluation of the left shoulder, she had abduction actively to 30 degrees, external rotation was noted to be 80 degrees, and internal rotation to 30 degrees before she noted discomfort. She had pain with Hawkins' and Speed's test on the left side.

On evaluation of the elbow, she had flexion to 140 degrees, extension to 0 degrees, supination and pronation to 70 and 80 degrees bilaterally. She had no pain or limitation with range of motion on the right side. She had tenderness along the lateral epicondyle on the right side. No tenderness along the medial epicondyle and she did note pain on the right side with resisted finger extension. On the left side, she had full range of motion with pain noted with supination. She had tenderness along the medial and lateral epicondyles and pain with resisted finger extension. No swelling or erythema was noted.

On evaluation of the wrist, she had no swelling or discoloration noted in the wrist. She had well manicured fingernails, which had polish on from a nail salon. She had no tenderness to palpation on the right wrist. Wrist range of motion was noted to be 60 degrees of flexion bilaterally, 60 degrees of extension bilaterally, radial and ulnar deviation were 20 and 30 degrees bilaterally. She had no pain or limitation on right wrist range of motion. She had tenderness to palpation along the dorsal aspect of the wrist. On the left side, she was noted to have discomfort with left wrist flexion, but no limitation in motion. She was able to fully flex and extend the fingers on both hands. There was no tenderness or

4960 East State Street ◦ Rockford, IL 61108 ◦ Phone 815.964.6334 ◦ Fax 815.977.9882
*website* www.nmrco.com ◾ *email* RockfordIMEDepartment@examworks.com

**LIB000268**


Network Medical Review Co Ltd.
An ExamWorks Company

**RE:** Vicki Collier                                    **NMR#:** 307803
**Page** 12

joint enlargement noted. She had 5/5 strength in the deltoid, elbow flexors and extensors, wrist flexors and extensors, and hand intrinsics. Sensation was diminished to 80% on the left thumb. Otherwise, sensation was intact to light touch on the right and along all other myotomes tested on the left side. Reflexes were 1+ at the biceps and 1+ at the triceps and symmetric.

Ms. Collier had a normal appearing non-antalgic gait. She was able to go up on her toes and back on her heels. Upon palpation of the thoracolumbar spine and lumbar, there was tenderness to palpation. Lumbar range of motion was noted to be flexion to 60 degrees, extension to 30 degrees, and side bending to 30 degrees bilaterally. She has no pain with whole body rotation to the right, but there was pain with whole body rotation to the left. She had a negative straight leg raise bilaterally.

On evaluation of the hip, there was no tenderness along the lateral trochanteric region bilaterally. Hip range of motion to 100 degrees of flexion, 30 degrees external rotation, and 30 degrees of internal rotation with no limitation on motion. She had no pain with right hip range of motion. She noted pain with left hip internal rotation.

On evaluation of the knee, there was no swelling or deformity of the knee. She was noted to have pain in the left knee with knee extension. Knee range of motion was noted to be flexion to 130 degrees and extension to 0 degrees. There was no significant medial or lateral laxity. There was no limitation in range of motion. The claimant was noted to have tenderness along the medial and lateral left knee. She was noted to have pain with knee flexion, which caused pain to radiate up into her hip region. She had no tenderness to palpation along the right knee along the medial or lateral joint line. There was negative Hawkins' test on the right side and on the left side, she had pain with Hawkins' test, but there was no palpable clicking. She had a negative Lachman's test. There was no significant medial or lateral laxity.

On evaluation of the foot and ankle, there was no swelling or erythema noted. No visible deformity was noted of the ankle or foot. Ankle range of motion was noted to be 40 degrees of plantarflexion bilaterally with no limitation. Dorsiflexion was noted to be 20 degrees. Inversion and eversion were noted to be 30 degrees and 20 degrees bilaterally. She had no tenderness along the right medial or lateral malleolus and no pain with right ankle range of motion. Upon left ankle range of motion, she was noted to have tenderness along the lateral malleolus and mild pain with inversion with otherwise no limitation in motion.

Upon evaluation of strength, she had 5/5 strength in the hip flexors, knee extensors, ankle and plantar and dorsiflexors, and extensor hallucis longus. She had giving way of the left extensor hallucis longus.

On evaluation of sensory testing, she had intact sensation to light touch, however, she noted a tingling sensation, which she stated that otherwise she felt was not diminished along the dorsal aspect of the left foot. Reflexes were 1+ at the biceps, 1+ at the triceps and symmetric, 1+ at the knee, and 1+ at the ankle and symmetric. Limb girth measurements were noted to be 25 cm on the right arm, 25.5 cm on the left arm, right forearm was 22.5 cm and left forearm was 22 cm. Right thigh circumference was 40.5 cm and left thigh circumference was 40 cm, right calf circumference was 33.5 cm and left calf circumference was 33 cm.

4960 East State Street ◊ Rockford, IL 61108 ◊ Phone 815.964.6334 ◊ Fax 815.977.9882
website www.nmrco.com ■ email RockfordIMEDepartment@examworks.com

**LIB000269**

**NMR**
Network Medical Review Co Ltd.
An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 13

On evaluation of Waddell's testing, she noted superficial non-anatomic tenderness to light touch along the low thoracic and lumbar region, along the medial and lateral joint line of the left knee, along the lateral malleolus of the left ankle, and along the forearm region. She had a positive stimulation test with pain on whole body rotation to the left. She had a positive distraction test with no pain on straight leg raise, but on evaluation of the left knee, she had pain with knee extension and flexion. She had regional disturbance with non-dermatomal sensory loss with diminished sensation in the hand and mild give-way weakness of the great toe on the left side. There was no significant overreaction during the examination.

**DIAGNOSES**:

1. Cervical pain.
2. Cervical radiculopathy.
3. Bilateral shoulder pain.
4. Status post right shoulder rotation cuff tear.
5. Bilateral elbow pain.
6. Bilateral wrist pain.
7. Lumbar pain.
8. Lumbar degenerative disc disease.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS**:

1. **Please provide a complete physical description of the claimant including her gait upon entering the office, capacity for sitting, and ability to get on and off the exam table correlate this with exam findings.**

The claimant ambulated into the office, during the exam, as well as away from the office in a normal manner with no assistive device and no outward appearance of any pain from ambulation. She was dressed in a sweat outfit and tennis shoes and otherwise well groomed. She had manicured nails and her hair was down. She appeared to have no difficulty changing positions from sitting to standing position. She was able to get on and off the exam bed without difficulty. She was able to sit for the duration of the exam and did not appear to be moving, fidgeting or in a significant amount of pain. She did not request to change position during the exam. The claimant appeared to move with relative ease. She was cooperative for the examination and was able to perform all movements asked of her. During range of motion testing the claimant had smooth, fluid movements, and there was no outward manifestation of pain other than what the claimant verbalized.

2. **Are any observations or behaviors demonstrated that are inconsistent with the exam or medical records?**

Based on my evaluation of the claimant, the claimant reports symptoms predominately in the neck, shoulders, upper extremities, and low back. She has positive exam findings in these areas as well. She was noted to have pain and limitation with shoulder range of motion. She was noted to have tenderness to palpation in the areas described in the medical records and upon examination. In an examination by Dr. Haronian on 09/05/18, he noted no spasm, normal range of motion of the cervical spine, normal reflexes, diminished strength of bilateral deltoid muscles, intact sensation, impingement and Hawkins'

4960 East State Street ◇ Rockford, IL 61108 ◇ Phone 815.964.6334 ◇ Fax 815.977.9882
*website* www.nmrco.com ■ *email* RockfordIMEDepartment@examworks.com

LIB000270



Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier                              **NMR#:** 307803
**Page** 14

signs were present on the left. Normal range of motion of the elbow with tenderness along the distal radius. Normal strength in the lower extremities. These findings are consistent with my findings on examination, however, I did not find any weakness in the shoulder and deltoid region. She also saw Dr. Jonathan Kohan for an initial evaluation in December of 2018. His exam showed spasm and pain in the cervical region with normal range of motion and strength. She has diminished sensation in the C5 and C6 dermatomes on the left and right. Shoulder examination shows normal range of motion. Lumbar examination shows diminished range of motion with pain and spasm and a negative straight leg raise. She has normal sensation and strength in the lower extremities. The claimant on my examination did note diminished sensation in the left thumb, but otherwise normal sensation. This is consistent with T5 dermatomal distribution. Based on my evaluation of the notes of Dr. Haronian and Dr. Kohan, it appears that there are not significant differences in the examination and upon my review of the medical records I did not view any observation of behaviors that were inconsistent with my exam.

**3.  Was there any evidence of symptom magnification during the exam?**

The claimant did have positive Waddell's findings during my examination. She did have tenderness in a number of different areas to relatively light touch palpation. She did have some giving way of the left great toe. She had a positive whole body rotation on simulation test with pain on left whole body rotation. She indicated no pain with straight leg raise, however, during knee examination she did note some pain with knee range of motion. During my evaluation of the claimant, the claimant gave good effort during the examination. She does not appear to overreact or grimace during the examination, but she does have a number of areas of tenderness noted. It should be noted that the MRI of the claimant's right shoulder from July of 2017, which was after her surgery was reviewed showing a partial thickness supraspinatus tendon tear with tendinosis of the infraspinatus and longhead of the biceps. She also had an MRI of the cervical spine dated 10/10/16 showing straightening of the normal lordosis with 1-2 mm disc bulges and an MRI of the lumbar spine showing mild disc desiccation and a 2.6 mm disc bulge with a left lateral annular fissure. It is my opinion based on these MRI findings that the claimant's symptoms appear to be out of proportion to what would be expected based on these MRI findings. The claimant's upper extremity pain would not be consistent with the cervical MRI as there was no significant neural foraminal narrowing and the findings on cervical MRI appeared to be relatively minor. Additionally, she has been off work for over one year and she continues to have significant symptoms with no apparent improvement upon rest and not working. She has had MRI of the lumbar spine, which shows an annular tear and degenerative changes which are commensurate with her age. She continues to have significant limiting symptoms with regards to her low back that appeared to more than would be expected based on the findings on cervical MRI, lumbar MRI as well as the MRI of her right shoulder. She has not had an MRI of her left shoulder that is in the medical records, and it would appear that the claimant's symptoms appeared to be out of proportion to what would be expected on the exam findings as well as imaging findings and there are some positive Waddell's findings, which lead to the conclusions that there are likely some nonorganic contributions to the claimant's symptoms.

**4.  Comment on whether the insured claimed pain severity and claimed functional limitations correlate with any clinical exam and/or diagnosis test findings. Does the severity on scope of claimed impairment correlate with medical and functional evidence?**

4960 East State Street ◊ Rockford, IL 61108 ◊ Phone 815.964.6334 ◊ Fax 815.977.9882
*website* www.nmrco.com ■ *email* RockfordIMEDepartment@examworks.com

**LIB000271**



**RE:** Vicki Collier                                **NMR#:** 307803
**Page** 15

As indicated in my response to question 3, it is my opinion based on the MRI findings for her right shoulder and cervical spine that the claimant's symptoms appear to be out of proportion to what would be expected based on these MRI findings. The claimant's upper extremity pain would not be consistent with the cervical MRI as there was no significant neural foraminal narrowing and the findings on cervical MRI appeared to be relatively minor. Additionally, she had no apparent improvement upon rest while being off work for many months. She continues to have significant limiting symptoms with regards to her low back that appeared to more than would be expected based on the findings on cervical MRI, lumbar MRI as well as the MRI of her right shoulder. While there is no record of her having an MRI of her left shoulder, the claimant's symptoms appear to be out of proportion to what would be expected based on exam findings, and there are positive Waddell's findings, which lead to the conclusions that there are likely some nonorganic contributions to the claimant's symptoms. Based on my review of the medical records and based on 20 years of examining patients in an orthopedic nonsurgical specialty, it does appear that the claimant's claimed pain severity is out of proportion to what would be expected based on the imaging findings. The claimant had good functional range of motion of both shoulders and upper extremities. She had intact strength and minimal loss of sensation in the upper and lower extremities. She has good range of motion of the cervical and lumbar spine, but indicates pain that is limiting her such that she is unable to work. The claimant is working out and is exercising on a daily basis and as indicated in the above question. There were findings on Waddell's testing as well as pain that appears to be out of proportion to imaging studies as well as exam findings that would indicate potentially the presence of a nonorganic source that is contributing to the claimant's pain. The claimant was visualized sitting for the duration of the examination other than during the examination portion, which was at least for 45 minutes. She did not appear to have any outward displays of pain. During range of motion testing, she was advised to tell the examiner when she experienced pain and the examination did account for her active range of motion. She was not pushed past her active range of motion when indicating pain to see if she was able to push further. Based on the claimant's examination and functional activities, the claimant appeared to be capable of more activity and she tends to underestimate her functional capabilities.

5. **Please address any physical impairments, if any, based on clinical exam, diagnostic test findings, and any functional evidence. For any impairment identified, please provide the clinical, diagnostic, and/or functional evidence supporting your opinion.**

Based on my evaluation of the claimant as well as review of the medical records and imaging studies, the claimant has impairments with regards to her neck, shoulders, and upper extremities as well as to her low back. The claimant's impairments with regard to her neck are based on pain with cervical range of motion and imaging studies showing loss of cervical lordosis as well as disc protrusion. With regard to her shoulders, the claimant has limitations with shoulder range of motion. She has limitation of right shoulder movement to 130 degrees of abduction and pain with Hawkins test on the right side. She has pain with range of motion as well as positive Hawkins' test and Speed's test on the left shoulder on examination as described in the physical examination portion. Her MRI of the right shoulder showed partial thickness tear of the supraspinatus and tendinosis of the infraspinatus and biceps tendon and she had well-healed surgical scars on the right shoulder. With regards to the elbows and forearms, she had tenderness along the medial and lateral epicondyle on the left. She had tenderness along the lateral epicondyle on the right and pain with resisted finger extension bilaterally. She also had some discomfort to palpation along the left wrist. She perceives numbness in her fingers and toes. This

4960 East State Street ◊ Rockford, IL 61108 ◊ Phone 815.964.6334 ◊ Fax 815.977.9882
*website* www.nmrco.com ■ *email* RockfordIMEDepartment@examworks.com

**LIB000272**



**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 16

however has not been corroborated with any electrodiagnostic finding, although she does have diminished sensation in the left thumb and the medical records do document diminished sensation in the C5 and C6 distribution as well as documented weakness in the deltoid region, which was not appreciated on my examination. An MRI of the cervical spine showed loss of the normal cervical lordosis with degenerative changes and disc bulges with no significant foraminal stenosis.  With regards to the low back, she has pain with lumbar range of motion particularly with lumbar flexion.  Her lumbar MRI showed an annular fissure as well as mild disc desiccation.  She has had her medical providers document her cervical spine and shoulder findings as well as her lumbar spine diagnoses in their medical records and give restrictions for these areas as well.

6. **Please identify the medically-supported physical restrictions/limitations, if any. Please define by the type of task [sitting, standing, lifting, fingering, etc.], as well as frequency of tasks [never, occasional, frequent, constant]. Include duration of physical restrictions and limitations.**

Based on my evaluation of the claimant, there are medically supported impairments with regard to the claimant's cervical spine, bilateral shoulders, bilateral elbows and forearms, and the lumbar spine. These would translate into the following medically supported restrictions and limitations.

The claimant indicates that she has low sitting tolerance and her self-reported sitting tolerance is 30-45 minutes.  Sitting causes her discomfort in her neck and low back.  Lumbar examination shows diminished range of motion with pain and spasm. It is my medical opinion that the claimant can sit for up to 30 minutes at a time after which she will require a position break for up to 5 minutes before she can resume a seated position. She can continue to work during this break. The claimant can sit for a total of 6 hours in an 8-hour workday.  She would benefit from a sit-stand desk.

The claimant indicates a self-reported standing limitation of 30-45 minutes that causes her pain in the low back.  She indicates that she does not have any limitation and is able to walk relatively comfortably. It is my professional opinion that the claimant can stand or walk up to 30 minutes at a time with the ability to change positions for at least 5 minutes before resuming standing or walking.  She can continue to work during this break. She can stand and walk for a combined total of 4 hours in an 8-hour workday. The claimant would benefit from an ergonomic workstation and again a sit-stand at desk, so she is able to change positions frequently as this would mitigate her symptoms such that she would be in less pain and be able to function at a higher level.

With regards to reaching, the claimant may reach on an occasional basis in all planes. The basis for this reaching restriction is based on her perceived shoulder pain and the fact that she has had prior shoulder surgery and has partial thickness rotator cuff tear, she has pain in her cervical spine as well as in her lumbar spine and it is felt that reaching on a more frequent basis than occasionally in all planes would result in pain such that she would not be able to continue working and her symptoms would exacerbate.

She may lift and carry up to 10 pounds occasionally.  She may push and pull up to 20 pounds occasionally.

4960 East State Street ◊ Rockford, IL 61108 ◊ Phone 815.964.6334 ◊ Fax 815.977.9882
*website* www.nmrco.com ◼ *email* RockfordIMEDepartment@examworks.com

LIB000273



**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 17

The claimant may perform tasks with regards to fingering, feeling, gripping, and grasping on an occasional basis. She may benefit from voice activated software should she require any computer work. The basis for her upper extremity gripping, grasping, etc limitations are based on the fact that she has pain with her upper extremities, she has tenderness along the medial and lateral epicondyle on the left and the lateral epicondyle on the right. She has pain with resistant finger extension bilaterally at the elbow. Limiting the claimant's fingering and typing to occasional would not only take into account her perceived limitations, but also minimize any flare-ups of pain such that she would be able to function at a higher level.

It is my professional opinion that in describing these restrictions and limitations, it is important take into account the medical provider's restrictions and limitations, observations and examination findings of the claimant as well as the claimant's perceived limitations. There have been restrictions and limitations that were provided by her treating physician, Dr. Haronian in her permanent and stationary report. The work restrictions by Dr. Haronian were noted to be "cervical spine, the claimant is precluded from extended upward and extended downward gazing; lumbar spine, the claimant is precluded from repetitive bending and twisting of the lumbar spine; bilateral shoulders, the claimant is precluded from repetitive activities at or above the shoulder levels; bilateral elbows, the claimant is precluded from repetitive torquing; bilateral wrists, the claimant is precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching." Additionally, she had a QME report by Dr. Arora, which gave her restrictions of "avoid heavy lifting more than 20 pounds and reaching above her head." It is my opinion that these restrictions and limitations are accounted for in my restrictions that were noted above and that based on the claimant's ongoing pain and the fact that she has been made permanent and stationary, these restrictions would likely be permanent.

> **7. Does the medical evidence support any side effects from the prescribed medications? If yes, please provide the supported impairments and outline how any impairment affects functional capacity?**

The medical records do not support any impairments or side effects from any medications.

> **8. Please comment on the claimant's capacity for sustained, full-time work within these supported restrictions/limitations.**

It is my opinion based on my observation of the claimant and findings of the claimant's examination that the claimant would be able to work on a fulltime consistent basis. The claimant has had restrictions and limitations by the QME as well as her treating physicians that have been provided. The claimant was not deemed by her treating physician to be totally functionally impaired, and therefore it is presumed that the claimant would be able to work within these restrictions and limitations provided by her primary physician.

Based on my evaluation of the claimant and review of the medical records, I do not find clinical evidence that would limit the claimant's ability to work on a full-time sustained basis. The claimant can work full time, 8 hours per day, 5 days per week, for a total of 40 hours per week with the restrictions and limitations outlined in my response to question 6. The claimant has functional range of motion and the limitations that are based on her self-reported levels of pain. The MRIs of her cervical and lumbar

4960 East State Street ◇ Rockford, IL 61108 ◇ Phone 815.964.6334 ◇ Fax 815.977.9882
website www.nmrco.com ◼ email RockfordIMEDepartment@examworks.com

LIB000274



Network Medical Review Co.Ltd.

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 18

spine as well as her shoulder do not show significant changes that would limit her ability to function and her pain appears to be out of proportion to the physical exam findings. She did have a functional capacity evaluation, which indicated that she may sit for up to three hours per day, stand for up to three hours per day, and walk for up to three hours per day. While the FCE examiner opined that she was unable to work on a full-time or part-time basis, these timeframes do constitute eight hours in a day, which would be considered full time. Her primary treating physician, Dr. Haronian indicated the work restrictions that had again been outlined "precluded from extended upward and extended downward gazing, precluded from repetitive bending and twisting of the lumbar spine, precluded from repetitive activities at or above the shoulder level; precluded from repetitive torqueing; and precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching." Based on my evaluation of the claimant, the claimant has functional capability in her upper and lower extremities. She does have pain in her low back with sitting and standing, but I do not feel that these preclude her from working on a full-time basis. Her practitioners did not indicate that she was completely functional impaired, but that she would be able to return to work with restrictions if the restrictions were able to be accommodated. It is my professional opinion that if she were provided with a sit-stand desk to be able to change positions periodically as well as with voice activated software and an ergonomic workstation that these would enhance her ability to work on a sustained basis without exacerbating her symptoms. Functionally when she moved in the examination room, she did not appear to have any significant pain behaviors nor did she appear to be functionally limited such that she would not be able to carry out a full-time job within the restrictions and limitations identified above. Despite these findings of the functional capacity evaluation performed by the physical therapist, it is my opinion based on the medical records reviewed, the opinions of her treating physicians as well as my physical examination that the claimant would be able to work on a full-time sustained basis within the restrictions and limitations outlined in my response to question 6. Her physicians have also provided restrictions and limitations at which she would be able to work and it's my professional opinion that these restrictions as well as the restrictions that I have imposed are very similar and would allow her to be functional at some job within the restrictions outlined.

**CONFLICT OF INTEREST ATTESTATION:**
I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review (I do not have a contract to provide health care services to enrollees of the health benefit plan of the insurance issuer or group health plan that is the subject of this review); the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; (I do not have staff privileges at the facility where the recommended health care service or treatment would be provided if the insurance issuer's or group health plan's previous non-certification is reversed) or the developer or manufacturer

4960 East State Street ◦ Rockford, IL 61108 ◦ Phone 815.964.6334 ◦ Fax 815.977.9882
*website* www.nmrco.com ◾ *email* RockfordIMEDepartment@examworks.com

LIB000275



Network Medical Review Co.Ltd.

An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 19

of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

Physician Advisor

Katrina Vlachos, M.D.
Board Certified in Physical Medicine & Rehabilitation
Licensed in State of CA #68888

*NMR CONFLICT OF INTEREST ATTESTATION: NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

4960 East State Street ◦ Rockford, IL 61108 ◦ Phone 815.964.6334 ◦ Fax 815.977.9882
*website* www.nmrco.com ◾ *email* RockfordIMEDepartment@examworks.com

LIB000276



**Network Medical Review Co. Ltd.**

**An ExamWorks Company**

| | | |
|---|---|---|
| **REFERRED BY:** | Kimberly Murray | |
| **CLIENT NAME:** | LINCOLN FINANCIAL GROUP (IME) - LLAOB | |
| **CLAIMANT NAME:** | Vicki Collier | |
| **CLAIM #:** | 8741789 | |
| **NMR #:** | 307803 | |
| **JOB TITLE:** | Sales agent | |
| **DOD:** | 05/15/2018 | |
| **REFERRAL DATE:** | 01/03/2020 | |
| **DOE:** | 01/27/2020 | |
| **REPORT DATE:** | 01/30/2020 | |

### INDEPENDENT MEDICAL EXAMINATION

**REFERRING DIAGNOSIS:**    Unspecified sprain of shoulder joint

### RECORDS PROVIDED FOR REVIEW:

| | | |
|---|---|---|
| PROGRESS NOTES | Kaiser Permanente | 05/10/18-08/30/19 |
| PROGRESS NOTES | Synapse Medical Group | 09/05/18-10/15/19 |
| FCE | S. Jurado, D.P.T., CEAS | 09/13/19 |
| IME | R. Arora, M.D. | 10/11/18-10/24/18 |
| IME | S. A. Rubin, M.D. | 11/15/19-11/21/19 |
| FILE REVIEWS | A. Chhatre, M.D. | 05/08/19 |
| LAB/DIAGNOSTICS | Kaiser Permanente | 07/30/18-02/14/19 |
| CT/MRI | Kaiser Permanente | 10/10/16-04/09/18 |
| MRI | A. Safvi, M.D. | 02/21/19 |
| JOB | | |
| OTHER | J. G. Howard, M.R.C., C.R.C. | 03/02/19 |
| MISC | | 06/18/13-11/22/19 +Undated |
| ROI | | 09/15/18-07/08/19 |

To Whom It May Concern:

At your request, Ms. Vicki Collier was seen for an independent medical evaluation on 01/27/20. Prior to the evaluation, it was explained to Ms. Collier that this appointment was for the purpose of evaluation only and not for care, treatment, nor consultation. Therefore, no doctor-patient relationship would result. Ms. Collier has also been advised that I am an independent doctor and have been requested to conduct this evaluation by the group noted above. Ms. Collier was examined at my Marina del Rey office. She arrived on time and was by herself. She provided photographic identification consisting of her driver's license for the purpose of the visit.

**4960 East State Street** ● **Rockford, IL 61108** ● **Phone  815.964.6334** ● **Fax  815.977.9882**
*website*  **www.nmrco.com** ■ *email*  **RockfordIMEDepartment@examworks.com**

**LIB000277**


Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier                              **NMR#:** 307803
**Page** 2

**MEDICAL RECORDS REVIEW:** On 05/10/18, this is a progress note by Patrick Anthony Dimartini, MD. The patient complains of tinnitus, got worse over the last week, no change in hearing. Assessment is bilateral subjective tinnitus. The plan is perhaps eustachian tube plugged, try Sudafed, try Flonase, referred to audiology.

Progress note, 05/14/18, by Sovanrith Tun, MD. Chief complaint is persistent pain in bilateral shoulders, had left cortisone injection in the shoulder helped, has tried Norco, meloxicam, and Neurontin. There is moderate pain, working on an ergonomic workstation. No atrophy is noted. Abduction is noted to be 90, forward flexion 90, external rotation 70, internal rotation 20. Impingement sign is positive. Impression is bilateral shoulder rotator cuff syndrome. Plan is activity modification, meloxicam, Norco, will be stopping her current job, follow-up is p.r.n.

On 05/14/18, this is a work status report by Dr. Tun. Diagnosis, bilateral rotator cuff syndrome. The patient is placed on modified duties from 05/14/18 through 07/15/18 with restrictions of no typing, no use of both shoulders and arms.

07/06/18, progress note by Dr. Tun., right shoulder partial rotator cuff tear, partial intratendinous supraspinatus tendon tear, persistent pain in bilateral shoulders, does physical therapy at Henry Mayo. Range of motion and exam was unchanged. Impression, bilateral shoulder rotator cuff syndrome. Plan is activity modifications, meloxicam, stop current job, bilateral cortisone injections for forearms, right shoulder arthroscopy, right rotator cuff repair if pain persists, follow-up p.r.n.

07/06/18, work status report by Dr. Tun, the patient on modified duties from 07/16/18 to 08/31/18 with restrictions of no typing or use of both shoulders and arms. The patient was scheduled for Botox on 07/20/18.

Neurology follow-up on 07/20/18 by Esther Chuanwah Wang-O'Connell, MD, the patient has diagnosis of chronic migraines and headaches, feels Botox helped. She denies any migraines in the past three months, feels shoulder and neck much relaxed. Assessment is chronic migraine headache, failed multiple treatments and is now exploring Botox. Injections of Botox were performed. Follow-up in three months. Keep headache diary. Plan is chemodenervation muscles innervated by facial, trigeminal, cervical spinal, and accessory nerves bilateral.

07/30/18, progress note by Dr. Colleen Bogdanich, the patient is afraid that she might have genital warts, has some discomfort with sex. Exam performed. Plan is HPV test, hormone, gynecology, cytology.

Progress note, 08/22/18, by Brian Brosnan, MD, the patient received Botox to her lips.

08/27/18, telephone conversation by Dr. Tun, the patient complains of bilateral shoulder pain, pain with prolonged activity, requests work restrictions, offered earlier surgery, but not possible because of health coverage.

Work status report, 08/27/18, the patient was placed on modified work from 09/01/18 to 10/31/18. Restrictions are no typing or use of shoulders and arms bilaterally.

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  **www.nmrco.com** ■ *email*  **RockfordIMEDepartment@examworks.com**

**LIB000278**



**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 3

10/16/18, progress note by Shahram Gharibshahi, MD, the patient received Botox for headaches for chronic migraine.

Progress note by Maria Oculam, PA. The patient has right rotator cuff tear, booked for postop visit, but canceled surgery due to family issues, to ask for Norco, will rebook. Plan is Norco prescribed. The patient will call for surgery.

01/17/19, progress note by Sonu Brara, MD, the patient presents for Botox for headaches, received Botox injections for chronic migraine.

01/31/19, progress note by Esther Chuanwah Wang-O'Connell, MD, the patient presents with vulvar itching. Assessment and plan is overactive bladder, start Ditropan, check urine, postmenopausal atrophic vaginitis, wear comfortable underwear, use Estrogen cream, will follow up on bladder findings, ultrasound of bladder and urinalysis is ordered.

02/04/19, telephone visit with Esther Chuanwah Wang-O'Connell, MD, the patient is concerned about carotid arteries. She said that her mother had problem with them. Plan is advised regular exercise and healthy eating. ASCVD risk score discussed. Carotid duplex ordered. CBC ordered.

02/13/19, carotid artery duplex, right side normal and left side normal.

03/21/19, Catherine Close, MD, the patient presented for skin check. She was seen and examined.

03/28/19, progress note with Sylvia Mann, MD, follow-up for genital warts and vaginal itching.

This is a progress note by Edwin Haronian, MD, progress note date of service 09/05/18, Ms. Collier states she was sustained cumulative trauma injuries to her neck, shoulders, bilateral upper extremities, forearms, elbows, hands, wrists, back, head, lower extremities, during the course of her employment as an insurance agent for The Auto Club. She has noted pain since late 2016, developing gradually. She had cortisone injections, had x-rays and MRI of her shoulder. On 07/25/17, Dr. Tun performed right shoulder surgery and she received physical therapy. She remained on total temporary disability through 11/21/17. She also received an epidural injection to her lower back and Botox injections to her shoulder and neck. She is presently not working and last worked on 05/22/18. She complains of headaches, constant pain in the neck with numbness radiating into her arms, frequent pain in the shoulder with stiffness, frequent bilateral elbow pain, intermittent bilateral wrist and hand pain, and frequent middle and low back pain. On examination, there was no spasm. She had normal range of motion of the cervical spine. Normal reflexes and diminished strength to the bilateral deltoid at 4/5. Sensation was intact. Impingement and Hawkins signs were present on the right and left. Elbow examination showed normal range of motion. There was tenderness along the distal radius. Lumbar examination showed straight leg raise positive bilaterally. Reduced tendon reflexes at the ankle bilaterally. She had normal strength in lower extremities. Diagnoses, cervical radiculopathy, lumbosacral radiculopathy, bilateral shoulder impingement, bilateral elbow tendinitis/bursitis, and bilateral wrist tendinitis/bursitis.

**4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882**
*website* **www.nmrco.com** ■ *email* **RockfordIMEDepartment@examworks.com**

**LIB000279**



Discussion, the patient presents complaining of neck pain radiating to the upper extremities with associated numbness, shoulder pain, with decreased range of motion and strength, elbow pain, and wrist pain. Request authorization for neurodiagnostics of the upper and lower extremities, request 12 sessions of physical therapy, and request gabapentin. She may return to the workplace, but should not lift, push, or pull more than 10 pounds. She should not perform bending, twisting activities, or place the spine in unusual or awkward positions. She should not perform repetitive hand motions, pinching or grasping bilaterally. She will return in four weeks, at which time further recommendations will be made. Whole person impairment was noted to be 21%.

This is a PR2 by Dr. Haronian. Date is 09/05/18. Subjective complaint is cervical pain. Objective findings, loss of range of motion. Diagnoses, radiculopathy, lumbosacral region; impingement syndrome, shoulders; olecranon bursitis, elbows; and periarthritis, unspecific wrist. Treatment plan is non-surgical. Request EMG upper and lower extremities, physical therapy, and Neurontin. Work status is modified work with the following restrictions: Avoid lifting over 10 pounds, avoid pushing or pulling over 10 pounds, avoid bending and twisting completely, restrict from placing the spine in unusual and awkward positions, avoid repetitive hand motions completely with both hands, and avoid pinching and grasping completely with both hands. The patient should remain on totally temporary disability if work modifications cannot be accommodated by the employer.

This is a note by Dr. Haronian dated 09/07/18, referred to physical therapy.

This is a progress note by Dr. Haronian dated 10/10/18. She continues to complain of neck and back pain radiating to the upper extremities and lower extremities. Exam showed spasm, tenderness, and guarding in the paravertebral musculature of the cervical spine. Decreased sensation was noted in the C5 dermatome. She has mild impingement and Hawkins signs with range of motion of the shoulders with flexion of over 120 degrees on the left and 100 degrees on the right. Current work restrictions will continue. She will return in four weeks' time with prior medical records. Diagnoses are unchanged.

Progress note by Dr. Haronian dated 11/14/18. The patient has brought with her some MRI studies from Kaiser, which were reviewed. Waiting for QME report. The patient is complaining of left shoulder pain and severe low back pain. Until QME report is available, he will continue modified work duties, follow up few weeks and make further recommendations then.

11/29/18, progress note by Dr. Haronian, the patient is requesting refill of Norco. She was provided with 30 tablets. Request referral to pain management if she is to continue to use opioids. The work restrictions are unchanged.

12/13/18, this is a progress note by Jonathan Kohan, MD, secondary treating physician pain management initial report. The patient was seen for pain management. Present complaints include headaches, electrical type neck pain, bilateral shoulder pain, bilateral elbow pain, intermittent pain in both wrists and hands, upper and lower back pain, intermediate sharp knee pain, and ongoing numbness and tingling in both feet. She was noted to have spasm and pain in the cervical spine with normal range of motion and normal strength. She had decreased sensation in the C5 and C6 dermatomes on the right and C5 on the left. Shoulder examination showed normal range of motion. Lumbar spine exam showed diminished range of motion with pain and spasm and a negative straight leg raise bilaterally. She was

**4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882**
*website* **www.nmrco.com** ■ *email* **RockfordIMEDepartment@examworks.com**

**LIB000280**

**NMR**
Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier                                   **NMR#:** 307803
**Page** 5

noted to have normal strength and sensation.  MRIs were reviewed.  Impression, cervical disc protrusion, cervical radiculopathy, history of right shoulder surgery with residual pain, exacerbated lumbar pain with a component of sacroiliitis, and lumbar radiculopathy.  Recommendation is to continue Norco, await MRI findings, and may benefit from spinal injections.

01/03/19, this is a progress note by Dr. Haronian.  The patient continues with upper and lower back pain with radiation to the upper and lower extremities.  She is under the care of pain management receiving Norco and taking gabapentin.  She has spasm and tenderness in the paravertebral muscles with decreased range of motion on flexion and extension.  Request MRI of the low back, request authorization for Neurontin, work status is unchanged for modified duty, follow-up in four weeks.

Supplemental report by Dr. Haronian dated 01/20/19.  The QME report of Dr. Arora was reviewed.  It appears that the neck and lower back issues are non-industrial.  He provided the patient with 4% impairment of the whole person and provided the patient with future medical.  Dr. Haronian feels that due to deferring opinions between Dr. Arora and himself, it is likely that no further authorizations would be provided.  As such, the patient would be declared permanent and stationary as he will be unable to provide the claimant any further treatment.

01/28/19, this is a progress note by Dr. Kohan, a review of medical records was performed.  The patient is not undergoing therapy for treatment, but continues to have difficulty controlling her pain in the neck, shoulder, and low back.  She ran out of Norco.  Naprosyn and over-the-counter medicines have not been helpful.  She has tenderness and spasm over the cervical spine extending to the trapezius and deltoid.  Lumbar spine tenderness over the sacroiliac joint.  Impression is history of right shoulder arthroscopic surgery with residual pain, cervical disc protrusion with component of radiculopathy, and exacerbated lumbar pain with component of sacroiliitis.  Considering her work duties at AAA with her capacity, pain seemed reasonable and work-related.  The patient's options are limited.  MRI was not done, but she has component of sacroiliitis.  Norco will be refilled and increase gabapentin, follow-up in one month.

01/31/19, permanent and stationary report from Dr. Haronian, history and job description were reviewed.  Physical exam showed tenderness and spasm over the paravertebral musculature in the upper trapezius region.  Range of motion was accomplished with discomfort and spasms.  Reflexes were normal and symmetric with negative Hawkins.  She had 4/5 strength in the right deltoid, otherwise 5/5 strength.  She had intact sensation.  Impingement signs showed positive Hawkins on the right and left.  She had tenderness over the lateral epicondyle bilaterally.  She had tenderness over the distal radius bilaterally.  Lumbar exam showed tenderness and pain in the paravertebral musculature with spasm and pain.  She had normal strength in the lower extremities.  She had diminished sensation in the right L5 distribution.  Hip range of motion was normal.  Diagnoses are cervical spine radiculopathy, lumbar spine radiculopathy, bilateral shoulder impingement, status post right shoulder arthroscopy, bilateral elbow tendinitis, and bilateral wrist tendinitis.  The patient has been seen by a number of physicians and has had conservative treatment, which is unlikely to help her.  She has reached maximum medical improvement.  The patient is precluded from extended upward and extended downward gazing, precluded from repetitive bending and twisting of the lumbar spine, precluded from repetitive activities at or above the shoulder level, precluded from repetitive torqueing, and precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching.  The patient can return to work with restrictions that have been provided.  The patient should have access to future medical care.  It is

4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882
*website* www.nmrco.com ■ *email* RockfordIMEDepartment@examworks.com

LIB000281



Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                                    **NMR#:** 307803
**Page** 6

within reasonable medical probability the patient has sustained injuries to the cervical and lumbar spine, bilateral shoulders, elbows, bilateral wrists due to continuous trauma activities at work. Apportion 20% of preexisting degenerative changes of the cervical and lumbar spine and 80% to direct effect of the continuous trauma. For the shoulders, elbows, and wrists, 100% of the patient's disability is the direct effect of the continuous trauma. She is noted to have final whole person impairment of 30%.

02/14/19, this is a follow-up report and review of records from Dr. Haronian, reviewing the report from Dr. Arora. The patient was declared permanent and stationary. She could return to Dr. Haronian on an as needed basis.

02/25/19, progress note by Dr. Kohan, the patient continues to have pain and difficulty with her neck and shoulder with moderate-to-severe spasm over the cervical spine extending to the trapezius and deltoid. No additional treatment has been allowed through Dr. Haronian's office. She was given Norco. Follow up next month.

03/13/19, supplemental report from Dr. Haronian. He would respectfully disagree with Dr. Arora regarding the opinion on industrial causation. Dr. Arora did not feel that the cervical and lumbar spine were industrially related. Part of Dr. Haronian's whole person impairment was related to the cervical and lumbar spine based on information provided to him. He requests the medical records provided to and the ability to change his opinion should any additional records be available.

04/01/19, progress note by Dr. Kohan. Lumbar spine MRI from 02/15/19 showed a small disc protrusion at L5-S1. She will continue with Norco and gabapentin as injections have not provided her with much relief. She was reminded to make any attempt to reduce anxiety or any issues with her sleep to avoid any further exacerbations of myofascial pain.

Progress note dated 04/11/19 by Dr. Haronian, the patient is back without significant change. She has been declared permanent and stationary due to lack of authorization. She continues to suffer from pain. She can continue using nonopioid anti-inflammatory medications. Her work restrictions are guarded by the permanent and stationary report. She will follow up in six weeks.

05/07/19, progress note by Jonathan Kohan, MD. She is not undergoing therapy or any modes of treatment. She has not been back to work, but reports increasing level of low back pain. She is taking Norco and gabapentin. She has tenderness over the paravertebral area, which extends to the SI joint. She has tenderness and moderate spasm in the trapezius and deltoid. He does not believe injection would be beneficial aside from trigger point injections. Recommended Norco and Neurontin and follow-up in one month.

05/16/19, progress note by Dr. Haronian, the patient has been made permanent and stationary. She continues to show spasm, tenderness, and guarding in the paravertebral musculature of the cervical and lumbar spine. She has flexion and abduction to 120 degrees. She has decreased grip strength. Medications will be refilled. Work restrictions per the permanent and stationary report. Follow up in eight weeks.

**4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882**
*website* **www.nmrco.com ■** *email* **RockfordIMEDepartment@examworks.com**

**LIB000282**



Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                               **NMR#:** 307803
**Page** 7

06/04/19, progress note by Dr. Kohan, she has ongoing neck and shoulder pain. Low back pain is less, but has difficulty lifting, pushing, and pulling. She has tenderness over the cervical spine extending to the trapezius and deltoid. She has not been able to get treatment because of issues surrounding her claim. She will continue with Norco and gabapentin.

07/09/19, progress note by Dr. Kohan, she developed depression due to exposure of modus operandi of the carrier. She has been taking Norco and gabapentin. Her exam is unchanged. Plan is prescribed Cymbalta to address insomnia, depression, and neuropathic pain. Follow up in four weeks.

This is a supplemental report and record review by Dr. Haronian dated 07/10/19, he was provided with notes from Dr. Arora and he remained in disagreement with the assessment of the QME over the body part in question regarding her cervical and lumbar spine and the acceptance of the claim regarding these areas.

07/11/19, progress note by Dr. Haronian, she continues to have pain and has seen pain management, who prescribes her medications. He recommends continuing and reducing the opioid medications as much as possible. Ibuprofen will be provided with Prevacid. He will see her back at a lesser frequency as she has been declared permanent and stationary.

09/26/19, supplemental report and review of records by Dr. Haronian, MRI of the right shoulder revealed a partial thickness supraspinatus tendon tear. MRI of the cervical spine was reviewed. He disputes the medical-legal evaluator's note. Dr. Haronian provided restrictions to avoid lifting more than 10 pounds and avoid repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching due to her wrist complaints. It would be reasonable to indicate that the patient will not be able to perform her previous work activities as indicated in his report dated 01/31/19. Ms. Collier underwent a functional capacity evaluation on 09/12/19 and 09/13/19 to obtain objective measurement of her physical capacity for work. It was recommended that the claimant can sit occasionally up to 3 hours per day, stand occasionally up to 3 hours per day, walk occasionally up to 3 hours per day, climb 5 flights, bend and squat 10 reps, reach overhead 40 reps, and push and pull 36 pounds. She is unable to return to work with the above parameters. This is a functional capacity evaluation report dated 09/13/19 indicating that based on the test results, the client gave maximum effort with testing. She had 98% consistency with coefficient of variance measurements below 15%. Although the claimant presented with functional limitations on the first day of testing, her performance and activity tolerance declined on day 2. She presents with deficits in strength of her upper and lower extremities. She has difficulty with tasks involving repetitive bending, squatting, and stair climbing and activity tolerance declined on day 2. Based on testing, the client is unable to perform sedentary work as she is unable to maintain static sitting for approximately 2 hours continuously and up to 6 hours a day.

10/11/18, this is a qualified medical examination in pain management by Ripu Arora, MD. She has pain in her neck, shoulder, lower extremities, headaches, forearm, elbows, and shoulder blade pain, upper back pain because of the lack of the ergonomic furniture provided to her at the work location. She has been seeking medical attention. Neck shows trigger point spasm and tenderness on the left side. She has diminished shoulder range of motion on the right and left. She is able to flex and extend her lumbar spine to 60 and 20 degrees bilaterally. Diagnoses are cervical radiculopathy, right shoulder status post rotator cuff repair with pain, left shoulder pain, sacroiliac pain bilaterally and low back pain. No

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  **www.nmrco.com ■** *email*  **RockfordIMEDepartment@examworks.com**

LIB000283



medical records were available for review.  He is unable to comment on apportionment or permanent and stationary status.

10/24/18, this is a supplemental report by Dr. Arora.  A record review was performed.  He indicates that after reviewing the records, there are differences between her history and the examination of the medical records provided.  She has been complaining of symptoms during the 2005 to 2009 timeframe and it is his medical records that the back pain and neck pain as well as hemorrhoids are not out of employment.  She started complaining of shoulder pain in 2015.  It is his medical opinion that the right shoulder injury is related to employment.  It is his opinion that she has reached permanent and stationary status.  There is no apportionment for the right shoulder.  The neck and back are 100% non-industrial.  She has 9% total whole person impairment.  She is healing from shoulder surgery and should avoid heavy lifting more than 20 pounds and reaching above her head and follow-up would be advised by an orthopedic surgeon.  She may need physical therapy 6-12 sessions for pain.

This is a peer review by Akhil Chhatre, MD.  Records were reviewed and response to questions were performed.  He was unable to talk with Dr. Haronian.  The diagnoses supported by the medical evidence are chronic low back pain, neck pain, and right shoulder pain, status post right shoulder arthroscopy.  There are no supported impairments from 05/15/18 to the present.  She has stable exam findings with no new diagnostic testing.  The MRI of the cervical spine from 2016 is without any updated findings.  The right shoulder MRI is undated.  The claimant has stable exam findings with no new testing to suggest acute neurologic or musculoskeletal derangement.  The claimant does not have supported impairment.  The claimant is medically stable with diagnostic testing.  The severity and scope are not in line with the chronic and stable conditions that are supported by the medical records.  There is no evidence to support impairments related to prescribed medications.

MRI of the cervical spine dated 10/10/16 shows straightening of the normal lordotic curvature.  1 mm broad-based posterior disc bulge at C3-C4 indenting the anterior aspect of the thecal sac.  2 mm central posterior disc protrusion at C4-C5 causing pressure over the anterior aspect of the thecal sac.  There is a 2 mm broad-based posterior disc endplate osteophyte complex at C5-C6 causing pressure over the anterior thecal sac.  There is a 2 mm broad-based posterior disc protrusion at C6-C7 causing pressure over the anterior thecal sac.  There is mild narrowing of the left neural foramen and moderately significant narrowing of the right neural foramen.

MRI of the right shoulder dated 07/05/17 was reviewed showing impression 9 mm approximately 50% partial-thickness articular surface supraspinatus tendon tear on a background of moderate tendinosis.  Infraspinatus and superior fiber subscapularis mild tendinosis.  Proximal long head of biceps mild tendinosis.  Minimal subacromial-subdeltoid bursitis and acromioclavicular joint osteoarthrosis.

MRI of the lumbar spine dated 02/15/19 shows impression anterior osteophytes at T12 down through L5.  Mild disc desiccation at L2-L3 down through L5-51.  Anterior loss of disc height is seen at L5-S1.  There is no significant disc herniation or neural foraminal narrowing visualized.  The spinal canal is patent.  Exiting nerve roots are normal.  Left lateral annular fissure is identified.  A mild disc bulge is identified at L5-S1 measures 2.6 mm.  Exiting nerve roots are normal.

**LIB000284**



Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 9

An occupational analysis dated 03/02/19 was reviewed with a summary indicating that the job that she performed at AAA was within the sedentary and light physical demand profile.  It is reasonable to conclude that the occupation exists in both full-time and part-time positions.  This is performed by Jane Howard, and she has not met with the claimant.

Blood work from Kaiser Permanente was reviewed and correspondence was also reviewed between the claimant's attorney as well as Liberty Mutual and treating physicians.

The claimant's job title as well as her job performance were reviewed.

This is a functional capacity evaluation done by Ergo Links Sebastian Jurado, DPT performing functional capacity evaluation with recommended physical demands of sitting less than 30 minutes continuously up to 3 hours per day, standing up to 30 minutes continuously up to 3 hours per day, walking less than 30 minutes continuously up to 3 hours per day, climbing five flights continuously, bending 10 reps continuously, squatting 10 reps continuously, these are all in the occasional range.  She may reach overhead 40 reps continuously.  Pushing and pulling are 36 pounds and 34 pounds.  Lifting capacity is 15 pounds.  It was felt that the claimant is unable to work within the parameters above.

**HISTORY OF PRESENT ILLNESS**:  Ms. Collier is a 56-year-old woman who states that she has had no history of missed work or lapses where she had an industrial or other injury that required her to miss a period of time at work.  She states that around 2015, she started to note neck pain that would radiate to the right shoulder.  She states that in 2016, she went on a trip to Mexico that she had one at work and started to feel "kink" in the left neck with certain positions.  She continued to have ongoing pain in the shoulder and upper arm region.  She states that she had symptoms in her low back as well.  She eventually sought treatment where she underwent imaging studies of her shoulder and she had cortisone injections, which initially helped, but then stopped working.  She states that in May of 2017, she underwent right shoulder rotator cuff repair and was off work for approximately three months.  She went to physical therapy and was able to return to work.  She states that initially she had been doing well then she started to have radiating pain once again.  She started to have pain on the right shoulder, but also in addition on the left upper extremity as well.  It was then decided that the symptoms were work related and she states that she stopped seeking treatment from Kaiser through which she had her prior care and her surgery.  She states that she started to see a doctor through Workers' Compensation and she states that she has not been able to get treatment authorized and she states that she has only been using medications as no treatment has been authorized to Workers' Compensation.  She states that she has had an MRI of her lumbar spine, but has not had any other up to date imaging studies of other areas.  She has undergone treatment consisting of cortisone injections in the shoulder.  She also had an epidural in her neck, which should not help.  She has been through physical therapy, chiropractic, and acupuncture treatments.  She states that when she was working, she had requested an ergonomic evaluation, but she was unable to get one in a timely manner and states that she had tried for two years to get an ergonomic workstation.  She states that she has not had an epidural in her low back.  She takes Norco for the pain up to 1-2 per day as well as gabapentin and Cymbalta.  She has been doing stretching.  She has not had an electrodiagnostic study and has not seen a rheumatologist.

**PRESENT SYMPTOMS**:  She states that presently she has neck pain radiating to both shoulders and upper arms and occasional radiation to the wrist.  She states that the pain is constant.  She states that

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  **www.nmrco.com** ■ *email*  **RockfordIMEDepartment@examworks.com**

**LIB000285**



Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 10

there is no relation of the pain to activity.  She states that her shoulders are bothersome, but she does not note any increased pain with shoulder range of motion more than the usual constant level of pain.  She states that at the present time, the left arm is more bothersome than the right.  She states that the pain will awaken her.  The pain is worse with sitting and will radiate into the periscapular area.  She states that additionally she will have intermittent numbness in her hands and her fingers will turn white.  She also has pain in her low back that radiates to the hip as well as the knee, the left side is worse than the right.  She notes intermittent numbness and tingling and occasional right lower extremity numbness and tingling and pain with driving.  The pain is worse with sitting and she needs to change positions frequently.  She will occasionally limp when she tries to favor her hip and the pain will awaken her.  She has bilateral elbow pain with right side more bothersome than the left.  The elbow will occasionally lock and she has pain that radiates down into the forearm.  She states that when she massages her forearms, she will have improvement of the pain that radiates into her index and middle fingers.  The pain at times will radiate up into the shoulders.

**PAIN DIAGRAM**:  Her pain diagram shows numbness on the top of her head as well as in both forearms and in her toes and the finger on her right hand.  She has aching in the neck, bilateral shoulders and periscapular regions as well as in the elbow and in the right knee.  She has pins and needles in the toes.  She notes burning in the buttock region and radiating pain in the hip region as well as in the back of her head.  She describes the pain as anywhere from 6 to 9, which varies in place.  The pain is continuous, positional, intermittent and unable to rate.

**PAST MEDICAL HISTORY**:  Significant for depression, for which she takes Cymbalta.

**MEDICATIONS**:  Norco, gabapentin, Cymbalta, and hormone cream.

**PAST SURGICAL HISTORY**:  Significant for hernia repair in 2002, breast augmentation in 2005, tonsil removal as a kid, and rotator cuff repair in 2017.

**REVIEW OF SYSTEMS**:  Significant for fatigue, depression, sleep difficulty, headaches, nervousness, stress, numbness, weakness, bowel problems, memory loss, loss of concentration, itching, tingling, and early awakening.

**ALLERGIES**:  None.

**SOCIAL HISTORY**:  She does not smoke and drinks occasional alcohol.  She has no history of alcohol or drug abuse.  She states that she is presently single with three children; ages 26, 23, and 19.  She lives with her boyfriend who works fulltime out of the house.  She lives in a house that is two stories.  She states that prior to her disability, she would enjoy swimming and going to the gym.  She states that presently for exercise she will walk, stretch, take classes at a gym, and use a foam roller on a daily basis.

**EDUCATION AND WORK HISTORY**:  Ms. Collier earned her high school diploma.  She states that she was raising children until 2007.  From 2007 to 2013, she was working in insurance as an independent producer where she was working from home.  From 2013 until November of 2018, which was her last time working, she was working as an insurance agent.  She states that her job consisted of

4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882
*website*  www.nmrco.com  ■  *email*  RockfordIMEDepartment@examworks.com

LIB000286



sitting, using the computer and talking on a telephone, inspecting homes, occasionally bending, and minimal lifting.

**FUNCTIONAL HISTORY**: Ms. Collier indicates she is able to sit for 30-45 minutes at a time before she has to stand. She is able to walk and able to drive. She sleeps anywhere from 6-10 hours per night. She states that her last travel was to driving to Las Vegas. She states that she is able to stand 30-45 minutes at a time. She states that she is able to perform her health care, but finds difficulty blowing dry her hair and taking off a sports bra. She states that she exercises daily, walking, stretching, taking classes at the gym, and biking. She is able to type for approximately 15-30 minutes at a time. She states that housekeeping is performed by herself, her daughter, and her boyfriend and she does her own grocery shopping when needed.

Her typical day consists of getting up at 07:00-08:00 a.m., meditating, reading, stretching, walking her dog, going to the gym, sitting or lying down, reading, watching TV, tidying the house, stretching, occasionally cooking and watching TV.

**PHYSICAL EXAMINATION**: On physical exam, Ms. Collier's stated height and weight are 5'6" tall and 118 pounds. On evaluation of the cervical spine, she shows no loss normal cervical lordosis. There are no noted abnormal curvatures. Active cervical range of motion is noted to be flexion to 45 degrees, extension to 30 degrees, and rotation to 45 degrees bilaterally. She states that she has more pain with left greater than right rotation. There was no tenderness noted of the cervical paraspinal muscles nor in the parascapular region. She had mild tightness along the trapezius bilaterally.

On evaluation of the shoulders, she had well healed surgical portal sites on the right shoulder. She was noted to have no tenderness along the anterior or posterior shoulder. Active shoulder range of motion on the right side was noted to be 130 degrees of abduction, 80 degrees of external rotation, and 60 degrees of internal rotation. She had no pain with resisted internal or external rotation. She had pain with Hawkins' test on the right side, but no pain with Speed's test. On evaluation of the left shoulder, she had abduction actively to 30 degrees, external rotation was noted to be 80 degrees, and internal rotation to 30 degrees before she noted discomfort. She had pain with Hawkins' and Speed's test on the left side.

On evaluation of the elbow, she had flexion to 140 degrees, extension to 0 degrees, supination and pronation to 70 and 80 degrees bilaterally. She had no pain or limitation with range of motion on the right side. She had tenderness along the lateral epicondyle on the right side. No tenderness along the medial epicondyle and she did note pain on the right side with resisted finger extension. On the left side, she had full range of motion with pain noted with supination. She had tenderness along the medial and lateral epicondyles and pain with resisted finger extension. No swelling or erythema was noted.

On evaluation of the wrist, she had no swelling or discoloration noted in the wrist. She had well manicured fingernails, which had polish on from a nail salon. She had no tenderness to palpation on the right wrist. Wrist range of motion was noted to be 60 degrees of flexion bilaterally, 60 degrees of extension bilaterally, radial and ulnar deviation were 20 and 30 degrees bilaterally. She had no pain or limitation on right wrist range of motion. She had tenderness to palpation along the dorsal aspect of the wrist. On the left side, she was noted to have discomfort with left wrist flexion, but no limitation in motion. She was able to fully flex and extend the fingers on both hands. There was no tenderness or

**LIB000287**



**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 12

joint enlargement noted.  She had 5/5 strength in the deltoid, elbow flexors and extensors, wrist flexors and extensors, and hand intrinsics.  Sensation was diminished to 80% on the left thumb.  Otherwise, sensation was intact to light touch on the right and along all other myotomes tested on the left side.  Reflexes were 1+ at the biceps and 1+ at the triceps and symmetric.

Ms. Collier had a normal appearing non-antalgic gait.  She was able to go up on her toes and back on her heels.  Upon palpation of the thoracolumbar spine and lumbar, there was tenderness to palpation.  Lumbar range of motion was noted to be flexion to 60 degrees, extension to 30 degrees, and side bending to 30 degrees bilaterally.  She has no pain with whole body rotation to the right, but there was pain with whole body rotation to the left.  She had a negative straight leg raise bilaterally.

On evaluation of the hip, there was no tenderness along the lateral trochanteric region bilaterally.  Hip range of motion to 100 degrees of flexion, 30 degrees external rotation, and 30 degrees of internal rotation with no limitation on motion.  She had no pain with right hip range of motion.  She noted pain with left hip internal rotation.

On evaluation of the knee, there was no swelling or deformity of the knee.  She was noted to have pain in the left knee with knee extension.  Knee range of motion was noted to be flexion to 130 degrees and extension to 0 degrees.  There was no significant medial or lateral laxity.  There was no limitation in range of motion.  The claimant was noted to have tenderness along the medial and lateral left knee.  She was noted to have pain with knee flexion, which caused pain to radiate up into her hip region.  She had no tenderness to palpation along the right knee along the medial or lateral joint line.  There was negative Hawkins' test on the right side and on the left side, she had pain with Hawkins' test, but there was no palpable clicking.  She had a negative Lachman's test.  There was no significant medial or lateral laxity.

On evaluation of the foot and ankle, there was no swelling or erythema noted.  No visible deformity was noted of the ankle or foot.  Ankle range of motion was noted to be 40 degrees of plantarflexion bilaterally with no limitation.  Dorsiflexion was noted to be 20 degrees.  Inversion and eversion were noted to be 30 degrees and 20 degrees bilaterally.  She had no tenderness along the right medial or lateral malleolus and no pain with right ankle range of motion.  Upon left ankle range of motion, she was noted to have tenderness along the lateral malleolus and mild pain with inversion with otherwise no limitation in motion.

Upon evaluation of strength, she had 5/5 strength in the hip flexors, knee extensors, ankle and plantar and dorsiflexors, and extensor hallucis longus.  She had giving way of the left extensor hallucis longus.

On evaluation of sensory testing, she had intact sensation to light touch, however, she noted a tingling sensation, which she stated that otherwise she felt was not diminished along the dorsal aspect of the left foot.  Reflexes were 1+ at the biceps, 1+ at the triceps and symmetric, 1+ at the knee, and 1+ at the ankle and symmetric.  Limb girth measurements were noted to be 25 cm on the right arm, 25.5 cm on the left arm, right forearm was 22.5 cm and left forearm was 22 cm.  Right thigh circumference was 40.5 cm and left thigh circumference was 40 cm, right calf circumference was 33.5 cm and left calf circumference was 33 cm.

**LIB000288**



Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 13

On evaluation of Waddell's testing, she noted superficial non-anatomic tenderness to light touch along the low thoracic and lumbar region, along the medial and lateral joint line of the left knee, along the lateral malleolus of the left ankle, and along the forearm region. She had a positive stimulation test with pain on whole body rotation to the left. She had a positive distraction test with no pain on straight leg raise, but on evaluation of the left knee, she had pain with knee extension and flexion. She had regional disturbance with non-dermatomal sensory loss with diminished sensation in the hand and mild give-way weakness of the great toe on the left side. There was no significant overreaction during the examination.

**DIAGNOSES**:

1.  Cervical pain.
2.  Cervical radiculopathy.
3.  Bilateral shoulder pain.
4.  Status post right shoulder rotation cuff tear.
5.  Bilateral elbow pain.
6.  Bilateral wrist pain.
7.  Lumbar pain.
8.  Lumbar degenerative disc disease.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS**:

1.  **Please provide a complete physical description of the claimant including her gait upon entering the office, capacity for sitting, and ability to get on and off the exam table correlate this with exam findings.**

The claimant ambulated into the office, during the exam, as well as away from the office in a normal manner with no assistive device and no outward appearance of any pain from ambulation. She was dressed in a sweat outfit and tennis shoes and otherwise well groomed. She had manicured nails and her hair was down. She appeared to have no difficulty changing positions from sitting to standing position. She was able to get on and off the exam bed without difficulty. She was able to sit for the duration of the exam and did not appear to be moving, fidgeting or in a significant amount of pain. She did not request to change position during the exam. The claimant appeared to move with relative ease. She was cooperative for the examination and was able to perform all movements asked of her. During range of motion testing the claimant had smooth, fluid movements, and there was no outward manifestation of pain other than what the claimant verbalized.

2.  **Are any observations or behaviors demonstrated that are inconsistent with the exam or medical records?**

Based on my evaluation of the claimant, the claimant reports symptoms predominately in the neck, shoulders, upper extremities, and low back. She has positive exam findings in these areas as well. She was noted to have pain and limitation with shoulder range of motion. She was noted to have tenderness to palpation in the areas described in the medical records and upon examination. In an examination by Dr. Haronian on 09/05/18, he noted no spasm, normal range of motion of the cervical spine, normal reflexes, diminished strength of bilateral deltoid muscles, intact sensation, impingement and Hawkins'

4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882
website www.nmrco.com ■ email RockfordIMEDepartment@examworks.com

LIB000289



**RE:** Vicki Collier                        **NMR#:** 307803
**Page** 14

signs were present on the left. Normal range of motion of the elbow with tenderness along the distal radius. Normal strength in the lower extremities. These findings are consistent with my findings on examination, however, I did not find any weakness in the shoulder and deltoid region. She also saw Dr. Jonathan Kohan for an initial evaluation in December of 2018. His exam showed spasm and pain in the cervical region with normal range of motion and strength. She has diminished sensation in the C5 and C6 dermatomes on the left and right. Shoulder examination shows normal range of motion. Lumbar examination shows diminished range of motion with pain and spasm and a negative straight leg raise. She has normal sensation and strength in the lower extremities. The claimant on my examination did note diminished sensation in the left thumb, but otherwise normal sensation. This is consistent with T5 dermatomal distribution. Based on my evaluation of the notes of Dr. Haronian and Dr. Kohan, it appears that there are not significant differences in the examination and upon my review of the medical records I did not view any observation of behaviors that were inconsistent with my exam.

3. **Was there any evidence of symptom magnification during the exam?**

The claimant did have positive Waddell's findings during my examination. She did have tenderness in a number of different areas to relatively light touch palpation. She did have some giving way of the left great toe. She had a positive whole body rotation on simulation test with pain on left whole body rotation. She indicated no pain with straight leg raise, however, during knee examination she did note some pain with knee range of motion. During my evaluation of the claimant, the claimant gave good effort during the examination. She does not appear to overreact or grimace during the examination, but she does have a number of areas of tenderness noted. It should be noted that the MRI of the claimant's right shoulder from July of 2017, which was after her surgery was reviewed showing a partial thickness supraspinatus tendon tear with tendinosis of the infraspinatus and longhead of the biceps. She also had an MRI of the cervical spine dated 10/10/16 showing straightening of the normal lordosis with 1-2 mm disc bulges and an MRI of the lumbar spine showing mild disc desiccation and a 2.6 mm disc bulge with a left lateral annular fissure. It is my opinion based on these MRI findings that the claimant's symptoms appear to be out of proportion to what would be expected based on these MRI findings. The claimant's upper extremity pain would not be consistent with the cervical MRI as there was no significant neural foraminal narrowing and the findings on cervical MRI appeared to be relatively minor. Additionally, she has been off work for over one year and she continues to have significant symptoms with no apparent improvement upon rest and not working. She has had MRI of the lumbar spine, which shows an annular tear and degenerative changes which are commensurate with her age. She continues to have significant limiting symptoms with regards to her low back that appeared to more than would be expected based on the findings on cervical MRI, lumbar MRI as well as the MRI of her right shoulder. She has not had an MRI of her left shoulder that is in the medical records, and it would appear that the claimant's symptoms appeared to be out of proportion to what would be expected on the exam findings as well as imaging findings and there are some positive Waddell's findings, which lead to the conclusions that there are likely some nonorganic contributions to the claimant's symptoms.

4. **Comment on whether the insured claimed pain severity and claimed functional limitations correlate with any clinical exam and/or diagnosis test findings. Does the severity on scope of claimed impairment correlate with medical and functional evidence?**

**4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882**
*website* **www.nmrco.com** ■ *email* **RockfordIMEDepartment@examworks.com**

**LIB000290**



**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 15

As indicated in my response to question 3, it is my opinion based on the MRI findings for her right shoulder and cervical spine that the claimant's symptoms appear to be out of proportion to what would be expected based on these MRI findings. The claimant's upper extremity pain would not be consistent with the cervical MRI as there was no significant neural foraminal narrowing and the findings on cervical MRI appeared to be relatively minor. Additionally, she had no apparent improvement upon rest while being off work for many months. She continues to have significant limiting symptoms with regards to her low back that appeared to more than would be expected based on the findings on cervical MRI, lumbar MRI as well as the MRI of her right shoulder. While there is no record of her having an MRI of her left shoulder, the claimant's symptoms appear to be out of proportion to what would be expected based on exam findings, and there are positive Waddell's findings, which lead to the conclusions that there are likely some nonorganic contributions to the claimant's symptoms. Based on my review of the medical records and based on 20 years of examining patients in an orthopedic nonsurgical specialty, it does appear that the claimant's claimed pain severity is out of proportion to what would be expected based on the imaging findings. The claimant had good functional range of motion of both shoulders and upper extremities. She had intact strength and minimal loss of sensation in the upper and lower extremities. She has good range of motion of the cervical and lumbar spine, but indicates pain that is limiting her such that she is unable to work. The claimant is working out and is exercising on a daily basis and as indicated in the above question. There were findings on Waddell's testing as well as pain that appears to be out of proportion to imaging studies as well as exam findings that would indicate potentially the presence of a nonorganic source that is contributing to the claimant's pain. The claimant was visualized sitting for the duration of the examination other than during the examination portion, which was at least for 45 minutes. She did not appear to have any outward displays of pain. During range of motion testing, she was advised to tell the examiner when she experienced pain and the examination did account for her active range of motion. She was not pushed past her active range of motion when indicating pain to see if she was able to push further. Based on the claimant's examination and functional activities, the claimant appeared to be capable of more activity and she tends to underestimate her functional capabilities.

5. **Please address any physical impairments, if any, based on clinical exam, diagnostic test findings, and any functional evidence. For any impairment identified, please provide the clinical, diagnostic, and/or functional evidence supporting your opinion.**

Based on my evaluation of the claimant as well as review of the medical records and imaging studies, the claimant has impairments with regards to her neck, shoulders, and upper extremities as well as to her low back. The claimant's impairments with regard to her neck are based on pain with cervical range of motion and imaging studies showing loss of cervical lordosis as well as disc protrusion. With regard to her shoulders, the claimant has limitations with shoulder range of motion. She has limitation of right shoulder movement to 130 degrees of abduction and pain with Hawkins test on the right side. She has pain with range of motion as well as positive Hawkins' test and Speed's test on the left shoulder on examination as described in the physical examination portion. Her MRI of the right shoulder showed partial thickness tear of the supraspinatus and tendinosis of the infraspinatus and biceps tendon and she had well-healed surgical scars on the right shoulder. With regards to the elbows and forearms, she had tenderness along the medial and lateral epicondyle on the left. She had tenderness along the lateral epicondyle on the right and pain with resisted finger extension bilaterally. She also had some discomfort to palpation along the left wrist. She perceives numbness in her fingers and toes. This

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  **www.nmrco.com ■** *email*  **RockfordIMEDepartment@examworks.com**

**LIB000291**



however has not been corroborated with any electrodiagnostic finding, although she does have diminished sensation in the left thumb and the medical records do document diminished sensation in the C5 and C6 distribution as well as documented weakness in the deltoid region, which was not appreciated on my examination. An MRI of the cervical spine showed loss of the normal cervical lordosis with degenerative changes and disc bulges with no significant foraminal stenosis.  With regards to the low back, she has pain with lumbar range of motion particularly with lumbar flexion.  Her lumbar MRI showed an annular fissure as well as mild disc desiccation.  She has had her medical providers document her cervical spine and shoulder findings as well as her lumbar spine diagnoses in their medical records and give restrictions for these areas as well.

6. **Please identify the medically-supported physical restrictions/limitations, if any. Please define by the type of task [sitting, standing, lifting, fingering, etc.], as well as frequency of tasks [never, occasional, frequent, constant]. Include duration of physical restrictions and limitations.**

Based on my evaluation of the claimant, there are medically supported impairments with regard to the claimant's cervical spine, bilateral shoulders, bilateral elbows and forearms, and the lumbar spine.  These would translate into the following medically supported restrictions and limitations.

The claimant indicates that she has low sitting tolerance and her self-reported sitting tolerance is 30-45 minutes.  Sitting causes her discomfort in her neck and low back.  Lumbar examination shows diminished range of motion with pain and spasm. It is my medical opinion that the claimant can sit for up to 30 minutes at a time after which she will require a position break for up to 5 minutes before she can resume a seated position. She can continue to work during this break. The claimant can sit for a total of 6 hours in an 8-hour workday.  She would benefit from a sit-stand desk.

The claimant indicates a self-reported standing limitation of 30-45 minutes that causes her pain in the low back.  She indicates that she does not have any limitation and is able to walk relatively comfortably. It is my professional opinion that the claimant can stand or walk up to 30 minutes at a time with the ability to change positions for at least 5 minutes before resuming standing or walking.  She can continue to work during this break. She can stand and walk for a combined total of 4 hours in an 8-hour workday. The claimant would benefit from an ergonomic workstation and again a sit-stand at desk, so she is able to change positions frequently as this would mitigate her symptoms such that she would be in less pain and be able to function at a higher level.

With regards to reaching, the claimant may reach on an occasional basis in all planes.  The basis for this reaching restriction is based on her perceived shoulder pain and the fact that she has had prior shoulder surgery and has partial thickness rotator cuff tear, she has pain in her cervical spine as well as in her lumbar spine and it is felt that reaching on a more frequent basis than occasionally in all planes would result in pain such that she would not be able to continue working and her symptoms would exacerbate.

She may lift and carry up to 10 pounds occasionally.  She may push and pull up to 20 pounds occasionally.

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  **www.nmrco.com** ■ *email*  **RockfordIMEDepartment@examworks.com**

**LIB000292**



**RE:** Vicki Collier          **NMR#:** 307803
**Page** 17

The claimant may perform tasks with regards to fingering, feeling, gripping, and grasping on an occasional basis. She may benefit from voice activated software should she require any computer work. The basis for her upper extremity gripping, grasping, etc limitations are based on the fact that she has pain with her upper extremities, she has tenderness along the medial and lateral epicondyle on the left and the lateral epicondyle on the right. She has pain with resistant finger extension bilaterally at the elbow. Limiting the claimant's fingering and typing to occasional would not only take into account her perceived limitations, but also minimize any flare-ups of pain such that she would be able to function at a higher level.

It is my professional opinion that in describing these restrictions and limitations, it is important take into account the medical provider's restrictions and limitations, observations and examination findings of the claimant as well as the claimant's perceived limitations. There have been restrictions and limitations that were provided by her treating physician, Dr. Haronian in her permanent and stationary report. The work restrictions by Dr. Haronian were noted to be "cervical spine, the claimant is precluded from extended upward and extended downward gazing; lumbar spine, the claimant is precluded from repetitive bending and twisting of the lumbar spine; bilateral shoulders, the claimant is precluded from repetitive activities at or above the shoulder levels; bilateral elbows, the claimant is precluded from repetitive torquing; bilateral wrists, the claimant is precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching." Additionally, she had a QME report by Dr. Arora, which gave her restrictions of "avoid heavy lifting more than 20 pounds and reaching above her head." It is my opinion that these restrictions and limitations are accounted for in my restrictions that were noted above and that based on the claimant's ongoing pain and the fact that she has been made permanent and stationary, these restrictions would likely be permanent.

7. **Does the medical evidence support any side effects from the prescribed medications? If yes, please provide the supported impairments and outline how any impairment affects functional capacity?**

The medical records do not support any impairments or side effects from any medications.

8. **Please comment on the claimant's capacity for sustained, full-time work within these supported restrictions/limitations.**

It is my opinion based on my observation of the claimant and findings of the claimant's examination that the claimant would be able to work on a fulltime consistent basis. The claimant has had restrictions and limitations by the QME as well as her treating physicians that have been provided. The claimant was not deemed by her treating physician to be totally functionally impaired, and therefore it is presumed that the claimant would be able to work within these restrictions and limitations provided by her primary physician.

Based on my evaluation of the claimant and review of the medical records, I do not find clinical evidence that would limit the claimant's ability to work on a full-time sustained basis. The claimant can work full time, 8 hours per day, 5 days per week, for a total of 40 hours per week with the restrictions and limitations outlined in my response to question 6. The claimant has functional range of motion and the limitations that are based on her self-reported levels of pain. The MRIs of her cervical and lumbar

LIB000293

**RE:** Vicki Collier                                **NMR#:** 307803
**Page** 18

spine as well as her shoulder do not show significant changes that would limit her ability to function and her pain appears to be out of proportion to the physical exam findings.  She did have a functional capacity evaluation, which indicated that she may sit for up to three hours per day, stand for up to three hours per day, and walk for up to three hours per day.  While the FCE examiner opined that she was unable to work on a full-time or part-time basis, these timeframes do constitute eight hours in a day, which would be considered full time.  Her primary treating physician, Dr. Haronian indicated the work restrictions that had again been outlined "precluded from extended upward and extended downward gazing, precluded from repetitive bending and twisting of the lumbar spine, precluded from repetitive activities at or above the shoulder level; precluded from repetitive torqueing; and precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching."  Based on my evaluation of the claimant, the claimant has functional capability in her upper and lower extremities.  She does have pain in her low back with sitting and standing, but I do not feel that these preclude her from working on a full-time basis.  Her practitioners did not indicate that she was completely functional impaired, but that she would be able to return to work with restrictions if the restrictions were able to be accommodated.  It is my professional opinion that if she were provided with a sit-stand desk to be able to change positions periodically as well as with voice activated software and an ergonomic workstation that these would enhance her ability to work on a sustained basis without exacerbating her symptoms.  Functionally when she moved in the examination room, she did not appear to have any significant pain behaviors nor did she appear to be functionally limited such that she would not be able to carry out a full-time job within the restrictions and limitations identified above.  Despite these findings of the functional capacity evaluation performed by the physical therapist, it is my opinion based on the medical records reviewed, the opinions of her treating physicians as well as my physical examination that the claimant would be able to work on a full-time sustained basis within the restrictions and limitations outlined in my response to question 6.  Her physicians have also provided restrictions and limitations at which she would be able to work and it's my professional opinion that these restrictions as well as the restrictions that I have imposed are very similar and would allow her to be functional at some job within the restrictions outlined.

**CONFLICT OF INTEREST ATTESTATION:**
I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review (I do not have a contract to provide health care services to enrollees of the health benefit plan of the insurance issuer or group health plan that is the subject of this review); the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; (I do not have staff privileges at the facility where the recommended health care service or treatment would be provided if the insurance issuer's or group health plan's previous non-certification is reversed) or the developer or manufacturer

**LIB000294**



of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

Physician Advisor

Katrina Vlachos, M.D.
Board Certified in Physical Medicine & Rehabilitation
Licensed in State of CA #68888

***NMR CONFLICT OF INTEREST ATTESTATION:*** *NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  **www.nmrco.com** ■ *email*  **RockfordIMEDepartment@examworks.com**

**LIB000295**



**Network Medical Review Co. Ltd.**

**An ExamWorks Company**

| | |
|---|---|
| **REFERRED BY:** | Kimberly Murray |
| **CLIENT NAME:** | LINCOLN FINANCIAL GROUP (IME) - LLAOB |
| **CLAIMANT NAME:** | Vicki Collier |
| **CLAIM #:** | 8741789 |
| **NMR #:** | 307803 |
| **JOB TITLE:** | Sales agent |
| **DOD:** | 05/15/2018 |
| **REFERRAL DATE:** | 01/03/2020 |
| **DOE:** | 01/27/2020 |
| **REPORT DATE:** | 01/30/2020 |

### INDEPENDENT MEDICAL EXAMINATION

**REFERRING DIAGNOSIS:**    Unspecified sprain of shoulder joint

### RECORDS PROVIDED FOR REVIEW:

| | | |
|---|---|---|
| PROGRESS NOTES | Kaiser Permanente | 05/10/18-08/30/19 |
| PROGRESS NOTES | Synapse Medical Group | 09/05/18-10/15/19 |
| FCE | S. Jurado, D.P.T., CEAS | 09/13/19 |
| IME | R. Arora, M.D. | 10/11/18-10/24/18 |
| IME | S. A. Rubin, M.D. | 11/15/19-11/21/19 |
| FILE REVIEWS | A. Chhatre, M.D. | 05/08/19 |
| LAB/DIAGNOSTICS | Kaiser Permanente | 07/30/18-02/14/19 |
| CT/MRI | Kaiser Permanente | 10/10/16-04/09/18 |
| MRI | A. Safvi, M.D. | 02/21/19 |
| JOB | | |
| OTHER | J. G. Howard, M.R.C., C.R.C. | 03/02/19 |
| MISC | | 06/18/13-11/22/19 +Undated |
| ROI | | 09/15/18-07/08/19 |

To Whom It May Concern:

At your request, Ms. Vicki Collier was seen for an independent medical evaluation on 01/27/20. Prior to the evaluation, it was explained to Ms. Collier that this appointment was for the purpose of evaluation only and not for care, treatment, nor consultation. Therefore, no doctor-patient relationship would result. Ms. Collier has also been advised that I am an independent doctor and have been requested to conduct this evaluation by the group noted above. Ms. Collier was examined at my Marina del Rey office. She arrived on time and was by herself. She provided photographic identification consisting of her driver's license for the purpose of the visit.

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  **www.nmrco.com** ■ *email*  **RockfordIMEDepartment@examworks.com**

**LIB000296**



Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                                    **NMR#:** 307803
**Page** 2

**MEDICAL RECORDS REVIEW:**  On 05/10/18, this is a progress note by Patrick Anthony Dimartini, MD.  The patient complains of tinnitus, got worse over the last week, no change in hearing.  Assessment is bilateral subjective tinnitus.  The plan is perhaps eustachian tube plugged, try Sudafed, try Flonase, referred to audiology.

Progress note, 05/14/18, by Sovanrith Tun, MD.  Chief complaint is persistent pain in bilateral shoulders, had left cortisone injection in the shoulder helped, has tried Norco, meloxicam, and Neurontin.  There is moderate pain, working on an ergonomic workstation.  No atrophy is noted.  Abduction is noted to be 90, forward flexion 90, external rotation 70, internal rotation 20.  Impingement sign is positive.  Impression is bilateral shoulder rotator cuff syndrome.  Plan is activity modification, meloxicam, Norco, will be stopping her current job, follow-up is p.r.n.

On 05/14/18, this is a work status report by Dr. Tun.  Diagnosis, bilateral rotator cuff syndrome.  The patient is placed on modified duties from 05/14/18 through 07/15/18 with restrictions of no typing, no use of both shoulders and arms.

07/06/18, progress note by Dr. Tun., right shoulder partial rotator cuff tear, partial intratendinous supraspinatus tendon tear, persistent pain in bilateral shoulders, does physical therapy at Henry Mayo.  Range of motion and exam was unchanged.  Impression, bilateral shoulder rotator cuff syndrome.  Plan is activity modifications, meloxicam, stop current job, bilateral cortisone injections for forearms, right shoulder arthroscopy, right rotator cuff repair if pain persists, follow-up p.r.n.

07/06/18, work status report by Dr. Tun, the patient on modified duties from 07/16/18 to 08/31/18 with restrictions of no typing or use of both shoulders and arms.  The patient was scheduled for Botox on 07/20/18.

Neurology follow-up on 07/20/18 by Esther Chuanwah Wang-O'Connell, MD, the patient has diagnosis of chronic migraines and headaches, feels Botox helped.  She denies any migraines in the past three months, feels shoulder and neck much relaxed.  Assessment is chronic migraine headache, failed multiple treatments and is now exploring Botox.  Injections of Botox were performed.  Follow-up in three months.  Keep headache diary.  Plan is chemodenervation muscles innervated by facial, trigeminal, cervical spinal, and accessory nerves bilateral.

07/30/18, progress note by Dr. Colleen Bogdanich, the patient is afraid that she might have genital warts, has some discomfort with sex.  Exam performed.  Plan is HPV test, hormone, gynecology, cytology.

Progress note, 08/22/18, by Brian Brosnan, MD, the patient received Botox to her lips.

08/27/18, telephone conversation by Dr. Tun, the patient complains of bilateral shoulder pain, pain with prolonged activity, requests work restrictions, offered earlier surgery, but not possible because of health coverage.

Work status report, 08/27/18, the patient was placed on modified work from 09/01/18 to 10/31/18.  Restrictions are no typing or use of shoulders and arms bilaterally.

4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882
*website*  www.nmrco.com ■ *email*  RockfordIMEDepartment@examworks.com

**LIB000297**

Network Medical Review Co. Ltd.
An ExamWorks Company

**RE:** Vicki Collier                                   **NMR#:** 307803
**Page** 3

10/16/18, progress note by Shahram Gharibshahi, MD, the patient received Botox for headaches for chronic migraine.

Progress note by Maria Oculam, PA.  The patient has right rotator cuff tear, booked for postop visit, but canceled surgery due to family issues, to ask for Norco, will rebook.  Plan is Norco prescribed.  The patient will call for surgery.

01/17/19, progress note by Sonu Brara, MD, the patient presents for Botox for headaches, received Botox injections for chronic migraine.

01/31/19, progress note by Esther Chuanwah Wang-O'Connell, MD, the patient presents with vulvar itching.  Assessment and plan is overactive bladder, start Ditropan, check urine, postmenopausal atrophic vaginitis, wear comfortable underwear, use Estrogen cream, will follow up on bladder findings, ultrasound of bladder and urinalysis is ordered.

02/04/19, telephone visit with Esther Chuanwah Wang-O'Connell, MD, the patient is concerned about carotid arteries.  She said that her mother had problem with them.  Plan is advised regular exercise and healthy eating.  ASCVD risk score discussed.  Carotid duplex ordered.  CBC ordered.

02/13/19, carotid artery duplex, right side normal and left side normal.

03/21/19, Catherine Close, MD, the patient presented for skin check.  She was seen and examined.

03/28/19, progress note with Sylvia Mann, MD, follow-up for genital warts and vaginal itching.

This is a progress note by Edwin Haronian, MD, progress note date of service 09/05/18, Ms. Collier states she was sustained cumulative trauma injuries to her neck, shoulders, bilateral upper extremities, forearms, elbows, hands, wrists, back, head, lower extremities, during the course of her employment as an insurance agent for The Auto Club.  She has noted pain since late 2016, developing gradually.  She had cortisone injections, had x-rays and MRI of her shoulder.  On 07/25/17, Dr. Tun performed right shoulder surgery and she received physical therapy.  She remained on total temporary disability through 11/21/17.  She also received an epidural injection to her lower back and Botox injections to her shoulder and neck.  She is presently not working and last worked on 05/22/18.  She complains of headaches, constant pain in the neck with numbness radiating into her arms, frequent pain in the shoulder with stiffness, frequent bilateral elbow pain, intermittent bilateral wrist and hand pain, and frequent middle and low back pain.  On examination, there was no spasm.  She had normal range of motion of the cervical spine.  Normal reflexes and diminished strength to the bilateral deltoid at 4/5.  Sensation was intact.  Impingement and Hawkins signs were present on the right and left.  Elbow examination showed normal range of motion.  There was tenderness along the distal radius.  Lumbar examination showed straight leg raise positive bilaterally.  Reduced tendon reflexes at the ankle bilaterally.  She had normal strength in lower extremities.  Diagnoses, cervical radiculopathy, lumbosacral radiculopathy, bilateral shoulder impingement, bilateral elbow tendinitis/bursitis, and bilateral wrist tendinitis/bursitis.

4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882
*website*  www.nmrco.com  ■  *email*  RockfordIMEDepartment@examworks.com



**RE:** Vicki Collier                                              **NMR#:** 307803
**Page** 4

Discussion, the patient presents complaining of neck pain radiating to the upper extremities with associated numbness, shoulder pain, with decreased range of motion and strength, elbow pain, and wrist pain. Request authorization for neurodiagnostics of the upper and lower extremities, request 12 sessions of physical therapy, and request gabapentin. She may return to the workplace, but should not lift, push, or pull more than 10 pounds. She should not perform bending, twisting activities, or place the spine in unusual or awkward positions. She should not perform repetitive hand motions, pinching or grasping bilaterally. She will return in four weeks, at which time further recommendations will be made. Whole person impairment was noted to be 21%.

This is a PR2 by Dr. Haronian. Date is 09/05/18. Subjective complaint is cervical pain. Objective findings, loss of range of motion. Diagnoses, radiculopathy, lumbosacral region; impingement syndrome, shoulders; olecranon bursitis, elbows; and periarthritis, unspecific wrist. Treatment plan is non-surgical. Request EMG upper and lower extremities, physical therapy, and Neurontin. Work status is modified work with the following restrictions: Avoid lifting over 10 pounds, avoid pushing or pulling over 10 pounds, avoid bending and twisting completely, restrict from placing the spine in unusual and awkward positions, avoid repetitive hand motions completely with both hands, and avoid pinching and grasping completely with both hands. The patient should remain on totally temporary disability if work modifications cannot be accommodated by the employer.

This is a note by Dr. Haronian dated 09/07/18, referred to physical therapy.

This is a progress note by Dr. Haronian dated 10/10/18. She continues to complain of neck and back pain radiating to the upper extremities and lower extremities. Exam showed spasm, tenderness, and guarding in the paravertebral musculature of the cervical spine. Decreased sensation was noted in the C5 dermatome. She has mild impingement and Hawkins signs with range of motion of the shoulders with flexion of over 120 degrees on the left and 100 degrees on the right. Current work restrictions will continue. She will return in four weeks' time with prior medical records. Diagnoses are unchanged.

Progress note by Dr. Haronian dated 11/14/18. The patient has brought with her some MRI studies from Kaiser, which were reviewed. Waiting for QME report. The patient is complaining of left shoulder pain and severe low back pain. Until QME report is available, he will continue modified work duties, follow up few weeks and make further recommendations then.

11/29/18, progress note by Dr. Haronian, the patient is requesting refill of Norco. She was provided with 30 tablets. Request referral to pain management if she is to continue to use opioids. The work restrictions are unchanged.

12/13/18, this is a progress note by Jonathan Kohan, MD, secondary treating physician pain management initial report. The patient was seen for pain management. Present complaints include headaches, electrical type neck pain, bilateral shoulder pain, bilateral elbow pain, intermittent pain in both wrists and hands, upper and lower back pain, intermediate sharp knee pain, and ongoing numbness and tingling in both feet. She was noted to have spasm and pain in the cervical spine with normal range of motion and normal strength. She had decreased sensation in the C5 and C6 dermatomes on the right and C5 on the left. Shoulder examination showed normal range of motion. Lumbar spine exam showed diminished range of motion with pain and spasm and a negative straight leg raise bilaterally. She was

4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882
*website* www.nmrco.com ■ *email* RockfordIMEDepartment@examworks.com

**LIB000299**

**Network Medical Review Co. Ltd.**

**An ExamWorks Company**

**RE:** Vicki Collier                                              **NMR#:** 307803
**Page** 5

noted to have normal strength and sensation.   MRIs were reviewed.   Impression, cervical disc protrusion, cervical radiculopathy, history of right shoulder surgery with residual pain, exacerbated lumbar pain with a component of sacroiliitis, and lumbar radiculopathy.  Recommendation is to continue Norco, await MRI findings, and may benefit from spinal injections.

01/03/19, this is a progress note by Dr. Haronian.  The patient continues with upper and lower back pain with radiation to the upper and lower extremities.  She is under the care of pain management receiving Norco and taking gabapentin.   She has spasm and tenderness in the paravertebral muscles with decreased range of motion on flexion and extension.   Request MRI of the low back, request authorization for Neurontin, work status is unchanged for modified duty, follow-up in four weeks.

Supplemental report by Dr. Haronian dated 01/20/19.  The QME report of Dr. Arora was reviewed.  It appears that the neck and lower back issues are non-industrial.  He provided the patient with 4% impairment of the whole person and provided the patient with future medical.  Dr. Haronian feels that due to deferring opinions between Dr. Arora and himself, it is likely that no further authorizations would be provided.  As such, the patient would be declared permanent and stationary as he will be unable to provide the claimant any further treatment.

01/28/19, this is a progress note by Dr. Kohan, a review of medical records was performed.  The patient is not undergoing therapy for treatment, but continues to have difficulty controlling her pain in the neck, shoulder, and low back.  She ran out of Norco.  Naprosyn and over-the-counter medicines have not been helpful.  She has tenderness and spasm over the cervical spine extending to the trapezius and deltoid. Lumbar spine tenderness over the sacroiliac joint.  Impression is history of right shoulder arthroscopic surgery with residual pain, cervical disc protrusion with component of radiculopathy, and exacerbated lumbar pain with component of sacroiliitis.  Considering her work duties at AAA with her capacity, pain seemed reasonable and work-related.  The patient's options are limited.  MRI was not done, but she has component of sacroiliitis.  Norco will be refilled and increase gabapentin, follow-up in one month.

01/31/19, permanent and stationary report from Dr. Haronian, history and job description were reviewed.  Physical exam showed tenderness and spasm over the paravertebral musculature in the upper trapezius region.   Range of motion was accomplished with discomfort and spasms.   Reflexes were normal and symmetric with negative Hawkins.  She had 4/5 strength in the right deltoid, otherwise 5/5 strength.  She had intact sensation.  Impingement signs showed positive Hawkins on the right and left. She had tenderness over the lateral epicondyle bilaterally.  She had tenderness over the distal radius bilaterally.  Lumbar exam showed tenderness and pain in the paravertebral musculature with spasm and pain.  She had normal strength in the lower extremities.  She had diminished sensation in the right L5 distribution.  Hip range of motion was normal.  Diagnoses are cervical spine radiculopathy, lumbar spine radiculopathy, bilateral shoulder impingement, status post right shoulder arthroscopy, bilateral elbow tendinitis, and bilateral wrist tendinitis.  The patient has been seen by a number of physicians and has had conservative treatment, which is unlikely to help her.   She has reached maximum medical improvement.   The patient is precluded from extended upward and extended downward gazing, precluded from repetitive bending and twisting of the lumbar spine, precluded from repetitive activities at or above the shoulder level, precluded from repetitive torqueing, and precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching.  The patient can return to work with restrictions that have been provided.  The patient should have access to future medical care.  It is

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website*  **www.nmrco.com ■** *email*  **RockfordIMEDepartment@examworks.com**

**LIB000300**



Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803

**Page** 6

within reasonable medical probability the patient has sustained injuries to the cervical and lumbar spine, bilateral shoulders, elbows, bilateral wrists due to continuous trauma activities at work. Apportion 20% of preexisting degenerative changes of the cervical and lumbar spine and 80% to direct effect of the continuous trauma. For the shoulders, elbows, and wrists, 100% of the patient's disability is the direct effect of the continuous trauma. She is noted to have final whole person impairment of 30%.

02/14/19, this is a follow-up report and review of records from Dr. Haronian, reviewing the report from Dr. Arora. The patient was declared permanent and stationary. She could return to Dr. Haronian on an as needed basis.

02/25/19, progress note by Dr. Kohan, the patient continues to have pain and difficulty with her neck and shoulder with moderate-to-severe spasm over the cervical spine extending to the trapezius and deltoid. No additional treatment has been allowed through Dr. Haronian's office. She was given Norco. Follow up next month.

03/13/19, supplemental report from Dr. Haronian. He would respectfully disagree with Dr. Arora regarding the opinion on industrial causation. Dr. Arora did not feel that the cervical and lumbar spine were industrially related. Part of Dr. Haronian's whole person impairment was related to the cervical and lumbar spine based on information provided to him. He requests the medical records provided to and the ability to change his opinion should any additional records be available.

04/01/19, progress note by Dr. Kohan. Lumbar spine MRI from 02/15/19 showed a small disc protrusion at L5-S1. She will continue with Norco and gabapentin as injections have not provided her with much relief. She was reminded to make any attempt to reduce anxiety or any issues with her sleep to avoid any further exacerbations of myofascial pain.

Progress note dated 04/11/19 by Dr. Haronian, the patient is back without significant change. She has been declared permanent and stationary due to lack of authorization. She continues to suffer from pain. She can continue using nonopioid anti-inflammatory medications. Her work restrictions are guarded by the permanent and stationary report. She will follow up in six weeks.

05/07/19, progress note by Jonathan Kohan, MD. She is not undergoing therapy or any modes of treatment. She has not been back to work, but reports increasing level of low back pain. She is taking Norco and gabapentin. She has tenderness over the paravertebral area, which extends to the SI joint. She has tenderness and moderate spasm in the trapezius and deltoid. He does not believe injection would be beneficial aside from trigger point injections. Recommended Norco and Neurontin and follow-up in one month.

05/16/19, progress note by Dr. Haronian, the patient has been made permanent and stationary. She continues to show spasm, tenderness, and guarding in the paravertebral musculature of the cervical and lumbar spine. She has flexion and abduction to 120 degrees. She has decreased grip strength. Medications will be refilled. Work restrictions per the permanent and stationary report. Follow up in eight weeks.

**4960 East State Street** ● **Rockford, IL 61108** ● **Phone  815.964.6334** ● **Fax  815.977.9882**
*website*  **www.nmrco.com** ■ *email*  **RockfordIMEDepartment@examworks.com**

LIB000301



Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 7

06/04/19, progress note by Dr. Kohan, she has ongoing neck and shoulder pain.  Low back pain is less, but has difficulty lifting, pushing, and pulling.  She has tenderness over the cervical spine extending to the trapezius and deltoid.  She has not been able to get treatment because of issues surrounding her claim.  She will continue with Norco and gabapentin.

07/09/19, progress note by Dr. Kohan, she developed depression due to exposure of modus operandi of the carrier.  She has been taking Norco and gabapentin.  Her exam is unchanged.  Plan is prescribed Cymbalta to address insomnia, depression, and neuropathic pain.  Follow up in four weeks.

This is a supplemental report and record review by Dr. Haronian dated 07/10/19, he was provided with notes from Dr. Arora and he remained in disagreement with the assessment of the QME over the body part in question regarding her cervical and lumbar spine and the acceptance of the claim regarding these areas.

07/11/19, progress note by Dr. Haronian, she continues to have pain and has seen pain management, who prescribes her medications.  He recommends continuing and reducing the opioid medications as much as possible.  Ibuprofen will be provided with Prevacid.  He will see her back at a lesser frequency as she has been declared permanent and stationary.

09/26/19, supplemental report and review of records by Dr. Haronian, MRI of the right shoulder revealed a partial thickness supraspinatus tendon tear.  MRI of the cervical spine was reviewed.  He disputes the medical-legal evaluator's note.  Dr. Haronian provided restrictions to avoid lifting more than 10 pounds and avoid repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching due to her wrist complaints.  It would be reasonable to indicate that the patient will not be able to perform her previous work activities as indicated in his report dated 01/31/19.  Ms. Collier underwent a functional capacity evaluation on 09/12/19 and 09/13/19 to obtain objective measurement of her physical capacity for work.  It was recommended that the claimant can sit occasionally up to 3 hours per day, stand occasionally up to 3 hours per day, walk occasionally up to 3 hours per day, climb 5 flights, bend and squat 10 reps, reach overhead 40 reps, and push and pull 36 pounds.  She is unable to return to work with the above parameters.  This is a functional capacity evaluation report dated 09/13/19 indicating that based on the test results, the client gave maximum effort with testing.  She had 98% consistency with coefficient of variance measurements below 15%.  Although the claimant presented with functional limitations on the first day of testing, her performance and activity tolerance declined on day 2.  She presents with deficits in strength of her upper and lower extremities.  She has difficulty with tasks involving repetitive bending, squatting, and stair climbing and activity tolerance declined on day 2.  Based on testing, the client is unable to perform sedentary work as she is unable to maintain static sitting for approximately 2 hours continuously and up to 6 hours a day.

10/11/18, this is a qualified medical examination in pain management by Ripu Arora, MD.  She has pain in her neck, shoulder, lower extremities, headaches, forearm, elbows, and shoulder blade pain, upper back pain because of the lack of the ergonomic furniture provided to her at the work location.  She has been seeking medical attention.  Neck shows trigger point spasm and tenderness on the left side.  She has diminished shoulder range of motion on the right and left.  She is able to flex and extend her lumbar spine to 60 and 20 degrees bilaterally.  Diagnoses are cervical radiculopathy, right shoulder status post rotator cuff repair with pain, left shoulder pain, sacroiliac pain bilaterally and low back pain.  No

**LIB000302**



Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                                   **NMR#:** 307803
**Page** 8

medical records were available for review. He is unable to comment on apportionment or permanent and stationary status.

10/24/18, this is a supplemental report by Dr. Arora. A record review was performed. He indicates that after reviewing the records, there are differences between her history and the examination of the medical records provided. She has been complaining of symptoms during the 2005 to 2009 timeframe and it is his medical records that the back pain and neck pain as well as hemorrhoids are not out of employment. She started complaining of shoulder pain in 2015. It is his medical opinion that the right shoulder injury is related to employment. It is his opinion that she has reached permanent and stationary status. There is no apportionment for the right shoulder. The neck and back are 100% non-industrial. She has 9% total whole person impairment. She is healing from shoulder surgery and should avoid heavy lifting more than 20 pounds and reaching above her head and follow-up would be advised by an orthopedic surgeon. She may need physical therapy 6-12 sessions for pain.

This is a peer review by Akhil Chhatre, MD. Records were reviewed and response to questions were performed. He was unable to talk with Dr. Haronian. The diagnoses supported by the medical evidence are chronic low back pain, neck pain, and right shoulder pain, status post right shoulder arthroscopy. There are no supported impairments from 05/15/18 to the present. She has stable exam findings with no new diagnostic testing. The MRI of the cervical spine from 2016 is without any updated findings. The right shoulder MRI is undated. The claimant has stable exam findings with no new testing to suggest acute neurologic or musculoskeletal derangement. The claimant does not have supported impairment. The claimant is medically stable with diagnostic testing. The severity and scope are not in line with the chronic and stable conditions that are supported by the medical records. There is no evidence to support impairments related to prescribed medications.

MRI of the cervical spine dated 10/10/16 shows straightening of the normal lordotic curvature. 1 mm broad-based posterior disc bulge at C3-C4 indenting the anterior aspect of the thecal sac. 2 mm central posterior disc protrusion at C4-C5 causing pressure over the anterior aspect of the thecal sac. There is a 2 mm broad-based posterior disc endplate osteophyte complex at C5-C6 causing pressure over the anterior thecal sac. There is a 2 mm broad-based posterior disc protrusion at C6-C7 causing pressure over the anterior thecal sac. There is mild narrowing of the left neural foramen and moderately significant narrowing of the right neural foramen.

MRI of the right shoulder dated 07/05/17 was reviewed showing impression 9 mm approximately 50% partial-thickness articular surface supraspinatus tendon tear on a background of moderate tendinosis. Infraspinatus and superior fiber subscapularis mild tendinosis. Proximal long head of biceps mild tendinosis. Minimal subacromial-subdeltoid bursitis and acromioclavicular joint osteoarthrosis.

MRI of the lumbar spine dated 02/15/19 shows impression anterior osteophytes at T12 down through L5. Mild disc desiccation at L2-L3 down through L5-51. Anterior loss of disc height is seen at L5-S1. There is no significant disc herniation or neural foraminal narrowing visualized. The spinal canal is patent. Exiting nerve roots are normal. Left lateral annular fissure is identified. A mild disc bulge is identified at L5-S1 measures 2.6 mm. Exiting nerve roots are normal.

4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882
*website* www.nmrco.com ■ *email* RockfordIMEDepartment@examworks.com

LIB000303



Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                                              **NMR#:** 307803
**Page** 9

An occupational analysis dated 03/02/19 was reviewed with a summary indicating that the job that she performed at AAA was within the sedentary and light physical demand profile. It is reasonable to conclude that the occupation exists in both full-time and part-time positions. This is performed by Jane Howard, and she has not met with the claimant.

Blood work from Kaiser Permanente was reviewed and correspondence was also reviewed between the claimant's attorney as well as Liberty Mutual and treating physicians.

The claimant's job title as well as her job performance were reviewed.

This is a functional capacity evaluation done by Ergo Links Sebastian Jurado, DPT performing functional capacity evaluation with recommended physical demands of sitting less than 30 minutes continuously up to 3 hours per day, standing up to 30 minutes continuously up to 3 hours per day, walking less than 30 minutes continuously up to 3 hours per day, climbing five flights continuously, bending 10 reps continuously, squatting 10 reps continuously, these are all in the occasional range. She may reach overhead 40 reps continuously. Pushing and pulling are 36 pounds and 34 pounds. Lifting capacity is 15 pounds. It was felt that the claimant is unable to work within the parameters above.

**HISTORY OF PRESENT ILLNESS**: Ms. Collier is a 56-year-old woman who states that she has had no history of missed work or lapses where she had an industrial or other injury that required her to miss a period of time at work. She states that around 2015, she started to note neck pain that would radiate to the right shoulder. She states that in 2016, she went on a trip to Mexico that she had one at work and started to feel "kink" in the left neck with certain positions. She continued to have ongoing pain in the shoulder and upper arm region. She states that she had symptoms in her low back as well. She eventually sought treatment where she underwent imaging studies of her shoulder and she had cortisone injections, which initially helped, but then stopped working. She states that in May of 2017, she underwent right shoulder rotator cuff repair and was off work for approximately three months. She went to physical therapy and was able to return to work. She states that initially she had been doing well then she started to have radiating pain once again. She started to have pain on the right shoulder, but also in addition on the left upper extremity as well. It was then decided that the symptoms were work related and she states that she stopped seeking treatment from Kaiser through which she had her prior care and her surgery. She states that she started to see a doctor through Workers' Compensation and she states that she has not been able to get treatment authorized and she states that she has only been using medications as no treatment has been authorized to Workers' Compensation. She states that she has had an MRI of her lumbar spine, but has not had any other up to date imaging studies of other areas. She has undergone treatment consisting of cortisone injections in the shoulder. She also had an epidural in her neck, which should not help. She has been through physical therapy, chiropractic, and acupuncture treatments. She states that when she was working, she had requested an ergonomic evaluation, but she was unable to get one in a timely manner and states that she had tried for two years to get an ergonomic workstation. She states that she has not had an epidural in her low back. She takes Norco for the pain up to 1-2 per day as well as gabapentin and Cymbalta. She has been doing stretching. She has not had an electrodiagnostic study and has not seen a rheumatologist.

**PRESENT SYMPTOMS**: She states that presently she has neck pain radiating to both shoulders and upper arms and occasional radiation to the wrist. She states that the pain is constant. She states that

**4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882**
*website* **www.nmrco.com** ■ *email* **RockfordIMEDepartment@examworks.com**

**LIB000304**



Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 10

there is no relation of the pain to activity.  She states that her shoulders are bothersome, but she does not note any increased pain with shoulder range of motion more than the usual constant level of pain.  She states that at the present time, the left arm is more bothersome than the right.  She states that the pain will awaken her.  The pain is worse with sitting and will radiate into the periscapular area.  She states that additionally she will have intermittent numbness in her hands and her fingers will turn white.  She also has pain in her low back that radiates to the hip as well as the knee, the left side is worse than the right.  She notes intermittent numbness and tingling and occasional right lower extremity numbness and tingling and pain with driving.  The pain is worse with sitting and she needs to change positions frequently.  She will occasionally limp when she tries to favor her hip and the pain will awaken her.  She has bilateral elbow pain with right side more bothersome than the left.  The elbow will occasionally lock and she has pain that radiates down into the forearm.  She states that when she massages her forearms, she will have improvement of the pain that radiates into her index and middle fingers.  The pain at times will radiate up into the shoulders.

**PAIN DIAGRAM**:  Her pain diagram shows numbness on the top of her head as well as in both forearms and in her toes and the finger on her right hand.  She has aching in the neck, bilateral shoulders and periscapular regions as well as in the elbow and in the right knee.  She has pins and needles in the toes.  She notes burning in the buttock region and radiating pain in the hip region as well as in the back of her head.  She describes the pain as anywhere from 6 to 9, which varies in place.  The pain is continuous, positional, intermittent and unable to rate.

**PAST MEDICAL HISTORY**:  Significant for depression, for which she takes Cymbalta.

**MEDICATIONS**:  Norco, gabapentin, Cymbalta, and hormone cream.

**PAST SURGICAL HISTORY**:  Significant for hernia repair in 2002, breast augmentation in 2005, tonsil removal as a kid, and rotator cuff repair in 2017.

**REVIEW OF SYSTEMS**:  Significant for fatigue, depression, sleep difficulty, headaches, nervousness, stress, numbness, weakness, bowel problems, memory loss, loss of concentration, itching, tingling, and early awakening.

**ALLERGIES**:  None.

**SOCIAL HISTORY**:  She does not smoke and drinks occasional alcohol.  She has no history of alcohol or drug abuse.  She states that she is presently single with three children; ages 26, 23, and 19.  She lives with her boyfriend who works fulltime out of the house.  She lives in a house that is two stories.  She states that prior to her disability, she would enjoy swimming and going to the gym.  She states that presently for exercise she will walk, stretch, take classes at a gym, and use a foam roller on a daily basis.

**EDUCATION AND WORK HISTORY**:  Ms. Collier earned her high school diploma.  She states that she was raising children until 2007.  From 2007 to 2013, she was working in insurance as an independent producer where she was working from home.  From 2013 until November of 2018, which was her last time working, she was working as an insurance agent.  She states that her job consisted of

4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882
*website*  www.nmrco.com  ■  *email*  RockfordIMEDepartment@examworks.com

LIB000305



**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 11

sitting, using the computer and talking on a telephone, inspecting homes, occasionally bending, and minimal lifting.

**FUNCTIONAL HISTORY**: Ms. Collier indicates she is able to sit for 30-45 minutes at a time before she has to stand. She is able to walk and able to drive. She sleeps anywhere from 6-10 hours per night. She states that her last travel was to driving to Las Vegas. She states that she is able to stand 30-45 minutes at a time. She states that she is able to perform her health care, but finds difficulty blowing dry her hair and taking off a sports bra. She states that she exercises daily, walking, stretching, taking classes at the gym, and biking. She is able to type for approximately 15-30 minutes at a time. She states that housekeeping is performed by herself, her daughter, and her boyfriend and she does her own grocery shopping when needed.

Her typical day consists of getting up at 07:00-08:00 a.m., meditating, reading, stretching, walking her dog, going to the gym, sitting or lying down, reading, watching TV, tidying the house, stretching, occasionally cooking and watching TV.

**PHYSICAL EXAMINATION**: On physical exam, Ms. Collier's stated height and weight are 5'6" tall and 118 pounds. On evaluation of the cervical spine, she shows no loss normal cervical lordosis. There are no noted abnormal curvatures. Active cervical range of motion is noted to be flexion to 45 degrees, extension to 30 degrees, and rotation to 45 degrees bilaterally. She states that she has more pain with left greater than right rotation. There was no tenderness noted of the cervical paraspinal muscles nor in the parascapular region. She had mild tightness along the trapezius bilaterally.

On evaluation of the shoulders, she had well healed surgical portal sites on the right shoulder. She was noted to have no tenderness along the anterior or posterior shoulder. Active shoulder range of motion on the right side was noted to be 130 degrees of abduction, 80 degrees of external rotation, and 60 degrees of internal rotation. She had no pain with resisted internal or external rotation. She had pain with Hawkins' test on the right side, but no pain with Speed's test. On evaluation of the left shoulder, she had abduction actively to 30 degrees, external rotation was noted to be 80 degrees, and internal rotation to 30 degrees before she noted discomfort. She had pain with Hawkins' and Speed's test on the left side.

On evaluation of the elbow, she had flexion to 140 degrees, extension to 0 degrees, supination and pronation to 70 and 80 degrees bilaterally. She had no pain or limitation with range of motion on the right side. She had tenderness along the lateral epicondyle on the right side. No tenderness along the medial epicondyle and she did note pain on the right side with resisted finger extension. On the left side, she had full range of motion with pain noted with supination. She had tenderness along the medial and lateral epicondyles and pain with resisted finger extension. No swelling or erythema was noted.

On evaluation of the wrist, she had no swelling or discoloration noted in the wrist. She had well manicured fingernails, which had polish on from a nail salon. She had no tenderness to palpation on the right wrist. Wrist range of motion was noted to be 60 degrees of flexion bilaterally, 60 degrees of extension bilaterally, radial and ulnar deviation were 20 and 30 degrees bilaterally. She had no pain or limitation on right wrist range of motion. She had tenderness to palpation along the dorsal aspect of the wrist. On the left side, she was noted to have discomfort with left wrist flexion, but no limitation in motion. She was able to fully flex and extend the fingers on both hands. There was no tenderness or

**LIB000306**



joint enlargement noted.  She had 5/5 strength in the deltoid, elbow flexors and extensors, wrist flexors and extensors, and hand intrinsics.  Sensation was diminished to 80% on the left thumb.  Otherwise, sensation was intact to light touch on the right and along all other myotomes tested on the left side.  Reflexes were 1+ at the biceps and 1+ at the triceps and symmetric.

Ms. Collier had a normal appearing non-antalgic gait.  She was able to go up on her toes and back on her heels.  Upon palpation of the thoracolumbar spine and lumbar, there was tenderness to palpation.  Lumbar range of motion was noted to be flexion to 60 degrees, extension to 30 degrees, and side bending to 30 degrees bilaterally.  She has no pain with whole body rotation to the right, but there was pain with whole body rotation to the left.  She had a negative straight leg raise bilaterally.

On evaluation of the hip, there was no tenderness along the lateral trochanteric region bilaterally.  Hip range of motion to 100 degrees of flexion, 30 degrees external rotation, and 30 degrees of internal rotation with no limitation on motion.  She had no pain with right hip range of motion.  She noted pain with left hip internal rotation.

On evaluation of the knee, there was no swelling or deformity of the knee.  She was noted to have pain in the left knee with knee extension.  Knee range of motion was noted to be flexion to 130 degrees and extension to 0 degrees.  There was no significant medial or lateral laxity.  There was no limitation in range of motion.  The claimant was noted to have tenderness along the medial and lateral left knee.  She was noted to have pain with knee flexion, which caused pain to radiate up into her hip region.  She had no tenderness to palpation along the right knee along the medial or lateral joint line.  There was negative Hawkins' test on the right side and on the left side, she had pain with Hawkins' test, but there was no palpable clicking.  She had a negative Lachman's test.  There was no significant medial or lateral laxity.

On evaluation of the foot and ankle, there was no swelling or erythema noted.  No visible deformity was noted of the ankle or foot.  Ankle range of motion was noted to be 40 degrees of plantarflexion bilaterally with no limitation.  Dorsiflexion was noted to be 20 degrees.  Inversion and eversion were noted to be 30 degrees and 20 degrees bilaterally.  She had no tenderness along the right medial or lateral malleolus and no pain with right ankle range of motion.  Upon left ankle range of motion, she was noted to have tenderness along the lateral malleolus and mild pain with inversion with otherwise no limitation in motion.

Upon evaluation of strength, she had 5/5 strength in the hip flexors, knee extensors, ankle and plantar and dorsiflexors, and extensor hallucis longus.  She had giving way of the left extensor hallucis longus.

On evaluation of sensory testing, she had intact sensation to light touch, however, she noted a tingling sensation, which she stated that otherwise she felt was not diminished along the dorsal aspect of the left foot.  Reflexes were 1+ at the biceps, 1+ at the triceps and symmetric, 1+ at the knee, and 1+ at the ankle and symmetric.  Limb girth measurements were noted to be 25 cm on the right arm, 25.5 cm on the left arm, right forearm was 22.5 cm and left forearm was 22 cm.  Right thigh circumference was 40.5 cm and left thigh circumference was 40 cm, right calf circumference was 33.5 cm and left calf circumference was 33 cm.

**LIB000307**



On evaluation of Waddell's testing, she noted superficial non-anatomic tenderness to light touch along the low thoracic and lumbar region, along the medial and lateral joint line of the left knee, along the lateral malleolus of the left ankle, and along the forearm region. She had a positive stimulation test with pain on whole body rotation to the left. She had a positive distraction test with no pain on straight leg raise, but on evaluation of the left knee, she had pain with knee extension and flexion. She had regional disturbance with non-dermatomal sensory loss with diminished sensation in the hand and mild give-way weakness of the great toe on the left side. There was no significant overreaction during the examination.

**DIAGNOSES**:

1. Cervical pain.
2. Cervical radiculopathy.
3. Bilateral shoulder pain.
4. Status post right shoulder rotation cuff tear.
5. Bilateral elbow pain.
6. Bilateral wrist pain.
7. Lumbar pain.
8. Lumbar degenerative disc disease.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS**:

1. **Please provide a complete physical description of the claimant including her gait upon entering the office, capacity for sitting, and ability to get on and off the exam table correlate this with exam findings.**

The claimant ambulated into the office, during the exam, as well as away from the office in a normal manner with no assistive device and no outward appearance of any pain from ambulation. She was dressed in a sweat outfit and tennis shoes and otherwise well groomed. She had manicured nails and her hair was down. She appeared to have no difficulty changing positions from sitting to standing position. She was able to get on and off the exam bed without difficulty. She was able to sit for the duration of the exam and did not appear to be moving, fidgeting or in a significant amount of pain. She did not request to change position during the exam. The claimant appeared to move with relative ease. She was cooperative for the examination and was able to perform all movements asked of her. During range of motion testing the claimant had smooth, fluid movements, and there was no outward manifestation of pain other than what the claimant verbalized.

2. **Are any observations or behaviors demonstrated that are inconsistent with the exam or medical records?**

Based on my evaluation of the claimant, the claimant reports symptoms predominately in the neck, shoulders, upper extremities, and low back. She has positive exam findings in these areas as well. She was noted to have pain and limitation with shoulder range of motion. She was noted to have tenderness to palpation in the areas described in the medical records and upon examination. In an examination by Dr. Haronian on 09/05/18, he noted no spasm, normal range of motion of the cervical spine, normal reflexes, diminished strength of bilateral deltoid muscles, intact sensation, impingement and Hawkins'

**LIB000308**



Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                     **NMR#:** 307803
**Page** 14

signs were present on the left. Normal range of motion of the elbow with tenderness along the distal radius. Normal strength in the lower extremities. These findings are consistent with my findings on examination, however, I did not find any weakness in the shoulder and deltoid region. She also saw Dr. Jonathan Kohan for an initial evaluation in December of 2018. His exam showed spasm and pain in the cervical region with normal range of motion and strength. She has diminished sensation in the C5 and C6 dermatomes on the left and right. Shoulder examination shows normal range of motion. Lumbar examination shows diminished range of motion with pain and spasm and a negative straight leg raise. She has normal sensation and strength in the lower extremities. The claimant on my examination did note diminished sensation in the left thumb, but otherwise normal sensation. This is consistent with T5 dermatomal distribution. Based on my evaluation of the notes of Dr. Haronian and Dr. Kohan, it appears that there are not significant differences in the examination and upon my review of the medical records I did not view any observation of behaviors that were inconsistent with my exam.

3. **Was there any evidence of symptom magnification during the exam?**

The claimant did have positive Waddell's findings during my examination. She did have tenderness in a number of different areas to relatively light touch palpation. She did have some giving way of the left great toe. She had a positive whole body rotation on simulation test with pain on left whole body rotation. She indicated no pain with straight leg raise, however, during knee examination she did note some pain with knee range of motion. During my evaluation of the claimant, the claimant gave good effort during the examination. She does not appear to overreact or grimace during the examination, but she does have a number of areas of tenderness noted. It should be noted that the MRI of the claimant's right shoulder from July of 2017, which was after her surgery was reviewed showing a partial thickness supraspinatus tendon tear with tendinosis of the infraspinatus and longhead of the biceps. She also had an MRI of the cervical spine dated 10/10/16 showing straightening of the normal lordosis with 1-2 mm disc bulges and an MRI of the lumbar spine showing mild disc desiccation and a 2.6 mm disc bulge with a left lateral annular fissure. It is my opinion based on these MRI findings that the claimant's symptoms appear to be out of proportion to what would be expected based on these MRI findings. The claimant's upper extremity pain would not be consistent with the cervical MRI as there was no significant neural foraminal narrowing and the findings on cervical MRI appeared to be relatively minor. Additionally, she has been off work for over one year and she continues to have significant symptoms with no apparent improvement upon rest and not working. She has had MRI of the lumbar spine, which shows an annular tear and degenerative changes which are commensurate with her age. She continues to have significant limiting symptoms with regards to her low back that appeared to more than would be expected based on the findings on cervical MRI, lumbar MRI as well as the MRI of her right shoulder. She has not had an MRI of her left shoulder that is in the medical records, and it would appear that the claimant's symptoms appeared to be out of proportion to what would be expected on the exam findings as well as imaging findings and there are some positive Waddell's findings, which lead to the conclusions that there are likely some nonorganic contributions to the claimant's symptoms.

4. **Comment on whether the insured claimed pain severity and claimed functional limitations correlate with any clinical exam and/or diagnosis test findings. Does the severity on scope of claimed impairment correlate with medical and functional evidence?**

4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882
*website* www.nmrco.com ■ *email* RockfordIMEDepartment@examworks.com

LIB000309



As indicated in my response to question 3, it is my opinion based on the MRI findings for her right shoulder and cervical spine that the claimant's symptoms appear to be out of proportion to what would be expected based on these MRI findings. The claimant's upper extremity pain would not be consistent with the cervical MRI as there was no significant neural foraminal narrowing and the findings on cervical MRI appeared to be relatively minor. Additionally, she had no apparent improvement upon rest while being off work for many months. She continues to have significant limiting symptoms with regards to her low back that appeared to more than would be expected based on the findings on cervical MRI, lumbar MRI as well as the MRI of her right shoulder. While there is no record of her having an MRI of her left shoulder, the claimant's symptoms appear to be out of proportion to what would be expected based on exam findings, and there are positive Waddell's findings, which lead to the conclusions that there are likely some nonorganic contributions to the claimant's symptoms. Based on my review of the medical records and based on 20 years of examining patients in an orthopedic nonsurgical specialty, it does appear that the claimant's claimed pain severity is out of proportion to what would be expected based on the imaging findings. The claimant had good functional range of motion of both shoulders and upper extremities. She had intact strength and minimal loss of sensation in the upper and lower extremities. She has good range of motion of the cervical and lumbar spine, but indicates pain that is limiting her such that she is unable to work. The claimant is working out and is exercising on a daily basis and as indicated in the above question. There were findings on Waddell's testing as well as pain that appears to be out of proportion to imaging studies as well as exam findings that would indicate potentially the presence of a nonorganic source that is contributing to the claimant's pain. The claimant was visualized sitting for the duration of the examination other than during the examination portion, which was at least for 45 minutes. She did not appear to have any outward displays of pain. During range of motion testing, she was advised to tell the examiner when she experienced pain and the examination did account for her active range of motion. She was not pushed past her active range of motion when indicating pain to see if she was able to push further. Based on the claimant's examination and functional activities, the claimant appeared to be capable of more activity and she tends to underestimate her functional capabilities.

5.  **Please address any physical impairments, if any, based on clinical exam, diagnostic test findings, and any functional evidence. For any impairment identified, please provide the clinical, diagnostic, and/or functional evidence supporting your opinion.**

Based on my evaluation of the claimant as well as review of the medical records and imaging studies, the claimant has impairments with regards to her neck, shoulders, and upper extremities as well as to her low back. The claimant's impairments with regard to her neck are based on pain with cervical range of motion and imaging studies showing loss of cervical lordosis as well as disc protrusion. With regard to her shoulders, the claimant has limitations with shoulder range of motion. She has limitation of right shoulder movement to 130 degrees of abduction and pain with Hawkins test on the right side. She has pain with range of motion as well as positive Hawkins' test and Speed's test on the left shoulder on examination as described in the physical examination portion. Her MRI of the right shoulder showed partial thickness tear of the supraspinatus and tendinosis of the infraspinatus and biceps tendon and she had well-healed surgical scars on the right shoulder. With regards to the elbows and forearms, she had tenderness along the medial and lateral epicondyle on the left. She had tenderness along the lateral epicondyle on the right and pain with resisted finger extension bilaterally. She also had some discomfort to palpation along the left wrist. She perceives numbness in her fingers and toes. This

**4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882**
*website* **www.nmrco.com** ■ *email* **RockfordIMEDepartment@examworks.com**

**LIB000310**



Network Medical Review Co. Ltd.

An ExamWorks Company

**RE:** Vicki Collier                                  **NMR#:** 307803
**Page** 16

however has not been corroborated with any electrodiagnostic finding, although she does have diminished sensation in the left thumb and the medical records do document diminished sensation in the C5 and C6 distribution as well as documented weakness in the deltoid region, which was not appreciated on my examination. An MRI of the cervical spine showed loss of the normal cervical lordosis with degenerative changes and disc bulges with no significant foraminal stenosis.  With regards to the low back, she has pain with lumbar range of motion particularly with lumbar flexion.  Her lumbar MRI showed an annular fissure as well as mild disc desiccation.  She has had her medical providers document her cervical spine and shoulder findings as well as her lumbar spine diagnoses in their medical records and give restrictions for these areas as well.

> **6. Please identify the medically-supported physical restrictions/limitations, if any. Please define by the type of task [sitting, standing, lifting, fingering, etc.], as well as frequency of tasks [never, occasional, frequent, constant]. Include duration of physical restrictions and limitations.**

Based on my evaluation of the claimant, there are medically supported impairments with regard to the claimant's cervical spine, bilateral shoulders, bilateral elbows and forearms, and the lumbar spine.  These would translate into the following medically supported restrictions and limitations.

The claimant indicates that she has low sitting tolerance and her self-reported sitting tolerance is 30-45 minutes.  Sitting causes her discomfort in her neck and low back.  Lumbar examination shows diminished range of motion with pain and spasm. It is my medical opinion that the claimant can sit for up to 30 minutes at a time after which she will require a position break for up to 5 minutes before she can resume a seated position. She can continue to work during this break. The claimant can sit for a total of 6 hours in an 8-hour workday.  She would benefit from a sit-stand desk.

The claimant indicates a self-reported standing limitation of 30-45 minutes that causes her pain in the low back.  She indicates that she does not have any limitation and is able to walk relatively comfortably. It is my professional opinion that the claimant can stand or walk up to 30 minutes at a time with the ability to change positions for at least 5 minutes before resuming standing or walking.  She can continue to work during this break. She can stand and walk for a combined total of 4 hours in an 8-hour workday. The claimant would benefit from an ergonomic workstation and again a sit-stand at desk, so she is able to change positions frequently as this would mitigate her symptoms such that she would be in less pain and be able to function at a higher level.

With regards to reaching, the claimant may reach on an occasional basis in all planes.  The basis for this reaching restriction is based on her perceived shoulder pain and the fact that she has had prior shoulder surgery and has partial thickness rotator cuff tear, she has pain in her cervical spine as well as in her lumbar spine and it is felt that reaching on a more frequent basis than occasionally in all planes would result in pain such that she would not be able to continue working and her symptoms would exacerbate.

She may lift and carry up to 10 pounds occasionally.  She may push and pull up to 20 pounds occasionally.

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website* **www.nmrco.com** ■ *email* **RockfordIMEDepartment@examworks.com**

LIB000311



The claimant may perform tasks with regards to fingering, feeling, gripping, and grasping on an occasional basis. She may benefit from voice activated software should she require any computer work. The basis for her upper extremity gripping, grasping, etc limitations are based on the fact that she has pain with her upper extremities, she has tenderness along the medial and lateral epicondyle on the left and the lateral epicondyle on the right. She has pain with resistant finger extension bilaterally at the elbow. Limiting the claimant's fingering and typing to occasional would not only take into account her perceived limitations, but also minimize any flare-ups of pain such that she would be able to function at a higher level.

It is my professional opinion that in describing these restrictions and limitations, it is important take into account the medical provider's restrictions and limitations, observations and examination findings of the claimant as well as the claimant's perceived limitations. There have been restrictions and limitations that were provided by her treating physician, Dr. Haronian in her permanent and stationary report. The work restrictions by Dr. Haronian were noted to be "cervical spine, the claimant is precluded from extended upward and extended downward gazing; lumbar spine, the claimant is precluded from repetitive bending and twisting of the lumbar spine; bilateral shoulders, the claimant is precluded from repetitive activities at or above the shoulder levels; bilateral elbows, the claimant is precluded from repetitive torquing; bilateral wrists, the claimant is precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching." Additionally, she had a QME report by Dr. Arora, which gave her restrictions of "avoid heavy lifting more than 20 pounds and reaching above her head." It is my opinion that these restrictions and limitations are accounted for in my restrictions that were noted above and that based on the claimant's ongoing pain and the fact that she has been made permanent and stationary, these restrictions would likely be permanent.

> 7. **Does the medical evidence support any side effects from the prescribed medications? If yes, please provide the supported impairments and outline how any impairment affects functional capacity?**

The medical records do not support any impairments or side effects from any medications.

> 8. **Please comment on the claimant's capacity for sustained, full-time work within these supported restrictions/limitations.**

It is my opinion based on my observation of the claimant and findings of the claimant's examination that the claimant would be able to work on a fulltime consistent basis. The claimant has had restrictions and limitations by the QME as well as her treating physicians that have been provided. The claimant was not deemed by her treating physician to be totally functionally impaired, and therefore it is presumed that the claimant would be able to work within these restrictions and limitations provided by her primary physician.

Based on my evaluation of the claimant and review of the medical records, I do not find clinical evidence that would limit the claimant's ability to work on a full-time sustained basis. The claimant can work full time, 8 hours per day, 5 days per week, for a total of 40 hours per week with the restrictions and limitations outlined in my response to question 6. The claimant has functional range of motion and the limitations that are based on her self-reported levels of pain. The MRIs of her cervical and lumbar

**4960 East State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.977.9882**
*website* **www.nmrco.com** ■ *email* **RockfordIMEDepartment@examworks.com**

LIB000312



**RE:** Vicki Collier     **NMR#:** 307803

**Page** 18

spine as well as her shoulder do not show significant changes that would limit her ability to function and her pain appears to be out of proportion to the physical exam findings. She did have a functional capacity evaluation, which indicated that she may sit for up to three hours per day, stand for up to three hours per day, and walk for up to three hours per day. While the FCE examiner opined that she was unable to work on a full-time or part-time basis, these timeframes do constitute eight hours in a day, which would be considered full time. Her primary treating physician, Dr. Haronian indicated the work restrictions that had again been outlined "precluded from extended upward and extended downward gazing, precluded from repetitive bending and twisting of the lumbar spine, precluded from repetitive activities at or above the shoulder level; precluded from repetitive torqueing; and precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching." Based on my evaluation of the claimant, the claimant has functional capability in her upper and lower extremities. She does have pain in her low back with sitting and standing, but I do not feel that these preclude her from working on a full-time basis. Her practitioners did not indicate that she was completely functional impaired, but that she would be able to return to work with restrictions if the restrictions were able to be accommodated. It is my professional opinion that if she were provided with a sit-stand desk to be able to change positions periodically as well as with voice activated software and an ergonomic workstation that these would enhance her ability to work on a sustained basis without exacerbating her symptoms. Functionally when she moved in the examination room, she did not appear to have any significant pain behaviors nor did she appear to be functionally limited such that she would not be able to carry out a full-time job within the restrictions and limitations identified above. Despite these findings of the functional capacity evaluation performed by the physical therapist, it is my opinion based on the medical records reviewed, the opinions of her treating physicians as well as my physical examination that the claimant would be able to work on a full-time sustained basis within the restrictions and limitations outlined in my response to question 6. Her physicians have also provided restrictions and limitations at which she would be able to work and it's my professional opinion that these restrictions as well as the restrictions that I have imposed are very similar and would allow her to be functional at some job within the restrictions outlined.

**CONFLICT OF INTEREST ATTESTATION:**

I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review (I do not have a contract to provide health care services to enrollees of the health benefit plan of the insurance issuer or group health plan that is the subject of this review); the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; (I do not have staff privileges at the facility where the recommended health care service or treatment would be provided if the insurance issuer's or group health plan's previous non-certification is reversed) or the developer or manufacturer

**LIB000313**

Network Medical Review Co. Ltd.
**An ExamWorks Company**

**RE:** Vicki Collier                    **NMR#:** 307803
**Page** 19

of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

Physician Advisor

Katrina Vlachos, M.D.
Board Certified in Physical Medicine & Rehabilitation
Licensed in State of CA #68888

***NMR CONFLICT OF INTEREST ATTESTATION:*** *NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

**LIB000314**



**Network Medical Review Co. Ltd.**

**An ExamWorks Company**

Friday 1/3/2020

Zoya Yarnykh, Kantor & Kantor
1050 Marina Village Pkwy, Ste 105
Alameda, CA 94501
Phone:
Fax: 510-2807564

RE:  VICKI COLLIER
Claim #: 8741789

Dear Zoya Yarnykh, Kantor & Kantor,

Lincoln Financial Group has requested that we schedule an Independent Medical Examination with a qualified examiner for your client.

The examination has been scheduled on 1/27/2020 11:00 AM - 12:00 PM with:

> KATRINA M VLACHOS, MD
> 13160 Mindanao Way
> Suite #300
> Marina Del Rey, CA 90292

| | |
|---|---|
| Specialty: | Physical Medicine & Rehabilitation |
| For Directions Only: | 310-850-2347 |
| Special Instructions: | Please arrive 15 minutes early with a photo ID. |

Please have your client contact Dr. KATRINA M VLACHOS's office to obtain directions.  Please have your client contact Lincoln Financial Group should there be questions or concerns regarding the appointment.  Lincoln Financial Group is responsible for paying for the examination; however, should your client fail to attend the IME and fail to cancel the IME within the required timeframe (3 busn days prior to the appointment), your client may be responsible for paying any missed appointment fee that is assessed to Lincoln Financial Group .

Requirements During the Independent Medical Examination.  Third party observers are not allowed in the examination room.  No recording devices will be allowed in the examination room. Failure to comply with these requirements will be deemed failure to cooperate with the examiner and/or failure to attend an Independent Medical Examination as required by the policy.

Please confirm your receipt of this letter by calling Renee Kelley at 815.964.6334 x 241106. Please feel free to contact our office if you have any questions.

*This number may be used to call for directions to the facility.  The examiner is not able to cancel or reschedule the examination.  Any concerns regarding the date and time of the appointment must be relayed promptly to Renee Kelley.

Sincerely,

Renee Kelley
NMR Scheduling Coordinator

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website* **www.nmrco.com** ■ *email* **RockfordIMEDepartment@examworks.com**

**LIB000315**



Cc:
Kimberly Murray

**4960 East State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.977.9882**
*website* **www.nmrco.com** ■ *email* **RockfordIMEDepartment@examworks.com**

**LIB000316**



7P330190432

**Northern CA Office:**

1050 MARINA VILLAGE PKWY., STE. 105
ALAMEDA, CA  94501

TEL (510) 992-6130 ▪ FAX (510) 280-7564

*www.lifeanddisabilitylaw.com*

Sender's e-mail:
zyarnykh@kantorlaw.net

November 22, 2019

**<u>VIA USPS & FACSIMILE {603.334.0419}</u>**

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group Company
*<u>Attn: Kimberly Murray, Appeal Consultant</u>*
Appeal Review Unit
P.O. Box 7213
London, KY 40742-7213

> RE:  **Appeal of Denial of LTD Benefits**
> Name:         Vicki Collier
> Claim No.:    8741789
> Plan:          Auto Club Enterprises

Dear Ms. Murray:

As you know, our office represents Vicki Collier with regard to her claim for long term disability benefits with Liberty Life Assurance Company of Boston/Lincoln Financial. We are in receipt of a notice scheduling Ms. Collier's IME with Dr. Stuart Rubin on December 20, 2019.

I write to request that this IME be rescheduled. Ms. Collier is not available on that date, and in addition, she cannot travel to Los Angeles due to her limitations in ability to sit. We request that her IME be rescheduled to somewhere closer to Valencia, CA.

In addition, please make sure to send any and all correspondence to us and not Ms. Collier, and advise your vendors to do the same. Thank you for your anticipated cooperation.

Sincerely,
KANTOR & KANTOR, LLP

Zoya Yarnykh, Esq.

LIB000317



**Northern CA Office:**

1050 MARINA VILLAGE PKWY., STE. 105   ALAMEDA, CA 94501

TEL (510) 992-6130 ▪ FAX (510) 280-7564

*www.lifeanddisabilitylaw.com*

From: Kantor and Kantor LLP

## DATE: 11/22/2019 9:12:34 AM PST

TO: Kimberly Murray, Appeal Consultant

Company: Lincoln

Reference: Claim No: 8741789

Message:
Please see the attached regarding:

Vicki Collier
Claim No: 8741789

Kim McDonald, Legal Assistant
**KANTOR & KANTOR, LLP**
T: 510.992.6131  |  F: 510.280.7564
www.kantorlaw.net

**From:** sfoley.kantorlaw@gmail.com <sfoley.kantorlaw@gmail.com>
**Sent:** Friday, November 22, 2019 9:12 AM
**To:** Kim McDonald <KMcDonald@kantorlaw.net>
**Subject:** Message from KM_C368

LIB000318



**Northern CA Office:**

1050 MARINA VILLAGE PKWY., STE. 105
ALAMEDA, CA 94501

TEL (510) 992-6130 ▪ FAX (510) 280-7564

*www.lifeanddisabilitylaw.com*

Sender's e-mail:
zyarnykh@kantorlaw.net

November 22, 2019

<u>**VIA USPS & FACSIMILE {603.334.0419}**</u>

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group Company
*Attn: Kimberly Murray, Appeal Consultant*
Appeal Review Unit
P.O. Box 7213
London, KY 40742-7213

> RE:     **Appeal of Denial of LTD Benefits**
> Name:              Vicki Collier
> Claim No.:         8741789
> Plan:              Auto Club Enterprises

Dear Ms. Murray:

As you know, our office represents Vicki Collier with regard to her claim for long term disability benefits with Liberty Life Assurance Company of Boston/Lincoln Financial. We are in receipt of a notice scheduling Ms. Collier's IME with Dr. Stuart Rubin on December 20, 2019.

I write to request that this IME be rescheduled. Ms. Collier is not available on that date, and in addition, she cannot travel to Los Angeles due to her limitations in ability to sit. We request that her IME be rescheduled to somewhere closer to Valencia, CA.

In addition, please make sure to send any and all correspondence to us and not Ms. Collier, and advise your vendors to do the same. Thank you for your anticipated cooperation.

Sincerely,
KANTOR & KANTOR, LLP

Zoya Yarnykh, Esq.

**LIB000319**





**Corporate Office**
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881

Exam Coordinators Network    A division of Genex Services, LLC        E-mail: info@ecnime.com    Web: www.ecnime.com

November 21, 2019

**Certified #: 91719999917039538207 31**
**CERTIFIED MAIL, RECEIPT REQUEST**

Michelle L. Roberts, Esq.
Kantor & Kantor, LLP
1050 Marina Village Pkwy, Suite 105
Alameda, CA  94501

ECN Number: 137563-1
Claim: 8741789
Date of Loss: 5/15/2018
Re: Vicki Collier
Exam Type: Physical Medicine & Rehab

Dear Ms. Roberts,

On behalf of Lincoln Financial, we have been requested to schedule your client for an Independent Medical Exam. This appointment has been scheduled for your client on **Friday, December 20, 2019 at 10:45 AM.**

Your client's insurance carrier has requested that he/she attend this examination in order to properly evaluate their medical condition related to their disability benefits.  Your client is not responsible for payment; please do not provide any insurance or financial information.

The provider who your client will be seeing is:

**Stuart A Rubin, MD**
**10100 Santa Monica Blvd, Suite 300**
**Los Angeles, CA  90067**
**561-738-2000**

**\*\*Please have your client fill out the enclosed intake forms and bring them to their appointment\*\***

If your client needs directions to the provider's office, please call that office directly.

*Please advise your client to bring with them to the examination a photo I.D, and if applicable, any MRI scans, X-Ray films, or other diagnostic testing studies which he/she had performed as a result of this illness or injury.*

**PLEASE NOTE: Third party observers and recording devices will <u>not</u> be allowed in the examination room. Failure to comply with these requirements will be deemed failure to cooperate with the examiner and/or failure to attend an Independent Medical Examination as required by the policy.**

If your client is unable to make this appointment at the scheduled date and time, you must notify our office at least **5 business days** prior to the examination. Should you have any questions, please give our office a call at 1-877-463-9463.

Thank you for your cooperation.

Sincerely,

*Stephanie Duran*

Stephanie Duran
Services Coordinator

Cc: Regular mail/Kimberly Murray, Lincoln Financial
Cc: Vicki Collier

**LIB000320**





Exam Coordinators Network    A division of Genex Services, LLC    E-mail: info@ecnime.com    Web: www.ecnime.com

**Corporate Office**
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881

November 15, 2019

**Certified#:   91719999991703881351031**
**CERTIFIED MAIL, RECEIPT REQUEST**

Vicki Collier
▮▮▮▮▮▮▮▮▮▮
Valencia, CA  91354

ECN Number: 137563-1
Claim: 8741789
Date of Loss: 5/15/2018
Exam Type: Physical Medicine & Rehab
Re: Disability Benefits

Dear Ms. Collier,

On behalf of Lincoln Financial, we have been requested to schedule you for an Independent Medical Exam. This appointment has been scheduled for you on **Friday, December 20, 2019 at 10:45 AM.**

Your insurance carrier has requested that you attend this examination in order to properly evaluate your medical condition related to your disability benefits.  You are not responsible for payment; please do not provide any insurance or financial information.

The provider who you will be seeing is:

**Stuart A Rubin, MD**
**10100 Santa Monica Blvd,Suite 300**
**Los Angeles, CA  90067**
**561-738-2000**

**\*\*Please fill out the enclosed intake forms and bring them along with you to your appointment\*\***

 If you need directions to the provider's office, please call that office directly.

*Please bring with you to the examination a photo I.D, and if applicable, any MRI scans, X-Ray films, or other diagnostic testing studies which you have had performed as a result of this illness or injury.*

**PLEASE NOTE: Third party observers and recording devices will <u>not</u> be allowed in the examination room. Failure to comply with these requirements will be deemed failure to cooperate with the examiner and/or failure to attend an Independent Medical Examination as required by the policy.**

If you are unable to make this appointment at the scheduled date and time, you must notify our office at least **5 business days** prior to the examination. Should you have any questions, please give our office a call at 1-877-463-9463.

Thank you for your cooperation.

Sincerely,

*Tania Istvanek*

Tania Istvanek
Services Coordinator

Cc: Regular mail/Kimberly Murray, Lincoln Financial

**LIB000321**



**Corporate Office**
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881

Exam Coordinators Network    A division of Genex Services, LLC    E-mail: info@ecnime.com    Web: www.ecnime.com

November 15, 2019

Stuart A Rubin, MD
Comprehensive Pain & Rehabilitation
10151 Enterprise Center Blvd., Suite 107
Boynton Beach, FL  33437

CLAIMANT:  Vicki Collier
CLAIM #: 8741789
ECN NO: 137563-1
DATE OF INJURY: 5/15/2018
EXAM TYPE: Physical Medicine & Rehab
CASE TYPE: Long Term Disability

Re:  Disability Benefits

Dear Dr. Rubin,

This is to confirm that an appointment for an INDEPENDENT MEDICAL EXAMINATION has been scheduled for the above named individual for **Friday, December 20, 2019** at **10:45 AM** at the following location**:**

**IME-Los Angeles (Century City)**
**10100 Santa Monica Blvd,Suite 300**
**Los Angeles, CA  90067**

The claimant was instructed to bring her films (x-rays, MRI's, etc) with her to the examination. Medical Records will follow separately.

**Please do not perform any diagnostic studies, labs, etc... without prior approval from ECN.**

**Please do not reschedule this exam. If the claimant should contact you with a request to change the appointment, please refer them to call ECN.**

Please forward your transcribed report within **5 business days** to reports@ecnime.com and bill to the address indicated on this letterhead. **Please note, if ECN's client assesses a fee due to the report not being received within the timeframe indicated above, ECN will assess the same fee to you.**

***If you expect that your fee will be more than what was originally quoted to ECN, please cease your work on the matter and notify ECN immediately with the new fee and an explanation for the increase for approval. ECN will notify you once the new fee has been approved and when you can proceed with the report.**

**\*\*Please provide your responses in numerical Question & Answer Format. Yes/No Answers are not acceptable\*\***

**Case Summary:**

Primary Diagnosis: Unspecified sprain of shoulder joint

**Questions to be addressed:**

1. Please provide a complete physical description of the claimant including her gait upon entering the office, capacity for sitting, and ability to get on and off the exam table. Correlate this with exam findings.



**Corporate Office**
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881

E-mail: info@ecnime.com     Web: www.ecnime.com

2. Are any observations or behaviors demonstrated that are inconsistent with the exam or medical records?

3. Was there any evidence of symptom magnification during the exam?

4. Comment on whether the insured's claimed pain severity and claimed functional limitations correlate with any clinical exam and/or diagnostic test findings. Does the severity and scope of claimed impairment correlate with the medical and functional evidence?

5. Please list physical impairments, if any, based on clinical exam, diagnostic test findings, and any functional evidence. For any impairment identified, please provide the clinical, diagnostic, and/or functional evidence supporting your opinion.

6. Please identify the medically-supported physical restrictions/limitations, if any. Please define by type of task [sitting, standing, lifting, fingering, etc.], as well as frequency of task [never, occasional, frequent, constant]. Include duration of physical restrictions/limitations.

7. Does the medical evidence support any side effects from the prescribed medications? If yes, please provide the supported impairments and outline how any impairment affects functional capacity.

8. Please comment on the claimant's capacity for sustained, full-time work within supported restrictions/limitations.

**Please see the following page for report requirements.**

Sincerely,

*Tania Istvanek*

Tania Istvanek
Service Coordinator





## IME Report Requirements

- The final report must include the following information: Claimant name, claim number, claimant's job title, date of disability, date of referral and primary diagnosis as reported by the claimant's treating provider, a chronological listing of the medical records received for review, a clinical summary response to the medical review questions listed above, reviewing physician's name, professional credentials, medical specialty, licensing state(s) with licensing number(s), a statement that the medical review is independent/impartial and that reviewing physician has no conflict of interest; physician signature and date.

- All reviewers must consider all of the medical information contained in the medical records sent for review. Medical information includes the claimant's own statements, reported and observed activities, medical documentation of the primary and/or secondary disabling condition(s) and the impact on the claimant's functional capacity.

- Avoid statements regarding whether the claimant is disabled or not disabled, or the claimant's capacity relative to the physical demand strength of his/her occupation or any occupation.

- Address functional capacity using the following terms: Never (0%), Occasionally (1-33% of day), Frequently (34-66% of day), Constantly (67-100% of day) or Unrestricted.  Address claimant's ability to work in regards to hours/day, days/week, or ability to function on a consistent basis. Ensure that statement of functionality is maintained in respect to medical reviewer's scope of practice.

- Address the Claimant's functional abilities and/or medically supported restrictions or limitations at a level sufficient to determine what activities the Claimant can perform and the durations the Claimant can perform those activities.

- Consider and address all medical findings in the medical opinion without deference to either "objective" or "subjective" findings.

- Any medical reviews received which suggest a claimant is not restricted or disabled because there is a lack of "objective medical evidence" will be returned for clarification and validation that the medical reviewer has reviewed and addressed subjective and objective medical information in the file. **\*\*\*Note: If a correction(s) and/or a clarification(s) is needed to the report, <u>this is NOT a billable charge</u>.**

**LIB000324**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0419

| | |
|---|---|
| Date: October 31, 2019 | |
| To: KANTOR & KANTOR<br>19839 NORDHOFF ST<br>NORTHRIDGE CA 91324 | |
| Attn: | |
| Fax: (818) 350-6272 | |
| From: Shana Cote<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-0419 | |
| Total Pages<br>(Including Cover): 3 | |
| RE:<br><br>Claim #: 8741789<br>Claimant: Vicki Collier<br><br>Auto Club Enterprises | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.º de septiembre de 2019, Liberty Life Assurance Company of Boston cambió su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto plazo recibirá un Endoso que debe adjuntarse a su póliza una vez recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

LIB000325



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0419

October 31, 2019

Kantor & Kantor
19839 NORDHOFF ST
NORTHRIDGE, CA 91324

RE:    Long Term Disability (LTD) Benefits
       Auto Club Enterprises
       Claim #: 8741789
       Claimant: Vicki Collier

To Whom It May Concern:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term
Disability (LTD) benefits under Auto Club Enterprises's Group Disability Policy.  We are writing in
reference to Vicki Collier's claim for LTD benefits under the Policy.

We have received your request for review of the recent claim determination on Vicki Collier's Long
Term Disability (LTD) claim.

Ms. Collier's file is being forwarded to Lincoln Financial Group's Appeal Review Unit for an
independent review of her claim eligibility.  Her claim will be assigned to an Appeal Consultant
who will contact you when they have completed a review of the appeal.  If you have any questions
regarding the status of the appeal prior to hearing from the Appeal Consultant, you may contact the
Appeal Review Unit at 1-888-437-7611 during the hours of 8am to 5pm Eastern Standard Time.

In accordance with the Employee Retirement Income Security Act of 1974 (ERISA), under normal
circumstances, you will be notified in writing of a final decision within 45 days from the date your
request for review was received.

If there are special circumstances requiring a delay in Lincoln Financial Group's response, you will
be notified of our decision no later than 90 days after the request for review was received.

If you have any questions regarding this correspondence, please contact me.

Sincerely,

Shana Cote
Appeals Consultant

1  of 2

**LIB000326**

Phone No.: (888) 437-7611 Ext. 16120
Secure Fax No.: (603) 334-0419

LIB000327

# EXHIBIT 1

# EXHIBIT 1

COLLIER APL 0001

LIB000328



# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex Revision Spine Surgery

- Comprehensive Spine Care



- Certified, American Board of
  Orthopedic Surgery

AAOS
- Fellow, American Academy of
  Orthopedic Surgeons


- Member, North American
  Spine Society

- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic
  Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

·

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

Kantor & Kantor
1050 Marina Village Parkway
Alameda, CA 94501

Patient Name       :       Vicki Collier
Date of Service    :       September 26, 2019
Claim #            :       17G44F696159
Employer           :       Automobile Club
Date of Birth      :       ███████████
Date of Injury     :       CT:7/13/2013-7/24/2017
File #             :       20050164

## SUPPLEMENTAL REPORT AND REVIEW OF MEDICAL RECORDS OF AN ORTHOPEDIC PRIMARY TREATING PHYSICIAN

I have received a letter provided with a copy of a document from Lincoln Financial Group.  This was for long-term disability benefits.  A claim was filed in regards to shoulder pain along with documentation from Kaiser.

The letter indicates that the medical records were not received on time and that the MRI studies were reviewed.  The MRI of the right shoulder did reveal partial thickness supraspinatus tendon tear, however, there was no supported impairment.  The MRI of the cervical spine was also reviewed within the medical records.

The letter indicates that the physical demands of an insurance agent is sedentary and light and the letter also indicates that the occupation can be completed as an insight sales agent.

The letter does not conclude the fact that the patient did have surgery and has continued to have limitations.

There is also no indication that reviewing physician has actually examined

COLLIER APL 0002

LIB000329

**Collier, Vicki**
**September 26, 2019**
**Page 2 of 4**

the patient.

The physician is not an orthopedic surgeon, but seems to be a Physical Medicine Rehabilitation Specialist. It also seems that the reviewing physician for some unknown reason has licensed to practice in five different states and perhaps performs evaluation only without actual treatment of patients. There is no indication that her range of motion was measured. The patient was declared permanent and stationary on January 31, 2019. At that time, the patient was still complaining of neck and shoulder pain. It was unlikely that the patient's condition would improve further for at least one year and that was the timing of the permanent and stationary status. In fact, the patient continued to be seen in my office and has continued to suffer from pain.

In light of the above, the patient has been seen by a pain management specialist who has been treating the patient for the continued symptoms. Range of motion measurements were performed using double electronic inclinometers on the day that the patient was declared permanent and stationary. This was in January 2019. Right shoulder flexion was 132 degrees and extension was 45 degrees. Abduction was 92 degrees and adduction was 43 degrees. Internal rotation was 64 degrees and external rotation was 81 degrees. This resulted in 8% impairment of the right upper extremity which would convert into 5% impairment of the whole person just for the right shoulder. The patient was also complaining of wrist and elbow pain and there was significant limitation in the range of motion of other body parts. Although, the disc herniation in the cervical spine was not severe, there was indication of continued radiculopathy. In fact, the patient was also seen by a medical-legal evaluator on October 2018 and a report was provided indicating that the patient has had ongoing pain to the elbow and the shoulders.

The QME indicated that the patient's complaints to the lower back and the neck were present prior to her job at the Automobile Club. However, that does not dismiss the fact that the patient has continued to suffer from pain. Her right shoulder injury was considered related to the industrial activity.

In fact the medical-legal evaluator also indicated that the patient should avoid lifting more than 20 pounds above her head, however, in my assessment, when the patient was declared permanent and stationary, I did provide work restrictions to multiple body parts including the shoulders that the patient would be precluded from working at/or above the shoulder level. It would be reasonable that the patient should avoid lifting more than 10 pounds and the patient should avoid repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching due to her wrist complaints. Considering the above, it would be reasonable to indicate that the patient will not be able to perform her previous work activities as indicated in my report from January 31, 2019.

I hope the above clarifies any ambiguities.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached*

COLLIER APL 0003

**LIB000330**

**Collier, Vicki**
**September 26, 2019**
**Page 3 of 4**

*itemized billing with ICD-10 diagnosis code(s). In order to prepare this report and complete the evaluation, time was spent without face to face with the patient. The billings reflect such time spent by the physician with the code 99358. The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Furthermore, all the information contained in this report and its attachment, if any, is true and correct to the best of my knowledge and belief, except as to information I have indicated I have received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.*

*Per labor code 139.3: If I have referred this patient for clinical laboratory, diagnostic nuclear medicine, radiation oncology, physical therapy, physical rehabilitation, psychometric testing, home infusion therapy or diagnostic imaging goods or services whether for treatment or medical-legal purposes, it should be noted that I do not have a financial interest nor does my immediate family have a financial interest with the person or in the entity that receives the referral.*

*This report is for medical/legal assessment of the injury noted and is not to be construed as a complete physical examination for general health purposes. Only those symptoms which are believed to have been involved in the injury or that might be related to the injury have been assessed by this examiner. Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385

October 1, 2019
Date

EH

COLLIER APL 0004

**LIB000331**

**Collier, Vicki**
**September 26, 2019**
**Page 4 of 4**

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 10/3/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

<u>**Patient Name:**</u> **Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 9/26/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Kantor & Kantor
1050 Marina Village Parkway
Alameda, CA  94501

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 10/3/2019 at

_____
Emily Shemwell

COLLIER APL 0005

**LIB000332**

# EXHIBIT 2

# EXHIBIT 2

COLLIER APL 0006

**LIB000333**

Questions for Dr. Kohan

Vicki Collier recently underwent a functional capacity evaluation (FCE) on September 12 and 13, 2019, in order to obtain objective measurement of her physical capacity for work. I am attaching that report to this letter for your reference. Below are the restrictions and limitations determined by Ms. Collier's performance in the FCE which can also be found on page 2 of the attached report:

## RECOMMENDED PHYSICAL DEMANDS:

| Motion | Occasional(0-33%) | Frequent(34-66%) | Constant(>67%) |
|---|---|---|---|
| Sitting | X(<30 min cont) up to 3 hours/day | | |
| Standing(dynamic) | X(<30 min cont) up to 3 hours/day | | |
| Walking | X(<30 min cont) up to 3 hours/day | | |
| Climbing | X(5 flights cont) | | |
| Bending(waist) | X(10 reps cont) | | |
| Squatting | X(10 reps cont) | | |
| Power grasping | X | | |
| Simple grasping | X | | |
| Precision grasping* | X | | |
| Fingering** | X | | |
| Reaching overhead | X(40 reps cont) | | |
| Reaching forward | X | | |
| Reaching down | X | | |
| Push | 36#(isometric) Medium | | |
| Pull | 34#(isometric) Medium | | |
| Lifting Capability: 15# | | | |
| FT/PT: The client is unable to return to work with the parameters above | | | |

*Precision grasping:   Item held away from palm, held with fingertips, pinching activities
**Fingering:   Reflects activities that would include keyboarding or other repetitive hand activity.

1.  Do you agree with the restrictions and limitations determined by the FCE results? *Yes*

2.  The FCE evaluator concludes that Ms. Collier is not physically capable of participating in full-time employment. Do you agree? *Yes*

Dated: 10/15/15

Signed: Dr. Jonathan Kohan

COLLIER APL 0007

LIB000334

# EXHIBIT 3

# EXHIBIT 3

COLLIER APL 0008

**LIB000335**

DocuSign Envelope ID: 3017D5AB-5729-4591-B31F-1FEB379B7B56

**Declaration of Vicki Collier**

I, Vicki Collier, declare as follows:

1. Each of the facts stated herein is true and correct within my personal knowledge and, if called as a witness, I would testify competently thereto.

2. I obtained a high school diploma in 2013 and also have a Property and Casualty Insurance license that I obtained in approximately 2009-2010. I have worked in the insurance industry for over 10 years, since 2007, as an insurance agent in the Sales department. My primary duty was selling policies, and all tasks associated therewith, such as providing quotes, processing applications, collecting premiums, and making sure all documentation was complete and correct. I worked for Farmers Insurance as an insurance aid/independent contractor in 2007 and an insurance agent from 2009 to 2012, then for Cumbre Insurance from 2012 to 2013, and finally, for AAA/Auto Club from 2013 until I became unable to in May of 2018.

3. My last job was with AAA/Auto Club Enterprises as an insurance agent in the Sales department. My primary duty was selling policies and memberships, which entailed providing quotes, qualifying applicants, processing applications, performing inspections of cars and property, updating policies, compiling and completing documentation of all transactions, promoting club membership benefits, and collecting premiums on a deadline. I also had to attend meetings, training workshops, and seminars. As part of my job, I was required to develop a successful sales strategy, develop leads and contacts in the industry and community, maintain a high level of expertise regarding products and services, and communicate effectively with clients and co-workers. I provided insurance policy services to members over the telephone, in person, or through written correspondence. My job required a prolonged period of sitting, key stroking, gazing at a computer, hand held telephone, standing and walking. Some bending, stooping, kneeling, squatting, pushing, and pulling.

4. Prior to my disability, I was an active person. As a teenager, I drove cross-country from California to Pennsylvania with a friend.   We drove for about five days, and I felt completely comfortable and at ease. I used to go to the Sierra Nevada Mountains, which was a family tradition for generations, stay at the cabins near Silver Lake, go hiking and exploring the outdoors, kayaking, and paddle boarding.  I have not been back in two years. Prior to my disability, I worked out at the gym for two or more hours every day. I always kept a spotless house despite being a single mother with three children and long hours at work. After I started working for AAA, I routinely worked 50-60 hours a week and was the top-performing agent at the office, as well as a top 50 agent out of 500.

LIB000336

DocuSign Envelope ID: 3017D5AB-5729-4591-B31F-1FEB379B7B56

5. While I did not have a whole lot of time due to working 50-60 hours a week to maintain a bustling social life, I still worked out every day at the gym, went out to dinner with my boyfriend three to four times a week, kept a spotless house, and had a hobby of fixing up and selling shabby-chic furniture. When my children were younger, I drove them to auditions, we went to the movies, art classes, acting classes, dance classes, they were involved in soccer and baseball, concerts, plays, vacations and spent time with family. I continued the family tradition of spending time up in the mountains when kids were younger, and we went to Silver Lake/June Lake. We used to play tennis, go to the theatre, and I used to go watch my son surf. Now that my children are grown up and either at college or living farther away, I wish I was able to see them more often, but because I cannot sit comfortably for any appreciable amount of time, my visits to see them are far and few between.

6. I was in good health until approximately 2016. During that year, I began experiencing neck, back, and bilateral shoulder pain that radiated into my arms, hands, elbows, wrists, forearms, and legs. I received four letters from different doctors requesting that my station at work be ergonomically evaluated. Those letters were ignored. It wasn't until 2018 that it was evaluated and found that it was not ergonomically correct, and recommendations were made. I was diagnosed with cervical spine radiculopathy, lumbar spine radiculopathy, bilateral rotator cuff syndrome, bilateral shoulder impingement, chronic migraines, bilateral elbow tendinitis, and bilateral wrist tendinitis. The pain progressively worsened, to the point that I had right shoulder arthroscopy surgery for rotator cuff tear, after pain medication (Norco) and cortisone injections, epidural, physical therapy, acupuncture, and chiropractic therapy proved ineffective. Despite the surgery, I still have bilateral shoulder pain. After my shoulder arthroscopy in July 2017, I returned to work on November 1, 2017. I could not sit for prolonged periods of time as it exacerbated my pain and in the end of November, I began experiencing excruciating pain in my right shoulder once again. I tried many conservative treatments for my back, neck, and shoulder pain, including NSAIDs, opiates, neuromodulators, acupuncture, physical therapy, and injections, all to no avail. The only therapy that alleviated most of my migraine headaches were Botox injections. At work, it became difficult to do almost everything, including continuous sitting, continuous typing, continuous reaching for items and gazing at the computer, and other routine movements that are common in an office setting which also then led to my left shoulder developing the same pain as my right. At home, it became difficult to do many household chores that had a continuous movement such as vacuuming, scrubbing floors, washing windows, etc. Washing and blow drying my hair is difficult, as well as a simple task of reaching behind to scratch my back. I continued working and continued to see my orthopedic doctor who administered cortisone shots to relieve the pain which would only work for a very short period of time. On May 15, 2018, my doctor recommended taking me out of work due to my chronic pain and scheduled another right shoulder surgery, and said that an MRI would have to be done to see what was going on with my left shoulder. I have not worked since then.

7. I have continued to seek treatment in order to get better and return to work. I have been prescribed Norco, Mobic, Neurontin (Gabapentin), and Voltaren gel to help with pain. I've also had Botox injections for migraines and steroid injections, epidural for shoulder pain (Kenalog). I was also recently prescribed Cymbalta for depression and to help with tingling/numbness. Since becoming unable to work and being in almost constant pain in nearly all parts of my body, it has been difficult to keep a positive outlook on life, and I am also worried about my finances as I no longer have an income I've become accustomed to, and I seem my body wasting away with muscle atrophy. I also use ibuprofen cream, Naprosyn, muscle relaxer and CBD oil on an as-needed basis. While my medications help alleviate some of my symptoms (although they do not get rid of them, only mask the problem), I have serious side effects including dry mouth, fatigue, constipation/hemorrhoids, brain fog, and difficulty sleeping. Norco and Gabapentin, and on occasion muscle relaxers in particular, make me feel as if I am in a daze when I wake up, and I have to take naps at least once a day because I feel so tired.

COLLIER APL 0010

**LIB000337**

DocuSign Envelope ID: 3017D5AB-5729-4591-B31F-1FEB379B7B56

8. I live with chronic pain which is debilitating. I have pain every day in my neck, back, both shoulders, elbows, wrists, buttocks, and legs. The pain feels electrical in nature, that travels from my upper back down my legs and feet which have a numb/tingling sensation. The pain in my buttocks and legs is so excruciating that I just want to cut my legs off (mainly my left leg). It gets worse after sitting for a period of time and standing for a period of time - my lower legs go numb. At most, I can sit for 35 minutes before my pain becomes worse. The pain also increases and travels down my back if I tilt my head up or down, or turn my head side to side. On a scale of 1-10, with 10 being the worst, my neck pain is 7-8/10. I have pain in both shoulders and am unable to sleep on either side. I often wake up with pain, finding myself on my side and have trouble sleeping. The pain in my shoulders is 7-8/10, but sometimes can be 10/10. The pain in both of my elbows radiates down to my forearms and fingers, with numbness and tingling. I have trouble moving my arms a certain way, rotating my elbows (they will just lock up) and with repetitive motion. I would rate my elbow pain as a 4-5/10. I have pain in both of my wrists that radiates down to the hands with numbness and tingling, making it difficult to perform fine motor movements such as writing or typing on a keyboard for long periods, and repetitive finger movements increase my pain, which is usually 4/10. Certain gripping, grasping, pushing, pulling, and rotating my wrists also increase my level of pain. I have pain in my upper back between the shoulder blades and in the lower back, which radiates down to my hips, buttocks, legs, and feet, with numbness and tingling. The pain worsens with sitting and standing, and the most I can sit or stand before my pain increases is 35 minutes. I would rate my back pain as a 7-8/10, and occasionally it reaches 10/10. Sometimes I have sharp pain in my knees, with pain level of 6-7/10. I also have pain, numbness and tingling in both feet, with pain being about 7/10. I lose circulation in my right fingertips and feet, with the tips and pads of my feet turning white (almost blue). My physical symptoms and inability to do the things I used to enjoy doing has caused stress, depression, and anxiety. I enjoyed my job, I was good at my job, I was competitive and I earned a substantial living.

9. My daily life involves many stretches and exercises, stretching during an exercise class held in a hot room, and trying to manage my pain. I wake up at 7-7:30am, have coffee, read the Bible for about 20 minutes, do my morning stretching, then go to the class at 9am for an hour. It takes me about 6-8 minutes to get there. After the class, I come home and do more stretching. I make a breakfast shake at 11am, walk the dog around the block, and then take a shower. I might do some light errands, light housekeeping or go visit my boyfriend at the office. After lunch, I take a nap, then maybe walk one more time either before or after dinner. Walking makes me feel better than sitting or standing, so I take my small dog around the block once or twice a day, and if I feel good enough, I will do my two-mile walk. I also do fascia therapy, cupping, and use an acupuncture mat, which seem to help relieve some of the pain for the time-being which takes a lot of my time. Because I cannot sit for longer than 35 minutes without severe pain, I cannot go visit my daughter, who goes to Cal Poly San Luis Obispo, my son in Santa Barbara, or my daughter in Georgia as often as I would like to, instead they come visit me. I have declined invitations from family to spend time together, haven't been to the mountains in over two years now, and instead of me helping my daughter, she has to come and help around the house more. My sister invited me to go to Joyce Meyers Ministry in September which I had to decline as it was a 7 hour day sitting. My dream vacation is to go to Jerusalem and I can't due to the long plane ride. My boyfriend also helps, we may go out to dinner maybe once or twice a week. Very rarely I go to the movies, and I try to avoid it because I know that sitting causes pain. I just recently traveled to Georgia to see my daughter, and I was dreading the plane flight. As I thought, it was unbearable. The plane ride was miserable with the excruciating pain in my buttocks, leg and left shoulder. I had to get up as soon as the pilot turned off the seatbelt sign. I feel as if I am doomed, that I may never be able

COLLIER APL 0011

DocuSign Envelope ID: 3017D5AB-5729-4591-B31F-1FEB379B7B56

to travel again. I feel like I am a shadow of my former self. I was a go-getter and high performer at my job, with an active lifestyle and happy relationships. I have been unable to come to terms with my current level of functioning, but I do what I can to maintain physical shape and conditioning, I am doing my best to strengthen my body, but I have noticed my body atrophying because I simply cannot do the types of activities I used to. My fitness routine is limited to stretching, light weights and walking that physical therapy has taught me, but I try to stay positive especially around my children and boyfriend.

10. I know that I can't work reliably because I cannot sit for more than 35 minutes before I am in severe pain. Standing also causes numbness in my feet and legs. I cannot type or write because repetitive motions of my hands cause intense shoulder pain. I have trouble sleeping and wake up unrefreshed because the pain is really bad at night when there are no distractions. I cannot have continuous motion with my arms and/or work at a computer in an office. I am easily fatigued, and the brain fog makes me mentally not as sharp as I used to be. If I could go back to the way I was before these physical impairments have taken charge over my life, I undoubtedly would, I miss my LIFE. I excelled at my job, had interests and hobbies, fulfilling relationships and I was happy.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on __8/13/2019__ at __Valencia__,
                                                                                        (date)              (city)
California.

DocuSigned by:

*Vicki Collier*

D1EDE33C21B14A8...
Vicki Collier

COLLIER APL 0012

LIB000339



## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 3017D5AB57294591B31F1FEB379B7B56 | | Status: Completed |
| Subject: Please DocuSign: Collier - 19-08-12 Vicki Collier Declaration.pdf | | |
| Source Envelope: | | |
| Document Pages: 4 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 2 | Initials: 0 | Michelle Roberts |
| AutoNav: Enabled | | 19839 Nordhoff ST. |
| EnvelopeId Stamping: Enabled | | 19839 Nordhoff ST. |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Los Angeles, CA  91324 |
| | | mroberts@kantorlaw.net |
| | | IP Address: 96.90.204.189 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Michelle Roberts | Location: DocuSign |
| 8/13/2019 2:46:45 PM | mroberts@kantorlaw.net | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| VICKI COLLIER | *VICKI COLLIER* | Sent: 8/13/2019 2:48:12 PM |
| colliervicki@gmail.com | DocuSigned by: | Viewed: 8/13/2019 2:56:27 PM |
| Security Level: Email, Account Authentication (None) | D1EDE33C21B14A8... | Signed: 8/13/2019 2:56:41 PM |
| | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 76.79.151.10 | |

**Electronic Record and Signature Disclosure:**
Not Offered via DocuSign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Zoya Yarnykh | **COPIED** | Sent: 8/13/2019 2:48:13 PM |
| ZYarnykh@kantorlaw.net | | |
| Security Level: Email, Account Authentication (None) | | |

**Electronic Record and Signature Disclosure:**
Not Offered via DocuSign

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 8/13/2019 2:48:13 PM |
| Certified Delivered | Security Checked | 8/13/2019 2:56:27 PM |
| Signing Complete | Security Checked | 8/13/2019 2:56:41 PM |
| Completed | Security Checked | 8/13/2019 2:56:41 PM |

COLLIER APL 0013

LIB000340

| Payment Events | Status | Timestamps |
|---|---|---|

COLLIER APL 0014

LIB000341

# EXHIBIT 4

# EXHIBIT 4

COLLIER APL 0015

LIB000342

DocuSign Envelope ID: 9DCFB278-5077-4A33-9EFF-94AE8CA1D2BD

## Declaration of Nicolette Collier

I, Nicolette Collier, declare as follows:

1. Each of the facts stated herein is true and correct within my personal knowledge, and if called as a witness, I would testify competently thereto.

2. Vicki Collier is my mother. I have known her all my life. I am 18 years old.

3. Before her physical pain, my mom was one of the most active women I have ever seen. She would wake up at 5am to get her morning workout in before she headed to work. She worked a lot of hours and most days she would even stay at work till 8pm and still make time to work out at night afterwards if she could not make it to the gym in the morning. My mom has always been on the go- she has her hands full with three children and she has a heart to help everyone. She would always put us before herself when we needed something.

4. This past year has been super difficult on my mom because of the pain in her shoulders and back that has affected her everyday life in numerous ways. Going from working many hours and exercising a couple of hours a day, my mom's exercise now consists of walking her dog around the block once or twice a day, and a lot of stretching, including stretching in a heated room. On her good day, she may walk a couple of miles as walking makes her feel better, but this is nowhere near the level of athleticism she used to have. In fact, she can't even seem to get herself up before 7am any day of the week. This past year I've had to assist my mom in some of the household chores, and I have to travel from San Luis Obispo to see her as she cannot bear the long drive. She is so low on energy and can no longer perform to the best of her ability as she used to. Her leg seems to be giving her a lot of pain along with her shoulders. She can't withstand long car rides anymore because after 30 minutes of sitting, she feels excruciating pain shooting through her leg and lower back. In order to visit my mom on weekends while I am away at college, I have to figure out rides there and back home because it is too painful for my mom to drive three hours to San Luis Obispo to visit me. While we were on a plane to visit my sister in Georgia recently, I saw the complete irritation and pain that my mother's leg was causing her during our flight. Every so often she had to get up and stretch by pacing around the plane, poking/massaging her leg, and stretching as far as she possibly could with the limited space just to get a few minutes of respite without this severe pain. The strength my mother once had is deteriorating and she seems hopeless.

COLLIER APL 0016

**LIB000343**

DocuSign Envelope ID: 9DCFB278-5077-4A33-9EFF-94AE8CA1D2BD

5. I know that she loved her job and she was very good at it, but now she is worried about finances and her future. She would win awards and trips and she truly cared about her customers (she would tell me stories about them every day when she came home- they would even bring her presents!). She made a good living, and she would never choose to have to stop working due to her pain. If she could work, she would, as she has for a very long time.

6. I believe my mom is doing whatever she can to try and make herself better but she simply can't find a way; it seems as though the pain never goes away, even after multiple trips to the doctors' office every month. She has tried several things at home in hopes that it would help her. When I visit her, I see her stretching every morning and night with a tool that she uses to massage her muscles, a ball, foam roller and acupuncture mat. I have seen my mom transform from an active, on-the-go, hard-working, and positive individual into a limited and hurting individual. She needs all the help and care for her shoulders, back and leg to become the individual and mother I KNOW she truly is.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on ___8/15/2019___ at _____, California.                                          _____
[city]                                                                                        [date]

DocuSigned by:

*Nicolette Collier*
Nicolette Collier

COLLIER APL 0017

**LIB000344**



## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 9DCFB27850774A339EFF94AE8CA1D2BD | | Status: Completed |
| Subject: Please DocuSign: Collier - 19-08-12 Nicolette Collier declaration draft 4813-1153-7824 v.1.pdf | | |
| Source Envelope: | | |
| Document Pages: 2 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 2 | Initials: 0 | Michelle Roberts |
| AutoNav: Enabled | | 19839 Nordhoff ST. |
| EnvelopeId Stamping: Enabled | | 19839 Nordhoff ST. |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Los Angeles, CA  91324 |
| | | mroberts@kantorlaw.net |
| | | IP Address: 96.90.204.189 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Michelle Roberts | Location: DocuSign |
| 8/15/2019 9:00:14 AM | mroberts@kantorlaw.net | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| NICOLETTE COLLIER | DocuSigned by:<br>MICOLETTE COLLIER<br>96DB6E83DDC44DA... | Sent: 8/15/2019 9:02:51 AM |
| nicolette.collier@ymail.com | | Viewed: 8/15/2019 9:14:35 AM |
| Security Level: Email, Account Authentication (None) | | Signed: 8/15/2019 9:15:06 AM |
| | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 76.170.114.116 | |
| | Signed using mobile | |
| Electronic Record and Signature Disclosure:<br>   Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Zoya Yarnykh | **COPIED** | Sent: 8/15/2019 9:02:51 AM |
| ZYarnykh@kantorlaw.net | | |
| Security Level: Email, Account Authentication (None) | | |
| Electronic Record and Signature Disclosure:<br>   Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 8/15/2019 9:02:51 AM |
| Certified Delivered | Security Checked | 8/15/2019 9:14:35 AM |
| Signing Complete | Security Checked | 8/15/2019 9:15:06 AM |
| Completed | Security Checked | 8/15/2019 9:15:06 AM |

COLLIER APL 0018

LIB000345

| Payment Events | Status | Timestamps |
|---|---|---|

COLLIER APL 0019

LIB000346

# EXHIBIT 5

# EXHIBIT 5

COLLIER APL 0020

**LIB000347**

DocuSign Envelope ID: 284CFCF5-1F33-41B3-9A71-48C5DD6F9724

Declaration of Duane Raha

I, Duane Raha, declare as follows:

1. Each of the facts stated herein is true and correct within my personal knowledge, and if called as a witness, I would testify competently thereto.

2. I've known Vicki Collier for almost nine years, we first met in November of 2010. We have been together the entire time and I consider her my domestic partner; we have lived in the same residence since June 2011.

3. During the first few years of our relationship, Vicki and I would travel on vacation to June Lake/Silver Lake and Mammoth via car, and Hawaii and Mexico via plane. We also did a lot of activities with friends including hiking, tennis, and running. Vicki introduced me to a healthier lifestyle which included going to the gym and doing yoga classes. She had a very friendly and outgoing personality, and was a very hard worker.

4. After a few years of working at AAA Insurance, Vicki would come home complaining of discomfort in her neck and shoulder area. It progressively got worse and I would accompany her to her doctors' visits. After several months, there were times Vicki could not sleep due to the pain she was experiencing.  Since I had several years of call center management experience, I visited her at work and suggested she make a few changes to her work space as the conditions were not ergonomically correct. In addition, based on a recommendation from one of her doctors, I purchased a special contour Memory Foam pillow to see if that would help along with two different types of Cervical Neck Traction Devices for her to try before going to bed at night. The pain continued to get progressively worse and since the pain was in her neck and shoulders, we could no longer continue our tennis or running activities, and on occasion we could only go for walks instead. The activities at the gym slowed down as did the yoga classes we attended. Our traveling is nonexistent because Vicki can no longer ride in a car for more the 30 minutes as the pain has now traveled to her lower extremities. Her recent trip to Georgia to see her daughter made her feel incapacitated for days afterwards.

5. Currently, Vicki has been off of work for over a year, and along with the pain and the changes to her lifestyle, I believe this has affected Vicki's mood because it is hard for her to no longer be able to contribute to our livelihood or do the things she once did. When she was working, Vicki was very successful and enjoyed her employment and the monetary rewards that came with the job. She often won awards and was the top salesperson in her office.

COLLIER APL 0021

LIB000348

DocuSign Envelope ID: 284CFCF5-1F33-41B3-9A71-48C5DD6F9724

6. Today our time consists of visiting doctors to see if there is anything that can be done to minimize the pain that she experiences every day. We can no longer travel as we once did, and the activities we once did together along with our friends have been greatly reduced to walks around the block and light exercises prescribed by her physicians.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on __8/23/2019__

at __Valencia__, California.                                        [date]

           [city]

DocuSigned by:

*Duane Raha*

153B72035018493...

Duane Raha

COLLIER APL 0022

**LIB000349**



## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 284CFCF51F3341B39A7148C5DD6F9724 | | Status: Completed |
| Subject: Please DocuSign: Collier - Declaration of Duane Raha draft 4846-6534-9024 v.2.pdf | | |
| Source Envelope: | | |
| Document Pages: 2 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 2 | Initials: 0 | Michelle Roberts |
| AutoNav: Enabled | | 19839 Nordhoff ST. |
| EnvelopeId Stamping: Enabled | | 19839 Nordhoff ST. |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Los Angeles, CA 91324 |
| | | mroberts@kantorlaw.net |
| | | IP Address: 96.90.204.189 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Michelle Roberts | Location: DocuSign |
| 8/23/2019 2:25:00 PM | mroberts@kantorlaw.net | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Duane Raha<br>duaneraha@gmail.com<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>*Duane Raha*<br>153B72035018493... | Sent: 8/23/2019 2:26:40 PM<br>Viewed: 8/23/2019 3:37:13 PM<br>Signed: 8/23/2019 3:39:37 PM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address: 76.79.151.10 | |

**Electronic Record and Signature Disclosure:**
Not Offered via DocuSign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Zoya Yarnykh<br>ZYarnykh@kantorlaw.net<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 8/23/2019 2:26:40 PM |

**Electronic Record and Signature Disclosure:**
Not Offered via DocuSign

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 8/23/2019 2:26:40 PM |
| Certified Delivered | Security Checked | 8/23/2019 3:37:13 PM |
| Signing Complete | Security Checked | 8/23/2019 3:39:37 PM |
| Completed | Security Checked | 8/23/2019 3:39:37 PM |

COLLIER APL 0023

LIB000350

| Payment Events | Status | Timestamps |
| --- | --- | --- |

COLLIER APL 0024

LIB000351

# EXHIBIT 6

# EXHIBIT 6

COLLIER APL 0025

**LIB000352**



**Northern CA Office:**

1050 MARINA VILLAGE PKWY., STE. 105
ALAMEDA, CA 94501

TEL (510) 992-6130 • FAX (510) 280-7564

*w w w . l i f e a n d d i s a b i l i t y l a w . c o m*

Sender's e-mail:
mroberts@kantorlaw.net

July 16, 2019

**VIA USPS & EMAIL {Requestrecords@Synapsedoctor.com}**

Synapse Orthopedic Group
5651 Sepulveda Blvd., Suite 201
Sherman Oaks, CA 91411

**RECEIVED**
**JUL 23 2019**
BY:_____

**RE:    Request for Medical Records**

Dear Madam or Sir:

**Dr. Edwin Haronian and Dr. Jonathan Kohan, Synapse Orthopedic Group**, provided medical care for Vicki Collier, D.O.B. ▮▮▮▮▮ who has retained our firm for legal assistance regarding her long-term disability benefits. Ms. Collier has authorized Kantor & Kantor, LLP to obtain such medical information and use it to assist her with her claim by submitting those records to her insurer.

I am writing to request copies of **all medical records**, including those containing: initial consultation, history, examination, diagnosis, nurses' notes, physicians' notes, summaries, laboratory reports, test reports, x-rays, CAT scans, EKGs, EEGs, treatment and prognosis. Our firm specifically requests all records from **February 26, 2019 to present**.

Attached, you will find a signed release by Ms. Collier authorizing your release of these records. If there is a fee for completion of these records, please send the invoice to me at the address or fax number above. Should you have any questions relative to this request, please contact us at 510.992.6130.

Yours truly,

KANTOR & KANTOR, LLP

Michelle Roberts

COLLIER APL 0026

## HIPAA COMPLIANT AUTHORIZATION FOR THE
## RELEASE AND/OR DISCUSSION OF MEDICAL RECORDS

### Patient Information

Patient Name:              Vicki Collier

Social Security Number: ████████████

Birth Date:              ████████████

### Authorization

1.   I, _____Vicki Collier_____, hereby
     *(Name of Patient or Legally Authorized Representative)*
     ▶R. EDWIN HARDNIAN , DR. JONATHAN KOHAN
     authorize: ____SYNAPSE ORTHOPEDIC GROUP____
     *(Name of Physician or Facility)*

2.   To release to or discuss with: Kantor & Kantor LLP _____

     ☒ In emergency, release via fax: ___(818) 350-6272_____

     ☐ In emergency, do not release via FAX_____

3.   The following information:    ☒ Complete Medical Record

     ✓ Radiologic Records    ✓ Outpatient Care Record    ✓ Inpatient Care Record

     ✓ Test Results    ✓ Laboratory Results    ✓ Disability Information

4.   If my record contains the following information, it is also released if
     **INITIALED below**:

     ____ Mental Health Treatment/Psychiatric Notes        ____ Substance Abuse

     ____ HIV Testing or Treatment

5.   The Information Release is for the purpose of: ___insurance benefits___.

Page 1 of 2

COLLIER APL 0027

LIB000354

**Signature**

[X]   I have carefully read and understand the above information, and do herein consent to its disclosure. I am aware that information regarding my medical condition will be released to those persons or organizations named above. I further release the agencies and/or clinicians named above from any liability arising from the release of this information, provided the said release of information is done substantially in accordance with applicable law.

[X]   I understand that this consent is subject to revocation, in writing, at any time, unless action based on it has already begun. This authorization expires on _____ (insert applicable date or event). If no date is indicated, the Authorization will expire 24 months after the date of my signing this form.

[X]   It is understood that this information is confidential and should be treated as such by the parties herein named. I further understand that once this information is disclosed, it may no longer be protected by federal privacy rules and may be re-disclosed by the recipient.

Signed:   _Vicki Collier_____
Vicki Collier

Date:   _July 8, 2019_____

Page 2 of 2

COLLIER APL 0028

ROBERT L. PALTY

ATTORNEY AT LAW

A PROFESSIONAL CORPORATION

ENCINO OFFICE PARK 1, SUITE 211
6345 BALBOA BOULEVARD
ENCINO, CALIFORNIA 91316

(818) 705-9010   (800) 992-1990
(818) 705-9015 (FACSIMILE)

January 7, 2019

Edwin Haronian, M.D.
*5651 Sepulveda Blvd #201*
*Sherman Oaks, CA 91411*

**RE: VICKI COLLIER vs. AUTO CLUB**
DATE OF INJURY: CT: 07/13/13 - 07/24/2017
CASE NO.: ADJ11297306

Dear Dr. Haronian,

Enclosed please find the *Qualified Examination Report from Ripu Arora, M.D. dated October 24, 2018* for your review and comment.

Should you have any further questions, please feel free to contact our office. Thank you for your courtesy and cooperation.

Very truly yours,

**ROBERT L. PALTY**

RLP/mc

cc: Vicki Collier

COLLIER APL 0029

LIB000356

**Ripu Arora, M.D.**
**Diplomate, American Board of Anesthesiology,**
**Pain Management, Qualified Medical Evaluator**

October 24, 2018

Mr. Robert Palty, Attorney-at-Law
LAW OFFICE OF ROBERT L. PALTY
6345 Balboa Boulevard, Building 1, Suite 211
Encino, CA 91316

Mr. Bruce Little, Attorney-at-Law
LAW OFFICES OF PARKER & IRWIN
348 West Hospitality Lane, Suite 202
San Bernardino, CA 92408-3242

Mr. Miguel Mendoza, Claims Adjuster
CANNON COCHRAN MANAGEMENT SERVICE, INC.
P.O. Box 53550
Irvine, CA 92619

## PANEL QUALIFIED MEDICAL EVALUATOR SUPPLEMENTAL REPORT
## IN PAIN MANAGEMENT

| | |
|---|---|
| RE: | COLLIER, VICKI |
| Case #: | 20623720 |
| DOB: | |
| Date of Injury: | CT 07/13/2013 - 07/24/2017 |
| WCAB Case #: | ADJ11297306 |
| Claim #: | 18719439 |
| Panel #: | 7202878 |
| Employer: | Automobile Club of America |

To Whom It May Concern:

This supplemental report is in response to additional records forwarded for my review and comments. Preparation of this report required additional review of my previous reports along with review of our office files. As you are aware, I examined Vicki Collier on October 11, 2018, for a Panel Qualified Medical Evaluation in Pain Medicine.

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800) 458-1261   Fax: (916) 920-2515

JAN 0 7 2019

COLLIER APL 0030

LIB000357

COLLIER, Vicki
October 24, 2018
Page 2

---

**BILLING STATEMENT:**

This report is submitted pursuant to 8 Cal. Code Regs. Section 9795 (b) & (c) as an ML106, billed for each quarter hour. Information provided for the supplemental report were received after the initial report had been dictated or they were not made available prior to the initial examination. Total time spent was eighteen hours.

**REVIEW OF RECORDS:**

1.   5/8/02 - 1/26/15, Facey. This is a group of flow sheets, nursing notes, orders and message/call logs, internal medicine office visits, MED/PED progress notes, urgent care progress notes, handwritten office visits, handwritten medical advice records, reviewed page by page, approximately 350 pages, noting treatment for/diagnoses of neoplasm, right cheek; bunion on the right; ovarian cyst; lump of skin, right inner auricle; acne; hernia; anxiety, dermatitis, liver cyst, suspicious dermatologic lesions, UTI; anxiety and depression, dyspepsia; gastritis, fibrocystic breast, hemorrhoids, abnormal labs, lipoma, mole, decreased hearing loss, left ear, otitis media with effusion, onychomycosis, left ear muffling with dizziness, sinusitis. Nothing pertinent from a pain management standpoint.

2.   6/20/02 - 12/5/07, Facey. This is a group of surgery progress notes and encounters, reviewed page by page, approximately 30 pages, noting treatment for basal cell carcinoma, left upper back; lentigines on anterior thighs; actinic keratosis, shotty inguinal lymphadenopathy, umbilical hernia repair. Nothing pertinent from a pain management standpoint.

3.   8/14/02, Mary Kasem, MD, family practice. This is an office visit. Subjective complaints note **upper and mid back pain and stiffness**; occasional chest tightness with deep breathing; carries 2-year-old daughter, mostly on left side. Objectively, **back pain on the left side with lateral rotation and flexion.** The diagnoses are **chronic upper back pain**; reactive airway disease; history of hyperlipidemia. Treatment plan indicates albuterol; home exercise plan; referral to chiropractor; chest x-ray; labs; spirometry test; follow up exam. Work status is not noted.

4.   8/14/02 - 7/15/15, Facey. This is a group of ECG strips, reviewed page by page, 12 pages. Nothing pertinent from a pain management standpoint.

5.   8/23/02, Facey. This is a spirometry report, one page.

COLLIER APL 0031

LIB000358

COLLIER, Vicki
October 24, 2018
Page 3

6.      8/23/02, George Paranay, MD, radiology. This is a chest x-ray.

7.      9/11/02 - 2/25/15, Facey. This is a group of annual exams, OB/GYN progress notes, handwritten exams, pap results, colposcopy worksheets, letters and phone calls, reviewed page by page, approximately 75 pages, with nothing pertinent from a pain management standpoint and noting abdominal pain, probably unrelated to gynecology. Nothing pertinent from a pain management standpoint.

8.      10/10/02 - 11/2/05, Unilab. This is a group of lab reports, reviewed page by page, 16 pages, with nothing pertinent from a pain management standpoint.

9.      10/17/02, Martin Applebaum, MD, radiology. This is a pelvic ultrasound.

10.     10/17/02, Ramon Quesada, MD, radiology. This is a bilateral mammogram.

11.     12/4/02, Mary Haynes, RNP, family practice. This is a MED/PED progress note. Subjective complaints note **pulled muscle doing pull-ups with severe pain on lateral aspect of left chest and painful to palpation; small lump in axilla where pain is located.** Objectively, **palpatory pain at the base of axilla with soft tissue lump in the area.** The diagnosis is **costochondritis versus muscle strain.** Treatment plan indicates **ibuprofen; Vicodin;** ice, then heat. Work status is not noted.

12.     1/14/03, Ramon Quesada, MD, radiology. This is a chest x-ray.

13.     1/23/03, David Shaw, MD, specialty not noted. This is an urgent care visit. Subjective complaints note **low back pain with tingling in lower extremities; four days post umbilical hernia repair.** Objectively, **positive tenderness and spasm in the lumbosacral region at the level of L4-S1.** The diagnosis is **back spasm.** Treatment plan indicates **Flexeril.** Work status is not noted.

14.     5/14/03, Martin Applebaum, MD, radiology. This is a pelvic ultrasound.

15.     8/26/03, Unilab. This is a urinalysis report, one page.

16.     1/21/04, Martin Applebaum, MD, radiology. This is a pelvic ultrasound.

17.     4/9/04, Martin Applebaum, MD, radiology. This is a bilateral mammography.

COLLIER APL 0032

LIB000359

COLLIER, Vicki
October 24, 2018
Page 4

18.    12/15/04, Timothy Sprague, MD, radiology.  This is a chest x-ray.  The impression is hyperinflation; no evidence of acute cardiopulmonary disease.

19.    1/17/05, Martin Applebaum, MD, radiology.  This is a pelvic ultrasound.

20.    1/31/05, Henry Shih, MD, radiology.  This is a right breast ultrasound.

21.    2/10/05, Stella Tanedo, MD, internal medicine.  This is a MED/PED progress note. Subjective complaints note **left upper back pain;** lymph nodes in breast and groin. Objectively, **tenderness to palpation over rhomboid region.**  The diagnoses are **back pain;** fatigue with history of upper respiratory tract infection; mild suppression of white count.  Treatment plan indicates labs; **capsaicin cream;** follow up exam in three months. Work status is working.

22.    2/17/05, Mary Chau, MD, specialty not noted.  This is an urgent care MED/PED progress note.  Subjective complaints note **midsternal chest pain, 4/10; palpitation sensation; left shoulder scapular pulled muscle pain.**  Objectively, **"right" subscapular muscle spasm with reproducible pain.**  The diagnoses are **atypical chest discomfort with biphasic T wave; left subscapularis muscle strain.**  Treatment plan indicates **Flexeril;** labs; ECG; follow up with primary medical doctor.  Work status is working.

23.    2/21/05, Stella Tanedo, MD, internal medicine.  This is a MED/PED progress note. Subjective complaints note **continuous upper left back pain; chest pain that has resolved;** sensation of feeling hot; abdominal bloating and gas.  Objectively, exam is unremarkable.  The diagnoses are **history of left upper back pain with mild improvement; however, persistent pain; atypical chest pain.**  Treatment plan indicates labs; stool; referral to physical therapy; follow up exam.  Work status is working.

24.    3/1/05 – 12/26/06, Facey.  This is a handwritten initial physical therapy visit and a group of handwritten treatment logs, reviewed page by page, approximately 15 pages, noting treatment for the back and left shoulder.

25.    11/30/05, Lloyd Wagner, MD, radiology.  This is a transabdominal and transvaginal pelvic ultrasound.

26.    1/9/06, Gregory Paranay, MD, radiology. This is a bilateral mammogram.

LIB000360

COLLIER, Vicki
October 24, 2018
Page 5

27.    4/3/06 – 3/11/15, Quest Diagnostics. This is a group of urinalysis reports and cultures, reviewed page by page, 24 pages, with nothing pertinent from a pain management standpoint.

28.    8/15/06, Facey. This is a hearing test, one page.

29.    9/7/06 – 3/11/15, Quest Diagnostics. This is a group of lab reports, reviewed page by page, 39 pages, with nothing pertinent from a pain management standpoint.

30.    10/25/06, Joan Rhee, NP, MD, specialty not noted. This is a MED/PED progress note. Subjective complaints note **upper back with feeling of tightness; upper mid gastric area and lower abdominal pain;** stress; hearing loss; increased bowel sounds. Objectively, weight 124 pounds, temperature 98.2F, pulse 64, respiration 16, blood pressure 110/68; **slight tenderness to palpation, upper back and trapezius muscle area bilaterally; slight tenderness to palpation, upper mid gastric area.** The diagnoses are **upper mid gastric pain; lower abdominal pain with increased gas pattern; history of upper back pain and neck pain secondary to stress and anxiety.** Treatment plan indicates ranitidine; Levsin; barium enema; **Flexeril;** labs; referral to physical therapy; follow up exam with primary care physician. Work status is not noted.

31.    11/2/06, Stella Tanedo, MD, specialty not noted. This is a MED/PED progress note. Subjective complaints note **upper back and neck pain; upper mid gastric area and lower abdominal pain;** stress; hearing loss; hyperactive bowel sounds. Objectively, **slight tenderness to palpation, upper mid gastric area.** The diagnoses are gastritis; **history of upper back pain and neck pain secondary to stress and anxiety.** Treatment plan indicates Protonix; **Flexeril;** abdominal ultrasound; bland diet; follow up exam. Work status is not noted.

32.    11/14/06, Quest Diagnostics. This is a stool culture, reviewed page by page, 2 pages, with nothing pertinent from a pain management standpoint.

33.    12/8/06, Barry Wilen, MD, radiology. This is a transvaginal pelvic ultrasound.

34.    1/26/07, Timothy Sprague, MD, radiology. This is a bilateral mammography.

35.    2/13/07, Mary Kasem, MD, family practice. This is a progress note to establish care. Subjective complaints note **back pain on and off for several months; history of scoliosis.** Objectively, **tenderness to deep palpation along the paralumbar spine and parathoracic spine.** The diagnosis is **back pain.** Treatment plan indicates home exercise

COLLIER APL 0034

LIB000361

COLLIER, Vicki
October 24, 2018
Page 6

plan; labs; referral to physical therapy; back x-ray; follow up for complete physical. Work status is not noted.

36.  2/21/07, Stuart Shear, MD, dermatology. This is a dermatology note, one page, noting actinic keratosis.

37.  2/23/07, Quest Diagnostics. This is a Pap test with nothing pertinent from a pain management standpoint

38.  3/14/07, Quest Diagnostics. This is a biopsy of the cervical and endocervical epithelial tissue with nothing pertinent from a pain management standpoint.

39.  4/15/07, Yongmoon Park, MD, specialty not noted. This is an urgent care progress note. Subjective complaints note redness, swelling and tenderness of left fourth finger with pus discharge. Objectively, left fourth finger redness, tenderness and pustules coming out of fingernail. The diagnoses are paronychia; cellulitis of left fourth finger. Treatment plan indicates culture; Keflex; follow up to primary care physician. Work status is not noted.

40.  4/15/07, Quest Diagnostics. This is a culture of wound left fourth finger, reviewed page by page, 3 pages that shows light growth of gram positive cocci.

41.  6/5/07, Shendee Teng, MD, radiology. This is an abdominal ultrasound.

42.  10/5/07, Mary Kasem, MD, family practice. This is an office visit. Subjective complaints note **numbness and pain, left arm, off and on for last couple months; symptoms usually start in neck and shoulder with radiation down the left arm; symptoms are worse with stress or poor posture; scoliosis is bothering her; left leg shorter than right by .5 inch; back pain.** Objectively, exam is unremarkable. The diagnosis is **44-year-old female with multiple musculoskeletal complaints;** stress; insomnia. Treatment plan indicates avoid heavy lifting; ice, then heat; home exercise plan; **Tylenol; NSAIDs; Vicodin; muscle relaxer;** referral to orthopedics; follow up exam. Work status is not noted.

43.  10/18/07, Shendee Teng, MD, radiology. This is an entire spine x-ray. The impression is very mild reversal of the cervical curvature; minimal end plate osteophyte formation; mild demineralization; no other significant finding.

COLLIER APL 0035

LIB000362

COLLIER, Vicki
October 24, 2018
Page 7

44.     11/28/07, James Kayvanfar, MD, orthopaedic surgery. This is a handwritten office visit. Subjective complaints note painful popping, left hip with range of motion; neck pain with radiation into left scapula. Objectively, left shoulder and torso not level; positive Spurling's test; positive pain left cervical paraspinals; left shoulder popping on range of motion. The diagnoses are cervical spondylosis with probable upper cervical radiculopathy with left scapular ?; left shoulder popping; minimal scoliosis thoracolumbar spine; lower back pain at L4; left hip pain and crepitus. Treatment plan indicates x-ray of left hip, x-ray of cervical spine.

45.     12/5/07, James Kayvanfar, MD, orthopaedic surgery. This is a handwritten note. Treatment plan indicates MRI cervical spine.

46.     12/7/07, Gregory Paranay, MD, radiology. This is a transabdominal and transvaginal pelvic ultrasound.

47.     2/19/08, Mary Kasem, MD, family practice. This is an office visit. Subjective complaints note **recurrent right elbow pain;** symptomatic bunions; **recurrent back pain.** Objectively, exam is unremarkable. The diagnosis is **right elbow tendinitis.** Treatment plan indicates **NSAIDs;** ACE wrap; x-ray (claimant did not come back for this); referral to orthopedics. Work status is not noted.

48.     3/19/08, Timothy Sprague, MD, radiology. This is a right foot x-ray. The impression is negative.

49.     4/8/08, Martin Applebaum, MD, radiology. This is a mammography.

50.     6/25/08, Jeffrey Lee, DPM, podiatry. This is a podiatry note. Subjective complaints note **painful bump to the right foot; pain with wearing tight shoes.** Objectively, **soft tissue mass, which is mobile, medial aspect, right, foot, proximal to the first metatarsophalangeal joint, significantly smaller than last visit.** The diagnoses are **ganglion cyst; pain.** Treatment plan indicates cyst aspiration to be scheduled for follow up exam. Work status is not noted.

51.     6/25/08, Gregory Paranay, MD, radiology. This is a right foot weight-bearing x-ray. The impression is pes planus; soft tissue prominence about the right first metatarsal; no acute bony changes.

52.     7/2/08, Jeffrey Lee, DPM, podiatry. This is a podiatry note. Subjective complaints note follow up of ganglion cyst aspiration, right foot with irritation while exercising.

COLLIER APL 0036

LIB000363

COLLIER, Vicki
October 24, 2018
Page 8

Objectively, small soft tissue mass, medial aspect, right foot, proximal to the first metatarsophalangeal joint. The diagnoses are ganglion cyst; pain. Treatment plan indicates cyst aspiration; dry sterile dressings; follow up exam. Work status is not noted.

53.    8/27/08, Jeffrey Lee, DPM, podiatry. This is a podiatry note. Subjective complaints note follow up of ganglion cyst aspiration, right foot with cyst appearing to be growing back; pain with pressure, right foot. Objectively, small soft tissue mass, medial aspect, right foot, proximal to the first metatarsophalangeal joint, significantly smaller than last visit. The diagnoses are ganglion cyst; pain. Treatment plan indicates cyst aspiration; Band-Aid application. Work status is not noted.

54.    8/27/08, Maher Sadra, MD, general surgery. This is a surgery progress note. Subjective complaints note history of umbilical hernia repair; pain around belly button; mild pain 5 cm above belly button. Objectively, tiny hernia, 3 cm above belly button; shotty lymphadenopathy, saphenofemoral veins. The diagnosis is possible small ventral hernia; bilateral inguinal lymphadenopathy. Treatment plan indicates observation; follow up in six months. Work status is not noted.

55.    9/12/08, Barry Wilen, MD, radiology. This is a transabdominal and transvaginal pelvic ultrasound.

56.    10/13/08, Jeffrey Lee, DPM, podiatry. This is a podiatry note. Subjective complaints note follow up of ganglion cyst, right foot with cyst appearing to be growing back; pain with pressure, right foot. Objectively, small soft tissue mass, medial aspect, right foot, proximal to the first metatarsophalangeal joint. The diagnoses are ganglion cyst; pain. Treatment plan indicates cyst aspiration; Band-Aid application. Work status is not noted.

57.    10/23/08, David Broumandi, MD, radiology. This is a pelvic ultrasound.

58.    11/17/08, Christopher Hougen, MD, family practice. This is an urgent care visit. Subjective complaints note **left elbow laceration with swelling and redness that is getting worse**. Objectively, erythematous left elbow; swelling of superficial skin going around left elbow, 4-5 cm around. The diagnosis is left elbow cellulitis. Treatment plan indicates Keflex; Bactrim double strength; follow up exam. Work status is not noted.

59.    3/2/09, Jeffrey Lee, DPM, podiatry. This is a podiatry note. Subjective complaints note follow up of ganglion cyst, right foot with cyst appearing to be growing back and pain;

COLLIER APL 0037

LIB000364

COLLIER, Vicki
October 24, 2018
Page 9

pain wearing tight shoes.  Objectively, small soft tissue mass, medial aspect, right foot, proximal to the first metatarsophalangeal joint.  The diagnoses are ganglion cyst; pain. Treatment plan indicates wearing wider shoes.  Work status is not noted.

60.    4/8/09, Gregory Paranay, MD, radiology.  This is a bilateral mammogram.

61.    6/30/09, Quest Diagnostics.  This is a biopsy of endometrial tissue pathology report.

62.    10/12/09, Jeffrey Lee, DPM, podiatry.  This is a podiatry note.  Subjective complaints note ganglion cyst, right foot; fungus, right great toenail.  Objectively, thickened right hallux nail; no ganglion cyst is seen.  The diagnoses are ganglion cyst, resolved; onychomycosis.  Treatment plan indicates follow up as needed.  Work status is not noted.

63.    10/12/09, Mary Kasem, MD, family practice.  This is an office visit.  Subjective complaints note **recurrent tingling in bilateral feet; back pain**.  Objectively, exam is unremarkable.  The diagnosis is 46 year old female with anxiety, **back pain**, acne. Treatment plan indicates referral to dermatology; stress reduction; relaxation exercises. Work status is not noted.

64.    10/12/09, Edward Gabriel, MD, radiology.  This is a lumbar spine, five view x-ray.  The impression is transitional L5 segment with slight asymmetry of the facet joints. Otherwise, normal study.

65.    12/2/09, Mary Kasem, MD, family practice.  This is an office visit.  Subjective complaints note **back pain**.  Objectively, exam is unremarkable.  The diagnosis is **lower back pain**. Treatment plan indicates referral to chiropractor; labs; complete physical.  Work status is not noted.

66.    2/15/10, Zinat Choudhury, MD, specialty not noted.  This is an office visit.  Subjective complaints note **right elbow injury with right elbow pain, swelling, decreased range of motion and difficulty weight bearing**.  Objectively, **localized swelling with decreased range of motion, "left elbow"**.  The diagnosis is **sprain versus small avulsion fracture, ulna**.  Treatment plan indicates rest; ice; elevation; **ibuprofen;** follow up exam.  Work status is not noted.

67.    3/2/10, Mary Kasem, MD, family practice.  This is an internal medicine office visit. Subjective complaints note **recurrent pain and swelling of the right elbow; multiple injections without much improvement**.  Objectively, **localized swelling, right elbow**.

COLLIER APL 0038

COLLIER, Vicki
October 24, 2018
Page 10

The diagnosis is **elbow tendonitis**. Treatment plan indicates rest; ice; **anti-inflammatories**; brace; avoid aggravating activities; referral to orthopedics. Work status is not noted.

68.    4/12/10, Edward Gabriel, MD, radiology. This is a bilateral mammogram.

69.    5/10/10, Robert Roth, MD, orthopedics. This is an orthopedics consultation. Subjective complaints note two year history of right LHE pain with three steroid injections relieving pain temporarily; lower back pain. Objectively, slight erythema to the right LHE; some defect to the common extensor origin in this area; severe pain to lateral right elbow; positive Cozen's test on the right; x-rays show slight calcification to the common extensor origin. The diagnosis is strain, right elbow common extensor origin. Treatment plan indicates tennis elbow strap; heat; home exercise plan; massage; rest; anti-inflammatories; follow up exam.

70.    7/20/10, Christopher Cummings, MD, radiology. This is a pelvic ultrasound.

71.    7/21/10, Edward Gabriel, MD, radiology. This is a right breast ultrasound.

72.    8/30/10, Linda Mar, MD, radiology. This is a pelvic ultrasound.

73.    11/11/10, Linda Mar, MD, radiology. This is a pelvic ultrasound.

74.    12/8/10, Maher Sadra, MD, surgery. This is a surgical consultation, reviewed page by page, one page, noting abdominal scar tissue, no hernia.

75.    10/10/11, Christopher Cummings, MD, radiology. This is a bilateral diagnostic mammogram.

76.    2012 - 2018, Kaiser Permanente. This is a series of flow sheets, nursing notes, orders and message/call logs, internal medicine office visits, progress notes, urgent care progress notes, new member forms, and lab results, reviewed page by page, approximately 535 pages, noting treatment for / diagnosis of: bunion on foot, umbilical hernia, ADD, liver cyst, pap smear, vaccines, abnormal labs, anxiety, enlarged uterus, pap smear, menorrhagia, screening for cancer (breast, cervix, colon cancer, skin), colposcopy, heart palpitations, melanocytic nevus, rash, acne, bilateral dry eye, bilateral epiphora, disorder of refraction, UTI, dehydration, low potassium, syncope, palpitations, postmenopausal bleeding, dermatitis, vaginal bleeding, eye discharge and redness, history of basal cell skin cancer, skin infection, rectal bleeding, cough, sore throat, right

COLLIER APL 0039

LIB000366

COLLIER, Vicki
October 24, 2018
Page 11

conjunctival cyst, postmenopausal atrophic vaginitis, genital wart, HPV screening, herpes simplex screening, onychomycosis, and vaginal irritation. Nothing pertinent from an orthopedic standpoint noted.

77.    7/17/12, Alan Karpman, MD, radiology.    This is an abdominal ultrasound.

78.    9/30/12, Christopher Stephens Patton, MD, radiology.    This is a pelvic ultrasound.

79.    11/08/12, Odin Ho Chan, MD, ob-gyn.    This is the results of a colposcopy.

80.    3/24/14, Vijayanti Kanker Reddy, MD, radiology.    This is an electrocardiogram.

81.    8/29/14, Esther Chuanwah Wang-O'Connell, MD, specialty not noted. This is a progress note.  Subjective complaints note anxiety; gets palpitations and has difficult time concentrating at work; **neck and low back pain for several months**; spot on nose that never heals.  Objectively, BP 98/59; pulse 66; respirations 16; height 5'6"; weight 129 pounds.  The diagnoses are **neck pain**; anxiety; **back pain**; melanocytic nevus. Treatment plan indicates heat/ massage/ stretch for neck; physical therapy; given number to Kaiser mental health; dermatology. Work status is not noted.

82.    1/26/15, Linda Mar, MD, radiology. This is a bilateral foot x-ray. The impression is mild bilateral hallux valgus deformities; no evidence of acute fracture or dislocation; mild degenerative changes at the bilateral fist metatarsophalangeal joint.

83.    2/2/15, Christopher Cummings, MD, radiology. This is a bilateral mammogram.

84.    2/6/15, Christopher Cummings, MD, radiology. This is a pelvic ultrasound.

85.    2/27/15, Shohreh Sayani, DPM, podiatry. This is a new patient office visit. Subjective complaints note right foot bunion x 4 years; mild dull non-radiating pain in the morning with first step in right foot; toenail discoloration of both feet, distal tips (nail fungus); thickness at the end of toenails; may have limb length discrepancy. Objectively, subluxation of first MPJ bilateral feet with decreased range of motion and hypermobility at the first metatarsal cuneiform; pronated gait, left foot significantly compared to the right. The diagnoses are lower limb length difference; bunion, right; onychomycosis. Treatment plan indicates bone length x-ray studies; Ciclopirox external solution; custom-made orthotics. Work status is not noted.

COLLIER APL 0040

LIB000367

COLLIER, Vicki
October 24, 2018
Page 12

86.    3/11/15 – 7/9/15, Jihad Batah, MD, gastrointestinal. This is a group of GI office visits and a colonoscopy appointment cancellation, reviewed page by page, approximately 6 pages, noting screening for colonoscopy with a cancellation of the procedure one time.

87.    3/27/15, Rebecca Patterson-Judd, MD, internal medicine. This is an office visit. Subjective complaints note **right shoulder pain; limited range of motion of the right shoulder with outstretched distance then lifting.** Objectively, right shoulder range of motion in forward flexion and abduction is abnormal. The diagnosis is **elbow enthesopathy.** Treatment plan indicates home exercise plan; ice the area; **NSAIDs;** follow up exam. Work status is not noted.

88.    4/14/15, Maritess Zareno, NP, nurse practitioner. This is an office visit. Subjective complaints note **several months of right shoulder pain in the deltoid area; pain in the right proximal forearm and posterior area above the elbow; pain is worse with sleeping and cannot sleep on right side; unable to sleep due to pain; upper back and neck pain; does a lot of typing.** Objectively, **tenderness to palpation of the right proximal dorsal aspect of forearm; tenderness to palpation of right medial epicondyle; pain is elicited on active internal rotation without resistance, elevation through forward flexion without resistance and during and impingement test.** The diagnoses are **shoulder pain, right deltoid; arm pain, dorsal mid FA and medial/posterior elbow.** Treatment plan indicates right shoulder x-rays; orthopedics referral; **Medrol pack; Norco;** follow up exam. Work status is not noted.

89.    4/14/15, Ruben Brechner, MD, radiology. This is a right shoulder x-ray. The impression is no acute osseous injury.

90.    4/14/15, Ruben Brechner, MD, radiology. This is an x-ray of bone length. The impression is femur length on the right 45.6 cm and left 44.9 cm; tibial length on the right 36.75 cm and left 36.7 cm.

91.    5/29/15, Charles Young, MD/Rebecca Patterson-Judd, MD, orthopedics. This is an orthopaedic consultation. Subjective complaints note right shoulder pain, up to 10/10, that is localized over the anterolateral shoulder and deltoid region and made worse with overhead activities, working out and sleeping on the right side; right shoulder stiffness; right shoulder pain radiates into the right elbow area; lower back pain; tinnitus. Objectively, tenderness to palpation in the right acromioclavicular joint; positive Neer's on the right; right shoulder range of motion 180/180/75/T12, 100/30 at 90 deg abduction; right elbow moderate tenderness to palpation at the lateral epicondyle; right elbow range of motion 0/140, 80/80 pronation/supination. The diagnoses are

COLLIER APL 0041

LIB000368

COLLIER, Vicki
October 24, 2018
Page 13

subdeltoid bursitis, right; right lateral epicondylitis.  Treatment plan indicates injection into right subacromial space; arthro aspiration major joint bursa; activity restriction post injection; ice; over-the-counter pain relievers; home exercise plan; follow up as needed. Work status is not noted.

92.    7/15/15, Magued Beshay, MD, gastrointestinal. This is a colonoscopy with biopsy.  The impression is colonic polyps; diverticulosis coli; hemorrhoids.

93.    7/15/15, Quest Diagnostics. This is a biopsy result from colonoscopy.

94.    8/31/15, Dermatology Surgical Medical Clinic.  This is a visit note, one page, noting angiomas and brown keratoses, benign, nose and legs.

95.    12/6/15, Christopher Hougen, MD, specialty not noted.  This is an urgent care note. Subjective complaints note **right shoulder pain with decreased range of motion, especially abduction; right upper back pain.**  Objectively, **slight tenderness to palpation, right anterior and posterior joint line; tenderness to palpation right deltoid; tenderness to palpation of the rhomboid, right side worse than left; tenderness to palpation at the paraspinous muscle.**  The diagnoses are **chest pain; shoulder strain.** Treatment plan indicates chest x-ray; **Tylenol with codeine #3;** follow up exam.  Work status is not noted.

96.    12/6/15,    Michael    Neglio,    MD,    radiology.       This    is    a    chest    x-ray.

97.    2016 - 2018, Kaiser Permanente.  This is a series of physical therapy rehab plans and progress notes, reviewed page by page, approximately 140 pages, noting treatment for the cervical spine, right shoulder, and left shoulder.

98.    2016 - 2018, Kaiser Permanente. This is a series of telephone and email notes, reviewed page by page, approximately 130 pages, recording appointments, questions and prescriptions in the neurology, family medicine and pain management departments.

99.    1/26/16, Esther Chuanwah Wang-O'Connell, MD, specialty not noted. This is a progress note.  Subjective complaints note **right shoulder pain for two years, taking Tylenol #3 at night but would like Vicodin instead;** right nipple itching; toenail fungus; anxiety at work.  Objectively, exam is unremarkable from a pain management standpoint. The diagnoses are routine adult health check up exam; screening; vaccination for influenza; **right shoulder joint pain;** onychomycosis; anxiety.  Treatment plan indicates right

COLLIER APL 0042

LIB000369

COLLIER, Vicki
October 24, 2018
Page 14

shoulder x-ray; orthopedic referral; penlac; restart Celexa; dermatology. Work status is not noted.

100.  2/08/16, Sovanrith Tun, MD, orthopedics.   This is a progress note.   Subjective complaints note right shoulder pain; pain is anterolateral, moderate, positive night pain, worse with reaching and lifting. Objectively, right shoulder range of motion is abduction 90, forward flexion 90, external rotation 70, internal rotation 30; positive impingement; contralateral shoulder range of motion is abduction 90, forward flexion 90, external rotation 70, internal rotation 30; X-ray is within normal limits. The diagnosis is right shoulder rotator cuff syndrome. Treatment plan indicates activity modification, ice, possible arthroscopy, cortisone injection performed in office, Norco prn. Work status is not noted.

101.  2/9/16, Jennifer Kim, MD, radiology. This is an X-ray of right shoulder. The impression is no significant abnormality.

102.  2/20/16, David Robinson, MD, radiology.    This is an abdominal ultrasound.

103.  4/17/16, Alan D Jacknow, MD, endocrinology. This is a bone density scan for hip and spine.

104.  6/15/16, Esther Chuanwah Wang-O'Connell, MD, specialty not noted. This is a progress note. Subjective complaints note fainted last week; feels like she is wearing a hat on her head; **neck pain**. Objectively, **tenderness to palpation trapezius muscle**. The diagnoses are **neck pain**; history of syncope; palpitations.  Treatment plan indicates physical/ occupational therapy. Work status is not noted.

105.  8/29/16, Andrea Dai Chang, MD, pathology.    This is a surgical pathology for endometrium biopsy.

106.  9/27/16, Kari Kristine Scott, MD, family practice.  This is an office visit.  Subjective complaints note **back pain and neck pain for one week and back pain for one week, acute upon chronic (2-3 years); has right arm pain; has had right shoulder pain in the past; pain level is 8/10.** Objectively, **mildly limited neck range of motion noted; unable to extend head without shooting pain down back; mild tenderness to palpation at base of skull; back notes mild tenderness to palpation right medial scapula; tenderness to palpation over right lateral and anterior shoulder; points to lateral right arm down to right proximal forearm as an area of radiation.** The diagnoses are **right neck pain with possible cervical radiculopathy.** Treatment plan indicates **prednisone**

LIB000370

COLLIER, Vicki
October 24, 2018
Page 15

**pack and tramadol**; follow up with primary care provider this week. Work status is full duty.

107.    10/05/16, Dilipkumar H. Shaw, MD, physical medicine and rehabilitation. This is a new patient exam. Subjective complaints note claimant presents with neck pain and pain in right upper back area for three weeks; no history of injury; pain is constant, radiates to right upper extremity, associated with numbness and tingling in the right hand, dull, increases with movement of neck. Objectively, neck and right upper trapezius area are tender to palpation; neck notes spasm; cervical range of motion notes limited extension and lateral rotation. The diagnosis is cervical radiculopathy. Treatment plan indicates order MRI of C-spine; advised claimant on posture, local heat, stretching, etc.; Meloxicam, Flexeril; refer to physical therapy. Work status is not noted.

108.    10/10/16, Saeed Yadegar, MD, radiology. This is an MRI of the cervical spine. The impression is there is straightening of normal lordotic curvature, usually secondary to muscle spasm; there is a 1mm broad-based posterior disk bulge at C3-C4 level indenting the anterior aspect of the thecal sac; there is a 2mm central posterior disk protrusion at C4-C5 level causing pressure over the anterior aspect of the thecal sac; there is a 2mm broad-based posterior disk / endplate osteophyte complex at C5-C6 level causing pressure over the anterior aspect of the thecal sac; there is a 2mm broad-based posterior disk protrusion at C6-C7 level causing pressure over the anterior aspect of the thecal sac; there is mild narrowing of the left neural foramen and moderately significant narrowing of the right neural foramen.

109.    1/17/17, Esther C. Wang-O'Connell, family practice. This is an office visit. Subjective complaints note **bilateral shoulder pain for 3-4 weeks; also having a headache for 2 years, feels like there is a helmet on her head; gets occasional palpitations; yoga is helping with neck pain, has not required epidural.** Objectively, exam notes **joint pain, headaches.** The diagnoses are **headache; bilateral shoulder joint pain; palpitations;** screening. The treatment plan indicates order electrocardiogram; reduce caffeine; order labs. Work status is not noted.

110.    1/17/17, Esther C. Wang-O'Connell, MD, family practice. This is an EKG.

111.    2/16/17, Sonu Malik Brara, MD, neurology. This is progress notes. Subjective complaints note headaches; feels like she is wearing a helmet, all the time; also has left side neck spasm; vise-like sensation on her scalp, pressure sensation; also has back pain, right arm pain, for which she has seen primary and orthopedics. Objectively, exam is

COLLIER APL 0044

LIB000371

COLLIER, Vicki
October 24, 2018
Page 16

unremarkable. The diagnosis is tension headache. Treatment plan indicates trial of muscle relaxant and gabapentin; refer to acupuncture. Work status is not noted.

112. 2/16/17, Sovanrith Tun, MD, orthopedics. This is an office visit. Subjective complaints note increasing pain in right shoulder over past two months; pain is moderate. Objectively, exam is unremarkable. The diagnosis is right shoulder rotator cuff syndrome. Treatment plan indicates activity modification, ice, right shoulder cortisone injection given in office; ibuprofen. Work status is not noted.

113. 3/02/17, Sonu Malik Brara, MD, neurology. This is a telephone consultation. Subjective complaints note left sided headaches and arm pain; claimant called to request increased medication. Objectively, exam is not noted. The diagnosis is not noted. Treatment plan indicates increase gabapentin; start Flexeril. Work status is not noted.

114. 4/03/17, Michael Van Tran, MD, family medicine. This is an EKG.

115. 5/03/17, Michael Van Tran, MD, family medicine. This is an ECG with wearable monitor.

116. 6/09/17, Esther C. Wang-O'Connell, family practice. This is an office visit. Subjective complaints note **neck pain, shoulder pain, leg pain; bilateral lower leg pains for one month; still having neck pain, thinks headaches are because of neck pain; still having right shoulder pain**; requesting letter for work to get ergonomic workspace; also has ringing in the ears for years but getting worse. Objectively, exam notes **neck pain**. The diagnoses are **cervical radiculopathy; bilateral leg pain;** bilateral subjective tinnitus. Treatment plan indicates **refer to pain management**; refer to audiology; Voltaren gel. Work status is not noted.

117. 6/12/17, Paymann Moin, MD, radiology. This is an MRI of the right shoulder, no contrast. The impression is 9 mm AP approximately 50% partial-thickness articular surface supraspinatus tendon tear on a background of moderate tendinosis; infraspinatus and superior fiber subscapular mild tendinosis; proximal long head of biceps mild tendinosis; minimal subacromial subdeltoid bursitis; acromioclavicular joint osteoarthritis.

118. 6/30/17, Martine D. Parekh, AUD, audiology. This is a office visit. Subjective complaints note history of bilateral sudden hearing loss; claimant reports in past steroid injections restored hearing; bilateral tinnitus and some dizziness for a few days. Objectively, exam notes mild hearing loss at 12,500 Hertz in right and left ear. The diagnosis is bilateral

LIB000372

COLLIER, Vicki
October 24, 2018
Page 17

high frequency sensorineural hearing loss.  Treatment plan indicates follow up with primary care doctor; audio re-test in 2-3 years. Work status is not noted.

119.   6/30/17, Harrison Kibe, MD, pain management. This is an office visit. There is a record review:  nothing pertinent from a pain management standpoint not previously noted. Subjective complaints note cervicalgia with right-sided cervical radiculopathy; pain is radiating down the right shoulder to the right arm and forearm, with associated paresthesias and numbness in the middle right hand digits; reports some tingling/paresthesias in both feet, which is chronic and predates the cervical radiculopathy; has localized right shoulder pain, particularly with range of motion. The diagnoses are cervical radiculopathy; cervical disc herniation.  Treatment plan indicates cervical epidural steroid injection. Work status is not noted.

120.   6/30/17, Harrison Kibe, MD, pain management.  This is an operative report. The pre-operative diagnosis is cervical radiculopathy; cervical spinal stenosis; cervical degenerative disc disease.  The post-operative diagnosis is cervical radiculopathy; cervical spinal stenosis; cervical degenerative disc disease.  The procedure is C7-T1 interlaminar cervical epidural steroid injection (right paramedian); intraoperative fluoroscopy.

121.   7/10/17, Sovanrith Tun, MD, orthopedics.   This is a telephone appointment visit. Subjective complaints note need to review right shoulder MRI with claimant. Objectively, MRI shows non-traumatic partial right rotator cuff tear.  The diagnosis is non-traumatic partial right rotator cuff tear. Treatment plan indicates claimant declines physical therapy; request right shoulder arthroscopy, rotator cuff repair; Norco.  Work status is not noted.

122.   7/19/17, Sylvia Ramsis Hanna, DO, family medicine. This is a progress note. Subjective complaints note claimant is concerned about black mold in her office; employer has confirmed black mold is growing inside walls; complaints of headaches, nasal congestion, head heaviness; she did not have these symptoms on vacation, but they presented again when she returned to work. Objectively, exam is unremarkable. The diagnosis is exposure to mold. Treatment plan indicates refer to immunology / allergy for specific black mold testing, if available.   Work status is not noted.

123.   7/20/17, Sovanrith Tun, MD, orthopedics. This is an office visit.  Subjective complaints note right shoulder pain for 3 years; pain is anterolateral, moderate, positive for night pain, aggravated by reaching and lifting. Objectively, exam is unremarkable; MRI shows right shoulder partial rotator cuff tear.  The diagnosis is non-traumatic partial right

COLLIER APL 0046

LIB000373

COLLIER, Vicki
October 24, 2018
Page 18

rotator cuff tear. Treatment plan indicates right shoulder arthroscopy, rotator cuff repair; Transderm-Scop patch, Norco; sling. Work status is off work post surgery; no use of right arm.

124.    7/25/17, Sovanrith Tun, MD, orthopedics. This is an operative report. The preoperative diagnosis is right shoulder partial rotator cuff tear. The post-operative diagnosis is right shoulder partial rotator cuff tear, subscapularis tendon; partial intratendinous supraspinatus tendon tear. The procedure was right shoulder arthroscopic rotator cuff repair; subacromial decompression.

125.    8/08/17, Sovanrith Tun, MD, orthopedics. This is an office visit. Subjective complaints note two weeks status post right rotator cuff repair; mild pain; going to physical therapy. Objectively, abduction 45, forward flexion 45, external rotation 45, internal rotation 5. Treatment plan indicates physical therapy, sling, Norco. Work status is modified activity: no use of right arm.

126.    9/07/17, Sovanrith Tun, MD, orthopaedics. This is a work status report: claimant is off work from 7/25/17 - 10/31/17 due to rotator cuff repair surgery.

127.    9/28/17, Sovanrith Tun, MD, orthopaedics. This is an office visit. Subjective complaints note eight weeks status post right rotator cuff repair; mild pain; going to physical therapy. Objectively, abduction 75, forward flexion 75, external rotation 60, internal rotation 5. Treatment plan indicates physical therapy, increase activities as tolerated. Work status is not noted.

128.    11/30/17, Sovanrith Tun, MD, orthopaedics. This is an office visit. Subjective complaints note claimant is having increased pain in right shoulder; working long hours again. Objectively, right shoulder range of motion is abduction 90, forward flexion 80, external rotation 60, internal rotation 15. The diagnosis is non-traumatic partial right rotator cuff tear. Treatment plan indicates cortisone injection done in office; continue Gabapentin, Flexeril, Celexa. Work status is not noted.

129.    12/10/17, David Robinson, radiology. This is a pelvic ultrasound exam within normal limits.

130.    12/10/17, Eli A. Pakravan, radiology. This is a mammogram.

131.    2/01/18, Sovanrith Tun, MD, orthopaedics. This is an office visit. Subjective complaints note claimant having increased right shoulder pain; pain at anterior chest, lateral

COLLIER APL 0047

LIB000374

COLLIER, Vicki
October 24, 2018
Page 19

deltoid, elbow and forearm; cortisone injection did not help. Objectively, right shoulder range of motion is abduction 90, forward flexion 90, external rotation 60, internal rotation 15. The diagnosis is right shoulder interstitial partial tear. Treatment plan indicates physical therapy; increase activities as tolerated; possible repeat shoulder arthroscopy. Work status is not noted.

132.    2/01/18, Sovanrith Tun, MD, orthopaedics. This is an office visit. Subjective complaints note left shoulder pain; claimant requesting cortisone injection; pain is in left lateral deltoid; pain is moderate, not improving, worse with reaching and lifting. Objectively, left shoulder range of motion is abduction 90, forward flexion 90, external rotation 70, internal rotation 30; left shoulder notes positive impingement, positive Hawkin's; right shoulder range of motion is abduction 90, forward flexion 90, external rotation 70, internal rotation 30. The diagnosis is left shoulder rotator cuff syndrome. Treatment plan indicates Meloxicam, possible left shoulder arthroscopy; left shoulder cortisone injection done in office. Work status is not noted.

133.    2/20/18, Pelletier and Associates. This is an ergonomic intervention report recommending equipment such as an ergonomic chair, height adjustable workstation and telephone headset to adjust to claimant's neck, shoulders, hands / wrists, back, hips, legs and feet.

134.    3/23/18, Sonu Malik Brara, MD, orthopaedics. This is an office visit. Subjective complaints note headaches, neck pain, ringing in ears, constant pressure sensation on the scalp, almost daily; stopped taking Gabapentin after shoulder surgery. Objectively, exam is unremarkable. The diagnosis is tension headache. Treatment plan indicates restart Gabapentin; request MRI of brain; trial of Botox. Work status is not noted.

135.    3/27/18, Sharam Gharibshahi, MD, neurology. This is an office visit. Subjective complaints note present for Botox treatment; chronic headache. Objectively, exam is unremarkable. The diagnosis is chronic daily headache. Treatment plan indicates administer Botox in office; keep headache diary. Work status is not noted.

136.    4/27/18, State of California, Division of Workers' Compensation. This is an Application for Adjudication of Claim noting cumulative date of injury as 7/13/13 - 7/24/17, in which the claimant has suffered injuries to her shoulders, back, neck, upper extremities, lower extremities, internal hemorrhoids, and headaches due to repetitive computer work in her job as a sales agent for the Automobile Club of California.

COLLIER APL 0048

LIB000375

COLLIER, Vicki
October 24, 2018
Page 20

137.    5/14/18, Sovanrith Tun, MD, orthopaedics. This is an office visit. Subjective complaints note bilateral shoulder pain; left shoulder cortisone injection helped; moderate pain. Objectively, bilateral shoulders range of motion is abduction 90, forward flexion 90, external rotation 70, internal rotation 20; impingement positive. The diagnosis is bilateral shoulder rotator cuff syndrome. Treatment plan indicates activity modification; Meloxicam, Norco. Work status is modified activity: no typing, no use of both shoulders and arms.

138.    7/06/18, Sovanrith Tun, MD, orthopaedics. This is an office visit. Subjective complaints note persistent pain in bilateral shoulders; stopped pain medications; does physical therapy at Henry Mayo. Objectively, bilateral shoulder range of motion is abduction 90, forward flexion 90, external rotation 70, internal rotation 20; impingement positive. The diagnosis is bilateral shoulder rotator cuff syndrome. Treatment plan indicates Treatment plan indicates activity modification; Meloxicam; bilateral shoulder cortisone injections performed in office; possible right shoulder arthroscopy, rotator cuff repair if pain persists. Work status is not noted.

139.    7/20/18, Shahram Gharibshahi, MD, neurology. This is an office visit. Subjective complaints note chronic headache; presents for Botox treatment; feels Botox helped before, has had no migraines for past 3 months; minor pain; lots of tension on shoulders. Objectively, exam is not noted. The diagnosis is chronic migraine. Treatment plan indicates Botox injections in office; keep headache diary. Work status is not noted.

140.    This is a deposition of Vicki Collier, dated 8/23/18, 73 pages.
        This was reviewed page by page.
        Pages 6 - 7, rules of the deposition are discussed.
        Page 8, claimant answers questions about past medical history: no workers' compensation cases, one personal injury case of "dog bite" to the right "back thigh," resolved.
        Page 13-14, states her employment with Auto Club of California was "June 13, 2013... May 15, 2018."
        Pages 15 - 21, discusses her work schedule and the nature of her job tasks, primarily computer work, paper work and phone work.
        Page 26, denies past motor vehicle accidents.
        Page 27, states that she began to see "Dr. Good," a chiropractor, in 2017, for her "back, shoulders, neck."
        Page 29, states that she has received acupuncture through Kaiser, at another facility, but does not feel that it helped "my back, my neck, my shoulders."

COLLIER APL 0049

COLLIER, Vicki
October 24, 2018
Page 21

Page 31, states that she received an epidural to her "upper back… after my surgery… I didn't get any relief."

Page 35, states that her right shoulder symptoms began "approximately two years ago… when I was sleeping, it would pound like a headache and I couldn't roll over. It would wake me up in the middle of the night, excruciating pounding."

Page 37, states that at the same time as the right shoulder pain, she was having symptoms in "my neck, lower extremities, tingling in my legs… left side is worse… when you're sitting for a long period of time, [I] get a tingle… sometimes numbness… around the feet."

Page 39, mentions that "maybe somewhere in the beginning of 2017," at the same time as her MRI, a medical professional "gave me a doctor's note for my desk to be ergonomically correct. To be reevaluated and to correct it to alleviate pain."

Page 39, states that she also feels "like I have a helmet on my head. I feel this pressure on my head… this heaviness. Like I'm wearing a helmet."

Page 40-45, discusses the physical circumstances of her office, including the height of the desk, location of the computer, the lack of a working phone head set, a chair that wouldn't adjust.

Page 45-46, states that the chair caused her "hemorrhoids… no back support in the chair… no lumbar support."

Page 47-48, describes the "pounding" in her right shoulder as located above the biceps, "and goes all the way down into my elbow and my forearm." States that she would rate that pain as 5/10 at that time.

Page 49-52, confirms that she received the an ergonomic evaluation in February, 2018, and states that "sometime in April [2018]… end of March, April" she received new equipment at work such as a document reader, a vertical mouse, a new keyboard and a new                                                                                                 chair.

Page 53, states that before the ergonomic evaluation, "my shoulder started hurting in December again… my right shoulder… And then my left shoulder started hurting and I started getting the pounding in my left shoulder. Same exact pounding, same exact area… January-February, somewhere around in that area."

Page 54-55, describes receiving a cortisone shot from Dr. Tun, "I think it lasted like six, maybe eight weeks."

Page 55, states that in March and April of 2018 she was also experiencing pain in "my neck, my shoulders…" Confirms that the neck pain was primarily the left side. "My clavicle… right under there… there is a pain that shoots from my shoulder and goes across that whole area."

Page 56, states that after receiving the new equipment at work, she was "getting worse. My left arm was getting worse… it was an ongoing situation… one or two times

COLLIER APL 0050

LIB000377

COLLIER, Vicki
October 24, 2018
Page 22

they gave me a new [phone] head set, but it would still go out, and there there's times that it was ignored."

Page 56, confirms that her doctor recommended a second surgery on the right shoulder, "it's scheduled for October."

Page 61, states that Dr. Tun is "only treating the shoulders."

Page 63, states that "a desk was supposed to be ordered and it never was. So they were changing my desk to a sitting / standing desk... [my manager] said that they had ordered one special for me." States that the desk did not arrive.

Page 66, states that right and left shoulder bother her "equally... the cortisone shots helped, but it diminishes... [the pain] is a pounding sensation and it limits my mobility, my range of motion... could be a 6/7 [on a pain scale of 1-10]... there's been times that it would be a 9, 10.

Page 66-67, states that the right shoulder pain travels "through the elbow in my forearm... my left shoulder, it just goes down right here [not as far]."

Page 67, describes neck pain as more on left side than right side, and "it's pretty constant."

Page 69, confirms that she still has a tingling sensation in her legs, "I have it right now."

Page 70, states that she has no plans to have surgery on her hemorrhoids, but "they said I could. If it was bothering me, that I should and could."

**DISCUSSION:**

As you are aware, I gave my QME report on October 11, 2018 when the examinee came into my office for examination and she gave me a history. I had no medical records available to me for review and to match her history. Apparently she is claiming a continuous trauma claim from 2013 to July 24, 2017 when she claims that she was working in the AAA where she was not given any ergonomic seat and furniture and it caused pain to her right shoulder for which she sought medical treatment from Dr. Tun, orthopedic surgeon on October 2017.

She claimed that her pain in the neck, shoulder, lower extremities and headaches and pain in the forearm and elbows and shoulder blade, etc., along with the hemorrhoids, are all secondary to the continuous trauma during her work between 2013 to 2017 at the AAA office.

She also gave a history on January or February 2018, she had bleeding hemorrhoids and she fainted. She was advised to have colonoscopy, which she refused to have at that time because she had one sometime before 2013 or 2014.

Now, I have received her medical records and there are a lot of differences between her history provided to me at the time of the October 11th examination and the medical records provided

COLLIER APL 0051

COLLIER, Vicki
October 24, 2018
Page 23

---

to me. I have two sets of medical records starting from the year 2002 all the way to 2018 with almost 2000 pages and I have reviewed the medical records and as per her history she injured her shoulder in October 2017 as she had told me that she was visiting Mexico sometime in 2016 and that is when she hurt herself in the neck and the left shoulder. However, when I reviewed the history from the previous years, the first time she complained about pain in her shoulder was in March 27, 2015 medical records, she complained to her internal medicine physician, Dr. Patterson-Judd that she had a right shoulder pain ongoing for several months and also she had elbow pain ongoing for several months and she was treated conservatively with medications like Norco as well as Medrol pack.

Also reviewing the history of past between 2002 to 2008, she has a history of hemorrhoids ongoing for several years in the medical records, complaining to her family physicians. I also noticed from the medical records that she has been having pain in her neck as well as lower back for several years as far back as 2007 for the lower back and 2009 for the neck and shoulder pain.

Since May 16, 2018, she has been on total temporary disability.

Over the last 16 years, she has received several treatments with chiropractic treatment for her different musculoskeletal problems including the neck and the lower back, right shoulder especially in the past 10 years or so, which is reflected in her medical records sent to me. Present complaints, please refer to my PQME report on October 11, 2018, she does complain of pain in the neck, lower back and complains that she has healed hemorrhoids, however, she is presently trying to claim the continuous trauma, with all these present complaints.

Please refer to the rest of my physical examination as well as the history from the PQME report and now I will address the following:

**CAUSATION:**

As regards causation, her symptoms of low back pain and neck pain as well as hemorrhoids are way prior to the job she took in Automobile Club of Southern California. She has her medical records from 2002 onwards and apparently she had started complaining of these symptoms sometime during 2005 to 2009 and it is my medical opinion that the back pain and the neck pain as well as hemorrhoids are not out of this employment.

As regards to her right shoulder, she started complaining of right shoulder pain on March 27, 2015, then she was treated conservatively after that.

---

COLLIER APL 0052

LIB000379

COLLIER, Vicki
October 24, 2018
Page 24

On June 9, 2017, she started having more pain in her right shoulder and the MRI done on June 12, 2017, showed torn rotator cuff with mild tendinosis and subacromial and subdeltoid bursitis. She was also having cervical radiculopathy and she was seen by Dr. Kibe in Pain Management on June 30, 2017 and the treatment plan for the cervical radiculopathy with cervical epidural injection and eventually on July 20, 2017, she was given right shoulder arthroscopic surgery with rotator cuff tear.

It is my medical opinion with reasonable probability that the right shoulder injury is related out of employment, as a continuous trauma from March 27, 2015 to July 25, 2017.

**PERMANENT AND STATIONARY:**

It is my medical opinion that she has reached permanent and stationary regarding her right shoulder since October 31, 2017.

**APPORTIONMENT:**

It is my medical opinion with reasonable probability that there is no apportionment for the right shoulder injury.

As regards her neck and lower back and claim for the hemorrhoids, this is a 100% nonindustrial trauma as she already had pre-existing disease prior to this employment.

**WHOLE PERSON IMPAIRMENT:**

Using the AMA Guides, Fifth Edition:

Regarding her lower back, I used the DRE method, Table 15-3 and I gave her 0%.

Regarding her cervical spine, I used the DRE Method and gave her Category II with 5% whole person impairment.

Shoulders, I used the Range of Motion Method and 0% for the left shoulder.

For the right shoulder, using Range of Motion Method with Table 16-40 for flexion of under 70 degrees 1% upper extremity impairment, for extension 40 degrees 1% upper extremity and using Table 16-43 for abduction 110 degrees I gave 3% upper extremity and for adduction of 30 degrees 1% upper extremity and using Table 16-46 with external rotation of 40 degrees, I

COLLIER APL 0053

COLLIER, Vicki
October 24, 2018
Page 25

gave 1% upper extremity and total upper extremity impairment is equal to 7% and that will equal to 4% whole person impairment as per 16-3 Table on Page 439.

Although, the cervical spine is 100% nonindustrial, with her total impairment of 5% plus the upper extremity 4% using combined value table on Page 604, she has a 9% whole person impairment.

**FUTURE DISABILITY:**

Presently, she is healing from the shoulder surgery and she should avoid any heavy lifting more than 20 pounds and reaching above her head and follow up would be advised by an orthopedic surgeon who did the shoulder surgeries.

**FUTURE MEDICAL NEEDS:**

She might need physical therapy between 6 to 12 sessions for any aggravated pain in her shoulder for the next 12 months.

Please contact me if I can be of further assistance.

**COMPLIANCE DISCLOSURE STATEMENT**

I certify that I reviewed all available medical records, and composed and drafted the conclusions of this report. If others have performed any services in connection to this report, outside of clerical preparation, their names and qualifications are noted herein. An initial excerpting of the medical records was completed by Eric Roy. Eric Roy is trained in medical record excerpting. In combination with the examination, the excerpts and records were reviewed to define the relevant medical issues. The conclusions and opinions within this report are solely mine. I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true. In accordance with Labor Code Section 5703(a) (2), there has not been a violation of Labor Code Section 139.3, and the contents of the report are true and correct to the best of my knowledge. This statement is made under penalty of perjury.

LIB000381

COLLIER, Vicki
October 24, 2018
Page 26

Pursuant to 8 Cal. Code Regs. Section 49.2-49.9, I have complied with the requirement for face-to-face time with the patient in this evaluation. If necessary, I have discussed apportionment in the body of this report. If I have assigned disability caused by factors other than the industrial injury, that level of disability constitutes the apportionment. The ratio of nonindustrial disability, if any, to all described disability represents my best medical judgment of the percentage of disability caused by the industrial injury and the percentage of disability caused by other factors, as defined in Labor Code Section 4663 and 4664.

Sincerely,

Ripu Arora, M.D.
Diplomate, American Board of Anesthesiology,
Pain Management, Qualified Medical Evaluator

Date: 01/03/2019          County: Los Angeles, CA

RA:ANS/aml:12/26/18

COLLIER APL 0055

LIB000382

## State of California
### *DIVISION OF WORKERS' COMPENSATION – MEDICAL UNIT*

### AME or OME Declaration of Service of Medical - Legal Report (Lab. Code § 4062.3(i))

**Case Name:** Vicki Collier
      *(employee name)*

**Claims Adjuster:** Miguel Mendoza
      *(claims administrator name, or if none employer)*

**Claim Number:** 18719439

**EAMS or WCAB Case No. (if any):** ADJ11297306

I, _____ Jullie Raaymakers _____, declare:
      *(Print Name)*

1. I am over the age of 18 and not a party to this action.

2. My business address is: 11010 White Rock Road, Suite 120 Rancho Cordova, CA 95670.

On the date shown below, I served the attached original, or a true and correct copy of the original, comprehensive medical-legal report on each person or firm named below, by placing it in a sealed envelope, addressed to the person or firm named below, and by:

A      depositing the sealed envelope with the U. S. Postal Service with the postage fully prepaid.

B      placing the sealed envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U. S. Postal Service in a sealed envelope with postage fully prepaid.

C      placing the sealed envelope for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

D      placing the sealed envelope for pick up by a professional messenger service for service. *(Messenger must return to you a completed declaration of personal service.)*

E      personally delivering the sealed envelope to the person or firm named below at the address shown below.

| Means of Service: *(For each address, enter A-E as appropriate)* | Date Served: | Addressee and Address Shown on Envelope: |
|---|---|---|
| B | January 3, 2019 | Miguel Mendoza, CCMSI, PO Box 53550, Irvine, CA 92619 |
| B | January 3, 2019 | Bruce Little, Parker & Irwin, 348 W. Hospitality Lane, Suite 202 |
| B | January 3, 2019 | Robert Palty, Robert L. Palty, Attorney At Law, 6345 Balboa Blvd Bldg 1 Suite 211 , Encino, CA 91316 |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.   Date: _____ January 3, 2019 _____

*(signature of declarant)*

Jullie Raaymakers
*(print name)*

QME Form 122
Rev. February 2009

COLLIER APL 0056

LIB000383

**Ripu Arora, M.D.**
**Diplomate, American Board of Anesthesiology,**
**Pain Management, Qualified Medical Evaluator**

October 24, 2018

Mr. Robert Palty, Attorney-at-Law
LAW OFFICE OF ROBERT L. PALTY
6345 Balboa Boulevard, Building 1, Suite 211
Encino, CA 91316

Mr. Bruce Little, Attorney-at-Law
LAW OFFICES OF PARKER & IRWIN
348 West Hospitality Lane, Suite 202
San Bernardino, CA 92408-3242

Mr. Miguel Mendoza, Claims Adjuster
CANNON COCHRAN MANAGEMENT SERVICE, INC.
P.O. Box 53550
Irvine, CA 92619

### PANEL QUALIFIED MEDICAL EVALUATOR SUPPLEMENTAL REPORT
### IN PAIN MANAGEMENT

| | |
|---|---|
| **RE:** | COLLIER, VICKI |
| **Case #:** | 20623720 |
| **DOB:** | |
| **Date of Injury:** | CT 07/13/2013 - 07/24/2017 |
| **WCAB Case #:** | ADJ11297306 |
| **Claim #:** | 18719439 |
| **Panel #:** | 7202878 |
| **Employer:** | Automobile Club of America |

To Whom It May Concern:

This supplemental report is in response to additional records forwarded for my review and comments. Preparation of this report required additional review of my previous reports along with review of our office files. As you are aware, I examined Vicki Collier on October 11, 2018, for a Panel Qualified Medical Evaluation in Pain Medicine.

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800) 458-1261   Fax: (916) 920-2515

JAN 0 7 2019

COLLIER APL 0057

LIB000384

COLLIER, Vicki
October 24, 2018
Page 2

**BILLING STATEMENT:**

This report is submitted pursuant to 8 Cal. Code Regs. Section 9795 (b) & (c) as an ML106, billed for each quarter hour. Information provided for the supplemental report were received after the initial report had been dictated or they were not made available prior to the initial examination. Total time spent was eighteen hours.

**REVIEW OF RECORDS:**

1.    5/8/02 - 1/26/15, Facey. This is a group of flow sheets, nursing notes, orders and message/call logs, internal medicine office visits, MED/PED progress notes, urgent care progress notes, handwritten office visits, handwritten medical advice records, reviewed page by page, approximately 350 pages, noting treatment for/diagnoses of neoplasm, right cheek; bunion on the right; ovarian cyst; lump of skin, right inner auricle; acne; hernia; anxiety, dermatitis, liver cyst, suspicious dermatologic lesions, UTI; anxiety and depression, dyspepsia; gastritis, fibrocystic breast, hemorrhoids, abnormal labs, lipoma, mole, decreased hearing loss, left ear, otitis media with effusion, onychomycosis, left ear muffling with dizziness, sinusitis. Nothing pertinent from a pain management standpoint.

2.    6/20/02 - 12/5/07, Facey. This is a group of surgery progress notes and encounters, reviewed page by page, approximately 30 pages, noting treatment for basal cell carcinoma, left upper back; lentigines on anterior thighs; actinic keratosis, shotty inguinal lymphadenopathy, umbilical hernia repair. Nothing pertinent from a pain management standpoint.

3.    8/14/02, Mary Kasem, MD, family practice. This is an office visit. Subjective complaints note **upper and mid back pain and stiffness**; occasional chest tightness with deep breathing; carries 2-year-old daughter, mostly on left side. Objectively, **back pain on the left side with lateral rotation and flexion**. The diagnoses are **chronic upper back pain**; reactive airway disease; history of hyperlipidemia. Treatment plan indicates albuterol; home exercise plan; referral to chiropractor; chest x-ray; labs; spirometry test; follow up exam. Work status is not noted.

4.    8/14/02 - 7/15/15, Facey. This is a group of ECG strips, reviewed page by page, 12 pages. Nothing pertinent from a pain management standpoint.

5.    8/23/02, Facey. This is a spirometry report, one page.

COLLIER APL 0058

LIB000385

COLLIER, Vicki
October 24, 2018
Page 3

6.    8/23/02, George Paranay, MD, radiology. This is a chest x-ray.

7.    9/11/02 - 2/25/15, Facey. This is a group of annual exams, OB/GYN progress notes, handwritten exams, pap results, colposcopy worksheets, letters and phone calls, reviewed page by page, approximately 75 pages, with nothing pertinent from a pain management standpoint and noting abdominal pain, probably unrelated to gynecology. Nothing pertinent from a pain management standpoint.

8.    10/10/02 - 11/2/05, Unilab. This is a group of lab reports, reviewed page by page, 16 pages, with nothing pertinent from a pain management standpoint.

9.    10/17/02, Martin Applebaum, MD, radiology. This is a pelvic ultrasound.

10.   10/17/02, Ramon Quesada, MD, radiology. This is a bilateral mammogram.

11.   12/4/02, Mary Haynes, RNP, family practice. This is a MED/PED progress note. Subjective complaints note **pulled muscle doing pull-ups with severe pain on lateral aspect of left chest and painful to palpation; small lump in axilla where pain is located.** Objectively, **palpatory pain at the base of axilla with soft tissue lump in the area.** The diagnosis is **costochondritis versus muscle strain.** Treatment plan indicates **ibuprofen; Vicodin;** ice, then heat. Work status is not noted.

12.   1/14/03, Ramon Quesada, MD, radiology. This is a chest x-ray.

13.   1/23/03, David Shaw, MD, specialty not noted. This is an urgent care visit. Subjective complaints note **low back pain with tingling in lower extremities; four days post umbilical hernia repair.** Objectively, **positive tenderness and spasm in the lumbosacral region at the level of L4-S1.** The diagnosis is **back spasm.** Treatment plan indicates **Flexeril.** Work status is not noted.

14.   5/14/03, Martin Applebaum, MD, radiology. This is a pelvic ultrasound.

15.   8/26/03, Unilab. This is a urinalysis report, one page.

16.   1/21/04, Martin Applebaum, MD, radiology. This is a pelvic ultrasound.

17.   4/9/04, Martin Applebaum, MD, radiology. This is a bilateral mammography.

COLLIER APL 0059

LIB000386

COLLIER, Vicki
October 24, 2018
Page 4

18.   12/15/04, Timothy Sprague, MD, radiology. This is a chest x-ray. The impression is hyperinflation; no evidence of acute cardiopulmonary disease.

19.   1/17/05, Martin Applebaum, MD, radiology. This is a pelvic ultrasound.

20.   1/31/05, Henry Shih, MD, radiology. This is a right breast ultrasound.

21.   2/10/05, Stella Tanedo, MD, internal medicine. This is a MED/PED progress note. Subjective complaints note **left upper back pain;** lymph nodes in breast and groin. Objectively, **tenderness to palpation over rhomboid region.** The diagnoses are **back pain;** fatigue with history of upper respiratory tract infection; mild suppression of white count. Treatment plan indicates labs; **capsaicin cream;** follow up exam in three months. Work status is working.

22.   2/17/05, Mary Chau, MD, specialty not noted. This is an urgent care MED/PED progress note. Subjective complaints note **midsternal chest pain, 4/10; palpitation sensation; left shoulder scapular pulled muscle pain.** Objectively, **"right" subscapular muscle spasm with reproducible pain.** The diagnoses are **atypical chest discomfort with biphasic T wave; left subscapularis muscle strain.** Treatment plan indicates **Flexeril;** labs; ECG; follow up with primary medical doctor. Work status is working.

23.   2/21/05, Stella Tanedo, MD, internal medicine. This is a MED/PED progress note. Subjective complaints note **continuous upper left back pain; chest pain that has resolved;** sensation of feeling hot; abdominal bloating and gas. Objectively, exam is unremarkable. The diagnoses are **history of left upper back pain with mild improvement; however, persistent pain; atypical chest pain.** Treatment plan indicates labs; stool; referral to physical therapy; follow up exam. Work status is working.

24.   3/1/05 – 12/26/06, Facey. This is a handwritten initial physical therapy visit and a group of handwritten treatment logs, reviewed page by page, approximately 15 pages, noting treatment for the back and left shoulder.

25.   11/30/05, Lloyd Wagner, MD, radiology. This is a transabdominal and transvaginal pelvic ultrasound.

26.   1/9/06, Gregory Paranay, MD, radiology. This is a bilateral mammogram.

COLLIER APL 0060

LIB000387

COLLIER, Vicki
October 24, 2018
Page 5

27.    4/3/06 – 3/11/15, Quest Diagnostics. This is a group of urinalysis reports and cultures, reviewed page by page, 24 pages, with nothing pertinent from a pain management standpoint.

28.    8/15/06, Facey. This is a hearing test, one page.

29.    9/7/06 – 3/11/15, Quest Diagnostics. This is a group of lab reports, reviewed page by page, 39 pages, with nothing pertinent from a pain management standpoint.

30.    10/25/06, Joan Rhee, NP, MD, specialty not noted. This is a MED/PED progress note. Subjective complaints note **upper back with feeling of tightness; upper mid gastric area and lower abdominal pain**; stress; hearing loss; increased bowel sounds. Objectively, weight 124 pounds, temperature 98.2F, pulse 64, respiration 16, blood pressure 110/68; **slight tenderness to palpation, upper back and trapezius muscle area bilaterally; slight tenderness to palpation, upper mid gastric area**. The diagnoses are **upper mid gastric pain; lower abdominal pain with increased gas pattern; history of upper back pain and neck pain secondary to stress and anxiety**. Treatment plan indicates ranitidine; Levsin; barium enema; **Flexeril**; labs; referral to physical therapy; follow up exam with primary care physician. Work status is not noted.

31.    11/2/06, Stella Tanedo, MD, specialty not noted. This is a MED/PED progress note. Subjective complaints note **upper back and neck pain; upper mid gastric area and lower abdominal pain**; stress; hearing loss; hyperactive bowel sounds. Objectively, **slight tenderness to palpation, upper mid gastric area**. The diagnoses are gastritis; **history of upper back pain and neck pain secondary to stress and anxiety**. Treatment plan indicates Protonix; **Flexeril**; abdominal ultrasound; bland diet; follow up exam. Work status is not noted.

32.    11/14/06, Quest Diagnostics. This is a stool culture, reviewed page by page, 2 pages, with nothing pertinent from a pain management standpoint.

33.    12/8/06, Barry Wilen, MD, radiology. This is a transvaginal pelvic ultrasound.

34.    1/26/07, Timothy Sprague, MD, radiology. This is a bilateral mammography.

35.    2/13/07, Mary Kasem, MD, family practice. This is a progress note to establish care. Subjective complaints note **back pain on and off for several months; history of scoliosis**. Objectively, **tenderness to deep palpation along the paralumbar spine and parathoracic spine**. The diagnosis is **back pain**. Treatment plan indicates home exercise

LIB000388

COLLIER, Vicki
October 24, 2018
Page 6

plan; labs; referral to physical therapy; back x-ray; follow up for complete physical. Work status is not noted.

36.    2/21/07, Stuart Shear, MD, dermatology. This is a dermatology note, one page, noting actinic keratosis.

37.    2/23/07, Quest Diagnostics. This is a Pap test with nothing pertinent from a pain management standpoint

38.    3/14/07, Quest Diagnostics. This is a biopsy of the cervical and endocervical epithelial tissue with nothing pertinent from a pain management standpoint.

39.    4/15/07, Yongmoon Park, MD, specialty not noted. This is an urgent care progress note. Subjective complaints note redness, swelling and tenderness of left fourth finger with pus discharge. Objectively, left fourth finger redness, tenderness and pustules coming out of fingernail. The diagnoses are paronychia; cellulitis of left fourth finger. Treatment plan indicates culture; Keflex; follow up to primary care physician. Work status is not noted.

40.    4/15/07, Quest Diagnostics. This is a culture of wound left fourth finger, reviewed page by page, 3 pages that shows light growth of gram positive cocci.

41.    6/5/07, Shendee Teng, MD, radiology. This is an abdominal ultrasound.

42.    10/5/07, Mary Kasem, MD, family practice. This is an office visit. Subjective complaints note **numbness and pain, left arm, off and on for last couple months; symptoms usually start in neck and shoulder with radiation down the left arm; symptoms are worse with stress or poor posture; scoliosis is bothering her; left leg shorter than right by .5 inch; back pain.** Objectively, exam is unremarkable. The diagnosis is **44-year-old female with multiple musculoskeletal complaints;** stress; insomnia. Treatment plan indicates avoid heavy lifting; ice, then heat; home exercise plan; **Tylenol; NSAIDs; Vicodin; muscle relaxer;** referral to orthopedics; follow up exam. Work status is not noted.

43.    10/18/07, Shendee Teng, MD, radiology. This is an entire spine x-ray. The impression is very mild reversal of the cervical curvature; minimal end plate osteophyte formation; mild demineralization; no other significant finding.

COLLIER APL 0062

LIB000389

COLLIER, Vicki
October 24, 2018
Page 7

44.    11/28/07, James Kayvanfar, MD, orthopaedic surgery. This is a handwritten office visit. Subjective complaints note painful popping, left hip with range of motion; neck pain with radiation into left scapula. Objectively, left shoulder and torso not level; positive Spurling's test; positive pain left cervical paraspinals; left shoulder popping on range of motion.   The diagnoses are cervical spondylosis with probable upper cervical radiculopathy with left scapular ?; left shoulder popping; minimal scoliosis thoracolumbar spine; lower back pain at L4; left hip pain and crepitus. Treatment plan indicates x-ray of left hip, x-ray of cervical spine.

45.    12/5/07, James Kayvanfar, MD, orthopaedic surgery.  This is a handwritten note. Treatment plan indicates MRI cervical spine.

46.    12/7/07, Gregory Paranay, MD, radiology.  This is a transabdominal and transvaginal pelvic ultrasound.

47.    2/19/08, Mary Kasem, MD, family practice. This is an office visit. Subjective complaints note **recurrent right elbow pain;** symptomatic bunions; **recurrent back pain.** Objectively, exam is unremarkable. The diagnosis is **right elbow tendinitis.** Treatment plan indicates NSAIDs; ACE wrap; x-ray (claimant did not come back for this); referral to orthopedics. Work status is not noted.

48.    3/19/08, Timothy Sprague, MD, radiology.  This is a right foot x-ray. The impression is negative.

49.    4/8/08, Martin Applebaum, MD, radiology.  This is a mammography.

50.    6/25/08, Jeffrey Lee, DPM, podiatry. This is a podiatry note. Subjective complaints note **painful bump to the right foot; pain with wearing tight shoes.** Objectively, **soft tissue mass, which is mobile, medial aspect, right, foot, proximal to the first metatarsophalangeal joint, significantly smaller than last visit.** The diagnoses are **ganglion cyst; pain.** Treatment plan indicates cyst aspiration to be scheduled for follow up exam. Work status is not noted.

51.    6/25/08, Gregory Paranay, MD, radiology. This is a right foot weight-bearing x-ray. The impression is pes planus; soft tissue prominence about the right first metatarsal; no acute bony changes.

52.    7/2/08, Jeffrey Lee, DPM, podiatry. This is a podiatry note. Subjective complaints note follow up of ganglion cyst aspiration, right foot with irritation while exercising.

LIB000390

COLLIER, Vicki
October 24, 2018
Page 8

Objectively, small soft tissue mass, medial aspect, right foot, proximal to the first metatarsophalangeal joint. The diagnoses are ganglion cyst; pain. Treatment plan indicates cyst aspiration; dry sterile dressings; follow up exam. Work status is not noted.

53.    8/27/08, Jeffrey Lee, DPM, podiatry. This is a podiatry note. Subjective complaints note follow up of ganglion cyst aspiration, right foot with cyst appearing to be growing back; pain with pressure, right foot. Objectively, small soft tissue mass, medial aspect, right foot, proximal to the first metatarsophalangeal joint, significantly smaller than last visit. The diagnoses are ganglion cyst; pain. Treatment plan indicates cyst aspiration; Band-Aid application. Work status is not noted.

54.    8/27/08, Maher Sadra, MD, general surgery. This is a surgery progress note. Subjective complaints note history of umbilical hernia repair; pain around belly button; mild pain 5 cm above belly button. Objectively, tiny hernia, 3 cm above belly button; shotty lymphadenopathy, saphenofemoral veins. The diagnosis is possible small ventral hernia; bilateral inguinal lymphadenopathy. Treatment plan indicates observation; follow up in six months. Work status is not noted.

55.    9/12/08, Barry Wilen, MD, radiology. This is a transabdominal and transvaginal pelvic ultrasound.

56.    10/13/08, Jeffrey Lee, DPM, podiatry. This is a podiatry note. Subjective complaints note follow up of ganglion cyst, right foot with cyst appearing to be growing back; pain with pressure, right foot. Objectively, small soft tissue mass, medial aspect, right foot, proximal to the first metatarsophalangeal joint. The diagnoses are ganglion cyst; pain. Treatment plan indicates cyst aspiration; Band-Aid application. Work status is not noted.

57.    10/23/08, David Broumandi, MD, radiology. This is a pelvic ultrasound.

58.    11/17/08, Christopher Hougen, MD, family practice. This is an urgent care visit. Subjective complaints note **left elbow laceration with swelling and redness that is getting worse.** Objectively, erythematous left elbow; swelling of superficial skin going around left elbow, 4-5 cm around. The diagnosis is left elbow cellulitis. Treatment plan indicates Keflex; Bactrim double strength; follow up exam. Work status is not noted.

59.    3/2/09, Jeffrey Lee, DPM, podiatry. This is a podiatry note. Subjective complaints note follow up of ganglion cyst, right foot with cyst appearing to be growing back and pain;

COLLIER APL 0064

LIB000391

COLLIER, Vicki
October 24, 2018
Page 9

pain wearing tight shoes. Objectively, small soft tissue mass, medial aspect, right foot, proximal to the first metatarsophalangeal joint. The diagnoses are ganglion cyst; pain. Treatment plan indicates wearing wider shoes. Work status is not noted.

60.    4/8/09, Gregory Paranay, MD, radiology. This is a bilateral mammogram.

61.    6/30/09, Quest Diagnostics. This is a biopsy of endometrial tissue pathology report.

62.    10/12/09, Jeffrey Lee, DPM, podiatry. This is a podiatry note. Subjective complaints note ganglion cyst, right foot; fungus, right great toenail. Objectively, thickened right hallux nail; no ganglion cyst is seen. The diagnoses are ganglion cyst, resolved; onychomycosis. Treatment plan indicates follow up as needed. Work status is not noted.

63.    10/12/09, Mary Kasem, MD, family practice. This is an office visit. Subjective complaints note **recurrent tingling in bilateral feet; back pain.** Objectively, exam is unremarkable. The diagnosis is 46 year old female with anxiety, **back pain,** acne. Treatment plan indicates referral to dermatology; stress reduction; relaxation exercises. Work status is not noted.

64.    10/12/09, Edward Gabriel, MD, radiology. This is a lumbar spine, five view x-ray. The impression is transitional L5 segment with slight asymmetry of the facet joints. Otherwise, normal study.

65.    12/2/09, Mary Kasem, MD, family practice. This is an office visit. Subjective complaints note **back pain.** Objectively, exam is unremarkable. The diagnosis is **lower back pain.** Treatment plan indicates referral to chiropractor; labs; complete physical. Work status is not noted.

66.    2/15/10, Zinat Choudhury, MD, specialty not noted. This is an office visit. Subjective complaints note **right elbow injury with right elbow pain, swelling, decreased range of motion and difficulty weight bearing.** Objectively, **localized swelling with decreased range of motion, "left elbow".** The diagnosis is **sprain versus small avulsion fracture, ulna.** Treatment plan indicates rest; ice; elevation; **ibuprofen;** follow up exam. Work status is not noted.

67.    3/2/10, Mary Kasem, MD, family practice. This is an internal medicine office visit. Subjective complaints note **recurrent pain and swelling of the right elbow; multiple injections without much improvement.** Objectively, **localized swelling, right elbow.**

COLLIER APL 0065

LIB000392

COLLIER, Vicki
October 24, 2018
Page 10

The diagnosis is **elbow tendonitis**. Treatment plan indicates rest; ice; anti-inflammatories; brace; avoid aggravating activities; referral to orthopedics. Work status is not noted.

68. 4/12/10, Edward Gabriel, MD, radiology. This is a bilateral mammogram.

69. 5/10/10, Robert Roth, MD, orthopedics. This is an orthopedics consultation. Subjective complaints note two year history of right LHE pain with three steroid injections relieving pain temporarily; lower back pain. Objectively, slight erythema to the right LHE; some defect to the common extensor origin in this area; severe pain to lateral right elbow; positive Cozen's test on the right; x-rays show slight calcification to the common extensor origin. The diagnosis is strain, right elbow common extensor origin. Treatment plan indicates tennis elbow strap; heat; home exercise plan; massage; rest; anti-inflammatories; follow up exam.

70. 7/20/10, Christopher Cummings, MD, radiology. This is a pelvic ultrasound.

71. 7/21/10, Edward Gabriel, MD, radiology. This is a right breast ultrasound.

72. 8/30/10, Linda Mar, MD, radiology. This is a pelvic ultrasound.

73. 11/11/10, Linda Mar, MD, radiology. This is a pelvic ultrasound.

74. 12/8/10, Maher Sadra, MD, surgery. This is a surgical consultation, reviewed page by page, one page, noting abdominal scar tissue, no hernia.

75. 10/10/11, Christopher Cummings, MD, radiology. This is a bilateral diagnostic mammogram.

76. 2012 - 2018, Kaiser Permanente. This is a series of flow sheets, nursing notes, orders and message/call logs, internal medicine office visits, progress notes, urgent care progress notes, new member forms, and lab results, reviewed page by page, approximately 535 pages, noting treatment for / diagnosis of: bunion on foot, umbilical hernia, ADD, liver cyst, pap smear, vaccines, abnormal labs, anxiety, enlarged uterus, pap smear, menorrhagia, screening for cancer (breast, cervix, colon cancer, skin), colposcopy, heart palpitations, melanocytic nevus, rash, acne, bilateral dry eye, bilateral epiphora, disorder of refraction, UTI, dehydration, low potassium, syncope, palpitations, postmenopausal bleeding, dermatitis, vaginal bleeding, eye discharge and redness, history of basal cell skin cancer, skin infection, rectal bleeding, cough, sore throat, right

COLLIER APL 0066

LIB000393

COLLIER, Vicki
October 24, 2018
Page 11

conjunctival cyst, postmenopausal atrophic vaginitis, genital wart, HPV screening, herpes simplex screening, onychomycosis, and vaginal irritation. Nothing pertinent from an orthopedic standpoint noted.

77.   7/17/12, Alan Karpman, MD, radiology.   This is an abdominal ultrasound.

78.   9/30/12, Christopher Stephens Patton, MD, radiology.   This is a pelvic ultrasound.

79.   11/08/12, Odin Ho Chan, MD, ob-gyn.   This is the results of a colposcopy.

80.   3/24/14, Vijayanti Kanker Reddy, MD, radiology.   This is an electrocardiogram.

81.   8/29/14, Esther Chuanwah Wang-O'Connell, MD, specialty not noted. This is a progress note.   Subjective complaints note anxiety; gets palpitations and has difficult time concentrating at work; **neck and low back pain for several months**; spot on nose that never heals. Objectively, BP 98/59; pulse 66; respirations 16; height 5'6"; weight 129 pounds.   The diagnoses are **neck pain**; anxiety; **back pain**; melanocytic nevus. Treatment plan indicates heat/ massage/ stretch for neck; physical therapy; given number to Kaiser mental health; dermatology. Work status is not noted.

82.   1/26/15, Linda Mar, MD, radiology. This is a bilateral foot x-ray. The impression is mild bilateral hallux valgus deformities; no evidence of acute fracture or dislocation; mild degenerative changes at the bilateral fist metatarsophalangeal joint.

83.   2/2/15, Christopher Cummings, MD, radiology. This is a bilateral mammogram.

84.   2/6/15, Christopher Cummings, MD, radiology. This is a pelvic ultrasound.

85.   2/27/15, Shohreh Sayani, DPM, podiatry. This is a new patient office visit. Subjective complaints note right foot bunion x 4 years; mild dull non-radiating pain in the morning with first step in right foot; toenail discoloration of both feet, distal tips (nail fungus); thickness at the end of toenails; may have limb length discrepancy. Objectively, subluxation of first MPJ bilateral feet with decreased range of motion and hypermobility at the first metatarsal cuneiform; pronated gait, left foot significantly compared to the right. The diagnoses are lower limb length difference; bunion, right; onychomycosis. Treatment plan indicates bone length x-ray studies; Ciclopirox external solution; *custom-made orthotics. Work status is not noted.*

COLLIER APL 0067

LIB000394

COLLIER, Vicki
October 24, 2018
Page 12

86.   3/11/15 – 7/9/15, Jihad Batah, MD, gastrointestinal.  This is a group of GI office visits and a colonoscopy appointment cancellation, reviewed page by page, approximately 6 pages, noting screening for colonoscopy with a cancellation of the procedure one time.

87.   3/27/15, Rebecca Patterson-Judd, MD, internal medicine.   This is an office visit. Subjective complaints note **right shoulder pain; limited range of motion of the right shoulder with outstretched distance then lifting.** Objectively, right shoulder range of motion in forward flexion and abduction is abnormal.   The diagnosis is **elbow enthesopathy.**  Treatment plan indicates home exercise plan; ice the area; **NSAIDs;** follow up exam.  Work status is not noted.

88.   4/14/15, Maritess Zareno, NP, nurse practitioner.  This is an office visit.  Subjective complaints note **several months of right shoulder pain in the deltoid area; pain in the right proximal forearm and posterior area above the elbow; pain is worse with sleeping and cannot sleep on right side; unable to sleep due to pain; upper back and neck pain; does a lot of typing.**  Objectively, **tenderness to palpation of the right proximal dorsal aspect of forearm; tenderness to palpation of right medial epicondyle; pain is elicited on active internal rotation without resistance, elevation through forward flexion without resistance and during and impingement test.**  The diagnoses are **shoulder pain, right deltoid; arm pain, dorsal mid FA and medial/posterior elbow.** Treatment plan indicates right shoulder x-rays; orthopedics referral; **Medrol pack; Norco;** follow up exam. Work status is not noted.

89.   4/14/15, Ruben Brechner, MD, radiology.  This is a right shoulder x-ray.  The impression is no acute osseous injury.

90.   4/14/15, Ruben Brechner, MD, radiology.   This is an x-ray of bone length.   The impression is femur length on the right 45.6 cm and left 44.9 cm; tibial length on the right 36.75 cm and left 36.7 cm.

91.   5/29/15, Charles Young, MD/Rebecca Patterson-Judd, MD, orthopedics.  This is an orthopaedic consultation.  Subjective complaints note right shoulder pain, up to 10/10, that is localized over the anterolateral shoulder and deltoid region and made worse with overhead activities, working out and sleeping on the right side; right shoulder stiffness; right shoulder pain radiates into the right elbow area; lower back pain; tinnitus. Objectively, tenderness to palpation in the right acromioclavicular joint; positive Neer's on the right; right shoulder range of motion 180/180/75/T12, 100/30 at 90 deg abduction; right elbow moderate tenderness to palpation at the lateral epicondyle; right elbow range of motion 0/140, 80/80 pronation/supination.   The diagnoses are

COLLIER APL 0068

LIB000395

COLLIER, Vicki
October 24, 2018
Page 13

subdeltoid bursitis, right; right lateral epicondylitis. Treatment plan indicates injection into right subacromial space; arthro aspiration major joint bursa; activity restriction post injection; ice; over-the-counter pain relievers; home exercise plan; follow up as needed. Work status is not noted.

92.    7/15/15, Magued Beshay, MD, gastrointestinal. This is a colonoscopy with biopsy. The impression is colonic polyps; diverticulosis coli; hemorrhoids.

93.    7/15/15, Quest Diagnostics. This is a biopsy result from colonoscopy.

94.    8/31/15, Dermatology Surgical Medical Clinic. This is a visit note, one page, noting angiomas and brown keratoses, benign, nose and legs.

95.    12/6/15, Christopher Hougen, MD, specialty not noted. This is an urgent care note. Subjective complaints note **right shoulder pain with decreased range of motion, especially abduction; right upper back pain.** Objectively, **slight tenderness to palpation, right anterior and posterior joint line; tenderness to palpation right deltoid; tenderness to palpation of the rhomboid, right side worse than left; tenderness to palpation at the paraspinous muscle.** The diagnoses are **chest pain; shoulder strain.** Treatment plan indicates chest x-ray; **Tylenol with codeine #3;** follow up exam. Work status is not noted.

96.    12/6/15, Michael Neglio, MD, radiology. This is a chest x-ray.

97.    2016 - 2018, Kaiser Permanente. This is a series of physical therapy rehab plans and progress notes, reviewed page by page, approximately 140 pages, noting treatment for the cervical spine, right shoulder, and left shoulder.

98.    2016 - 2018, Kaiser Permanente. This is a series of telephone and email notes, reviewed page by page, approximately 130 pages, recording appointments, questions and prescriptions in the neurology, family medicine and pain management departments.

99.    1/26/16, Esther Chuanwah Wang-O'Connell, MD, specialty not noted. This is a progress note. Subjective complaints note **right shoulder pain for two years, taking Tylenol #3 at night but would like Vicodin instead;** right nipple itching; toenail fungus; anxiety at work. Objectively, exam is unremarkable from a pain management standpoint. The diagnoses are routine adult health check up exam; screening; vaccination for influenza; **right shoulder joint pain;** onychomycosis; anxiety. Treatment plan indicates right

COLLIER APL 0069

LIB000396

COLLIER, Vicki
October 24, 2018
Page 14

shoulder x-ray; orthopedic referral; penlac; restart Celexa; dermatology. Work status is not noted.

100. 2/08/16, Sovanrith Tun, MD, orthopedics. This is a progress note. Subjective complaints note right shoulder pain; pain is anterolateral, moderate, positive night pain, worse with reaching and lifting. Objectively, right shoulder range of motion is abduction 90; forward flexion 90, external rotation 70, internal rotation 30; positive impingement; contralateral shoulder range of motion is abduction 90, forward flexion 90, external rotation 70, internal rotation 30; X-ray is within normal limits. The diagnosis is right shoulder rotator cuff syndrome. Treatment plan indicates activity modification, ice, possible arthroscopy, cortisone injection performed in office, Norco prn. Work status is not noted.

101. 2/9/16, Jennifer Kim, MD, radiology. This is an X-ray of right shoulder. The impression is no significant abnormality.

102. 2/20/16, David Robinson, MD, radiology. This is an abdominal ultrasound.

103. 4/17/16, Alan D Jacknow, MD, endocrinology. This is a bone density scan for hip and spine.

104. 6/15/16, Esther Chuanwah Wang-O'Connell, MD, specialty not noted. This is a progress note. Subjective complaints note fainted last week; feels like she is wearing a hat on her head; **neck pain**. Objectively, **tenderness to palpation trapezius muscle**. The diagnoses are **neck pain**; history of syncope; palpitations. Treatment plan indicates physical/ occupational therapy. Work status is not noted.

105. 8/29/16, Andrea Dai Chang, MD, pathology. This is a surgical pathology for endometrium biopsy.

106. 9/27/16, Kari Kristine Scott, MD, family practice. This is an office visit. Subjective complaints note **back pain and neck pain for one week and back pain for one week, acute upon chronic (2-3 years); has right arm pain; has had right shoulder pain in the past; pain level is 8/10.** Objectively, **mildly limited neck range of motion noted; unable to extend head without shooting pain down back; mild tenderness to palpation at base of skull; back notes mild tenderness to palpation right medial scapula; tenderness to palpation over right lateral and anterior shoulder; points to lateral right arm down to right proximal forearm as an area of radiation.** The diagnoses are **right neck pain with possible cervical radiculopathy**. Treatment plan indicates **prednisone**

COLLIER APL 0070

LIB000397

COLLIER, Vicki
October 24, 2018
Page 15

pack and tramadol; follow up with primary care provider this week. Work status is full duty.

107.    10/05/16, Dilipkumar H. Shaw, MD, physical medicine and rehabilitation. This is a new patient exam. Subjective complaints note claimant presents with neck pain and pain in right upper back area for three weeks; no history of injury; pain is constant, radiates to right upper extremity, associated with numbness and tingling in the right hand, dull, increases with movement of neck. Objectively, neck and right upper trapezius area are tender to palpation; neck notes spasm; cervical range of motion notes limited extension and lateral rotation. The diagnosis is cervical radiculopathy. Treatment plan indicates order MRI of C-spine; advised claimant on posture, local heat, stretching, etc.; Meloxicam, Flexeril; refer to physical therapy.    Work status is not noted.

108.    10/10/16, Saeed Yadegar, MD, radiology. This is an MRI of the cervical spine. The impression is there is straightening of normal lordotic curvature, usually secondary to muscle spasm; there is a 1mm broad-based posterior disk bulge at C3-C4 level indenting the anterior aspect of the thecal sac; there is a 2mm central posterior disk protrusion at C4-C5 level causing pressure over the anterior aspect of the thecal sac; there is a 2mm broad-based posterior disk / endplate osteophyte complex at C5-C6 level causing pressure over the anterior aspect of the thecal sac; there is a 2mm broad-based posterior disk protrusion at C6-C7 level causing pressure over the anterior aspect of the thecal sac; there is mild narrowing of the left neural foramen and moderately significant narrowing of the right neural foramen.

109.    1/17/17, Esther C. Wang-O'Connell, family practice. This is an office visit. Subjective complaints note **bilateral shoulder pain for 3-4 weeks; also having a headache for 2 years, feels like there is a helmet on her head; gets occasional palpitations; yoga is helping with neck pain, has not required epidural.** Objectively, exam notes **joint pain, headaches.** The diagnoses are **headache; bilateral shoulder joint pain; palpitations;** screening. The treatment plan indicates order electrocardiogram; reduce caffeine; order labs. Work status is not noted.

110.    1/17/17, Esther C. Wang-O'Connell, MD, family practice. This is an EKG.

111.    2/16/17, Sonu Malik Brara, MD, neurology. This is progress notes. Subjective complaints note headaches; feels like she is wearing a helmet, all the time; also has left side neck spasm; vise-like sensation on her scalp, pressure sensation; also has back pain, right arm pain, for which she has seen primary and orthopedics. Objectively, exam is

COLLIER APL 0071

LIB000398

COLLIER, Vicki
October 24, 2018
Page 16

unremarkable. The diagnosis is tension headache. Treatment plan indicates trial of muscle relaxant and gabapentin; refer to acupuncture. Work status is not noted.

112.    2/16/17, Sovanrith Tun, MD, orthopedics. This is an office visit. Subjective complaints note increasing pain in right shoulder over past two months; pain is moderate. Objectively, exam is unremarkable. The diagnosis is right shoulder rotator cuff syndrome. Treatment plan indicates activity modification, ice, right shoulder cortisone injection given in office; ibuprofen. Work status is not noted.

113.    3/02/17, Sonu Malik Brara, MD, neurology. This is a telephone consultation. Subjective complaints note left sided headaches and arm pain; claimant called to request increased medication. Objectively, exam is not noted. The diagnosis is not noted. Treatment plan indicates increase gabapentin; start Flexeril. Work status is not noted.

114.    4/03/17, Michael Van Tran, MD, family medicine. This is an EKG.

115.    5/03/17, Michael Van Tran, MD, family medicine. This is an ECG with wearable monitor.

116.    6/09/17, Esther C. Wang-O'Connell, family practice. This is an office visit. Subjective complaints note **neck pain, shoulder pain, leg pain; bilateral lower leg pains for one month; still having neck pain, thinks headaches are because of neck pain; still having right shoulder pain**; requesting letter for work to get ergonomic workspace; also has ringing in the ears for years but getting worse. Objectively, exam notes **neck pain**. The diagnoses are **cervical radiculopathy; bilateral leg pain**; bilateral subjective tinnitus. Treatment plan indicates **refer to pain management**; refer to audiology; Voltaren gel. Work status is not noted.

117.    6/12/17, Paymann Moin, MD, radiology. This is an MRI of the right shoulder, no contrast. The impression is 9 mm AP approximately 50% partial-thickness articular surface supraspinatus tendon tear on a background of moderate tendinosis; infraspinatus and superior fiber subscapular mild tendinosis; proximal long head of biceps mild tendinosis; minimal subacromial subdeltoid bursitis; acromioclavicular joint osteoarthritis.

118.    6/30/17, Martine D. Parekh, AUD, audiology. This is a office visit. Subjective complaints note history of bilateral sudden hearing loss; claimant reports in past steroid injections restored hearing; bilateral tinnitus and some dizziness for a few days. Objectively, exam notes mild hearing loss at **12,500 Hertz** in right and left ear. The diagnosis is bilateral

COLLIER APL 0072

LIB000399

COLLIER, Vicki
October 24, 2018
Page 17

high frequency sensorineural hearing loss. Treatment plan indicates follow up with primary care doctor; audio re-test in 2-3 years. Work status is not noted.

119. 6/30/17, Harrison Kibe, MD, pain management. This is an office visit. There is a record review: nothing pertinent from a pain management standpoint not previously noted. Subjective complaints note cervicalgia with right-sided cervical radiculopathy; pain is radiating down the right shoulder to the right arm and forearm, with associated paresthesias and numbness in the middle right hand digits; reports some tingling/paresthesias in both feet, which is chronic and predates the cervical radiculopathy; has localized right shoulder pain, particularly with range of motion. The diagnoses are cervical radiculopathy; cervical disc herniation. Treatment plan indicates cervical epidural steroid injection. Work status is not noted.

120. 6/30/17, Harrison Kibe, MD, pain management. This is an operative report. The pre-operative diagnosis is cervical radiculopathy; cervical spinal stenosis; cervical degenerative disc disease. The post-operative diagnosis is cervical radiculopathy; cervical spinal stenosis; cervical degenerative disc disease. The procedure is C7-T1 interlaminar cervical epidural steroid injection (right paramedian); intraoperative fluoroscopy.

121. 7/10/17, Sovanrith Tun, MD, orthopedics. This is a telephone appointment visit. Subjective complaints note need to review right shoulder MRI with claimant. Objectively, MRI shows non-traumatic partial right rotator cuff tear. The diagnosis is non-traumatic partial right rotator cuff tear. Treatment plan indicates claimant declines physical therapy; request right shoulder arthroscopy, rotator cuff repair; Norco. Work status is not noted.

122. 7/19/17, Sylvia Ramsis Hanna, DO, family medicine. This is a progress note. Subjective complaints note claimant is concerned about black mold in her office; employer has confirmed black mold is growing inside walls; complaints of headaches, nasal congestion, head heaviness; she did not have these symptoms on vacation, but they presented again when she returned to work. Objectively, exam is unremarkable. The diagnosis is exposure to mold. Treatment plan indicates refer to immunology / allergy for specific black mold testing, if available. Work status is not noted.

123. 7/20/17, Sovanrith Tun, MD, orthopedics. This is an office visit. Subjective complaints note right shoulder pain for 3 years; pain is anterolateral, moderate, positive for night pain, aggravated by reaching and lifting. Objectively, exam is unremarkable; MRI shows right shoulder partial rotator cuff tear. The diagnosis is non-traumatic partial right

LIB000400

COLLIER, Vicki
October 24, 2018
Page 18

rotator cuff tear. Treatment plan indicates right shoulder arthroscopy, rotator cuff repair; Transderm-Scop patch, Norco; sling. Work status is off work post surgery; no use of right arm.

124. 7/25/17, Sovanrith Tun, MD, orthopedics. This is an operative report. The preoperative diagnosis is right shoulder partial rotator cuff tear. The post-operative diagnosis is right shoulder partial rotator cuff tear, subscapularis tendon; partial intratendinous supraspinatus tendon tear. The procedure was right shoulder arthroscopic rotator cuff repair; subacromial decompression.

125. 8/08/17, Sovanrith Tun, MD, orthopedics. This is an office visit. Subjective complaints note two weeks status post right rotator cuff repair; mild pain; going to physical therapy. Objectively, abduction 45, forward flexion 45, external rotation 45, internal rotation 5. Treatment plan indicates physical therapy, sling, Norco. Work status is modified activity: no use of right arm.

126. 9/07/17, Sovanrith Tun, MD, orthopaedics. This is a work status report: claimant is off work from 7/25/17 - 10/31/17 due to rotator cuff repair surgery.

127. 9/28/17, Sovanrith Tun, MD, orthopaedics. This is an office visit. Subjective complaints note eight weeks status post right rotator cuff repair; mild pain; going to physical therapy. Objectively, abduction 75, forward flexion 75, external rotation 60, internal rotation 5. Treatment plan indicates physical therapy, increase activities as tolerated. Work status is not noted.

128. 11/30/17, Sovanrith Tun, MD, orthopaedics. This is an office visit. Subjective complaints note claimant is having increased pain in right shoulder; working long hours again. Objectively, right shoulder range of motion is abduction 90, forward flexion 80, external rotation 60, internal rotation 15. The diagnosis is non-traumatic partial right rotator cuff tear. Treatment plan indicates cortisone injection done in office; continue Gabapentin, Flexeril, Celexa. Work status is not noted.

129. 12/10/17, David Robinson, radiology. This is a pelvic ultrasound exam within normal limits.

130. 12/10/17, Eli A. Pakravan, radiology. This is a mammogram.

131. 2/01/18, Sovanrith Tun, MD, orthopaedics. This is an office visit. Subjective complaints note claimant having increased right shoulder pain; pain at anterior chest, lateral

COLLIER APL 0074

LIB000401

COLLIER, Vicki
October 24, 2018
Page 19

deltoid, elbow and forearm; cortisone injection did not help. Objectively, right shoulder range of motion is abduction 90, forward flexion 90, external rotation 60, internal rotation 15. The diagnosis is right shoulder interstitial partial tear. Treatment plan indicates physical therapy; increase activities as tolerated; possible repeat shoulder arthroscopy. Work status is not noted.

132.    2/01/18, Sovanrith Tun, MD, orthopaedics. This is an office visit. Subjective complaints note left shoulder pain; claimant requesting cortisone injection; pain is in left lateral deltoid; pain is moderate, not improving, worse with reaching and lifting. Objectively, left shoulder range of motion is abduction 90, forward flexion 90, external rotation 70, internal rotation 30; left shoulder notes positive impingement, positive Hawkin's; right shoulder range of motion is abduction 90, forward flexion 90, external rotation 70, internal rotation 30. The diagnosis is left shoulder rotator cuff syndrome. Treatment plan indicates Meloxicam, possible left shoulder arthroscopy; left shoulder cortisone injection done in office. Work status is not noted.

133.    2/20/18, Pelletier and Associates. This is an ergonomic intervention report recommending equipment such as an ergonomic chair, height adjustable workstation and telephone headset to adjust to claimant's neck, shoulders, hands / wrists, back, hips, legs and feet.

134.    3/23/18, Sonu Malik Brara, MD, orthopaedics. This is an office visit. Subjective complaints note headaches, neck pain, ringing in ears, constant pressure sensation on the scalp, almost daily; stopped taking Gabapentin after shoulder surgery. Objectively, exam is unremarkable. The diagnosis is tension headache. Treatment plan indicates restart Gabapentin; request MRI of brain; trial of Botox. Work status is not noted.

135.    3/27/18, Sharam Gharibshahi, MD, neurology. This is an office visit. Subjective complaints note present for Botox treatment; chronic headache. Objectively, exam is unremarkable. The diagnosis is chronic daily headache. Treatment plan indicates administer Botox in office; keep headache diary. Work status is not noted.

136.    4/27/18, State of California, Division of Workers' Compensation. This is an Application for Adjudication of Claim noting cumulative date of injury as 7/13/13 - 7/24/17, in which the claimant has suffered injuries to her shoulders, back, neck, upper extremities, lower extremities, internal hemorrhoids, and headaches due to repetitive computer work in her job as a sales agent for the Automobile Club of California.

COLLIER APL 0075

LIB000402

Case 8:20-cv-00839-JVS-KES Document 17-1 Filed 01/29/21 Page 403 of 630 Page ID #:465

COLLIER, Vicki
October 24, 2018
Page 20

137. 5/14/18, Sovanrith Tun, MD, orthopaedics. This is an office visit. Subjective complaints note bilateral shoulder pain; left shoulder cortisone injection helped; moderate pain. Objectively, bilateral shoulders range of motion is abduction 90, forward flexion 90, external rotation 70, internal rotation 20; impingement positive. The diagnosis is bilateral shoulder rotator cuff syndrome. Treatment plan indicates activity modification; Meloxicam, Norco. Work status is modified activity: no typing, no use of both shoulders and arms.

138. 7/06/18, Sovanrith Tun, MD, orthopaedics. This is an office visit. Subjective complaints note persistent pain in bilateral shoulders; stopped pain medications; does physical therapy at Henry Mayo. Objectively, bilateral shoulder range of motion is abduction 90, forward flexion 90, external rotation 70, internal rotation 20; impingement positive. The diagnosis is bilateral shoulder rotator cuff syndrome. Treatment plan indicates Treatment plan indicates activity modification; Meloxicam; bilateral shoulder cortisone injections performed in office; possible right shoulder arthroscopy, rotator cuff repair if pain persists. Work status is not noted.

139. 7/20/18, Shahram Gharibshahi, MD, neurology. This is an office visit. Subjective complaints note chronic headache; presents for Botox treatment; feels Botox helped before, has had no migraines for past 3 months; minor pain; lots of tension on shoulders. Objectively, exam is not noted. The diagnosis is chronic migraine. Treatment plan indicates Botox injections in office; keep headache diary. Work status is not noted.

140. This is a deposition of Vicki Collier, dated 8/23/18, 73 pages.
This was reviewed page by page.
Pages 6 - 7, rules of the deposition are discussed.
Page 8, claimant answers questions about past medical history: no workers' compensation cases, one personal injury case of "dog bite" to the right "back thigh," resolved.
Page 13-14, states her employment with Auto Club of California was "June 13, 2013... May 15, 2018."
Pages 15 - 21, discusses her work schedule and the nature of her job tasks, primarily computer work, paper work and phone work.
Page 26, denies past motor vehicle accidents.
Page 27, states that she began to see "Dr. Good," a chiropractor, in 2017, for her "back, shoulders, neck."
Page 29, states that she has received acupuncture through Kaiser, at another facility, but does not feel that it helped "my back, my neck, my shoulders."

COLLIER APL 0076

LIB000403

COLLIER, Vicki
October 24, 2018
Page 21

Page 31, states that she received an epidural to her "upper back... after my surgery... I didn't get any relief."

Page 35, states that her right shoulder symptoms began "approximately two years ago... when I was sleeping, it would pound like a headache and I couldn't roll over. It would wake me up in the middle of the night, excruciating pounding."

Page 37, states that at the same time as the right shoulder pain, she was having symptoms in "my neck, lower extremities, tingling in my legs... left side is worse... when you're sitting for a long period of time, [I] get a tingle... sometimes numbness... around the feet."

Page 39, mentions that "maybe somewhere in the beginning of 2017," at the same time as her MRI, a medical professional "gave me a doctor's note for my desk to be ergonomically correct. To be reevaluated and to correct it to alleviate pain."

Page 39, states that she also feels "like I have a helmet on my head. I feel this pressure on my head... this heaviness. Like I'm wearing a helmet."

Page 40-45, discusses the physical circumstances of her office, including the height of the desk, location of the computer, the lack of a working phone head set, a chair that wouldn't adjust.

Page 45-46, states that the chair caused her "hemorrhoids... no back support in the chair... no lumbar support."

Page 47-48, describes the "pounding" in her right shoulder as located above the biceps, "and goes all the way down into my elbow and my forearm." States that she would rate that pain as 5/10 at that time.

Page 49-52, confirms that she received the an ergonomic evaluation in February, 2018, and states that "sometime in April [2018]... end of March, April" she received new equipment at work such as a document reader, a vertical mouse, a new keyboard and a new                                                                                   chair.

Page 53, states that before the ergonomic evaluation, "my shoulder started hurting in December again... my right shoulder... And then my left shoulder started hurting and I started getting the pounding in my left shoulder. Same exact pounding, same exact area... January-February, somewhere around in that area."

Page 54-55, describes receiving a cortisone shot from Dr. Tun, "I think it lasted like six, maybe eight weeks."

Page 55, states that in March and April of 2018 she was also experiencing pain in "my neck, my shoulders..." Confirms that the neck pain was primarily the left side. "My clavicle... right under there... there is a pain that shoots from my shoulder and goes across that whole area."

Page 56, states that after receiving the new equipment at work, she was "getting worse. My left arm was getting worse... it was an ongoing situation... one or two times

COLLIER APL 0077

LIB000404

COLLIER, Vicki
October 24, 2018
Page 22

they gave me a new [phone] head set, but it would still go out, and there there's times that it was ignored."

Page 56, confirms that her doctor recommended a second surgery on the right shoulder, "it's scheduled for October."

Page 61, states that Dr. Tun is "only treating the shoulders."

Page 63, states that "a desk was supposed to be ordered and it never was. So they were changing my desk to a sitting / standing desk... [my manager] said that they had ordered one special for me." States that the desk did not arrive.

Page 66, states that right and left shoulder bother her "equally... the cortisone shots helped, but it diminishes... [the pain] is a pounding sensation and it limits my mobility, my range of motion... could be a 6/7 [on a pain scale of 1-10]... there's been times that it would be a 9, 10.

Page 66-67, states that the right shoulder pain travels "through the elbow in my forearm... my left shoulder, it just goes down right here [not as far]."

Page 67, describes neck pain as more on left side than right side, and "it's pretty constant."

Page 69, confirms that she still has a tingling sensation in her legs, "I have it right now."

Page 70, states that she has no plans to have surgery on her hemorrhoids, but "they said I could. If it was bothering me, that I should and could."

**DISCUSSION:**

As you are aware, I gave my QME report on October 11, 2018 when the examinee came into my office for examination and she gave me a history. I had no medical records available to me for review and to match her history. Apparently she is claiming a continuous trauma claim from 2013 to July 24, 2017 when she claims that she was working in the AAA where she was not given any ergonomic seat and furniture and it caused pain to her right shoulder for which she sought medical treatment from Dr. Tun, orthopedic surgeon on October 2017.

She claimed that her pain in the neck, shoulder, lower extremities and headaches and pain in the forearm and elbows and shoulder blade, etc., along with the hemorrhoids, are all secondary to the continuous trauma during her work between 2013 to 2017 at the AAA office.

She also gave a history on January or February 2018, she had bleeding hemorrhoids and she fainted. She was advised to have colonoscopy, which she refused to have at that time because she had one sometime before 2013 or 2014.

Now, I have received her medical records and there are a lot of differences between her history provided to me at the time of the October 11th examination and the medical records provided

LIB000405

COLLIER, Vicki
October 24, 2018
Page 23

---

to me. I have two sets of medical records starting from the year 2002 all the way to 2018 with almost 2000 pages and I have reviewed the medical records and as per her history she injured her shoulder in October 2017 as she had told me that she was visiting Mexico sometime in 2016 and that is when she hurt herself in the neck and the left shoulder. However, when I reviewed the history from the previous years, the first time she complained about pain in her shoulder was in March 27, 2015 medical records, she complained to her internal medicine physician, Dr. Patterson-Judd that she had a right shoulder pain ongoing for several months and also she had elbow pain ongoing for several months and she was treated conservatively with medications like Norco as well as Medrol pack.

Also reviewing the history of past between 2002 to 2008, she has a history of hemorrhoids ongoing for several years in the medical records, complaining to her family physicians. I also noticed from the medical records that she has been having pain in her neck as well as lower back for several years as far back as 2007 for the lower back and 2009 for the neck and shoulder pain.

Since May 16, 2018, she has been on total temporary disability.

Over the last 16 years, she has received several treatments with chiropractic treatment for her different musculoskeletal problems including the neck and the lower back, right shoulder especially in the past 10 years or so, which is reflected in her medical records sent to me. Present complaints, please refer to my PQME report on October 11, 2018, she does complain of pain in the neck, lower back and complains that she has healed hemorrhoids, however, she is presently trying to claim the continuous trauma, with all these present complaints.

Please refer to the rest of my physical examination as well as the history from the PQME report and now I will address the following:

**CAUSATION:**

As regards causation, her symptoms of low back pain and neck pain as well as hemorrhoids are way prior to the job she took in Automobile Club of Southern California. She has her medical records from 2002 onwards and apparently she had started complaining of these symptoms sometime during 2005 to 2009 and it is my medical opinion that the back pain and the neck pain as well as hemorrhoids are not out of this employment.

As regards to her right shoulder, she started complaining of right shoulder pain on March 27, 2015, then she was treated conservatively after that.

COLLIER APL 0079

LIB000406

COLLIER, Vicki
October 24, 2018
Page 24

On June 9, 2017, she started having more pain in her right shoulder and the MRI done on June 12, 2017, showed torn rotator cuff with mild tendinosis and subacromial and subdeltoid bursitis. She was also having cervical radiculopathy and she was seen by Dr. Kibe in Pain Management on June 30, 2017 and the treatment plan for the cervical radiculopathy with cervical epidural injection and eventually on July 20, 2017, she was given right shoulder arthroscopic surgery with rotator cuff tear.

It is my medical opinion with reasonable probability that the right shoulder injury is related out of employment, as a continuous trauma from March 27, 2015 to July 25, 2017. *current 2019*

## PERMANENT AND STATIONARY:

It is my medical opinion that she has reached permanent and stationary regarding her right shoulder since October 31, 2017. *Dr claims rt shoulder was worse related and now states not going to get better, which means I live w/ pain rt shoulder*

**APPORTIONMENT:** *rt shoulder and cannot work as it hurts to do repetitive motion · hours worked 50-60 a week*

It is my medical opinion with reasonable probability that there is no apportionment for the right shoulder injury.

As regards her neck and lower back and claim for the hemorrhoids, this is a 100% nonindustrial trauma as she already had pre-existing disease prior to this employment. *A MRI to rt was done on left arm/lower extremities shouldn't use...consider pain...injury could have been caused...diagnosis...error not reject*

**WHOLE PERSON IMPAIRMENT:**

Using the AMA Guides, Fifth Edition:

Regarding her lower back, I used the DRE method, Table 15-3 and I gave her 0%.

Regarding her cervical spine, I used the DRE Method and gave her Category II with 5% whole person impairment.

Shoulders, I used the Range of Motion Method and 0% for the left shoulder. *Left shoulder was causing pain more than right shoulder*

For the right shoulder, using Range of Motion Method with Table 16-40 for flexion of under 70 degrees 1% upper extremity impairment, for extension 40 degrees 1% upper extremity and using Table 16-43 for abduction 110 degrees I gave 3% upper extremity and for adduction of 30 degrees 1% upper extremity and using Table 16-46 with external rotation of 40 degrees, I

COLLIER APL 0080

LIB000407

*[Handwritten annotation at top, partially illegible:]* How can this ... im real ... Ko ser dr grodated sero ... for N Shoulder e possibly le ... Ni use of shoulders and no ... dr ... ye Cant reach 2bse mod and no ... g 20 ... Certain motors sleeping on shoulder ...

COLLIER, Vicki
October 24, 2018
Page 25

---

gave 1% upper extremity and total upper extremity impairment is equal to 7% and that will equal to 4% whole person impairment as per 16-3 Table on Page 439.

Although, the cervical spine is 100% nonindustrial, with her total impairment of 5% plus the upper extremity 4% using combined value table on Page 604, she has a 9% whole person impairment.

**FUTURE DISABILITY:**

*[Handwritten: See above]*

Presently, she is healing from the shoulder surgery and she should avoid any heavy lifting more than 20 pounds and reaching above her head and follow up would be advised by an orthopedic surgeon who did the shoulder surgeries.

**FUTURE MEDICAL NEEDS:**

She might need physical therapy between 6 to 12 sessions for any aggravated pain in her shoulder for the next 12 months. *[Handwritten: Might? How can he determine about any retesting on right shoulder & No testing on left shoulder and/or lower extremities]*

Please contact me if I can be of further assistance.

**COMPLIANCE DISCLOSURE STATEMENT**

I certify that I reviewed all available medical records, and composed and drafted the conclusions of this report. If others have performed any services in connection to this report, outside of clerical preparation, their names and qualifications are noted herein. An initial excerpting of the medical records was completed by Eric Roy. Eric Roy is trained in medical record excerpting. In combination with the examination, the excerpts and records were reviewed to define the relevant medical issues. The conclusions and opinions within this report are solely mine. I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true. In accordance with Labor Code Section 5703(a) (2), there has not been a violation of Labor Code Section 139.3, and the contents of the report are true and correct to the best of my knowledge. This statement is made under penalty of perjury.

*[Handwritten margin note: False!! He had my medical records of two ...]*

COLLIER APL 0081

COLLIER, Vicki
October 24, 2018
Page 26

Pursuant to 8 Cal. Code Regs. Section 49.2-49.9, I have complied with the requirement for face-to-face time with the patient in this evaluation. If necessary, I have discussed apportionment in the body of this report. If I have assigned disability caused by factors other than the industrial injury, that level of disability constitutes the apportionment. The ratio of nonindustrial disability, if any, to all described disability represents my best medical judgment of the percentage of disability caused by the industrial injury and the percentage of disability caused by other factors, as defined in Labor Code Section 4663 and 4664.

Sincerely,

Ripu Arora, M.D.
Diplomate, American Board of Anesthesiology,
Pain Management, Qualified Medical Evaluator

Date: 01/03/2019          County: Los Angeles, CA

RA:ANS/aml:12/26/18

2003 - saw dr 2xs ① left side hurting - related to carrying heavy @pullup injury
2005 - upper respitory - followup - 2 visits
2006 - 2 visits - back & neck - conclude - saw due to stress
2007 - diagnosed scoliosis - cervical curvature - PT - exercises at home
2008 1 time - elbow tendinitis
2009 2xs L5 slight abnormality / lower back
2010 - 2xs - strain elbow - advise follow up next month

2010 - 2014 - No visits related back, neck, shoulders

2014 - 2018 - 25 visits regarding back, neck, shoulders, hip, leg
w/ shoulders cortisone shots, epidural, PT, acupuncture

Hire date 2013

What human being has not seen a doctor at some point in their life that needed neck, elbow, knee, hip, foot that has caused pain time to time or needed medical attention especially a woman who has had 3 pregnancies, carrying babies etc. what woman ... those visits were not persistent nor ongoing as the dr claimed. If you look at the history from hire date then you see a pattern ... could have aggravated any small problem I ... They ignored my requests over →

COLLIER APL 0082

LIB000409

**Ripu Arora, M.D.**
**Diplomate of American Board of Anesthesiology, Pain Management**
**Qualified Medical Evaluator**

---

**PANEL QUALIFIED MEDICAL EVALUATION**
**IN PAIN MANAGEMENT**

October 11, 2018

Miguel Mendoza, Claims Adjuster
CCMSI
P.O. Box 53550
Irvine, CA 92619

Robert L. Palty, Attorney-at-Law
LAW OFFICE OF ROBERT L. PALTY
6345 Balboa Blvd Bldg 1, Suite 211
Encino, CA 91316

Bruce A. Little, Attorney-at-Law
LAW OFFICES OF PARKER & IRWIN
348 W. Hospitality Lane, Suite 202
San Bernardino, CA 92408-3242

RE:        COLLIER, Vicki
CASE #:    20568712
SS #:      ██████████
CLAIM #:   18719439
WCAB #:    ADJ11297306
PANEL #:   7202878
D/I:       CT 07/13/2013 – 07/24/2017
D/E:       10/11/2018
EMP:       Automobile Club of Southern California

To Whom It May Concern:

Vicki Collier was seen for a Panel Qualified Medical Evaluation in Pain Management, as scheduled, on October 11, 2018, at our Van Nuys office located at 15350 Sherman Way, Suite 240, Van Nuys, CA 91406.

The following report summarizes my findings and my opinion on diagnosis as well as the issues of causation, disability and apportionment, if any, in relation to the reported injury sustained by Vicki Collier while employed by Automobile Club of Southern California.

---

15350 Sherman Way, Suite 240, Van Nuys, CA 91406
(800) 382-5362    Fax: (818) 891-9672

NOV 1 3 2018

COLLIER APL 0083

LIB000410

RE:  COLLIER, Vicki
October 11, 2018
Page 2

This report is submitted pursuant to 8 Cal Code of Regs. Section 9795 (b) and (c) as an ML-102-95, Qualified Basic Comprehensive Medical-Legal Evaluation. Total time spent face to face with the claimant was 2 hours.

**HISTORY:**

History of Injury:  As I am examining the examinee today, there have been no medical records available to me and the history is taken purely from the examinee.  Apparently, on July 25, 2017, she had a right shoulder surgery, rotator cuff repair, and she was working since November 1, 2017 after the repair of the rotator cuff.  However, on November 30, 2017, she started getting pain on the right shoulder and she went to see her orthopedic surgeon, who gave her a cortisone injection, which helped her.

She says that she was visiting Mexico in 2016 and at that time she had some neck pain radiating to her left shoulder and left arm to the middle finger and she came back to see the Kaiser physician who examined her with an MRI and diagnosed her with a cervical C5-6 disc herniation and she was treated with a cervical epidural injection.

On February 16, 2017, she was seen by a neurologist at Kaiser due to the right-sided shoulder pain and advised to have an ergonomic seat and furniture in the office where she was working, but she was not provided one.  So, apparently in October 2017, she saw Dr. Tun, Orthopedics, for her right shoulder pain, who again recommended the ergonomic furniture.

Her claim is pain in her neck, shoulder, and lower extremities, hemorrhoids – internal and external, headaches, forearm, elbows, and shoulder blade pain and upper back pain because of the lack of the ergonomic furniture provided to her at the work location.

She says that she was seeking medical attention at that time but did not realize it was work related until she was advised that she should seek this as a part of the work-related injuries.

In January or February of 2018, she had bleeding hemorrhoids and she fainted twice, once in a restaurant and once at work.  She was advised to have a colonoscopy but she refused to have one in 2018 because she said she had one in three/four years prior to that and she was told that she has diverticulosis and that it is normal.

She was getting treatment in Kaiser for neck injury and pain in the right shoulder.

She apparently had right shoulder steroid injection three times, which is not helping, and she also had cervical epidural injection for the neck pain and the shoulder pain.

COLLIER APL 0084

**LIB000411**

RE: COLLIER, Vicki
October 11, 2018
Page 3

**HISTORY: (Cont'd)**

Again, I have no medical records available to me to compare her personal history provided to me with the medical records.

History of medications, she was given Norco, meloxicam, cyclobenzaprine, MiraLax, and gabapentin. She also had physical therapy for three months.

On July 25, 2017, she had a rotator cuff tear repair on the right shoulder by the orthopedic surgeon.

She claimed she had an MRI of the neck and the shoulder but I have no records available.

November 1, 2017 when she went back to work after the right shoulder rotator cuff repair was healed, she developed throbbing pain on November 30, 2017, which recovered with a cortisone injection.

In February 2018, she claimed she started having left shoulder pain and she was again given a cortisone injection. She was off work until March 2018. She does not remember any MRI done on her left shoulder.

Periods of temporary disability, July 26, 2017 to November 1, 2017, after a rotator cuff repair on the right shoulder.

May 16, 2018 to current, she is on temporary disability.

She has been doing physical therapy and chiropractic treatment with Botox injection to the neck and head and also is being treated at Kaiser with a neurologist, orthopedic surgeon, and primary care physician.

**JOB DESCRIPTION:**

She works as a sales agent and she was hired in AAA Auto Club in June of 2013 and last worked on May 15, 2018. Her job included obtaining sales goal, process application services to existing clients, obtaining membership goal, service personal customers, and 99% of her work was on the computer, receiving phone calls, cradling the phone on her left shoulder.

She was working on a commission and her job sometimes included reaching, bending and twisting.

Previous employment, from 2007 to 2018, she worked in Farmers Insurance, and from 2012 to 2013, she worked in Cumbre Insurance as independent contractor.
She denies any history of injury at previous employment.

COLLIER APL 0085

LIB000412

RE:  COLLIER, Vicki
October 11, 2018
Page 4

**HISTORY OF AUTOMOBILE ACCIDENTS:**

None.

**PRESENT COMPLAINTS:**

She is complaining of,

1. Neck pain and gets headache, which has gone since the Botox injections.

2. Lower back pain.  Recently she claimed that the pain is worse when driving and sitting, especially on her buttocks area, and she also felt that the pain was worse when she was driving to San Luis Obispo three to four hours or having a flight to Chicago for four hours.

3. Hemorrhoids, which are healed.

   Pain in the different areas of head, neck and buttocks is 6-7/10 and sometimes reaches 10/10 on the Visual Analog Scale.  It is in the form of achiness and stabbing pain in the upper arms and her lower back pain going towards the buttocks and in the posterior lower extremities and the feet in the form of achiness, numbness, and pins and needles.

   Her pain feels like a pressure-like tightness, sometimes sharp stabbing.  She has a pain that is aggravated on twisting, looking up, reaching or sitting.

COLLIER APL 0086

LIB000413

RE:  COLLIER, Vicki
October 11, 2018
Page 5

## ACTIVITIES OF DAILY LIVING:

**ACTIVITIES OF DAILY LIVING COMMONLY MEASURED IN ACTIVITIES OF DAILY LIVING (ADL)**

Patients Name: Vicki Collier                         Date:

**PATIENT HAS DIFFICULTY WITH:**
(Mark with an X below and explain where indicated)

| Category of Activity | Activity | Without Difficulty | With Some Difficulty | With Much Difficulty | Mostly unable to do |
|---|---|---|---|---|---|
| SELF-CARE, Personal hygiene (urinating, defecating, brushing teeth, combing hair, bathing, dressing oneself, eating) | 1.Take a shower | | | | |
| | 2.Take a bath | | | | |
| | 3.Wash & dry body | | | | |
| | 4.Wash & dry face | | | | |
| | 5.Turn on/off faucets | | | | |
| | 6.Brush teeth | | | | |
| | 7.Get on/off toilet | | | | |
| | 8.Comb/brush hair | | X | | |
| | 9.Dress self | | | X sports bras | |
| | 10.Put on/off shoes/socks | | | | |
| | 11.Open carton of milk | | | | |
| | 12.Open a jar | | X | X depends on jar | |
| | 13.Lift glass/cup to mouth | | | | |
| | 14.Make a meal | | | | |
| | 15.Lift fork/spoon to mouth | | | | |
| | Describe other: (bladder/bowel function difficulties: incontinence, retention, constipation?) | | | | |
| PHYSICAL ACTIVITY (standing, sitting, reclining, walking, climbing stairs) | 1.Stand | | | | |
| | 2.Sit | | | X long periods of time over a hour | |
| | 3.Recline | | | | |
| | 4.Rise from chair | | | X above | |
| | 5.Get in/out of bed | | | X above | |
| | 6.Climb flight of 10 stairs | | | X above | |
| | 7.Work outdoors | | | | |
| | 8.Light housework | | | | |
| | 9.Shop/do errands | | | | |
| | 10.Carry groceries | | | | |
| | 11.Lift 5 lbs | | | | |
| | 12.Lift 10 lbs | | | | |
| | 13.Lift 20 lbs | | | | |
| | 14.Lift 30 lbs | | | | |
| | 15.Walk | | | X above | |
| | Care for children/parents | | | | |
| | Engage in hobbies (music or crafts, etc). Indicate hobby | | | | |
| | Describe other: (eating/chewing difficulty: TMJ) | | | | |

COLLIER APL 0087

LIB000414

RE:  COLLIER, Vicki
October 11, 2018
Page 6

## ACTIVITIES OF DAILY LIVING: (Cont'd)

| Category of Activity | Activity | Without Difficulty | With Some Difficulty | With Much Difficulty | Mostly unable to do |
|---|---|---|---|---|---|
| COMMUNICATION | Write a note | | | | |
| (Writing, typing, seeing, hearing, speaking) | Type a message on a computer/typewriter | | | | |
| | See a television screen | | | | |
| | Use a telephone | | | X | Cannot hold phone |
| | Speak clearly | | | | to ear for long period of time |
| | Hear clearly | | X tinnitus | | of time |
| | Describe other: | | | | |
| SENSORY FUNCTION | Feel what touch | | | | |
| | Taste what you eat | | | | |
| (hearing, seeing, tactile feeling, Tasting, smelling) | Smell what you eat | | | | |
| | Describe other: | | | X hard if tics. for period of time | |
| TRAVEL | Get in/out of car | | | X | |
| | Drive a car | | | X | for long period above |
| (flying, driving, riding) | Ride in a car | | | | above |
| | Fly in plane | | | X | above |
| | Ride a bicycle | | | X | |
| | Describe other: | | | | |
| SEXUAL FUNCTION | Engage in sexual activity | | X | | |
| (Orgasm, ejaculation, lubrication, erection?) | Describe specific difficulty: (Orgasm, ejaculation, lubrication, erection?) | | | | |
| SLEEP | Go to sleep | | X | X | |
| | Sleep through the night | | | X | X |
| (Restful sleep, nocturnal sleep pattern) | Have a restful sleep | | | X | X |
| | Feel refreshed after sleep | | | X | X |
| | Describe specific difficulty: (teeth grinding at night, excessive daytime fatigue, irritability, etc) heart paliptatons, ache pounding shoulders, buttock down legs, pain right breast (new) | | | | |

- This chart is meant to assist the examining physician to place the applicant in certain impairment categories when determining whole person impairment under the American Medical Association Guides to the Evaluation of Permanent Impairment (AMA) and in identifying body system requiring referrals for impairment evaluations.

- Note ADL's may indicate a serious condition requiring treatment.

Patient's Signature: _____   Date: 10/10/18

Print Name: ___Vicki Collier___

Interpreters Name/Company (if used)_____

She has difficulty in dressing herself and brushing her hair and opening a jar.

She has much difficulty in sitting for a long time, rising up from the chair, in and out of the bed, climbing stairs, and walking.

She has difficulty in having proper night sleep.

COLLIER APL 0088

LIB000415

RE:  COLLIER, Vicki
October 11, 2018
Page 7

## EPWORTH SLEEPINESS SCALE (ESS):

### Epworth Sleepiness Scale (ESS)

The following questionnaire will help you measure your general level of daytime sleepiness. You are to rate the chance that you would doze off or fall asleep during different routine daytime situations. Answers to the questions are rated on a reliable scale called the Epworth Sleepiness Scale (ESS). Each item is rated from 0 to 3, with 0 meaning you would never doze or fall asleep in each situation and 3 meaning that there is a very high chance that you would doze or fall asleep in that situation.

How likely are you to doze off or fall asleep in the following situations, in contrast to just feeling tired? Even if you haven't done some of these activities recently, think about how they would have affected you.

Use this scale to choose the most appropriate number for each situation:

0 = would never doze off             2 = moderate chance of dozing

1 = slight chance of dozing          3 = high chance of dozing

It is important that you circle a number (0 to 3) on each of the questions.

| Situation | Chance of dozing (0-3) |
|---|---|

**Situation**
1. Sitting and reading
2. Watching television
3. Sitting inactive in a public place (e.g. a theatre or      meeting)
4. As a passenger in a car for an hour without a break
5. Lying down to rest in the afternoon
6. Sitting and talking to someone
7. Sitting quietly after lunch (when you've had no alcohol)
8. In a car while stopped in traffic



Chance of dozing (0-3)

Total Score:

#### Scoring you results

Now that you have completed the questionnaire, it is time to score your results and evaluate your own level of daytime sleepiness. It's simple. Just add up the numbers you put in each box to get your total score.

#### The Epworth Sleepiness Scale Key

A total score of less than 10 suggests that you may not be suffering from excessive daytime sleepiness.

A total score of 10 or more suggests that you may need further evaluation by a physician to determine the cause of your excessive daytime sleepiness and whether you have an underlying sleep disorder.

#### Your next steps

This scale should not be used to make your own diagnosis. It is intended as a tool to help you identify your own level of daytime sleepiness, which is a symptom of many sleep disorders.

If your score is 10 or more, please share this information with your physician. Be sure to describe all your symptoms, as clearly as possible, to aid in your diagnosis and treatment.

It is important to remember that true excessive daytime sleepiness is almost always caused by an underlying medical condition that can be easily diagnosed and effectively treated.

*Dr. Ripu Arora Patient Questionnaire – May 2018/MR*

13

Her Epworth Sleepiness Scale is 20.

COLLIER APL 0089

RE:   COLLIER, Vicki
October 11, 2018
Page 8

**PAIN FORM:**

Table 18-4  Ratings Determining Impairment Associated With Pain

Name:_____                                          Date:_____

**I. Pain (Self-report of Severity)**

A. Rate how severe your pain is right now, at this moment (circle a number):

0  1  2  3  4  5  6  7  8  9  10
No pain                              Most severe pain can imagine

B. Rate how severe your pain is at its worst (circle a number):

0  1  2  3  4  5  6  7  8  9  10
None                                Excruciating

C. Rate how severe your pain is on the average (circle a number):

0  1  2  3  4  5  6  7  8  9  10
None                                Excruciating

D. Rate how much your pain is aggravated by activity (circle a number):

0  1  2  3  4  5  6  7  8  9  10
Activity does not          Excruciating following
aggravate pain                    any activity

Sum score of Section I: A-D = Total pain severity/4 = _____

E. Rate how frequently you experience pain (circle a number):

0  1  2  3  4  5  6  7  8  9  10
Rarely                              All of the time

Add total pain severity score
(items A-D/4) to score for item E = _____

Total pain severity score (range from 0 to 20) = _____

**II. Activity limitation or interference**

A. How much does your pain interfere with your ability to walk 1 block? (circle a number):

0  1  2  3  4  5  6  7  8  9  10
Does not restrict          Pain makes it impossible
ability to walk                   for me to walk

B. How much does your pain prevent you from lifting 10 pounds (a bag of groceries)? (circle a number):

0  1  2  3  4  5  6  7  8  9  10
Does not prevent from      impossible to lift
lifting 10 pounds                 10 pounds

C. How much does your pain interfere with your ability to sit for 1/2 hour? (circle a number):

0  1  2  3  4  5  6  7  8  9  10
Does not restrict ability   impossible to sit
to sit for 1/2 hour               for 1/2 hour

D. How much does your pain interfere with your ability to stand for 1/2 hour? (circle a number):  *depends*

0  1  2  3  4  5  6  7  8  9  10
Pain does not interfere     Unable to
with ability to stand at all  stand at all

E. How much does your pain interfere with your ability to get enough sleep? (circle a number):

0  1  2  3  4  5  6  7  8  9  10
Does not prevent me         impossible
from sleeping                     to sleep

F. How much does your pain interfere with your ability to participate in social activities? (circle a number):  *depends on the activity*

0  1  2  3  4  5  6  7  8  9  10
Does not interfere          Completely interferes
with social activities            with social activities

G. How much does your pain interfere with your ability to travel up to 1 hour by car? (circle a number):  *but when need will do it*

0  1  2  3  4  5  6  7  8  9  10
Does not interfere with ability  Completely unable to
to travel 1 hour by car           travel 1 hour by car

H. In general, how much does your pain interfere with your daily activities? (circle a number):  *with stops   depends*

0  1  2  3  4  5  6  7  8  9  10
Does not interfere          Completely interferes
with my daily activities          with my daily activities

I. How much do you limit your activities to prevent your pain from getting worse? (circle a number):  *not working*

0  1  2  3  4  5  6  7  8  9  10
Does not limit              Completely limits
activities                          activities

J. How much does your pain interfere with your relationship with your family/partner/significant others? (circle a number):

0  1  2  3  4  5  6  7  8  9  10
Does not interfere          Completely interferes
with relationships                with relationships

K. How much does your pain interfere with your ability to do jobs around your home? (circle a number):  *depends on day & activit*

0  1  2  3  4  5  6  7  8  9  10
Does not interfere          Completely unable to
                                    do any job around home

L. How much does your pain interfere with your ability to shower or bathe without help from someone else? (circle a number):

0  1  2  3  4  5  6  7  8  9  10
Does not interfere          My pain makes it impossible to
at all                            shower or bathe without help

COLLIER APL 0090

LIB000417

RE:  COLLIER, Vicki
October 11, 2018
Page 9

**PAIN FORM: (Cont'd)**



The pain impairment rating score is 28.3.

**PAST MEDICAL HISTORY:**

PAST MEDICAL ILLNESSES:  The examinee denies any major medical problems.

History of previous surgeries, she has had breast augmentation, had hernia repair, had tonsillectomy, and had right side rotator cuff repair, right shoulder.

**PERSONAL HISTORY:**

She is divorced.  She has three children.

COLLIER APL 0091

LIB000418

RE:  COLLIER, Vicki
October 11, 2018
Page 10

**SOCIAL HISTORY:**

She denies any smoking or drinking abuse or use of street drugs.

**FAMILY HISTORY:**

Her mother is aged 76 and alive, and her father choked at age 63 and is deceased. She has two siblings, who are healthy.

**HABITS:**

TOBACCO:  She denies any smoking.

ALCOHOL:  She denies any drinking abuse.

ILLICIT DRUGS:  She denies any use of street drugs.

**MEDICATIONS:**

History of medications, none.

**REVIEW OF SYSTEMS:**

She has a history of palpitations and had fainting spells because of bleeding hemorrhoids.  She has a history of shortness of breath at times.  She has a history of constipation and has a history of difficulty in sleeping and denies any liver dysfunction. However, she has a history of urinary incontinence and lack of sexual desire.

**PHYSICAL EXAMINATION:**

VITAL SIGNS:  Height 5 feet 6 inches.  Weight 130 pounds.  Blood pressure 100/60, Temperature 98 degrees, Pulse 57, Oxygen Saturation 98%, and Respirations 16.

GENERAL:  She is moderately built and nourished.  She is right handed.

Jamar grip is 20/18/18 on the right side and 16/16/16 on the left side in kilograms.

Her circumference, biceps 27.5 cm on both sides, forearm 22.5 cm bilaterally, thighs 41 cm bilaterally, and calves 34 cm bilaterally.

COLLIER APL 0092

LIB000419

RE: COLLIER, Vicki
October 11, 2018
Page 11

**PHYSICAL EXAMINATION: (Cont'd)**

NECK: Examination of the neck, there is no obvious deformity. Movements of the neck with flexion of 40 degrees, extension 40 degrees, bilateral rotation 65 degrees, lateral bend 20 degrees, and there is a trigger point spasm with tenderness at the left side on the multifidus. Spurling's test is negative.

BILATERAL SHOULDERS: Examination of the shoulder, right side, flexion 170 degrees, extension 45 degrees, abduction 110 degrees, adduction 30 degrees, external rotation 40 degrees, and internal rotation 90 degrees.

Examination of the left shoulder, abduction 180 degrees, adduction 40 degrees, flexion 180 degrees, extension 55 degrees, and external rotation and internal rotation 90 degrees.

BACK: Examination of the back, there is no obvious deformity. Movements of the spine, flexion 60 degrees, extension 20 degrees, bilateral rotation 70 degrees, lateral bend 20 degrees each, and straight leg raising is negative, and Faber's test is negative. However, there is some tenderness noticed at the sacroiliac joint bilaterally.

Motor and sensory functions in the upper and lower extremities are intact. Deep tendon reflexes are intact bilaterally and equal.

**REVIEW OF RECORDS:**

No medical records available to me on the day of examination.

**DIAGNOSES:**

1.    Cervical radiculopathy.

2.    Right shoulder, status post rotator cuff repair, with pain.

3.    Left shoulder pain.

4.    Sacroiliac joint pain bilaterally and low back pain.

**CAUSATION:**

I am unable to make any medical opinion as regards to causation because I have no medical records available to me.

COLLIER APL 0093

**LIB000420**

RE:  COLLIER, Vicki
October 11, 2018
Page 12

**PERMANENT AND STATIONARY:**

I have no medical records available to me on the day of examination and I am unable to make any comments on this.

**PERMANENT IMPAIRMENT:**

I have no medical records available to me on the day of examination and I am unable to make any comments on this.

**APPORTIONMENT:**

I have no medical records available to me on the day of examination and I am unable to make any comments on this.

**RECOMMENDATIONS:**

I would like to get medical records to review. I would like to get MRIs of the shoulders, neck, and lumbosacral spine to review so that I can complete the supplemental report with a review of the medical records and make my comments on the causation, permanent and stationary status, apportionment, and whole person impairment.

This concludes the Panel Qualified Medical Evaluation in Pain Management regarding Vicki Collier. Please contact me if I can be of further assistance.

**DISCLOSURE:**

**I declare under penalty of perjury that I have not violated the Labor Code Section 139.3, and that the information contained in this report and its attachments, including billing, if any, is true and correct to the best of my knowledge and belief, except as to information I have indicated I have received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.**

COLLIER APL 0094

RE:  COLLIER, Vicki
October 11, 2018
Page 13

"I have not violated Labor Code Section 139.3 and the contents of the report and bill are true and correct to the best of my knowledge.  This statement is made under penalty of perjury."

Date of Report: October 11, 2018

Dated the 11th day of October, 2018 in Los Angeles County, California


_____
**Signature of Physician**

**Ripu Arora, M.D.**
**Diplomate of American Board of Anesthesiology, Pain Management**
**Qualified Medical Evaluator**

RA:ANS/rbs:10/15/18

COLLIER APL 0095

LIB000422

## State of California
### DIVISION OF WORKERS' COMPENSATION – MEDICAL UNIT

### AME or QME Declaration of Service of Medical - Legal Report (Lab. Code § 4062.3(i))

**Case Name:** Vicki Collier
            *(employee name)*

**Claims Adjuster:** Miguel Mendoza
            *(claims administrator name, or if none employer)*

**Claim Number:** 18719439

**EAMS or WCAB Case No. (if any):** ADJ11297306

I, _____ Jullie Raaymakers _____, declare:
                                *(Print Name)*

1. I am over the age of 18 and not a party to this action.

2. My business address is: 11010 White Rock Road, Suite 120 Rancho Cordova, CA 95670.

On the date shown below, I served the attached original, or a true and correct copy of the original, comprehensive medical-legal report on each person or firm named below, by placing it in a sealed envelope, addressed to the person or firm named below, and by:

A      depositing the sealed envelope with the U. S. Postal Service with the postage fully prepaid.

B      placing the sealed envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U. S. Postal Service in a sealed envelope with postage fully prepaid.

C      placing the sealed envelope for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

D      placing the sealed envelope for pick up by a professional messenger service for service. *(Messenger must return to you a completed declaration of personal service.)*

E      personally delivering the sealed envelope to the person or firm named below at the address shown below.

| Means of Service:<br>*(For each address,*<br>*enter A-E as appropriate)* | Date Served: | Addressee and Address Shown on Envelope: |
|---|---|---|
| B | November 7, 2018 | Miguel Mendoza, CCMSI, PO Box 53550, Irvine, CA 92619 |
| B | November 7, 2018 | Bruce Little, Parker & Irwin, 348 W. Hospitality Lane, Suite 202 |
| B | November 7, 2018 | Robert Palty, Robert L. Palty, Attorney At Law, 6345 Balboa Blvd  Bldg 1 Suite 211 , Encino, CA 91316 |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.    Date: ___ November 7, 2018 _____

_____
*(Signature of declarant)*

QME Form 122
Rev. February 2009

Jullie Raaymakers

_____
*(print name)*

COLLIER APL 0096

LIB000423

# *Edwin Haronian, M.D.*

08/24/2018

Ms. Vicki COLLIER

██████████

Valencia, CA 91354

This letter is being sent as a reminder for your appointment with Dr. Haronian on **Sep 05, 2018** at **01:45PM.** at **5651 Sepulveda Blvd.# 201 Sherman Oaks, CA 91411** .

**\*\*Please keep in mind that the first initial visit might take 3 to 4 hours**. Please bring in any MRI Films/CD's that have been previously taken. In order to avoid delay in the office, our historian will call you prior to the day of the visit to take a medical history this will require about one hour. If you prefer to call the historian, she can be reached **(Alma at 818-481-1812 or 760-851-7031), (Antonio at 818-639-6070) or (Maria at 619-600-3120)**

\*\*If you need to cancel or reschedule your appointment, please call us 24 hours before your appointment at **818-788-2400** .

\*\***Please note there are no children allowed in the exam room or waiting room**.

- ***Sherman Oaks** **fac*** ***ility has parking available, the cost is $ 2.00 w/ validation.***
- ***Beverly Hills** **office has parking available the cost is $ 5.00 w/validation.***

Thank you, office of Doctor Haronian,

_____ESPANOL_____

Ms. Vicki COLLIER

Este es un recordatorio de su cita con el Dr.Haronian el dia **Sep 05, 2018** a las **01:45PM** . en **5651 Sepulveda Blvd.# 201 Sherman Oaks, CA 91411. .**

Para agilizar el proceso nuestra historiadora le llamara antes de su cita para obtener la historia medica del accidente laboral, esto toma aproximadamente una hora, o si usted prefiere llamarle el numbero es: **(Alma al 818-481-1812 o al 760-851-7031), (Antonio al 818-639-6070) or (Maria al 619-600-3120)**

\*\*Si necesita cancelar o cambiar su cita por favor llamenos 24 horas antes de su cita al **818-788-2400**
*Por favor tenga en cuenta que la primer visita puede tomar de 3 a 4 horas,* incluyendo varios examenes Rayos X, Historia medica y Rango de movimiento. Por favor traiga con usted las imagenes de MRI (Imagen De Resonancia) a la cita.=

\*\***Por favor tome encuenta que no se permiten niños en la sala de espera o cuartos de examen.**

*-La oficina de **SHERMAN OAKS** tiene estacionamiento disponible, el costo es de $ 2.00 con validacion.*
*-La oficina de **BEVERLY HILLS** tiene estacionamiento disponible, el costo es de $ 5.00 con validacion.*

Gracias, oficina del Doctor Haronian

Created by: Betty

Patient: Vicki COLLIER     DOB: ██████████

COLLIER APL 0097

**LIB000424**

English

# Patient Face Sheet

**Patient Chart #:** 20050164

**Patient Information:**

Vicki COLLIER

Valencia, CA 91354
Cell:

DOB.:
Age:     55 years
Sex:     Female
SSN:
S.O.F:  08/24/2018

**Employer:**

Automobile Club
23770 Valencia Blvd.
Valencia, CA 91355

---------------------------------------------- **Case Information** --------------------------------------------------------

**Type of Case:** Work Compensation

**Case Desc:**  H-PTP

**Diagnosis:**
M50.00 Cervical Radiculopathy, M54.17 Radiculopathy, lumbosacral region, M75.40
Impingement syndrome, shoulder, M70.20 Olecranon bursitis, elbow, M77.20 Periarthritis,
unspecified wrist

**Insurance Carrier:**

CCMSI Irvine
P.O.  Box 53550
Irvine, CA 92619
Phone: 949-474-6500
Fax:   949-474-6064

**2nd Insurance:**

Continues Trauma

**Date of Injury:**

**2nd Date of Injury:**

CT:7/13/2013-7/24/2017

**Claim Number:**

17G44F696159

**2nd Claim Number:**

Unassigned

**WCAB:**

**2nd WCAB:**

**Adjuster Information:**

Miguel, Mendoza
Tel: 949-474-6526

**Nurse Case Manager:**

**UR Dept Info:**

**01/07/2019**

COLLIER APL 0098

**LIB000425**

**English**

*Jonathan F. Kohan, M.D.*

# Patient Face Sheet

*Patient Chart #:*  20050164

*Patient Information:*

Vicki  COLLIER

██████████

Valencia, CA 91354
Cell: ██████████

Email: ██████████
DOB.: ██████████
Age:      55 years
Sex:      Female
SSN: ██████████

S.O.F:  08/24/2018

*Employer:*

Automobile Club
23770 Valencia Blvd.
Valencia, CA 91355

-------------------------------------------------  Case Information  ----------------------------------------------------

*Type of Case:*  Work Compensation

*Case Desc:*   H-PTP

*Diagnosis:*
M50.00 Cervical Radiculopathy, M54.17 Radiculopathy, lumbosacral region, M75.40
Impingement syndrome, shoulder, M70.20 Olecranon bursitis, elbow, M77.20 Periarthritis,
unspecified wrist

*Insurance Carrier:*

CCMSI Irvine
P.O.  Box 53550
Irvine, CA 92619
Phone: 949-474-6500
Fax:    949-474-6064

*2nd Insurance:*

Continues Trauma

*Aplicant Attorney:*

Palty, Robert L. Esq
6345 Balboa Blvd, Ste 211
Encino, CA 91316
Tel: 818-705-9010
Fax: 818-705-9015

*Date of Injury:*

*2nd Date of Injury:*

CT:7/13/2013-7/24/2017

*Defence Attorney:*

*Claim Number:*

17G44F696159

*2nd Claim Number:*

Unassigned

*WCAB:*

*2nd WCAB:*

*Adjuster Information:*

Miguel, Mendoza
Tel: 949-474-6526

*Nurse Case Manager:*

*UR Dept Info:*

**01/28/2019**

COLLIER APL 0099

**LIB000426**

*Edwin Haronian, M.D.*

**English**
**Patient Face Sheet**

**Patient Information:**
Vicki  COLLIER

Valencia, CA 91354
Cell
Email:

DOB:
Age:     55 years
Sex:     Female
SSN:
S.O.F:  08/24/2018

**Employer:**
Automobile Club
23770 Valencia Blvd.
Valencia, CA 91355

**Referral Source:**



*Chart #:* 20050164

---------------------------------------------- **Case Information**  ------------------------------------------------

**Type of Case:**  Work Compensation
**Case Desc:**   H-PTP

**Diagnosis:**
M50.00 Cervical Radiculopathy, M54.17 Radiculopathy, lumbosacral region, M75.40
Impingement syndrome, shoulder, M70.20 Olecranon bursitis, elbow, M77.20
Periarthritis, unspecified wrist

**Insurance Carrier:**
CCMSI Irvine
P.O.  Box 53550
Irvine, CA 92619
Phone: 949-474-6500
Fax:   949-474-6064

**2nd Insurance:**
Continues Trauma

**Aplicant Attorney:**
Palty, Robert L. Esq
6345 Balboa Blvd, Ste 211
Encino, CA 91316
Phone: 818-705-9010
Fax: 818-705-9015
**Email** 8187059015@rcfax.com

**Date of Injury:**

**2nd Date of Injury:**
CT:7/13/2013-7/24/2017

**Defense Attorney:**

**Claim Number:**
17G44F696159

**2nd Claim Number:**
Unassigned

**WCAB:**

**2nd WCAB:**

**Adjuster Information:**
Miguel, Mendoza
Tel: 949-474-6526

**Nurse Case Manager:**

**UR Dept Info:**

**Appointment: 01/31/2019  at 11:15AM      Check in time:**

COLLIER APL 0100

**LIB000427**

**English**

*Jonathan F. Kohan, M.D.*

# Patient Face Sheet

*Patient Chart #:* 20050164



*Patient Information:*

Vicki  COLLIER
████████████
Valencia, CA 91354
Cell: ████████████

Email:
DOB.: ████████████
Age:      55 years
Sex:      Female
SSN: ████████████
S.O.F:   08/24/2018

*Employer:*

Automobile Club
23770 Valencia Blvd.
Valencia, CA 91355

-------------------------------------------- Case Information --------------------------------------------------------

*Type of Case:* Work Compensation

*Case Desc:* H-PTP

*Diagnosis:*
M50.00 Cervical Radiculopathy, M54.17 Radiculopathy, lumbosacral region, M75.40 Impingement syndrome, shoulder, M70.20 Olecranon bursitis, elbow, M77.20 Periarthritis, unspecified wrist

*Insurance Carrier:*

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Phone: 949-474-6500
Fax:    217-477-7223

*2nd Insurance:*

Continues Trauma

*Aplicant Attorney:*

Palty, Robert L. Esq
6345 Balboa Blvd, Ste 211
Encino, CA 91316
Tel: 818-705-9010
Fax: 818-705-9015

*Date of Injury:*

*2nd Date of Injury:*

CT:7/13/2013-7/24/2017

*Defence Attorney:*

*Claim Number:*

17G44F696159

*2nd Claim Number:*

Unassigned

*WCAB:*

*2nd WCAB:*

*Adjuster Information:*

Miguel, Mendoza
Tel: 949-474-6526

*Nurse Case Manager:*

*UR Dept Info:*

05/07/2019

LIB000428

English

# Patient Face Sheet

**Patient Chart #:** 20050164

*Patient Information:*

Vicki  COLLIER

Valencia, CA 91354
Cell:

DOB.:
Age:    55 years
Sex:    Female
SSN:

S.O.F:  08/24/2018

*Employer:*

Automobile Club
23770 Valencia Blvd.
Valencia, CA 91355

---------------------------------------------    Case Information    --------------------------------------------------

*Type of Case:*  Work Compensation

*Case Desc:*   H-PTP

*Diagnosis:*
M50.00 Cervical Radiculopathy, M54.17 Radiculopathy, lumbosacral region, M75.40
Impingement syndrome, shoulder, M70.20 Olecranon bursitis, elbow, M77.20 Periarthritis,
unspecified wrist

*Insurance Carrier:*

CCMSI Irvine
P.O.  Box 53550
Irvine, CA 92619
Phone: 949-474-6500
Fax:   217-444-2867

*2nd Insurance:*

Continues Trauma

*Date of Injury:*

*2nd Date of Injury:*
CT:7/13/2013-7/24/2017

*Claim Number:*

17G44F696159

*2nd Claim Number:*
Unassigned

*WCAB:*

*2nd WCAB:*

*Adjuster Information:*

Miguel, Mendoza
Tel: 949-474-6526

*Nurse Case Manager:*

*UR Dept Info:*

**09/07/2018**

COLLIER APL 0102

**LIB000429**

**English**

*Edwin Haronian, M.D.*

# Patient Face Sheet

**Patient Information:**
Vicki  COLLIER

▮▮▮▮▮▮▮▮

Valencia, CA 91354
Cell:▮▮▮▮▮▮
Email:

DOB.:▮▮▮▮▮
Age:     55 years
Sex:     Female
SSN:▮▮▮▮▮▮
S.O.F:  08/24/2018

**Employer:**
Automobile Club
23770 Valencia Blvd.
Valencia, CA 91355

**Referral Source:**



**Chart #:** 20050164

-------------------------------------------- **Case Information**  --------------------------------------------

**Type of Case:** Work Compensation

**Case Desc:**   H-PTP

**Diagnosis:**
M50.00 Cervical Radiculopathy, M54.17 Radiculopathy, lumbosacral region, M75.40
Impingement syndrome, shoulder, M70.20 Olecranon bursitis, elbow, M77.20 Periarthritis,
unspecified wrist

| **Insurance Carrier:** | **2nd Insurance:** | **Aplicant Attorney:** |
|---|---|---|
| CCMSI Irvine | Continues Trauma | Palty, Robert L. Esq |
| P.O.  Box 53550 | | 6345 Balboa Blvd, Ste 211 |
| Irvine, CA 92619 | | Encino, CA 91316 |
| Phone: 949-474-6500 | | Phone: 818-705-9010 |
| Fax:   949-474-6064 | | Fax: 818-705-9015 |
| | | **Email** 8187059015@rcfax.com |

| **Date of Injury:** | **2nd Date of Injury:** | **Defense Attorney:** |
|---|---|---|
| | CT:7/13/2013-7/24/2017 | |

| **Claim Number:** | **2nd Claim Number:** | |
|---|---|---|
| 17G44F696159 | Unassigned | |
| **WCAB:** | **2nd WCAB:** | |

| **Adjuster Information:** | **Nurse Case Manager:** | **UR Dept Info:** |
|---|---|---|
| Miguel, Mendoza | | |
| Tel: 949-474-6526 | | |

Printed on 11/29/2018

COLLIER APL 0103

**LIB000430**

From WFI Incorporated 1.626.628.9628 Mon Feb 25 12:40:26 2019 MST Page 1 of 8

**Lincoln Financial Group**
**c/o RP Claims Processing**
**P.O. Box 1390**
**St. Peters, MO  63376**


**Lincoln**
Financial Group

SYNAPSE MEDICAL GROUP
5651 SEPULVEDA BLVD STE 201
ATTN: MEDICAL RECORDS
SHERMAN OAKS, CA  91411

Feb 25, 2019
**Re: Long Term Disability Benefits**
Claim# 8741789                5046116
Claimant: COLLIER, VICKI
Claimant DOB:
Provider Portal: https://portal.releasepoint.com
Access Key: SYN030

Dear   ext 118,

Lincoln Financial is the Disability Claim Administrator for your patient, listed above.

To evaluate your patient's eligibility for disability benefits and help facilitate a return to work when appropriate, we are requesting the following information.
**From May 1, 2018 to Present**
Restrictions form - Seen By: SYNAPSE MEDICAL GROUP

We ask that you provide this information within a week of the date of this mailing.  Failure to provide the requested information may result in an adverse benefit or claim determination.  The information can be faxed to our office at our secure fax number  (213) 884-4921    or mailed to the above address.

If prepayment is required, please fax an invoice indicating the number of pages, the Federal TAX ID, and the amount due.  If you're a hospital, only abstract records are required: admission, history/physical, OP reports, DX summaries, etc.  Fees from Copy Services and Hospitals require approval if over $100.00.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored LTD benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by your patient allowing the release of information to our company.  This authorization specifically allows you to release medical information to Lincoln Financial, and is valid for 2 years from the date of signature.

If you have any questions regarding this matter, please contact me.

Sincerely,
    Mark Cerise Macaso

Disability Information Specialist
Phone No.:  (213) 266-5038
Fax No:  (213) 884-4921

COLLIER APL 0104

LIB000431

From WFI Incorporated 1.626.628.9628 Mon Feb 25 12:40:26 2019 MST Page 2 of 8



# Restrictions Form

| Employee /Claimant Name | Date of Birth | Claim Number |
|---|---|---|

*To be completed by physician:*

**1.** DATE FIRST TREATED — _____

DATE LAST TREATED — _____

NEXT OFFICE VISIT — _____        **DIAGNOSIS(ES) WITH ASSOCIATED ICD CODES**

**2.** **For physical diagnoses, check one that indicates what your patient is capable of performing occupationally on a full-time basis:**

☐ **SEDENTARY** Lifting / carrying up to **10** pounds occasionally, sitting over 50% of the time and standing / walking occasionally.

☐ **LIGHT** Lifting / carrying up to **20** pounds occasionally, sitting at least occasionally and standing / walking frequently.

☐ **MEDIUM** Lifting / carrying up to **50** pounds occasionally; sitting, standing and / or walking constantly.

☐ **HEAVY** Lifting / carrying up to **100** pounds occasionally; sitting, standing and / or walking constantly.

☐ **VERY HEAVY** Lifting / carrying over **100** pounds occasionally; sitting, standing and / or walking constantly.

| **KEY:** | **OCCASIONALLY** Up to 20 Minutes / Hour Up to 2 ½ Hours / Day | **FREQUENTLY** Up to 40 Minutes / Hour Up to 5 ½ Hours / Day | **CONSTANTLY** Over 40 Minutes / Hour Over 5 ½ Hours / Day |
|---|---|---|---|

**3.** DESCRIBE PHYSICAL, MENTAL AND / OR COGNITIVE RESTRICTIONS THAT CORRESPOND WITH THE DIAGNOSIS(ES) LISTED ABOVE.    1) For physical diagnoses, describe the type of task (bend, grasp, etc.) *AND* frequency *(SEE KEY).*

2) For mental and / or cognitive diagnoses, describe the work situations that should be avoided or reduced.

_____

_____

_____

_____

**4.** RESTRICTIONS IMPOSED FROM _____ TO _____.

**5.** IF YOUR PATIENT CANNOT RETURN TO WORK NOW, WHAT TREATMENT IS PLANNED TO FACILITATE RETURN TO WORK (MEDICATIONS, TESTS, PROCEDURES, ETC.)? WHAT IS THE ESTIMATED RETURN TO WORK DATE?_____

_____

_____

**6.** PLEASE LIST THE MEDICAL / PSYCHOLOGICAL FINDINGS THAT SUPPORT THE NOTED RESTRICTIONS?

_____

_____

**7.** PLEASE FORWARD COPIES OF YOUR OFFICE NOTES AND TEST RESULTS FROM_____TO_____.

| Provider's Name (Please Print) | Degree *AND* Area of Specialty | Social Security or Tax ID Number |
|---|---|---|
| Street Address | Telephone Number | Fax Number |
| City, State & Zip Code | Signature | Date |

COLLIER APL 0105

LIB000432

From WFI Incorporated 1.626.628.9628 Mon Feb 25 12:40:26 2019 MST Page 3 of 8
DocuSign Envelope ID: 094F1D0C-2138-4C58-BA0C-9A069FB83E8B



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-3579

## AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

### I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

### STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

pg. 1 CA.Psychotherapy.2015

COLLIER APL 0106

**LIB000433**

From WFI Incorporated 1.626.628.9628 Mon Feb 25 12:40:26 2019 MST Page 4 of 8
DocuSign Envelope ID: 094F1D0C-2138-4C58-BA0C-9A069FB83E8B

**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print):

Vicki Collier

Name of legal representative, if applicable (print):

same

Relationship:

self

Signature of claimant or legal representative:

DocuSigned by:
D1EDE33C21B14A8...

Date of Birth: ▮▮▮▮▮▮▮        Claim Number: 8741789

Date: 2/22/2019

**A copy of this authorization will be considered as valid as the original.**

pg. 2 CA.Psychotherapy.2015

COLLIER APL 0107

LIB000434

From WFI Incorporated 1.626.628.9628 Mon Feb 25 12:40:26 2019 MST Page 5 of 8
DocuSign Envelope ID: 094F1D0C-2138-4C58-BA0C-9A069FB83E8B

 **Lincoln**
Financial Group®

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-3579

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

### I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.

* Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.

* Information concerning Social Security benefits, including any records pertaining to me and my dependents.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

### STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to re disclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted

pg. 1 CA.Authorization-Standard-2018

COLLIER APL 0108

LIB000435

From WFI Incorporated 1.626.628.9628 Mon Feb 25 12:40:26 2019 MST Page 6 of 8
DocuSign Envelope ID: 094F1D0C-2138-4C58-BA0C-9A069FB83E8B

a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print):

<u>Vicki Collier</u>

Name of legal representative, if applicable (print):

<u>same</u>

Relationship: <u>self</u>

Signature of claimant or legal representative:

Date of Birth: ▮▮▮▮▮▮▮▮     Claim Number: <u>8741789</u>

Date: <u>2/22/2019</u>

**A copy of this authorization will be considered as valid as the original.**

pg. 2 CA.Authorization-Standard-2018

COLLIER APL 0109

LIB000436

From WFI Incorporated 1.626.628.9628 Mon Feb 25 12:40:26 2019 MST Page 7 of 8



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

11/8/2018

To Whom It May Concern,

Liberty Life Assurance Company of Boston, a Lincoln Financial Group company, authorizes ReleasePoint to act on its behalf for the purpose of obtaining medical records in connection with the administration of your patient's disability claim.

The enclosed Authorization to obtain and release information, as executed by the patient, directs the release of protected medical information to Lincoln Financial Group.

We request that you please send records to ReleasePoint by one of the options below:
* Electronic mail to: charts@releasepoint.com
* Secure fax to: (415) 491-0277. There is no limit on the number of pages faxed.

If you have any questions, please contact ReleasePoint at (800) 999-9589.

Sincerely,

Kathryn Leombruno
Director, Claims Operations
Lincoln Financial Group Claims

©2016 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

COLLIER APL 0110

LIB000437

From WFI Incorporated 1.626.628.9628 Mon Feb 25 12:40:26 2019 MST Page 8 of 8

# Save Time and Avoid Follow-up Calls
# Use our Secure Status and Upload Portal

Using our secure online portal, you can provide us with status information on our request for medical records, and upload records directly to our system.

Here's how it works:

**STEP 1:**   Go to https://portal.releasepoint.com to bring up the portal on your browser.

**STEP 2:**   Enter the RPID and Access Key:

|                 |                |
|-----------------|----------------|
| Patient Name:   | COLLIER, VICKI |
| RP ID:          | 5046116        |
| Access Code:    | SYN030         |

**STEP 3:**   Select either "Upload Records" or "Update Status" and follow the instructions on the screen.

**STEP 4:**   Record your confirmation number, and you're done.

**Thank you for using the ReleasePoint Provider Portal.**



Powered By ReleasePoint

COLLIER APL 0111

LIB000438



*9/05 @ 1:45pm*

Synapse New Patient Scheduler <newpatient@synapsedoctor.com>

## Vicki Collier DOB: ▮▮▮▮▮▮

**Monica Centeno** <monicarlp4law@yahoo.com>
Reply-To: Monica Centeno <monicarlp4law@yahoo.com>
To: Synapse New Patient Scheduler <newpatient@synapsedoctor.com>

Mon, Aug 20, 2018 at 12:59 PM

Good afternoon,

Can you please provide me with an appointment for the above named applicant.

Attached please find the 4600 letter and demographics.

Body parts: neck, back, shoulders, upper extremities, headaches, lower extremities, internal hemorrhoids, internal

Denied Case.

Thank You,

Monica Centeno

**Robert L. Palty, A Professional Corporation.**
6345 Balboa Blvd., Bldg.1,Ste.211
Encino, CA 91316
**P**: (818) 705-9010 **F**: (818) 705-9015
monicarlp4law@yahoo.com

\*\*This electronic transmission contains information from ROBERT L .PALTY, A PROFESSIONAL CORPORATION, that is intended solely for the use of the individual or entity named as the recipient hereof. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this transmission is prohibited. If you have received this transmission in error, please delete this message and notify us immediately, so we may arrange to re-transmit this message to the proper recipient. Thank you. \*\*

**2 attachments**

📄 **4600 letter.pdf**
21K

📄 **DEMO.PDF**
27K

COLLIER APL 0112

**LIB000439**



| Case Number: 457. | Top Sheet - Case Information | | Page: 1. |
|---|---|---|---|
| **VIcki Collier  vs. Auto Club** | | | Today: 08/20/2018. |

**General Case Information:**

| | | | |
|---|---|---|---|
| **Type of Case** WC | **Date Entered** 04/27/2018 | **Venue** | **Atty Resp** RLP |
| **Case Status** OPEN | **Date Open** 04/27/2018 | **Ref By** | **Atty Hand** RLP |
| **Your File No** | **Follow up**  / / | **Date Ref**  / / | **para/sec** VYT     BMS |
| **File Location** | **Date Closed**  / / | **Closed #** | **P&S**  / / |

**Main Information:**

| | |
|---|---|
| **Name**  VIcki Collier | **SS No** ▮ |
| **Address** ▮ | **DOB, Age** ▮, 55 |
| **City,St,Zip** Valencia, Ca  91354 | **Home** |
| **License No** | **Business** |
| **Email** | Interpreter ,  Fax | **Cell** ▮ |

QUICK NOTE --> CT: 07/13/13 - 07/24/2017 ADJ11297306
BP: neck, back, shoulders, upper extrem., headaches, lower extrem., internal hemmorhoids, internal
SALES AGENT

Next Calendared Event:  None

**Parties Attached To This Case**

1. APPLICANT - VIcki Collier, ▮, Valencia, Ca  91354
2. EMPLOYER - Automobile Club - 23770 Valencia Blvd., Valencia, Ca  91355
3. INSURANCE - Cannon Cochran Irvine - Miguel Mendoza, P.O. Box 53550, Irvine, CA  92619-3550
4. DEFENDANT - Law Offices of Parker & Irwin - Bruce Little, 348 West Hospitality Lane, Suite 202, San Bernardino, CA  92408
5. DR - Edwin Haronian, 5651 Sepulveda Blvd., 2nd Flr. Ste 201, Sherman Oaks,, CA  91411  818-788-2400, fax 818-788-2333

| **Injury No: 1** | **Employer** Automobile Club | **WCAB** | **Occupation** Sales Agent |
|---|---|---|---|
| **Status** OPEN | **Carrier** TRISTAR RISK | **EAMS** | |
| | | **DOI** CT:07/13/2013 -07/24/2017 | |

| **Clm No** | **Atty** | **Attorney 2** | |
|---|---|---|---|

**How**

**POB** POB1: 198 Head multiple  POB2: 110 Brain  POB3: 450 Shoulders  POB4: 500 Lwr Ext  POB5: 300 Upr Ext
Other: internal

COLLIER APL 0113

LIB000440

ROBERT L. PALTY
ATTORNEY AT LAW

A PROFESSIONAL CORPORATION

ENCINO OFFICE PARK 1, SUITE 211
6345 BALBOA BOULEVARD
ENCINO, CALIFORNIA 91316

(818) 705-9010    (800) 992-1990
(818) 705-9015 (FACSIMILE)

August 14, 2018

**Miguel Mendoza**
*Cannon Cochran*
*P.O. Box 53550*
*Irvine, CA 92619-3550*

RE: VICKI COLLIER vs. AUTO CLUB
DATE OF INJURY: CT: 07/13/13 - 07/24/2017
CASE NO.: ADJ11297306

Dear Mr. Mendoza,

Pursuant to Labor Code Section 4600, effective immediately, applicant herby elects to receive medical care for her injuries from:

Edwin Haronian, M.D.
5651 Sepulveda Blvd., Suite 201
Sherman Oaks, CA 91411
Phone: (818) 788-2400

Please send written authorization to Dr. Haronian (and my office via fax) along with all medical records. Should you have any questions, please feel free to call the undersigned. Thank you for your courtesy and cooperation in this matter.

Very truly yours,

*ROBERT L. PALTY*

RLP/mc

cc: Edwin Haronian, M.D., Bruce Little

COLLIER APL 0114

**LIB000441**

State of California
Department of Industrial Relations
DIVISION OF WORKERS' COMPENSATION

WORKERS' COMPENSATION CLAIM FORM (DWC 1)

*Estado de California*
*Departamento de Relaciones Industriales*
*DIVISION DE COMPENSACIÓN AL TRABAJADOR*

*PETITION DEL EMPLEADO PARA DE COMPENSACIÓN DEL*
*TRABAJADOR (DWC 1)*

**Employee:** Complete the "Employee" section and give the form to your employer. Keep a copy and mark it "**Employee's Temporary Receipt**" until you receive the signed and dated copy from your employer. You may call the Division of Workers' Compensation and hear recorded information at (800) 736-7401. An explanation of workers' compensation benefits is included in the Notice of Potential Eligibility, which is the cover sheet of this form. Detach and save this notice for future reference.

You should also have received a pamphlet from your employer describing workers' compensation benefits and the procedures to obtain them. You may receive written notices from your employer or its claims administrator about your claim. If your claims administrator offers to send you notices electronically, and you agree to receive these notices only by email, please provide your email address below and check the appropriate box. If you later decide you want to receive the notices by mail, you must inform your employer in writing.

*Empleado: Complete la sección "Empleado" y entregue la forma a su empleador. Quédese con la copia designada "Recibo Temporal del Empleado" hasta que Ud. reciba la copia firmada y fechada de su empleador. Ud. puede llamar a la Division de Compensación al Trabajador al (800) 736-7401 para oir información gravada. Una explicación de los beneficios de compensación de trabajadores está incluido en la Notificación de Posible Elegibilidad, que es la hoja de portada de esta forma. Separe y guarde esta notificación como referencia para el futuro.*

*Ud. también debería haber recibido de su empleador un folleto describiendo los beneficios de compensación al trabajador lesionado y los procedimientos para obtenerlos. Es posible que reciba notificaciones escritas de su empleador o de su administrador de reclamos sobre su reclamo. Si su administrador de reclamos ofrece enviarle notificaciones electrónicamente, y usted acepta recibir estas notificaciones solo por correo electrónico, por favor proporcione su dirección de correo electrónico abajo y marque la caja apropiada. Si usted decide después que quiere recibir las notificaciones por correo, usted debe de informar a su empleador por escrito.*

Any person who makes or causes to be made any knowingly false or fraudulent material statement or material representation for the purpose of obtaining or denying workers' compensation benefits or payments is guilty of a felony.

Toda aquella persona que a propósito haga o cause que se produzca cualquier declaración o representación material falsa o fraudulenta con el fin de obtener o negar beneficios o pagos de compensación a trabajadores lesionados es culpable de un crimen mayor "felonia".

Employee—complete this section and see note above       *Empleado—complete esta sección y note la notación arriba.*
1. Name. *Nombre.* Vicki Collier       Today's Date. *Fecha de Hoy.* April 24, 2018
2. Home Address. *Dirección Residencial.*
3. City. *Ciudad.* Valencia       State. *Estado.* CA       Zip. *Código Postal.* 91354
4. Date of Injury. *Fecha de la lesión (accidente).* Repetitive TU 7/24/17       Time of Injury. *Hora en que ocurrió.* ___ a.m. ___ p.m.
5. Address and description of where injury happened. *Dirección/lugar dónde occurió el accidente.* 23770 Valencia Bl, Valencia, CA 91355 Repetitive
6. Describe injury and part of body affected. *Describa la lesión y parte del cuerpo afectada.* Neck, Back, Shoulders, Upper Extremities, Headaches, Lower Extremities, Internal Hemorrhoids, Internal
7. Social Security Number. *Número de Seguro Social del Empleado.*
8. ☐ Check if you agree to receive notices about your claim by email only. ☐ *Marque si usted acepta recibir notificaciones sobre su reclamo solo por correo electrónico.* Employee's e-mail. ___ *Correo electrónico del empleado.*
You will receive benefit notices by regular mail if you do not choose, or your claims administrator does not offer, an electronic service option. *Usted recibirá notificaciones de beneficios por correo ordinario si usted no escoge, o su administrador de reclamos no le ofrece, una opción de servicio electrónico.*
9. Signature of employee. *Firma del empleado.*

Employer—complete this section and see note below. *Empleador—complete esta sección y note la notación abajo.*
10. Name of employer. *Nombre del empleador.* AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA
11. Address. *Dirección.* 3333 FAIRVIEW ROAD, A150, COSTA MESA, CA 92626
12. Date employer first knew of injury. *Fecha en que el empleador supo por primera vez de la lesión o accidente.*
13. Date claim form was provided to employee. *Fecha en que se le entregó al empleado la petición.*
14. Date employer received claim form. *Fecha en que el empleado devolvió la petición al empleador.*
15. Name and address of insurance carrier or adjusting agency. *Nombre y dirección de la compañía de seguros o agencia administradora de seguros.*
TRISTAR RISK MANAGEMENT, PO BOX 2805, CLINTON, IA 52733-2805
16. Insurance Policy Number. *El número de la póliza de Seguro.* MWC 306828 00
17. Signature of employer representative. *Firma del representante del empleador.*
18. Title. *Título.* ___ 19. Telephone. *Teléfono.*

Employer: You are required to date this form and provide copies to your insurer or claims administrator and to the employee, dependent or representative who filed the claim within **one working day** of receipt of the form from the employee.

SIGNING THIS FORM IS NOT AN ADMISSION OF LIABILITY

*Empleador: Se requiere que Ud. feche esta forma y que provéa copias a su compañía de seguros, administrador de reclamos, o dependiente/representante de reclamos y al empleado que hayan presentado esta petición dentro del plazo de un día hábil desde el momento de haber sido recibida la forma del empleado.*

*EL FIRMAR ESTA FORMA NO SIGNIFICA ADMISIÓN DE RESPONSABILIDAD*

☐ Employer copy/*Copia del Empleador* ☐ Employee copy/*Copia del Empleado* ☐ Claims Administrator/*Administrador de Reclamos* ☐ Temporary Receipt/*Recibo del Empleado*

Rev. 1/1/2016

COLLIER APL 0115

LIB000442



# Synapse Medical Group

5651 Sepulveda Blvd. 2nd. Floor
Suite 201
Sherman Oaks, California 91411


Phone 818-788-2400
Fax 818-788-2453

Important Notice: This report contains protected health information that may not be used or disclosed unless authorized by the patient or specifically permitted by the Health Insurance Portability and Accountability Act (HIPAA).

## RANGE OF MOTION

√ CERVICAL SPINE __ THORACIC SPINE
√ LUMBAR SPINE √ SHOULDER
√ ELBOW √ WRIST __ HIPS
__ KNEES __ ANKLE

COLLIER APL 0116

**LIB000443**

VICKI COLLIER
20050164

P&S
Exam Date: 1/31/2019

## Impairment Summary

All impairment estimates are based on the Guides to the Evaluation of Permanent Impairment published by the American Medical Association.

Impairments have been calculated using a linear method of interpolation. In case of a broad range of impairment percentages for a given test, the impairment has been assigned proportionally in a manner consistent with the corresponding Table. See individual Table references for additional details.

The final whole person impairment is 30%
- Cervical spine ROM Method whole person impairment is 5%
- Lumbar spine ROM Method whole person impairment is 10%
- Left upper extremity combined whole person impairment is 9%
- Right upper extremity combined whole person impairment is 10%

## Cervical Spine Impairment

The Range of Motion (ROM) Method was used to calculate the cervical spine impairment. The assigned impairments and basis for the impairments are listed below.

**Cervical Range of Motion Impairments** (Table 15-12, p. 418; Table 15-13, p. 420; Table 15-14, p. 421)

Contribution to Whole Person Impairment: 5%

- Maximum cervical flexion angle is 31° contributing 1% to the whole person impairment
- Maximum cervical extension angle is 37° contributing 2% to the whole person impairment
- Maximum cervical right lateral flexion angle is 17° contributing 1% to the whole person impairment
- Maximum cervical right rotation angle is 48° contributing 1% to the whole person impairment

## Lumbar Spine Impairment

The Range of Motion (ROM) Method was used to calculate the lumbar spine impairment. The assigned impairments and basis for the impairments are listed below.

**Lumbar Range of Motion Impairments** (Table 15-8, p. 407; Table 15-9, p. 409)

Contribution to Whole Person Impairment: 10%

- Maximum true lumbar flexion angle is 51° with a sacral flexion angle of 42° contributing 4% to the whole person impairment
- Maximum true lumbar extension angle is 11° contributing 4% to the whole person impairment
- Maximum lumbar left lateral flexion angle is 20° contributing 1% to the whole person impairment
- Maximum lumbar right lateral flexion angle is 20° contributing 1% to the whole person impairment

According to the AMA Guides, an accessory validity test can be performed for lumbosacral flexion and extension. If the straight-leg-raising angle exceeds the sum of sacral flexion and extension angles by more than 15°, the lumbosacral flexion test is invalid. Normally, the straight-leg-raising angle is about the same as the sum of the sacral flexion-extension angle. If invalid, the examiner should either repeat the flexion-extension test or disallow impairment for lumbosacral spine flexion and extension.

**Left Wrist Range of Motion Impairments** (Figure 16-28, p. 467; Figure 16-31, p. 469)

Contribution to Whole Person Impairment: 2% (4% Upper Extremity)

- Left wrist flexion motion is 46° contributing 2% to the upper extremity impairment
- Left wrist extension motion is 58° contributing 0% to the upper extremity impairment
- Left wrist radial deviation motion is 14° contributing 1% to the upper extremity impairment
- Left wrist ulnar deviation motion is 23° contributing 1% to the upper extremity impairment

**Left Elbow Range of Motion Impairments** (Figure 16-34, p. 472; Figure 16-37, p. 474)

Contribution to Whole Person Impairment: 1% (2% Upper Extremity)

Page 2 of 4

COLLIER APL 0117

LIB000444

VICKI COLLIER                                                                                    P&S
20050164                                                                    Exam Date: 1/31/2019

- Left elbow flexion motion is 118° contributing 2% to the upper extremity impairment
- Left elbow pronation motion is 79° contributing 0% to the upper extremity impairment
- Left elbow supination motion is 73° contributing 0% to the upper extremity impairment

## Left Hand Impairment

Impairment of the left hand was evaluated and rated according to the AMA's Guides to the Evaluation of Permanent Impairment. The criteria and impairment percentages are listed below.

**Right Wrist Range of Motion Impairments** (Figure 16-28, p. 467; Figure 16-31, p. 469)

Contribution to Whole Person Impairment: 4% (6% Upper Extremity)

- Right wrist flexion motion is 42° contributing 2% to the upper extremity impairment
- Right wrist extension motion is 54° contributing 1% to the upper extremity impairment
- Right wrist radial deviation motion is 13° contributing 1% to the upper extremity impairment
- Right wrist ulnar deviation motion is 20° contributing 2% to the upper extremity impairment

**Right Elbow Range of Motion Impairments** (Figure 16-34, p. 472; Figure 16-37, p. 474)

Contribution to Whole Person Impairment: 2% (3% Upper Extremity)

- Right elbow flexion motion is 112° contributing 3% to the upper extremity impairment
- Right elbow pronation motion is 80° contributing 0% to the upper extremity impairment
- Right elbow supination motion is 78° contributing 0% to the upper extremity impairment

**Right Shoulder Range of Motion Impairments** (Figure 16-40, p. 476; Figure 16-43, p. 477; Figure 16-46, p. 479)

Contribution to Whole Person Impairment: 5% (8% Upper Extremity)

- Right shoulder flexion motion is 132° contributing 3% to the upper extremity impairment
- Right shoulder extension motion is 45° contributing 0% to the upper extremity impairment
- Right shoulder abduction motion is 92° contributing 4% to the upper extremity impairment
- Right shoulder adduction motion is 43° contributing 0% to the upper extremity impairment
- Right shoulder internal rotation motion is 64° contributing 1% to the upper extremity impairment
- Right shoulder external rotation motion is 81° contributing 0% to the upper extremity impairment

COLLIER APL 0118

LIB000445

VICKI COLLIER                                                              P&S
20050164                                                  Exam Date: 1/31/2019

Edwin Haronian M.D.
5651 Sepulveda Blvd. 2nd Floor Suite 201
Sherman Oaks, CA 91411

The patient was tested in our clinic using the J-tech Tracker 5 Motion Analyzer, which is a computerized dual dynamic inclinometer system.

The purpose of the test was to document any restriction in the motion and to evaluate the patient's functions during the tested motion. The program generates the impairment associated with the loss of range of motion despite the fact that an MMI status may or may have been reached. Please see narrative report for further details. This is not an MMI report.

The J-tech system objectively documents the range of motion, reproducibility of motion, smoothness of motion, patients coordinating and whether patterns of hesitation and sudden slow down are present.

Each test with J-tech Tracker 5 Motion Analyzer was performed in accordance with American Medical Association guideline to insure consistency and reproducibility of the measure data. All measurements represented the patients' voluntary motion but at maximum effort. Please see attached information including summary table of range of motion measurements with comparisons to published norms representing the dynamic motion of the tested joints.

Periodically, we request the measurements of range of motions, muscle strength, of lifting capacity depending on the injured body parts at the time of the injury. This data provides information on the continuum of improvement or worsening of the patients' condition depending on the chosen method of treatment. The data also provides AMA impairment based on the restriction of the range of motion. The numerical data that is produced in this report only considers the impairment at the time that the measurements were performed and Maximal Medical Improvement or a permanent and stationary status. The timing of a permanent and stationary status depends on many factors and is reflected in a separate narrative report when all conditions that were industrially caused have stabilized and reached Maximal Medical Improvement.

I declare, under penalty of perjury, that I have not violated the provisions of California Labor code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-9 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in County of Los Angeles.

Sincerely,

_____
Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
QME State of California License # A71385

Page 4 of 4

COLLIER APL 0119

LIB000446

VICKI COLLIER                                                                            P&S
20050164                                                                      Exam Date: 1/31/2019

## Impairments - Whole Person Impairment (WPI) Summary

| Region | | Impairment | Region | Impairment |
|--------|--------|------------|--------|------------|
| Spine | | 15% | Left Upper Extremity | 9% |
| Cervical | (ROM Method) | 5% | Right Upper Extremity | 10% |
| Thoracic | | | Left Lower Extremity | |
| Lumbar | (ROM Method) | 10% | Right Lower Extremity | |

Impairments have been calculated using a linear method of interpolation, per p20 of the Guides. In case of a broad range of impairment percentages for a given test, the impairment has been assigned proportionally in a manner consistent with the corresponding Table. See individual Table references for additional details.

| Combined WPI | 30% |
|--------------|-----|
| Adjustment to WPI | |
| Final WPI | 30% |

© 2004-2017 JTECH Medical                                                      Page 1

COLLIER APL 0120

LIB000447

VICKI COLLIER
20050164

P&S
Exam Date: 1/31/2019

## Impairments - Cervical Range of Motion (ROM)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Cervical flexion | Calvarium angle | 35° | 35° | 33° | | | |
| | T1 ROM | 4° | 4° | 4° | | | |
| | Cervical flexion angle | 31° | 31° | 29° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum cervical flexion angle | 31° | | | | | |
| | % Impairment | 1% | | | | | |
| Cervical extension | Calvarium angle | 30° | 32° | 31° | | | |
| | T1 ROM | -6° | -5° | -5° | | | |
| | Cervical extension angle | 36° | 37° | 36° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum cervical extension angle | 37° | | | | | |
| | % Impairment | 2% | | | | | |
| Cervical ankylosis in flexion/extension | Position | | | | | | |
| | % Impairment | | | | | | |
| Cervical left lateral bending | Calvarium angle | | | | | | |
| | T1 ROM | | | | | | |
| | Cervical left lateral bending angle | | | | | | |
| | ±10% or 5° | No | | | | | |
| | Maximum left lateral bending angle | 19° | | | | | |
| | % Impairment | | | | | | |
| Cervical right lateral bending | Calvarium angle | 22° | 21° | 20° | | | |
| | T1 ROM | 5° | 4° | 4° | | | |
| | Cervical right lateral bending angle | 17° | 17° | 16° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum right lateral bending angle | 17° | | | | | |
| | % Impairment | 1% | | | | | |
| Cervical ankylosis in lateral bending | Position | | | | | | |
| | % Impairment | | | | | | |
| Cervical left rotation | Cervical left rotation angle | 19° | 37° | 35° | | | |
| | ±10% or 5° | No | | | | | |
| | Maximum cervical left rotation angle | 37° | | | | | |
| | % Impairment | | | | | | |
| Cervical right rotation | Cervical right rotation angle | 46° | 47° | 48° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum cervical right rotation angle | 48° | | | | | |
| | % Impairment | 1% | | | | | |
| Cervical ankylosis in rotation | Position | | | | | | |
| | % Impairment | | | | | | |

Total cervical range of motion and ankylosis* impairment ___ 5%

* If ankylosis is present, combine the ankylosis impairment with the range-of-motion impairment (Combined Values Chart, p. 604).
If ankyloses in several planes are present, combine the ankylosis estimates (Combined Values Chart), then combine the result with
the range-of-motion impairment.

© 2001 American Medical Association. Reproduced with permission.

© 2004-2017 JTECH Medical

Page 2

COLLIER APL 0121

LIB000448

VICKI COLLIER
20050164

P&S
Exam Date: 1/31/2019

## Impairments - Lumbar Range of Motion (ROM)

| Lumbar flexion | T12 ROM | 93° | 93° | 93° | | | |
|---|---|---|---|---|---|---|---|
| | Sacral ROM | 42° | 42° | 42° | | | |
| | True lumbar flexion angle | 51° | 51° | 51° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum true lumbar flexion angle | 51° | | | | | |
| | % Impairment | 4% | | | | | |
| Lumbar extension | T12 ROM | 24° | 24° | 24° | | | |
| | Sacral ROM | 13° | 13° | 13° | | | |
| | True lumbar extension angle | 11° | 11° | 11° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum lumbar extension angle | 11° | | | | | |
| | % Impairment | 4% | | | | | |
| Straight leg raising (SLR), left | Left SLR | | | | | | |
| | ±10% or 5° | | (If tightest SLR ROM exceeds sum of sacral flexion and extension by more than 15°, lumbar ROM test is invalid) | | | | | |
| | Maximum SLR left | | | | | | |
| Straight leg raising (SLR), right | Right SLR | | | | | | |
| | ±10% or 5° | | (If tightest SLR ROM exceeds sum of sacral flexion and extension by more than 15°, lumbar ROM test is invalid) | | | | | |
| | Maximum SLR right | | | | | | |
| Lumbar left lateral bending | T12 ROM | 18° | 20° | 24° | | | |
| | Sacral ROM | 3° | 4° | 4° | | | |
| | Lumbar left lateral bending angle | 15° | 16° | 20° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum left lateral bending angle | 20° | | | | | |
| | % Impairment | 1% | | | | | |
| Lumbar right lateral bending | T12 ROM | 21° | 23° | 24° | | | |
| | Sacral ROM | 4° | 4° | 4° | | | |
| | Lumbar right lateral bending angle | 17° | 19° | 20° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum right lateral bending angle | 20° | | | | | |
| | % Impairment | 1% | | | | | |
| Lumbar ankylosis in lateral bending | Position | | | | | | |
| | % Impairment | | | | | | |

Total lumbar range of motion and ankylosis* impairment    10%

* If ankylosis is present, combine the ankylosis impairment with the range-of-motion impairment (Combined Values Chart, p. 604). If ankyloses in several planes are present, combine the ankylosis estimates (Combined Values Chart), then combine the result with the range-of-motion impairment.

© 2001 American Medical Association. Reproduced with permission.

© 2004-2017 JTECH Medical

Page 3

COLLIER APL 0122

LIB000449

VICKI COLLIER
20050164

P&S
Exam Date: 1/31/2019

## Impairments - Spine Evaluation Summary

| Impairment | Cervical | Thoracic | Lumbar |
|---|---|---|---|
| DRE Method (Tables 15-3 through 15-5) | | | |
| Range-of-Motion (and Table 15-7) | 5% | | 10% |
| Nerve Root: Loss of sensation with or without pain / Loss of strength | | | |
| Regional Impairment total (Impairments combined in each column using the Combined Values Chart, p. 604) | 5% | | 10% |
| Spine impairment total (all regional totals combined using the Combined Values Chart) | | 15% | |

Total whole person impairment:  **30%**

© 2001 American Medical Association. Reproduced with permission.

© 2004-2017 JTECH Medical

Page 4

COLLIER APL 0123

LIB000450

VICKI COLLIER
20050164

P&S
Exam Date: 1/31/2019

## Impairments - Left Upper Extremity Evaluation

| | | | Range of Motion | | | | Additional Impairments | Regional Impairment % |
|---|---|---|---|---|---|---|---|---|
| **W R I S T** | | Flexion | Extension | Ankylosis | Imp% | | | |
| | Angle° | 46° | 58° | | 2% | | | |
| | Imp% | 2% | 0% | | | | | |
| | | RD | UD | Ankylosis | Imp% | | | |
| | Angle° | 14° | 23° | | 2% | | | |
| | Imp% | 1% | 1% | | | | | |
| | | | | Flex/Ext + RD/UD = | 4% | | Impairment % = | **4%** |
| **E L B O W** | | Flexion | Extension | Ankylosis | Imp% | | | |
| | Angle° | 118° | | | 2% | | | |
| | Imp% | 2% | | | | | | |
| | | Pronation | Supination | Ankylosis | Imp% | | | |
| | Angle° | 79° | 73° | | 0% | | | |
| | Imp% | 0% | 0% | | | | | |
| | | | | Flex/Ext + Sup/Pro = | 2% | | Impairment % = | **2%** |
| **S H O U L D E R** | | Flexion | Extension | Ankylosis | Imp% | | | |
| | Angle° | 135° | 48° | | 3% | | | |
| | Imp% | 3% | 0% | | | | | |
| | | Abduction | Adduction | Ankylosis | Imp% | | | |
| | Angle° | 87° | 49° | | 4% | | | |
| | Imp% | 4% | 0% | | | | | |
| | | Int Rot | Ext Rot | Ankylosis | Imp% | | | |
| | Angle° | 34° | 61° | | 3% | | | |
| | Imp% | 3% | 0% | | | | | |
| | | | Flex/Ext + Add/Abd + Int Rot/Ext = | | 10% | | Impairment % = | **10%** |

| | |
|---|---|
| Amputation | |
| Regional impairment of upper extremity<br>• Combine hand (      ), wrist ( 4% ), elbow ( 2% ), shoulder ( 10% ) | **15%** |
| Peripheral nerve system impairment | |
| Other disorders (not included in regional impairment) | |
| Total upper extremity impairment | **15%** |
| Impairment of the whole person | **9%** |

© 2001 American Medical Association. Reproduced with permission.

© 2004-2017 JTECH Medical

COLLIER APL 0124

LIB000451

VICKI COLLIER
20050164

P&S
Exam Date: 1/31/2019

## Impairments - Right Upper Extremity Evaluation

### Abnormal Motion

| WRIST | | Flexion | Extension | Ankylosis | Imp% |
|---|---|---|---|---|---|
| | | Flexion | Extension | Ankylosis | Imp% |
| | Angle° | 42° | 54° | | 3% |
| | Imp% | 2% | 1% | | |
| | | RD | UD | Ankylosis | Imp% |
| | Angle° | 13° | 20° | | 3% |
| | Imp% | 1% | 2% | | |
| | | | Flex/Ext + RD/UD = | | 6% |

| ELBOW | | Flexion | Extension | Ankylosis | Imp% |
|---|---|---|---|---|---|
| | Angle° | 112° | | | 3% |
| | Imp% | 3% | | | |
| | | Pronation | Supination | Ankylosis | Imp% |
| | Angle° | 80° | 78° | | 0% |
| | Imp% | 0% | 0% | | |
| | | | Flex/Ext + Sup/Pro = | | 3% |

| SHOULDER | | Flexion | Extension | Ankylosis | Imp% |
|---|---|---|---|---|---|
| | Angle° | 132° | 45° | | 3% |
| | Imp% | 3% | 0% | | |
| | | Abduction | Adduction | Ankylosis | Imp% |
| | Angle° | 92° | 43° | | 4% |
| | Imp% | 4% | 0% | | |
| | | Int Rot | Ext Rot | Ankylosis | Imp% |
| | Angle° | 64° | 81° | | 1% |
| | Imp% | 1% | 0% | | |
| | | Flex/Ext + Add/Abd + Int Rot/Ext = | | | 8% |

### Additional Impairments / Regional Impairment %

| Additional Impairments | Regional Impairment % |
|---|---|
| Impairment % = | 6% |
| Impairment % = | 3% |
| Impairment % = | 8% |

| | |
|---|---|
| Amputation | |
| Regional impairment of upper extremity<br>• Combine hand (     ), wrist ( 6% ), elbow ( 3% ), shoulder ( 8% ) | 16% |
| Peripheral nerve system impairment | |
| Other disorders (not included in regional impairment) | |

| | |
|---|---|
| Total upper extremity impairment | 16% |
| Impairment of the whole person | 10% |

© 2001 American Medical Association. Reproduced with permission.

© 2004-2017 JTECH Medical

Page 6

COLLIER APL 0125

LIB000452



# Synapse Medical Group

5651 Sepulveda Blvd. 2nd. Floor
Suite 201
Sherman Oaks, California 91411

Phone 818-788-2400
Fax 818-788-2453

Important Notice: This report contains protected health information that may not be used or disclosed unless authorized by the patient or specifically permitted by the Health Insurance Portability and Accountability Act (HIPAA).

**RANGE OF MOTION**

√ CERVICAL SPINE __ THORACIC SPINE
√ LUMBAR SPINE √ SHOULDER
__ ELBOW __ WRIST __ HIPS
__KNEES __ANKLE

COLLIER APL 0126

LIB000453

VICKI COLLIER                                                          1
20050164                                            Exam Date: 9/5/2018

## Impairment Summary

All impairment estimates are based on the Guides to the Evaluation of Permanent Impairment published by the American Medical Association.

Impairments have been calculated using a linear method of interpolation. In case of a broad range of impairment percentages for a given test, the impairment has been assigned proportionally in a manner consistent with the corresponding Table. See individual Table references for additional details.

The final whole person impairment is 21%
- Cervical spine ROM Method whole person impairment is 8%
- Lumbar spine ROM Method whole person impairment is 5%
- Left upper extremity combined whole person impairment is 4%
- Right upper extremity combined whole person impairment is 5%

## Cervical Spine Impairment

The Range of Motion (ROM) Method was used to calculate the cervical spine impairment. The assigned impairments and basis for the impairments are listed below.

**Cervical Range of Motion Impairments** (Table 15-12, p. 418; Table 15-13, p. 420; Table 15-14, p. 421)

Contribution to Whole Person Impairment: 8%

- Maximum cervical flexion angle is 32° contributing 1% to the whole person impairment
- Maximum cervical extension angle is 46° contributing 1% to the whole person impairment
- Maximum cervical left lateral flexion angle is 23° contributing 1% to the whole person impairment
- Maximum cervical right lateral flexion angle is 16° contributing 1% to the whole person impairment
- Maximum cervical left rotation angle is 23° contributing 3% to the whole person impairment
- Maximum cervical right rotation angle is 53° contributing 1% to the whole person impairment

## Lumbar Spine Impairment

The Range of Motion (ROM) Method was used to calculate the lumbar spine impairment. The assigned impairments and basis for the impairments are listed below.

**Lumbar Range of Motion Impairments** (Table 15-8, p. 407; Table 15-9, p. 409)

Contribution to Whole Person Impairment: 5%

- Maximum true lumbar flexion angle is 48° with a sacral flexion angle of 55° contributing 1% to the whole person impairment
- Maximum true lumbar extension angle is 19° contributing 2% to the whole person impairment
- Maximum lumbar left lateral flexion angle is 20° contributing 1% to the whole person impairment
- Maximum lumbar right lateral flexion angle is 20° contributing 1% to the whole person impairment

According to the AMA Guides, an accessory validity test can be performed for lumbosacral flexion and extension. If the straight-leg-raising angle exceeds the sum of sacral flexion and extension angles by more than 15°, the lumbosacral flexion test is invalid. Normally, the straight-leg-raising angle is about the same as the sum of the sacral flexion-extension angle. If invalid, the examiner should either repeat the flexion-extension test or disallow impairment for lumbosacral spine flexion and extension.

**Left Shoulder Range of Motion Impairments** (Figure 16-40, p. 476; Figure 16-43, p. 477; Figure 16-46, p. 479)

Contribution to Whole Person Impairment: 4% (6% Upper Extremity)

- Left shoulder flexion motion is 132° contributing 3% to the upper extremity impairment
- Left shoulder extension motion is 56° contributing 0% to the upper extremity impairment
- Left shoulder abduction motion is 150° contributing 1% to the upper extremity impairment

COLLIER APL 0127

LIB000454

VICKI COLLIER                                                                                    1
20050164                                                                         Exam Date: 9/5/2018

- Left shoulder adduction motion is 48° contributing 0% to the upper extremity impairment
- Left shoulder internal rotation motion is 59° contributing 2% to the upper extremity impairment
- Left shoulder external rotation motion is 89° contributing 0% to the upper extremity impairment

**Right Shoulder Range of Motion Impairments** (Figure 16-40, p. 476; Figure 16-43, p. 477; Figure 16-46, p. 479)

Contribution to Whole Person Impairment: 5% (8% Upper Extremity)

- Right shoulder flexion motion is 137° contributing 3% to the upper extremity impairment
- Right shoulder extension motion is 47° contributing 0% to the upper extremity impairment
- Right shoulder abduction motion is 111° contributing 3% to the upper extremity impairment
- Right shoulder adduction motion is 42° contributing 0% to the upper extremity impairment
- Right shoulder internal rotation motion is 60° contributing 2% to the upper extremity impairment
- Right shoulder external rotation motion is 78° contributing 0% to the upper extremity impairment

COLLIER APL 0128

LIB000455

VICKI COLLIER                                                                           1
20050164                                                          Exam Date: 9/5/2018

Edwin Haronian M.D.
5651 Sepulveda Blvd. 2nd Floor Suite 201
Sherman Oaks, CA 91411

The patient was tested in our clinic using the J-tech Tracker 5 Motion Analyzer, which is
a computerized dual dynamic inclinometer system.

The purpose of the test was to document any restriction in the motion and to evaluate the
patient's functions during the tested motion. The program generates the impairment
associated with the loss of range of motion despite the fact that an MMI status may or
may have been reached. Please see narrative report for further details. This is not an MMI
report.

The J-tech system objectively documents the range of motion, reproducibility of motion,
smoothness of motion, patients coordinating and whether patterns of hesitation and
sudden slow down are present.

Each test with J-tech Tracker 5 Motion Analyzer was performed in accordance with
American Medical Association guideline to insure consistency and reproducibility of the
measure data. All measurements represented the patients' voluntary motion but at
maximum effort. Please see attached information including summary table of range of
motion measurements with comparisons to published norms representing the dynamic
motion of the tested joints.

Periodically, we request the measurements of range of motions, muscle strength, of
lifting capacity depending on the injured body parts at the time of the injury. This data
provides information on the continuum of improvement or worsening of the patients'
condition depending on the chosen method of treatment. The data also provides AMA
impairment based on the restriction of the range of motion. The numerical data that is
produced in this report only considers the impairment at the time that the measurements
were performed and Maximal Medical Improvement or a permanent and stationary status.
The timing of a permanent and stationary status depends on many factors and is reflected
in a separate narrative report when all conditions that were industrially caused have
stabilized and reached Maximal Medical Improvement.

I declare, under penalty of perjury, that I have not violated the provisions of California
Labor code 139.3 and that the contents of this report and attached billing are true and
correct to the best of my knowledge. I also affirm that I have not violated any sections of
Labor Code 4628. Please see attached itemized billing with ICD-9 diagnosis code(s). The
foregoing declaration is executed on the date of this report and signed by myself in
County of Los Angeles.

Sincerely,

_____
Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
QME State of California License # A71385

Page 4 of 4

COLLIER APL 0129

LIB000456

VICKI COLLIER
20050164

1
Exam Date: 9/5/2018

## Impairments - Whole Person Impairment (WPI) Summary

| Region | | Impairment | Region | Impairment |
|---|---|---|---|---|
| Spine | | 13% | Left Upper Extremity | 4% |
| Cervical | (ROM Method) | 8% | Right Upper Extremity | 5% |
| Thoracic | | | Left Lower Extremity | |
| Lumbar | (ROM Method) | 5% | Right Lower Extremity | |

Impairments have been calculated using a linear method of interpolation, per p20 of the Guides. In case of a broad range of impairment percentages for a given test, the impairment has been assigned proportionally in a manner consistent with the corresponding Table. See individual Table references for additional details.

| | |
|---|---|
| Combined WPI | 21% |
| Adjustment to WPI | |
| Final WPI | 21% |

© 2004-2017 JTECH Medical

COLLIER APL 0130

LIB000457

VICKI COLLIER
20050164

1
Exam Date: 9/5/2018

## Impairments - Cervical Range of Motion (ROM)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Cervical flexion | Calvarium angle | 34° | 34° | 34° | | | |
| | T1 ROM | 2° | 2° | 3° | | | |
| | Cervical flexion angle | 32° | 32° | 31° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum cervical flexion angle | 32° | | | | | |
| | % Impairment | 1% | | | | | |
| Cervical extension | Calvarium angle | 43° | 45° | 45° | | | |
| | T1 ROM | -2° | -1° | -1° | | | |
| | Cervical extension angle | 45° | 46° | 46° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum cervical extension angle | 46° | | | | | |
| | % Impairment | 1% | | | | | |
| Cervical ankylosis in flexion/extension | Position | | | | | | |
| | % Impairment | | | | | | |
| Cervical left lateral bending | Calvarium angle | 25° | 25° | 27° | | | |
| | T1 ROM | 4° | 3° | 4° | | | |
| | Cervical left lateral bending angle | 21° | 22° | 23° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum left lateral bending angle | 23° | | | | | |
| | % Impairment | 1% | | | | | |
| Cervical right lateral bending | Calvarium angle | 16° | 16° | 14° | | | |
| | T1 ROM | 0° | 0° | 0° | | | |
| | Cervical right lateral bending angle | 16° | 16° | 14° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum right lateral bending angle | 16° | | | | | |
| | % Impairment | 1% | | | | | |
| Cervical ankylosis in lateral bending | Position | | | | | | |
| | % Impairment | | | | | | |
| Cervical left rotation | Cervical left rotation angle | 20° | 23° | 21° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum cervical left rotation angle | 23° | | | | | |
| | % Impairment | 3% | | | | | |
| Cervical right rotation | Cervical right rotation angle | 53° | 52° | 52° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum cervical right rotation angle | 53° | | | | | |
| | % Impairment | 1% | | | | | |
| Cervical ankylosis in rotation | Position | | | | | | |
| | % Impairment | | | | | | |

Total cervical range of motion and ankylosis* impairment   8%

\* If ankylosis is present, combine the ankylosis impairment with the range-of-motion impairment (Combined Values Chart, p. 604).
If ankyloses in several planes are present, combine the ankylosis estimates (Combined Values Chart), then combine the result with
the range-of-motion impairment.

© 2001 American Medical Association. Reproduced with permission.

© 2004-2017 JTECH Medical

Page 2

COLLIER APL 0131

LIB000458

VICKI COLLIER
20050164

1
Exam Date: 9/5/2018

## Impairments - Lumbar Range of Motion (ROM)

| Lumbar flexion | T12 ROM | 103° | 100° | 100° | | | |
|---|---|---|---|---|---|---|---|
| | Sacral ROM | 55° | 56° | 56° | | | |
| | True lumbar flexion angle | 48° | 44° | 44° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum true lumbar flexion angle | 48° | | | | | |
| | % Impairment | 1% | | | | | |
| Lumbar extension | T12 ROM | 38° | 34° | 39° | | | |
| | Sacral ROM | 21° | 19° | 20° | | | |
| | True lumbar extension angle | 17° | 15° | 19° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum lumbar extension angle | 19° | | | | | |
| | % Impairment | 2% | | | | | |
| Straight leg raising (SLR), left | Left SLR | | | | | | |
| | ±10% or 5° | | (If tightest SLR ROM exceeds sum of sacral flexion and extension by more than 15°, lumbar ROM test is invalid) | | | | | |
| | Maximum SLR left | | | | | | |
| Straight leg raising (SLR), right | Right SLR | | | | | | |
| | ±10% or 5° | | (If tightest SLR ROM exceeds sum of sacral flexion and extension by more than 15°, lumbar ROM test is invalid) | | | | | |
| | Maximum SLR right | | | | | | |
| Lumbar left lateral bending | T12 ROM | 22° | 23° | 24° | | | |
| | Sacral ROM | 3° | 4° | 4° | | | |
| | Lumbar left lateral bending angle | 19° | 19° | 20° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum left lateral bending angle | 20° | | | | | |
| | % Impairment | 1% | | | | | |
| Lumbar right lateral bending | T12 ROM | 29° | 30° | 29° | | | |
| | Sacral ROM | 9° | 10° | 9° | | | |
| | Lumbar right lateral bending angle | 20° | 20° | 20° | | | |
| | ±10% or 5° | Yes | | | | | |
| | Maximum right lateral bending angle | 20° | | | | | |
| | % Impairment | 1% | | | | | |
| Lumbar ankylosis in lateral bending | Position | | | | | | |
| | % Impairment | | | | | | |

Total lumbar range of motion and ankylosis* impairment    5%

* If ankylosis is present, combine the ankylosis impairment with the range-of-motion impairment (Combined Values Chart, p. 604).
If ankyloses in several planes are present, combine the ankylosis estimates (Combined Values Chart), then combine the result with
the range-of-motion impairment.

© 2001 American Medical Association. Reproduced with permission.

© 2004-2017 JTECH Medical

COLLIER APL 0132

LIB000459

VICKI COLLIER
20050164

1
Exam Date: 9/5/2018

## Impairments - Spine Evaluation Summary

| Impairment | Cervical | Thoracic | Lumbar |
|---|---|---|---|
| DRE Method (Tables 15-3 through 15-5) | | | |
| Range-of-Motion (and Table 15-7) | 8% | | 5% |
| Nerve Root: Loss of sensation with or without pain — Loss of strength | | | |
| Regional impairment total (impairments combined in each column using the Combined Values Chart, p. 604) | 8% | | 5% |
| Spine impairment total (all regional totals combined using the Combined Values Chart) | | 13% | |

Total whole person impairment:  **21%**

© 2001 American Medical Association. Reproduced with permission.

© 2004-2017 JTECH Medical

COLLIER APL 0133

LIB000460

VICKI COLLIER
20050164

1
Exam Date: 9/5/2018

## Impairments - Left Upper Extremity Evaluation

| | | Abnormal Motion | | | | Additional Impairments | Regional Impairment % |
|---|---|---|---|---|---|---|---|
| **W R I S T** | | Flexion | Extension | Ankylosis | Imp% | | |
| | Angle° | | | | | | |
| | Imp% | | | | | | |
| | | RD | UD | Ankylosis | Imp% | | |
| | Angle° | | | | | | |
| | Imp% | | | | | | |
| | | | Flex/Ext + RD/UD = | | | Impairment % = | |
| **E L B O W** | | Flexion | Extension | Ankylosis | Imp% | | |
| | Angle° | | | | | | |
| | Imp% | | | | | | |
| | | Pronation | Supination | Ankylosis | Imp% | | |
| | Angle° | | | | | | |
| | Imp% | | | | | | |
| | | | Flex/Ext + Sup/Pro = | | | Impairment % = | |
| **S H O U L D E R** | | Flexion | Extension | Ankylosis | Imp% | | |
| | Angle° | 132° | 56° | | 3% | | |
| | Imp% | 3% | 0% | | | | |
| | | Abduction | Adduction | Ankylosis | Imp% | | |
| | Angle° | 150° | 48° | | 1% | | |
| | Imp% | 1% | 0% | | | | |
| | | Int Rot | Ext Rot | Ankylosis | Imp% | | |
| | Angle° | 59° | 89° | | 2% | | |
| | Imp% | 2% | 0% | | | | |
| | | Flex/Ext + Add/Abd + Int Rot/Ext = | | | 6% | Impairment % = | 6% |

| | |
|---|---|
| Amputation | |
| Regional Impairment of upper extremity<br>• Combine hand (     ), wrist (     ), elbow (     ), shoulder ( 6% ) | 6% |
| Peripheral nerve system impairment | |
| Other disorders (not included in regional impairment) | |
| Total upper extremity impairment | 6% |
| Impairment of the whole person | 4% |

© 2001 American Medical Association. Reproduced with permission.

COLLIER APL 0134

LIB000461

VICKI COLLIER
20050164

1
Exam Date: 9/5/2018

## Impairments - Right Upper Extremity Evaluation

### Abnormal Motion

**WRIST**

|  | Flexion | Extension | Ankylosis | Imp% |
|---|---|---|---|---|
| Angle° |  |  |  |  |
| Imp% |  |  |  |  |
|  | RD | UD | Ankylosis | Imp% |
| Angle° |  |  |  |  |
| Imp% |  |  |  |  |

Flex/Ext + RD/UD =

**ELBOW**

|  | Flexion | Extension | Ankylosis | Imp% |
|---|---|---|---|---|
| Angle° |  |  |  |  |
| Imp% |  |  |  |  |
|  | Pronation | Supination | Ankylosis | Imp% |
| Angle° |  |  |  |  |
| Imp% |  |  |  |  |

Flex/Ext + Sup/Pro =

**SHOULDER**

|  | Flexion | Extension | Ankylosis | Imp% |
|---|---|---|---|---|
| Angle° | 137° | 47° |  | 3% |
| Imp% | 3% | 0% |  | |
|  | Abduction | Adduction | Ankylosis | Imp% |
| Angle° | 111° | 42° |  | 3% |
| Imp% | 3% | 0% |  | |
|  | Int Rot | Ext Rot | Ankylosis | Imp% |
| Angle° | 60° | 78° |  | 2% |
| Imp% | 2% | 0% |  | |

Flex/Ext + Add/Abd + Int Rot/Ext =    8%

### Additional Impairments

Impairment % =    (Flex/Ext + RD/UD)

Impairment % =    (Flex/Ext + Sup/Pro)

Impairment % =    8%

### Regional Impairment %

8%

---

Amputation

Regional impairment of upper extremity
• Combine hand (        ), wrist (        ), elbow (        ), shoulder ( 8% )    | 8%

Peripheral nerve system impairment

Other disorders (not included in regional impairment)

---

| Total upper extremity impairment | 8% |
|---|---|
| Impairment of the whole person | 5% |

© 2001 American Medical Association. Reproduced with permission.

© 2004-2017 JTECH Medical

Page 6

COLLIER APL 0135

**LIB000462**

TO: Kohan@Doonaonaini   From: Onjanow667anne  w  mitconer  Pages: 3

## Mitchell

## Mitchell International, Inc. 1350 Lakeshore Drive Suite 100, Coppell, TX 75019
## PH: (800) 407-0704 FX: (800) 362-7229

## Fax Cover Sheet

**To:** Jonathan F Kohan MD                    **Fax#:** (818) 827-4706

**From:** Suzanne Onjanow            **Date:** Monday, October 8, 2018 11:48AM

**# Of Pages** (following cover sheet): 2

**Regarding:** Mitchell case UR Review: Claim #: 2251062 Valverde, Carmen Paucar #12 UR

**Comments:**

Onjanow, Suzanne

The following attachments below are related to Valverde, Carmen Paucar.

This message was sent on behalf of Suzanne Onjanow

Mitchell

Electronic FaxMail system provided by www.datacare.com

**This Fax is Confidential**

This information is confidential. The information is intended only for the use of the individual or entity to whom it is addressed. Any other review, use, dissemination, distribution, disclosure, copying or taking of any action in reliance on the contents of this information without the recipient written permission, is strictly prohibited. If this information is received in error, please notify the sender at the above phone number and/or by U.S. mail to the above address.

COLLIER APL 0136

LIB000463

# mitchell

October 08, 2018

Provider Information:

Jonathan F Kohan MD
5651 Sepulveda Blvd., Ste. 201
Sherman Oaks, CA 91411

Fax: (818) 827-4706

Patient Information:
Re:          Carmen Paucar Valverde
Cl#:         2251062
Ref#:        2251062
Er:
DOI:         04/14/2016
Cert#:       cvalverd7852-12
Carrier/TPA:  AmTrust North America

This communication is intended only for the use of the individual or entity to which it is addressed

COLLIER APL 0137

LIB000464

Wed 03 Oct 2018 06:50:18 PM PDT          8187882453  Encino Office          Page 3 of 16

State of California
Division of Workers' Compensation
**REQUEST FOR AUTHORIZATION**
DWC Form RFA - California Code of Regulations, title 8, section 9785.

This form must accompany the Doctor's First Report of Occupational Injury or Illness, Form DLSR 5021, a Treating Physician's Progress Report, DWC Form PR-2, or narrative report substantiation the requested treatment.

[ ] New Request [ ] Resubmission - Change in Material Facts
[ ] Expedite Review: Check box if employee faces an imminent and serious threat this or her health
[ ] Check box if request is a written confirmation of prior oral request.

**Employee Information**

Employee Name (Last, First, Middle): COLLIER,Vicki

| Date of Injury (MM/DD/YYYY): ;CT:7/13/2013-7/24/2017 | Date of Birth(MM/DD/YYYY): |
|---|---|
| Claim Number: 17G44F696159;Unassigned | Employer: Automobile Club |

**Provider Information**

Provider Name:Edwin Haronian, M.D.

| Peer to Peer Direct line: 818-906-4658 | Contact Name: | |
|---|---|---|
| Address: 5651 Sepulveda Blvd.# 201 | City: Sherman Oaks | State: CA |
| Zip Code: 91411 | Phone: 818-616-1666 | Fax Number: 818-827-4706 |
| Provider Specialty: Orthopedic Surgery | NPI Number: 1063480192 | |

**Claims Administrator Information**

| Claims Administrator Name: CCMSI Irvine | Contact Name:Mendoza, Miguel | |
|---|---|---|
| Address: P.O. Box 53550 | City: Irvine | State: CA |
| Zip Code: 92619 | Phone:949-474-6500 | Fax Number: 217-444-2867 |
| E-mail Address: | | |

**Requested Treatment (see instruction for guidance; attached additional pates if necessary**

Either state the requested treatment in the below space or indicate the specific page number(s) of the accompanying medical report on which the request treatment can be found. Up to five (5) procedures may be entered; attached additional request on a separate sheet.

RECEIVED - CCMSI
OCT 04 2018
Irvine,CA - Adriana Machado

| Diagnosis | M50.00 | Cervical Radiculopathy |
|---|---|---|
| | M54.17 | Radiculopathy, lumbosacral region |
| | M75.40 | Impingement syndrome, shoulder |
| | M70.20 | Olecranon bursitis, elbow |
| | M77.20 | Periarthritis, unspecified wrist |
| ICD-Code | | |
| Procedure Requested | Request authorization for Test: EMG: of bilateral lower extremties; bilateral upper extremties. Physio-modalities: Physical Therapy 3 times a week for 4 weeks to cervical spine to lumbar spine to both shoulder to both elbow to both wrist to both hand. | |
| CPT/HCPCS Code | | |
| Other Information: (Frequency, Duration, Quantity, Facility, etc.) | | |

Treating Physician Signature:                                    Date:09/19/2018

**Claims Administrator Response**

[ ] Approved [✓] Denied or Modified (see separate decision letter [ ] Delay (See separate notification of delay)
[ ] Requested treatment has been previously denied [ ] Liability for treatment is disputed

| Authorization Number (if assigned): | Date: 10/8/18 |
|---|---|
| Authorized Agent Name: Miguel Mendoza | Signature: |
| Phone:949-474-6589 | Fax Number: | E-mail Address: |
| Comments: Claim was denied on 7/30/18. | |

DWC Form RFA (Effective 2/2011)

COLLIER APL 0138

LIB000465

# 20050104

**CCMSI**

www.ccmsi.com

August 28, 2018

Dr. Edwin Haronian
5651 Sepulveda Blvd, Suite 201
Sherman Oaks, CA 91411

SEP 04 2018

| Re: | Claimant: | Vicki D Collier |
|---|---|---|
| | Employer: | Automobile Club of Southern California |
| | Date of Injury: | 07/24/2017 |
| | Claim No.: | 17G44F696159 |
| | Issuing Company: | Old Republic Insurance Co |

Dear Dr. Haronian,

Cannon Cochran Management Services, Inc. (CCMSI) is handling the above-captioned claim for workers' compensation benefits on behalf of Automobile Club of Southern California.

Defendant, CCMSI, objects to the billing/medical reporting (s) of **Vicki D Collier**, for various dates of service.

Your medical care and treatment of this patient is not authorized, as you are not in the **Medex** Medical Provider Network (MPN). Therefore, any further medical care, treatment and/or prescription the applicant is or will be receiving are considered self-procured and unauthorized by defendant. Defendant will not pay voluntarily/reimburse your facility for any services rendered past, present or future.

Please be advised that if you dispute any objections/reductions to your bills you may file a lien and/or Application for Adjudication of Claim with the Workers Compensation Appeals Board or request that the disputed issue be determined by binding arbitration. You may also contact an attorney or utilize any other remedy available under the Labor Code or Rules of Practice and Procedure.

Please consider this an ongoing objection to any and all further medical, legal and/or self-procured treatment costs incurred by or on behalf of applicant herein.

---

**Cannon Cochran Management Services, Inc.**
PO Box 53550 | Irvine, CA 92619-3550
Toll: 866-965-1595 | Tel: 949-474-6500 | Fax: 949-474-6064

*FRAUD WARNING: Any person who, knowingly and with intent to injure, defraud, or deceive any employer, insurance company, third party administrator, self-insured program, or any other third party, files an insurance claim containing any false or misleading information, which violates an applicable state statute, is guilty of a crime and subject to prosecution.*

COLLIER APL 0139

**LIB000466**

COLLIER APL 0140

LIB000467



www.ccmsi.com

Sincerely,

**Miguel Mendoza**
Sr. Claims Examiner

CC:     File

---

**Cannon Cochran Management Services, Inc.**
PO Box 53550 | Irvine, CA 92619-3550
Toll: 866-965-1595 | Tel: 949-474-6500 | Fax: 949-474-6064

*FRAUD WARNING: Any person who, knowingly and with intent to injure, defraud, or deceive any employer, insurance company, third party administrator, self-insured program, or any other third party, files an insurance claim containing any false or misleading information, which violates an applicable state statute, is guilty of a crime and subject to prosecution.*

COLLIER APL 0141

**LIB000468**

COLLIER APL 0142

LIB000469

# PATIENT INFORMATION FORM

First Name: Vicki                    Last Name: Collier

AKA: ███████████████████████

Address: ███████████████████

S.S.#: _____    Date of Birth: _____    Age: 55    Sex: F

Home Phone #: _____    Cell #: ███████████    Work #: _____

Email: colliervicki@gmail.com

Referred by: Robert Palty

1. Type of injury? Shoulder, neck, upper back, forearm elbow, tingling, hemmoids
2. Did you ever provide notice of injury? yes
3. Name of the Person you informed of injury: Steve Squire, Jonathon King, Scott Derryberry
4. Position of person informed? Mgrs                    Jesse Mckelvy, Lori Alexander
5. Were you offered treatment prior to today's visit? No , if yes give a short statement Jessie moody
   why you seek different care? _____    Gina Suanti

_____

Employer at time of injury: Auto Club                    Phone # 661-288 5580

Employer Address: 25770 Valencia Blvd

Date of Accident: _____    Occupation: Sales Agent

Body Part Complaints: see above

Insurance Company: Kaiser

Insurance Address: _____    Phone #: _____

Claim Number: _____    Adjusters Name: _____

Attorney Name: Robert Palty

Attorney Address: Balboa, Van Nuys    Phone #: _____

Emergency Contact Name: Duane Raha    Phone #: 661-406-4002

Signature: _____    Date: 9-5-18

COLLIER APL 0143

LIB000470

## WORKER'S COMPENSATION DISPENSING DISCLOSURE

Notification to Patients:

This office can provide you with many of your medications free of charge to you, before you leave the office. You have the right to request a prescription from your doctor in place of these medications, and have the right to have those prescriptions filled at a pharmacy of your choice.

Please sign below to indicate that you have been informed of these rights:

Vicki Collier _____ Patient Name

Y Ce _____ Patient Signature

9-5 2018 _____ Date

ER _____ Office Initials

COLLIER APL 0144

LIB000471

**RELEASE OF AUTHORIZATION TO:** *SYNAPSE MEDICAL GROUP*
**AUTORIZACION DE DIVULGACION A:** *SYNAPSE MEDICAL GROUP*

I/Yo _Videi Collier_ .

o   I acknowledge full financial responsibility for services render by Dr. Haronian , I
understand that payment of charges incurred is due at the time of service unless other definite
financial arrangements have been made prior to treatment  I agree to pay all reasonable fees and
collection costs  in the event of default of payment of my charges.

o   Yo tengo conocimiento  que soy completamente responsable por los servicios prestados por el Dr.
Haronian , y entiendo que los cargos recurridos se cobraran el dia dela visita
almenos que exista un acuerdo  financiero definido antes del tratamiento, Yo acepto pagar todo el
pago requirido  y costos de colleccion en el evento de un falta de pago,

o   I authorize Dr. Haronian , to release ONLY the following information  if
requested.The date of my injtuy (ies), diagnoses, date of the first examination  by the doctor,
current treatment and work status, and the anticipated  return  to work date (if known).  Under no
circumstance should any other information be disclosed without my specific consent..

o   Yo autorizo al Dr. Haronian , que divulgen solo la siguiente informacion si es
solicitada: La fecha de mis lesiones, diagnosticos, fecha de mi primer examen, tratamiento, situacion
de trabajo y fecha anticipada para regresar al trabajo, Bajo ninguna circunstancia , ninguna otra
infomacion debe ser divulgada sin mi consentimiento specifico.

o   I authorize Dr. Haronian , to release any and ALL medical and disability information
when reques ted.

o   Yo authorizo al Dr. Haronian , que divulguen cualquier o toda informacion medica o
informacion de mi descapacidada cuando sea requerida.

o   I authorize that any and all MRI/ XRAY (FILMS and REPORTS) or any other test that has been
taken regarding my injury to be released to the office of Dr. Haronian .

o   Yo autorizo que todos y cualquier MRI/Radiografias (Placas e informes) o cualquier otro examen
diagnostico que este relacionado con mi lesion, sean entregadas a la officinal del Dr. Haronian

o   I have read and fully understand the above consent for treatment, financial responsibility, release of
medical information and insurance authorization.

o   Yo he leido y entendido y entendido completamente el consentimiento mencionado
anteriormente, para tratamiento, responsabilidad financiera, divulgacio'n de informacio'n
medica y authorisacion a la compania de seguro.

_____                    _G-15-18_
Patient Signature                                   Date
Firma del Paciente                                  Fecha

**Please fax requested Information to 818-788-2453.**
Synapse Medical Group
Tel 818-788-2400
Tel: 909-622-6222

COLLIER APL 0145

**LIB000472**

# Edwin Haronian, M.D.

## AGREEMENT FOR CONTROLLED SUBSTANCE PRESCRIPTIONS

Controlled substance medications (i.e. narcotics, tranquilizers, and barbiturates) are very useful, but have a high potential for the local, state and federal government therefore, closely controls misuses. They are intended to relieve pain, to improve function, and/or ability to work, not simply to feel good. Because my physician is prescribing such medication for me to help manage my condition, I agree to the following conditions:

**Please initial all the lines below that are next to the numbers. If you are unsure or disagree with any of these following points please advise Dr. _Haronian_ or his staff before signing.**

1) *I am responsible for my controlled substance medications.* If the prescription of medication is lost, misplaced, or stolen, or if use it up sooner than prescribed, I understand that it will not be replaced.

2) *I will not request or accept controlled substance medication from any other physician or individual while I am receiving such medication from Dr. _Haronian_.* Besides being illegal to do so, it may endanger my health. The only exception is if it is prescribed while I am in a hospital.

3) *Refills* of controlled substance medication:

   a)   Will be made only during regular office hours, in person, once each month (or as arranged by the practitioner) during a scheduled office visits.

   b)   Will not be made if "run out early", I am responsible for taking the medication in the dose prescribed and for keeping track of the amount remaining.

   c)   Will not be made as an "emergency", such as Friday afternoon because I suddenly realize I will "run out tomorrow". I will call at least seventy-two (72) hours ahead if need assistance with a controlled substance medication prescription.

4) *I will bring in the containers of my all medications prescribed by Dr. _Haronian_* each time I see him even if there is no medication remaining. These will be in the original containers from the pharmacy for each medication.

5)   I understand that if I violate any of the above conditions, my controlled substances prescription and/or treatment may be terminated immediately. If the violation involves obtaining controlled substances from another individual, as described above, I may also be reported to my physician, medical facilities, and other authorities.

6)   I understand *that the main treatment goal is to improve my ability to function and/or work.* In consideration of that goal and the fact that I am being given potent medication to help me reach that goal, I agree to help myself by following better health habits: exercise, weight control, and the non-use of tobacco and alcohol. I understand that only through following a healthier life-style can I hope to have the most successful outcome to my treatment.

7)   No wish to harm self or others.

8)   I agree, with full informed consent, to provide tissue, or body fluid for drug analysis when requested for routine screening purposes.

9)   I agree to allow Dr. _Haronian_ to talk with my other treating practitioners, obtain records as needed, and obtain information from any and all pharmacies when needed.

I have been fully informed by _Edwin Haronian, M.D._ and his staff regarding psychological dependence and physical dependence (addiction) of a controlled substance, which I understand is rare. I know that that some persons may develop a tolerance, which is the need to increase the dose of the medication to achieve the same effect of pain control, and I do know that I will become physically dependent on some medication. Should this occur I will stop the medication only under medical supervision or I may have withdrawal symptoms.

I have read this contract and Dr. _Haronian_ and/or their staff has explained it to me. In addition, I fully understand the consequences of violating said contract.

Patient Signature _____    Date  9-5 18

Witness or Translators Signature _____    Date  9|5|18

COLLIER APL 0146

LIB000473

# Protected Health Information (PHI) / HIPAA

Patient Name (Print)___Vicki Collier___     Date ___9.5-18___

Due to recent implemented Federal Regulations the following public notice by Synapse Medical Group is effective as of November 1, 2011.

**Synapse Medical Group is required to:**

1. Maintain the privacy of your health information.
2. Provide you with this notice as to what our legal duties and privacy practices are with respect to information we collect and maintain about you.
3. Abide by the terms of this practice.
4. Notify you if we are unable to agree to a requested restriction, and accommodate any reasonable request you may have to communicate health alternative means or alternative locations.
5. We will not use or disclose your health information without your authorization, except as described in this notice.
6. We will use and disclose your PHI in order to bill and collect payment for the services and items you may have received from us. For example, we will contact your insurer to certify that you are eligible for benefits and we may provide your insurer with details regarding your treatment to determine if your insurer will cover, or pay for, your treatment.

**WE ARE PERMITTED TO USE, AND MAY BE REQUIRED, TO DISCLOSE YOUR PHI UNDER SPECIAL CIRCUSTANCES:**

1. **Disclose Required By Law**: Our practice will use and disclose your PHI when we are required to do so by federal, state, or local law, including health oversight activities, court or administrative orders or similar legal proceedings.
2. **Public Health Risk**: Our practice may disclose your PHI to public health authorities who are authorized to collect information for such purposes as maintaining vital records, preventing or controlling disease, injury, or disability; or notifying a person regarding potential exposure to a communicable disease.
3. **Serious Threats to Health of Safety**: Our practice may disclose your PHI when necessary to reduce or prevent a serious threat to your health and safety or the health and safety of another individual or the public.
4. **Deceased Patients**: Our practice may release PHI to a medical examiner or coroner to identify a deceased individual or to identify the cause of death. If necessary, we also may release information in order for funeral directors to perform their jobs.
5. **Organ Donor**: Our practice may release PHI to a medical facility for tissue procurement of transplantation, including organ donation banks, as necessary to facilitate organ or tissue donation and transplantation if you are an organ donor.
6. **Worker's Compensation**: Our practice may release your PHI for workers' compensation and similar programs.

Our practice may contact you or your authorized representatives (see authorization form attached) to provide appointment reminders or information about treatment alternatives or other health-related benefits and services that may be of interest to you. The practice might routinely contact patients via telephone at home and /or work, via mail at home, and unless otherwise requested, may leave messages on the appropriate voice mail or answering service regarding appointments and billing questions.

All requests for medical records should be hand written and should contain:
**Full Name**
**Date of Birth**
**Mailing Address**
**Phone Number**
**Written Signature**

COLLIER APL 0147

LIB000474

An additional fee might be asked for generating a copy or mailing all medical records as per the rules practiced by the clinic.

At no time will any person, including your spouse, be able to obtain information from your medical record without prior written authorization. Only parents or legal guardian of a child under the age of 18 will be allowed to access medical record information, with proof of child's social security number and date of birth.

**Patient Rights**

1.  **Confidential Communications:** You have the right to request that our practice communicate with you about health and related issues in a particular manner or at a certain location. Our practice will accommodate reasonable request.

2.  **Requesting Restrictions:** You have the right to request restriction on our use of disclosure of you PROTECTED HEALTH INFORMATION for treatment, payment, or health care operations. We are not required to agree to your request; however if we do agree, we are bound by our agreement except when otherwise required by law, in emergencies, or when the information is necessary to treat you.

3.  **Inspection and Copies:** You have the right to request and obtain a copy of your PROTECTED HEALTH INFORMATION. Our practice will charge a fee for the cost of copying, mailing, labor, and supplies associated with your request. Our practice may deny your request to inspect and/or copy limited circumstances. However, you may request a review of our denial.

4.  **Amendment:** You may ask us to amend your health information if you believe it is incorrect or incomplete, and you may request an amendment for as long as the information is kept by or for this practice. Your request must provide us with the reason that supports your request for amendment. Your request may be denied if you ask us to amend information that is in our opinion: a) accurate and complete; b) not part of the PROTECTED HEALTH INFORMATION kept by or for the practice; c) not part of the PROTECTED HEALTH INFORMATION that you would be permitted to inspect and copy; or d) not created by our practice, unless the individual or entity that created the information is not available to amend the information.

5.  **Rights to a paper Copy of This Notice:** You are entitled to receive a paper copy of our notice of privacy practices. You may ask us to give you a copy of this notice at any time.

6.  **Rights to File a Complaint:** If you believe your privacy rights have been violated, you may file a complaint with our practice or with the Secretary of the Department of Health and Human Services. All complaints must be submitted in writing. You will not be penalized for filing a complaint.

If you have any questions regarding this notice or would like to exercise any of your rights under this notice, you may contact:

## Sherman Oaks

5651 Sepulveda Blvd.# 201

Sherman Oaks, CA 91411

818-788-2400

818-788-2453

COLLIER APL 0148

LIB000475

# Synapse Medical Group

**Complete and return to Receptionist**

## ACKNOWLEDGEMENT

I acknowledge that I have received the Notice of Privacy Practices from Synapse Medical Group and understand that if I have questions regarding this Notice I may contact the office at: 818-788-2400

Indicated below are names of any Person(s) to whom I would like Edwin Haronian, M.D. to allow disclosure of Individually Identifiable Health Information (IIHI). (Please, specify the type of information that may be disclosed, such as lab test, appointment information, prescription information, etc. You may indicate "All" if appropriate).

| Name | Relation to Patient | Allowed Disclosure |
|------|--------------------|--------------------|
|      |                    |                    |
|      |                    |                    |

Patient Name: Vicki Collier    File #

Patient Signature:

COLLIER APL 0149

LIB000476

## PATIENT INFORMATION FORM

First Name: _Vicki_    Last Name: _Collier_

AKA: ████████████████    Valencia 91354

S.S.#: ____    Date of Birth: ████████    Age: _55_    Sex: _F_

Home Phone #: ____    Cell # ████████    Work #: ____

Email: _Colliervick@gmail.com_

Referred by: _Attyn Robert Palty_

1. Type of injury? _See prior notes / Via phone call_
2. Did you ever provide notice of injury? ____
3. Name of the Person you informed of injury: ____
4. Position of person informed? ____
5. Were you offered treatment prior to today's visit? ____, if yes give a short statement why you seek different care? _referral_
____
____

Employer at time of injury: _Auto Club_    Phone # ____

Employer Address: ____

Date of Accident: _2014_    Occupation: _Insurance Agent_

Body Part Complaints: _neck, shoulders, back, elbows, wrist, head, all lower extremities,_

Insurance Company: ____

Insurance Address: ____    Phone #: ____

Claim Number: ____    Adjusters Name: ____

Attorney Name: _Robert Palty_

Attorney Address: ____    Phone #: ____

Emergency Contact Name: _Duane Raha_    Phone #: _6604064000_

Signature: _____    Date: _12/13/18_

COLLIER APL 0150

LIB000477

RELEASE OF AUTHORIZATION TO: *SYNAPSE MEDICAL GROUP*
AUTORIZACION DE DIVULGACION A: *SYNAPSE MEDICAL GROUP*

I/Yo ___ Vicki Collier.

o   I acknowledge full financial responsibility for services render by Dr. Kohan _____, I
understand that payment of charges incurred is due at the time of service unless other definite
financial arrangements have been made prior to treatment I agree to pay all reasonable fees and
collection costs in the event of default of payment of my charges.
                              Do not accept responsibility

□   Yo tengo conocimiento que soy completamente responsable por los servicios prestados por el Dr.
Kohan _____, y entiendo que los cargos recurridos se cobraran el dia dela visita
almenos que exista un acuerdo financiero definido antes del tratamiento, Yo acepto pagar todo el
pago requirido y costos de colleccion en el evento de un falta de pago,

X   I authorize Dr. Kohan _____, to release ONLY the following information if
requested. The date of my injtuy (ies), diagnoses, date of the first examination by the doctor,
current treatment and work status, and the anticipated return to work date (if known). Under no
circumstance should any other information be disclosed without my specific consent..

□   Yo autorizo al Dr. Kohan _____, que divulgen solo la siguiente informacion si es
solicitada: La fecha de mis lesiones, diagnosticos, fecha de mi primer examen, tratamiento, situacion
de trabajo y fecha anticipada para regresar al trabajo, Bajo ninguna circunstancia , ninguna otra
infomacion debe ser divulgada sin mi consentimiento specifico.

✗   I authorize Dr. Kohan _____, to release any and ALL medical and disability information
when reques ted.

□   Yo authorizo al Dr. Kohan _____, que divulguen cualquier o toda informacion medica o
informacion de mi descapacidada cuando sea requerida.

✗   I authorize that any and all MRI/ XRAY (FILMS and REPORTS) or any other test that has been
taken regarding my injury to be released to the office of Dr. Kohan _____.

□   Yo autorizo que todos y cualquier MRI/Radiografias (Placas e informes) o cualquier otro examen
diagnostico que este relacionado con mi lesion, sean entregadas a la officinal del Dr. Kohan _____.

✗   I have read and fully understand the above consent for treatment, financial responsibility, release of
medical information and insurance authorization. Do not accept financial
                                                                    responsibility

□   Yo he leido y entendido y entendido completamente el consentimiento mencionado
anteriormente, para tratamiento, responsabilidad financiera, divulgacio'n de informacio'n
medica y authorisacion a la compania de seguro.

_____          12/13/18
Patient Signature                          _____
Firma del Paciente                         Date
                                           Fecha

**Please fax requested information to 818-788-2453.**
Synapse Medical Group
Tel 818-788-2400
Tel: 909-622-6222

COLLIER APL 0151

**LIB000478**

## Jonathan F. Kohan, M.D.

### AGREEMENT FOR CONTROLLED SUBSTANCE PRESCRIPTIONS

Controlled substance medications (i.e. narcotics, tranquilizers, and barbiturates) are very useful, but have a high potential for the local, state and federal government therefore, closely controls misuses. They are intended to relieve pain, to improve function, and/or ability to work, not simply to feel good. Because my physician is prescribing such medication for me to help manage my condition, I agree to the following conditions:

Please initial all the lines below that are next to the numbers. If you are unsure or disagree with any of these following points please advise Dr. Kohan _____ or his staff before signing.

1) *I am responsible for my controlled substance medications.* If the prescription of medication is lost, misplaced, or stolen, or if use it up sooner that prescribed. I understand that it will not be replaced.

2) *I will not request or accept controlled substance medication from any other physician or individual while I am receiving such medication from Dr.* Kohan _____. Besides being illegal to do so, it may endanger my health. The only exception is if it is prescribed while I am in a hospital.

3) *Refills* of controlled substance medication:

    a)    Will be made only during regular office hours, in person, once each month (or as arranged by the practitioner) during a scheduled office visits.

    b)    Will not be made if "run out early". I am responsible for taking the medication in the dose prescribed and for keeping track of the amount remaining.

    c)    Will not be made as an "emergency", such as Friday afternoon because I suddenly realize I will "run out tomorrow". I will call at least seventy-two (72) hours ahead if need assistance with a controlled substance medication prescription.

4) *I will bring in the containers of my all medications prescribed by Dr.* Kohan _____ each time I see him even if there is no medication remaining. These will be in the original containers from the pharmacy for each medication.

5) I understand that if I violate any of the above conditions, my controlled substances prescription and/or treatment may be terminated immediately. If the violation involves obtaining controlled substances from another individual, as described above, I may also be reported to my physician, medical facilities, and other authorities.

6) I understand *that the main treatment goal is to improve my ability to function and/or work.* In consideration of that goal and the fact that I am being given potent medication to help me reach that goal. I agree to help myself by following better health habits: exercise, weight control, and the non-use of tobacco and alcohol. I understand that only through following a healthier life-style can I hope to have the most successful outcome to my treatment.

7) No wish to harm self or others.

8) I agree, with full informed consent, to provide tissue, or body fluid for drug analysis when requested for routine screening purposes.

9) I agree to allow Dr. Kohan _____ to talk with my other treating practitioners, obtain records as needed, and obtain information from any and all pharmacies when needed.

I have been fully informed by Jonathan F. Kohan, M.D. _____ and his staff regarding psychological dependence and physical dependence (addiction) of a controlled substance, which I understand is rare. I know that that some persons may develop a tolerance, which is the need to increase the dose of the medication to achieve the same effect of pain control, and I do know that I will become physically dependent on some medication. Should this occur I will stop the medication only under medical supervision or I may have withdrawal symptoms.

I have read this contract and Dr. Kohan _____ and/or their staff has explained it to me. In addition, I fully understand the consequences of violating said contract.

Patient Signature _____ Date 12/13/18

Witness or Translators Signature _____ Date 12/13/18

COLLIER APL 0152

**LIB000479**

# Protected Health Information (PHI) / HIPAA

Patient Name (Print) _Vida Collier_    Date _12/13/18_

Due to recent implemented Federal Regulations the following public notice by Synapse Medical Group is effective as of November 1, 2011.

## Synapse Medical Group is required to:

1. Maintain the privacy of your health information.
2. Provide you with this notice as to what our legal duties and privacy practices are with respect to information we collect and maintain about you.
3. Abide by the terms of this practice.
4. Notify you if we are unable to agree to a requested restriction, and accommodate any reasonable request you may have to communicate health alternative means or alternative locations.
5. We will not use or disclose your health information without your authorization, except as described in this notice.
6. We will use and disclose your PHI in order to bill and collect payment for the services and items you may have received from us. For example, we will contact your insurer to certify that you are eligible for benefits and we may provide your insurer with details regarding your treatment to determine if your insurer will cover, or pay for, your treatment.

## WE ARE PERMITTED TO USE, AND MAY BE REQUIRED, TO DISCLOSE YOUR PHI UNDER SPECIAL CIRCUSTANCES:

1. **Disclose Required By Law**: Our practice will use and disclose your PHI when we are required to do so by federal, state, or local law, including health oversight activities, court or administrative orders or similar legal proceedings.
2. **Public Health Risk**: Our practice may disclose your PHI to public health authorities who are authorized to collect information for such purposes as maintaining vital records, preventing or controlling disease, injury, or disability; or notifying a person regarding potential exposure to a communicable disease.
3. **Serious Threats to Health of Safety**: Our practice may disclose your PHI when necessary to reduce or prevent a serious threat to your health and safety or the health and safety of another individual or the public.
4. **Deceased Patients**: Our practice may release PHI to a medical examiner or coroner to identify a deceased individual or to identify the cause of death. If necessary, we also may release information in order for funeral directors to perform their jobs.
5. **Organ Donor**: Our practice may release PHI to a medical facility for tissue procurement of transplantation, including organ donation banks, as necessary to facilitate organ or tissue donation and transplantation if you are an organ donor.
6. **Worker's Compensation**: Our practice may release your PHI for workers' compensation and similar programs.

Our practice may contact you or your authorized representatives (see authorization form attached) to provide appointment reminders or information about treatment alternatives or other health-related benefits and services that may be of interest to you. The practice might routinely contact patients via telephone at home and /or work, via mail at home, and unless otherwise requested, may leave messages on the appropriate voice mail or answering service regarding appointments and billing questions.

All requests for medical records should be hand written and should contain:
Full Name
Date of Birth
Mailing Address
Phone Number
Written Signature

COLLIER APL 0153

LIB000480

An additional fee might be asked for generating a copy or mailing all medical records as per the rules practiced by the clinic.

At no time will any person, including your spouse, be able to obtain information from your medical record without prior written authorization. Only parents or legal guardian of a child under the age of 18 will be allowed to access medical record information, with proof of child's social security number and date of birth.

**Patient Rights**

1. **Confidential Communications:** You have the right to request that our practice communicate with you about health and related issues in a particular manner or at a certain location. Our practice will accommodate reasonable request.

2. **Requesting Restrictions:** You have the right to request restriction on our use of disclosure of you PROTECTED HEALTH INFORMATION for treatment, payment, or health care operations. We are not required to agree to your request; however if we do agree, we are bound by our agreement except when otherwise required by law, in emergencies, or when the information is necessary to treat you.

3. **Inspection and Copies:** You have the right to request and obtain a copy of your PROTECTED HEALTH INFORMATION. Our practice will charge a fee for the cost of copying, mailing, labor, and supplies associated with your request. Our practice may deny your request to inspect and/or copy limited circumstances. However, you may request a review of our denial.

4. **Amendment:** You may ask us to amend your health information if you believe it is incorrect or incomplete, and you may request an amendment for as long as the information is kept by or for this practice. Your request must provide us with the reason that supports your request for amendment. Your request may be denied if you ask us to amend information that is in our opinion: a) accurate and complete; b) not part of the PROTECTED HEALTH INFORMATION kept by or for the practice; c) not part of the PROTECTED HEALTH INFORMATION that you would be permitted to inspect and copy; or d) not created by our practice, unless the individual or entity that created the information is not available to amend the information.

5. **Rights to a paper Copy of This Notice:** You are entitled to receive a paper copy of our notice of privacy practices. You may ask us to give you a copy of this notice at any time.

6. **Rights to File a Complaint:** If you believe your privacy rights have been violated, you may file a complaint with our practice or with the Secretary of the Department of Health and Human Services. All complaints must be submitted in writing. You will not be penalized for filing a complaint.

If you have any questions regarding this notice or would like to exercise any of your rights under this notice, you may contact:

## Sherman Oaks

5651 Sepulveda Blvd.# 201

Sherman Oaks, CA 91411

818-788-2400

818-788-2453

COLLIER APL 0154

LIB000481

# Synapse Medical Group

**Complete and return to Receptionist**

## ACKNOWLEDGEMENT

I acknowledge that I have received the Notice of Privacy Practices from Synapse Medical Group and understand that if I have questions regarding this Notice I may contact the office at: _818-788-2400_

Indicated below are names of any Person(s) to whom I would like _Jonathan F. Kohan, M.D._ to allow disclosure of Individually Identifiable Health Information (IIHI). (Please, specify the type of information that may be disclosed, such as lab test, appointment information, prescription information, etc. You may indicate "All" if appropriate).

| Name | Relation to Patient | Allowed Disclosure |
|------|---------------------|--------------------|
|      |                     |                    |
|      |                     |                    |

Patient Name: _Vicki Collier_    File # _____

Patient Signature: _____

COLLIER APL 0155

LIB000482



COLLIER APL 0156

**LIB000483**



COLLIER APL 0157

**LIB000484**



COLLIER APL 0158

LIB000485

COLLIER APL 0159

LIB000486



COLLIER APL 0160

LIB000487

☐ Edwin Haronian, MD ☑ Nicholas Cascone ☐ Molly Collins ☐ Michael Nadzhafov
Orthopedic Surgeon P.A.-C P.A.-C P.A.-C
DEA# BH7963590 DEA# MC1730173 DEA# MC3343009 DEA# MN1731656
LIC# A71386 LIC# PA19484 LIC# PA54000 LIC# PA19606

003075
1817004555

☑ 5651 Sepulveda Blvd. #201 Sherman Oaks, CA 91411 • Phone: (818) 788-2400 Fax: (818) 788-2453
☐ 724 Corporate Ctr. Dr. Pomona, CA 91768 • Phone: (909) 622-6222 Fax: (909) 622-8220

SECURITY FEATURES LISTED ON BACK

PATIENT NAME Collier, Vicki   DOB ▮▮▮▮   GENDER F

ADDRESS   PH. NO.

1) gabapentin 300 mg
   take 2 PO ghs

Quantity: ☐ 1-24 ☐ 25-49 ☑ 50-74 ☐ 75-100
☐ 101-150 ☐ 151-over Unit 60
Refills: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5
☐ Do Not Substitute Initials ___
Dispense As: ☐ First Time Fill ☐ Refill

2)

Quantity: ☐ 1-24 ☐ 25-49 ☐ 50-74 ☐ 75-100
☐ 101-150 ☐ 151-over Unit ___
Refills: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5
☐ Do Not Substitute Initials ___
Dispense As: ☐ First Time Fill ☐ Refill

3)

Quantity: ☐ 1-24 ☐ 25-49 ☐ 50-74 ☐ 75-100
☐ 101-150 ☐ 151-over Unit ___
Refills: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5
☐ Do Not Substitute Initials ___
Dispense As: ☐ First Time Fill ☐ Refill

Signature   Date 9/5/18

SP 98   Prescription is void if the number of drugs prescribed is not noted: ___1___

BLUE BACKGROUND, REFLECTIVE WATERMARK ON BACK

COLLIER APL 0161

**LIB000488**



COLLIER APL 0162

**LIB000489**



COLLIER APL 0163

LIB000490

## Edwin Haronian, M.D.
* 5651 Sepulveda Blvd.# 201  Sherman Oaks, CA 91411 *

## Authorization Request

**Today's Date: 09/13/2018**

**Our Chart No.** 20050164
**Patient Name:** Vicki COLLIER
**DOB:** ████████
**Claim #:** 17G44F696159
**Claim #:** Unassigned
**Request from Office Visit date:** 09 05, 2018

You can contact us by phone, fax or email

**\*Phone # : (909)622-6222 Ext: 104**
**\*Fax: (909) 992-3109**
**\*Email: Yoanaestrada@synapsedoctor.com**

Thank you.
Marilyn Murillo

Labor Code Section 4610, section (0) states that "no person other than a licensed physician.., may modify, delay or deny request for authorization of medical treatment. Labor Code Section 4610 section (g) states the time frame for UR. (1) Prospective or concurrent decisions shall be made in a timely fashion that is appropriate for the nature of the employee's condition, <u>not to exceed five working days from the receipt of the information reasonably necessary to make the determination, but in no event more than 14 days from the date of the medical treatment recommendation by the physician.</u> In cases where the review is retrospective, the decision shall be communicated to the individual who received services, or to the individual's designee, within 30 days of receipt of information that is reasonably necessary to make this determination. All of the denial or medication procedures contained in Labor Code section 4610 (g) (2) and (3) are mandatory, and if the statutory requirements are not met, the utilization review report is not admissible. The only other procedure for disputing the treatment is a QME, pursuant to Labor Code section 4062.

## Proof of Service State of California, County of Los Angeles

I am a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within entitled action.  My  business address is: <u>5651 Sepulveda Blvd. Suite 201 Sherman Oaks, CA 91411 or  724 Corporate Center Drive. 2nd Floor, Pomona, CA 91768</u>

On this date  09/13/2018 I served this report to the above Insurance Co. by transmitting via US Postal Services/facsimile this document between the hours of 8:00am and  5:00pm. The fascimile was reported as completed and without error by the transmitting fascimile machine.I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed in Los Angeles, CA

Executed on <u>09/13/2018</u>  at Sherman Oaks, California. I declare under penalty of perjury that the above is true and correct.

Signature: *Marilyn Murillo*
Marilyn Murillo

COLLIER APL 0164

**LIB000491**

State of California
Division of Workers' Compensation
**REQUEST FOR AUTHORIZATION**
DWC Form RFA - California Code of Regulations, title 8, section 9785.

**This form must accompany the Doctor's First Report of Occupational Injury or illness, Form DLSR 5021, a Treating Physician's Progress Report, DWC Form PR-2, or narrative report substantiation the requested treatment.**

[ ] New Request [ ] Resubmission - Change in Material Facts
[ ] Expedite Review: Check box if employee faces an imminent and serious threat this or her health
[ ] Check box if request is a written confirmation of prior oral request.

**Employee Information**

Employee Name (Last, First, Middle): COLLIER,Vicki

| Date of Injury (MM/DD/YYYY): | Date of Birth(MM/DD/YYYY): |
|---|---|
| Claim Number: 17G44F696159 | Employer: Automobile Club |

**Provider Information**

Provider Name:Edwin Haronian, M.D.

| Practice Name: | Contact Name: |
|---|---|
| Address: 5651 Sepulveda Blvd.# 201 | City: Sherman Oaks | State: CA |
| Zip Code: 91411 | Phone: 818-788-2400 | Fax Number: 818-788-2453 |
| Provider Specialty: Orthopedic Surgery | NPI Number: 1063480192 |

**Claims Administrator Information**

| Claims Administrator Name: CCMSI Irvine | Contact Name:Mendoza, Miguel |
|---|---|
| Address: P.O. Box 53550 | City: Irvine | State: CA |
| Zip Code: 92619 | Phone:949-474-6500 | Fax Number: 217-444-2867 |

E-mail Address:

**Requested Treatment (see instruction for guidance; attached additional pates if necessary**

Either state the requested treatment in the below space or indicate the specific page number(s) of the accompanying medical report on which the request treatment can be found. Up to five (5) procedures may be entered; attached additional request on a separate sheet.

| Diagnosis | M50.00 Cervical Radiculopathy<br>M54.17 Radiculopathy, lumbosacral region<br>M75.40 Impingement syndrome, shoulder<br>M70.20 Olecranon bursitis, elbow<br>M77.20 Periarthritis, unspecified wrist |
|---|---|
| ICD-Code | |
| Procedure Requested | **Neurontin 300mg:** Neurontin® (gabapentin) 300mg, one tab every 8 hours, #90 with 5 refills<br><br>The patient has been prescribed gabapentin) It is recommended by the MTUS chronic pain medical treatment guidelines and has shown to be effective for the treatment of diabetic neuropathy, and neuropathic pain.<br><br>CA MTUS 2009: §9792.24.2. Chronic Pain Medical Treatment Guidelines state that gabapentin has been shown to be effective for the treatment of diabetic painful neuropathy and postherpetic neuralgia and has been considered as a first-line treatment for neuropathic pain.<br><br>ODG Guidelines state that anti-epilepsy agents are recommended for neuropathic pain (pain due to nerve damage), but not for acute nociceptive pain (including somatic pain). The choice of specific agents will depend on the balance between effectiveness and adverse reactions. In June 2007 the FDA announced the approval of pregabalin as the first approved treatment for fibromyalgia.<br>. |
| CPT/HCPCS Code | |

COLLIER APL 0165

LIB000492

Case 8:20-cv-00839-JVS-KES    Document 17-1    Filed 01/29/21    Page 493 of 630
Page ID #:555

| Other Information: (Frequency, Duration, Quantity, Facility, etc.) | | |
|---|---|---|
| | | |
| Treating Physician Signature: | | Date:09/13/2018 |
| **Claims Administrator Response** | | |
| [ ] Approved   [ ] Denied or Modified (see separate decision letter  [ ] Delay (See separate notification of delay) [ ] Requested treatment has been previously denied  [ ] Liability for treatment is disputed | | |
| Authorization Number (if assigned): | Date: | |
| Authorized Agent Name: | Signature: | |
| Phone: | Fax Number: | E-mail Address: |
| Comments: | | |

DWC Form RFA (Version 7/2013)

COLLIER APL 0166

**LIB000493**

# Edwin Haronian, M.D.
\* 5651 Sepulveda Blvd.# 201  Sherman Oaks, CA 91411 \*

## Authorization Request

**Today's Date: 11/29/2018**

**Our Chart No.** 20050164
**Patient Name:** Vicki  COLLIER
**DOB:** ▮▮▮▮▮▮▮▮
**Claim #:** 17G44F696159
**Claim #:** Unassigned
**Request from Office Visit date:** 11 29, 2018

You can contact us by phone, fax or email

**\*Phone # : (909)622-6222 Ext: 104**
**\*Fax: (909) 992-3109**
**\*Email: ur@synapsedoctor.com**

Thank you.
Paulina Delgado

Labor Code Section 4610, section (0) states that "no person other than a licensed physician.., may modify, delay or deny request for authorization of medical treatment. Labor Code Section 4610 section (g) states the time frame for UR. (1) Prospective or concurrent decisions shall be made in a timely fashion that is appropriate for the nature of the employee's condition, <u>not to exceed five working days from the receipt of the information reasonably necessary to make the determination, but in no event more than 14 days from the date of the medical treatment recommendation by the physician.</u> In cases where the review is retrospective, the decision shall be communicated to the individual who received services, or to the individual's designee, within 30 days of receipt of information that is reasonably necessary to make this determination. All of the denial or medication procedures contained in Labor Code section 4610 (g) (2) and (3) are mandatory, and if the statutory requirements are not met, the utilization review report is not admissible. The only other procedure for disputing the treatment is a QME, pursuant to Labor Code section 4062.

## Proof of Service State of California, County of Los Angeles

I am a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within entitled action.  My  business address is: <u>5651 Sepulveda Blvd. Suite 201 Sherman Oaks, CA 91411 or  724 Corporate Center Drive. 2nd Floor, Pomona, CA 91768</u>

On this date  11/29/2018 I served this report to the above Insurance Co. by transmitting via US Postal Services/facsimile this document between the hours of 8:00am and  5:00pm. The fascimile was reported as completed and without error by the transmitting fascimile machine.I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed in Los Angeles, CA

Executed on 11/29/2018  at Sherman Oaks, California. I declare under penalty of perjury that the above is true and correct.

Signature: *Paulina Delgado*

Paulina Delgado

COLLIER APL 0167

**LIB000494**

State of California
Division of Workers' Compensation
**REQUEST FOR AUTHORIZATION**
DWC Form RFA - California Code of Regulations, title 8, section 9785.

| This form must accompany the Doctor's First Report of Occupational Injury or illness, Form DLSR 5021, a Treating Physician's Progress Report, DWC Form PR-2, or narrative report substantiation the requested treatment. |
|---|

[ ] New Request [ ] Resubmission - Change in Material Facts
[ ] Expedite Review: Check box if employee faces an imminent and serious threat this or her health
[ ] Check box if request is a written confirmation of prior oral request.

**Employee Information**

Employee Name (Last, First, Middle): COLLIER,Vicki

| Date of Injury (MM/DD/YYYY): | Date of Birth(MM/DD/YYYY) ████ |
|---|---|
| Claim Number:  17G44F696159 | Employer: Automobile Club |

**Provider Information**

Provider Name:Edwin Haronian, M.D.

| Practice Name: | Contact Name: |
|---|---|
| Address: 5651 Sepulveda Blvd.# 201 | City: Sherman Oaks | State: CA |
| Zip Code: 91411 | Phone: 818-788-2400 | Fax Number: 818-788-2453 |
| Provider Specialty: Orthopedic Surgery | NPI Number: 1063480192 |

**Claims Administrator Information**

| Claims Administrator Name: CCMSI Irvine | Contact Name:Mendoza, Miguel |
|---|---|
| Address: P.O.  Box 53550 | City: Irvine | State: CA |
| Zip Code: 92619 | Phone:949-474-6500 | Fax Number:  949-474-6064 |

E-mail Address:

**Requested Treatment (see instruction for guidance; attached additional pates if necessary**

Either state the requested treatment in the below space or indicate the specific page number(s) of the accompanying medical report on which the request treatment can be found. Up to five (5) procedures may be entered; attached additional request on a separate sheet.

| Diagnosis | M54.17 Radiculopathy, lumbosacral region M77.20 |
|---|---|
| ICD-Code | |
| Procedure Requested | **Norco 5/325mg #30**<br><br>The patient has been prescribed Norco. According to the MTUS chronic pain medical treatment guidelines, it should be recommended for moderate-severe pain when alternative drugs have not been effective. Anti-inflammatories alone are insufficient to address this patient's pain component.<br>The benefits and risks associated with the narcotics has been discussed with the patient and there has been expression of understanding.<br><br>The patient notes the following:<br>Reduction in analgesia at least 30-40%.<br>The patient notes improved functional capacity with activities of daily living, self grooming, and chores around the house.<br>There are no significant reported adverse side effects.<br>Upon questioning of the patient, there is no suspicion of any aberrant behaviors.<br>The patient is taking a morphine equivalent dose less than the maximum recommended by the American Cancer Society guidelines.<br><br>CA MTUS Chronic Pain Medical Treatment Guidelines support ongoing opioid treatment when prescriptions are from a single practitioner and are taken as directed; are prescribed at the lowest possible dose; and when there is ongoing review and documentation of pain relief, functional status, appropriate medication use, and side effects. |

COLLIER APL 0168

LIB000495

CA MTUS Chronic Pain Medical Treatment Guidelines state that chronic pain can have a mixed physiologic etiology of both neuropathic and nociceptive components. In most cases, analgesic treatment should begin with acetaminophen, aspirin, and NSAIDs (as suggested by the WHO step-wise algorithm). When these drugs do not satisfactorily reduce pain, opioids for moderate to moderately severe pain may be added to (not substituted for) the less efficacious drugs.

ACOEM Guidelines state that opioids are recommended for select patients with chronic persistent pain, neuropathic pain, or CRPS. Select patients with chronic persistent pain that is not well-controlled (manifested by decreased function attributable to their pain) with non-opioid treatment approaches may be tried on opioids.

ODG Guidelines state that opioids are not recommended as a first-line therapy for neuropathic pain but recommended (along with tramadol) for second-line treatment (alone or in combination with first-line drugs). A recent consensus guideline stated that opioids could be considered first-line therapy for the following circumstances: (1) prompt pain relief while titrating a first-line drug; (2) treatment of episodic exacerbations of severe pain; (3) treatment of acute neuropathic pain; & (4) treatment of neuropathic cancer pain.

ODG Guidelines address maintenance of opioid therapy:
(a) Do not attempt to lower the dose if it is working
(b) Supplemental doses of break-through medication may be required for incidental pain, end-of dose pain, and pain that occurs with predictable situations. This can be determined by information that the patient provides from a pain diary or evaluation of additional need for supplemental medication.
(c) The standard increase in dose is 25 to 50% for mild pain and 50 to 100% for severe pain.
ontrolled (manifested by decreased function attributable to their pain) with non-opioid treatment approaches may be tried on opioids.

ODG Guidelines state that opioids are not recommended as a first-line therapy for neuropathic pain but recommended (along with tramadol) for second-line treatment (alone or in combination with first-line drugs). A recent consensus guideline stated that opioids could be considered first-line therapy for the following circumstances: (1) prompt pain relief while titrating a first-line drug; (2) treatment of episodic exacerbations of severe pain; (3) treatment of acute neuropathic pain; & (4) treatment of neuropathic cancer pain.

ODG Guidelines state that opioids are not recommended as a first-line treatment for chronic non-malignant pain, and not recommended in patients at high risk for misuse, diversion, or substance abuse. Recommended as a 2nd or 3rd line treatment option at doses   120 mg daily oral morphine equivalent dose.

ODG Guidelines address maintenance of opioid therapy:
(a) Do not attempt to lower the dose if it is working
(b) Supplemental doses of break-through medication may be required for incidental pain, end-of dose pain, and pain that occurs with predictable situations. This can be determined by information that the patient provides from a pain diary or evaluation of additional need for supplemental medication.
(c) The standard increase in dose is 25 to 50% for mild pain and 50 to 100% for severe pain.
.

| CPT/HCPCS Code | |
| --- | --- |
| Other Information: (Frequency, Duration, Quantity, Facility, etc.) | |

COLLIER APL 0169

LIB000496

| Treating Physician Signature: | Date: 11/29/2018 |
|---|---|

**Claims Administrator Response**

[ ] Approved   [ ] Denied or Modified (see separate decision letter  [ ] Delay (See separate notification of delay)
[ ] Requested treatment has been previously denied  [ ] Liability for treatment is disputed

| Authorization Number (if assigned): | Date: |
|---|---|
| Authorized Agent Name: | Signature: |

| Phone: | Fax Number: | E-mail Address: |
|---|---|---|

Comments:

DWC Form RFA (Version 7/2013)

COLLIER APL 0170

LIB000497

Case 8:20-cv-00839-JVS-KES    Document 17-1    Filed 01/29/21    Page 498 of 630
Page ID #:560



**California Department of Justice**
**Controlled Substance Utilization Review & Evaluation System (CURES)**

CONFIDENTIAL DOCUMENT

PATIENT/CLIENT ACTIVITY : CONSOLIDATED REPORT

CURES 2.0

Prescription Drug Transaction Details:

| Number of Records: 6 | | | | | | | Start Date: 05/07/2018 | | | | End Date: 05/07/2019 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date Filled | Last Name | First Name | DOB | Address | Drug Name | Form | Str | Qty | Days Sup. | PHY Name | PHY# | Presc. DEA# | Prescriber Name | RX: |
| 2019-04-23 | COLLIER | VICKI | | | HYDROCODONE BITARTRATE-ACETAMINOPHE | TAB | 325 MG-5 MG | 30 | 30 | VALENCIA TOWN CENTER PHARMACY | PHY53357 | BK6077502 | KOHAN, JONATHAN FARSHAD | 430 |
| 2019-03-09 | COLLIER | VICKI | | | HYDROCODONE BITARTRATE-ACETAMINOPHE | TAB | 325 MG-5 MG | 30 | 30 | VALENCIA TOWN CENTER PHARMACY | PHY53357 | BK6077502 | KOHAN, JONATHAN FARSHAD | 426 |
| 2019-01-28 | COLLIER | VICKI | | | HYDROCODONE BITARTRATE-ACETAMINOPHE | TAB | 325 MG-5 MG | 30 | 30 | VALENCIA TOWN CENTER PHARMACY | PHY53357 | BK6077502 | KOHAN, JONATHAN FARSHAD | 421 |
| 2018-12-19 | COLLIER | VICKI | | | HYDROCODONE BITARTRATE-ACETAMINOPHE | TAB | 325 MG-5 MG | 30 | 30 | VALENCIA TOWN CENTER PHARMACY | PHY53357 | BK6077502 | KOHAN, JONATHAN FARSHAD | 418 |
| 2018-11-29 | COLLIER | VICKI | | | ACETAMINOPHEN-HYDROCODONE BITARTRAT | TAB | 325 MG-5 MG | 30 | 15 | WALMART PHARMACY #10-5162 | PHY47025 | MC1730173 | CASCONE, NICHOLAS | 221 |
| 2018-11-12 | COLLIER | VICKI | | | ACETAMINOPHEN-HYDROCODONE BITARTRAT | TAB | 325 MG-5 MG | 20 | 5 | KAISER PERMANENTE PHARMACY #271 | PHY55972 | MO0510479 | OCULAM, MARIA RIZHEL MPAS PA-C | 200 90 |

*Disclaimer: This report is compiled from information maintained in the California Department of Justice's Controlled Substance Utilization Review & Evaluation System (CURES). The CURES Database contains Schedule II, Schedule I Schedule IV prescription dispensation information reported by California-licensed pharmacies and direct dispensers, and is therefore only as accurate as the information provided by these entities. The Department of Justice does not independently verify the accuracy of the data reported by pharmacies and direct dispensers.*

Page 1 of 1

JONATHAN KOHAN, JOKOHAN
05/07/2019 11:17 AM

COLLIER APL 0171

LIB000498

Report- COLLIER VICKI/RAM41303, Feb 15, 2019                                                    Page 1 of 3



3760 Santa Rosalia Dr
Los Angeles, CA 90008
TEL:(888) 814-0206
FAX:(888) 814-0207

# Final Report
# MRI OF LUMBAR SPINE

**PROFESSIONAL INTERPRETATION BY:** MARS HEALTHCARE, INC.
**TECHNICAL SERVICES PROVIDED BY:** SOCAL IMAGING

**PATIENT NAME:**  COLLIER VICKI                    **PATIENT ID:**  RAM41303
**D.O.B:** ████████████                              **REFERRING PHYSICIAN:** HARONIAN EDWIN  DR.
**STUDY DATE:** Feb 15, 2019                         **APPROVED BY:** DR AMJAD SAFVI
**REPORT DATE:** Feb 21, 2019 16:57                  **APPROVAL DATE:**  Feb 21, 2019 16:57

---

## PROFESSIONAL INTERPRETATION REPORT

Technique: Multiplanar, multisequence MRI of the lumbar spine without contrast was performed in neutral position.

Comparison: None.

Clinical History: None provided.

Surgical History: None.

Findings:
 Post- surgical changes: None.
 Distal cord and conus medullaris: Spinal cord and conus medullaris are unremarkable.
 Cauda equina and intrathecal contents: Cauda equina appears normal. Intrathecal contents are unremarkable.
 Spinal Canal: Spinal canal is unremarkable.
 Anatomy: Unremarkable.
 Alignment: Normal vertebral alignment is seen. No listhesis is identified.
 Curvature: Lumbar lordosis is maintained.
 Osteophytes: Anterior osteophytes at T12 down through L5.
 Modic changes: None.
 Schmorls node: None.
 Fracture/deformity: Vertebral bodies are maintained.
 Bone marrow: No abnormal marrow signal is identified.
 Discs: Mild disc desiccation at L2-L3 down through L5-S1. Associated loss of disc height is seen at L5-S1.
 Findings:
  T12- L1: There is no significant disc herniation or neural foraminal narrowing visualized. Central

COLLIER APL 0172

**LIB000499**



3760 Santa Rosalia Dr
Los Angeles, CA 90008
TEL:(888) 814-0206
FAX:(888) 814-0207

# Final Report
# MRI OF LUMBAR SPINE

**PROFESSIONAL INTERPRETATION BY:** MARS HEALTHCARE, INC.
**TECHNICAL SERVICES PROVIDED BY:** SOCAL IMAGING

**PATIENT NAME:**  COLLIER VICKI                      **PATIENT ID:** RAM41303
**D.O.B:** ▮▮▮▮▮▮▮▮                                    **REFERRING PHYSICIAN:** HARONIAN EDWIN  DR.
**STUDY DATE:** Feb 15, 2019                          **APPROVED BY:** DR AMJAD SAFVI
**REPORT DATE:** Feb 21, 2019 16:57                   **APPROVAL DATE:** Feb 21, 2019 16:57

---

canal is unremarkable. Nerve roots are normal.

L1- L2: There is no significant disc herniation or neural foraminal narrowing visualized. Central canal is unremarkable. No sign of lateral recess stenosis. Nerve roots are normal.

L2- L3: There is no significant disc herniation or neural foraminal narrowing visualized. Central canal is unremarkable. No sign of lateral recess stenosis. Nerve roots are normal.

L3- L4: There is no significant disc herniation or neural foraminal narrowing visualized. The spinal canal is patent. No significant neural foraminal narrowing. Exiting nerve roots are normal. Left lateral annular fissure is identified.

L4- L5: There is no significant disc herniation or neural foraminal narrowing visualized. The spinal canal is patent. No significant neural foraminal narrowing. Exiting nerve roots are normal. Left lateral annular fissure is identified.

L5- S1: A mild disc bulge is identified. Disc material abuts the thecal sac. The spinal canal is patent. No significant neural foraminal narrowing. Exiting nerve roots are normal. Central posterior annular fissure is identified. Disc deformity measures 2.6 mm.

Impression:
1. Anterior osteophytes at T12 down through L5.
2. Mild disc desiccation at L2-L3 down through L5-S1. Associated loss of disc height is seen at L5-S1.
3. There is no significant disc herniation or neural foraminal narrowing visualized. The spinal canal is patent. No significant neural foraminal narrowing. Exiting nerve roots are normal. Left lateral annular fissure is identified.
4. There is no significant disc herniation or neural foraminal narrowing visualized. The spinal canal is patent. No significant neural foraminal narrowing. Exiting nerve roots are normal. Left lateral annular fissure is identified.
5. A mild disc bulge is identified. Disc material abuts the thecal sac. The spinal canal is patent. No significant neural foraminal narrowing. Exiting nerve roots are normal. Central posterior annular fissure is identified. Disc deformity measures 2.6 mm.

COLLIER APL 0173

LIB000500



**3760 Santa Rosalia Dr
Los Angeles, CA 90008**
TEL:(888) 814-0206
FAX:(888) 814-0207

# Final Report
# MRI OF LUMBAR SPINE

**PROFESSIONAL INTERPRETATION BY:** MARS HEALTHCARE, INC.
**TECHNICAL SERVICES PROVIDED BY:** SOCAL IMAGING

| | |
|---|---|
| **PATIENT NAME:** COLLIER VICKI | **PATIENT ID:** RAM41303 |
| **D.O.B:** ███████ | **REFERRING PHYSICIAN:** HARONIAN EDWIN DR. |
| **STUDY DATE:** Feb 15, 2019 | **APPROVED BY:** DR AMJAD SAFVI |
| **REPORT DATE:** Feb 21, 2019 16:57 | **APPROVAL DATE:** Feb 21, 2019 16:57 |

**Thank you for referring this patient.**
**Approved and electronically signed by me on the approved date below.**

*Amjad Safi MD*

DR AMJAD SAFVI
Feb 21, 2019 16:57



COLLIER APL 0174

LIB000501

**KAISER PERMANENTE**   PANORAMA CITY HOSPITALCollier, Vicki D
L                       MRN: 000010372397, DOB: ▉▉▉▉, Sex: F
13652 CANTARA STREET    Encounter date: 10/5/2016
PANORAMA CITY CA 91402-
5423

**Order Providers**

| Authorizing | Encounter | Billing |
|---|---|---|
| Shah, Dilipkumar Hargovands (M.D.) | Shah, Dilipkumar Hargovands (M.D.) | Shah, Dilipkumar Hargovands (M.D.) |

**Order Information**

| Date | Department | Ordering/Authorizing |
|---|---|---|
| 10/5/2016 | PHYSICAL MEDICINE | Shah, Dilipkumar Hargovands (M.D.), M.D. |

**Associated Diagnoses**
  CERVICAL RADICULOPATHY

**Result Information**

Status: Final result (Collected:    Provider Status: Reviewed
10/10/2016 11:10)

**10/10/2016  4:05 PM - Interface, Scal. Radiology**

Narrative & Impression

MRI OF THE CERVICAL SPINE

This study was performed on a  Phillips Magnetic Resonance Imaging
system with field strength of 1.5  Tesla

Technique:  1. Sagittal T1-weighted  sequence
     2. Sagittal T2-weighted sequence
     3. Transaxial  gradient echo sequence
     4. Transaxial T2-weighted sequence

Clinical History:

Neck pain radiating to right  upper extremity, rule out cervical disk
disease.

Findings:

There is straightening of normal lordotic curvature, usually
secondary to muscular spasm. There are no fractures, subluxations or
destructive changes.  Bone marrow within visualized bony structures
demonstrates relatively normal signal intensities.

There are no abnormalities at cervicocranial junction.  Cervical cord
does not show any focal enlargements or focal areas of  abnormal
signal intensity.

C2-C3: There is no indication of  posterior disk protrusion. There is
no evidence of central or foraminal  stenosis.

C3-C4: There is a 1mm broad-based posterior disk  bulge indenting the

Kaiser Permanente                                                    Page 1

COLLIER APL 0175

LIB000502

**KAISER PERMANENTE**    PANORAMA CITY HOSPITAL Collier, Vicki D
L                                    MRN: 000010372397, DOB: ▮▮▮▮, Sex: F
13652 CANTARA STREET    Encounter date: 10/5/2016
PANORAMA CITY CA 91402-
5423

**10/10/2016  4:05 PM - Interface, Scal_Radiology (continued)**

anterior aspect of the thecal sac. There is no  evidence of central
or foraminal stenosis.

C4-C5: There is a  2mm central posterior disk protrusion causing
pressure over the  anterior aspect of the thecal sac. There is no
evidence of central or  foraminal stenosis.

C5-C6: There is a 2mm broad-based  posterior disk/endplate osteophyte
complex causing pressure over the  anterior aspect of the thecal sac.
Neural foramina appear to be  normal.

C6-C7: There is a 2mm broad-based posterior disk  protrusion causing
pressure over the anterior aspect of the thecal sac.  There is mild
narrowing of the left neural foramen and moderately  significant
narrowing of the right neural  foramen.

Continued


Collier, Vicki
MRI  Cervical spine
October 8, 2016
Page 2 of  2



Conclusion:

1.   There is straightening of  normal lordotic curvature, usually
secondary to muscular spasm.
2.    There is a 1mm broad-based posterior disk bulge at C3-C4 level
indenting the anterior aspect of the thecal sac.
3.   There is a 2mm  central posterior disk protrusion at C4-C5 level
causing pressure over  the anterior aspect of the thecal sac.
4.   There is a 2mm  broad-based posterior disk/endplate osteophyte
complex at C5-C6 level  causing pressure over the anterior aspect of
the thecal sac.
5.    There is a 2mm broad-based posterior disk protrusion at C6-C7
level  causing pressure over the anterior aspect of the thecal sac.
There is  mild narrowing of the left neural foramen and moderately
significant  narrowing of the right neural foramen.

Kaiser Permanente                                                      Page 2

LIB000503

**KAISER PERMANENTE**    PANORAMA CITY HOSPITAL Collier, Vicki D
L                                      MRN: 000010372397, DOB: ▓▓▓▓, Sex: F
13652 CANTARA STREET    Encounter date: 10/5/2016
PANORAMA CITY CA 91402-
5423

---

**10/10/2016  4:05 PM - Interface, Scal_Radiology (continued)**

Thank you for  referring this  patient.

_____

Dictated by  Saeed Yadegar, M.D.
Diplomate, American Board of  Radiology
Electronically signed on 10/09/2016
Final  Report
SY:rc  DD:  10/09/2016  DT:  10/09/2016
MAX MRI  818-382-2220

This report electronically signed by Contract PAN  Provider on
10/10/2016 3:59 PM

**Lab and Collection**

MRI CERVICAL SPINE NO CONTRAST on 10/5/2016

**Transcription**

| Type | ID | Date and Time | Dictating Provider |
|---|---|---|---|
| Diagnostic imaging | 71067925 | 10/10/2016  4:05 PM | AFFILIATE CONTRACT PROV PAN |

Signed by AFFILIATE CONTRACT PROV PAN on 10/10/16 at 1605

MRI OF THE CERVICAL SPINE

This study was performed on a  Phillips Magnetic Resonance Imaging
system with field strength of 1.5  Tesla

Technique:  1. Sagittal T1-weighted  sequence
     2. Sagittal T2-weighted sequence
     3. Transaxial  gradient echo sequence
     4. Transaxial T2-weighted sequence

Clinical History:

Neck pain radiating to right  upper extremity, rule out cervical disk
disease.

Findings:

There is straightening of normal lordotic curvature, usually
secondary to muscular spasm. There are no fractures, subluxations or
destructive changes.  Bone marrow within visualized bony structures
demonstrates relatively normal signal intensities.

Kaiser Permanente                                                                Page 3

COLLIER APL 0177

**KAISER PERMANENTE**    PANORAMA CITY HOSPITAL Collier, Vicki D
L                             MRN: 000010372397, DOB: ███ , Sex: F
13652 CANTARA STREET    Encounter date: 10/5/2016
PANORAMA CITY CA 91402-
5423

There are no abnormalities at cervicocranial junction. Cervical cord does not show any focal enlargements or focal areas of abnormal signal intensity.

C2-C3: There is no indication of posterior disk protrusion. There is no evidence of central or foraminal stenosis.

C3-C4: There is a 1mm broad-based posterior disk bulge indenting the anterior aspect of the thecal sac. There is no evidence of central or foraminal stenosis.

C4-C5: There is a 2mm central posterior disk protrusion causing pressure over the anterior aspect of the thecal sac. There is no evidence of central or foraminal stenosis.

C5-C6: There is a 2mm broad-based posterior disk/endplate osteophyte complex causing pressure over the anterior aspect of the thecal sac. Neural foramina appear to be normal.

C6-C7: There is a 2mm broad-based posterior disk protrusion causing pressure over the anterior aspect of the thecal sac. There is mild narrowing of the left neural foramen and moderately significant narrowing of the right neural foramen.

Continued


Collier, Vicki
MRI Cervical spine
October 8, 2016
Page 2 of 2


Conclusion:

1. There is straightening of normal lordotic curvature, usually secondary to muscular spasm.
2. There is a 1mm broad-based posterior disk bulge at C3-C4 level indenting the anterior aspect of the thecal sac.
3. There is a 2mm central posterior disk protrusion at C4-C5 level causing pressure over the anterior aspect of the thecal sac.
4. There is a 2mm broad-based posterior disk/endplate osteophyte

Kaiser Permanente                                              Page 4

COLLIER APL 0178

LIB000505

**KAISER PERMANENTE** PANORAMA CITY HOSPITAL Collier, Vicki D
L                                    MRN: 000010372397, DOB:  Sex: F
13652 CANTARA STREET    Encounter date: 10/5/2016
PANORAMA CITY CA 91402-
5423

complex at C5-C6 level  causing pressure over the anterior aspect of
the thecal sac.
5.    There is a 2mm broad-based posterior disk protrusion at C6-C7
level  causing pressure over the anterior aspect of the thecal sac.
There is  mild narrowing of the left neural foramen and moderately
significant  narrowing of the right neural foramen.


Thank you for  referring this  patient.


Dictated by  Saeed Yadegar, M.D.
Diplomate, American Board of  Radiology
Electronically signed on 10/09/2016
Final  Report
SY:rc  DD:  10/09/2016  DT:  10/09/2016
MAX MRI  818-382-2220


This report electronically signed by Contract PAN  Provider on
10/10/2016 3:59 PM

Display only: Transcription (71067925) on 10/10/2016  4:05 PM by AFFILIATE CONTRACT PROV PAN


**Order Providers**

| Authorizing | Encounter | Billing |
|---|---|---|
| Tun, Sovanrith (M.D.) | Tun, Sovanrith (M.D.) | Tun, Sovanrith (M.D.) |

**Order Information**

| Date | Department | Ordering/Authorizing |
|---|---|---|
| 6/12/2017 | OPHTHALMOLOGY | Tun, Sovanrith (M.D.), M.D. |

**Associated Diagnoses**
RIGHT ROTATOR CUFF SYNDROME

**Result Information**
Status: Final result (Collected:    Provider Status: Reviewed
6/30/2017 17:45)

**7/5/2017 11:58 AM - Interface, Scal_Radiology**

Narrative & Impression

CLINICAL HISTORY: Reason:  Right shoulder pain Rule out rotator cuff
tear.

COMPARISON:  Right shoulder radiographs  2/8/2016

TECHNIQUE:  Magnetic resonance imaging of the  shoulder was performed
utilizing fast spin echo techniques in the  axial, oblique sagittal,

Kaiser Permanente                                                      Page 5

LIB000506

**KAISER PERMANENTE**    PANORAMA CITY HOSPITAL Collier, Vicki D
L                        MRN: 000010372397, DOB: ███    Sex: F
13652 CANTARA STREET     Encounter date: 6/9/2017
PANORAMA CITY CA 91402-
5423

---

### 7/5/2017 11:58 AM - Interface, Scal_Radiology (continued)

and oblique coronal planes with and without  fat suppression.

FINDINGS:
There is intermediate signal  and moderate thickening of the
supraspinatus tendon with a 5 mm ML by 9  mm AP approximately 50%
partial-thickness articular surface tear. The  infraspinatus tendon
demonstrates intermediate signal and mild  thickening as do the
superior fibers of the subscapularis tendon. The  teres minor tendon
demonstrates normal signal. There is no rotator cuff  muscle edema or
atrophy.

The glenoid labrum demonstrates no  evidence for a tear in the
absence of intra-articular gadolinium  contrast. The long head of
biceps tendon demonstrates intermediate  signal and mild thickening
along its proximal segment. There is no  significant chondrosis along
the glenohumeral articulation. No  significant fluid is seen within
the glenohumeral joint.

The  acromioclavicular joint demonstrates mild capsular hypertrophy
with  associated subcortical cystic change and mild marrow edema.
Marrow  signal otherwise is within normal limits. There is small
volume fluid  within the subacromial subdeltoid bursa. There is no
muscle edema or  atrophy. No abnormal appearing lymph nodes are seen.
There is no  significant subcutaneous edema.

IMPRESSION:
1.  9 mm AP  approximately 50% partial-thickness articular surface
supraspinatus  tendon tear on a background of moderate tendinosis.
2.  Infraspinatus and superior fiber subscapularis mild tendinosis.
3.  Proximal long head of biceps mild tendinosis.
4.  Minimal  subacromial subdeltoid bursitis.
5.  Acromioclavicular joint  osteoarthrosis.

This report electronically signed by Paymann  Moin, MD on 7/5/2017
11:52 AM

**Lab and Collection**
MRI RIGHT SHOULDER NO CONTRAST on 6/12/2017

**Transcription**

| Type | ID | Date and Time | Dictating Provider |
|---|---|---|---|
| Diagnostic imaging | 75193155 | 7/5/2017 11:57 AM | Moin, Paymann (M.D.), M.D. |

Kaiser Permanente                                                        Page 6

LIB000507

**KAISER PERMANENTE**  PANORAMA CITY HOSPITALCollier, Vicki D
L                      MRN: 000010372397, DOB:          Sex: F
13652 CANTARA STREET   Encounter date: 6/9/2017
PANORAMA CITY CA 91402-
5423

---

Transcription (continued)

Signed by Moin, Paymann (M.D.), MEDICAL DOCTOR on 07/05/17 at 1158

CLINICAL HISTORY: Reason:  Right shoulder pain Rule out rotator cuff
tear.

COMPARISON:  Right shoulder radiographs  2/8/2016

TECHNIQUE:  Magnetic resonance imaging of the  shoulder was performed
utilizing fast spin echo techniques in the  axial, oblique sagittal,
and oblique coronal planes with and without  fat suppression.

FINDINGS:
There is intermediate signal  and moderate thickening of the
supraspinatus tendon with a 5 mm ML by 9  mm AP approximately 50%
partial-thickness articular surface tear. The  infraspinatus tendon
demonstrates intermediate signal and mild  thickening as do the
superior fibers of the subscapularis tendon. The  teres minor tendon
demonstrates normal signal. There is no rotator cuff  muscle edema or
atrophy.

The glenoid labrum demonstrates no  evidence for a tear in the
absence of intra-articular gadolinium  contrast. The long head of
biceps tendon demonstrates intermediate  signal and mild thickening
along its proximal segment. There is no  significant chondrosis along
the glenohumeral articulation. No  significant fluid is seen within
the glenohumeral joint.

The  acromioclavicular joint demonstrates mild capsular hypertrophy
with  associated subcortical cystic change and mild marrow edema.
Marrow  signal otherwise is within normal limits. There is small
volume fluid  within the subacromial subdeltoid bursa. There is no
muscle edema or  atrophy. No abnormal appearing lymph nodes are seen.
There is no  significant subcutaneous edema.

IMPRESSION:
1.  9 mm AP  approximately 50% partial-thickness articular surface
supraspinatus  tendon tear on a background of moderate tendinosis.
2.   Infraspinatus and superior fiber subscapularis mild tendinosis.
3.   Proximal long head of biceps mild tendinosis.
4.  Minimal  subacromial subdeltoid bursitis.
5.  Acromioclavicular joint  osteoarthrosis.

This report electronically signed by Paymann  Moin, MD on 7/5/2017
11:52 AM

Kaiser Permanente                                                    Page 7

LIB000508

**KAISER PERMANENTE**    PANORAMA CITY HOSPITALCollier, Vicki D
L                        MRN: 000010372397, DOB: ███    Sex: F
13652 CANTARA STREET     Encounter date: 6/9/2017
PANORAMA CITY CA 91402-
5423

Display only: Transcription (75193155) on 7/5/2017 11:57 AM by Moin, Paymann (M.D.), M.D.

## Order Providers

| Authorizing | Encounter | Billing |
|---|---|---|
| Lin, Gina (M.D.) | Lin, Gina (M.D.) | Lin, Gina (M.D.) |

## Supervising

| Provider | Type |
|---|---|
| Lin, Gina (M.D.) | LICENSED VOCATIONAL NURSE |

## Order Information

| Date | Department | Ordering/Authorizing |
|---|---|---|
| 1/18/2018 | GASTROENTEROLOGY | Lin, Gina (M.D.), M.D. |

## Associated Diagnoses

**LLQ ABDOMINAL PAIN**

## Result Information

Status: Final result (Collected:    Provider Status: Reviewed
1/22/2018 15:00)

### 1/31/2018 1:36 PM - Interface, Scal_Radiology

Narrative

[faxed 1/19/18 darroyo] Tower Imaging Valencia 23929 McBean Pwy Bldg F Ste 109
Valencia, CA 91355 Ph: 661-753-5400 Fax: 661-753-5401 Imported on 1/30/18 DOES PT
HAVE?->NONE

Lab and Collection

CT ABD AND PELVIS W CONTRAST on 1/18/2018

## Transcription

| Type | ID | Date and Time | Dictating Provider |
|---|---|---|---|
| Diagnostic imaging | 78878005 | 1/31/2018 1:32 PM | AFFILIATE CONTRACT PROV PAN |

Signed by AFFILIATE CONTRACT PROV PAN on 01/31/18 at 1336

The images and results for this exam were imported from a Non-Kaiser
facility. The images and results of this exam can be viewed in the
Philips iSite application. The results are either at the beginning
or at the end of the series of images.
You can log into the Philips iSite application or access the
application via the HealthConnect patient's chart, under the Imaging
Tab, using the Pacs Images link-which takes you directly into the
Philips iSite application.

Display only: Transcription (78878005) on 1/31/2018 1:32 PM by AFFILIATE CONTRACT PROV PAN

COLLIER APL 0182

LIB000509

**KAISER PERMANENTE**  PANORAMA CITY HOSPITALCollier, Vicki D
L                              MRN: 000010372397, DOB: ███  Sex: F
13652 CANTARA STREET    Encounter date: 1/18/2018
PANORAMA CITY CA 91402-
5423

## Order Providers

| Authorizing | Encounter | Billing |
|---|---|---|
| Brara, Sonu Malik (M.D.) | Brara, Sonu Malik (M.D.) | Brara, Sonu Malik (M.D.) |

## Order Information

| Date | Department | Ordering/Authorizing |
|---|---|---|
| 3/23/2018 | NEUROLOGY | Brara, Sonu Malik (M.D.), M.D. |

## Associated Diagnoses

**HEADACHE** - Primary

## Result Information

Status:  Final result (Collected:       Provider Status:  Reviewed
3/29/2018 15:00)

### 4/9/2018  9:49 AM - Interface, Scal  Radiology

#### Narrative

DOES PT HAVE?->METAL IMPLANTS (*** pt has right shoulder and has a titaninum screw)
Tower Imaging Valencia 23929 McBean Pwy Bldg F Ste 109 Valencia, CA 91355 Ph: 661-
753-5400 Fax: 661-753-5401 Imported on 4/6/18

#### Lab and Collection

MRI BRAIN AND BRAIN STEM NO CONTRAST on 3/23/2018

#### Transcription

| Type | ID | Date and Time | Dictating Provider |
|---|---|---|---|
| Diagnostic imaging | 80065342 | 4/9/2018 9:32 AM | AFFILIATE CONTRACT PROV PAN |

Signed by AFFILIATE CONTRACT PROV PAN on 04/09/18 at 0949

The images and results for this exam were imported from a Non-Kaiser
facility.  The images and results of this exam can be viewed in the
Philips iSite application.  The results are either at the beginning
or at the end of the series of images.
You can log into the Philips iSite application or access the
application via the HealthConnect patient's chart, under the Imaging
Tab, using the Pacs Images link-which takes you directly into the
Philips iSite application.

Display only: Transcription (80065342) on 4/9/2018  9:32 AM by AFFILIATE CONTRACT PROV PAN

### END OF REPORT

COLLIER APL 0183

**LIB000510**



COLLIER APL 0184

# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

- Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery


- Fellow, American Academy of Orthopedic Surgeons


- Member, North American Spine Society

- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH: (818)788-2400
FAX: (818) 788-2453

·

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

Patient Name      :      Vicki Collier
Date of Service   :      January 3, 2019
Claim #           :      17G44F696159
Employer          :      Automobile Club
Date of Birth     :      ███████████
Date of Injury    :      CT:7/13/2013-7/24/2017
File #            :      20050164

## FOLLOW-UP REPORT AND REQUEST FOR AUTHORIZATION OF A PRIMARY TREATING PHYSICIAN

Ms. Vicki is a very pleasant 55-year-old female who presents with complaint of a chronic pain in her upper and lower back with radiation of pain to upper and lower extremities more so on the left lower and postoperative pain in the right shoulder. She is under the care of pain management physician receiving Norco. Taking gabapentin 600 mg at bedtime, she does not have a great deal of improvement with control of neuropathic pain. We did discuss non-MPN letter.

On physical examination, she is alert and oriented x3, there are no signs of sedation. Spasm and tenderness is noted in the paravertebral muscles of the cervical and lumbar spines with decreased range of motion on flexion and extension.

We are deferring all the medications to Dr. Kohan. She does not refill of ibuprofen cream, NSAIDs, and PPI. We asked her to bring the gabapentin she was taking before. It is conceivable that we will increase it accordingly. She needs further diagnostic studies and we would like to refer to Labor Code Section 4616.2 in regard to non-MPN letter. We are requesting the MRI of the low back. We also request authorization for the Neurontin 600 mg 30 tabs and 300 mg 60 tab. to

COLLIER APL 0185

LIB000512

**Collier, Vicki**
**January 3, 2019**
**Page 2 of 3**

prevent delays in getting the medications.

We will see her in four weeks for further updates. Work status remains to be modified work duties. If modified work duties are not available, the patient is on TTD.

_I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles._

_To complete this examination I have been assisted, as needed, for taking histories, taking x-rays, assisting with the patient, transcription of reports by some or all of the following personnel Alma Azucar, Natasha Yokum, Carmen Garcia and Emily Shemwell. Sherry Leoni, DC, Randy Cockrell, DC, and Timothy Markle, DC, may also have assisted in compiling and editing of this report. If required an interpreter was provided. All of the above individuals are qualified to perform the described activities by reason of individual training or under my direct supervision._

_Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics._

January 7, 2019
Date

Michael Nadzhafov, P.A.C, M.P.H.

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385
MN

  *Robert L. Palty Esq.
  6345 Balboa Blvd, Ste 211
  Ste 211
  Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

COLLIER APL 0186

**LIB000513**

**Collier, Vicki**
**January 3, 2019**
**Page 3 of 3**

On 1/8/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 1/3/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Miguel Mendoza                          Robert L. Palty Esq.
CCMSI Irvine                            6345 Balboa Blvd, Ste 211
P.O. Box 53550                          Ste 211
Irvine, CA  92619                       Encino, CA  91316

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 1/8/2019 at

_____
Emily Shemwell

COLLIER APL 0187

LIB000514



# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

  - Comprehensive Spine Care



  - Certified, American Board of Orthopedic Surgery


- Fellow, American Academy of Orthopedic Surgeons


  - Member, North American Spine Society

- American College of Spine Surgery

  - Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

·

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | January 20, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ▇▇▇▇▇▇▇ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## SUPPLEMENTAL MEDICAL-LEGAL REPORT AND REVIEW OF MEDICAL RECORDS OF A PRIMARY TREATING PHYSICIAN - ML-106

**One hour was spent to review the medical records along with dictation, editing and preparation of this report.**

As you recall, the patient was seen in my office previously.  The patient was also seen at Kaiser.  MRI studies of the cervical spine were reviewed.  The MRI's did reveal 2 mm disc protrusions in multiple levels.  Osteophyte complex was seen at the C5-C6 level placing pressure over the anterior aspect of the thecal sac.  Mild left-sided foraminal stenosis was noted.

We also noted the patient was complaining of pain in multiple other body parts including the shoulders, elbows and the wrists.

The patient was employed by the automobile club and noted pain in multiple body parts sometime in 2016.  She was working in the same capacity in 2013 as an insurance agent.  She was performing similar type of work for many years and she noted that her pain was worsening.  I was provided with the QME report of Dr. Arora.  A supplemental report from

COLLIER APL 0188

LIB000515

**Collier, Vicki**
**January 20, 2019**
**Page 2 of 4**

October 24, 2018, was reviewed. Within the report, he reviewed the medical records and indicated that the patient's lower back pain as well as neck pain along with hemorrhoids are related to issues prior to her work at the automobile club. There is indication that the patient began having symptoms from 2005 to 2009 and the QME indicated that due to the fact that the patient has had preexisting symptoms, her complaints today would not be related to her work-related activities. He indicated the patient however should be placed in DRE Category II and based on his discussion, the neck and the lower back issues are nonindustrial.

However, he also used the range of motion for the left shoulder and no impairment was provided for the left shoulder. For the right shoulder, he reviewed his loss of range of motion measurements and provided the patient with 4% impairment of the whole person. He did provide the patient with future medical care however.

His initial report from October 11, 2018, was also reviewed. Within his report, he reviewed the patient's history. He reviewed her complains as well. However, he did not mention the issues to the wrist and elbows that the patient mentioned previously. He performed an examination, however, there is no indication that the examination was performed in accordance with the recommendations of the AMA Guides Fifth Edition. There is clear indication for the necessity to use double inclinometers which most likely was not performed by the QME. Furthermore, the numbers are rounded off. If in fact appropriate measurements were performed, more accurate assessment of the range of motion would have been performed.

Considering the fact that the patient did have pain, it is based on reasonable medical probability that her work-related activities have aggravated or at least worsened her preexisting condition.

However, due to the deferring opinions in regards to this case, most likely no further authorization would be provided and without any further treatment the patient's condition is likely not going to improve. As such, due to the constrains of the workers compensation system, the patient would be declared permanent and stationary as we will not be able to provide the patient with any further treatment.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). In order to prepare this report and complete the evaluation, time was spent without face to face with the patient. The billings reflect such time spent by the physician with the code 99358. The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Furthermore, all the information contained in this report and its attachment, if any, is true and correct to the best of my knowledge and belief, except as to information I have indicated I have received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.*

*Per labor code 139.3: If I have referred this patient for clinical laboratory, diagnostic nuclear*

COLLIER APL 0189

**LIB000516**

**Collier, Vicki**
**January 20, 2019**
**Page 3 of 4**

*medicine, radiation oncology, physical therapy, physical rehabilitation, psychometric testing, home infusion therapy or diagnostic imaging goods or services whether for treatment or medical-legal purposes, it should be noted that I do not have a financial interest nor does my immediate family have a financial interest with the person or in the entity that receives the referral.*

*This report is for medical/legal assessment of the injury noted and is not to be construed as a complete physical examination for general health purposes. Only those symptoms which are believed to have been involved in the injury or that might be related to the injury have been assessed by this examiner. Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

January 25, 2019
_____
Date

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385

EH

*Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 1/28/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name:** **Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 1/20/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

COLLIER APL 0190

**LIB000517**

**Collier, Vicki**
**January 20, 2019**
**Page 4 of 4**

Miguel Mendoza
CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619

Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Encino, CA  91316

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 1/28/2019 at

_____

Emily Shemwell

COLLIER APL 0191

**LIB000518**



**Jonathan F. Kohan, M.D.**
SPECIALIZING IN PAIN DISORDERS

MULTI-DISCIPLINARY
TREATMENT OF
CRPS (RSD)
CHRONIC PAIN SYNDROMES
CANCER PAIN
FIBROMYALGIA
NEURALGIAS
HEADACHE


SPINAL CORD STIMULATION
INTRATHECAL PUMP
PLACEMENT
DISCOGRAPHY
RADIOFREQUENCY ABLATION
SPINAL INJECTIONS

Edwin Haronian, M.D.
5651 Sepulveda Bvld #201
Sherman Oaks, CA 91411


| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | January 28, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | █████████ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

### SECONDARY TREATING PHYSICIAN PAIN MANAGEMENT FOLLOW-UP REPORT

*This special narrative report is reimbursable (1994) Official Medical Fee Schedule because one of the following: There was an unexpected or significant change in the patient's condition or the treatment plan; there is a change in patient care or status; submitted records were reviewed or specific questions were answered.*

DIPLOMATE, AMERICAN BOARD
OF ANESTHESIOLOGY
FELLOWSHIP TRAINED IN PAIN
MEDICINE

### REVIEW OF RECORDS:

I am provided with the QME evaluation report of Dr. Ripu Arora, who specializes in Anesthesiology and pain management. He goes over the records. This is a supplemental report from Dr. Arora. After reviewing records in his discussion he reports that he had his initial report on October 11, 2018, but at that point he had no records. He reports that the patient claims pain in the neck, shoulders, elbows, low back, associated with headaches. He then goes over the patient's injury. He states that there is a lot of differences between the patient's history and medical records. Then, he goes through the patient's injuries in more detail. In regard to causation, he states that the patient has had medical records from 2002 when she started complaining of the symptoms of low back pain, neck pain, and hemorrhoids. It is his medical opinion that the back pain and the neck pain as well as the hemorrhoids are not due to employment. In regard to the right shoulder, she started complaining of pain in March 2015 when she was treated

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH. (818) 788-2400

COLLIER APL 0192

**LIB000519**

**Collier, Vicki**
**January 28, 2019**
**Page 2 of 4**

conservatively after that. Then, on June 9, 2017, she was having pain in the right shoulder with torn rotator cuff in addition to cervical radiculopathy for which she was seen by pain management and was treated with cervical epidural injection in July 2017. He believes that the right shoulder injury is related to her employment as a continuous trauma from March 2015 through July 2017. He reports that the patient is permanent and stationary now since October 31, 2017. Apportionment is 100% for the right shoulder but it is 100% for the neck and low back. With respect to the AMA guidelines, there is 9% whole person impairment. Future care includes shoulder surgery and then he discusses restrictions.

## HISTORY OF PRESENT COMPLAINTS:
Ms. Collier is a 55-year-old female whose was last seen on an initial basis on December 13, 2018. At this point, she is not undergoing any therapy or other modes of treatment, but continues to have difficulty controlling her pain in the neck, right shoulder, and low back. She has difficulty with any lifting, pushing, pulling, bending, twisting, and over-the-shoulder activity. She reports that she ran out of her Norco 5 mg that was prescribed last time but Naprosyn and over-the-counter medication has not been of much benefit. At one point, she was taking gabapentin 100 mg at Kaiser which has not been helping her.

## PHYSICAL EXAMINATION:
No sign of sedation. She is alert and oriented. Tenderness and moderate spasm is noted over the cervical spine area that extends to trapezius and deltoid on the right side with weakness in flexion and extension of the right shoulder. Over the lumbar spine area, tenderness is over the SI joints mainly bilaterally.

## IMPRESSION:
History of right shoulder arthroscopic surgery with residual pain.
Cervical disc protrusions with component of radiculopathy.
Exacerbated lumbar pain with component of sacroiliitis.

## RECOMMENDATION:
Dr. Arora's recommendations are noted, but this patient's history given to me last time has been consistent with what I review in the records. Considering her work duties at AAA with her capacity, complaints of neck, low back, and shoulder pain seemed reasonable and work-related.

At this point, the patient's options have been limited because she has had not much of improvement with course of therapy and epidural injection which apparently she underwent over the lumbar and cervical spine. With respect to the lumbar spine area, MRI is not done but she does have component of sacroiliitis based on my examination, which again could arise during the course of employment that requires prolonged hours of sitting.

COLLIER APL 0193

**LIB000520**

**Collier, Vicki**
**January 28, 2019**
**Page 3 of 4**

In regard to her medication, Norco 5 mg will be refilled, but I will not recommend if she is taking it more than one per day. I will increase her gabapentin 300 mg to see if it would help her with her upper and lower extremity symptoms and until I see her back again in one month.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Please be advised that Dr. Kohan has a financial interest in the Pacific Anesthesia Group.*

February 16, 2019
_____
Date

Jonathan F. Kohan, M.D.
Diplomate American Board of
Anesthesiology
Fellowship-Trained in Pain
Medicine

JFK/ks/

  *Robert L. Palty Esq.
  6345 Balboa Blvd, Ste 211
  Ste 211
  Encino, CA  91316

  *CCMSI Irvine
  P.O. Box 53550
  Irvine, CA  92619
  Attn: Miguel Mendoza

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 2/18/2019 served the foregoing document described as:

JONATHAN F. KOHAN, M.D.
EVALUATION REPORT

COLLIER APL 0194

LIB000521

**Collier, Vicki**
**January 28, 2019**
**Page 4 of 4**

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 1/28/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Edwin Haronian, M.D.
5651 Sepulveda Bvld #201
Sherman Oaks, CA  91411

Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211
Encino, CA  91316

Miguel Mendoza
CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 2/18/2019 at

_____
Emily Shemwell

LIB000522



# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

  - Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery



- Fellow, American Academy of Orthopedic Surgeons



  - Member, North American Spine Society

- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

·

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | January 31, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ██████████ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## PERMANENT AND STATIONARY REPORT OF A PRIMARY TREATING PHYSICIAN

### HISTORY OF INJURY:

Ms. Collier stated that she sustained cumulative trauma injuries to her neck, shoulders, bilateral upper extremities, forearms, elbows, hands, wrists, back, head, lower extremities and internal (hemorrhoids) during the course of her employment as an insurance agent for The Auto Club.

She stated that since late in 2016 she developed the gradual onset of pain in her neck, shoulders, bilateral upper extremities, forearms, elbows, hands, wrists, back, head and lower extremities which she attributed to performing her job duties which for the most part entailed working at an ergonomically incorrect work station. She stated that she also developed hemorrhoids due to prolonged sitting at work on a chair that did not have padding.

She indicated that she initially went to Dr. Tun at Kaiser Permanente who administered cortisone injections to her shoulders. She underwent x-rays and MRI studies of her right shoulder. On July 25, 2017 Dr. Tun performed

COLLIER APL 0196

**LIB000523**

**Collier, Vicki**
**January 31, 2019**
**Page 2 of 12**

right shoulder surgery after which she received a course of physical therapy. She remained on temporary total disability through November 21, 2017 at without restrictions. Through Kaiser she also received an epidural injection to her back and Botox injections to her shoulders and neck. She also received acupuncture treatment. She also underwent a CT scan of her neck and head and lower extremities. Dr. Tan placed her on temporary total disability since May 25, 2018. She stated that she has not received other treatment.

She presents to my office today for a comprehensive orthopedic evaluation.

**JOB DESCRIPTION:**
The patient began employment as an insurance agent for The Auto Club, since June of 2013.

She worked 50-60 hours per week. Her job duties at the time of injury included: selling auto, home and other vehicle insurance policies and AAA memberships, processing applications, operating a computer, typing, assisting customers, over-the-phone and face-to-face, filing, pulling files.

The precise activities required entailed prolonged standing and walking, as well as continuous fine maneuvering of her hands and fingers, and repetitive bending, stooping, squatting, twisting, turning, forceful pulling and pushing, forceful gripping and grasping, lifting and carrying 5 pounds, reaching to all levels..

**EMPLOYMENT HISTORY:**
The patient states that prior to working for the employer at the time of the injury, she was an independent contractor as an insurance agent for six years.

**CURRENT WORK STATUS:**
The patient is currently not working.

**PRESENT COMPLAINTS:**
The patient is complaining of neck and lower back pain along with pain in both shoulders, both elbows, and both wrist She describes radiating pain to the upper and lower extremities mainly on the right side with numbness, tingling, and weakness. She has difficulty with lifting, pushing, and pulling.

**MEDICAL HISTORY:**
The patient has no known history of heart disease, high blood pressure, kidney disease, diabetes, tuberculosis, cancer, ulcers, pneumonia, lung disease, eye problems, skin problems, asthma, hepatitis, liver disease, thyroid disease, gout, rheumatoid arthritis, Lupus, or arthritis.

**SURGERIES:**
The patient underwent an umbilical hernia repair and right shoulder scope.

**INJURIES:**
The patient denies any previous accidents or injuries.

COLLIER APL 0197

LIB000524

**Collier, Vicki**
**January 31, 2019**
**Page 3 of 12**

**MEDICATIONS:**
The patient is currently not taking any medications.

**ALLERGIES:**
The patient has no known allergies to any medications.

**SOCIAL HISTORY:**
The patient is single and has three children. She does not drink and does not smoke.

**FAMILY HISTORY:**
Noncontributory.

**HOBBIES:**
The patient does not have any hobbies at this time.

**ACTIVITIES OF DAILY LIVING:**
The patient states prior to the above noted injury she had no disabling conditions and could perform all activities of daily living without any difficulties.

The patient states since the injury noted above she has difficulty cooking, washing her hair, kneeling, doing strenuous house chores, vacuuming, mopping, lifting and carrying baskets of laundry as well as grocery bags, pushing a shopping carts and prolonged sitting.

**PHYSICAL EXAMINATION:**
**Cervical Spine Examination:**
On visual inspection, there is no erythema, edema, swelling or deformity about the cervical spine or upper back area. The patient's head is held in a normal position. No torticollis was noted.

**There is spasm and tenderness over the paravertebral musculature, upper trapezium, interscapular area,** but not over the cervical spinous processes, or occiput.

| Cervical Range of Motion | Patient ROM | Normal |
|---|---|---|
| Forward Flex | --- | 50° |
| Extension | --- | 60° |
| Lateral Flex (rt.) | --- | 45° |
| Lateral Flex (lt.) | --- | 45° |
| Rotation (rt.) | --- | 80° |
| Rotation (lt.) | --- | 80° |

**Electronic inclinometers were used for the formal ranges of motion studies. Please see attached which was used for this evaluation.**

**Range of motion was accomplished with discomfort and spasm.**

COLLIER APL 0198

LIB000525

**Collier, Vicki**
**January 31, 2019**
**Page 4 of 12**

Reflexes and special tests are as follows:

| Reflexes and test | Right | Left | Normal |
|---|---|---|---|
| Tricep reflex | 2+ | 2+ | 2+ |
| Biceps reflex | 2+ | 2+ | 2+ |
| Brachioradialis reflex | 2+ | 2+ | 2+ |
| Tinel Signs (wrists) | Negative | Negative | Negative |
| Tinel signs (elbow) | Negative | Negative | Negative |
| Adson Test | Negative | Negative | Negative |

Motor power testing for the cervical spine:

| Muscle Group | Right | Left | Normal |
|---|---|---|---|
| Deltoid (C5) | **4** | 5 | 5 |
| Biceps (C6) | 5 | 5 | 5 |
| Triceps (C7) | 5 | 5 | 5 |
| Wrists Extensors (C6) | 5 | 5 | 5 |
| Wrist Flexors (C7) | 5 | 5 | 5 |
| Finger Flexors (C8) | 5 | 5 | 5 |
| Finger Abduction (T1) | 5 | 5 | 5 |

Sensory Testing:

| Dermatome | Right | Left | Normal |
|---|---|---|---|
| C5 (Deltoid) | Intact | Intact | Intact |
| C6 (Lat Forearm, Thumb, Index) | Intact | Intact | Intact |
| C7 (Middle Finger) | Intact | Intact | Intact |
| C8 (Little finger, Med. Forearm) | Intact | Intact | Intact |
| T1 (Medial Arm) | Intact | Intact | Intact |
| T2 (Medial Arm) | Intact | Intact | Intact |

**JAMAR Grip Testing**    <u>Right</u>    <u>Left</u>
17/16/18    14/16/18

**Shoulder Examination:**

| Shoulder Range of Motion | Right | Left | Normal |
|---|---|---|---|
| Flexion | --- | --- | 180° |
| Abduction | --- | --- | 180° |
| Extension | --- | --- | 50° |
| Ext Rotation | --- | --- | 90° |
| Ext Internal Rotation | --- | --- | 90° |
| Adduction | --- | --- | 50° |

**Electronic inclinometers were used for the formal ranges of motion studies. Please see attached which was used for this evaluation.**

COLLIER APL 0199

LIB000526

**Collier, Vicki**
**January 31, 2019**
**Page 5 of 12**

No tenderness was noted at the anterior deltoid, supraspinatus insertion, biceps tendon, or the acromioclavicular joint.

**Impingement and Hawkins signs were positive on the right and left.** Jobe's sign was negative on the right and left.

Apprehension test and re-location test were negative. No sulcus was present. **Yergason test was positive bilaterally.** No deformity or incision was noted around the shoulder area. **An incision was noted over the right shoulder.**

**Elbow Examination:**

| Elbow Range of Motion | Right | Left | Normal |
|---|---|---|---|
| Flexion | --- | --- | 140° |
| Extension | --- | --- | 0° |
| Pronation | --- | --- | 80° |
| Supination | --- | --- | 80° |

**Electronic inclinometers were used for the formal ranges of motion studies. Please see attached which was used for this evaluation.**

**Tenderness was noted over the lateral (tennis) epicondyle bilaterally** not the medial (Golfers) epicondyles. **Resisted wrist extension did elicit tenderness over the lateral epicondyle bilaterally.** The lateral pivot shift test did not reproduce instability. No olecranon bursitis was noted.

**Wrist & Hands Examination:**

| Wrist Range of Motion | Right | Left | Normal |
|---|---|---|---|
| Flexion | --- | --- | 60° |
| Extension | --- | --- | 60° |
| Ulnar Deviation | --- | --- | 30° |
| Radial Deviation | --- | --- | 20° |

**Electronic inclinometers were used for the formal ranges of motion studies. Please see attached which was used for this evaluation.**

No mechanical block was noted to range of motion. **There was tenderness over the distal radius and the carpus bilaterally.** No tenderness was noted at the anatomic snuffbox or the TFCC. Finkelstein test was normal. Tinel testing was negative. **Phalen and reverse Phalen (praying position) testing were positive bilaterally. Two-point discrimination was 6 mm bilaterally.**

No atrophy or tenderness was noted in the thenar, hypothenar, and intrinsic hand musculatures. The radial pulses are present and equal bilaterally.

COLLIER APL 0200

LIB000527

**Collier, Vicki**
**January 31, 2019**
**Page 6 of 12**

No triggering was noted in any digit. Range of motion was painless without mechanical block. The thumbs bilaterally (adduction) reach the head of the 5th metacarpal. Thumb abduction is 90° bilaterally.

**Lumbar Examination:**
Patient has a normal gait and is ambulating with no assistive device. On visual inspection, there is no deformity, defect, or swelling about the dorsolumbar spine. No scar or incision was noted. There is no evidence of deformity such as scoliosis or kyphosis.

**There is tenderness and spasm in the paravertebral muscle,** but not the spinous processes and the flank. **The sciatic notch area was tender bilaterally. The patient toe and heel walks with pain. The patient squats with pain.**

| Lumbar Range of Motion | ROM | Normal | Spasm | Pain |
|---|---|---|---|---|
| Forward Flex | --- | 60° finger to ankle | **Present** | **Present** |
| Extension | --- | 25° | **Present** | **Present** |
| Lateral Flex (rt.) | --- | 25° | **Present** | **Present** |
| Lateral Flex (lt.) | --- | 25° | **Present** | **Present** |
| Rotation (rt.) | --- | 25° | **Present** | **Present** |
| Rotation (lt.) | --- | 25° | **Present** | **Present** |

**Electronic inclinometers were used for the formal ranges of motion studies. Please see attached which was used for this evaluation.**

Supine straight leg raising: Right 90, Left 90 with no back pain. Sitting straight leg rising was similar. Lasegue test was negative bilaterally.

| Motor Function | Right | Left | Normal |
|---|---|---|---|
| Ankle Dorsiflex L4 | 5 | 5 | 5 |
| Great Toe Ext L5 | 5 | 5 | 5 |
| Ankle Planar Flex S1 | 5 | 5 | 5 |
| Knee Ext L4, L5 | 5 | 5 | 5 |
| Knee Flexion | 5 | 5 | 5 |
| Hip Abductors | 5 | 5 | 5 |
| Hip Adductors | 5 | 5 | 5 |

Deep tendon reflexes are equal at the knee and ankle joints. Palpation over the sacroiliac joint did not elicit tenderness. The FABER (Patrick's) test was negative bilaterally.

| Sensory Function | Right | Left | Normal |
|---|---|---|---|
| L3 Anterior Thigh | Intact | Intact | Intact |
| L4 Medial Leg, Inner Foot | Intact | Intact | Intact |
| L5 Lateral Leg, Mid Foot | **Decreased with pain** | Intact | Intact |

COLLIER APL 0201

**LIB000528**

**Collier, Vicki**
**January 31, 2019**
**Page 7 of 12**

| S1 Post. Leg, Outer Foot | Decreased with pain | Decreased with pain | Intact |
|---|---|---|---|

**Hip Examination**:

| Hip Range of Motion | Right | Left | Normal |
|---|---|---|---|
| Flexion | 100° | 100° | 100° |
| Extension | 0° | 0° | 0° |
| Abduction | 25° | 25° | 25° |
| Adduction | 15° | 15° | 15° |
| Ext Rotation | 35° | 35° | 35° |
| Internal Rotation | 20° | 20° | 20° |

Range of motion was accomplished with no pain or mechanical block. Strength of hips were normal. There was no pain with flexion, adduction, internal rotation, or external rotation. No tenderness was noted at the ASIS, rectus femoris, or greater trochanter. Trendeleberg sign and Ober test were negative. There was no iliopsoas or iliotibial band clicking.

**REVIEW OF MEDICAL RECORDS AND DIAGNOSTIC STUDIES:**
Formal range of motion studies were performed using double electronic inclinometers, and the report is attached.

The application for adjudication of the claim and DWC-1 Claim Forms were also reviewed.

The MRI of the cervical spine was reviewed revealing a 1-mm disc bulge at the C3-C4 level as well a 2-mm disc bulge at the C4-C5 level. A 2-mm disc bulge was seen at the C5-C6 level as well as at the C6-C7 level. There is mild narrowing of the left neural foramen and moderate significant narrowing of the right neural foramen at the C6-C7 level. There is indication that the patient was seen at Kaiser.

An MRI of the right shoulder was reviewed revealing partial thickness articular surface supraspinatus tendon tear with moderate tendinosis. AC joint osteoarthrosis is noted.

The QME report from Dr. Arora was also reviewed.

The patient was seen by Dr. Kohan who is the pain management physician in this case. I have reviewed his report and regard his findings as my own.

Authorization was requested for physical therapy and neurodiagnostic studies, however, documentation has been provided indicating that the patient's claim is denied.

**DIAGNOSES:**
Cervical spine radiculopathy.
Lumbar spine radiculopathy.
Bilateral shoulder impingement, status post right shoulder arthroscopy.

COLLIER APL 0202

LIB000529

**Collier, Vicki**
**January 31, 2019**
**Page 8 of 12**

Bilateral elbow tendinitis.
Bilateral wrist tendinitis.

**DISCUSSION:**

The patient is a 55-year-old female who was seen by me on September 5, 2018, for a continuous trauma injury while working for Automobile Club as an Insurance Agent. She indicates that she developed pain to multiple body parts due to repetitive motion activities at work. She continued working and her pain progressively worsened. She was seen by multiple physicians. She was also seen at Kaiser and underwent right shoulder surgery.

The patient was then sent to my attention to take over the role of the primary treating physician. She was seen by the pain management physician for medication management. She was seen by the QME.

At this time, I am indicating that further conservative treatment is unlikely to provide the patient with improvement in her condition. She has reached a level of maximum medical improvement as well as permanent and stationary status. I will provide you with work restrictions along with an AMA impairment rating, however, I reserve the right to reverse or amend my decisions pending any other medical records or diagnostic studies that are provided to me at a later time.

**WORK RESTRICTIONS:**
**Cervical spine:** The patient is precluded from extended upward and extended downward gazing.

**Lumbar spine:** The patient is precluded from repetitive bending and twisting of the lumbar spine.

**Bilateral shoulders:** The patient is precluded from repetitive activities at or above the shoulder level.

**Bilateral elbows:** The patient is precluded from repetitive torquing.

**Bilateral wrist:** The patient is precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching.

**VOCATIONAL REHABILITATION:**
The patient can return to work with the restrictions that have been provided, however, if the employer is unable to accommodate the work restrictions, then the patient can be considered a QIW.

**FUTURE MEDICAL CARE:**
The patient should have access to medications, orthopedic re-evaluations, durable medical goods, physiotherapy, and further diagnostic studies. Cervical and lumbar epidural injections may be indicated if her radiculopathy persist. For the bilateral shoulders, revision right shoulder surgery may be indicated along with subacromial injection to the

COLLIER APL 0203

**LIB000530**

**Collier, Vicki**
**January 31, 2019**
**Page 9 of 12**

bilateral shoulders and left shoulder surgery on an industrial basis. For the bilateral elbows, cortisone injection may be indicated. For the bilateral wrist, carpal tunnel release surgery may be indicated if her pain continues to worsen on an industrial basis.

<u>CAUSATION</u>:
As it relates to causation, it is with reasonable medical probability, the patient has sustained injuries to the cervical and lumbar spine, bilateral shoulders, bilateral elbows, and bilateral wrist due to her continuous trauma activities that occurred at work.

<u>APPORTIONMENT</u>:
Labor Code 4663 mandates to apportion to causation, and the Escobedo versus Marshall's case mandates to apportion to pathology. Based on the available information and with reasonable medical probability, in regards to the cervical and lumbar spine, I would apportion 20% due to preexisting degenerative changes and non-industrial factors and 80% due to the direct effect of the continuous trauma injury. For the bilateral shoulders, bilateral elbows, and bilateral wrist, 100% of the patient's disability is the direct effect of the continuous trauma injury.

<u>AMA IMPAIRMENT RATING</u>:
In regards to the cervical and lumbar spine, the patient describes neck and lower back pain with radiating pain down the upper and lower extremities mainly on the right side with numbness, tingling, and weakness. Decreased dermatomal sensation with pain is noted over the right C6 dermatome as well as the right L5 dermatome. The MRI of the cervical spine was reviewed, however, I do not have the MRI of the lumbar spine available for review. The patient does describe non-verifiable radicular complaints. Based on the above, DRE method is used and in using Table 15-5 on Page 392, the patient is placed in DRE Cervical Category II and 8% whole person impairment is provided based on non-verifiable radicular complaints without objective findings.

For the lumbar spine, in using Table 15-3 on Page 384, the patient is placed in DRE Lumbar Category II and another 8% whole person impairment is provided.

For the bilateral shoulders, bilateral elbows, and bilateral wrist, I am using the loss of range of motion to calculate the patient's impairment rating. Formal range of motion studies were performed using double electronic inclinometers.

**Left Wrist Range of Motion Impairments (Figure 16-28, p. 467; Figure 16-31, p. 469)**
Contribution to Whole Person Impairment: 2% (4% Upper Extremity)
• Left wrist flexion motion is 46° contributing 2% to the upper extremity impairment
• Left wrist extension motion is 58° contributing 0% to the upper extremity impairment
• Left wrist radial deviation motion is 14° contributing 1% to the upper extremity impairment
• Left wrist ulnar deviation motion is 23° contributing 1% to the upper extremity impairment

LIB000531

**Collier, Vicki**
**January 31, 2019**
**Page 10 of 12**

**Left Elbow Range of Motion Impairments (Figure 16-34, p. 472; Figure 16-37, p. 474)**
Contribution to Whole Person Impairment: 1% (2% Upper Extremity)
• Left elbow flexion motion is 118° contributing 2% to the upper extremity impairment
• Left elbow pronation motion is 79° contributing 0% to the upper extremity impairment
• Left elbow supination motion is 73° contributing 0% to the upper extremity impairment

**Left Shoulder Range of Motion Impairments (Figure 16-40, p. 476; Figure 16-43, p. 477; Figure 16-46, p. 479)**
Contribution to Whole Person Impairment: 6% (10% Upper Extremity)
• Left shoulder flexion motion is 135° contributing 3% to the upper extremity impairment
• Left shoulder extension motion is 48° contributing 0% to the upper extremity impairment
• Left shoulder abduction motion is 87° contributing 4% to the upper extremity impairment
• Left shoulder adduction motion is 49° contributing 0% to the upper extremity impairment
• Left shoulder internal rotation motion is 34° contributing 3% to the upper extremity impairment
• Left shoulder external rotation motion is 61° contributing 0% to the upper extremity impairment

**Right Wrist Range of Motion Impairments (Figure 16-28, p. 467; Figure 16-31, p. 469)**
Contribution to Whole Person Impairment: 4% (6% Upper Extremity)
• Right wrist flexion motion is 42° contributing 2% to the upper extremity impairment
• Right wrist extension motion is 54° contributing 1% to the upper extremity impairment
• Right wrist radial deviation motion is 13° contributing 1% to the upper extremity impairment
• Right wrist ulnar deviation motion is 20° contributing 2% to the upper extremity impairment

**Right Elbow Range of Motion Impairments (Figure 16-34, p. 472; Figure 16-37, p. 474)**
Contribution to Whole Person Impairment: 2% (3% Upper Extremity)
• Right elbow flexion motion is 112° contributing 3% to the upper extremity impairment
• Right elbow pronation motion is 80° contributing 0% to the upper extremity impairment
• Right elbow supination motion is 78° contributing 0% to the upper extremity impairment

**Right Shoulder Range of Motion Impairments (Figure 16-40, p. 476; Figure 16-43, p. 477; Figure 16-46, p. 479)**
Contribution to Whole Person Impairment: 5% (8% Upper Extremity)
• Right shoulder flexion motion is 132° contributing 3% to the upper extremity impairment
• Right shoulder extension motion is 45° contributing 0% to the upper extremity impairment
• Right shoulder abduction motion is 92° contributing 4% to the upper extremity impairment
• Right shoulder adduction motion is 43° contributing 0% to the upper extremity

COLLIER APL 0205

LIB000532

**Collier, Vicki**
**January 31, 2019**
**Page 11 of 12**
impairment
• Right shoulder internal rotation motion is 64° contributing 1% to the upper extremity impairment
• Right shoulder external rotation motion is 81° contributing 0% to the upper extremity impairment


I hope the above information has been helpful to you and thank you for referring this patient to my office for orthopedic examination.

*To complete this examination I have been assisted, as needed, for taking histories, taking x-rays, assisting with the patient, transcription of reports by some or all of the following personnel Alma Azucar, Maria Valles, Angel Gomez, Marlen Sanchez, Laura Casillas and Emily Shemwell. Sherry Leoni, DC, Randy Cockrell, DC or Timothy Markle, DC, may also have assisted in compiling and editing of this report. If required an interpreter was provided. All of the above individuals are qualified to perform the described activities by reason of individual training or under my direct supervision. I certify that this examiner reviewed the history and the past medical records directly with the patient. The examination of the patient, and interpretation of tests and x-rays, was all performed by this examiner. The dictation and the review of the final report were performed entirely by me. The opinions and conclusions contained in this report are entirely my own. I declare, under penalty of perjury, that the information contained in this report, and any attachments, is true and correct, and that there has not been a violation in this report of Section 139.3 L.C. to the best of my knowledge and belief, except as to information that I have indicated was received from others. As to that information I declare under penalty of perjury, that I have accurately detailed the information provided me and, unless otherwise noted, I believe it to be true.*

*In order to prepare this report and complete the evaluation, time was spent without face to face with the patient. The billings reflect such time spent by the physician with the code 99358. Edwin Haronian, M.D. Inc. does not accept the Official Medical fee schedule as prime facie evidence to support the reasonableness of charges. Edwin Haronian, M.D. is a fellow of the American Academy of Orthopedic Surgeons and is board certified, specializing in disorder and surgery of the spine. Under penalty of perjury under the laws of the State of California, services are billed in accordance with our usual and customary fees. Additionally, this medical practice providing treatment to injured worker's experiences extraordinary expenses in the form of mandated paperwork and collection expenses, including the necessity to retain highly-trained personnel to appear before the Workers' compensation appeals board. Based on the level of services provided and overhead expenses for services contained within our geographical area, we bill in accordance with the provisions set-forth in Labor Code Section 5307.1. Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

February 22, 2019
Date

Edwin Haronian, M.D.
Certified Diplomate American

COLLIER APL 0206

**LIB000533**

**Collier, Vicki**
**January 31, 2019**
**Page 12 of 12**

Board of Orthopedic Surgery
California License #A71385

County where executed:    Los Angeles County

SL

  *Robert L. Palty Esq.
  6345 Balboa Blvd, Ste 211
  Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 3/7/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 1/31/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Miguel Mendoza                     Robert L. Palty Esq.
CCMSI Irvine                       6345 Balboa Blvd, Ste 211
P.O. Box 53550                     Encino, CA  91316
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 3/7/2019 at

_____
Emily Shemwell

COLLIER APL 0207

**LIB000534**

# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

- Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery


- Fellow, American Academy of Orthopedic Surgeons


- Member, North American Spine Society


- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

·

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| Patient Name | : | Vicki Collier |
|---|---|---|
| Date of Service | : | February 14, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ███████████ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## FOLLOW-UP REPORT AND REVIEW OF MEDICAL RECORDS OF A PRIMARY TREATING PHYSICIAN

The patient is presenting to my attention after having been declared permanent and stationary previously on January 31, 2019. She has brought with her the panel QME report, supplemental report in pain management with Dr. Arora. This is dated October 24, 2018. Within the report, the QME reviews the medical records extensively. Medical records are reviewed from Page 2 all the way through Page 22 of the QME report. In the discussion section on Page 22, the QME indicates that he has no medical records available for review and to match her history, however, he has reviewed in full detail, the patient's medical records from Page 2 all the way through Page 22. Furthermore, he addresses the issues of causation and indicates that the right shoulder injury is related, however, the employment of the continuous trauma. He however indicates that the symptoms of neck and low back pain are not out of this employment. He states that the patient has reached permanent and stationary status. He does not indicate apportionment for the right shoulder. He states that the patient's neck, low back, and hemorrhoid claim are 100% non-industrial. He provides the patient with 0% whole person impairment to the left shoulder and 0% for the lumbar spine. He provided the patient with 5% whole person impairment for the cervical spine. He provides work restrictions and

COLLIER APL 0208

LIB000535

**Collier, Vicki**
**February 14, 2019**
**Page 2 of 3**

states future medical care should include physical therapy.

The patient was declared permanent and stationary previously. She could return to my attention on an as needed basis based on her future medical care.

## DIAGNOSIS:
M50.00 Cervical Radiculopathy
M54.17 Radiculopathy lumbosacral region
M75.40 Impingement syndrome shoulder
M70.20 Olecranon bursitis elbow
M77.20 Periarthritis unspecified wrist

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles.*

*To complete this examination I have been assisted, as needed, for taking histories, taking x-rays, assisting with the patient, transcription of reports by some or all of the following personnel Alma Azucar, Natasha Yokum, Carmen Garcia and Emily Shemwell. Sherry Leoni, DC, Randy Cockrell, DC, and Timothy Markle, DC, may also have assisted in compiling and editing of this report. If required an interpreter was provided. All of the above individuals are qualified to perform the described activities by reason of individual training or under my direct supervision.*

*Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

February 22, 2019
Date

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385
SL

*Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211
Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:

COLLIER APL 0209

**LIB000536**

**Collier, Vicki**
**February 14, 2019**
**Page 3 of 3**

**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 3/2/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

<u>Patient Name:</u> **Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 2/14/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Miguel Mendoza                          Robert L. Palty Esq.
CCMSI Irvine                            6345 Balboa Blvd, Ste 211
P.O. Box 53550                          Ste 211
Irvine, CA  92619                       Encino, CA  91316

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 3/2/2019 at

_____
Emily Shemwell

COLLIER APL 0210

LIB000537

Jonathan F. Kohan, M.D.
SPECIALIZING IN PAIN DISORDERS

MULTI-DISCIPLINARY
TREATMENT OF
CRPS (RSD)
CHRONIC PAIN SYNDROMES
CANCER PAIN
FIBROMYALGIA
NEURALGIAS
HEADACHE

SPINAL CORD STIMULATION
INTRATHECAL PUMP
PLACEMENT
DISCOGRAPHY
RADIOFREQUENCY ABLATION
SPINAL INJECTIONS

Edwin Haronian, MD
5651 Sepulveda Blvd., #201
Sherman Oaks, CA 91411

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | February 25, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ▓▓▓▓▓▓▓ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## SECONDARY PHYSICIAN PAIN MANAGEMENT FOLLOWUP REPORT

*This special narrative report is reimbursable (1994) Official Medical Fee Schedule because one of the following: There was an unexpected or significant change in the patient's condition or the treatment plan; there is a change in patient care or status; submitted records were reviewed or specific questions were answered.*

DIPLOMATE, AMERICAN BOARD
OF ANESTHESIOLOGY
FELLOWSHIP TRAINED IN PAIN
MEDICINE

Ms. Collier is a 55-year-old female who returns for evaluation after her last appointment with me on January 28, 2019. She does not report any side effects with Norco 5 mg, Neurontin 300 mg and this include no nausea, vomiting, constipation, oversedation, or epigastric pain. Since last time, she has had exacerbated neck and shoulder pain on the left side but the residual pain on the right side that she has had right shoulder surgery for has remained. Typically, she continues to have difficulty with any lifting, pushing, pulling, over-the-shoulder activity, bending, twisting, and continues to have residual low back pain. Aside from the above, she has not been taking anything else.

### PHYSICAL EXAMINATION:
There is no sign of sedation. She is alert and oriented. Tenderness and moderate-to-severe spasm over the cervical spine extends to trapezius, deltoid on the left side but range of motion of the left shoulder is intact with no weakness.

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH. (818) 788-2400

COLLIER APL 0211

**LIB000538**

**Collier, Vicki**
**February 25, 2019**
**Page 2 of 3**


**IMPRESSION:**
History of right shoulder arthroscopic surgery.
Bilateral shoulder complaints.
Cervical disc protrusions.
Residual cervical radiculopathy.
Chronic lumbar pain with sacroiliitis component.

**RECOMMENDATION:**
No additional treatment has been allowed through Dr. Haronian's office and these have included course of therapy and also MRI of the lumbar spine. For now, her complaints are under control with the current regimen with no interference. CURES report does not show any aberrant activity. Thirty tablets of Norco 5 mg and 60 tablets of gabapentin 300 mg will be prescribed until I see the patient back next month.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Please be advised that Dr. Kohan has a financial interest in the Pacific Anesthesia Group.*

                                                    March 3, 2019
                                                    Date

Jonathan F. Kohan, M.D.
Diplomate American Board of
Anesthesiology
Fellowship-Trained in Pain
Medicine

JFK/8872/

  *Robert L. Palty Esq.
  6345 Balboa Blvd, Ste 211
  Ste 211
  Encino, CA  91316

  *CCMSI Irvine
  P.O. Box 53550
  Irvine, CA  92619
  Attn: Miguel Mendoza


**PROOF OF SERVICE**

COLLIER APL 0212

**LIB000539**

**Collier, Vicki**
**February 25, 2019**
**Page 3 of 3**

### STATE OF CALIFORNIA

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 3/8/2019 served the foregoing document described as:

JONATHAN F. KOHAN, M.D.
EVALUATION REPORT

**Patient Name:** **Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 2/25/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Edwin Haronian, MD                          Robert L. Palty Esq.
5651 Sepulveda Blvd., #201                  6345 Balboa Blvd, Ste 211
Sherman Oaks, CA  91411                     Ste 211
                                            Encino, CA  91316

Miguel Mendoza
CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 3/8/2019 at

_____
Emily Shemwell

COLLIER APL 0213

**LIB000540**



# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

- Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery



- Fellow, American Academy of Orthopedic Surgeons



- Member, North American Spine Society



- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

.

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

Patient Name      :      Vicki Collier
Date of Service   :      March 13, 2019
Claim #           :      17G44F696159
Employer          :      Automobile Club
Date of Birth     :      ▮▮▮▮▮▮▮▮▮
Date of Injury    :      CT:7/13/2013-7/24/2017
File #            :      20050164

## SUPPLEMENTAL MEDICAL-LEGAL REPORT AND REVIEW OF MEDICAL RECORDS OF A PRIMARY TREATING PHYSICIAN-ML-106

**One hour and five minutes were spent in reviewing the submitted medical records, editing, and preparing of this report.**

### REVIEW OF MEDICAL RECORDS:
1. Qualified medical evaluation report in pain management from Ripu Arora, M.D., dated October 11, 2018.
2. Qualified medical evaluation supplemental report in pain management from Ripu Arora, M.D., dated October 24, 2018.

### DISCUSSION:
Provided for review is a QME reporting from Dr. Arora relative to the patient's work-related cumulative trauma injuries sustained through July 24, 2017, while employed for Automobile Club at Southern California.  In Dr. Arora's initial QME report of October 11, 2018, he provides diagnosis relative to the patient's cervical spine, both shoulders, and notes the

COLLIER APL 0214

LIB000541

**Collier, Vicki**
**March 13, 2019**
**Page 2 of 5**

patient has low back pain and sacroiliac joint pain. He requests the patient's medical records and diagnostic study results and then indicates that he will issue a supplemental report commenting on issues of impairment and disability.

In Dr. Arora's QME supplemental report dated October 24, 2018, he reviews medical records and notes in his discussion that the patient had claimed pain to her neck, shoulders, lower extremities, and headaches, and pain in the forearm and elbows and shoulder blades along with the hemorrhoids secondary to continuous trauma. I find it interesting that Dr. Arora would acknowledge all of these complaints in his QME supplemental report when in his initial QME report of October 11, 2018, he noted the patient only presenting with complaints of neck and low back pain in his present complaint section on Page 4. In his diagnoses section on Page 11, he does note diagnoses are relative to the patient's cervical spine and lumbar spine, as well as both shoulders. He provides no diagnosis for the patient's bilateral elbows and forearms. I would point out in Dr. Arora's examination section on Page 11 of his October 11, 2018, report, he examines only the patient's neck, bilateral shoulders, and back. I find it interesting that he acknowledges the patient's complaints involving her elbows and forearms in his QME supplemental report; however, does address these symptoms or examines the patient's bilateral elbows and forearms in his October 11, 2018, QME report.

In returning to Dr. Arora's QME supplemental report of October 24, 2018, he notes in his causation section on Page 23 that the patient having complaints relative to her neck and back dating back to the 2000s and that his opinion was the patient's back and neck pain as well as hemorrhoids were not out of the patient's employment. He concludes finding the patient's right shoulder injury caused by the continuous trauma injury to July 25, 2017. He does not address causation relative to the patient's left shoulder nor does he address causation relative to the patient's bilateral elbows and wrists, which are also part of the patient's work-related cumulative trauma. In Dr. Arora's apportionment section, he indicates the patient's right shoulder is apportioned entirely to the work-related cumulative trauma. He indicated the patient's neck and lower back claim as well as hemorrhoids over 100% non-industrial.

I would respectfully disagree with Dr. Arora regarding his opinion on industrial causation in this case. Unfortunately, he fails to comment on industrial causation for the patient's bilateral elbow and wrist complaints and it is apparent that he did not fully appreciate the extent of the patient's physical demands in the performance of her occupational duties. In the history I obtained from the patient, she had indicated beginning employment in June 2013 and worked without any significant difficulties until late 2016 when she experienced the onset of pain to her neck, shoulders, and upper extremities including elbows, wrists, and hands, as well as her low back. She reported sitting for prolonged periods in a chair that did not have padding and her workstation was not ergonomically setup. In Dr. Arora's initial QME report of October 11, 2018, he merely states in his history section that the patient claims pain to her areas of orthopedic complaint; however, there is no indication of Dr. Arora inquiring as to what activities that work had she associated with the onset and

COLLIER APL 0215

**LIB000542**

**Collier, Vicki**
**March 13, 2019**
**Page 3 of 5**

worsening of her symptoms. Dr. Arora did obtain a fairly comprehensive description of the patient's job duties under his job description section on Page 3, where he notes that the patient's job included obtaining sales goals, processing application services to existing claims. Obtaining membership goals and servicing personal customers. He indicated "99% of her work was on the computer, receiving phone calls, cradling the phone on her left shoulder." Dr. Arora is essentially acknowledging the patient performing essentially continuous use of her upper extremities for reaching and finger dexterity activities while regularly holding a telephone handset between her head and left shoulders. This would certainly place the patient's head and neck in an awkward manner for extended periods of time while she was on the phone. These activities would have reasonably cause repetitive strain injury to the patient's areas of orthopedic complaint and it is apparent that Dr. Arora did not appreciate this in the job description he himself obtained. He is noting the patient working 99% of the time on the computer would also support the patient sitting for prolonged periods of time in a chair that she noted did not have good padding and was not ergonomically setup. This situation would also reasonably cause repetitive strain at the patient's lumbar spine. The patient had reported to me similar occupational physical demands at the time of her initial history taken in the office. The patient was exposed to repetitive activities as outlined for several years, which would have reasonably caused repetitive strain injury to her areas of orthopedic complaint supporting work-related cumulative trauma. Following review of Dr. Arora's QME reporting, there is provided no information that would lead me to change my opinions regarding issues of impairment and disability outlined in my permanent and stationary report dated September 5, 2018. Dr. Arora does note reviewing medical records showing the patient having neck and back complaints prior to her employment with Automobile Club. In my permanent and stationary report, I did apportioned 20% of the patient's cervical spine and lumbar spine impairment and disability to preexisting degenerative changes and non-industrial factors. This was based on information made available to me at the time of her permanent and stationary evaluation. It is noted Dr. Arora did review extensive records and if the parties feel that a greater level of apportionment to non-industrial factors is warranted, then I would request that the medical records provided to Dr. Arora also be provided for my review.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). In order to prepare this report and complete the evaluation, time was spent without face to face with the patient. The billings reflect such time spent by the physician with the code 99358. The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Furthermore, all the information contained in this report and its attachment, if any, is true and correct to the best of my knowledge and belief, except as to information I have indicated I have received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.*

*Per labor code 139.3: If I have referred this patient for clinical laboratory, diagnostic nuclear*

COLLIER APL 0216

**LIB000543**

**Collier, Vicki**
**March 13, 2019**
**Page 4 of 5**

*medicine, radiation oncology, physical therapy, physical rehabilitation, psychometric testing, home infusion therapy or diagnostic imaging goods or services whether for treatment or medical-legal purposes, it should be noted that I do not have a financial interest nor does my immediate family have a financial interest with the person or in the entity that receives the referral.*

*This report is for medical/legal assessment of the injury noted and is not to be construed as a complete physical examination for general health purposes. Only those symptoms which are believed to have been involved in the injury or that might be related to the injury have been assessed by this examiner. Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

March 17, 2019
Date

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385

RC

  *Robert L. Palty Esq.
  6345 Balboa Blvd, Ste 211
  Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 3/25/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 3/13/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

COLLIER APL 0217

**LIB000544**

**Collier, Vicki**
**March 13, 2019**
**Page 5 of 5**

Addressed as follows:

Miguel Mendoza                          Robert L. Palty Esq.
CCMSI Irvine                            6345 Balboa Blvd, Ste 211
P.O. Box 53550                          Encino, CA  91316
Irvine, CA  92619


I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 3/25/2019 at

_____
Emily Shemwell


COLLIER APL 0218

**LIB000545**



**Jonathan F. Kohan, M.D.**
SPECIALIZING IN PAIN DISORDERS

MULTI-DISCIPLINARY
TREATMENT OF
CRPS (RSD)
CHRONIC PAIN SYNDROMES
CANCER PAIN
FIBROMYALGIA
NEURALGIAS
HEADACHE

SPINAL CORD STIMULATION
INTRATHECAL PUMP
PLACEMENT
DISCOGRAPHY
RADIOFREQUENCY ABLATION
SPINAL INJECTIONS

Edwin Haronian, MD
5651 Sepulveda Blvd., #201
Sherman Oaks, CA 91411

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | April 1, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ▮▮▮▮▮▮ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## SECONDARY PHYSICIAN PAIN MANAGEMENT FOLLOWUP REPORT

*This special narrative report is reimbursable (1994) Official Medical Fee Schedule because one of the following: There was an unexpected or significant change in the patient's condition or the treatment plan; there is a change in patient care or status; submitted records were reviewed or specific questions were answered.*

DIPLOMATE, AMERICAN BOARD
OF ANESTHESIOLOGY
FELLOWSHIP TRAINED IN PAIN
MEDICINE

Ms. Collier is a 55-year-old female who returns for evaluation after her last appointment with me on February 25, 2019. She denies any side effects with Norco 5 mg, Neurontin 300 mg, does not report any changes in her health. She has not undergone any therapy or other modes of treatment since last time but returns since she has had significant increase in her neck and shoulder pain which extends to the left side which has been associated with headaches. Residual low back pain remains. She still has difficulty with any significant lifting, pushing, pulling, bending, twisting, over the shoulder activities. Aside from the above two medications, she is not taking anything else.

**REVIEW OF DIAGNOSTIC STUDIES:**
Lumbar spine MRI from February 15, 2019, shows a small disc protrusion at L5-S1.

**PHYSICAL EXAMINATION:**

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH. (818) 788-2400

COLLIER APL 0219

**LIB000546**

**Collier, Vicki**
**April 1, 2019**
**Page 2 of 3**

There is no sign of sedation. She is alert and oriented. Tenderness and moderate-to-severe spasm is noted over the cervical paravertebral area that extends to trapezius and deltoid on the left side but shoulder range of motion are within normal limits with negative impingement.

**IMPRESSION:**
Bilateral shoulder tendinosis.
History of right shoulder arthroscopic surgery.
Cervical disc protrusions.
Chronic lumbar pain with sacroiliitis.

**RECOMMENDATION:**
Unfortunately based on what she reports, injections, including Botox injection, have not been of much benefit with respect to her significant spasm and myofascial pain in the upper back and shoulder area. She has been using her medication, which is Norco 5 mg one per day for her severe pain and continues to report improvement with gabapentin, which is 600 mg a day. Due to lack of side effects and improved pain and function, both are reasonable and refill will be provided with CURES report indicating no aberrant activity. She again was reminded of making any attempt to reduce anxiety or any issues with her sleep to avoid any further exacerbation of her myofascial pain.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Please be advised that Dr. Kohan has a financial interest in the Pacific Anesthesia Group.*

April 10, 2019
Date

Jonathan F. Kohan, M.D.
Diplomate American Board of
Anesthesiology
Fellowship-Trained in Pain
Medicine

JFK/8872//ks

 *CCMSI Irvine
 P.O. Box 53550
 Irvine, CA 92619
 Attn: Miguel Mendoza

COLLIER APL 0220

**LIB000547**

**Collier, Vicki**
**April 1, 2019**
**Page 3 of 3**


   *Robert L. Palty Esq.
   6345 Balboa Blvd, Ste 211
   Ste 211
   Encino, CA  91316


**PROOF OF SERVICE**
**STATE OF CALIFORNIA**


I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 4/15/2019 served the foregoing document described as:

JONATHAN F. KOHAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 4/1/2019**


On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Edwin Haronian, MD                          Miguel Mendoza
5651 Sepulveda Blvd., #201                  CCMSI Irvine
Sherman Oaks, CA  91411                     P.O. Box 53550
                                            Irvine, CA  92619


Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211
Encino, CA  91316


I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 4/15/2019 at

_____
Emily Shemwell


COLLIER APL 0221


**LIB000548**

# EDWIN HARONIAN, M.D.

## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

- Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery



- Fellow, American Academy of Orthopedic Surgeons



- Member, North American Spine Society

- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

.

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | April 11, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## FOLLOW-UP REPORT OF A PRIMARY TREATING PHYSICIAN

The patient is back in my office without significant changes.  She has been declared permanent and stationary due to lack of authorization.  She continues to suffer from pain.  Her condition is essentially unchanged due to lack of treatment.  I will refill the patient's medications.

The patient can continue using nonopioid antiinflammatory medications.  Her work restrictions are being guided by the permanent and stationary report.

The patient will be seen in my office in six weeks from now.  Hopefully by then, the medical-legal issues have been clarified.  Home exercises are recommended.  I also reviewed reporting from Dr. Arora.  He was the panel QME in pain management.  Within his report, he reviewed some of the medical records related to the case.  He did indicate that the patient was permanent and stationary in regards to the right shoulder since October 31, 2017.

He placed the patient in DRE Category II for the cervical spine.  He placed the patient in DRE Category I for the lower back.  He used loss of range of motion to calculate the impairment for the right shoulder.  He provided the patient with no impairment for the left shoulder.

He did undergo surgery to the right shoulder in July 2017.  He noted

COLLIER APL 0222

LIB000549

**Collier, Vicki**
**April 11, 2019**
**Page 2 of 3**

that the patient will require future medical care. In contrast to the permanent and stationary report that I have provided, there is indication that multiple other body parts were present. Impairment was provided. Apportionment was discussed.

Within my report, the range of motion was measured using double inclinometers. Another report from the QME dated October 11, 2018. He noted that the patient was complaining of pain in multiple body parts. He reviewed issues regarding activities of daily living. He performed a sleep test. He performed an examination, however, there is no indication that double inclinometers were used for the measurements. The numbers were rounded off to the nearest zero. That is an impossible fact that inclinometers would provide such rounded numbers. Unfortunately, despite the range of motion measurements which were inaccurate, the impairment that was provided relied upon the range of motion measurement form the report of October 11, 2018. Considering the fact that inclinometers were not used in accordance with the recommendations of the AMA Guides Fifth Edition, the impairment cannot be relied upon. If in fact the impairment cannot be relied upon, all of the conclusions of the QME are in fact not substantial medical evidence.

For now, we will continue with the patient's conservative treatment. She can return back to my attention periodically based on her future medical care.

**DIAGNOSIS:**

M50.00 Cervical Radiculopathy
M54.17 Radiculopathy lumbosacral region
M75.40 Impingement syndrome shoulder
M70.20 Olecranon bursitis elbow
M77.20 Periarthritis unspecified wrist

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles.*

*To complete this examination I have been assisted, as needed, for taking histories, taking x-rays, assisting with the patient, transcription of reports by some or all of the following personnel Alma Azucar, Natasha Yokum, Carmen Garcia and Emily Shemwell. Sherry Leoni, DC, Randy Cockrell, DC, and Timothy Markle, DC, may also have assisted in compiling and editing of this report. If required an interpreter was provided. All of the above individuals are qualified to perform the described activities by reason of individual training or under my direct supervision.*

*Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

April 16, 2019
_____
Date

COLLIER APL 0223

**LIB000550**

**Collier, Vicki**
**April 11, 2019**
**Page 3 of 3**

_____

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385
EH

  *Robert L. Palty Esq.
  6345 Balboa Blvd, Ste 211
  Ste 211
  Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 4/24/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 4/11/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Miguel Mendoza                    Robert L. Palty Esq.
CCMSI Irvine                      6345 Balboa Blvd, Ste 211
P.O. Box 53550                    Ste 211
Irvine, CA  92619                 Encino, CA  91316

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 4/24/2019 at

_____
Emily Shemwell

COLLIER APL 0224

**LIB000551**



**Jonathan F. Kohan, M.D.**
SPECIALIZING IN PAIN DISORDERS

MULTI-DISCIPLINARY
TREATMENT OF
CRPS (RSD)
CHRONIC PAIN SYNDROMES
CANCER PAIN
FIBROMYALGIA
NEURALGIAS
HEADACHE

SPINAL CORD STIMULATION
INTRATHECAL PUMP
PLACEMENT
DISCOGRAPHY
RADIOFREQUENCY ABLATION
SPINAL INJECTIONS

Edwin Haronian, M.D.
5651 Sepulveda Bvld #201
Sherman Oaks, CA 91411

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | May 7, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ■■■■■■■ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## SECONDARY PHYSICIAN PAIN MANAGEMENT FOLLOW-UP REPORT

*This special narrative report is reimbursable (1994) Official Medical Fee Schedule because one of the following: There was an unexpected or significant change in the patient's condition or the treatment plan; there is a change in patient care or status; submitted records were reviewed or specific questions were answered.*

DIPLOMATE, AMERICAN BOARD
OF ANESTHESIOLOGY
FELLOWSHIP TRAINED IN PAIN
MEDICINE

Ms. Collier is a 55-year-old female who returns for evaluation after her last appointment with me on April 1, 2019. At this point, she is not undergoing any therapy or other modes of treatment. Since last time she had a reevaluation with Dr. Haronian. She has not been back to work, but since last time reports increasing level of low back pain. Other complaints of neck, and shoulder remains with difficulty with any lifting, pushing, pulling, or any over-the-shoulder activity with a pain level of 7/10. She is taking Norco 5 mg one per day for severe pain. She continues to benefit from gabapentin 300 mg twice a day. Aside from this regimen, she is not taking anything else.

## PHYSICAL EXAMINATION:
No sign of sedation. She is alert and oriented. Tenderness over the lumbar paravertebral area is mild, extends to SI joints but the rest of the examination is normal. With respect to the cervical spine area, tenderness and moderate spasm is noted with trapezius, deltoid, and

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH. (818) 788-2400

COLLIER APL 0225

**LIB000552**

**Collier, Vicki**
**May 7, 2019**
**Page 2 of 3**

right shoulder, in particular.

IMPRESSION:
History of right shoulder arthroscopic surgery with bilateral shoulder tendinosis.
Cervical disc protrusion with no radiculopathy.
Lumbar disc protrusions with no radiculopathy with possible sacroiliitis component.

RECOMMENDATION:
With respect to the lumbar spine area, I do not believe any injection would be beneficial aside from trigger point injections. With respect to the cervical spine area, the patient has had several other modes of treatment including epidurals and Botox injections.

At this point, her current regimen has been helpful and therefore 30 tablets of Norco 5 mg, 60 tablets of Neurontin 300 mg which is a one month's supply will be written until I see her back in a month. CURES report reviewed today does not show any aberrant activity.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Please be advised that Dr. Kohan has a financial interest in the Pacific Anesthesia Group.*

May 13, 2019
Date

Jonathan F. Kohan, M.D.
Diplomate American Board of
Anesthesiology
Fellowship-Trained in Pain
Medicine

JFK

*Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Encino, CA  91316

*CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619
Attn: Miguel Mendoza

COLLIER APL 0226

**LIB000553**

**Collier, Vicki**
**May 7, 2019**
**Page 3 of 3**

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 5/17/2019 served the foregoing document described as:

JONATHAN F. KOHAN, M.D.
EVALUATION REPORT

**Patient Name:** **Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 5/7/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Edwin Haronian, M.D.              Robert L. Palty Esq.
5651 Sepulveda Bvld #201          6345 Balboa Blvd, Ste 211
Sherman Oaks, CA  91411           Encino, CA  91316

Miguel Mendoza
CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 5/17/2019 at

_____
Emily Shemwell

COLLIER APL 0227

**LIB000554**



# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

  - Comprehensive Spine Care



  - Certified, American Board of
    Orthopedic Surgery


- Fellow, American Academy of
  Orthopedic Surgeons


  - Member, North American
    Spine Society


- American College of Spine Surgery

  - Alumni, Kerlan-Jobe Orthopedic
    Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

•

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | May 16, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ▊▊▊▊▊▊ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

### FOLLOW-UP REPORT OF A PRIMARY TREATING PHYSICIAN

The patient is returning to my attention following her previous clinical visit on April 11, 2019. She is declared permanent and stationary and is now being seen on the basis of her need for future medical care. Medications are being provided by pain management.

Physical examination today continues to show spasm, tenderness and guarding in the paravertebral musculature of the cervical and lumbar spine. Bilateral shoulders have impingement and Hawkins signs with range of motion in flexion and abduction to 120 degrees. Healed incision noted at the site of the right shoulder arthroscopy. Bilateral wrists have positive Phalen and reverse Phalen signs with decreased grip strength, distal radial tenderness, and decreased two-point discrimination noted over the hands.

Medications will be refilled.

Work restrictions will continue per the permanent and stationary report.

The patient will return to my attention in eight weeks. We are continuing conservative management as we wait resolution of the medical-legal issues surrounding the claim of injury.

### DIAGNOSIS:

COLLIER APL 0228

LIB000555

**Collier, Vicki**
**May 16, 2019**
**Page 2 of 3**

M50.00 Cervical Radiculopathy
M54.17 Radiculopathy lumbosacral region
M75.40 Impingement syndrome shoulder
M70.20 Olecranon bursitis elbow
M77.20 Periarthritis
unspecified wrist

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles.*

*To complete this examination I have been assisted, as needed, for taking histories, taking x-rays, assisting with the patient, transcription of reports by some or all of the following personnel Alma Azucar, Natasha Yokum, Carmen Garcia and Emily Shemwell. Sherry Leoni, DC, or Randy Cockrell, DC, may also have assisted in compiling and editing of this report. If required an interpreter was provided. All of the above individuals are qualified to perform the described activities by reason of individual training or under my direct supervision.*

*Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

May 19, 2019
Date

Nicholas Cascone, P.A.C

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385
NC

  *Robert L. Palty Esq.
  6345 Balboa Blvd, Ste 211
  Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 5/24/2019 served the foregoing document described as:

COLLIER APL 0229

LIB000556

**Collier, Vicki**
**May 16, 2019**
**Page 3 of 3**

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 5/16/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Miguel Mendoza                         Robert L. Palty Esq.
CCMSI Irvine                           6345 Balboa Blvd, Ste 211
P.O. Box 53550                         Encino, CA  91316
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 5/24/2019 at

_____
Emily Shemwell

COLLIER APL 0230

**LIB000557**



Jonathan F. Kohan, M.D.
SPECIALIZING IN PAIN DISORDERS

MULTI-DISCIPLINARY
TREATMENT OF
CRPS (RSD)
CHRONIC PAIN SYNDROMES
CANCER PAIN
FIBROMYALGIA
NEURALGIAS
HEADACHE

SPINAL CORD STIMULATION
INTRATHECAL PUMP
PLACEMENT
DISCOGRAPHY
RADIOFREQUENCY ABLATION
SPINAL INJECTIONS

Edwin Haronian, MD
5651 Sepulveda Blvd., #201
Sherman Oaks, CA 91411

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | June 4, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ████████ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## SECONDARY PHYSICIAN PAIN MANAGEMENT FOLLOW-UP REPORT

*This special narrative report is reimbursable (1994) Official Medical Fee Schedule because one of the following: There was an unexpected or significant change in the patient's condition or the treatment plan; there is a change in patient care or status; submitted records were reviewed or specific questions were answered.*

DIPLOMATE, AMERICAN BOARD
OF ANESTHESIOLOGY
FELLOWSHIP TRAINED IN PAIN
MEDICINE

Ms. Collier is a 55-year-old female who returns for evaluation after her last appointment with me on May 7, 2019. She reports no issues with gabapentin 300 mg, Norco 5 mg, but she has had more than average increasing level of neck and shoulder pain. Low back pain remains to a lesser extent, but she has difficulty with any lifting, pushing, pulling, bending, twisting, and over-the-shoulder activity, and positioning herself overnight as a result of significant pain, but is not taking anything aside from the above medications.

## PHYSICAL EXAMINATION:
No signs of sedation. She is alert and oriented. Tenderness over the cervical spine extends to the trapezius and deltoid on the right shoulder with weakness in flexion, extension, and abduction.

## IMPRESSION:
History of right shoulder surgery with residual pain.

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH. (818) 788-2400

COLLIER APL 0231

LIB000558

**Collier, Vicki**
**June 4, 2019**
**Page 2 of 3**

Bilateral shoulder tendinosis.
Lumbar disc protrusion.
Cervical disc protrusion.

<u>RECOMMENDATION:</u>
Unfortunately, the patient has not been able to get much treatment because of the issues surrounding her claim, but from a pain management standpoint, Norco 5 mg 50 tablets will be allowed since I will be seeing her in five weeks instead of four weeks. She may continue with gabapentin which has been helpful for her pain complaints as well. CURES report does not show any aberrant activity.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Please be advised that Dr. Kohan has a financial interest in the Pacific Anesthesia Group.*

June 9, 2019
Date

Jonathan F. Kohan, M.D.
Diplomate American Board of
Anesthesiology
Fellowship-Trained in Pain
Medicine

JFK/11099/

*CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619
Attn: Miguel Mendoza

*Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211
Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:

COLLIER APL 0232

**LIB000559**

**Collier, Vicki**
**June 4, 2019**
**Page 3 of 3**

**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 6/13/2019 served the foregoing document described as:

JONATHAN F. KOHAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 6/4/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Edwin Haronian, MD                    Miguel Mendoza
5651 Sepulveda Blvd., #201            CCMSI Irvine
Sherman Oaks, CA  91411               P.O. Box 53550
                                      Irvine, CA  92619


Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211
Encino, CA  91316


I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 6/13/2019 at

_____
Emily Shemwell

COLLIER APL 0233

**LIB000560**



Jonathan F. Kohan, M.D.
SPECIALIZING IN PAIN DISORDERS

MULTI-DISCIPLINARY
TREATMENT OF
CRPS (RSD)
CHRONIC PAIN SYNDROMES
CANCER PAIN
FIBROMYALGIA
NEURALGIAS
HEADACHE


SPINAL CORD STIMULATION
INTRATHECAL PUMP
PLACEMENT
DISCOGRAPHY
RADIOFREQUENCY ABLATION
SPINAL INJECTIONS

Edwin Haronian, M.D.
5651 Sepulveda Bvld #201
Sherman Oaks, CA 91411


| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | July 9, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

### SECONDARY PHYSICIAN PAIN MANAGEMENT FOLLOW-UP REPORT

Ms. Vicki is a very pleasant 56-year-old female who presents with complaint of a chronic pain in the low back with radiation to lower extremities somewhat more on the left side. In addition, she developed depression due to exposure to modus operandi of the carrier.

We do not have any updates in interval history. Taking Norco 5 mg 50 tablets together with gabapentin 300 mg 60 tablets, she is able to control pain with at least 40% of efficacy. However, depression has been escalating.

We do not have any updates regarding QME or AME.

### PHYSICAL EXAMINATION:
On physical examination, she is visibly frustrated and concerned. Spasm and tenderness is noted in the paravertebral muscles of the upper and lower back with decreased range of motion on flexion and extension. Discomfort is noted on abduction of right shoulder against the gravity.

### DIAGNOSES:

DIPLOMATE, AMERICAN BOARD
OF ANESTHESIOLOGY
FELLOWSHIP TRAINED IN PAIN
MEDICINE

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH. (818) 788-2400

COLLIER APL 0234

**LIB000561**

**Collier, Vicki**
**July 9, 2019**
**Page 2 of 3**

Status post right shoulder surgery with residual pain.
Bilateral shoulder tendinosis.
Lumbar disc protrusion.
Cervical disc protrusion.

**RECOMMENDATIONS:**
Today, we are prescribing her Cymbalta 20 mg 30 tablets to address insomnia, depression, and neuropathic pain. Those medications will be refilled and we will see her in four weeks to assess response to medication and review all available medical and diagnostic records.

Work status will be deferred. CURES does not reveal any aberrant behavior.

I hope the above information has been helpful to you and if I can provide you with any further information, please do not hesitate to contact my office.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Please be advised that Dr. Kohan has a financial interest in the Pacific Anesthesia Group.*

July 23, 2019
Date

Michael Nadzhafov, P.A.C, M.P.H.

Jonathan F. Kohan, M.D.
Diplomate American Board of
Anesthesiology
Fellowship-Trained in Pain
Medicine

MN

*Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211
Encino, CA 91316

COLLIER APL 0235

**LIB000562**

**Collier, Vicki**
**July 9, 2019**
**Page 3 of 3**

*CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619
Attn: Miguel Mendoza

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 7/23/2019 served the foregoing document described as:

JONATHAN F. KOHAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 7/9/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Edwin Haronian, M.D.                    Robert L. Palty Esq.
5651 Sepulveda Bvld #201               6345 Balboa Blvd, Ste 211
Sherman Oaks, CA  91411                Ste 211
                                       Encino, CA  91316

Miguel Mendoza
CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 7/23/2019 at

_____
Emily Shemwell

COLLIER APL 0236

**LIB000563**



# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

  - Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery



- Fellow, American Academy of Orthopedic Surgeons



- Member, North American Spine Society

- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | July 10, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## SUPPLEMENTAL MEDICAL-LEGAL REPORT AND REVIEW OF MEDICAL RECORDS OF A PRIMARY TREATING PHYSICIAN ML-106

**Forty five minutes were spent to review the medical records along with editing and preparation of this report.**

The patient has been seen in my office previously.  The patient was seen by the QME, Dr. Arora.  He provided another report dated April 29, 2019. He explained some of the discrepancies within his report.  However, he indicated that he only evaluated the patient for the neck, the lower back, and the right shoulders as those were the specific complaints.  However, I respectfully disagree with his opinions.  Obviously, the patient has had pain in multiple body parts.  In fact, Dr. Arora indicates that the patient has been seen at Kaiser and there has been multiple different complaints. As such, I am not understanding how the patient was only complaining of specific body parts and only a few body parts were examined and discussed when the patient has been complaining of pain to multiple different body parts including the wrists and the elbows.  It seems that a limited examination was being made the QME as opposed to examining

COLLIER APL 0237

**LIB000564**

**Collier, Vicki**
**July 10, 2019**
**Page 2 of 3**

the whole patient and addressing all of the issues that were involved. He noted on Page 4 of his report from April 29, 2019, that the patient has been very active in visiting physicians and reporting every single complaints from 2002. However, he noted that the patient never complained of elbows and wrist pain on the day of the panel QME report. As such, it seems that those body parts were simply dismissed. However, as the QME, there is a need to address disputes. Obviously, the body parts involved in the case are disputed. If the disputed body parts are not addressed then the basic need of a QME has not been fulfilled. He is also dismissing any continuous trauma injury in light of the fact that the patient did have pain several years before her employment at the Automobile Club. Obviously, I am not arguing the fact that the patient may have had preexisting issues, however, industrial connectivity can aggravate a preexisting condition and apportionment should appropriately be provided. The patient was performing similar type of work for about four years and there is indication that her work-related activities have aggravated her preexisting condition. Considering all of the above, I remain in disagreement with the assessment of the QME.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). In order to prepare this report and complete the evaluation, time was spent without face to face with the patient. The billings reflect such time spent by the physician with the code 99358. The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles. Furthermore, all the information contained in this report and its attachment, if any, is true and correct to the best of my knowledge and belief, except as to information I have indicated I have received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.*

*Per labor code 139.3: If I have referred this patient for clinical laboratory, diagnostic nuclear medicine, radiation oncology, physical therapy, physical rehabilitation, psychometric testing, home infusion therapy or diagnostic imaging goods or services whether for treatment or medical-legal purposes, it should be noted that I do not have a financial interest nor does my immediate family have a financial interest with the person or in the entity that receives the referral.*

*This report is for medical/legal assessment of the injury noted and is not to be construed as a complete physical examination for general health purposes. Only those symptoms which are believed to have been involved in the injury or that might be related to the injury have been assessed by this examiner. Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

July 11, 2019
Date

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery

COLLIER APL 0238

**LIB000565**

**Collier, Vicki**
**July 10, 2019**
**Page 3 of 3**

California License #A71385

EH

   *Robert L. Palty Esq.
   6345 Balboa Blvd, Ste 211
   Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 7/17/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 7/10/2019**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Miguel Mendoza               Robert L. Palty Esq.
CCMSI Irvine                  6345 Balboa Blvd, Ste 211
P.O. Box 53550               Encino, CA  91316
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 7/17/2019 at

_____
Emily Shemwell

COLLIER APL 0239

**LIB000566**



# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

- Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery



- Fellow, American Academy of Orthopedic Surgeons

**NASS**

- Member, North American Spine Society



- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH: (818)788-2400
FAX: (818) 788-2453

•

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | July 11, 2019 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

**FOLLOW-UP REPORT OF A PRIMARY TREATING PHYSICIAN**

The patient is back in my office and is indicating that she continues to have residual pain. The patient was seen by the pain management specialist who has been providing her with her medications. I have recommended the patient will use nonopioid antiinflammatory medications as her opioid medications are being provided through the office of the pain management specialist.

For now, I would recommend continuing and reducing as much as possible, the opioid medication that she is taking. In light of the above, ibuprofen gel will be provided along with naproxen and Prevacid.

I will see the patient back at lesser frequency as she has been declared permanent and stationary. One reason why she was declared permanent and stationary is in light of the fact that authorization was not being obtained and we were unable to continue with just conservative treatment which was not helping her. As such, by default, the patient has become permanent and stationary.

I will see the patient back in few weeks and we will make further recommendations.

**DIAGNOSIS:**

COLLIER APL 0240

LIB000567

**Collier, Vicki**
**July 11, 2019**
**Page 2 of 3**

M50.00 Cervical Radiculopathy,
M54.17 Radiculopathy, lumbosacral region,
M75.40 Impingement syndrome, shoulder,
M70.20 Olecranon bursitis, elbow,
M77.20 Periarthritis, unspecified wrist

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles.*

*To complete this examination I have been assisted, as needed, for taking histories, taking x-rays, assisting with the patient, transcription of reports by some or all of the following personnel Alma Azucar, Natasha Yokum, Carmen Garcia and Emily Shemwell. Sherry Leoni, DC, or Randy Cockrell, DC, may also have assisted in compiling and editing of this report. If required an interpreter was provided. All of the above individuals are qualified to perform the described activities by reason of individual training or under my direct supervision.*

*Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

_____        July 18, 2019
                                Date

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385
EH

   *Robert L. Palty Esq.
   6345 Balboa Blvd, Ste 211
   Ste 211
   Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 7/19/2019 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**

COLLIER APL 0241

LIB000568

**Collier, Vicki**
**July 11, 2019**
**Page 3 of 3**

**Claim #: 17G44F696159**
**DOS: 7/11/2019**


On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

| | |
|---|---|
| Miguel Mendoza | Robert L. Palty Esq. |
| CCMSI Irvine | 6345 Balboa Blvd, Ste 211 |
| P.O. Box 53550 | Ste 211 |
| Irvine, CA  92619 | Encino, CA  91316 |


I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 7/19/2019 at

_____
Emily Shemwell

COLLIER APL 0242

LIB000569



# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

- Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery


- Fellow, American Academy of Orthopedic Surgeons


- Member, North American Spine Society

- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH: (818)788-2400
FAX: (818) 788-2453

•

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | September 5, 2018 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ▮▮▮▮▮▮▮ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## INITIAL ORTHOPEDIC EVALUATION AND REQUEST FOR AUTHORIZATION OF A PRIMARY TREATING PHYSICIAN

The above captioned patient, a 55-year-old right-hand dominant female, presented in my Sherman Oaks office, located at 5651 Sepulveda Boulevard, Suite 201, Sherman Oaks, CA 91411, on September 5, 2018, for an orthopedic examination.

The following is a presentation of my initial evaluation and over all recommendations. The history was obtained by my medical historian, Mr. Antonio Salazar. I then reviewed the history in detail with patient.

## HISTORY OF INJURY:
Ms. Collier stated that she sustained cumulative trauma injuries to her neck, shoulders, bilateral upper extremities, forearms, elbows, hands, wrists, back, head, lower extremities and internal (hemorrhoids) during the course of her employment as an insurance agent for The Auto Club.

She stated that since late in 2016 she developed the gradual onset of pain in her neck, shoulders, bilateral upper extremities, forearms, elbows, hands, wrists, back, head and lower extremities which she attributed to

COLLIER APL 0243

LIB000570

**Collier, Vicki**
**September 5, 2018**
**Page 2 of 12**

performing her job duties which for the most part entailed working at an ergonomically incorrect work station. She stated that she also developed hemorrhoids due to prolonged sitting at work on a chair that did not have padding.

She indicated that she initially went to Dr. Tun at Kaiser Permanente who administered cortisone injections to her shoulders. She underwent x-rays and MRI studies of her right shoulder. On July 25, 2017 Dr. Tun performed right shoulder surgery after which she received a course of physical therapy. She remained on temporary total disability through November 21, 2017 at without restrictions. Through Kaiser she also received an epidural injection to her back and Botox injections to her shoulders and neck. She also received acupuncture treatment. She also underwent a CT scan of her neck and head and lower extremities. Dr. Tan placed her on temporary total disability since May 25, 2018. She stated that she has not received other treatment.

She presents to my office today for a comprehensive orthopedic evaluation.

**JOB DESCRIPTION:**
The patient began employment as an insurance agent for The Auto Club, since June of 2013.

She worked 50-60 hours per week.  Her job duties at the time of injury included: selling auto, home and other vehicle insurance policies and AAA memberships, processing applications, operating a computer, typing, assisting customers, over-the-phone and face-to-face, filing, pulling files.

The precise activities required entailed prolonged standing and walking, as well as continuous fine maneuvering of her hands and fingers, and repetitive bending, stooping, squatting, twisting, turning, forceful pulling and pushing, forceful gripping and grasping, lifting and carrying 5 pounds, reaching to all levels..

**CURRENT WORK STATUS:**
The patient is currently not working.  She last worked on May 22, 2018.

**EMPLOYMENT HISTORY:**
The patient states that prior to working for the employer at the time of the injury, she was an independent contractor as an insurance agent for six years.

**PRESENT COMPLAINTS:**
Head:
She complains of intermittent headaches.

Neck:
The patient presents today with complaints of constant pain in the neck with pain, numbness and tingling radiating into her arms. She has stiffness in the neck and her pain is aggravated when she tilts her head up and down or moves her head from side to side.  Her pain increases with prolonged sitting, standing, walking, and with bending of her neck and turning of her head.  She has difficulty sleeping and awakens with pain and discomfort.  Her

COLLIER APL 0244

LIB000571

**Collier, Vicki**
**September 5, 2018**
**Page 3 of 12**

pain level varies throughout the day depending on activities. Pain medication provide her pain improvement, but she remains symptomatic.

Bilateral Shoulders:
The patient has complaints of frequent pain in her shoulders. She complains of stiffness to her shoulders. Her pain increases with reaching, pushing, pulling, and with any lifting. Lifting her upper extremity above shoulder level also increases her pain. Her pain level varies throughout the day depending on activities. She has difficulty sleeping and awakens with pain and discomfort. Rest and pain medication provide her pain improvement, but she remains symptomatic.

Bilateral Elbows:
The patient has complaints of frequent bilateral elbows. Her pain increases with gripping, grasping, flexing/extending, rotating, and repetitive hand and finger movements. She has difficulty sleeping and awakens with pain and discomfort. Her pain level varies throughout the day depending on activities. Physical therapy, acupuncture treatments, and pain medication provide her pain improvement, but she remains symptomatic.

Bilateral Hands/Wrists:
The patient has complaints of intermittent bilateral wrists/hands pain, at times becoming achy and sharp at times. She has numbness and tingling in her hands as well as weakness that causes her to drop objects. Her pain increases with gripping, grasping, flexing/extending, rotating, and repetitive hand and finger movements. She has difficulty sleeping and awakens with pain and discomfort. Her pain level varies throughout the day depending on activities. Physical therapy, acupuncture treatments, and pain medication provide her pain improvement, but she remains symptomatic.

Middle and Lower Back:
The patient has complaints of frequent middle and lower back with pain, tingling and numbness radiating into her feet and legs. Her pain increases with prolonged standing, walking, and sitting. She has difficulty bending, twisting, and turning. She also has difficulty sleeping and awakens with pain and discomfort. She complains of weakness and giving way of her legs. Her pain level varies throughout the day depending on activities. She does not have bowel or bladder dysfunction. She exercises and uses ice packs to relieve some of her pain.

Hemorrhoids:
The patient stated that since she stopped working on May 22, 2018, the hemorrhoids symptoms resolved.

**MEDICAL HISTORY:**
The patient has no known history of heart disease, high blood pressure, kidney disease, diabetes, tuberculosis, cancer, ulcers, pneumonia, lung disease, eye problems, skin problems, asthma, hepatitis, liver disease, thyroid disease, gout, rheumatoid arthritis, Lupus, or arthritis.

COLLIER APL 0245

**LIB000572**

**Collier, Vicki**
**September 5, 2018**
**Page 4 of 12**

**SURGERIES:**
The patient underwent an umbilical hernia repair and right shoulder scope.

**INJURIES:**
The patient denies any previous accidents or injuries.

**MEDICATIONS:**
The patient is currently not taking any medications.

**ALLERGIES:**
The patient has no known allergies to any medications.

**SOCIAL HISTORY:**
The patient is single and has three children. She does not drink and does not smoke.

**FAMILY HISTORY:**
Noncontributory.

**HOBBIES:**
The patient does not have any hobbies at this time.

**ACTIVITIES OF DAILY LIVING:**
The patient states prior to the above noted injury she had no disabling conditions and could perform all activities of daily living without any difficulties.

The patient states since the injury noted above she has difficulty cooking, washing her hair, kneeling, doing strenuous house chores, vacuuming, mopping, lifting and carrying baskets of laundry as well as grocery bags, pushing a shopping carts and prolonged sitting.

**PHYSICAL EXAMINATION:**
HEIGHT:    5' 6"
WEIGHT:     125lbs

**Cervical Spine Examination:**
On visual inspection, there is no erythema, edema, swelling or deformity about the cervical spine or upper back area. The patient's head is held in a normal position. No torticollis was noted.

There is no spasm and tenderness over the paravertebral musculature, upper trapezium, interscapular area, cervical spinous processes, or occiput.

| Cervical Range of Motion | Patient ROM | Normal |
|---|---|---|
| Forward Flex | 50° | 50° |
| Extension | 60° | 60° |
| Lateral Flex (rt.) | 45° | 45° |

COLLIER APL 0246

LIB000573

**Collier, Vicki**
**September 5, 2018**
**Page 5 of 12**

| | | | |
|---|---|---|---|
| Lateral Flex (lt.) | | 45° | 45° |
| Rotation (rt.) | | 80° | 80° |
| Rotation (lt.) | | 80° | 80° |

Range of motion was accomplished without discomfort and spasm.

Reflexes and special tests are as follows:

| Reflexes and test | Right | Left | Normal |
|---|---|---|---|
| Tricep reflex | 2+ | 2+ | 2+ |
| Biceps reflex | 2+ | 2+ | 2+ |
| Brachioradialis reflex | 2+ | 2+ | 2+ |
| Tinel Signs (wrists) | Negative | Negative | Negative |
| Tinel signs (elbow) | Negative | Negative | Negative |
| Adson Test | Negative | Negative | Negative |

Motor power testing for the cervical spine:

| Muscle Group | Right | Left | Normal |
|---|---|---|---|
| Deltoid (C5) | **4** | **4** | 5 |
| Biceps (C6) | 5 | 5 | 5 |
| Triceps (C7) | 5 | 5 | 5 |
| Wrists Extensors (C6) | 5 | 5 | 5 |
| Wrist Flexors (C7) | 5 | 5 | 5 |
| Finger Flexors (C8) | 5 | 5 | 5 |
| Finger Abduction (T1) | 5 | 5 | 5 |

Sensory Testing:

| Dermatome | Right | Left | Normal |
|---|---|---|---|
| C5 (Deltoid) | **Decreased with pain** | **Decreased with pain (greater)** | Intact |
| C6 (Lat Forearm, Thumb, Index) | Intact | Intact | Intact |
| C7 (Middle Finger) | Intact | Intact | Intact |
| C8 (Little finger, Med. Forearm) | Intact | Intact | Intact |
| T1 (Medial Arm) | Intact | Intact | Intact |
| T2 (Medial Arm) | Intact | Intact | Intact |

**JAMAR Grip Testing**  |  Right  |  Left
28/22/20  |  22/20/20

**Shoulder Examination:**

| Shoulder Range of Motion | Right | Left | Normal |
|---|---|---|---|
| Flexion | --- | --- | 180° |
| Abduction | --- | --- | 180° |

COLLIER APL 0247

LIB000574

**Collier, Vicki**
**September 5, 2018**
**Page 6 of 12**

| Extension | --- | --- | 50° |
|---|---|---|---|
| Ext Rotation | --- | --- | 90° |
| Ext Internal Rotation | --- | --- | 90° |
| Adduction | --- | --- | 50° |

**Electronic inclinometers were used for the formal ranges of motion studies. Please see attached which was used for this evaluation.**

No tenderness was noted at the anterior deltoid, supraspinatus insertion or biceps tendon. **Tenderness was noted at the acromioclavicular joint bilaterally.**

**Impingement and Hawkins signs were positive on the right and left.** Jobe's sign was negative on the right and left.

Apprehension test and re-location test were negative. No sulcus was present. Yergason test was negative bilaterally. No deformity or incision was noted around the shoulder area. **An arthroscopy incision was noted over the right shoulder.**

**Elbow Examination:**

| Elbow Range of Motion | Right | Left | Normal |
|---|---|---|---|
| Flexion | 140° | 140° | 140° |
| Extension | 0° | 0° | 0° |
| Pronation | 80° | 80° | 80° |
| Supination | 80° | 80° | 80° |

No tenderness was noted over the lateral (tennis) or medial (Golfers) epicondyles. Resisted wrist extension did not elicit tenderness over the lateral epicondyle. The lateral pivot shift test did not reproduce instability. **Olecranon bursitis was noted bilaterally.**

**Wrist & Hands Examination:**

| Wrist Range of Motion | Right | Left | Normal |
|---|---|---|---|
| Flexion | **55°** | **55°** | 60° |
| Extension | **55°** | **55°** | 60° |
| Ulnar Deviation | **25°** | **25°** | 30° |
| Radial Deviation | **15°** | **15°** | 20° |

No mechanical block was noted to range of motion. **There was tenderness over the distal radius bilaterally** not the carpus. No tenderness was noted at the anatomic snuffbox or the TFCC. Finkelstein test was normal. Tinel testing was negative. **Phalen and reverse Phalen (praying position) testing were positive bilaterally. Two-point discrimination was greater than 6 mm bilaterally.**

No atrophy or tenderness was noted in the thenar, hypothenar, and intrinsic hand musculatures. The radial pulses are present and equal bilaterally.

COLLIER APL 0248

LIB000575

**Collier, Vicki**
**September 5, 2018**
**Page 7 of 12**

**Finger Range of Motion is as Follows:**

|  | MCP Joint | | PIP Joint | | DIP Joint | |
|---|---|---|---|---|---|---|
|  | Right | Left | Right | Left | Right | Left |
| Thumb | 60 | 60 | 80 | 80 | N/A | N/A |
|  | 0 | 0 | 10 | 10 | N/A | N/A |
| Index | 90 | 90 | 100 | 100 | 70 | 70 |
|  | 0 | 0 | 0 | 0 | 0 | 0 |
| Middle | 90 | 90 | 100 | 100 | 70 | 70 |
|  | 0 | 0 | 0 | 0 | 0 | 0 |
| Ring | 90 | 90 | 100 | 100 | 70 | 70 |
|  | 0 | 0 | 0 | 0 | 0 | 0 |
| Little | 90 | 90 | 100 | 100 | 70 | 70 |
|  | 0 | 0 | 0 | 0 | 0 | 0 |

All normal values in the above table are 0° for extension and 90° for extension. No triggering was noted in any digit. Range of motion was painless without mechanical block. The thumbs bilaterally (adduction) reach the head of the 5th metacarpal. Thumb abduction is 90° bilaterally.

**Lumbar Examination:**
Patient has a normal gait and is ambulating with no assistive device. On visual inspection, there is no deformity, defect, or swelling about the dorsolumbar spine. No scar or incision was noted. There is no evidence of deformity such as scoliosis or kyphosis.

**There is tenderness and spasm in the paravertebral muscle,** but not the spinous processes and the flank. The sciatic notch area was not tender. **The patient toe and heel walks with pain. The patient squats with pain.**

| Lumbar Range of Motion | ROM | Normal | Spasm | Pain |
|---|---|---|---|---|
| Forward Flex | **55°** | 60° finger to ankle | **Present** | **Present** |
| Extension | **20°** | 25° | **Present** | **Present** |
| Lateral Flex (rt.) | **20°** | 25° | **Present** | **Present** |
| Lateral Flex (lt.) | **20°** | 25° | **Present** | **Present** |
| Rotation (rt.) | **20°** | 25° | **Present** | **Present** |
| Rotation (lt.) | **20°** | 25° | **Present** | **Present** |

**Supine straight leg raising: Right 40, Left 40 with S1 pain bilaterally.**
Sitting straight leg rising was similar. Lasegue test was negative bilaterally.

| Motor Function | Right | Left | Normal |
|---|---|---|---|
| Ankle Dorsiflex L4 | 5 | 5 | 5 |
| Great Toe Ext L5 | 5 | 5 | 5 |
| Ankle Planar Flex S1 | 5 | 5 | 5 |

COLLIER APL 0249

**LIB000576**

**Collier, Vicki**
**September 5, 2018**
**Page 8 of 12**

| Knee Ext L4, L5 | 5 | 5 | 5 |
|---|---|---|---|
| Knee Flexion | 5 | 5 | 5 |
| Hip Abductors | 5 | 5 | 5 |
| Hip Adductors | 5 | 5 | 5 |

Deep tendon reflexes are equal at the knee and **reduced at the ankle joints bilaterally.** Palpation over the sacroiliac joint did not elicit tenderness. The FABER (Patrick's) test was negative bilaterally.

| Sensory Function | Right | Left | Normal |
|---|---|---|---|
| L3 Anterior Thigh | Intact | Intact | Intact |
| L4 Medial Leg, Inner Foot | Intact | Intact | Intact |
| L5 Lateral Leg, Mid Foot | Intact | Intact | Intact |
| S1 Post. Leg, Outer Foot | **Decreased with pain** | **Decreased with pain** | Intact |

**Hip Examination**:

| Hip Range of Motion | Right | Left | Normal |
|---|---|---|---|
| Flexion | 100° | 100° | 100° |
| Extension | 0° | 0° | 0° |
| Abduction | 25° | 25° | 25° |
| Adduction | 15° | 15° | 15° |
| Ext Rotation | 35° | 35° | 35° |
| Internal Rotation | 20° | 20° | 20° |

Range of motion was accomplished with no pain or mechanical block. Strength of hips were normal. There was no pain with flexion, adduction, internal rotation, or external rotation. No tenderness was noted at the ASIS, rectus femoris, or greater trochanter. Trendeleberg sign and Ober test were negative. There was no iliopsoas or iliotibial band clicking.

**REVIEW OF RADIOGRAPHIC EXAMINATION:**
Three views of the cervical spine were obtained. AP and open-mouth views reveal no fractures, dislocations, or other abnormalities. The lateral view shows straightening of the patient's cervical lordotic curvature. There was loss of disc height noted at the C5-C6 level. Spondylotic changes are noted throughout the cervical spine with no evidence of spondylolysis, spondylolisthesis, fracture, dislocation, or other abnormality.

Two views of the right shoulder were obtained with a slightly downsloping acromion.

Two views of the left shoulder were obtained with subacromial hook noted. There was no evidence of fractures, dislocations, or other abnormality on the shoulder studies.

Four views of the lumbar spine were obtained. AP view showed no fractures, dislocations, or other abnormalities. The lateral view showed loss of disc height at the L5-S1 level.

COLLIER APL 0250

**LIB000577**

**Collier, Vicki**
**September 5, 2018**
**Page 9 of 12**

Spondylotic changes were noted with no evidence of spondylolysis, spondylolisthesis, fracture, dislocation, or other abnormality.

**REVIEW OF MEDICAL RECORDS:**
Range of motion studies were performed in the office today using double electronic inclinometry and have been reviewed. The DWC-1 is present and has been reviewed.

**DIAGNOSES:**
Cervical radiculopathy.
Lumbosacral radiculopathy.
Bilateral shoulder impingement.
Bilateral elbow tendinitis/bursitis.
Bilateral wrist tendinitis/bursitis.

**DISCUSSION:**
The patient is a 55-year-old female who sustained industrial injury as a result of cumulative trauma from July 13, 2013, to July 24, 2017, working as an insurance agent for the Auto Club. The patient states that she developed pain to the neck, back, bilateral shoulders, elbows, wrists, and hands due to the work duties listed above. In 2016, she developed pain and went to her private physician. She received injection to the shoulders, radiographs, MRI studies, and ultimately right shoulder arthroscopy. Epidural injections were provided to the back, Botox injections to the shoulder and neck. She received acupuncture treatment, CT studies. She is presenting today for a comprehensive orthopedic evaluation and for our office to assume the role of the primary treating physician.

The patient is presenting complaining of neck pain which radiates into the upper extremities with pain, paresthesia, and numbness. She is complaining of bilateral shoulder pain with decreased range of motion and strength but she indicates that she did get some benefit from the right shoulder arthroscopy but that she is experiencing recurrence of pain now. She is complaining of elbow tenderness bilaterally. She is also complaining of bilateral wrist pain with numbness and tingling in the hands and decreased grip strength. She is complaining of mild back pain but sensation loss in the lower extremities and bottom of the feet bilaterally.

Physical examination shows spasm, tenderness, and guarding in the paravertebral musculature of the cervical and lumbar spine with loss of range of motion in both. Decreased sensation is noted bilaterally in the C5 and S1 dermatomes. Impingement and Hawkins signs are noted of the shoulders bilaterally with range of motion in flexion and abduction to approximately 120 degrees. Healed incisions are noted at the site of the previous surgical intervention for the right shoulder. Tenderness is noted at the olecranon points bilaterally. The bilateral wrists have positive Phalen and reverse Phalen signs with decreased grip strength, distal radial tenderness, and decreased two-point discrimination noted over the hands.

All conditions, risks, benefits, and alternatives were discussed with the patient and the

COLLIER APL 0251

LIB000578

**Collier, Vicki**
**September 5, 2018**
**Page 10 of 12**

patient verbalized understanding. We request that all prior medical records with diagnostic studies be forwarded to our attention so that we may avoid duplication in testing and treatment. The patient indicates that imaging has been conducted for cervical spine and it is unclear whether this was CT or MRI study.

***Today, we are requesting authorization for neurodiagnostics of the upper, and lower extremities.*** The patient is presenting with a mixed picture of radiculopathy possibly superimposed on peripheral nerve entrapment or polyneuropathy in the lower extremity. Neurodiagnostics will be needed to clarify the patient's presentation as well as to provide appropriate AMA ratings at the time of the maximum medical improvement.

***We are also requesting twelve sessions of physical therapy for the neck, back, bilateral shoulders, wrists, and hands.*** The patient does not have a home exercise program that she is currently pursuing and needs expert guidance in initiating the process of strengthening and improving range of motion as well as instruction in a home exercise regimen in order to provide her with improvement.

***We are requesting gabapentin at 300 mg strength two tablets together before bed.*** The patient has utilized this in the past with good benefit in terms of radicular symptomatology, and it is our opinion that the patient should be provided with this intervention.

Other medications provided today will include antiinflammatory, and anti-gastritis medications, as well as limited supply of topical lotion for local relief.

In our opinion, she may return to the workplace, but should not lift, push, or pull more than 10 pounds. She should not perform bending, twisting activities, or place the spine in unusual or awkward positions. She should not perform repetitive hand motions, pinching, or grasping bilaterally.

She will return to my attention in four weeks at which time we will make further recommendations.

I hope the above information has been helpful to you and thank you for referring this patient to my office for orthopedic examination.

*We request to be added to the Address List for Services of all Notices of Conferences, Mandatory Settlement Conferences and Hearings before the Worker's Compensation Appeals Board. We are advising the Worker's Compensation appeals Board that we may not appear at the hearings or Mandatory Settlement Conferences for the case in chief. Therefore, in accordance with Procedures set forth in Policy and Procedural Manual index No. 60610, effective February 1, 1995, we request that defendants, with full authority to resolve our lien, telephone our office and ask to speak with our "workers' compensation lien negotiator".*

*Authorizations for transportation, medication, physiotherapy, rehabilitation, a conditioning program and the above stated recommendations are requested based upon medically reasonable treatment requirements.*

COLLIER APL 0252

**LIB000579**

**Collier, Vicki**
**September 5, 2018**
**Page 11 of 12**

*This is per labor code 4600 and Title 8, Section 9792.6, C.C.R. and Rule 9785(b). Furthermore, we are requesting that all the medical records be forwarded to our office to avoid repetition in testing and treatment. Please provide us with information regarding the status of the case as soon as possible.*

*To complete this examination I have been assisted, as needed, for taking histories, taking x-rays, assisting with the patient, transcription of reports by some or all of the following personnel Alma Azucar, Maria Valles, Angel Gomez, Marlen Sanchez, Laura Casillas and Frank Leonor. Sherry Leoni, DC or Randy Cockrell, DC may also have assisted in compiling and editing of this report. If required an interpreter was provided. All of the above individuals are qualified to perform the described activities by reason of individual training or under my direct supervision. I certify that this examiner reviewed the history and the past medical records directly with the patient. The examination of the patient, and interpretation of tests and x-rays, was all performed by this examiner. The dictation and the review of the final report were performed entirely by me. The opinions and conclusions contained in this report are entirely my own. I declare, under penalty of perjury, that the information contained in this report, and any attachments, is true and correct, and that there has not been a violation in this report of Section 139.3 L.C. to the best of my knowledge and belief, except as to information that I have indicated was received from others. As to that information I declare under penalty of perjury, that I have accurately detailed the information provided me and, unless otherwise noted, I believe it to be true.*

*In order to prepare this report and complete the evaluation, time was spent without face to face with the patient. The billings reflect such time spent by the physician with the code 99358. Edwin Haronian, M.D. Inc. does not accept the Official Medical fee schedule as prime facie evidence to support the reasonableness of charges. Edwin Haronian, M.D. is a fellow of the American Academy of Orthopedic Surgeons and is board certified, specializing in disorder and surgery of the spine. Under penalty of perjury under the laws of the State of California, services are billed in accordance with our usual and customary fees. Additionally, this medical practice providing treatment to injured worker's experiences extraordinary expenses in the form of mandated paperwork and collection expenses, including the necessity to retain highly-trained personnel to appear before the Workers' compensation appeals board. Based on the level of services provided and overhead expenses for services contained within our geographical area, we bill in accordance with the provisions set-forth in Labor Code Section 5307.1. Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

Nicholas Cascone, P.A.-C

September 21, 2018
Date

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385

COLLIER APL 0253

**LIB000580**

**Collier, Vicki**
**September 5, 2018**
**Page 12 of 12**

County where executed:      Los Angeles County

NC

cc:  *Robert L. Palty Esq.
      6345 Balboa Blvd, Ste 211
      Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 9/27/2018 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 9/5/2018**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Miguel Mendoza                          Robert L. Palty Esq.
CCMSI Irvine                            6345 Balboa Blvd, Ste 211
P.O. Box 53550                          Encino, CA  91316
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 9/27/2018 at

Frank Leonor

COLLIER APL 0254

LIB000581

State of California, Division of Worker's Compensation

## *Edwin Haronian, M.D.*
## PRIMARY PHYSICIAN PROGRESS REPORT (PR – 2)

**Reason of PR-2:**

| | |
|---|---|
| **Patient:** | **Claims Administrator:** |

**Patient:**
**Name:** Vicki COLLIER
**Street:**
**City:** Valencia, CA 91354
**Phone:**
**DOB:**
**SSN:**
**DOI:**
**Employer:** Automobile Club
**Occupation:**

**Claims Administrator:**
**Name:** CCMSI Irvine
**Address:** P.O. Box 53550
**City:** Irvine, CA 92619
**Phone:** 949-474-6500
**Fax:** 217-444-2867
**Claim # :** 17G44F696159
**Phone:**

**Subjective Complaints:**   cervical pain
**Objective Findings:**   loss of range of motion
**Diagnoses:**  M50.00   Cervical Radiculopathy
M54.17   Radiculopathy, lumbosacral region
M75.40   Impingement syndrome, shoulder
M70.20   Olecranon bursitis, elbow
M77.20   Periarthritis, unspecified wrist

**Treatment Plan:**
 **Non-Surgical:**
**Request authorization for Test:** EMG: of bilateral lower extremties; bilateral upper extremties. **Physio-modalities:** Physical Therapy 3 times a week for 4 weeks to cervical spine to lumbar spine to both  shoulder to both  elbow to both wrist to both  hand.  **Neurontin 300mg:** Neurontin® (gabapentin) 300mg, one tab every 8 hours, #90 with 5 refills

The patient has been prescribed gabapentin) It is recommended by the MTUS chronic pain medical treatment guidelines and has shown to be effective for the treatment of diabetic neuropathy, and neuropathic pain.

CA MTUS 2009: §9792.24.2. Chronic Pain Medical Treatment Guidelines state that gabapentin has been shown to be effective for the treatment of diabetic painful neuropathy and postherpetic neuralgia and has been considered as a first-line treatment for neuropathic pain.

ODG Guidelines state that anti-epilepsy agents are recommended for neuropathic pain (pain due to nerve damage), but not for acute nociceptive pain (including somatic pain). The choice of specific agents will depend on the balance between effectiveness and adverse reactions. In June 2007 the FDA announced the approval of pregabalin as the first approved treatment for fibromyalgia.
.

**Work Status:** My recommendation is:Modified work with the following restrictions: Avoid lifting over 10 lbs, Avoid pushing & pulling over 10 lbs, Avoid bending & twisting completely, Restricted from placing the spine in unusual or awkward positions, Avoid repetitive hand motions completely with both hands, Avoid pinching & grasping completely with both hands., The patient should remain on Temporary Total Disability (TTD) if the work modifications cannot be accommodated by the employer.

**DWC Form PR-2**
**(Rev. 06-05)**

COLLIER APL 0255

LIB000582

**Primary Treating Physician:**                                    **Date of Exam:** Sep 05, 2018

I declare under penalty of perjury that this report is true and correct to the best of my knowledge and that I have not violated Labor Code 139.3.

**Signature**                                                      **Cal. Lic #**    A71385

**Name**        Edwin  Haronian  M.D.                              **Specialty**    Orthopedic Surgery
**Address**     5651 Sepulveda Blvd.# 201  Sherman Oaks, CA 91411  **Phone**        818-788-2400

**DWC Form PR-2**
**(Rev. 06-05)**

COLLIER APL 0256

**LIB000583**



# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

- Comprehensive Spine Care



- Certified, American Board of
  Orthopedic Surgery


- Fellow, American Academy of
  Orthopedic Surgeons

**|NASS**
- Member, North American
  Spine Society


- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic
  Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH: (818)788-2400
FAX: (818) 788-2453

•

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | October 10, 2018 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ▮▮▮▮▮▮▮▮ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

### FOLLOW-UP REPORT OF A PRIMARY TREATING PHYSICIAN

The patient is returning to my attention following her initial clinical visit on September 5, 2018.

She is continuing to complain of neck and back pain radiating into the upper extremities and lower extremities as well as bilateral shoulder pain, bilateral wrist, and elbow pain.

Physical examination today shows spasm, tenderness, and guarding in the paravertebral musculature of the cervical spine. Decreased sensation was noted bilaterally in the C5 dermatomes. Bilateral shoulders have mild impingement and Hawkins signs with range of motion in flexion and abduction over 120 degrees on the left and to approximately 100 degrees on the right. Healed incisions are noted at the site of the previous right shoulder arthroscopy. Bilateral wrists have positive Phalen and reverse Phalen signs with decreased grip strength, distal radial tenderness, and decreased two-point discrimination noted over the hands. There is tenderness at the

COLLIER APL 0257

**LIB000584**

**Collier, Vicki**
**October 10, 2018**
**Page 2 of 4**

olecranon points bilaterally.

At the initial visit, we requested authorization for neurodiagnostics, and we have yet to receive a response.

The patient's medications will be refilled as they do provide pain relief and improve her functional status.

Her current work restrictions will continue.

She will return to my attention in four weeks at which time it is our hope to be in possession of the complete prior medical record including MRI study of the cervical spine as well as authorization to conduct neurodiagnostics in order to make additional treatment recommendations for the patient.

**DIAGNOSIS:**
M50.00 Cervical Radiculopathy
M54.17 Radiculopathy lumbosacral region
M75.40 Impingement syndrome shoulder
M70.20 Olecranon bursitis elbow
M77.20 Periarthritis unspecified wrist

I hope the above information has been helpful to you and if I can provide you with any further information, please do not hesitate to contact my office.

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles.*

*To complete this examination I have been assisted, as needed, for taking histories, taking x-rays, assisting with the patient, transcription of reports by some or all of the following personnel Alma Azucar, Natasha Yokum and Carmen Garcia. Sherry Leoni, DC or Randy Cockrell, DC may also have assisted in compiling and editing of this report. If required an interpreter was provided. All of the above individuals are qualified to perform the described activities by reason of individual training or under my direct supervision.*

*Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

October 19, 2018
Date

Nicholas Cascone, P.A.-C

COLLIER APL 0258

**LIB000585**

Collier, Vicki
October 10, 2018
Page 3 of 4

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385

NC

cc: *Robert L. Palty Esq.
    6345 Balboa Blvd, Ste 211
    Ste 211
    Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 10/22/2018 served the foregoing document described as:

EDWIN HARONIAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 10/10/2018**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Miguel Mendoza                     Robert L. Palty Esq.
CCMSI Irvine                       6345 Balboa Blvd, Ste 211
P.O. Box 53550                     Ste 211
Irvine, CA  92619                  Encino, CA  91316

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 10/22/2018 at

COLLIER APL 0259

LIB000586

Collier, Vicki
October 10, 2018
Page 4 of 4

_____
Frank Leonor

COLLIER APL 0260

LIB000587

# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

- Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery


- Fellow, American Academy of Orthopedic Surgeons


- Member, North American Spine Society

- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

•

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| Patient Name | : | Vicki Collier |
|---|---|---|
| Date of Service | : | November 14, 2018 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## FOLLOW-UP REPORT AND REVIEW OF MEDICAL RECORDS OF A PRIMARY TREATING PHYSICIAN

The patient is back in my office and she has brought with her some MRI studies performed at Kaiser.  The MRI of the cervical spine was reviewed revealing multilevel minor disc protrusions.  The MRI of the right shoulder revealed a partial thickness tear with 50% tear of the supraspinatus tendon without evidence of a full-thickness rotator cuff tear.  However, the patient is also complaining of left-sided shoulder pain as well as severe lower back pain with radiation of the pain to the lower extremities.  She has difficulty lifting, pushing, pulling and bending.

There is indication that the patient was seen by a QME approximately 30 days ago.

We are waiting for the report.  Until then, I am recommending modified work activities.  Apparently, the claim is still being denied in light of the absence of the reporting from the QME.  I will be looking forward to that report.

We will continue with modified work activities.

COLLIER APL 0261

LIB000588

**Collier, Vicki**
**November 14, 2018**
**Page 2 of 3**

I will see the patient back in a few weeks.  We will make further recommendations then.

**DIAGNOSIS:**

M50.00 Cervical Radiculopathy
M54.17 Radiculopathy lumbosacral region
M75.40 Impingement syndrome shoulder
M70.20 Olecranon bursitis elbow
M77.20 Periarthritis unspecified wrist

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles.*

*To complete this examination I have been assisted, as needed, for taking histories, taking x-rays, assisting with the patient, transcription of reports by some or all of the following personnel Alma Azucar, Natasha Yokum, Carmen Garcia and Emily Shemwell. Sherry Leoni, DC, Randy Cockrell, DC, and Timothy Markle, DC, may also have assisted in compiling and editing of this report. If required an interpreter was provided. All of the above individuals are qualified to perform the described activities by reason of individual training or under my direct supervision.*

*Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

November 16,
2018
Date

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385
EH

\*Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211
Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 11/30/2018 served the foregoing document described as:

EDWIN HARONIAN, M.D.

COLLIER APL 0262

LIB000589

**Collier, Vicki**
**November 14, 2018**
**Page 3 of 3**

EVALUATION REPORT

<u>**Patient Name:**</u> **Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 11/14/2018**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Miguel Mendoza
CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619

Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211
Encino, CA 91316

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 11/30/2018 at

_____
Emily Shemwell

COLLIER APL 0263

LIB000590

State of California, Division of Worker's Compensation

## *Edwin Haronian*, M.D.
## PRIMARY PHYSICIAN PROGRESS REPORT (PR – 2)

**Reason of PR-2:**

**Patient:**

**Name:** Vicki COLLIER

**Street:**

**City:**    Valencia, CA 91354

**Phone:**

**DOB:**

**SSN:**

**DOI:**

**Employer:** Automobile Club

**Occupation:**

**Claims Administrator:**

**Name:**    CCMSI Irvine

**Address:** P.O. Box 53550

**City:**     Irvine, CA 92619

**Phone:**    949-474-6500

**Fax:**      949-474-6064

**Claim # :** 17G44F696159

**Subjective Complaints:** lumbar pain

**Objective Findings:**   loss of range of motion

**Diagnoses:** M54.17    Radiculopathy, lumbosacral region

**Treatment Plan:** norco 5/325mg #30

The patient has been prescribed Norco. According to the MTUS chronic pain medical treatment guidelines, it should be recommended for moderate-severe pain when alternative drugs have not been effective. Anti-inflammatories alone are insufficient to address this patient's pain component.
The benefits and risks associated with the narcotics has been discussed with the patient and there has been expression of understanding.

The patient notes the following:
Reduction in analgesia at least 30-40%.
The patient notes improved functional capacity with activities of daily living, self grooming, and chores around the house.
There are no significant reported adverse side effects.
Upon questioning of the patient, there is no suspicion of any aberrant behaviors.
The patient is taking a morphine equivalent dose less than the maximum recommended by the American Cancer Society guidelines.

CA MTUS Chronic Pain Medical Treatment Guidelines support ongoing opioid treatment when prescriptions are from a single practitioner and are taken as directed; are prescribed at the lowest possible dose; and when there is ongoing review and documentation of pain relief, functional status, appropriate medication use, and side effects.

CA MTUS Chronic Pain Medical Treatment Guidelines state that chronic pain can have a mixed physiologic etiology of both neuropathic and nociceptive components. In most cases, analgesic treatment should begin with acetaminophen, aspirin, and NSAIDs (as suggested by the WHO step-wise algorithm). When these drugs do not satisfactorily reduce pain, opioids for moderate to moderately severe pain may be added to (not substituted for) the less efficacious drugs.

ACOEM Guidelines state that opioids are recommended for select patients with chronic persistent pain, neuropathic pain, or CRPS. Select patients with chronic persistent pain that is not well-controlled (manifested by decreased function attributable to their pain) with non-opioid treatment approaches may be tried on opioids.

**DWC Form PR-2**
**(Rev. 06-05)**

COLLIER APL 0264

**LIB000591**

ODG Guidelines state that opioids are not recommended as a first-line therapy for neuropathic pain but recommended (along with tramadol) for second-line treatment (alone or in combination with first-line drugs). A recent consensus guideline stated that opioids could be considered first-line therapy for the following circumstances: (1) prompt pain relief while titrating a first-line drug; (2) treatment of episodic exacerbations of severe pain; (3) treatment of acute neuropathic pain; & (4) treatment of neuropathic cancer pain.

ODG Guidelines address maintenance of opioid therapy:
(a) Do not attempt to lower the dose if it is working
(b) Supplemental doses of break-through medication may be required for incidental pain, end-of dose pain, and pain that occurs with predictable situations. This can be determined by information that the patient provides from a pain diary or evaluation of additional need for supplemental medication.
(c) The standard increase in dose is 25 to 50% for mild pain and 50 to 100% for severe pain.
ontrolled (manifested by decreased function attributable to their pain) with non-opioid treatment approaches may be tried on opioids.

ODG Guidelines state that opioids are not recommended as a first-line therapy for neuropathic pain but recommended (along with tramadol) for second-line treatment (alone or in combination with first-line drugs). A recent consensus guideline stated that opioids could be considered first-line therapy for the following circumstances: (1) prompt pain relief while titrating a first-line drug; (2) treatment of episodic exacerbations of severe pain; (3) treatment of acute neuropathic pain; & (4) treatment of neuropathic cancer pain.

ODG Guidelines state that opioids are not recommended as a first-line treatment for chronic non-malignant pain, and not recommended in patients at high risk for misuse, diversion, or substance abuse. Recommended as a 2nd or 3rd line treatment option at doses   120 mg daily oral morphine equivalent dose.

ODG Guidelines address maintenance of opioid therapy:
(a) Do not attempt to lower the dose if it is working
(b) Supplemental doses of break-through medication may be required for incidental pain, end-of dose pain, and pain that occurs with predictable situations. This can be determined by information that the patient provides from a pain diary or evaluation of additional need for supplemental medication.
(c) The standard increase in dose is 25 to 50% for mild pain and 50 to 100% for severe pain.
.

**Work Status:** My recommendation is:Modified work with the following restrictions: Avoid lifting over 10 lbs, Avoid pushing & pulling over 10 lbs, Avoid bending & twisting completely, Restricted from placing the spine in unusual or awkward positions, Avoid repetitive hand motions completely with both hands, Avoid pinching & grasping completely with both hands., The patient should remain on Temporary Total Disability (TTD) if the work modifications cannot be accommodated by the employer.
**Primary Treating Physician:**                                **Date of Exam:** Nov 29, 2018

I declare under penalty of perjury that this report is true and correct to the best of my knowledge and that I have not violated Labor Code 139.3.

| Signature | | Cal. Lic # | A71385 |
|---|---|---|---|
| **Name** | Edwin  Haronian  M.D. | **Specialty** | Orthopedic Surgery |
| **Address** | 5651 Sepulveda Blvd.# 201  Sherman Oaks, CA 91411 | **Phone** | 818-788-2400 |

**DWC Form PR-2**
**(Rev. 06-05)**

COLLIER APL 0265

**LIB000592**

# EDWIN HARONIAN, M.D.
## —DISORDERS & SURGERY OF THE SPINE—

- Minimally Invasive Spine Surgery

- Complex & Revision Spine Surgery

  - Comprehensive Spine Care



- Certified, American Board of Orthopedic Surgery


- Fellow, American Academy of Orthopedic Surgeons


- Member, North American Spine Society

- American College of Spine Surgery

- Alumni, Kerlan-Jobe Orthopedic Clinic

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH:  (818)788-2400
FAX: (818) 788-2453

•

724 CORPORATE CENTER DRIVE
SECOND FLOOR
POMONA, CA 91768
PH. (909) 622-6222
FX. (909) 622-6220

WWW • ESPINEDOCTOR • COM

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | November 29, 2018 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ▇▇▇▇▇▇▇ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## FOLLOW-UP REPORT AND REQUEST FOR AUTHORIZATION OF A PRIMARY TREATING PHYSICIAN

The patient was last seen on November 14, 2018.

She is presenting with a request to refill Norco pain medication. She has been utilizing this since coming into our care.

The physical examination is unchanged. The patient will keep her current appointment.

She was provided with a short script for Norco 5/325 mg twice per day as needed number of 30 tablets. _**We request that that be filled at the pharmacy. However, we also request that the patient be referred to pain management.**_ If the patient plans to continue to utilize opioid medication at this level, pain management physician is required in order to manage this. We look forward to timely approval.

The patient will return to my attention for previously scheduled visit.

## DIAGNOSIS:
M50.00 Cervical Radiculopathy
M54.17 Radiculopathy lumbosacral region

COLLIER APL 0266

LIB000593

**Collier, Vicki**
**November 29, 2018**
**Page 2 of 3**

M75.40 Impingement syndrome shoulder
M70.20 Olecranon bursitis elbow
M77.20 Periarthritis unspecified wrist

*I declare, under penalty of perjury, that I have not violated the provisions of California Labor Code 139.3 and that the contents of this report and attached billing are true and correct to the best of my knowledge. I also affirm that I have not violated any sections of Labor Code 4628. Please see attached itemized billing with ICD-10 diagnosis code(s). The foregoing declaration is executed on the date of this report and signed by myself in the County of Los Angeles.*

*To complete this examination I have been assisted, as needed, for taking histories, taking x-rays, assisting with the patient, transcription of reports by some or all of the following personnel Alma Azucar, Natasha Yokum, Carmen Garcia and Emily Shemwell. Sherry Leoni, DC, Randy Cockrell, DC, and Timothy Markle, DC, may also have assisted in compiling and editing of this report. If required an interpreter was provided. All of the above individuals are qualified to perform the described activities by reason of individual training or under my direct supervision.*

*Please be advised that Dr. Haronian has a financial interest in Osteon Surgery Center, Kinetix Surgery Center and Pomona Orthopedics.*

December 6, 2018
Date

Nicholas Cascone, P.A.C

Edwin Haronian, M.D.
Certified Diplomate American
Board of Orthopedic Surgery
California License #A71385
NC

*Robert L. Palty Esq.
6345 Balboa Blvd, Ste 211
Ste 211
Encino, CA  91316

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 12/14/2018 served the foregoing document described as:

EDWIN HARONIAN, M.D.

COLLIER APL 0267

LIB000594

**Collier, Vicki**
**November 29, 2018**
**Page 3 of 3**

EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 11/29/2018**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Miguel Mendoza                          Robert L. Palty Esq.
CCMSI Irvine                            6345 Balboa Blvd, Ste 211
P.O. Box 53550                          Ste 211
Irvine, CA  92619                       Encino, CA  91316

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 12/14/2018 at

_____
Emily Shemwell

COLLIER APL 0268

**LIB000595**



Jonathan F. Kohan, M.D.
SPECIALIZING IN PAIN DISORDERS

MULTI-DISCIPLINARY
TREATMENT OF
CRPS (RSD)
CHRONIC PAIN SYNDROMES
CANCER PAIN
FIBROMYALGIA
NEURALGIAS
HEADACHE

SPINAL CORD STIMULATION
INTRATHECAL PUMP
PLACEMENT
DISCOGRAPHY
RADIOFREQUENCY ABLATION
SPINAL INJECTIONS

Edwin Haronian M.D.
5651 Sepulveda Bvld #201
Sherman Oaks, CA 91411


| | | |
|---|---|---|
| Patient Name | : | Vicki Collier |
| Date of Service | : | December 13, 2018 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | ███████████ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

## SECONDARY TREATING PHYSICIAN PAIN MANAGEMENT
## INITIAL REPORT

Ms. Vicki Collier was seen in this office today for an initial pain management consultation. The following is a presentation of my initial evaluation and overall recommendations. The history was obtained by a qualified medical historian, Ms. Monica Bradburn. I then reviewed the history in detail with the patient.

DIPLOMATE, AMERICAN BOARD
OF ANESTHESIOLOGY
FELLOWSHIP TRAINED IN PAIN
MEDICINE

### HISTORY OF INJURY:
Ms. Vicki Collier is a 55-year-old, right-handed female who sustained an industrial injury while performing her usual and customary duties while working for Automobile Club as an insurance agent. In approximately 2016, she began to experience a gradual onset of pain in her neck, shoulders, arms, elbows, hands/wrist, low back, knees and feet/ankles due to the nature of her work duties. She was constantly standing and walking, bending, stooping, squatting, kneeling, pushing, pulling, gripping, grasping, lifting and prolonged sitting. She also noted headaches. She self-treated with rest and over-the-counter medication. Her pain became progressively worse.

She was seen by Dr. Tun at Kaiser Permanente through her private insurance. She was examined and x-rays were obtained. She was

5651 SEPULVEDA BLVD., STE 201
SHERMAN OAKS, CA 91411
PH. (818) 788-2400

COLLIER APL 0269

LIB000596

**Collier, Vicki**
**December 13, 2018**
**Page 2 of 11**

provided with multiple cortisone injections in the right shoulder and two to three cortisone injections on the left shoulder with some pain relief. She underwent an **MRI scans of the cervical spine, right shoulder and lumbar spine**. She underwent a lumbar epidural injection to her back with temporary pain relief. On July 25, 2017, she underwent right shoulder surgery. She followed up posts operatively. She underwent physical therapy with some pain relief. She returned back to work full duty on November 1, 2017. Due to her ongoing pain she returned back to Dr. Tun and she was provided with a cortisone injection in the right shoulder with pain relief.

She has undergone Botox injections to her head, shoulders and neck which had been done twice with some pain relief. She underwent acupuncture treatment. She also underwent a **CT scan of her head and cervical spine**. She was taken off work by Dr. Tan on May 25, 2018. She has not received any other medical treatment.

On September 5, 2018, the patient was seen in your office for an orthopedic evaluation. She was examined and x-rays were obtained. She was provided with medication. She underwent a pain management QME evaluation with Dr. Arora on October 11, 2018. She was started on massage therapy and physical therapy with some pain relief. She is seen today for a pain management evaluation.

**CURRENT WORK STATUS:**
The patient is currently not working; and last worked on May 22, 2018.

**PRESENT COMPLAINTS:**
Head:
The patient experiences occasional headaches. Her pain is rated 4/10.

Cervical Spine:
The patient experiences electrical type pain in the neck, worse on the left. She has pain that radiates to both shoulders and both upper extremities to the hands and fingers with numbness and tingling. She has occasional headaches, which she associates with her neck pain. Her pain is aggravated when tilting the head up and down or moving the head from side-to-side. The pain increases with prolonged sitting and standing. She has difficulty sleeping.

The patient indicates that on a pain scale from 1-10, with 10 being the worst, her neck pain is rated as 7-8/10.

Bilateral Shoulders:
The patient experiences ongoing pain in both shoulders. She also has difficulty sleeping and awakens with pain. She is unable to sleep on ether side.

The patient indicates that on a pain scale from 1-10, with 10 being the worst, her

COLLIER APL 0270

**LIB000597**

**Collier, Vicki**
**December 13, 2018**
**Page 3 of 11**

shoulder pain is rated as 6-7/10 but can increase 10/10.

Bilateral Elbows:
The patient experiences intermittent pain in both elbows. She has pain with movement of the elbow. Her pain extends to the forearm, hand and fingers. She experiences numbness and tingling. She has difficulty with lifting and carrying objects and with rotating the arm. She also has difficulty sleeping.

The patient indicates that on a pain scale from 1-10, with 10 being the worst, her elbow pain is rated 4-5/10.

Bilateral Hands/Wrists:
The patient experiences intermittent pain in both hands/wrists. She experiences numbness and tingling that extends to the forearm and radiates to the hand and fingers. She notes grip weakness and has difficulty with holding objects and with fine motor coordination. Her wrist pain increases with gripping, grasping, pushing and pulling, rotating, and repetitive hand and finger movements. She also has difficulty sleeping.

The patient indicates that on a pain scale from 1-10, with 10 being the worst, her hand/wrist pain is rated 4/10.

Thoracolumbar Spine:
The patient has ongoing upper back pain in between the shoulder blades. She also has low back pain and stiffness. Her pain radiates to both hips, buttocks, legs into the feet with numbness, tingling and weakness. Her low back pain increases with prolonged standing, and sitting. She is unable to sit for more than 20 minutes, or stand for more than 20 minutes, before her pain increases. She also has difficulty sleeping. She denies bowel or bladder dysfunction.

The patient indicates that on a pain scale from 1-10, with 10 being the worst, her back pain is rated 7-8/10 in the thoracic; 10/10.

Bilateral Knees:
The patient experiences intermittent sharp pain in both knees.

The patient indicates on a pain scale from 1-10, with 10 being the worst, her knee pain is rated 6-7/10.

Bilateral Feet/Ankles:
The patient experiences ongoing numbness and tingling in both feet.

The patient indicates on a pain scale from 1-10, with 10 being the worst, her pain is rated 7/10.

COLLIER APL 0271

**LIB000598**

**Collier, Vicki**
**December 13, 2018**
**Page 4 of 11**

Denies any symptoms of hemorrhoids.

**PSYCHE:**
The patient experiences anxiety, stress and depression.

**WEIGHT:**
Pre-injury weight:      125 pounds.
Present weight:       125 pounds.

**ACTIVITIES OF DAILY LIVING:**
The patient has difficulties with bathing, dressing, household chores and driving.

**PAST MEDICAL HISTORY**
She has history of high cholesterol. She denies hypertension, diabetes, asthma, cardiovascular disease, renal or hepatic disease, tuberculosis, cancer, ulcers, pulmonary or thyroid disease, skin problems, gout, rheumatoid arthritis, lupus or any type of bone, muscle or joint disease.

**SURGERIES/HOSPITALIZATIONS:**
The patient underwent the following surgeries:

1. Umbilical hernia repair
2. Right shoulder arthroscopy
3. Breast augmentation
4. Tonsillectomy

**PREVIOUS ACCIDENTS/INJURIES:**
The patient denies any prior accidents or injuries.

**CURRENT MEDICATIONS:**
The patient is currently taking the following medication:

1. Ibuprofen cream
2. Gabapentin
3. Naproxen
3. Norco

**ALLERGIES:**
The patient denies any known medication allergies.

**SOCIAL HISTORY:**

COLLIER APL 0272

**LIB000599**

Collier, Vicki
December 13, 2018
Page 5 of 11

The patient is single with three children.

The patient denies tobacco use she consumes alcoholic beverages on occasion.

**FAMILY HISTORY:**
The patient's family history is noncontributory.

**REVIEW OF SYSTEMS:**
HEENT:              The patient experiences tinnitus.

Respiratory:        No cough, wheezing or shortness of breath.

Cardiovascular:      No chest pain, heart murmur or palpitations.

Gastrointestinal:      No known nausea, vomiting, constipation, diarrhea or gastrointestinal upset. There is no history of ulcers.

Genitourinary:       No dysuria, frequency, urgency or incontinence.

Hematopoietic:      No bleeding problems, clot formations or phlebitis.

Neurologic:          The patient experiences occasional headaches.

Psychiatric:          The patient complains of anxiety, stress and depression.

**PHYSICAL EXAMINATION:**
Height: 5'6".
Weight: 125 pounds.

**GENERAL:**   The patient is a female in no distress secondary to pain.

**HEENT:**   There is no jaundice or icterus.  Cranial nerves II through XII are all grossly intact.

**Cardiac:**  Regular Rate and Rhythm without Murmur.

**Chest:**  Clear Bilaterally.

**Abdomen:**  Soft and Non-tender.

**Cervical Spine:**
**There is tenderness to palpation over paravertebral, trapezius, deltoid, and rhomboids area with moderate spasm.  There is tenderness over paraspinous**

COLLIER APL 0273

LIB000600

**Collier, Vicki**
**December 13, 2018**
**Page 6 of 11**

**muscles.** Axial Compression:  Negative.  Spurling:  Negative.

| Range of Motion | Measured | Normal | Spasm | Pain |
|---|---|---|---|---|
| Forward Flexion | 50 | 50 | **Positive** | **Positive** |
| Extension | 60 | 60 | **Positive** | **Positive** |
| R Lateral Flexion | 45 | 45 | **Positive** | **Positive** |
| L Lateral Flexion | 45 | 45 | **Positive** | **Positive** |
| R Rotation | 80 | 80 | **Positive** | **Positive** |
| L Rotation | 80 | 80 | **Positive** | **Positive** |

| Reflex (0-2) | Right | Left |
|---|---|---|
| Biceps | 2 | 2 |
| Triceps | 2 | 2 |
| Brachioradialis | 2 | 2 |

| Motor (0-5) | Right | Left |
|---|---|---|
| Deltoid | 5 | 5 |
| Biceps | 5 | 5 |
| Triceps | 5 | 5 |
| Supinator | 5 | 5 |
| Pronator Teres | 5 | 5 |
| Wrist Flexor | 5 | 5 |
| Wrist Extensors | 5 | 5 |

| Sensory: | Right | Left |
|---|---|---|
| Deltoid (C5) | **Decreased** | **Decreased** |
| Lat. Forearm, Thumb, Index (C6) | **Decreased** | Intact |
| Middle Finger (C7) | Intact | Intact |
| Med. Forearm/Little Finger (C8) | Intact | Intact |
| Medial Arm (T1) | Intact | Intact |
| Lateral Arm (T2) | Intact | Intact |

| Shoulder Examination | | | |
|---|---|---|---|
| Range of Motion: | Right | Left | Normal |
| Flexion | 180 | 180 | 180 |
| Extension | 50 | 50 | 50 |
| Abduction | 180 | 180 | 180 |
| Adduction | 50 | 50 | 50 |
| Ext. Rotation | 90 | 90 | 90 |
| Int. Rotation | 90 | 90 | 90 |

COLLIER APL 0274

**LIB000601**

**Collier, Vicki**
**December 13, 2018**
**Page 7 of 11**

**There is tenderness over the shoulder joint bilaterally.** Impingement sign was negative on the right and left.

<u>Spine:</u>   There is no evidence of scoliosis, lordosis, or kyphosis.

<u>Stance and Gait:</u>   The patient has a normal gait and is able to ambulate without a cane. The patient is able to perform toe and heel walk with pain in the back.

<u>Palpation:</u>   **There is tenderness to palpation over the lumbar paravertebral area with moderate spasm noted.  There is tenderness over paraspinous muscles over lower lumbar spine.  There is tenderness over the bilateral sacroiliac joints.**

| **<u>Lumbar Spine:</u>** | | | | |
|---|---|---|---|---|
| **Range of Motion:** | <u>Measured</u> | <u>Normal</u> | <u>Spasm</u> | <u>Pain</u> |
| Flexion | **35** | 90 | **Positive** | **Positive** |
| Extension | **15** | 30 | **Positive** | **Positive** |
| R Lateral Flexion | **15** | 30 | **Positive** | **Positive** |
| L Lateral Flexion | **15** | | **Positive** | **Positive** |
| R Rotation | **15** | 30 | **Positive** | **Positive** |
| L Rotation | **15** | 30 | **Positive** | **Positive** |

Straight leg raise was negative on the right at 90 degrees and negative on the left at 90 degrees.  Laseque is negative on the right and left.

FABER test is negative on the right and left.

| **<u>Neurologic:</u>** | | |
|---|---|---|
| **Reflexes (0-2)** | <u>Right</u> | <u>Left</u> |
| Patellar | 2 | 2 |
| Achilles | 2 | 2 |

| **Motor (0-5):** | <u>Right</u> | <u>Left</u> |
|---|---|---|
| Hip flexion | 5 | 5 |
| Hip abductors | 5 | 5 |
| Hip adductors | 5 | 5 |
| Ankle dorsiflexion | 5 | 5 |
| Ankle plantar flex. | 5 | 5 |

| **Sensory (pinprick)** | <u>Right</u> | <u>Left</u> |
|---|---|---|
| Anterior Thigh | Intact | Intact |
| Medial Calf/Inner Foot | Intact | Intact |

COLLIER APL 0275

LIB000602

**Collier, Vicki**
**December 13, 2018**
**Page 8 of 11**

| Lateral Calf | **Decreased** | Intact |
|---|---|---|
| Posterior Calf/Outer Foot | Intact | Intact |

**REVIEW OF MEDICAL RECORDS/DIAGNOSTIC STUDIES:**
Cervical spine MRI is from October 10, 2016, and it shows a 2 mm disc protrusions at several levels with mild foraminal stenosis on the left.

**IMPRESSION**:
Cervical disc protrusions.
Cervical radiculopathy.
History of right shoulder surgery with residual pain.
Exacerbated lumbar pain with a component of sacroiliitis.
Lumbar radiculopathy.

**RECOMMENDATION**:
Ms. Collier is a 55-year-old female who was injured while working her duties as a Insurance Agent for the above company. In 2016, she began having pain over the multiple body parts. It continued to worsen despite over-the-counter medication she is taking. At one point, she saw a Kaiser doctor and had a cortisone injection for the shoulder with some improvement, but after she remained symptomatic, she was sent for MRI of the low back, neck, and right shoulder.

Then, she had epidural injection which helped her partially and temporarily. This was followed by a right shoulder surgery in July 2017 followed by physical therapy that has been beneficial. She then saw Dr. Tan, but recently has been seeing Dr. Haronian. Now, referred for pain management evaluation. She has not worked since May. Neck pain is constant increasing by any sitting, standing, driving, any lifting, pushing, pulling, over-the-shoulder activity, and it is rated at 8/10.

Low back pain has recently exacerbated, and has been associated with significant lower extremity pins and needles sensation, tingling sensation, and numbness and cramping. She has been taking over-the-counter medication NSAIDs with no improvement, but reports that Norco 5 mg one per day has been helping her with severe breakthrough pain that happens at the end of the day after she is active. She has side effects with several other medications including muscle relaxants.

On examination, tenderness and moderate spasm over the lumbar spine is noted that extends to sciatic notch bilaterally but straight leg raise test is negative. Patrick's sign is negative. Reflexes and motor examination are within normal limits in the upper and lower extremities and decreased sensation is noted over the C5 and C6 on the right and L5 on the right. Over the cervical spine, neck and shoulder range of motions are within normal limits.

COLLIER APL 0276

**LIB000603**

**Collier, Vicki**
**December 13, 2018**
**Page 9 of 11**

Ms. Collier's complaints are noted and she appears to have a component of sacroiliitis. Because of the lower extremity symptoms, I will wait until the MRI of the lumbar spine is obtained. Then she may benefit from a spinal injection versus SI joint injection.

Her current regimen medication on a limited basis is reasonable and she will be given 30 tablets, but she will not be due for another two weeks and therefore her next visit will be extended to six weeks from today. CURES report does not show any aberrant activity, and she has been consistent with a history that the patient has provided.

*We request to be added to the Address List for Services of all Notices of Conferences, Mandatory Settlement Conferences and Hearings before the Worker's Compensation Appeals Board. We are advising the Worker's Compensation appeals Board that we may not appear at the hearings or Mandatory Settlement Conferences for the case in chief. Therefore, in accordance with Procedures set forth in Policy and Procedural Manual index No. 60610, effective February 1, 1995, we request that defendants, with full authority to resolve our lien, telephone our office and ask to speak with our "workers' compensation lien negotiator".*

*Authorizations for transportation, medication, physiotherapy, rehabilitation, a conditioning program and the above stated recommendations are requested based upon medically reasonable treatment requirements. This is per labor code 4600 and Title 8, Section 9792.6, C.C.R. and Rule 9785(b). Furthermore, we are requesting that all the medical records be forwarded to our office to avoid repetition in testing and treatment. Please provide us with information regarding the status of the case as soon as possible.*

*To complete this examination I have been assisted, as needed, for taking histories, taking x-rays, assisting with the patient, transcription of reports by some or all of the following personnel Alma Azucar, Maria Valles, Angel Gomez, Marlen Sanchez, Laura Casillas and Emily Shemwell. Sherry Leoni, DC, Randy Cockrell, DC or Timothy Markle, DC, may also have assisted in compiling and editing of this report. If required an interpreter was provided. All of the above individuals are qualified to perform the described activities by reason of individual training or under my direct supervision. I certify that this examiner reviewed the history and the past medical records directly with the patient. The examination of the patient, and interpretation of tests and x-rays, was all performed by this examiner. The dictation and the review of the final report were performed entirely by me. The opinions and conclusions contained in this report are entirely my own. I declare, under penalty of perjury, that the information contained in this report, and any attachments, is true and correct, and that there has not been a violation in this report of Section 139.3 L.C. to the best of my knowledge and belief, except as to information that I have indicated was received from others. As to that information I declare under penalty of perjury, that I have accurately detailed the information provided me and, unless otherwise noted, I believe it to be true.*

*In order to prepare this report and complete the evaluation, time was spent without face to face with the patient. The billings reflect such time spent by the physician with the code 99358. Jonathan F. Kohan, M.D. Inc. does not accept the Official Medical fee schedule as prime facie evidence to support the reasonableness of charges. Jonathan F. Kohan, M.D. is a Diplomate of American Board of Anesthesiology and is fellowship trained in Pain Medicine. Under penalty of perjury under the laws of the State of California, services are billed in accordance with our usual and customary fees. Additionally, this medical practice providing treatment to injured worker's experiences extraordinary expenses in the form of mandated paperwork and collection expenses, including the necessity to retain highly-trained personnel*

COLLIER APL 0277

**LIB000604**

**Collier, Vicki**
**December 13, 2018**
**Page 10 of 11**

*to appear before the Workers' compensation appeals board. Based on the level of services provided and overhead expenses for services contained within our geographical area, we bill in accordance with the provisions set-forth in Labor Code Section 5307.1. Please be advised that Dr. Kohan has a financial interest in Pacific Anesthesia Group.*

January 5, 2019
Date

Jonathan F. Kohan, M.D.
Diplomate American Board of
Anesthesiology
Fellowship-Trained in Pain
Medicine

County where executed:    Los Angeles County

JFK

   *Robert L. Palty Esq.
   6345 Balboa Blvd, Ste 211
   Encino, CA  91316

   *CCMSI Irvine
   P.O. Box 53550
   Irvine, CA  92619
   Attn: Miguel Mendoza

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is:
**5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**
On 1/7/2019 served the foregoing document described as:

JONATHAN F. KOHAN, M.D.
EVALUATION REPORT

**Patient Name: Vicki Collier**
**File Number: 20050164**
**Claim #: 17G44F696159**
**DOS: 12/13/2018**

COLLIER APL 0278

**LIB000605**

**Collier, Vicki**
**December 13, 2018**
**Page 11 of 11**

On all interested parties in this action by electronic transmission a true copy of this narrative report from **5651 SEPULVEDA BLVD., SUITE 201, SHERMAN OAKS, CA 91411**

Addressed as follows:

Edwin Haronian M.D.                          Robert L. Palty Esq.
5651 Sepulveda Bvld #201                 6345 Balboa Blvd, Ste 211
Sherman Oaks, CA  91411                  Encino, CA  91316

Miguel Mendoza
CCMSI Irvine
P.O. Box 53550
Irvine, CA  92619

I declare that I am over the age of 18 years and not a party to this action. I also declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 1/7/2019 at

Emily Shemwell

COLLIER APL 0279

LIB000606

 **Employment Development Department**
State of California

**View Physician/Practitioner Supplementary Certification for Continuing Eligibility (DE 2525XX)**

### Section 1 - Physician/Practitioner Information

| Name: | EDWIN  HARONIAN | License Number: | A71385 |
|---|---|---|---|
| Treatment Address: | | 5651 Sepulveda Blvd Ste 201 Sherman Oaks, CA 91411-2916 United States | |

### Section 2 - Patient Information

| Patient Name: | Vicki  Collier | SSN: | ███████ |
|---|---|---|---|
| EDDCAN: | 3131623043 | Date of Birth: | ███████ |
| Claim Effective Date: | 05-15-2018 | Claim ID: | DI-1004-875-880 |

### Section 3 - Form Information

Please complete and submit this information by the due date shown below.

| Receipt Number: | R100000075028092 | | |
|---|---|---|---|
| Issue Date: | | Due Date: | |

### Section 4 - Physician/Practitioner's Supplementary Certificate

| | |
|---|---|
| Patient File Number: | 20050164 |
| Specialty, if any: | orthopedic |
| Are you still treating the patient? | Yes |
| If "Yes," provide the Date of Last Treatment: | 01-31-2019 |
| If "Yes," provide the Next Appointment Date: | 02-25-2019 |
| What present condition continues to make the patient disabled? | |
| shoulder impingement, wrist periarthritis, elbow bursitis, cervical radiculopathy | |

Enter the ICD Diagnosis Code and version for the primary disabling condition that prevents the patient from performing his/her regular or customary work below:

| ICD Diagnosis Code: | M75.40 | Diagnosis Code Version: | ICD-10 |
|---|---|---|---|

Enter the ICD Diagnosis Code and version for the secondary disabling condition that prevents the patient from performing his/her regular or customary work below:

| ICD Diagnosis Code: | M77.20 | Diagnosis Code Version: | ICD-10 |
|---|---|---|---|
| ICD Diagnosis Code: | M70.20 | Diagnosis Code Version: | ICD-10 |
| ICD Diagnosis Code: | M54.17 | Diagnosis Code Version: | ICD-10 |

Describe how the patient's present condition/impairment prevents him/her from returning to his/her regular or customary work:

Chronic pain in neck radiating to upper extremities

What factors or complications are disabling the patient longer than previously estimated for this type of illness or injury?

decreased ROM and grip strength, tenderness, weakness, spasms, numbness and tingling

DE 2525XX    1 of 2

LIB000607



**Employment Development Department State of California**

| Was the patient hospitalized? | No |
|---|---|
| If "Yes," provide the Date of Entry: | |
| If "Yes," provide the Date of Discharge: | |
| Check here if patient still hospitalized: | No |
| Was surgery/procedure performed, or will a surgery/procedure be performed? | No |
| If "Yes," provide the Type of surgery/procedure: | |
| If "Yes," provide the Date of surgery/procedure: | |

Enter the ICD Procedure Code and version for surgery/procedure(s) planned or performed below:

| ICD Procedure Code: | | Procedure Code Version: | |
|---|---|---|---|
| ICD Procedure Code: | | Procedure Code Version: | |
| ICD Procedure Code: | | Procedure Code Version: | |
| ICD Procedure Code: | | Procedure Code Version: | |

Enter the CPT code for surgery/procedure(s) planned or performed below:

| CPT Code: | | CPT Code: | |
|---|---|---|---|
| CPT Code: | | CPT Code: | |
| Present estimated date patient will be able to perform his/her regular or customary work: | 05-10-2019 | | |
| Check here to indicate patient's disability is permanent and you never anticipate releasing patient to return to his/her regular or customary work: | No | | |
| Would disclosure of this information to your patient be medically or psychologically detrimental to the patient? | No | | |

**Section 5 - Certification**

| Title: | An authorized physician or practitioner pursuant to California Unemployment Insurance Code Section 2708. |
|---|---|

I certify under penalty of perjury that the patient is unable to perform his/her regular or customary work because of the listed disabling condition(s). I have performed a physical examination and/or treated the patient within my scope of practice as an authorized physician or practitioner pursuant to California Unemployment Insurance Code Section 2708.

| Submitted by: | EDWIN HARONIAN | Submitted on: | 02-01-2019 04:10 PM |
|---|---|---|---|
| Entered By: | EDWIN HARONIAN | Entered Date: | 02-01-2019 04:10 PM |

DE 2525XX                    2 of 2

LIB000608



**EDD** Employment
Development
Department
State of California

## View Physician/Practitioner Supplementary Certification for Continuing Eligibility (DE 2525XX)

### Section 1 - Physician/Practitioner Information

| Name: | EDWIN  HARONIAN | License Number: | A71385 |
|---|---|---|---|
| Treatment Address: | . | 5651 Sepulveda Blvd Ste 201<br>Sherman Oaks, CA 91411-2916<br>United States | |

### Section 2 - Patient Information

| Patient Name: | Vicki  Collier | SSN: | ███████ |
|---|---|---|---|
| EDDCAN: | 3131623043 | Date of Birth: | |
| Claim Effective Date: | 05-15-2018 | Claim ID: | DI-1004-875-880 |

### Section 3 - Form Information

Please complete and submit this information by the due date shown below.

| Receipt Number: | R100000078769381 | | |
|---|---|---|---|
| Issue Date: | | Due Date: | |

### Section 4 - Physician/Practitioner's Supplementary Certificate

| Patient File Number: | 20050164 | | |
|---|---|---|---|
| Specialty, if any: | orthopedic | | |
| Are you still treating the patient? | Yes | | |
| If "Yes," provide the Date of Last Treatment: | 05-07-2019 | | |
| If "Yes," provide the Next Appointment Date: | 06-04-2019 | | |
| What present condition continues to make the patient disabled? | | | |
| cervical and lumbosacral radiculopathy, shoulder impingement, elbow bursitis, wrist periarthritis | | | |
| Enter the ICD Diagnosis Code and version for the primary disabling condition that prevents the patient from performing his/her regular or customary work below: | | | |
| ICD Diagnosis Code: | M50.00 | Diagnosis Code Version: | ICD-10 |
| Enter the ICD Diagnosis Code and version for the secondary disabling condition that prevents the patient from performing his/her regular or customary work below: | | | |
| ICD Diagnosis Code: | M54.17 | Diagnosis Code Version: | ICD-10 |
| ICD Diagnosis Code: | M75.40 | Diagnosis Code Version: | ICD-10 |
| ICD Diagnosis Code: | M70.20 | Diagnosis Code Version: | ICD-10 |
| Describe how the patient's present condition/impairment prevents him/her from returning to his/her regular or customary work: | | | |
| Chronic pain in neck and low back radiating to upper and lower extremities | | | |
| What factors or complications are disabling the patient longer than previously estimated for this type of illness or injury? | | | |
| decreased ROM and grip strength, tenderness, weakness, spasms, numbness and tingling | | | |

DE 2525XX                1 of 2

COLLIER APL 0282

LIB000609

 **EDD** Employment Development Department
State of California

| | |
|---|---|
| Was the patient hospitalized? | No |
| If "Yes," provide the Date of Entry: | |
| If "Yes," provide the Date of Discharge: | |
| Check here if patient still hospitalized: | No |
| Was surgery/procedure performed, or will a surgery/procedure be performed? | No |
| If "Yes," provide the Type of surgery/procedure: | |
| If "Yes," provide the Date of surgery/procedure: | |

Enter the ICD Procedure Code and version for surgery/procedure(s) planned or performed below:

| | | | |
|---|---|---|---|
| ICD Procedure Code: | | Procedure Code Version: | |
| ICD Procedure Code: | | Procedure Code Version: | |
| ICD Procedure Code: | | Procedure Code Version: | |
| ICD Procedure Code: | | Procedure Code Version: | |

Enter the CPT code for surgery/procedure(s) planned or performed below:

| | | | |
|---|---|---|---|
| CPT Code: | | CPT Code: | |
| CPT Code: | | CPT Code: | |
| Present estimated date patient will be able to perform his/her regular or customary work: | 08-10-2019 | | |
| Check here to indicate patient's disability is permanent and you never anticipate releasing patient to return to his/her regular or customary work: | No | | |
| Would disclosure of this information to your patient be medically or psychologically detrimental to the patient? | No | | |

**Section 5 - Certification**

| | |
|---|---|
| Title: | An authorized physician or practitioner pursuant to California Unemployment Insurance Code Section 2708. |

I certify under penalty of perjury that the patient is unable to perform his/her regular or customary work because of the listed disabling condition(s). I have performed a physical examination and/or treated the patient within my scope of practice as an authorized physician or practitioner pursuant to California Unemployment Insurance Code Section 2708.

| | | | |
|---|---|---|---|
| Submitted by: | EDWIN HARONIAN | Submitted on: | 05-10-2019 03:18 PM |
| Entered By: | EDWIN  HARONIAN | Entered Date: | 05-10-2019 03:18 PM |

DE 2525XX                    2 of 2

COLLIER APL 0283

LIB000610



**Employment Development Department**
State of California

## View Physician/Practitioner Supplementary Certification for Continuing Eligibility (DE 2525XX)

### Section 1 - Physician/Practitioner Information

| Name: | EDWIN  HARONIAN | License Number: | A71385 |
|---|---|---|---|
| Treatment Address: | | 5651 Sepulveda Blvd Ste 201<br>Sherman Oaks, CA 91411-2916<br>United States | |

### Section 2 - Patient Information

| Patient Name: | Vicki  Collier | SSN: | ███████ |
|---|---|---|---|
| EDDCAN: | 3131623043 | Date of Birth: | |
| Claim Effective Date: | 05-15-2018 | Claim ID: | DI-1004-875-880 |

### Section 3 - Form Information

Please complete and submit this information by the due date shown below.

| Receipt Number: | R100000071875953 | | |
|---|---|---|---|
| Issue Date: | 11-02-2018 | Due Date: | 11-22-2018 |

### Section 4 - Physician/Practitioner's Supplementary Certificate

| Patient File Number: | 20050164 |
|---|---|
| Specialty, if any: | |
| Are you still treating the patient? | Yes |
| If "Yes," provide the Date of Last Treatment: | 10-10-2018 |
| If "Yes," provide the Next Appointment Date: | 11-14-2018 |
| What present condition continues to make the patient disabled? | |
| radiculopathy of lumbosacral region, cervical radiculopathy, shoulder impingement syndrome | |

| Enter the ICD Diagnosis Code and version for the primary disabling condition that prevents the patient from performing his/her regular or customary work below: | | | |
|---|---|---|---|
| ICD Diagnosis Code: | m54.17 | Diagnosis Code Version: | ICD-10 |

| Enter the ICD Diagnosis Code and version for the secondary disabling condition that prevents the patient from performing his/her regular or customary work below: | | | |
|---|---|---|---|
| ICD Diagnosis Code: | m50.00 | Diagnosis Code Version: | ICD-10 |
| ICD Diagnosis Code: | m75.40 | Diagnosis Code Version: | ICD-10 |
| ICD Diagnosis Code: | | Diagnosis Code Version: | |

| Describe how the patient's present condition/impairment prevents him/her from returning to his/her regular or customary work: |
|---|
| chronic pain in the neck, lower back and shoulder |
| What factors or complications are disabling the patient longer than previously estimated for this type of illness or injury? |
| decreased ROM with spasms, weaknessand numbness. |

COLLIER APL 0284

LIB000611



| | |
|---|---|
| Was the patient hospitalized? | No |
| If "Yes," provide the Date of Entry: | |
| If "Yes," provide the Date of Discharge: | |
| Check here if patient still hospitalized: | No |
| Was surgery/procedure performed, or will a surgery/procedure be performed? | No |
| If "Yes," provide the Type of surgery/procedure: | |
| If "Yes," provide the Date of surgery/procedure: | |
| Enter the ICD Procedure Code and version for surgery/procedure(s) planned or performed below: | | |

| | | | |
|---|---|---|---|
| ICD Procedure Code: | | Procedure Code Version: | |
| ICD Procedure Code: | | Procedure Code Version: | |
| ICD Procedure Code: | | Procedure Code Version: | |
| ICD Procedure Code: | | Procedure Code Version: | |

| Enter the CPT code for surgery/procedure(s) planned or performed below: | | | |
|---|---|---|---|
| CPT Code: | | CPT Code: | |
| CPT Code: | | CPT Code: | |

| | |
|---|---|
| Present estimated date patient will be able to perform his/her regular or customary work: | 02-06-2019 |
| Check here to indicate patient's disability is permanent and you never anticipate releasing patient to return to his/her regular or customary work: | No |
| Would disclosure of this information to your patient be medically or psychologically detrimental to the patient? | No |

**Section 5 - Certification**

| Title: | An authorized physician or practitioner pursuant to California Unemployment Insurance Code Section 2708. |
|---|---|

I certify under penalty of perjury that the patient is unable to perform his/her regular or customary work because of the listed disabling condition(s). I have performed a physical examination and/or treated the patient within my scope of practice as an authorized physician or practitioner pursuant to California Unemployment Insurance Code Section 2708.

| Submitted by: | EDWIN HARONIAN | Submitted on: | 11-06-2018 04:50 PM |
|---|---|---|---|
| Entered By: | EDWIN  HARONIAN | Entered Date: | 11-06-2018 04:50 PM |

DE 2525XX                    2 of 2

COLLIER APL 0285

LIB000612



Vicki COLLIER, ████████

# Edwin Haronian, M.D.
Orthopedic Surgery
Spine Surgery

09/07/2018

**Patient's Name:**                                      Date of Birth: ████████
Vicki  COLLIER                                           Phone # (home):
████████████████                                         Cellphone #: ████████
Valencia, CA 91354

**Primary Insurance:** CCMSI Irvine
P.O.  Box 53550  Irvine, CA 92619
**Tel:** 949-474-6500     **Fax:** 217-444-2867
**Claim#:** 17G44F696159  **DOI:**
**Claim#:** Unassigned  **DOI:** CT:7/13/2013-7/24/2017

## Dr. Masrour

*As the above named patient's Treating Physician, I am referring this patient to you for of the following:*

**Physical Therapy 3 times a week for 4 weeks to cervical spine to lumbar spine to both shoulder to both  wrist to both  hand .**

Please contact patient directly or our office with a scheduled appointment.

*M50.00    Cervical Radiculopathy*
*M54.17    Radiculopathy, lumbosacral region*
*M75.40    Impingement syndrome, shoulder*
*M70.20    Olecranon bursitis, elbow*
*M77.20    Periarthritis, unspecified wrist*

If you have any questions call our office at (818) 788-2400

Please submit your report to me as well as to the insurance company. If you feel the patient requires treatment please initiate such, and report your progress to me at least every 45 days. If you feel that authorization is required for specific procedures or treatments please initiate your request and contact this office if we can be of assistance.

At such time that you feel the patient has reached a permanent and Stationary status please send your report addressing the factors of disability.

Thank you.

This request has been electronically signed by *Edwin Haronian, M.D.*

COLLIER APL 0286

**LIB000613**

Vicki COLLIER, ▮▮▮▮▮▮

**Fax By:** Erika Ramos, on 09/07/2018
5651 Sepulveda Blvd.# 201 Sherman Oaks, CA 91411
Tel: 818-788-2400   Fax: 818-788-2453

COLLIER APL 0287

LIB000614

Vicki COLLIER,

# Edwin Haronian, M.D.

## RX FOR TEST

**Date: 01/07/2019**

**Patient's Name:** Vicki COLLIER
**Date of Birth:** ███████    **SS#** ███████████
**Address:** ██████████ Dr. Valencia, CA 91354
**Phone #  Cell phone #:** ███████████

**Primary Insurance:** CCMSI Irvine
P.O. Box 53550  Irvine, CA 92619
**Tel:** 949-474-6500    **Fax:** 949-474-6064
Claim #: 17G44F696159

**Attorney:** Robert L. Esq Palty
Address: 6345 Balboa Blvd, Ste 211 Encino, CA 91316
Tel: 818-705-9010
Fax:818-705-9015
--------------------------------------------------------------------------------------------------------------------------
| | |
|---|---|
| M50.00 | Cervical Radiculopathy |
| M54.17 | Radiculopathy, lumbosacral region |
| M75.40 | Impingement syndrome, shoulder |
| M70.20 | Olecranon bursitis, elbow |
| M77.20 | Periarthritis, unspecified wrist |

**MRI of the MRI of Lumbar spine withOUT contrast. @ West Valley MRI**

Once the report comes available please fax over to our office at

Thank you.

**This request has been electronically signed by** *Edwin Haronian, M.D.*

**Sherman Oaks**
**5651 Sepulveda Blvd.# 201  Sherman Oaks, CA 91411**
**Tel: 818-788-2400   Fax: 818-788-2453**

*Document prepared by:* **Erika Ramos**

COLLIER APL 0288

**LIB000615**

**Faxed by:** Marilyn; 01/07/2019 - 02:30 PM

# Edwin Haronian, M.D.
Orthopedic Surgery & Spine Surgery
Tel: (818)818-906-4658  Fax: (818) 827-4706

# Request of information on
# PREVIOUS Authorization Request

**01/07/2019**

**Patient:** Vicki COLLIER
**Claim No.:** 17G44F696159

**Request authorization for Consult:** Pain Management with Jonathan Kohan MD for management of pain medications.

Was made on date _12/26/2018,_ since then we have found no response to our request. Once again we are requesting a response to our request for the above treatments.

_Pursuant to Labor Code section 4610(h) the UR process is to be completed within 5 days...if the insurance carrier needs additional time to complete the UR, a maximum of 14 days are allowed)...In NO EVENT can the UR process take longer than 21 days to complete and issue a 'modification, delay or denial' of the requested treatment, OR the treatment is presumed to be "approved". The Claims Adjuster's cannot 'deny' a requested treatment; they can only approve, or refer to UR for review, within the guidelines as provided in the rules. The initial answer to the PTP must be done within 72 hours with the hard copy to follow. UR is there to expedite the injured worker receiving appropriate medically necessary treatment._

**Dr. Haronian has requested treatment providing his PR-2 / Narrative report in validating the need for the above treatment. Included were diagnostic studies if available to serve as additional evidence for authorization. A timely response to this request would be greatly appreciated.**

### All utilization review & claims examiner responses
### must be returned to dedicated fax line:
### Fax #: (818) 827-4706  Attn: UR Dept
### Email: UR@Synapsedoctor.com

COLLIER APL 0289

**LIB000616**

## Jonathan F. Kohan, M.D.
* 5651 Sepulveda Blvd.# 201  Sherman Oaks, CA 91411 *

## Authorization Request

**Today's Date: 02/01/2019**
**Our Chart No.** 20050164
**Patient Name:** Vicki  COLLIER
**DOB:**▉▉▉▉▉▉▉▉▉
**Claim #:** 17G44F696159
**Claim #:**Unassigned
**Request from office Visit date:** 01 03, 2019

CCMSI Irvine
P.O.  Box 53550
Irvine, CA 92619

You can contact us by phone, fax or email

## *Peer to Peer Direct line only: 818-906-4658
**\*Phone # : (818) 788-2400 Ext 606**
**\*Fax: (818) 827-4706**
**\*Email: UR@synapsedoctor.com**

Thank you.
Austin Pathak

Labor Code Section 4610, section (0) states that "no person other than a licensed physician.., may modify, delay or deny request for authorization of medical treatment. Labor Code Section 4610 section (g) states the time frame for UR. (1) Prospective or concurrent decisions shall be made in a timely fashion that is appropriate for the nature of the employee's condition, not to exceed five working days from the receipt of the information reasonably necessary to make the determination, but in no event more than 14 days from the date of the medical treatment recommendation by the physician. In cases where the review is retrospective, the decision shall be communicated to the individual who received services, or to the individual's designee, within 30 days of receipt of information that is reasonably necessary to make this determination. All of the denial or medication procedures contained in Labor Code section 4610 (g) (2) and (3) are mandatory, and if the statutory requirements are not met, the utilization review report is not admissible. The only other procedure for disputing the treatment is a QME, pursuant to Labor Code section 4062.

## Proof of Service State of California, County of Los Angeles

I am a resident of the county of Los Angeles; I am over the age of eighteen years and not a party to the within entitled action.  My  business address is:  5651 Sepulveda Blvd. Suite 201 Sherman Oaks, CA 91411 or  724 Corporate Center Drive. 2nd Floor, Pomona, CA 91768

On this date  02/01/2019 I served Request for Authorization to the above Insurance Co.  CCMSI Irvine  P.O. Box 53550  Irvine, CA 92619, by transmitting via US Postal Services between the hours of 8:00am and 5:00pm. I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed in Los Angeles, CA

Executed on 02/01/2019  at Sherman Oaks, California. I declare under penalty of perjury that the above is true and correct.

Signature: *Austin Pathak*

Austin Pathak

COLLIER APL 0290

LIB000617

State of California
Division of Workers' Compensation
**REQUEST FOR AUTHORIZATION**
DWC Form RFA - California Code of Regulations, title 8, section 9785.

| |
|---|
| **This form must accompany the Doctor's First Report of Occupational Injury or Illness, Form DLSR 5021, a Treating Physician's Progress Report, DWC Form PR-2, or narrative report substantiation the requested treatment.** |

[ ] New Request [ ] Resubmission - Change in Material Facts
[ ] Expedite Review: Check box if employee faces an imminent and serious threat this or her health
[ ] Check box if request is a written confirmation of prior oral request.

**Employee Information**

| | |
|---|---|
| Employee Name (Last, First, Middle): COLLIER,Vicki | |
| Date of Injury (MM/DD/YYYY):  ;CT:7/13/2013-7/24/2017 | Date of Birth(MM/DD/YYYY): ▓▓▓▓ |
| Claim Number:  17G44F696159;Unassigned | Employer: Automobile Club |

**Provider Information**

| | | |
|---|---|---|
| Provider Name:Jonathan F. Kohan, M.D. | | |
| Peer to Peer Direct line: 818-906-4658 | | Contact Name: |
| Address: 5651 Sepulveda Blvd.# 201 | City: Sherman Oaks | State: CA |
| Zip Code: 91411 | Phone: 818-616-1666 | Fax Number: 818-827-4706 |
| Provider Specialty: Pain Management | | NPI Number: 1518028422 |

**Claims Administrator Information**

| | | |
|---|---|---|
| Claims Administrator Name: CCMSI Irvine | | Contact Name:Mendoza, Miguel |
| Address: P.O.  Box 53550 | City: Irvine | State: CA |
| Zip Code: 92619 | Phone:949-474-6500 | Fax Number: 949-474-6064 |
| E-mail Address: | | |

**Requested Treatment (see instruction for guidance; attached additional pates if necessary**

Either state the requested treatment in the below space or indicate the specific page number(s) of the accompanying medical report on which the request treatment can be found. Up to five (5) procedures may be entered; attached additional request on a separate sheet.

| | |
|---|---|
| Diagnosis | M50.00 Cervical Radiculopathy<br>M54.17 Radiculopathy, lumbosacral region<br>M75.40 Impingement syndrome, shoulder<br>M70.20 Olecranon bursitis, elbow<br>M77.20 Periarthritis, unspecified wrist |
| ICD-Code | |
| Procedure Requested | **Request authorization for Test:**  MRI lumbar spine without contrast. |
| CPT/HCPCS Code | |
| Other Information: (Frequency, Duration, Quantity, Facility, etc.) | |

| | |
|---|---|
| Treating Physician Signature: | Date:02/01/2019 |

**Claims Administrator Response**

[ ] Approved   [ ] Denied or Modified (see separate decision letter  [ ] Delay (See separate notification of delay)
[ ] Requested treatment has been previously denied  [ ] Liability for treatment is disputed

| | |
|---|---|
| Authorization Number (if assigned): | Date: |
| Authorized Agent Name: | Signature: |
| Phone: | Fax Number: | E-mail Address: |
| Comments: | |

DWC Form RFA (Effective 2/2014)

COLLIER APL 0291

LIB000618

**Faxed by:** Stephanie; 02/12/2019 - 09:38 AM

# Jonathan F. Kohan, M.D.
Pain Management & Anesthesiology
Tel: (818)818-906-4658  Fax: (818) 827-4706

## Request of information on
# PREVIOUS Authorization Request

**02/12/2019**

**Patient:**  Vicki COLLIER
**Claim No.:**  17G44F696159

**Request authorization for Test:**  MRI lumbar spine without contrast.

Was made on date _02/01/2019_, since then we have found no response to our request.  Once again we are requesting a response to our request for the above treatments.

_Pursuant to Labor Code section 4610(h) the UR process is to be completed within 5 days...if the insurance carrier needs additional time to complete the UR, a maximum of 14 days are allowed)...In NO EVENT can the UR process take longer than 21 days to complete and issue a 'modification, delay or denial' of the requested treatment, OR the treatment is presumed to be "approved". The Claims Adjuster's cannot 'deny' a requested treatment; they can only approve, or refer to UR for review, within the guidelines as provided in the rules. The initial answer to the PTP must be done within 72 hours with the hard copy to follow. UR is there to expedite the injured worker receiving appropriate medically necessary treatment._

**Dr. Kohan  has requested treatment providing his PR-2 / Narrative report in validating the need for the above treatment.  Included were diagnostic studies if available to serve as additional evidence for authorization. A timely response to this request would be greatly appreciated.**

### All utilization review & claims examiner responses
### must be returned to dedicated fax line:
### Fax #: (818) 827-4706  Attn: UR Dept
### Email: UR@Synapsedoctor.com

COLLIER APL 0292

**LIB000619**

## Edwin Haronian, M.D.
\* 5651 Sepulveda Blvd.# 201  Sherman Oaks, CA 91411 \*

# Authorization Request

**Today's Date: 09/19/2018**
**Our Chart No.** 20050164
**Patient Name:**  Vicki  COLLIER
**DOB:** ████████████
**Claim #:** 17G44F696159
**Claim #:** Unassigned
**Request from office Visit date:** 09 05, 2018

CCMSI Irvine
P.O.  Box 53550
Irvine, CA 92619

You can contact us by phone, fax or email

## \*Peer to Peer Direct line only: 818-906-4658
**\*Phone # : (818) 788-2400 Ext 606**
**\*Fax: (818) 827-4706**
**\*Email: UR@synapsedoctor.com**

Thank you.
Betty Gonzalez

Labor Code Section 4610, section (0) states that "no person other than a licensed physician.., may modify, delay or deny request for authorization of medical treatment. Labor Code Section 4610 section (g) states the time frame for UR. (1) Prospective or concurrent decisions shall be made in a timely fashion that is appropriate for the nature of the employee's condition, not to exceed five working days from the receipt of the information reasonably necessary to make the determination, but in no event more than 14 days from the date of the medical treatment recommendation by the physician. In cases where the review is retrospective, the decision shall be communicated to the individual who received services, or to the individual's designee, within 30 days of receipt of information that is reasonably necessary to make this determination. All of the denial or medication procedures contained in Labor Code section 4610 (g) (2) and (3) are mandatory, and if the statutory requirements are not met, the utilization review report is not admissible. The only other procedure for disputing the treatment is a QME, pursuant to Labor Code section 4062.

## Proof of Service State of California, County of Los Angeles

I am a resident of the county of Los Angeles; I am over the age of eighteen years and not a party to the within entitled action.  My  business address is: <u>5651 Sepulveda Blvd. Suite 201 Sherman Oaks, CA 91411 or  724 Corporate Center Drive. 2nd Floor, Pomona, CA 91768</u>

On this date  09/19/2018 I served <u>Request for Authorization</u> to the above Insurance Co.  CCMSI Irvine  P.O. Box 53550  Irvine, CA 92619, by transmitting via US Postal Services between the hours of 8:00am and 5:00pm. I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed in Los Angeles, CA

Executed on <u>09/19/2018</u>  at Sherman Oaks, California. I declare under penalty of perjury that the above is true and correct.

Signature: *Betty Gonzalez*
                Betty Gonzalez

COLLIER APL 0293

**LIB000620**

State of California
Division of Workers' Compensation
**REQUEST FOR AUTHORIZATION**
DWC Form RFA - California Code of Regulations, title 8, section 9785.

| |
|---|
| **This form must accompany the Doctor's First Report of Occupational Injury or Illness, Form DLSR 5021, a Treating Physician's Progress Report, DWC Form PR-2, or narrative report substantiation the requested treatment.** |
| [ ] New Request [ ] Resubmission - Change in Material Facts<br>[ ] Expedite Review: Check box if employee faces an imminent and serious threat this or her health<br>[ ] Check box if request is a written confirmation of prior oral request. |

**Employee Information**

| | |
|---|---|
| Employee Name (Last, First, Middle): COLLIER,Vicki | |
| Date of Injury (MM/DD/YYYY):  ;CT:7/13/2013-7/24/2017 | Date of Birth(MM/DD/YYYY): ▇▇▇▇▇ |
| Claim Number:  17G44F696159;Unassigned | Employer: Automobile Club |

**Provider Information**

| | | |
|---|---|---|
| Provider Name:Edwin Haronian, M.D. | | |
| Peer to Peer Direct line: 818-906-4658 | Contact Name: | |
| Address: 5651 Sepulveda Blvd.# 201 | City: Sherman Oaks | State: CA |
| Zip Code: 91411 | Phone: 818-616-1666 | Fax Number: 818-827-4706 |
| Provider Specialty: Orthopedic Surgery | NPI Number: 1063480192 | |

**Claims Administrator Information**

| | | |
|---|---|---|
| Claims Administrator Name: CCMSI Irvine | Contact Name:Mendoza, Miguel | |
| Address: P.O.  Box 53550 | City: Irvine | State: CA |
| Zip Code: 92619 | Phone:949-474-6500 | Fax Number: 217-444-2867 |
| E-mail Address: | | |

**Requested Treatment (see instruction for guidance; attached additional pates if necessary**

Either state the requested treatment in the below space or indicate the specific page number(s) of the accompanying medical report on which the request treatment can be found. Up to five (5) procedures may be entered; attached additional request on a separate sheet.

| | |
|---|---|
| Diagnosis | M50.00 Cervical Radiculopathy<br>M54.17 Radiculopathy, lumbosacral region<br>M75.40 Impingement syndrome, shoulder<br>M70.20 Olecranon bursitis, elbow<br>M77.20 Periarthritis, unspecified wrist |
| ICD-Code | |
| Procedure Requested | **Request authorization for Test:** EMG: of bilateral lower extremties; bilateral upper extremties. **Physio-modalities:** Physical Therapy 3 times a week for 4 weeks to cervical spine to lumbar spine to both  shoulder to both  elbow to both  wrist to both hand. |
| CPT/HCPCS Code | |
| Other Information: (Frequency, Duration, Quantity, Facility, etc.) | |

| | |
|---|---|
| Treating Physician Signature: | Date:09/19/2018 |

**Claims Administrator Response**

| |
|---|
| [ ] Approved   [ ] Denied or Modified (see separate decision letter [ ] Delay (See separate notification of delay)<br>[ ] Requested treatment has been previously denied  [ ] Liability for treatment is disputed |

| | | |
|---|---|---|
| Authorization Number (if assigned): | Date: | |
| Authorized Agent Name: | Signature: | |
| Phone: | Fax Number: | E-mail Address: |
| Comments: | | |

DWC Form RFA (Effective 2/2014)

COLLIER APL 0294

LIB000621

CCMSI Irvine
P.O. Box 53550
Irvine, CA 92619
Attn: Miguel Mendoza

| Patient Name | : | Vicki Collier |
|---|---|---|
| Date of Service | : | September 5, 2018 |
| Claim # | : | 17G44F696159 |
| Employer | : | Automobile Club |
| Date of Birth | : | █████████ |
| Date of Injury | : | CT:7/13/2013-7/24/2017 |
| File # | : | 20050164 |

**INITIAL ORTHOPEDIC EVALUATION AND REQUEST FOR AUTHORIZATION OF A PRIMARY TREATING PHYSICIAN**

The above captioned patient, a 55-year-old right-hand dominant female, presented in my Sherman Oaks office, located at 5651 Sepulveda Boulevard, Suite 201, Sherman Oaks, CA 91411, on September 5, 2018, for an orthopedic examination.

The following is a presentation of my initial evaluation and over all recommendations. The history was obtained by my medical historian, Mr. Antonio Salazar. I then reviewed the history in detail with patient.

**HISTORY OF INJURY:**
Ms. Collier stated that she sustained cumulative trauma injuries to her neck, shoulders, bilateral upper extremities, forearms, elbows, hands, wrists, back, head, lower extremities and internal (hemorrhoids) during the course of her employment as an insurance agent for The Auto Club.

She stated that since late in 2016 she developed the gradual onset of pain in her neck, shoulders, bilateral upper extremities, forearms, elbows, hands, wrists, back, head and lower extremities which she attributed to performing her job duties which for the most part entailed working at an ergonomically incorrect work station. She stated that she also developed hemorrhoids due to prolonged sitting at work on a chair that did not have padding.

She indicated that she initially went to Dr. Tun at Kaiser Permanente who administered cortisone injections to her shoulders. She underwent x-rays and MRI studies of her right shoulder. On July 25, 2017 Dr. Tun performed right shoulder surgery after which she received a course of physical therapy. She remained on temporary total disability through November 21, 2017 at without restrictions. Through Kaiser she also received an epidural injection to her back and Botox injections to her shoulders and neck. She also received acupuncture treatment. She also underwent a CT scan of her neck and head and lower extremities. Dr. Tan placed her on temporary total disability since May 25, 2018. She stated that she has not received other treatment.

She presents to my office today for a comprehensive orthopedic evaluation.

**JOB DESCRIPTION:**
The patient began employment as an insurance agent for The Auto Club, since June of 2013.

She worked 50-60 hours per week. Her job duties at the time of injury included: selling auto, home and other vehicle insurance policies and AAA memberships, processing applications, operating a computer, typing, assisting customers, over-the-phone and face-to-face, filing, pulling files.

COLLIER APL 0295

**LIB000622**

The precise activities required entailed prolonged standing and walking, as well as continuous fine maneuvering of her hands and fingers, and repetitive bending, stooping, squatting, twisting, turning, forceful pulling and pushing, forceful gripping and grasping, lifting and carrying 5 pounds, reaching to all levels..

**CURRENT WORK STATUS:**
The patient is currently not working.  She last worked on May 22, 2018.

**EMPLOYMENT HISTORY:**
The patient states that prior to working for the employer at the time of the injury, she was an independent contractor as an insurance agent for six years.

**PRESENT COMPLAINTS:**
Head:
She complains of intermittent headaches.

Neck:
The patient presents today with complaints of constant pain in the neck with pain, numbness and tingling radiating into her arms. She has stiffness in the neck and her pain is aggravated when she tilts her head up and down or moves her head from side to side.  Her pain increases with prolonged sitting, standing, walking, and with bending of her neck and turning of her head.  She has difficulty sleeping and awakens with pain and discomfort.  Her pain level varies throughout the day depending on activities.  Pain medication provide her pain improvement, but she remains symptomatic.

Bilateral Shoulders:
The patient has complaints of frequent pain in her shoulders. She complains of stiffness to her shoulders. Her pain increases with reaching, pushing, pulling, and with any lifting.  Lifting her upper extremity above shoulder level also increases her pain.  Her pain level varies throughout the day depending on activities.  She has difficulty sleeping and awakens with pain and discomfort.  Rest and pain medication provide her pain improvement, but she remains symptomatic.

Bilateral Elbows:
The patient has complaints of frequent bilateral elbows. Her pain increases with gripping, grasping, flexing/extending, rotating, and repetitive hand and finger movements.  She has difficulty sleeping and awakens with pain and discomfort. Her pain level varies throughout the day depending on activities. Physical therapy, acupuncture treatments, and pain medication provide her pain improvement, but she remains symptomatic.

Bilateral Hands/Wrists:
The patient has complaints of intermittent bilateral wrists/hands pain, at times becoming achy and sharp at times. She has numbness and tingling in her hands as well as weakness that causes her to drop objects. Her pain increases with gripping, grasping, flexing/extending, rotating, and repetitive hand and finger movements.  She has difficulty sleeping and awakens with pain and discomfort. Her pain level varies throughout the day depending on activities.  Physical therapy, acupuncture treatments, and pain medication provide her pain improvement, but she remains symptomatic.

Middle and Lower Back:
The patient has complaints of frequent middle and lower back with pain, tingling and numbness radiating into her feet and legs.  Her pain increases with prolonged standing, walking, and sitting.  She has difficulty bending, twisting, and turning.  She also has difficulty sleeping and awakens with pain and discomfort.  She complains of weakness and giving way of her legs.  Her pain level varies throughout the day depending on activities.  She does not have bowel or bladder dysfunction.  She exercises and uses ice packs to relieve some of her pain.

Hemorrhoids:

COLLIER APL 0296

**LIB000623**

The patient stated that since she stopped working on May 22, 2018, the hemorrhoids symptoms resolved.

**MEDICAL HISTORY:**
The patient has no known history of heart disease, high blood pressure, kidney disease, diabetes, tuberculosis, cancer, ulcers, pneumonia, lung disease, eye problems, skin problems, asthma, hepatitis, liver disease, thyroid disease, gout, rheumatoid arthritis, Lupus, or arthritis.

**SURGERIES:**
The patient underwent an umbilical hernia repair and right shoulder scope.

**INJURIES:**
The patient denies any previous accidents or injuries.

**MEDICATIONS:**
The patient is currently not taking any medications.

**ALLERGIES:**
The patient has no known allergies to any medications.

**SOCIAL HISTORY:**
The patient is single and has three children.  She does not drink and does not smoke.

**FAMILY HISTORY:**
Noncontributory.

**HOBBIES:**
The patient does not have any hobbies at this time.

**ACTIVITIES OF DAILY LIVING:**
The patient states prior to the above noted injury she had no disabling conditions and could perform all activities of daily living without any difficulties.

The patient states since the injury noted above she has difficulty cooking, washing her hair, kneeling, doing strenuous house chores, vacuuming, mopping, lifting and carrying baskets of laundry as well as grocery bags, pushing a shopping carts and prolonged sitting.

**PHYSICAL EXAMINATION:**
HEIGHT:     5' 6"
WEIGHT:     125lbs

**Cervical Spine Examination:**
On visual inspection, there is no erythema, edema, swelling or deformity about the cervical spine or upper back area.  The patient's head is held in a normal position.  No torticollis was noted.

There is no spasm and tenderness over the paravertebral musculature, upper trapezium, interscapular area, cervical spinous processes, or occiput.

| Cervical Range of Motion | Patient ROM | Normal |
|---|---|---|
| Forward Flex | 50° | 50° |
| Extension | 60° | 60° |
| Lateral Flex (rt.) | 45° | 45° |

COLLIER APL 0297

**LIB000624**

| Lateral Flex (lt.) | | | 45° | 45° |
|---|---|---|---|---|
| Rotation (rt.) | | | 80° | 80° |
| Rotation (lt.) | | | 80° | 80° |

Range of motion was accomplished without discomfort and spasm.

Reflexes and special tests are as follows:

| Reflexes and test | Right | Left | Normal |
|---|---|---|---|
| Tricep reflex | 2+ | 2+ | 2+ |
| Biceps reflex | 2+ | 2+ | 2+ |
| Brachioradialis reflex | 2+ | 2+ | 2+ |
| Tinel Signs (wrists) | Negative | Negative | Negative |
| Tinel signs (elbow) | Negative | Negative | Negative |
| Adson Test | Negative | Negative | Negative |

Motor power testing for the cervical spine:

| Muscle Group | Right | Left | Normal |
|---|---|---|---|
| Deltoid (C5) | **4** | **4** | 5 |
| Biceps (C6) | 5 | 5 | 5 |
| Triceps (C7) | 5 | 5 | 5 |
| Wrists Extensors (C6) | 5 | 5 | 5 |
| Wrist Flexors (C7) | 5 | 5 | 5 |
| Finger Flexors (C8) | 5 | 5 | 5 |
| Finger Abduction (T1) | 5 | 5 | 5 |

Sensory Testing:

| Dermatome | Right | Left | Normal |
|---|---|---|---|
| C5 (Deltoid) | **Decreased with pain** | **Decreased with pain (greater)** | Intact |
| C6 (Lat Forearm, Thumb, Index) | Intact | Intact | Intact |
| C7 (Middle Finger) | Intact | Intact | Intact |
| C8 (Little finger, Med. Forearm) | Intact | Intact | Intact |
| T1 (Medial Arm) | Intact | Intact | Intact |
| T2 (Medial Arm) | Intact | Intact | Intact |

COLLIER APL 0298

LIB000625

**JAMAR Grip Testing**          <u>Right</u>                    <u>Left</u>

                                28/22/20                  22/20/20

**Shoulder Examination:**

| Shoulder Range of Motion | Right | Left | Normal |
|---|---|---|---|
| Flexion | --- | --- | 180° |
| Abduction | --- | --- | 180° |
| Extension | --- | --- | 50° |
| Ext Rotation | --- | --- | 90° |
| Ext Internal Rotation | --- | --- | 90° |
| Adduction | --- | --- | 50° |

# Electronic inclinometers were used for the formal ranges of motion studies. Please see attached which was used for this evaluation.

No tenderness was noted at the anterior deltoid, supraspinatus insertion or biceps tendon. **Tenderness was noted at the acromioclavicular joint bilaterally.**

**Impingement and Hawkins signs were positive on the right and left.** Jobe's sign was negative on the right and left.

Apprehension test and re-location test were negative. No sulcus was present. Yergason test was negative bilaterally. No deformity or incision was noted around the shoulder area. **An arthroscopy incision was noted over the right shoulder.**

**Elbow Examination:**

| Elbow Range of Motion | Right | Left | Normal |
|---|---|---|---|
| Flexion | 140° | 140° | 140° |
| Extension | 0° | 0° | 0° |
| Pronation | 80° | 80° | 80° |
| Supination | 80° | 80° | 80° |

No tenderness was noted over the lateral (tennis) or medial (Golfers) epicondyles. Resisted wrist extension did not elicit tenderness over the lateral epicondyle. The lateral pivot shift test did not reproduce instability. **Olecranon bursitis was noted bilaterally.**

**Wrist & Hands Examination:**

COLLIER APL 0299

LIB000626

| Wrist Range of Motion | Right | Left | Normal |
|---|---|---|---|
| Flexion | **55°** | **55°** | 60° |
| Extension | **55°** | **55°** | 60° |
| Ulnar Deviation | **25°** | **25°** | 30° |
| Radial Deviation | **20°** | **20°** | 20° |

No mechanical block was noted to range of motion. **There was tenderness over the distal radius bilaterally** not the carpus. No tenderness was noted at the anatomic snuffbox or the TFCC. Finkelstein test was normal. Tinel testing was negative. **Phalen and reverse Phalen (praying position) testing were positive bilaterally. Two-point discrimination was greater than 6 mm bilaterally.**

No atrophy or tenderness was noted in the thenar, hypothenar, and intrinsic hand musculatures. The radial pulses are present and equal bilaterally.

**Finger Range of Motion is as Follows:**

| | MCP Joint | | PIP Joint | | DIP Joint | |
|---|---|---|---|---|---|---|
| | Right | Left | Right | Left | Right | Left |
| Thumb | 60 | 60 | 80 | 80 | N/A | N/A |
| | 0 | 0 | 10 | 10 | N/A | N/A |
| Index | 90 | 90 | 100 | 100 | 70 | 70 |
| | 0 | 0 | 0 | 0 | 0 | 0 |
| Middle | 90 | 90 | 100 | 100 | 70 | 70 |
| | 0 | 0 | 0 | 0 | 0 | 0 |
| Ring | 90 | 90 | 100 | 100 | 70 | 70 |
| | 0 | 0 | 0 | 0 | 0 | 0 |
| Little | 90 | 90 | 100 | 100 | 70 | 70 |
| | 0 | 0 | 0 | 0 | 0 | 0 |

All normal values in the above table are 0° for extension and 90° for extension. No triggering was noted in any digit. Range of motion was painless without mechanical block. The thumbs bilaterally (adduction) reach the head of the 5th metacarpal. Thumb abduction is 90° bilaterally.

**Lumbar Examination:**
Patient has a normal gait and is ambulating with no assistive device. On visual inspection, there is no deformity, defect, or swelling about the dorsolumbar spine. No scar or incision was noted. There is no evidence of deformity such as scoliosis or kyphosis.

**There is tenderness and spasm in the paravertebral muscle,** but not the spinous processes and the flank. The sciatic notch area was not tender. **The patient toe and heel walks with pain. The patient squats with pain.**

COLLIER APL 0300

**LIB000627**

| Lumbar Range of Motion | ROM | Normal | Spasm | Pain |
|---|---|---|---|---|
| Forward Flex | **55°** | 60° finger to ankle | **Present** | **Present** |
| Extension | **20°** | 25° | **Present** | **Present** |
| Lateral Flex (rt.) | **20°** | 25° | **Present** | **Present** |
| Lateral Flex (lt.) | **20°** | 25° | **Present** | **Present** |
| Rotation (rt.) | **20°** | 25° | **Present** | **Present** |
| Rotation (lt.) | **20°** | 25° | **Present** | **Present** |

**Supine straight leg raising:  Right 40, Left 40 with S1 pain bilaterally.**  Sitting straight leg rising was similar. Lasegue test was negative bilaterally.

| Motor Function | Right | Left | Normal |
|---|---|---|---|
| Ankle Dorsiflex L4 | 5 | 5 | 5 |
| Great Toe Ext L5 | 5 | 5 | 5 |
| Ankle Planar Flex S1 | 5 | 5 | 5 |
| Knee Ext L4, L5 | 5 | 5 | 5 |
| Knee Flexion | 5 | 5 | 5 |
| Hip Abductors | 5 | 5 | 5 |
| Hip Adductors | 5 | 5 | 5 |

Deep tendon reflexes are equal at the knee and **reduced at the ankle joints bilaterally.**  Palpation over the sacroiliac joint did not elicit tenderness.  The FABER (Patrick's) test was negative bilaterally.

| Sensory Function | Right | Left | Normal |
|---|---|---|---|
| L3 Anterior Thigh | Intact | Intact | Intact |
| L4 Medial Leg, Inner Foot | Intact | Intact | Intact |
| L5 Lateral Leg, Mid Foot | Intact | Intact | Intact |
| S1 Post. Leg, Outer Foot | **Decreased with pain** | **Decreased with pain** | Intact |

**Hip Examination**:

| Hip Range of Motion | Right | Left | Normal |
|---|---|---|---|
| Flexion | 100° | 100° | 100° |
| Extension | 0° | 0° | 0° |

COLLIER APL 0301

LIB000628

| Abduction | 25° | 25° | 25° |
|---|---|---|---|
| Adduction | 15° | 15° | 15° |
| Ext Rotation | 35° | 35° | 35° |
| Internal Rotation | 20° | 20° | 20° |

Range of motion was accomplished with no pain or mechanical block. Strength of hips were normal. There was no pain with flexion, adduction, internal rotation, or external rotation. No tenderness was noted at the ASIS, rectus femoris, or greater trochanter. Trendeleberg sign and Ober test were negative. There was no iliopsoas or iliotibial band clicking.

**REVIEW OF RADIOGRAPHIC EXAMINATION:**
Three views of the cervical spine were obtained. AP and open-mouth views reveal no fractures, dislocations, or other abnormalities. The lateral view shows straightening of the patient's cervical lordotic curvature. There was loss of disc height noted at the C5-C6 level. Spondylotic changes are noted throughout the cervical spine with no evidence of spondylolysis, spondylolisthesis, fracture, dislocation, or other abnormality.

Two views of the right shoulder were obtained with a slightly downsloping acromion.

Two views of the left shoulder were obtained with subacromial hook noted. There was no evidence of fractures, dislocations, or other abnormality on the shoulder studies.

Four views of the lumbar spine were obtained. AP view showed no fractures, dislocations, or other abnormalities. The lateral view showed loss of disc height at the L5-S1 level. Spondylotic changes were noted with no evidence of spondylolysis, spondylolisthesis, fracture, dislocation, or other abnormality.

**REVIEW OF MEDICAL RECORDS:**
Range of motion studies were performed in the office today using double electronic inclinometry and have been reviewed. The DWC-1 is present and has been reviewed.

**DIAGNOSES:**
Cervical radiculopathy.
Lumbosacral radiculopathy.
Bilateral shoulder impingement.
Bilateral elbow tendinitis/bursitis.
Bilateral wrist tendinitis/bursitis.

**DISCUSSION:**
The patient is a 55-year-old female who sustained industrial injury as a result of cumulative trauma from July 13, 2013, to July 24, 2017, working as an insurance agent for the Auto Club. The patient states that she developed pain to the neck, back, bilateral shoulders, elbows, wrists, and hands due to the work duties listed above. In 2016, she developed pain and went to her private physician. She received injection to the shoulders, radiographs, MRI studies, and ultimately right shoulder arthroscopy. Epidural injections were provided to the back, Botox injections to the shoulder and neck. She received acupuncture treatment, CT studies. She is presenting today for a comprehensive orthopedic evaluation and for our office to assume the role of the primary treating physician.

The patient is presenting complaining of neck pain which radiates into the upper extremities with pain, paresthesia, and numbness. She is complaining of bilateral shoulder pain with decreased range of motion and strength but she indicates that she did get some benefit from the right shoulder arthroscopy but that she is experiencing recurrence of pain now. She is complaining of elbow tenderness bilaterally. She is

COLLIER APL 0302

LIB000629

also complaining of bilateral wrist pain with numbness and tingling in the hands and decreased grip strength. She is complaining of mild back pain but sensation loss in the lower extremities and bottom of the feet bilaterally.

Physical examination shows spasm, tenderness, and guarding in the paravertebral musculature of the cervical and lumbar spine with loss of range of motion in both. Decreased sensation is noted bilaterally in the C5 and S1 dermatomes. Impingement and Hawkins signs are noted of the shoulders bilaterally with range of motion in flexion and abduction to approximately 120 degrees. Healed incisions are noted at the site of the previous surgical intervention for the right shoulder. Tenderness is noted at the olecranon points bilaterally. The bilateral wrists have positive Phalen and reverse Phalen signs with decreased grip strength, distal radial tenderness, and decreased two-point discrimination noted over the hands.

All conditions, risks, benefits, and alternatives were discussed with the patient and the patient verbalized understanding. We request that all prior medical records with diagnostic studies be forwarded to our attention so that we may avoid duplication in testing and treatment. The patient indicates that imaging has been conducted for cervical spine and it is unclear whether this was CT or MRI study.

***Today, we are requesting authorization for neurodiagnostics of the upper, and lower extremities.*** The patient is presenting with a mixed picture of radiculopathy possibly superimposed on peripheral nerve entrapment or polyneuropathy in the lower extremity. Neurodiagnostics will be needed to clarify the patient's presentation as well as to provide appropriate AMA ratings at the time of the maximum medical improvement.

***We are also requesting twelve sessions of physical therapy for the neck, back, bilateral shoulders, wrists, and hands.*** The patient does not have a home exercise program that she is currently pursuing and needs expert guidance in initiating the process of strengthening and improving range of motion as well as instruction in a home exercise regimen in order to provide her with improvement.

***We are requesting gabapentin at 300 mg strength two tablets together before bed.*** The patient has utilized this in the past with good benefit in terms of radicular symptomatology, and it is our opinion that the patient should be provided with this intervention.

Other medications provided today will include antiinflammatory, and anti-gastritis medications, as well as limited supply of topical lotion for local relief.

In our opinion, she may return to the workplace, but should not lift, push, or pull more than 10 pounds. She should not perform bending, twisting activities, or place the spine in unusual or awkward positions. She should not perform repetitive hand motions, pinching, or grasping bilaterally.

She will return to my attention in four weeks at which time we will make further recommendations.

I hope the above information has been helpful to you and thank you for referring this patient to my office for orthopedic examination.

*We request to be added to the Address List for Services of all Notices of Conferences, Mandatory Settlement Conferences and Hearings before the Worker's Compensation Appeals Board. We are advising the Worker's Compensation appeals Board that we may not appear at the hearings or Mandatory Settlement Conferences for the case in chief. Therefore, in accordance with Procedures set forth in Policy and Procedural Manual index No. 60610, effective February 1, 1995, we request that defendants, with full authority to resolve our lien, telephone our office and ask to speak with our "workers' compensation lien negotiator".*

*Authorizations for transportation, medication, physiotherapy, rehabilitation, a conditioning program and the above stated recommendations are requested based upon medically reasonable treatment requirements. This is per labor code 4600 and Title 8, Section 9792.6, C.C.R. and Rule 9785(b). Furthermore, we are requesting that all the medical records be forwarded to our office to avoid repetition in testing and treatment. Please provide us with information regarding the status of the case*

COLLIER APL 0303

LIB000630