Zoya Yarnykh, State Bar No. 258062
 E-mail: zyarnykh@kantorlaw.net
KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, CA 94501
Telephone: (510) 992-6130
Facsimile: (510) 280-7564

Glenn R. Kantor, State Bar No. 122643
 E-mail: gkantor@kantorlaw.net
KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886 2525
Facsimile: (818) 350 6272

Attorneys for Plaintiff
VICKI COLLIER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| VICKI COLLIER,<br><br>             Plaintiff,<br><br>     vs.<br><br>LINCOLN LIFE ASSURANCE COMPANY OF BOSTON,<br><br>             Defendant. | CASE NO. 8:20-cv-00839-JVS-KES<br><br>**PLAINTIFF'S OPENING TRIAL BRIEF**<br><br>**Trial Date: February 22, 2021**<br>**Time: 3:00PM**<br>**Hon. James V. Selna** |

PLAINTIFF'S TRIAL OPENING BRIEF UNDER FRCP 52

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………....i

I.    INTRODUCTION ……………………………………………………………1

II.   STATEMENT OF ISSUES TO BE DECIDED................................................2

III.  APPLICABLE LEGAL STANDARD...............................................................2

IV.   STATEMENT OF FACTS.................................................................................3

       A.    Ms. Collier's Own Occupation. ...........................................................3

       B.    The Medical Records Show Ms. Collier Suffers from Disabling Impairments................................................................................................4

       C.    Ms. Collier's Claim for LTD Benefits. ................................................6

V.    ARGUMENT .....................................................................................................7

       A.    PLAINTIFF HAS ESTABLISHED HER ENTITLEMENT TO LTD BENEFITS BY SHOWING THAT HER INJURIES ARE DISABLING7

              1.    Plaintiff's Doctors and Their Treatment Records Support Plaintiff's Disability.............................................................................7

                    i.    Edwin Haronian, M.D. .............................................8

                    ii.   Jonathan Kohan, M.D................................................10

                    iii.  Kaiser Permanente....................................................11

              2.    A Functional Capacity Evaluation Supports Disability...............11

              3.    Unrefuted Corroborating Evidence Supports Disability. .............12

              4.    Lincoln's Evidence Fails Overcome the Evidence Supporting Plaintiff's Claim...........................................................................14

                    A.    Peer Review by Akhil Chhatre, M.D. ......................14

                    B.    IME by Katrina Vlachos, M.D................................17

              5.    Ms. Collier is Entitled to Reinstatement of Benefits Through the Any Occupation Standard of Disability........................................19

VI.   CONCLUSION ................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Liberty Mut. Long Term Disability Plan*,
116 F.Supp.3d 1228 (W.D. Wash. 2015) .................................................................3

*Benecke v. Barnhart*,
379 F.3d 587 (9th Cir. 2004) ...............................................................................20

*Caplan v. CNA Fin. Corp.*,
544 F.Supp.2d 984 (N.D. Cal. 2008) ...................................................................12

*Cruz-Baca v. Edison International Long Term Disability Plan*,
708 F.Appx 313 (9th Cir. 2017) ..........................................................................16

*Demer v. IBM Corp. LTD Plan*,
835 F.3d 893 ...............................................................................................12, 16, 17

*DiPietro v. Prudential Ins. Co. of Am.*,
2004 WL 626818 (N.D. Ill. March 26, 2004).......................................................13

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101, 109 S. Ct. 948 (1989).......................................................................3

*Fleming v. Unum Life Ins. Co. of Am.*,
2018 WL 6133859 (C.D. Cal. Nov. 20, 2018) ........................................................9

*Godmar v. Hewlett–Packard Co.*,
631 F.App'x 397 (6th Cir. 2015) ...........................................................................16

*Groch v. Dearborn Nat'l Life Ins. Co.*,
2020 WL 6374619 (C.D. Cal. Oct. 29, 2020).......................................................20

*Holmstrom v. Metro. Life Ins. Co.*,
615 F.3d 758 (7th Cir. 2010) ...........................................................................12, 13

*Kunin v. Benefit Tr. Life Ins. Co.*,
910 F.2d 534 (9th Cir. 1990) ..................................................................................9

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

*Lavino v. Metro. Life Ins. Co.*,
  779 F.Supp.2d 1095 (C.D. Cal. 2011) ...............................................................17, 21

*Lavino v. Metro. Life Ins. Co.*,
  2010 WL 234817 (C.D. Cal. Jan. 13, 2010) ........................................................8, 17

*Marcus v. Califano*,
  615 F.2d 23 (2d Cir. 1979) .......................................................................................17

*McDonald v. W.-S. Life Ins. Co.*,
  347 F.3d 161 (6th Cir. 2003) ....................................................................................13

*Montour v. Hartford Life & Acc. Ins. Co.*,
  588 F.3d 623 (9th Cir. 2009) ................................................................................9, 16

*Mueller v. CNA Group Life Assur. Co.*, No. C,
  2004 WL 1161173 (N.D. Cal. May 24, 2004) .........................................................13

*Nagy v. Group Long Term Disability Plan for Employees of Oracle America, Inc.*,
  183 F.Supp.3d 1015 (N.D. Cal. 2016) .......................................................................3

*Olis v. Unum Life Ins. Co. of Am.*,
  2020 WL 4380948 (C.D. Cal. July 27, 2020) .........................................................8, 9

*Oliver v. Coca Cola Company*,
  497 F.3d 1181 (11th Cir. 2007) ................................................................................19

*Paese v. Hartford Life and Acc. Ins. Co.*,
  449 F.3d 435 (2nd Cir. 2006) ...................................................................................19

*Palmer v. University Medical Group*,
  994 F.Supp. 1221 *(D. Or. 1998)* .............................................................................17

*Reetz v. Hartford Life & Accident Ins. Co.*,
  294 F.Supp.3d 1068 (W.D. Wash. 2018) ..................................................................19

*Rollins v. Massanari*,
  261 F.3d 853 (9th Cir. 2001) ....................................................................................16

*Saffon v. Wells Fargo & Co. Long Term Disability Plan*,
  522 F.3d 863 (9th Cir. 2008) ......................................................................................8

