Zoya Yarnykh, State Bar No. 258062
 E-mail: zyarnykh@kantorlaw.net
KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, CA 94501
Telephone: (510) 992-6130
Facsimile: (510) 280-7564

Glenn R. Kantor, State Bar No. 122643
 E-mail: gkantor@kantorlaw.net
KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886 2525
Facsimile: (818) 350 6272

Attorneys for Plaintiff
VICKI COLLIER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| VICKI COLLIER,<br><br>          Plaintiff,<br><br>     vs.<br><br>LINCOLN LIFE ASSURANCE COMPANY OF BOSTON,<br><br>          Defendant. | CASE NO. 8:20-cv-00839-JVS-KES<br><br>**PLAINTIFF'S RESPONSIVE TRIAL BRIEF**<br><br>**Trial Date: March 29, 2021**<br>**Time: 3:00PM**<br>**Hon. James V. Selna** |

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

PLAINTIFF'S RESPONSIVE TRIAL BRIEF UNDER FRCP 52

1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ………………………………………………………i

I.     INTRODUCTION ...................................................................................1

II.    SUMMARY OF FACTS...........................................................................2

III.   ARGUMENT ..........................................................................................3

       A.    Ms. Collier's Restrictions and Limitations Preclude Her from
             Performing Her Own or Any Other Occupation.......................................3

       B.    Ms. Collier Has Established by a Preponderance of the Evidence That
             She Is Disabled.................................................................................6

       C.    The Court Should Reject Lincoln's Arguments that Ms. Collier Has Not
             Met Her Evidentiary Burden. ...........................................................8

             1.    Ms. Collier's Symptoms Are Supported by Objective Evidence...8

             2.    The Record Shows that Ms. Collier Is Credible and Lincoln Cannot
                   Establish Otherwise, Because No Evidence Exists Which Would
                   Undermine Her Credibility. ..........................................................13

             3.    The Opinions of Lincoln's Physicians Are Entitled to Less Weight
                   than the Opinions of Ms. Collier's Treating Physicians...............16

             4.    The Declarations of Friends and Family Support Ms. Collier's
                   Disabling Symptoms.....................................................................20

IV.    CONCLUSION .....................................................................................21

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

# TABLE OF AUTHORITIES

Page(s)

<u>**Cases**</u>

*Archuleta v. Reliance Standard Life Ins. Co.*
504 F.Supp.2d 876 C.D. Cal. 2007) ...............................................................................5

*Bennett v. Kemper Nat. Servs., Inc.*,
514 F.3d 547 (6th Cir. 2008) ........................................................................................13

*Black & Decker Disability Plan v. Nord*,
538 U.S. 822 (2003)......................................................................................................16

*Booth v. Barnhart*,
181 F.Supp.2d 1099 (C.D. Cal. 2002) ..........................................................................17

*Caplan v. CNA Fin. Corp.*,
544 F.Supp.2d 984 (N.D. Cal. 2008) ..............................................................................9

*Demer v. IBM Corp. LTD Plan*,
835 F.3d 893 (9th Cir. 2016) ..................................................................................13, 20

*DiPietro v. Prudential Ins. Co. of Am.*, 03 C,
2004 WL 626818 (N.D. Ill. March 26, 2004)...............................................................20

*Fair v. Bowen*,
885 F.2d 597 (9th Cir. 1989) ........................................................................................13

*Fleming v. Unum Life Insurance Co. of Am.*,
2018 WL 6133859 (C.D.Cal. Nov. 20, 2018) ..............................................................10

*Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Alabama*,
41 F.3d 1476 (11th Cir.) ..................................................................................................8

*Gerhardt v. Liberty Life Assurance Company of Boston*,
2007 WL 9728876 (E.D. Ark. Aug. 2, 2007).................................................................11

*Groch v. Dearborn Nat'l Life Ins. Co.*,
2020 WL 6374619 (C.D. Cal. Oct. 29, 2020)................................................................10

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

*Hamid v. Metro. Life Ins. Co.*,
  2021 WL 405225 (N.D. Cal. Feb. 5, 2021) ........................................................12

*Holmgren* [*v. Sun Life & Health Ins. Co.*,
  354 F. Supp. 3d ........................................................12

*Holmstrom v. Metro. Life Ins. Co.*,
  615 F.3d 758 (7th Cir. 2010) ........................................................9, 20

*Khoury v. Group Health Plan, Inc.*,
  615 F.3d 946 (8th Cir. 2010) (reviewing ........................................................17, 18, 20

*Kushner v. Lehigh Cement Co.*,
  572 F. Supp. 2d 1183 (C.D Cal. 2008) ........................................................15

*Langlois v. Metropolitan Life Ins. Co.*,
  2012 WL 1910020 (N.D. Cal. May 24, 2012) ........................................................15

*McDonald v. W.-S. Life Ins. Co.*,
  347 F.3d 161 (6th Cir. 2003) ........................................................20

*Montour v. Hartford Life & Accident Ins. Co.*,
  588 F.3d ........................................................12

*Moody v. Liberty Life Assur. Co. of Bos.*,
  595 F. Supp. 2d 1090 (N.D. Cal. 2009) ........................................................11, 12

*Mueller v. CNA Group Life Assur. Co.*, No. C,
  2004 WL 1161173 (N.D. Cal. May 24, 2004) ........................................................20

*Opeta v. Northwest Airlines Pension Plan for Contract Employees*,
  484 F.3d 1211 (2007) ........................................................10

*Quesinberry v. Life Ins. Co. of N. Am.*,
  987 F.2d 1017 (4th Cir.1993) (*en banc* ........................................................10

*Salomaa v. Honda Long Term Disability* Plan,
  642 F.3d 666 (9th Cir. 2011) ........................................................9, 14

*Sangha v. Cigna Life Ins. Co. of New York*,
  314 F.Supp.3d 1027 (N.D. Cal. 2018) ........................................................10

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

*Seleine v. Fluor Corp. Long-Term Disability Plan*,
598 F. Supp. 2d. 1090 (C.D. Cal. 2009) ..........................................................14, 15