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

*Salomaa v. Honda Long Term Disability Plan*,
642 F.3d 666 (9th Cir. 2011) ...................................................................................7, 8

*Sangha v. Cigna Life Ins. Co. of New York*,
314 F.Supp.3d 1027 (N.D. Cal. 2018) ......................................................................12

*Shaikh v. Aetna Life Ins. Co.*,
445 F.Supp.3d 1 (N.D. Cal. 2020) .........................................................................7, 9

*Smith v. Metro. Life Ins. Co.*,
274 F.App'x 251 (4th Cir. 2008) ...............................................................................19

*Tam v. First Unum Life Ins. Co.*,
2020 WL 5904804 (C.D. Cal. Sept. 30, 2020) ........................................................20

*Utter v. UNUM Life Ins. Co. of America*,
404 F.Supp.2d 1204 (C.D. Cal. 2005) ................................................................10, 16

*Wright v. Raytheon Co. Short Term Disability Plan*,
2008 WL 4386728 (D. Ariz. Sept. 17, 2008) ...........................................................19

## Rules

FRCP 52.......................................................................................................................21, 1

## Regulations

29 C.F.R. § 2560.503-1(h)(3)(iii) ..................................................................................9

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

## I.   INTRODUCTION

At the age of 54, Plaintiff Vicki Collier had been working as a successful professional in the insurance industry for over 10 years before she was forced to take medical leave due to worsening cervical radiculopathy, lumbosacral radiculopathy, bilateral shoulder impingement, bilateral elbow tendinitis/bursitis, bilateral wrist tendinitis/bursitis, and migraine headaches (LIB 00629)[1].

Prior to her becoming disabled, Ms. Collier was an insurance agent for the Auto Club of Southern California ("AAA"). During her five years of successful employment at AAA, Ms. Collier's work ethic earned her awards as a top performer at the office, as well as excellent year-end performance reviews. She enjoyed her career and her life with three adult children and a partner. However, her ability to both enjoy her life and to perform her work responsibilities began to change in 2016 when she began to suffer significant pain, which resulted in her having to undergo right shoulder surgery in July 2017. Ms. Collier demonstrated both her work ethic and her enjoyment of her work via her attempt to return to work in November 2017 (LIB 622-632). Unfortunately, despite her heroic attempts, she was ultimately unable to sustain her job duties due to progressive worsening of her pain even after the surgery. Ms. Collier again stopped working on May 14, 2018. Since that date, she has undergone a variety of treatments: prescribed pharmaceuticals including narcotics such as Norco, steroids such as Kenalog, gabapentin, and received Botox injections for migraines, cortisone injections in both shoulders, and physical therapy in what turned out to be unsuccessful attempts to reduce her pain and slow the progression of her symptoms. Despite all these medical interventions, Ms. Collier's condition has not improved.

At the time her most recent medical leave commenced, Ms. Collier was a participant in the employee benefits plan sponsored by AAA and insured and administered by Liberty Life Assurance Company of Boston (now Lincoln Life

[1] The term "LIB" refers to the numbering of the Administrative Record by Defendant Lincoln.

PLAINTIFF'S TRIAL OPENING BRIEF UNDER FRCP 52

1

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Assurance Company of Boston, hereinafter referred to as "Lincoln", or collectively "the Plan"), a health and welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). The Plan's long-term disability ("LTD") benefits are both insured and administered by Defendant Lincoln. Ms. Collier submitted a claim to Lincoln for LTD benefits, which Lincoln denied initially and on appeal, despite extensive supporting documentation including medical records, supporting letters from treating providers, a Functional Capacity Evaluation ("FCE"), and numerous supporting third-party declarations. As shown below, Ms. Collier has established her entitlement to LTD benefits through the "any occupation" standard of disability.

## II.     STATEMENT OF ISSUES TO BE DECIDED

The issue before the Court is whether Ms. Collier meets the following definition of disability:

**Disability** or **Disabled** means:

i. that during the Elimination Period and the next 12 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way; and

ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the Covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity.

LIB 1225.

## III.     APPLICABLE LEGAL STANDARD

The parties agree that the Court will review Lincoln's determination of Plaintiff's LTD claim *de novo*. *De novo* review means that the Court will not give any deference to Lincoln's adverse decision. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S. Ct. 948 (1989). Rather, the Court will determine in the

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

first instance if Ms. Collier has adequately established that she is disabled under the terms of the Plan by meeting her burden of showing that her injury or sickness is disabling. *Nagy v. Group Long Term Disability Plan for Employees of Oracle America, Inc.*, 183 F.Supp.3d 1015, 1027 (N.D. Cal. 2016). When applying the *de novo* standard in an ERISA benefits case, a trial on the administrative record permits the court to make factual findings, evaluate credibility, and weigh evidence. *Anderson v. Liberty Mut. Long Term Disability Plan*, 116 F.Supp.3d 1228, 1231 (W.D. Wash. 2015).

## IV.   STATEMENT OF FACTS

### A.   Ms. Collier's Own Occupation.

Ms. Collier has worked in the insurance industry since 2007. She has worked for Farmers Insurance, Cumbre Insurance, and finally, for AAA (LIB 336-339). Her responsibilities included the following: selling insurance products, including Club memberships; quoting rates; qualifying applicants; inspecting vehicles or property; completing documentation with accepted underwriting criteria; developing sales leads and contacts; providing insurance policy service to members in person, by telephone or through written correspondence; collecting premiums; and compiling and completing documentation for all transactions (LIB 785-787). Ms. Collier's job required sitting, standing, walking, bending, and lifting up to 15 pounds, and as such, was performed at both sedentary and light exertional demand levels (LIB 1155-1157). The nature of Ms. Collier's job as an insurance agent for AAA required constant computer use and required a high level of cognitive skills and abilities to accurately perform her duties (LIB 785-787).