*Shaikh v. Aetna Life Ins. Co.*,
2020 WL 1430496 (N.D. Cal. Mar. 24, 2020) ......................................................16

*Soron v. Liberty Life Assurance Company of Boston*,
318 F.Supp.2d 19 (N.D.N.Y. 2004)......................................................................11

*Till v. Lincoln Nat'l Life Ins. Co.*,
678 Fed.Appx. 805 (11th Cir. 2017)................................................................17, 19

*Utter v. UNUM Life Ins. Co. of America*,
404 F.Supp.2d 1204 (C.D. Cal. 2005) ....................................................................6

*Waterbury v. Liberty Life Assurance Company of Boston*,
2005 WL 8169569 (N.D.N.Y. Dec. 22, 2005) ......................................................12

*Williams v. Reliance Standard Life Ins. Co.*,
164 F. Supp. 3d 1230 (D. Or. 2016) ........................................................................9

## **Rules**

FRCP 52....................................................................................................22, 1

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

## I.   INTRODUCTION

The parties are in agreement that the standard of review in this case is *de novo.* As such, the question for the Court is: has Ms. Collier demonstrated by a preponderance of the evidence that she is totally disabled from performing the material duties of her own occupation? The answer is a resounding "yes".

In support of its contention that Ms. Collier has not met her burden of proof, Lincoln primarily argues that Ms. Collier has not met her burden because her medical records do not sufficiently document objective findings that would have prevented her from performing the duties of her own occupation. However, as evidenced by the record, Ms. Collier has submitted more than sufficient objective evidence to meet her burden. Moreover, even if portions of her evidence are based on subjective symptoms, Defendant's policy does not mandate that the evidence of disability must be objective, and arguing for the first time during litigation that is will only consider what it deems to be "objective" evidence, violates the strictures of ERISA.

Regardless of how the evidence in the record is characterized, it demonstrates that Ms. Collier could no longer perform her job duties due to neck, back, and bilateral shoulder pain that radiated to both upper and lower extremities. These symptoms are those known to be caused by her diagnoses of cervical radiculopathy, lumbar radiculopathy, bilateral rotator cuff tear, bilateral shoulder impingement syndrome, migraines, bilateral elbow tendinitis, and bilateral wrist tendinitis (LIB 92, 529-530, 1056-1057, 1068, 1091). Moreover, the record reflects that in attempts to treat her pain, her physicians have prescribed medications that impact cognition, including the narcotic Norco. While Ms. Collier has explained to Lincoln in sworn testimony how these medications impact her ability to think clearly and perform any occupation, Lincoln, obviously having no viable response to the impact of the medications on her disability status, has chosen to simply ignore the facts. Unfortunately for Lincoln, ignoring the facts that do not support its position, does not somehow magically make the facts go away.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Ms. Collier's complaints are genuine and are supported by a long history of in-depth medical records and an exhaustive history of treatment. She has the full support of her treating physicians, who agree that she cannot perform full-time work. Lincoln has not, and cannot, present a viable argument that Ms. Collier has either manufactured or exaggerated her condition. In short, the record demonstrates that Ms. Collier's medical condition is incompatible with being an insurance agent, which requires constant computer use and attention to detail. Lincoln wrongly rejected the overwhelming evidence supporting Ms. Collier's disability, instead viewing the evidence myopically in order to justify denying the claim, and saving itself the cost of paying the claim. Ms. Collier asserts that upon weighing the evidence, this Court will come to the only reasonable conclusion, which is that Ms. Collier has established both the fact of her total disability and her entitlement to benefits.

## II.    SUMMARY OF FACTS

Ms. Collier provided her summary of facts in her Opening Trial Brief (Doc. 18) and [Proposed] Findings of Fact and Conclusions of Law, filed contemporaneously with this Brief.

The statement of facts summarized her treatment history and examination findings by Dr. Edwin Haronian (LIB 523-533, 136-162, 167-209, 214-215, 99-100, 555-556).

They reviewed her MRI findings (LIB 502-504, 499-501).

They reviewed her treatment history and examination findings by Dr. Jonathan Kohan (LIB 95-97, 596-605, 519-521, 538-539).

They reviewed work restrictions assigned by Dr. Sovarinth Tun (LIB 1091, 1117, 1115).

They reviewed treatment and examinations of physicians at Kaiser Permanente (LIB 1056-1057, 1069-1071, 1089, 1113).

They reviewed FCE findings (LIB 707-744).

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

PLAINTIFF'S RESPONSIVE TRIAL BRIEF UNDER FRCP 52

Ms. Collier also provided personal statements and statements of friends and family members documenting her disabling condition (LIB 343-346, 348-351, 336-339, 74-75, 65-71).

While Lincoln denied benefits citing lack of information, that is not the case. The facts before the Court demonstrate that Ms. Collier is disabled.

### III.  ARGUMENT

#### A.  Ms. Collier's Restrictions and Limitations Preclude Her from Performing Her Own or Any Other Occupation.

Lincoln insists that Ms. Collier's own physicians, as well as those retained by Lincoln to conduct medical records review, and even its retained IME physician, opined that she is capable of full-time work with only "slight" modifications. That assertion is incorrect.

Dr. Edwin Haronian, Ms. Collier's primary treating orthopedist, assigned restrictions that are incompatible with her work requirements. Even the physician retained by Lincoln to perform an IME, Dr. Katrina Vlachos, submitted a report which, if read from an unbiased viewpoint, actually supports Ms. Collier's claim for benefits.

Dr. Haronian assigned the following restrictions on January 31, 2019, (LIB 523-533). These restrictions remain in place as of the filing of this brief:

- Cervical spine: the patient is precluded from extended upward and extended downward gazing;
- Lumbar spine: the patient is precluded from repetitive bending and twisting of the lumbar spine;
- Bilateral shoulders: the patient is precluded from repetitive activities at or above the shoulder level;
- Bilateral elbows: the patient is precluded from repetitive torqueing;
- Bilateral wrists: the patient is precluded from repetitive power gripping, repetitive keying, repetitive grasping, and repetitive pinching; and

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

- Avoid lifting more than 10 pounds.