Ms. Collier excelled in her work, as evidenced by multiple performance reviews since she began her employment with AAA in 2013 (LIB 746-796). For example, her 90-day review in 2013 states: "Vicki has immediately proven to be an elite agent and great asset to the Santa Clarita sales team. Vicki is extremely motivated, hard-working, outgoing and sales-oriented which has led to her

immediate success. Vicki's first two months of production exceeded the standards for auto and home production…" (LIB 751). She was also a top producer in 2016 for auto and home insurance sales (LIB 776). Her supervisor noted that she was consistently the top producer in the office. Ms. Collier ranked 33 out of 557 agents (LIB 784).

### B.      The Medical Records Show Ms. Collier Suffers from Disabling Impairments.

Ms. Collier was a very active and physically fit woman most of her life, and was in good health until 2016, at which point she began experiencing neck, back, and bilateral shoulder pain that radiated to both upper and lower extremities. Subsequently, she was diagnosed with cervical radiculopathy, lumbar radiculopathy, bilateral rotator cuff tear, bilateral shoulder impingement syndrome, migraines, bilateral elbow tendinitis, and bilateral wrist tendinitis[2] (LIB 92, 529-530, 1056-1057, 1068, 1091). Each of these conditions is known to produce pain. Shoulder impingement syndrome is a common cause of shoulder pain. It occurs when there is impingement of tendons or bursa in the shoulder from bones of the shoulder. Overhead activity of the shoulder, especially repeated activity, is a risk factor for shoulder impingement syndrome. With impingement syndrome, pain is persistent and affects everyday activities. Motions such as reaching up behind the back or reaching up overhead to put on a coat or blouse, for example, may cause pain. Over time, impingement syndrome can lead to inflammation of the rotator cuff tendons (tendinitis) and bursa (bursitis). If not treated appropriately, the rotator cuff tendons can start to thin and tear (LIB 801).

Ms. Collier was prescribed Norco and gabapentin, received Botox injections to treat her migraines, and cortisone injections in both shoulders (LIB 1054-1059, 1113). When conservative treatment modalities proved unsuccessful in alleviating

---

[2] Plaintiff submitted medical literature with her appeal that describe these conditions and the resulting pain from each diagnosis (LIB 798-841).

her symptoms, she had rotator cuff repair surgery in July of 2017 (LIB 1118-1120). Ms. Collier returned to work in November 2017, but her pain persisted, and she eventually had to stop working on May 14, 2018.

Ms. Collier began treatment at Synapse Medical Group with Drs. Edwin Haronian and Jonathan Kohan in September 2018 in connection with an ongoing Workers' Compensation claim. Dr. Haronian declared Ms. Collier "permanent and stationary" on January 31, 2019 (LIB 523-533), and issued the following restrictions:

- Cervical spine: the patient is precluded from extended upward and extended downward gazing;
- Lumbar spine: the patient is precluded from repetitive bending and twisting of the lumbar spine;
- Bilateral shoulders: the patient is precluded from repetitive activities at or above the shoulder level;
- Bilateral elbows: the patient is precluded from repetitive torqueing;
- Bilateral wrists: the patient is precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching; and
- Avoid lifting more than 10 pounds.

Since reaching the "permanent and stationary" status, Ms. Collier's symptoms of pain persisted. For example, during a visit on May 16, 2019, examination continued to show spasm, tenderness and guarding in the paravertebral musculature of the cervical and lumbar spine. Bilateral shoulders had impingement and Hawkins signs (pain elicited with this maneuver indicates a positive test result for impingement), with range of motion in flexion and abduction to 120 degrees. The range of motion in a healthy shoulder is 180 degrees for abduction and flexion (LIB 526). Bilateral wrists had positive Phalen and reverse Phalen signs (Phalen's maneuver is positive when flexing the wrist to 90 degrees for one minute elicits symptoms in the median nerve distribution; the

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

reverse Phalen's test significantly increases pressure in the carpal tunnel within 10 seconds of the change in wrist posture and the carpal tunnel pressure has the tendency to increase throughout the test's duration), with decreased grip strength, distal radial tenderness, and decreased two-point discrimination over the hands (LIB 555-556).

During an office visit on September 5, 2019, Dr. Haronian documented Ms. Collier's complaint of chronic low back pain with radiation to left lower extremity and postoperative pain in the right shoulder, noting that the severity of the pain dominated virtually every conscious moment producing physical and psychological debilitations (LIB 99-100). Ms. Collier is still treating with Drs. Haronian and Kohan, but her presentation has not changed (LIB 91-92, 214-215).

### C.    Ms. Collier's Claim for LTD Benefits.

Ms. Collier timely submitted her LTD claim for benefits, but Lincoln denied her claim on May 19, 2019 (LIB 894-899). Pursuant to the terms of the Plan, Ms. Collier is entitled to receive LTD benefits after she has been disabled for 182 days (LIB 1221). Ms. Collier's date of disability is May 15, 2018 with an eligible payment start date of November 16, 2018 (LIB 1).

Through counsel, Ms. Collier submitted a timely appeal of the denial and supplemented the appeal with both additional evidence as well as a response by her physician to a single "paper review" by Dr. Akhil Chhatre upon which Lincoln based its denial. On appeal, Lincoln required Ms. Collier to undergo an Independent Medical Evaluation ("IME") (LIB 22-40). Dr. Katrina Vlachos, who conducted the IME (*infra*), opined that Ms. Collier is limited in her ability to sit for up to 30 minutes at a time with a five-minute position break; stand and walk for 30 minutes at a time with a five-minute break; occasional reaching in all planes; and occasional fingering, feeling, gripping, and grasping (LIB 22-40). She assigned some restrictions given Plaintiff's symptoms, but ultimately concluded that

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

PLAINTIFF'S TRIAL OPENING BRIEF UNDER FRCP 52

Plaintiff could work at *some* job (emphasis added).[3] Ms. Collier provided an additional declaration disputing the findings of the IME, updated medical records, and a written response by Sebastian Jurado, who administered the FCE, to the conclusions reached by the examiner. Notwithstanding the overwhelming evidence supporting Ms. Collier's disability, Lincoln relied solely on the IME to deny her claim on appeal (LIB 12-19). As explained below, the single 50-minute IME does not outweigh the collective evidence demonstrating Ms. Collier's disability by the preponderance of the evidence.