Dr. Vlachos opined, *inter alia*, that Ms. Collier is limited to only occasional fingering, feeling, gripping, and grasping (LIB 38). Ms. Collier's job requires constant computer use (LIB 787). The finding of Lincoln's own IME physician, acknowledging only "occasional fingering" (keyboarding) in conjunction with the undeniable fact that Ms. Collier's occupation required constant computer use, should have put an end to Lincoln's inquiry. An insurance agent who cannot use a computer constantly is not capable of performing their own occupation.

Nor does Lincoln or its vocational experts suggest that the requirement that Ms. Collier constantly use a computer either be omitted or reasonably modified to the extent that would enable her to perform her job, or any other occupation in which she could reasonably be expected to perform satisfactorily in light of her age, education, station in life, and physical and mental capacity (LIB 1225). Lincoln has not even attempted to provide vocational evidence that Ms. Collier could perform her job with these restrictions and limitations. In fact, Lincoln's own vocational analysis states that Ms. Collier's job requires "frequent handling and fingering." (LIB 1155-1157). Unable to refute the conclusion that Ms. Collier's own occupation requires her to use a computer, and that its own retained examiner limited her to occasional fingering, Lincoln simply avoids the unavoidable, and pretends it doesn't exist.

Ms. Collier's claim is further bolstered by Dr. Haronian's professional medical opinion based on his extensive treatment relationship with Ms. Collier. Specifically, he states that, based on Ms. Collier's restrictions and limitations, *supra*, she would be unable to perform her previous work activities (LIB 329-330). Dr. Jonathan Kohan, Ms. Collier's pain management specialist, likewise opined that Ms. Collier is incapable of full-time work (LIB 334). Defendant's focus on the QME reports by Dr. Ripu Arora misses the point. Dr. Arora assessed merely whether Ms. Collier's impairments were industrial in nature, not whether she could perform her

own occupation. Furthermore, Dr. Haronian criticized the methods used by Dr. Arora, such as a failure to use double inclinometers (LIB 515-517, 535-536, 541-544).

In addition to Ms. Collier's physical limitations, she experiences side effects from her medications: Norco causes anxiety, dizziness, drowsiness, constipation, lightheadedness, headache, brain fog, dry mouth, ringing in ears, blurred vision, and mood changes; Cymbalta causes dry mouth, constipation, fatigue, brain fog, hypersomnia, insomnia, restlessness, tension, agitation; Gabapentin causes constipation, unsteadiness, dry mouth, fatigue, brain fog, dizziness, blurred vision (LIB 70). These symptoms were confirmed by Dr. Vlachos, who stated, under "Review of Systems" portion of the report: "significant for fatigue, depression, sleep difficulty, headaches, nervousness, stress, numbness, weakness, bowel problems, memory loss, loss of concentration, itching, tingling, and early awakening." (LIB 31).

Yet, while acknowledging Ms. Collier's symptomology, neither Dr. Vlachos nor Lincoln addressed the impact the side effects of the medications would have on her ability to perform her occupation. Not having a viable response to the problem does not afford Dr. Vlachos or Lincoln the right to simply ignore the situation, yet that is what they have tried to do.

As the court explained in *Archuleta v. Reliance Standard Life Ins. Co.* (C.D. Cal. 2007) 504 F.Supp.2d 876, fn. 3:

> The Court is not unsympathetic to the plight of insurers, who are undoubtedly wary of the potential for abuse by claimants on the issue of the debilitating effects of narcotic pain medications. Whether a claimant experiences side effects, and whether and to what extent the side effects are debilitating, can be measured only by the subjective complaints of the claimant, who has an incentive to exaggerate the effects of the medications in order to continuing receiving disability benefits. This situation is fraught with the opportunity for fraud. Admittedly, an administrator has the duty to avoid paying benefits to participants who are not entitled to receive them, and participants who exaggerate or fabricate the side effects they experience may receive benefits to which they are not entitled. However, an administrator may not guard against this fraud at the expense of participants who are left

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

with the choice between debilitating pain (which would entitle them to benefits) and debilitating side effects of pain medications (which would also entitle them to benefits). This situation undoubtably places administrators on the horns of a dilemma. Nevertheless, whatever the solution to this dilemma may be-and the Court does not purport to have it-insurers may not simply refuse to deal with this issue by turning a blind eye to it, hoping that it will simply go away if they do not look at it.

The requirements of Ms. Collier's job, which, in addition to constant computer use, include the ability to focus, attention to detail, accuracy, advanced organizational skills, and people skills (LIB 785-787), would be impossible to be properly performed by an individual in so much pain that narcotics were prescribed to keep the pain at a somewhat tolerable level. Nor are any of these job requirements such that they can be omitted or modified. Lincoln seems to focus solely on ergonomic modifications, ignoring all other aspects of the material duties of Ms. Collier's job. No employer, including AAA, can accommodate an employee with Ms. Collier's symptoms, especially if that employee had a demanding interpersonal job that required constant computer use.  As argued in her opening brief, it has been found to be an abuse of discretion for an LTD carrier to fail to consider the side effects of narcotic medications on an insured's ability to perform the cognitive nature of their own occupation.  *See Utter v. UNUM Life Ins. Co. of America*, 404 F.Supp.2d 1204 (C.D. Cal. 2005).

Herein, with a *de novo* standard of review, the fact that Ms. Collier's physicians have deemed it necessary to prescribe her opioids in an attempt to alleviate her pain, her reported impairing side effects from the medications, and Lincoln's abject failure to even attempt to address the side effects, should alone be sufficient for the Court to find in her favor.

### B.   Ms. Collier Has Established by a Preponderance of the Evidence That She Is Disabled.

In her opening brief, Ms. Collier provided a detailed explanation of her disabling condition, her extensive treatment of those conditions, and why her symptoms satisfy the Plan's definition of disability.