### V.   ARGUMENT

#### A.   PLAINTIFF HAS ESTABLISHED HER ENTITLEMENT TO LTD BENEFITS BY SHOWING THAT HER INJURIES ARE DISABLING

##### 1.   Plaintiff's Doctors and Their Treatment Records Support Plaintiff's Disability.

Ms. Collier's treating providers, Dr. Haronian and Dr. Kohan, have consistently documented Ms. Collier's limitations. Ms. Collier has consistently endorsed pain in multiple body areas which her doctors find to be credible. In ERISA cases, while treating doctors are not afforded special deference, courts recognize the fact that a treating physician has a greater opportunity to know and observe the patient than a physician retained by the plan administrator. *Shaikh v. Aetna Life Ins. Co.*, 445 F.Supp.3d 1, 4–5 (N.D. Cal. 2020); *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (finding that when treating doctors who have personally examined a claimant support disability, a claim denial in the face of such evidence is one of several factors that demonstrate that the claim decision was illogical). "[O]ne would expect any doubts as to whether [the claimant] in fact suffered the pain he alleged, or the effect thereof, would be reflected in the

---

[3] Dr. Vlachos' IME findings, although understating Ms. Collier's symptomology and limitations, should still have been sufficient for Lincoln to have approved her benefit claim.

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

medical records." *Id*. Lincoln cannot disregard Ms. Collier's complaints of severe pain over an extended period of time as they are well-documented in her medical records. *Id*. at *5; *see also Lavino v. Metro. Life Ins. Co.,* No. CV 08-2910 SVW(FMCX), 2010 WL 234817, at *10 (C.D. Cal. Jan. 13, 2010) ("Caselaw suggests that there is no 'objective' method for measuring pain."); *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872 n.3 (9th Cir. 2008) (noting "the factual observation that disabling pain cannot always be measured objectively...is as true for ERISA beneficiaries as it is for Social Security claimants").

As shown by the record, Ms. Collier's doctors found her to be credibly experiencing the symptoms and made treatment recommendations based on their assessments, including invasive surgery. Ms. Collier's extensive treatment record reinforces her credibility and leaves little doubt that she has been suffering. It is also clear from the record that Ms. Collier has been relentless in her pursuit of a diagnosis, treatment, and ultimate cure for her ailments. This Court explicitly found this type of evidence as supporting disability in *Olis v. Unum Life Ins. Co. of Am.*, No. 8:19-cv-01347-JVS-DFM, 2020 WL 4380948, at *13 (C.D. Cal. July 27, 2020). Ms. Collier's treatment history firmly supports a finding that she is not able to perform her own occupation. *See id*.

### i. Edwin Haronian, M.D.

Dr. Edwin Haronian is a Certified Diplomate of American Board of Orthopedic Surgery (LIB 631). As Ms. Collier's treating provider since September 2018, Dr. Haronian has continually supported her disability claim based on objective testing and her credible subjective symptoms (LIB 523-533). Dr. Haronian also explained the inadequacies of the peer review report of Dr. Akhil Chhatre (LIB 886-890) which had been obtained by Lincoln during Ms. Collier's initial claim. Dr. Haronian first noted that Dr. Chhatre was not an orthopedic surgeon, that he has never examined Ms. Collier, that in January of 2019 she was declared permanent

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

and stationary with continuing complaints of neck and shoulder pain, that he still sees Ms. Collier and she continued to suffer from pain, and that, given the restrictions and limitations he provided, Ms. Collier would be unable to perform her previous work activities (LIB 329-330).

The fact that Dr. Chhatre is not an orthopedic specialist undermines his opinion. In *Fleming v. Unum Life Ins. Co. of Am.,* No. SACV1701576CJCJDEX, 2018 WL 6133859, at *10 (C.D. Cal. Nov. 20, 2018), Judge Carmac Carney stated:

> Unum's findings on appeal are likewise unpersuasive. Unum submitted her appeal for a paper-only review with Dr. Norris, who is board certified in family, occupational, and aerospace medicine. Under ERISA, a reviewing physician must have "appropriate training and experience in the field of medicine involved in the medical judgment." See 29 C.F.R. § 2560.503-1(h)(3)(iii). Unum has not explained how Dr. Norris had "training and experience" in the fields of medicine—particularly pain management—involved in the medical judgment at issue here. *See Kunin v. Benefit Tr. Life Ins. Co.,* 910 F.2d 534, 535 (9th Cir. 1990) (finding that the administrator erred in relying on the opinion of a doctor who had no experience treating autism). Yet Dr. Norris summarily concluded that Fleming's self-reported pain and lack of capacity were inconsistent with the "minimal findings on physical examinations ... and her observed moderate level of activity" in the surveillance footage. (AR 3155.) While Unum is not required to send a claimant to an in-person examination, the Court declines to credit Dr. Norris's opinion over those of the medical evaluators who consistently examined Fleming in person. *See Montour v. Hartford Life & Acc. Ins. Co.,* 588 F.3d 623, 630 (9th Cir. 2009) (noting that "factors that frequently arise in the ERISA context include ... whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records").

This Court in *Olis v. Unum Life Ins. Co. of Am.*, *supra*, opined that the opinions of treating providers were more convincing than those of the insurer's medical record reviewers because of the extent of the doctors' history of treating plaintiff, their specializations in the relevant practices, and the amount of detail provided in their notes and letters. *Id.* at 13.

In addition to personally treating and evaluating Ms. Collier, Dr. Haronian reviewed extensive medical records pertaining to Plaintiff, which contain imaging studies and physical examinations which show consistent progression of Ms.