Specifically, Ms. Collier described how she had worked for years while suffering from pain to multiple body parts. Her pain, as her condition deteriorated, eventually led to her inability to work. Her diagnoses of cervical radiculopathy, lumbar radiculopathy, bilateral rotator cuff tear, bilateral shoulder impingement syndrome, migraines, bilateral elbow tendinitis, and bilateral wrist tendinitis[1] (LIB 92, 529-530, 1056-1057, 1068, 1091) are all known to produce the exact type of pain she continually reported to her doctors.

Ms. Collier was prescribed Norco and gabapentin, received Botox injections to treat her migraines, and cortisone injections in both shoulders (LIB 1054-1059, 1113). Since reaching the "permanent and stationary" status, Ms. Collier's symptoms of pain persisted. For example, during a visit on May 16, 2019, her physical examination continued to show spasm, tenderness and guarding in the paravertebral musculature of the cervical and lumbar spine. Bilateral shoulders had impingement and Hawkins signs (pain elicited with this maneuver indicates a positive test result for impingement), with range of motion in flexion and abduction to only **120 degrees.** The range of motion in a healthy shoulder is **180 degrees** for abduction and flexion (LIB 526). Bilateral wrists had positive Phalen and reverse Phalen signs (Phalen's maneuver is positive when flexing the wrist to 90 degrees for one minute elicits symptoms in the median nerve distribution; the reverse Phalen's test significantly increases pressure in the carpal tunnel within 10 seconds of the change in wrist posture and the carpal tunnel pressure has the tendency to increase throughout the test's duration), with decreased grip strength, distal radial tenderness, and decreased two-point discrimination over the hands (LIB 555-556).

During an office visit on September 5, 2019, Dr. Haronian documented Ms. Collier's complaint of chronic low back pain with radiation to left lower extremity and postoperative pain in the right shoulder, noting that the severity of the pain

---

[1] Plaintiff submitted medical literature with her appeal that describe these conditions and the resulting pain from each diagnosis (LIB 798-841).

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

dominated virtually every conscious moment producing physical and psychological debilitations (LIB 99-100). Ms. Collier is still treating with Drs. Haronian and Kohan, but her presentation has not changed (LIB 91-92, 214-215).

### C. The Court Should Reject Lincoln's Arguments that Ms. Collier Has Not Met Her Evidentiary Burden.

#### 1. Ms. Collier's Symptoms Are Supported by Objective Evidence.

Knowing its contention that Ms. Collier failed to meet her burden to establish her disability will not carry the day, Lincoln falls back on the equally fallacious argument that Ms. Collier's symptoms are "subjective" and not supported by clinical evidence. Lincoln argues these symptoms cannot be used to prove that she is disabled. Lincoln contends that it is not required to accept Ms. Collier's statements as to the severity of her pain and other disabling symptoms. As explained in her opening brief, Ms. Collier is not obligated to provide "objective evidence" of her disability. "Objective evidence" is simply not required by ERISA or the LTD Plan under which she is insured (AR 1225, no such requirement in definition of disability). The LTD Plan is clear on its face, and the Court should reject Lincoln's attempt to insert more onerous terms and conditions after the fact. *See Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term...,* 85 F.3d 455, 460, (1996) wherein the Ninth Circuit held:

> However, an administrator lacks discretion to rewrite the Plan. *See, e.g., Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Alabama*, 41 F.3d 1476, 1484 (11th Cir.) (holding that a "claims administrator's decision is arbitrary and capricious where new requirements for coverage are added to those enumerated in the plan"), *cert. denied*, 514 U.S. 1128 (1995).

Lincoln's belated attempt to insert an objective evidence requirement into its policy, while a claim is pending, is both prohibited, and is an abuse of discretion. Again, in the *de novo* review being performed by the Court, Lincoln's attempt to

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

disregard what might be viewed as subjective evidence is, by itself, sufficient cause for the Court to rule for Ms. Collier.

Under Lincoln's approach, patients with such disabilities would be systematically discriminated against in a way that is not contemplated by ERISA or the LTD Plan. Recognizing the ludicrous nature of Lincoln's argument, the Ninth Circuit has recognized that "[m]any medical conditions depend for their diagnosis on patient reports of pain or other symptoms, and some cannot be objectively established." As a result, claim administrators cannot "condition[] an award on the existence of evidence that cannot exist[.]" *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 678 (9th Cir. 2011). In Ms. Collier's opening brief, she presented case law that pain falls into this category.  In its opening brief, Lincoln failed to explain what objective evidence Ms. Collier should have produced in order to support her claim of orthopedic disability. While Ms. Collier's pain symptoms may be subjective, her diagnoses are not. *See, e.g., Williams v. Reliance Standard Life Ins. Co.,* 164 F. Supp. 3d 1230, 1251 (D. Or. 2016) (plaintiff's subjective symptoms supported a diagnosis).Of course, Ms. Collier is required to present evidence supporting her claim, but she has more than satisfied this burden. Ms. Collier cooperated with Lincoln at every point in its investigation and provided Lincoln with records from all treatment providers, as well as letters from those providers interpreting Lincoln's faulty interpretation of the evidence it analyzed.

Included amongst the evidence Ms. Collier provided was "objective evidence" in the form of a two-day-long FCE which objectively documented her abilities. Contrary to Lincoln's position about the validity of this testing, FCEs are objective and reliable measures of work ability.  *See Holmstrom v. Metro. Life Ins. Co.,* 615 F.3d 758, 769-70 (7th Cir. 2010). Courts have found that FCEs performed provide "objective evidence" in support of a disability claim. *See, e.g., Caplan v. CNA Fin. Corp.,* 544 F.Supp.2d 984, 992 (N.D. Cal. 2008), *Sangha v. Cigna Life Ins. Co. of*

PLAINTIFF'S RESPONSIVE TRIAL BRIEF UNDER FRCP 52

9

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

*New York,* 314 F.Supp.3d 1027, 1036 (N.D. Cal. 2018). The functional capacity exam results make it abundantly clear that Ms. Collier is unable to perform the duties of her prior occupation or any other sedentary occupation.