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

Collier's disabling conditions, surgical interventions, and treatment with narcotics, steroid injections, and physical therapy (LIB 136-162; 167-209). The cervical MRI dated October 5, 2018 performed at Kaiser revealed straightening of normal lordotic curvature, usually secondary to muscular spasm, a 1mm broad-based posterior disk bulge indenting the anterior aspect of the thecal sac at C3-C4, a 2mm central posterior disk protrusion causing pressure over the anterior aspect of the thecal sac at C4-C5, a 2mm broad-based posterior disk protrusion causing pressure over the anterior thecal sac at C6-C7, with mild narrowing of the left neural foramen and moderately significant narrowing of the right neural foramen (LIB 502-504). A lumbar spine MRI dated February 15, 2019 showed anterior osteophytes at T12 through L5, mild disk desiccation at L2-L3 through L5-S1with associated loss of disk height at L5-S1, and a 2.6mm disk bulge abutting the thecal sac with central posterior annular fissure at L5-S1 (LIB 499-501).

During an office visit with Dr. Haronian on December 11, 2019, Ms. Collier complained of residual pain, and Dr. Haronian opined that her condition has been unchanged since he declared her permanent and stationary in January of 2019. He stated that he will continue to see her periodically for medical care (LIB 214-215).

### ii.  Jonathan Kohan, M.D.

Dr. Jonathan Kohan, Pain Management specialist, worked in tandem with Dr. Haronian and prescribed medications including Norco, Neurontin (gabapentin), and Cymbalta (LIB 95), which provided some improvement in Ms. Collier's pain symptoms, but not to the point that would allow her to return to work. Even if the pain had been sufficiently relieved, the side effects of narcotic medications such as Norco and gabapentin would have impacted her ability to perform the detailed work required of her occupation. *See Utter v. UNUM Life Ins. Co. of America*, 404 F.Supp.2d 1204 (C.D. Cal. 2005), wherein the court found it to be an abuse of discretion for an LTD carrier to fail to consider the side effects of narcotic

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

medications on an insured's ability to perform the cognitive nature of their own occupation.

Dr. Kohan likewise supports Ms. Collier's claim for disability and agrees with the results of the FCE which showed that Ms. Collier is physically incapable of fulltime employment (LIB 334). Dr. Kohan opined that Ms. Collier reached permanent and stationary status on August 13, 2019. He stated that Ms. Collier has failed several rounds of treatment and physical therapy, and he did not believe that a spinal injection would not be beneficial (LIB 95-97). Dr. Kohan's physical examinations over the course of more than a year have consistently revealed tenderness to palpation over paravertebral, trapezius, deltoid, and rhomboids area with moderate spasm, tenderness over paraspinous muscles, tenderness and moderate-to-severe spasm over the cervical spine extending to trapezius and deltoid, weakness in flexion and extension of the right shoulder, and bilateral tenderness over the SI joints (LIB 596-605; 519-521; 538-539; 96-97).

### iii. Kaiser Permanente

In addition to Drs. Haronian and Kohan, Ms. Collier has been treated by various providers at Kaiser Permanente. She received multiple Botox injections to treat her chronic migraines/headaches in 2018 and 2019 (LIB 1056-1057). She was also seen for her shoulder pain, diagnosed with right rotator cuff syndrome/tear, and prescribed Norco and Kenalog injections (LIB 1068-1071). In August of 2018, she complained of bilateral shoulder pain which increased with prolonged activity (LIB 1089, 1113). Her surgeon, Dr. Sovarinth Tun, issued several work restrictions: May 14, 2018, July 6, 2018, and August 27, 2018—no typing and no use of both shoulders and arms (LIB 1091, 1117, 1115).

### 2. A Functional Capacity Evaluation Supports Disability.

Ms. Collier attended a two-day-long FCE performed by Sebastian Jurado, DPT [Doctor of Physical Therapy], CEAS [Certified Ergonomic Assessment Specialist] on September 12-13, 2019 (LIB 707-744). Ms. Collier was observed to

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

provide full physical effort during the FCE as demonstrated by consistency on isometric testing and observed competitive performance behaviors, and heart rate measurements.

The FCE revealed a number of limitations, which were especially pronounced on day two of the evaluation: abnormal upper and lower extremity dermatomes at bilateral C6-C8 nerves and bilateral L4-S1 nerves; decreased range of motion in the spine: 42% of norm with cervical extension, 44% of norm in cervical lateral left and right, 63% of norm in cervical rotation left and right, 33% of norm in lumbar flexion; decreased upper extremity range of motion bilaterally, ranging from 46% percent to 99%; and decreased muscle strength, primarily in elbow flexion, wrist flexion, and knee extension, which were even more present on day two of the testing. Ms. Collier was only able to type for 25 minutes while sitting on the first day before she had to stand up, and only for 15 minutes on the second day before having to stand up.

Following the in-depth testing, the FCE examiner opined that Ms. Collier was unable to return to work. Dr. Kohan, Ms. Collier's pain management specialist, concurred with the FCE findings (LIB 334).

When done correctly, FCEs are objective and reliable measures of work ability.  *See Holmstrom v. Metro. Life Ins. Co.,* 615 F.3d 758, 769-70 (7th Cir. 2010). Courts have found that FCEs performed provide "objective evidence" in support of a disability claim. *See, e.g., Caplan v. CNA Fin. Corp.,* 544 F.Supp.2d 984, 992 (N.D. Cal. 2008), *Sangha v. Cigna Life Ins. Co. of New York,* 314 F.Supp.3d 1027, 1036 (N.D. Cal. 2018). The functional capacity exam results make it abundantly clear that Ms. Collier is unable to perform the duties of her prior occupation or any other sedentary occupation given these objective results.

### 3. Unrefuted Corroborating Evidence Supports Disability.

When considering a claimant's symptoms which are difficult to quantify, courts recognize the value of third-party witness statements. *Demer v. IBM Corp.*

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

*LTD Plan*, 835 F.3d 893, 905 (considering third-party statements on the plaintiff's pain and cognitive problems); *Mueller v. CNA Group Life Assur. Co.*, No. C 03–1688 MHP, 2004 WL 1161173, *8 (N.D. Cal. May 24, 2004) (finding that CNA's decision was not based on sufficient reliable evidence in the record where it was supported in part by "evidence from her co-workers and supervisors"); *May v. Metro. Life Ins. Co.*, No. C 03-5056 CW2004 WL 2011460, *8 (N.D. Cal. Sept. 9, 2004) (MetLife abused its discretion by ignoring, among other evidence, witness statements describing how plaintiff's health affected her ability to work). Indeed, observations made by persons with first-hand knowledge can be useful in helping to understand how someone functions in activities of daily living on a daily basis: *McDonald v. W.-S. Life Ins. Co.,* 347 F.3d 161, 165 (6th Cir. 2003) (relying significantly on a witness statement that based on plaintiff's poor bridge playing skills, he believed plaintiff was disabled from working); *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 763 (7th Cir. 2010) (relying on family member letters describing how plaintiff's condition affected her everyday life); *DiPietro v. Prudential Ins. Co. of Am.*, 03 C 1018, 2004 WL 626818, *6 (N.D. Ill. March 26, 2004) (relying on letters from plaintiff's family, friends, and co-workers that plaintiff's condition made his work increasingly difficult and rendered him disabled).