Lincoln contends that the FCE in this case is not reliable and subjective. However, prior to the start of the evaluation, Ms. Collier was instructed that the testing was very sensitive to inconsistencies and to give full effort with each test sequence. She was also advised to inform the evaluator of any increase in pain and that test sequences could be stopped by the evaluator if she was at risk for injury (LIB 709). Ms. Collier followed these instructions, and her results showed 98% consistency. *Id*. Lincoln also criticizes the credibility of the findings of Dr. Sebastian Jurado, who administered the FCE, alleging that he was "hand-picked" by Ms. Collier's counsel. Lincoln offers no evidence to support such a theory, other than to point to published opinions in which Kantor & Kantor clients prevailed in litigation, and the findings of Dr. Jurado were included as part of the evidence supporting their claims. *See Groch v. Dearborn Nat'l Life Ins. Co.*, 2020 WL 6374619 (C.D. Cal. Oct. 29, 2020) and *Fleming v. Unum Life Insurance Co. of Am.*, 2018 WL 6133859 (C.D.Cal. Nov. 20, 2018), wherein the FCEs performed by Dr. Jurado were held to be objective evidence supporting beneficiaries' claims. Lincoln did not cite any cases where Dr. Jurado's findings were held to be unreliable, because there are none. Lincoln's argument regarding Dr. Jurado's credibility falls under the category of, "be careful what you ask for, because you might get it." In *Opeta v. Northwest Airlines Pension Plan for Contract Employees*, 484 F.3d 1211 (2007), the 9th Circuit recognized that under certain circumstances, the admission of additional evidence to allow the Court to understand the opinions of medical experts is appropriate. It also referenced the 4th Circuit's decision in *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir.1993) (*en banc*), which held that introduction of evidence

PLAINTIFF'S RESPONSIVE TRIAL BRIEF UNDER FRCP 52

beyond the administrative record could be considered necessary to determine issues as to the credibility of medical experts.

If Lincoln truly wishes the Court to question Dr. Jurado's credibility, then Ms. Collier would request that the Court permit all of the treating, and examining doctors, both supporting and opposing Ms. Collier's claim, be permitted to give live testimony. That would enable the Court to make its own credibility determinations.

Ms. Collier believes that Lincoln would be aghast at the Court permitting such testimony. However, it should be put to the test. Lincoln must either withdraw its accusations as to Dr. Jurado's objectivity and credibility, or stipulate that its medical "experts" be required to give testimony as to the credibility of their own opinions.

Finally, Plaintiff's counsel Glenn Kantor had no personal involvement whatsoever in choosing Dr. Jurado to perform the FCE. *See* Declaration of Glenn R. Kantor, ¶¶ 2, 5, 6, 9, filed concurrently herewith, and Ex. A (Declaration of Linda Hayes), Ex. B (Declaration of Sebastian Jurado) thereto.

Lincoln has a long history of discounting the findings even of the FCEs that it itself decided to conduct, with the examiner of their choice. For example, in *Moody v. Liberty Life Assur. Co. of Bos.,* 595 F. Supp. 2d 1090, 1101 (N.D. Cal. 2009), the court held it was an abuse of discretion to ignore the conclusions of the functional capacity evaluation (FCE):

> Liberty chose the evaluator and required Moody to participate in the evaluation, pursuant to the terms of the policy. The evaluator concluded that Moody was capable of working only in the sedentary physical demand category. . .Liberty's own vocational analysts found that Moody's occupation fell within the "light" physical demand category, a step above "sedentary." Liberty now argues that the evaluator misunderstood the requirements of Moody's occupation. However, if the evaluator had made a mistake, Liberty had the right under the policy to require Moody to take another FCE or other test. Liberty did not do so, and so its protestations that the FCE was mistaken fail to persuade.

But, Lincoln does recognize the importance of FCEs, especially if it helps it deny claims. *See, e.g., Gerhardt v. Liberty Life Assurance Company of Boston*, 2007 WL 9728876 (E.D. Ark. Aug. 2, 2007); *Soron v. Liberty Life Assurance Company of*

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

*Boston*, 318 F.Supp.2d 19 (N.D.N.Y. 2004); *Waterbury v. Liberty Life Assurance Company of Boston*, 2005 WL 8169569 (N.D.N.Y. Dec. 22, 2005), *aff'd sub nom. Waterbury v. Liberty Life Assur. Co.*, 202 F. App'x 477 (2d Cir. 2006). It is only when the FCE does not support its denial that it has a problem with the findings, even when it chooses the evaluator as they did in *Moody*, 595 F. Supp. 2d at 1101.

In addition to the FCE, Ms. Collier has been prescribed multiple medications, including Norco and gabapentin, and received Botox injections for her migraine headaches, which constitutes objective evidence of disability. The court in *Hamid v. Metro. Life Ins. Co.*, No. 20-CV-01601-VC, 2021 WL 405225, at *12 (N.D. Cal. Feb. 5, 2021), stated:

> Moreover, there are indeed objective indications that Hamid was disabled beyond just his self-reported symptoms. Most saliently, his medical records show that in the months before and after he stopped working he pursued a full-fledged, multi-faceted attempt to alleviate his pain through a range of treatment options, including evaluation by a pain management consultant and a variety of specialists in the fields of neurology, otolaryngology, rheumatology, and infectious disease; receiving Botox injections and an accelerated round of allergy injections (the latter of which caused severe allergic reactions); and undergoing two surgical sinus procedures (in March 2018 and December 2019), both of which caused extreme pain and discomfort. This itself is objective evidence of Hamid's disability. *Cf. Montour v. Hartford Life & Accident Ins. Co.*,] 588 F.3d 635 (holding medical records suggesting claimant "had not recently engaged in any pain treatment programs" constituted "objective" evidence supporting denial of benefits); *see also Holmgren* [*v. Sun Life & Health Ins. Co.*], 354 F. Supp. 3d at 1029 (finding it telling that "plaintiff sought treatment for his pain at least as early as 2008 and continued to seek a firm diagnosis and treatment throughout his disability application and appeal, including three invasive surgical operations"). In addition, Hamid was prescribed numerous powerful drugs, including various opioids and ketamine, which also constitutes objective evidence of Hamid's impairment.