Ms. Collier submitted her own written declarations along with detailed third-party declarations from three other people in support of her disability claim. Below are some excerpts:

- Duane Raha (partner) (LIB 348-351):  After a few years of working at AAA Insurance, Vicki would come home complaining of discomfort in her neck and shoulder area. It progressively got worse and I would accompany her to her doctors' visits. After several months, there were times Vicki could not sleep due to the pain she was experiencing…In addition, based on a recommendation from one of her doctors, I purchased a special contour Memory Foam pillow to see if that would help along with two different types of Cervical Neck Traction Devices for her to try before going to bed at night. The pain continued to get progressively worse and since the pain was in her neck and shoulders, we could no longer continue our tennis or running

activities, and on occasion we could only go for walks instead. The activities at the gym slowed down as did the yoga classes we attended.

- Nicolette Collier (daughter) (LIB 343-346):  This past year has been super difficult on my mom because of the pain in her shoulders and back that has affected her everyday life in numerous ways. Going from working many hours and exercising a couple of hours a day, my mom's exercise now consists of walking her dog around the block once or twice a day, and a lot of stretching, including stretching in a heated room. On her good day, she may walk a couple of miles as walking makes her feel better, but this is nowhere near the level of athleticism she used to have. In fact, she can't even seem to get herself up before 7am any day of the week. This past year I've had to assist my mom in some of the household chores, and I have to travel from San Luis Obispo to see her as she cannot bear the long drive.  She is so low on energy and can no longer perform to the best of her ability as she used to. Her leg seems to be giving her a lot of pain along with her shoulders. She can't withstand long car rides anymore because after 30 minutes of sitting, she feels excruciating pain shooting through her leg and lower back. In order to visit my mom on weekends while I am away at college, I have to figure out rides there and back home because it is too painful for my mom to drive three hours to San Luis Obispo to visit me.

- Lisa Tetreault (friend of over 15 years) (LIB 74-76):  From three years ago to now Vicki has changed in so many ways physically. She can no longer work out as she once did. She has confided in me that she has been on pain pills for a very long time. I have witnessed her body, once strong lean muscle mass, become very thin, with very little muscle mass and limited in what she can do as exercise or hobbies. I know Vicki would like to work out like she used to and to be able to do things she once enjoyed. She complains that she feels her body is turning into a bag of bones and that her skin is starting to hang off the bones. She is unable to visit her daughters as much as she would like as she said it is difficult for her to drive or fly. She would like to play golf with her partner but unable.

I have seen countless arm and shoulder surgeries over the years in my profession. Vicki's surgery was expected to have restored her back to a somewhat normal status.  Instead, the pain spread shortly after the surgery and it just continued to get worse and has affected many other parts of her body.  I have not seen any improvements in her health.

In sum, Ms. Collier's complaints of pain and inability to perform the duties of her own occupation are supported by her treatment records, the opinions and observations of her treating doctors, the FCE, and the attestations of three people who have observed Ms. Collier over the years.

### 4. Lincoln's Evidence Fails Overcome the Evidence Supporting Plaintiff's Claim.

#### A. Peer Review by Akhil Chhatre, M.D.

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

Lincoln hired Network Medical Review Co. ("NMR") to perform a peer review of Ms. Collier's medical records. NMR hired Dr. Akhil Chhatre to do so. He completed his report of findings on May 8, 2019 (LIB 886-890). He opined that the evidence did not support any impairments from May 15, 2018 to the time he made the report on May 8, 2019. To support his conclusion, Dr. Chhatre points to the fact that Plaintiff had an old cervical MRI from 2016 and there have been stable exam findings with no new diagnostic testing. However, Ms. Collier had a lumbar MRI in February of 2019 which revealed anterior osteophytes at T12 down through L5, mild disc desiccation at L2-L3 down through L5-S1, and a 2.6mm disc bulge (LIB 500). Dr. Chhatre does nothing to adequately consider the ramifications of this MRI. His lack of attention to detail is evidenced by his incorrect notation that the shoulder MRI is undated—when in fact a cursory review shows the date of that MRI to be July 5, 2017 (LIB 506-507). As mentioned above, Ms. Collier was prescribed narcotic medications which further supports her complaints of pain.

Dr. Haronian wrote a response to Dr. Chhatre's report (LIB 132-135). Dr. Haronian pointed out that the report makes no mention of the fact that Ms. Collier had surgery, but yet continued to have limitations. He goes on to state:

> The physician is not an orthopedic surgeon, but seems to be a Physical Medicine Rehabilitation Specialist. It also seems that the reviewing physician for some unknown reason has licensed to practice in five different states and perhaps performs evaluation only without actual treatment of patients. There is no indication that her range of motion was measured. The patient was declared permanent and stationary on January 31, 2019. At that time, the patient was still complaining of neck and shoulder pain. It was unlikely that the patient's condition would improve further for at least one year and that was the timing of the permanent and stationary status. In fact, the patient continued to be seen in my office and has continued to suffer from pain.
>
> …
>
> The QME [Akhil Chhatre] indicated that the patient's complaints to the lower back and the neck were present prior to her job at the Automobile Club. However, that does not dismiss the fact that the patient has continued to suffer from pain…I did provide work restrictions to multiple body parts including the shoulders that the patient would be precluded from working at/or above the shoulder level. It would be reasonable that the patient should avoid lifting more than 10 pounds and the patient should avoid repetitive power gripping,

repetitive keying, repetitive grasping, and repetitive pinching due to her wrist complaints. Considering the above, it would be reasonable to indicate that the patient will not be able to perform her previous work activities as indicated in my report from January 31, 2019.