In short, Lincoln cannot demand objective evidence of pain, and over-emphasizes the importance of such evidence because Ms. Collier's pain complaints are not susceptible to it. Putting aside Lincoln's nonsensical argument as to its perceived lack of objective evidence, in reality Ms. Collier has presented substantial objective evidence in support of her claim. This evidence, in combination with the

PLAINTIFF'S RESPONSIVE TRIAL BRIEF UNDER FRCP 52

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

thorough medical records and letters of support from her physicians, establishes that she has more than met her burden of proving her entitlement to benefits.

### 2.    The Record Shows that Ms. Collier Is Credible and Lincoln Cannot Establish Otherwise, Because No Evidence Exists Which Would Undermine Her Credibility.

In cases where objective testing is either unhelpful or unavailable, the claimant's credibility is important and may even be deciding. *See, e.g., Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989) (holding, in the Social Security context, that "assessment of the claimant's credibility [] becomes exceptionally important in excess pain cases; unlike ordinary Social Security cases, which involve a weighing of medical evidence from a variety of sources, excess pain cases often hinge entirely on whether or not the claimant's description of what he is feeling is believed.").

Lincoln argues that the Court is not required to accept Ms. Collier's symptom complaints at face value. While this may be true, it is also true that the Court cannot simply reject Ms. Collier's complaints unless it has some reason to disbelieve them. *See Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 905 (9th Cir. 2016) (plaintiff should be believed if the insurer has no basis for rejecting his credibility); *Bennett v. Kemper Nat. Servs., Inc.*, 514 F.3d 547, 555 (6th Cir. 2008) ("we will not credit a file review to the extent that it relies on adverse credibility findings when the files do not state that there is reason to doubt the applicant's credibility"). Here, the evidence demonstrates that Ms. Collier is credible, and Lincoln failed in its efforts to establish otherwise. It is inherently unreasonable for Lincoln to ask the Court to question Ms. Collier's credibility when it presents no evidence to justifying such a request. Of course, Ms. Collier's credibility is not the only credibility at issue. The Ninth Circuit has observed that administrators may

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

understandably be frustrated by claims involving subjective evidence because insureds may be incentivized to bring unjustified claims. However, "the claimants are not the only ones with an incentive to cheat. The plan with a conflict of interests also has a financial incentive to cheat." *Salomaa*, 642 F.3d at 678. Lincoln has just such a conflict here, as it is both the administrator of claims and the payer of benefits.

In her opening brief, Ms. Collier explained why her complaints were credible. She noted that she enjoyed her job, and was very good at it, earning a substantial salary (LIB 336-339). Her exemplary work ethic is also bolstered by the fact that she went back to work after her shoulder surgery. *Id.* Her glowing work performance evaluations likewise confirm her credibility and drive to work (LIB 746-796). For example, her 90-day review in 2013 states: "Vicki has immediately proven to be an elite agent and great asset to the Santa Clarita sales team. Vicki is extremely motivated, hard-working, outgoing and sales-oriented which has led to her immediate success. Vicki's first two months of production exceeded the standards for auto and home production…" (LIB 751). She was also a top producer in 2016 for auto and home insurance sales (LIB 776). Her supervisor noted that she was consistently the top producer in the office. Ms. Collier ranked 33 out of 557 agents (LIB 784).

For these reasons, this case is very different from the cases Lincoln cites regarding claimant credibility. Despite it being easily distinguishable, Lincoln relies heavily on *Seleine v. Fluor Corp. Long-Term Disability Plan*, 598 F. Supp. 2d. 1090 (C.D. Cal. 2009). *Seleine* was decided under the much more lenient abuse of discretion standard of review. Furthermore, while the plaintiff had an orthopedic condition, her treatment history was spotty; she relied "solely on passive care" and was not seeking "aggressive treatment" for her allegedly debilitating symptoms. This is not the case here. Ms. Collier did have surgery and could not be faulted for not having another one, especially after her first one was not successful.

PLAINTIFF'S RESPONSIVE TRIAL BRIEF UNDER FRCP 52

The *Seleine* facts are not present here. This case is being decided under the *de novo* standard of review with an "own occupation" disability definition, although Ms. Collier does maintain that given her impairments, she is precluded from any sedentary occupation. Unlike the plaintiff in *Seleine*, there exists no basis to question Ms. Collier's credibility, as her treatment history is long and detailed, her activities are consistent with her complaints, and her doctors unequivocally support her claim. Lincoln tries to support its denial by point out that Ms. Collier exercises. However, as evident from her own declarations and that of her personal trainer friend Lisa Tetreault, her level of activity falls far short of what Ms. Collier was previously capable of performing, and that she has actually stopped working out except for stretching and hot room exercises (LIB 74-75, 65-71, 336-339).

Lincoln's other "case support" is equally distinguishable. The majority involved the abuse of discretion standard of review, in which the reviewing court was obligated to defer to the claim administrator and its evaluation of the claimant's subjective complaints. No such deference is due here under *de novo* review. In *Kushner v. Lehigh Cement Co.*, plaintiff's disability claim was suspect because he was about to be laid off when he filed it.[2] Similarly, in *Langlois v. Metropolitan Life Ins. Co.*, the court found that the plaintiff "embellished" his claim when he discovered his benefits were in jeopardy, and was worried that the insurer might obtain his doctor's records, suggesting that he had something to hide.[3]

Lincoln also attempts to support its denial by making much ado out of Ms. Collier's differences in Range of Motion during the course of her treatment. However, this does not mean that she is not credible – in fact, this shows that she was always doing her best, and that occasionally, she benefited from the treatment she was prescribed, but never to the point where she was able to return to work.