This opinion is supported by the medical records and the FCE. Furthermore, Dr. Chhatre advanced no reasons or evidence that Ms. Collier is not to be believed. Even if the symptoms are subjective, it is proper to base a disability determination on patient's self-reported symptoms if they are credible. *See e.g. Demer*, 835 F.3d at 905-06; *Cruz-Baca v. Edison International Long Term Disability Plan*, 708 F.Appx 313, 315 (9th Cir. 2017); *Godmar v. Hewlett–Packard Co.,* 631 F.App'x 397, 406 (6th Cir. 2015) (stating that paper reviews are "particularly troubling when the administrator's consulting physicians —who have never met the claimant— discount the claimant's limitations as subjective or exaggerated"; adding that "'we will not credit a file review to the extent that it relies on adverse credibility findings when the files do not state that there is reason to doubt the applicant's credibility'"); *cf. Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (in the Social Security context, noting that "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence").

In addition, in stark contrast to the treating and examining doctors' discussions regarding the possible adverse effects of Plaintiff's pain and her medications stands Defendant's complete and utter failure to even acknowledge the possibility that Plaintiff's pain or her medications could impair in any way her ability to perform her job duties. The record is clear that Plaintiff's job required analytical ability, attention to detail, and completion of complex tasks. It is well-accepted that Norco and gabapentin can cause tiredness, sleepiness, and "brain fog." *See, e.g., Utter v. UNUM Life Ins. Co. of America,* 404 F.Supp.2d 1204 (2005). This utter absence of discussion of the possible adverse effect of Plaintiff's pain and medications on her cognitive functioning is glaring in the report of Dr. Chhatre.

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

As a general matter, courts in this Circuit do not find medical opinions based on paper review evaluations as probative as opinions based upon in-person evaluations. *Montour*, 588 F.3d at 630. "Though the lack of an in-person examination is not determinative, it is a relevant consideration, especially with respect to conditions that are not susceptible to objective verification." *Lavino v. Metro. Life Ins. Co.,* No. 08–cv–2910, 2010 WL 234817, at *12 (C.D. Cal. Jan. 13, 2010). "[W]here the insured's treating physician's disability opinion is unequivocal and based on a long term physician-patient relationship, reliance on a non-examining physician's opinion premised on a records review alone is suspect and suggests that the insurer is looking for a reason to deny benefits. . ." *Lavino v. Metro. Life Ins. Co.,* 779 F.Supp.2d 1095, 1112–13 (C.D. Cal. 2011) (citations and internal quotation marks omitted).

Credible evidence of a claimant's symptoms, based on her own reports and the medical reports of examining physicians, is more than sufficient to establish disability. *Demer*, 835 F.3d at 905-06; *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *see also, Palmer v. University Medical Group,* 994 F.Supp. 1221, 1233-1234 (D. Or. 1998). Dr. Chhatre advanced no grounds that would call into question Ms. Collier's truthfulness, and therefore, his opinion carries little, if any, weight in determining Plaintiff's disability.

### B.   IME by Katrina Vlachos, M.D.

Lincoln's rejection of Ms. Collier's appeal hinges solely on the IME performed by Dr. Katrina Vlachos. After examining Ms. Collier, Dr. Vlachos found several impairments with regards to Plaintiff's neck, shoulders, upper extremities (elbows and forearms), and lower back (LIB 22-40). She diagnosed Ms. Collier with cervical pain, cervical radiculopathy, bilateral shoulder pain; status post right shoulder rotation cuff tear, bilateral elbow pain, bilateral wrist pain, lumbar pain, and lumbar degenerative disc disease (LIB 34). Under the "Review of Systems" portion of the report, Dr. Vlachos stated: "significant for fatigue, depression, sleep

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

difficulty, headaches, nervousness, stress, numbness, weakness, bowel problems, memory loss, loss of concentration, itching, tingling, and early awakening." These findings are especially important because Ms. Collier's job required focus, attention to detail, accuracy, advanced organizational skills, people skills, and constant computer use (LIB 785-787). Dr. Vlachos discounted these factors and opined that Ms. Collier is limited in her ability to sit for up to 30 minutes at a time with a five-minute position break; stand and walk for 30 minutes at a time with a five-minute break; occasional reaching in all planes; and occasional fingering, feeling, gripping, and grasping. From reading her report, one fully expected a finding of total disability. However, despite the findings of functional impairment, Dr. Vlachos, likely consistent with what she perceived her assignment to be, found that Ms. Collier could do "some job."[4] The totality of Dr. Vlachos's own findings is inconsistent with her conclusion that Ms. Collier could sit for six hours in an eight-hour day, stand/walk for four hours in an eight-hour day, and work fulltime on a consistent basis. Ms. Collier's work involves extensive computer work and keyboarding, and she cannot perform the material duties of her job with restriction to do this only on an occasional basis. Dr. Vlachos also discounted Plaintiff's pain complaints, stating that they were inconsistent with physical exam findings and imaging studies. Finally, Dr. Vlachos concluded that the restrictions and limitations would enable Ms. Collier to be functional at *some* job (emphasis added) (LIB 39). She did not state that Ms. Collier could return to her own occupation, although she had an opportunity to review the requirements of Ms. Collier's occupation.

In evaluating the quality of Dr. Vlachos's opinions, it is important to note that if Ms. Collier's symptoms are subjective, it is proper to base a disability determination on self-reported symptoms if they are credible. Dr. Vlachos does not

---

[4] The ability to do "some job" is completely irrelevant to the policy definition of total disability and the standard which must be met for Ms. Collier to receive benefits.

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

appear to seriously challenge Ms. Collier's credibility, because simply, there is no basis to challenge her integrity.