_____

[2] *Kushner v. Lehigh Cement Co.*, 572 F. Supp. 2d 1183, 1190, 1193 (C.D Cal. 2008).
[3] *Langlois v. Metropolitan Life Ins. Co.*, 2012 WL 1910020 at *14 (N.D. Cal. May 24, 2012).

Lincoln has failed to point to a single piece of evidence in the record which would suggest, let alone demonstrate, that Ms. Collier is not genuinely reporting her symptoms. As such, there is no basis for a finding that Ms. Collier is anything other than fully credible.

**3.      The Opinions of Lincoln's Physicians Are Entitled to Less Weight than the Opinions of Ms. Collier's Treating Physicians.**

In its opening brief, Lincoln argues that the Court should rely on the findings of Lincoln's consulting and examining physicians in determining whether Ms. Collier is disabled. Lincoln also insinuates that the opinions from treating physicians are questionable because doctors must trust their patients, and thus the opinions of its doctors must prevail, and that, even if Plaintiff's doctors were entitled to more deference, they have found her to be capable of working. That is incorrect.

This case is being decided under the *de novo* standard of review, which means no physician is entitled to any deference, including Lincoln's physicians. Evidence from all doctors in this case must be given whatever weight it deserves according to its credibility and reliability. "Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Here, Ms. Collier's doctors had the opportunity to treat and observe her over a significant period of time. Although the opinion of a treating physician gets no special weight, the Court may take cognizance of the fact that a given treating physician has a greater opportunity to know and observe the patient than a physician retained by an insurance company to review papers. *Shaikh v. Aetna Life Ins. Co.*, 2020 WL 1430496 at *4 (N.D. Cal. Mar. 24, 2020). Such is the case here. Lincoln does not question the competence of Ms. Collier's physicians, who are

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

PLAINTIFF'S RESPONSIVE TRIAL BRIEF UNDER FRCP 52

16

board-certified in their respective specialties. The record demonstrates that they thoroughly evaluated Ms. Collier's complaints and put into place comprehensive treatment plans. Lincoln can offer the Court no reason to question their findings and conclusions. Lincoln attempts to convince this Court that Dr. Haronian stated that Ms. Collier could return to work, but that is misleading at best and does not take into account Dr. Haronian's permanent and stationary report and his subsequent opinion that she was unable to return to her previous job (LIB 329-330). Lincoln argues that Dr. Haronian and Dr. Kohan began treating Ms. Collier in the context of her workers' compensation claim, and somehow that made them unqualified to offer valid opinions regarding her restrictions and limitations. That is not true. *See, e.g., Booth v. Barnhart*, 181 F.Supp.2d 1099, 1105 (C.D. Cal. 2002) (holding that in a Social Security context, the ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim). Furthermore, there is nothing in the record to even suggest that Ms. Collier's physicians questioned the seriousness of her condition.

On the other hand, Lincoln's physicians did not spend significant time with Ms. Collier observing her condition. Dr. Chhatre never spoke to Ms. Collier[4], much less examined her, and Dr. Vlachos's IME lasted less than an hour, involved no testing, and was cursory at best. While Dr. Vlachos opined that Ms. Collier was able to sit during the exam and did not appear to be in a significant amount of pain

---

[4] Plaintiff contends that this review, obtained by Lincoln during the initial claim process, is irrelevant to the Court's inquiry, and any arguments raised by Lincoln referencing this review must be disregarded. Until Plaintiff's submission of her evidence was complete, any review was based on an incomplete record, and is irrelevant to the Court's decision making process. *Till v. Lincoln Nat'l Life Ins. Co.*, 678 Fed.Appx. 805, 811 (11th Cir. 2017) ("This Court, in line with several other Circuit Courts of Appeal, will consider only the reasonableness of an administrator's final decision." (citing, inter alia, *Khoury v. Group Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) (reviewing administrative appeal)).

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

(LIB 34), the facts say otherwise. Ms. Collier explained, after the IME, that while she can sit for 45 minutes (which she did tell Dr. Vlachos), it is "including with pain" (LIB 71), and that she had more pain in her upper body. *Id.* She emphasized that it is continuous repetitive motions that causes additional pain and even affects her sleep (LIB 70).

Dr. Vlachos's report also contains numerous mistakes and omissions, which call into question the accuracy of her report, and the credibility of her assessment. For example, she twice mentions that Ms. Collier had "well manicured fingernails, which had polish on from a nail salon." (LIB 32, 34). Ms. Collier stated that her nails were done by her daughter (LIB 68-69). Dr. Vlachos also stated that Ms. Collier arrived by herself (LIB 41). However, Ms. Collier's partner accompanied her, but was not permitted to be in the exam room with her (LIB 68). Dr. Vlachos stated that Ms. Collier had an epidural in her lower back (LIB 43), but Ms. Collier stated that she has not had a lumbar epidural to Dr. Vlachos (LIB 49). Dr. Vlachos prepared a report wherein she opined that Ms. Collier did not experience any side effects from her medications (LIB 38), but this conclusion was based on her own unsupported speculation.  Dr. Vlachos never inquired of Ms. Collier as to any medication side effects (LIB 70), nor did she inquire if Ms. Collier's ability to perform her job duties were impacted by the medications her physicians had prescribed. (*Id.*). Ms. Collier's declarations describe various impairing side effects, and Dr. Vlachos's own Review of Systems actually appears to note symptoms that are well-known to be associated with medications such as Norco and gabapentin. Dr. Vlachos's conclusions as to Ms. Colliers' ability to work a 40-hour work week was predicated on her having performed a less than an hour-long exam, wherein she supposedly observed that  Ms. Collier was able to sit for the duration of the exam and did not appear to be moving, fidgeting, or in any significant amount of pain (LIB 34). Ms. Collier explained in her declaration:

> As I sat in my seat talking with the doctor, the first thing I mentioned

was that I was in excruciating pain on the left side of my neck down into the shoulders and upper back, and also that I have been having the rectal issues. I was sitting at the edge of the front of the chair leaning forward, with my back swayed, and had pain when I turned my head. To relieve the pressure/pain, I often roll my head around, and I did that in the room. At times, I would stretch my legs out straight and flex them, which I find helps to relieve the pain on my left side, as well as crossing a leg over and pushing on my inside of knee to release the pain. But these movements do not appear to be moving or fidgeting in the doctor's opinion. She stated I was not in a significant amount of pain. Within the first ten minutes, she asked if I was experiencing pain and I had said yes, in my neck and rectal area, at which point I began to cry and she had to go out of the room to get me tissue. There is no mention of that. At best, her statement that I was not in pain is a mistake, and it worst, it's outright deliberately misleading.