Ms. Collier, through her counsel, provided a 5-page declaration in response to the IME, noting that there were several mistaken assumptions, omissions, minimal physical examination (such as asking to reach up once, and walking the length of a medical bed), a disregard of her pain complaints, and side effects of medications which Dr. Vlachos did not even inquire about (LIB 65-71). Sebastian Jurado, who administered Ms. Collier's two-day FCE, reviewed Dr. Vlachos's report and acknowledged that some of Dr. Vlachos's findings were consistent with his own observations but pointed out that MRI results did not provide a complete picture of Ms. Collier's functional capacity (LIB 62-63). In addition, Dr. Jurado emphasized how Plaintiff's abilities diminished on the second day of testing:

> Although Dr. Vlachos believes that the client may work a full-time position, 40-hours a week, her evaluation mentions how symptoms may be affected one day to another depending on the amount of physical activity performed. The client's ROM, strength, posture and functional performance declined on the second day of testing. The client presented with increased muscular guarding. During the first day of testing, the client was able to sit for up to 30 minutes until she had to stand up due to back pain. On the second day, the client's posture was more guarded and she was able to sit for up to 15 minutes continuously and the transition from sit to stand was slower and cautious. Although the client ambulated with a normal gait pattern on the first day of testing, her cadence slowed down on day two and her posture was guarded throughout all phases of gait. Therefore, it could be expected for the client to have greater difficulty on a third or fourth day of work based on objective findings. The client was consistent with testing on both days and her physical performance correlated with her subjective complaints of pain.

### 5. Ms. Collier is Entitled to Reinstatement of Benefits Through the Any Occupation Standard of Disability

By the preponderance of the evidence in this case, Ms. Collier has established her entitlement to LTD benefits through the "any occupation" standard of disability. Other courts who have ordered payment of any occupation benefits in similar circumstances have found that the disability was well supported by the current record or exhaustion would be futile. *See e.g. Reetz v. Hartford Life & Accident Ins. Co.*, 294 F.Supp.3d 1068, 1084 (W.D. Wash. 2018); *Wright v. Raytheon Co. Short*

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

*Term Disability Plan*, 2008 WL 4386728, \*13 (D. Ariz. Sept. 17, 2008); *Oliver v. Coca Cola Company*, 497 F.3d 1181, 1199-1201 (11th Cir. 2007) rehearing granted, opinion vacated on other grounds in part by 506 F.3d 1316 (11th Cir. 2009), and adhered to in part on rehearing by 546 F.3d 1353 (11th Cir. 2008); *Smith v. Metro. Life Ins. Co.*, 274 F.App'x 251, 257-58 (4th Cir. 2008); *see also Paese v. Hartford Life and Acc. Ins. Co.,* 449 F.3d 435, 449 (2nd Cir. 2006). *See also Groch v. Dearborn Nat'l Life Ins. Co.,* No. 218CV06614CBMEX, 2020 WL 6374619 (C.D. Cal. Oct. 29, 2020).

Lincoln's IME was performed after the 12-month period of the "own occupation" standard of disability, which ended in November 2019. The IME revealed numerous limitations that would preclude any sedentary job (*supra*), such as Plaintiff's own occupation, demonstrating that she cannot engage in any sedentary occupation. Plaintiff's medical records and other evidence show that she cannot work in any other occupation. *See, e.g., Tam v. First Unum Life Ins. Co.,* No. CV195227FMOJEMX, 2020 WL 5904804, at \*10 (C.D. Cal. Sept. 30, 2020):

> "…in denying benefits and determining that Tam could perform her regular occupation, Unum necessarily determined that she could do other, less demanding jobs. As the Ninth Circuit stated in the Social Security context, "[a]llowing [Unum] to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). Plaintiff has already waited approximately three years for a disability determination. (See AR at 127). "Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand." *Benecke*, 379 F.3d at 595 (internal quotation marks omitted). In light of the severity of plaintiff's medical condition as reflected in the record, the court is convinced that plaintiff is unable to perform the duties of any gainful occupation."

The same result is warranted in this case. The questions Lincoln proposed to the IME, Dr. Vlachos, asked for her comment on Ms. Collier's "capacity for sustained, full-time work," without limitation or specification to Ms. Collier's own occupation. Ms. Collier's appeal clearly stated that she was appealing the denial

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

under the "any occupation" standard of disability (LIB 850-855). Lincoln's final denial was issued in April 2020—five months into the "any occupation" standard of disability (LIB 12-19). The final denial letter stated that she has exhausted her administrative remedies. *Id*. Lincoln's decision to evaluate her claim under only the "own occupation" standard of disability does not determine whether Ms. Collier adequately exhausted her claim for "any occupation" benefits. Lincoln chose not to explicitly decide the any occupation claim within the timeframe set forth by the ERISA regulations; thus, Ms. Collier fully exhausted any administrative remedies with respect to this definition of disability. *Lavino v. Metro. Life Ins. Co.,* 779 F.Supp.2d 1095, 1105 (C.D. Cal. 2011).

## VI.   CONCLUSION

Ms. Collier requests that the Court provide her with the full and fair review that Lincoln failed to do, and to evaluate her from a whole person perspective.  Ms. Collier is a hard-working woman who became unable to work in a career that she both loved and excelled at because of her various medical conditions.  She would never choose to forego her high six-figure salary for the run-around that Lincoln gave her over the past two-and-a-half years.  The record shows that Ms. Collier is suffering from severe symptoms and she has stopped at nothing to get the appropriate treatment.  Ms. Collier stated that if she could go back to the way she used to be, she would, and that she missed her life, her job, her hobbies and interests, and her relationships (LIB 336-339).

For the foregoing reasons, Ms. Collier respectfully requests that the Court award her LTD benefits, and medical coverage benefits consistent with the terms of the Plan, and order that Ms. Collier may file a motion, pursuant to ERISA § 502(g) for pre-judgment interest, and attorneys' fees and costs within 30 days of entry of judgment.

/ / /

/ / /

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

DATED: February 1, 2021

KANTOR & KANTOR, LLP

By: /s/ *Glenn R. Kantor*

Glenn R. Kantor,
Zoya Yarnykh
Attorneys for Plaintiff
VICKI COLLIER

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130