(LIB 69).

As a result of the numerous inconsistencies in the IME report and lack of personal contact by the peer reviewer, the Court should give the findings of Lincoln's records reviewing physicians little to no weight[5], and view the ultimate conclusion of the IME report of Dr. Vlachos with appropriate skepticism[6], as the body of the report itself, as compared to the unsupported conclusion, lends itself to a finding that Ms. Collier is disabled at least from her own sedentary occupation. Furthermore, Plaintiff contends the reports of record reviewer Dr. Chhatre obtained by Lincoln during the initial claim process are irrelevant to the Court's inquiry, and any arguments raised by Lincoln referencing this review must be disregarded. Until Plaintiff's submission of her evidence was complete, any review was based on an incomplete record, and is irrelevant to the Court's decision-making process. *Till v. Lincoln Nat'l Life Ins. Co.*, 678 Fed.Appx. 805, 811 (11th Cir. 2017) ("This Court, in line with several other Circuit Courts of Appeal, will consider only the

---

[6] Lincoln suggests the report of the FCE provider, Dr. Jurado, should be disregarded because he has coincidentally examined two other individuals represented by Kantor & Kantor.  While no discovery was conducted in this *de novo* action, if it had been, the lack of any financial connection between Kantor & Kantor would have been established, (See Kantor Declaration, ¶¶ 2-9)  as would have the likely financial bias of Dr. Vlachos would likely have become evidence. Even without discovery, Plaintiff has ascertained that Dr. Vlachos performs IME work for at least three different vendors who cater to the insurance industry.  (*See* Kantor Declaration, ¶¶ 10.)  Disability carriers which live in glass houses should not be throwing stones.

PLAINTIFF'S RESPONSIVE TRIAL BRIEF UNDER FRCP 52

19

reasonableness of an administrator's final decision." (citing, inter alia, *Khoury v. Group Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) (reviewing administrative appeal)).

### 4.   The Declarations of Friends and Family Support Ms. Collier's Disabling Symptoms.

Lincoln asks the Court to give little weight to Ms. Collier's declarations and those of her family and friends. However, when considering a claimant's symptoms which are difficult to quantify, courts recognize the value of third-party witness statements. *Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 905 (considering third-party statements on the plaintiff's pain and cognitive problems); *Mueller v. CNA Group Life Assur. Co.*, No. C 03–1688 MHP, 2004 WL 1161173, *8 (N.D. Cal. May 24, 2004) (finding that CNA's decision was not based on sufficient reliable workers and supervisors"); *May v. Metro. Life Ins. Co.*, No. C 03-5056 CW2004 WL 2011460, *8 (N.D. Cal. Sept. 9, 2004) (MetLife abused its discretion by ignoring, among other evidence, witness statements describing how plaintiff's health affected her ability to work). Indeed, observations made by persons with first-hand knowledge can be useful in helping to understand how someone functions in activities of daily living on a daily basis: *McDonald v. W.-S. Life Ins. Co.,* 347 F.3d 161, 165 (6th Cir. 2003) (relying significantly on a witness statement that based on plaintiff's poor bridge playing skills, he believed plaintiff was disabled from working); *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 763 (7th Cir. 2010) (relying on family member letters describing how plaintiff's condition affected her everyday life); *DiPietro v. Prudential Ins. Co. of Am.*, 03 C 1018, 2004 WL 626818, *6 (N.D. Ill. March 26, 2004) (relying on letters from plaintiff's family, friends, and co-workers that plaintiff's condition made his work increasingly difficult and rendered him disabled).

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

Ms. Collier submitted her own written declarations along with detailed third-party declarations from three other people in support of her disability claim with excerpts set forth in her opening brief. All support her inability to work. If Lincoln believed the reports were factually inaccurate, it should have done something to further investigate the accuracy of the reports, rather than just ask the Court to disregard them, merely because they were not in line with Lincoln's self-serving narrative.

## IV. CONCLUSION

Ms. Collier requests that the Court provide her with the full and fair review that Lincoln failed to do, and to evaluate her from a whole person perspective. Ms. Collier is a hard-working woman who became unable to work in a career that she both loved and excelled at because of her debilitating medical conditions. She would never have chosen to forego her six-figure salary for the two & a half years of torment which Lincoln has put her through since she first submitted her claim for LTD benefits. The record shows that Ms. Collier is suffering from severe symptoms and she has left no stone unturned in her efforts to find treatments to alleviate her disabling pain. In her sworn statement submitted to Lincoln, Ms. Collier attested to the fact that she would like nothing more than to go back to the way she used to be. She misses her life before her disability, including her job, her hobbies and interests, and her relationships (LIB 336-339).

For the foregoing reasons, Ms. Collier respectfully requests that the Court award her LTD benefits, and medical coverage benefits consistent with the terms of her employer's benefit plan. She also respectfully requests an order that she be permitted to file a motion pursuant to ERISA § 502(g) for pre-judgment interest, and attorneys' fees and costs within 30 days of entry of judgment.

///

///

///

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

DATED: March 18, 2021                    KANTOR & KANTOR, LLP

                                          By: /s/ *Glenn R. Kantor*
                                              Glenn R. Kantor
                                              Zoya Yarnykh
                                              Attorneys for Plaintiff
                                              VICKI COLLIER

KANTOR & KANTOR, LLP
1050 Marina Village Pkwy., Ste. 105
Alameda, California 94501
(510) 992-6130

PLAINTIFF'S RESPONSIVE TRIAL BRIEF UNDER FRCP 52

22