UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES – GENERAL

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

PRESENT: The Honorable James V. Selna, U.S. District Court Judge

### HONORABLE JAMES V. SELNA, UNITED STATES DISTRICT JUDGE

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                    Not Present

### PROCEEDINGS: (IN CHAMBERS)
### Order Regarding Motion to Dismiss

In this case, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., Plaintiff Vicki Collier ("Collier") alleges that Defendant Lincoln Life Assurance Company of Boston ("Lincoln") improperly denied her claim for long term disability benefits. Compl., Dkt. No. 1. Both parties have filed opening briefs. Collier Opening Br., Dkt. No. 18; Lincoln Opening Br., Dkt. No. 19. Both parties have also filed responsive briefs and submitted proposed findings of fact and conclusions of law. Collier Resp. Br., Dkt. No. 25; Lincoln Reply Br., Dkt. No. 26.

For the following reasons, the Court **affirms** Lincoln's decision to deny Collier's benefits.

## I. BACKGROUND

This case concerns Collier's claims for entitlement to long-term disability benefits under the Automobile Club of Southern California ("AAA") Long-Term Disability Plan (the "Plan"). Collier Opening Br., Dkt. No. 18, at 1. Lincoln is the insurer of benefits

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

under the Plan. Id. The Plan is governed by ERISA and sponsored by AAA, Collier's former employer. Id.

Collier was employed by AAA from 2013 until 2018 in the position of Insurance Sales Agent. See id. Collier claims that she has been suffering from persistent and disabling cervical radiculopathy, lumbosacral radiculopathy, bilateral shoulder impingement, bilateral elbow tendonitis/bursitis, bilateral wrist tendonitis/bursitis, and migraine headaches. Id.

Under the Plan, Collier was entitled to receive monthly long-term disability benefits if, during the Elimination Period and the next 12 months, due to sickness or injury, she was unable to perform the substantial and material acts necessary to pursue her occupation in the usual and customary way. After that, to continue to receive the benefits, Collier must have shown she was unable to engage in any occupation she could reasonably be expected to perform in light of her age, education, training, experience, station in life, and physical and mental capacity. See Administrative Records ("AR"), Dkt. No. 17-1, at 1225.

## II. LEGAL STANDARD

In the Ninth Circuit, actions to recover benefits under ERISA are adjudicated by a bench trial under Federal Rule of Civil Procedure Rule 52(a). Kearney v. Standard Ins. Co., 175 F.3d 1084, 1095 (9th Cir. 1999). Under Rule 52(a), the Court can resolve factual issues in favor of either party, and it must "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a).

The standard of review in this case is de novo. Under the de novo standard, the Court independently considers the evidence, finds facts, and determines how the policy applies, just as it would resolve any other breach of contract claim. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112–13 (1989); Krolnik v. Prudential Ins. Co. of Am., 570 F.3d 841, 843 (7th Cir. 2009) ("'de novo review' is a misleading phrase. . . . For what Firestone requires is not 'review' of any kind; it is an independent decision rather than 'review' that Firestone contemplates. . . . [The] court takes evidence (if there is a dispute about a material fact) and makes an independent decision about how the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

language of the contract applies to those facts.").

"In a trial on the record, the court 'can evaluate the persuasiveness of conflicting testimony and decide which is more likely true.'" Armani v. Nw. Mut. Life Ins. Co., 2014 WL 7792524, at *8 (C.D. Cal. Nov. 25, 2014) (quoting Kearney, 175 F.3d at 1095); see also Schramm v. C.N.A. Fin. Corp. Insured Group Benefits Program, 718 F. Supp. 2d 1151, 1162 (N.D. Cal. 2010) (a court reviewing the administrative record "evaluates the persuasiveness of each party's case, which necessarily entails making reasonable inferences where appropriate.").

The Court may consider the administrative record, which consists of the materials the administrator considered in reaching its benefit determination, and "new evidence may be considered under certain circumstances to enable the full exercise of informed and independent judgment." Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 943 (9th Cir. 1995). "Plaintiff bears the burden of proof of showing, by a preponderance of the evidence, that she is entitled to the benefits provided by the policy except with regards to matters within the defendants' control." Popovich v. Metro. Life Ins. Co., 281 F. Supp. 3d 993, 997 (C.D. Cal. 2017) (citing Estate of Barton v. ADT Sec. Servs. Pension Plan, 820 F.3d 1060, 1066–65 (9th Cir. 2016)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

## III. EVIDENCE BEFORE THE COURT

The Court considers the evidence in the administrative record.

### A. FINDINGS OF FACT

#### 1. The Plan

AAA employed Collier as an Insurance Sales Agent. AR Dkt. No. 17-1, at 1. Lincoln issued Group LTD Policy No. GF3-860-444185-01 to AAA effective August 1, 2015. Id. at 1217. Pursuant to the Plan, a claimant must be continuously disabled through the Elimination Period to be eligible to receive benefits. Id. at 1221. The Elimination Period, according to the Plan, is the latter of 182 days or the date short-term disability payments end. Id.

Under the Plan, a disability arises when a claimant is "unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way." Id. at 1225. The Plan also requires that the claimant submit proof of disability on an ongoing basis to qualify for benefits. See id. at 1231, 1239, 1256.

The Plan defines "Substantial and Material Acts" as "acts that are normally required for the performance of the [claimant] Own Occupation and cannot be reasonably omitted or modified." Id. at 1228. "Own Occupation," according to the Plan, means "the [claimant]'s occupation that [s]he was performing when [her] disability or partial disability began." Id. at 1229.

The Plan provides benefits following the Elimination Period and for the 12 months thereafter. Id. at 1225.

After the elimination period and 12 months of payments, a claimant is disabled when Lincoln determines that due to sickness or injury, the claimant cannot perform, with reasonable continuity, the Substantial and Material Acts of *any occupation*. Id. Meaning, "the claimant is not able to engage with reasonable continuity in any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

occupation in which [s]he could reasonably be expected to perform satisfactorily in light of h[er] age, education, training, experience, station in life, and physical and mental capacity." Id.

The Plan's termination of coverage provision notes that coverage ends on the earliest of the following dates: (1) the date the policy terminates, (2) the date that the covered person is no longer in an eligible class, (3) the date that the covered person is no longer eligible for insurance, (4) the last day for which any required employee contribution has been made, (5) the date employment terminates (except when due to disability), or (6) the date the covered person ceases active work due to a labor dispute. Id. at 1252. The Plan further notes that termination of the policy under any of these conditions will not prejudice any claim that occurs while the policy is in force. Id. at 1253.

Active employment is defined as where "the [e]mployee [] [is] actively at work . . . on a full-time or part-time basis and paid regular earnings." The employee must be working at least the minimum number of hours described under the Schedule of Benefits (25 hours a week). Id. at 1223; id. at 1219. The Plan states "Active Employment" includes paid vacations and any excused leave of absence. Id. at 1223.

**2. Collier's Surgery and Last Day At Work – May 14, 2018.**

On July 25, 2017, Collier underwent a right shoulder rotator cuff surgery. Lincoln Opening Br., Dkt. No. 19, at 7. In November 2017, after time off work to recover, Collier returned to work. AR Dkt. No. 17-1, at 337. On May 14, 2018, Collier stopped working. Collier Opening Br., Dkt. No. 18, at 6.

In her declaration, Collier claimed that she started experiencing pain in her shoulders, back, neck, and head during 2015- 2016. AR Dkt. No. 17-1, at 66. In February 2017, Collier visited both a specialist and a general physician, who provided her with a letter requesting her employer to evaluate Collier's workstation for ergonomic adjustments. However, although the evaluation was done during that month, the recommended adjustments were not timely implemented. Id. Collier further alleged she informed both the Regional Sales Manager and Branch Manager of her pain and needed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|----------|------------------------|------|----------------|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

ergonomic adjustments to relieve her ongoing pain, yet it was never addressed by them. Id.

As the pain continued, Collier underwent an MRI that revealed a rotator cuff tear that was subsequently treated with surgery. Id. at 67.

A few weeks after returning to work in November 2017, Collier began experiencing pain in her right shoulder again. Id. Collier's Orthopedic Surgeon at the time, Dr. Sovarinth Tun ("Tun"), administered her a cortisone injection in her right shoulder. Id. Although this relieved the pain for a few weeks, Collier felt the pain was exacerbated in the long run, and both her right and left shoulders began hurting. Id.

On May 14, 2018, Collier revisited Dr. Tun and received a Work Status Report indicating she should not type or use both shoulders and arms. Id. at 1125. If her employer could not accommodate this, then Collier shall be considered temporarily and totally disabled. Id. Collier stated she contacted her Manager, who shortly after informed her that the restrictions indicated in her Work Status Report could not be accommodated. Id. at 68.

### 3. Collier's Medical Treatment

Collier received medical treatment from several physicians for her medical conditions. See generally, AR She also received physical therapy, magnetic resonance imaging ("MRI"), and was treated with prescription medications and steroid injections. Id. Her injuries can be categorized as (1) cervical spine and neck injuries, (2) lumbar spine and lower back injuries, (3) shoulder injuries, (4) elbow injuries, (5) wrist injuries, and (6) migraine headaches. Id.

(i)     Treatment by Dr. Tun

On or around July 2017, Collier sought medical treatment from Dr. Tun who specializes in Orthopedic injuries and surgeries. See AR, Dkt. No. 17-1, at 1112. Dr. Tun performed a right shoulder rotator cuff surgery on Collier on July 25, 2017. Lincoln Opening Br., Dkt. No. 19, at 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

After surgery, Tun placed Collier on total temporary disability through November 21, 2017, to recover from the operation. AR Dkt. No. 17-1, at 622.

Upon returning to work, Collier revisited Dr. Tun and received cortisone injections to both her right and left shoulders in an attempt to relieve the pain she complained to continue to experience and was gradually increasing. Id. at 411.

On May 14, 2018, Collier revisited Dr. Tun, and they discussed the possibility of a second surgery to Collier's right shoulder as treatment. Id. at 1119. The notes from that date state the Collier had "persistent Pain in bilateral shoulders" and that the plan to address it included: "Activity modification, Meloxicam, Norco, [w]ill be stopping her current job." Id. Upon Dr. Tun's examination, he found no atrophy with limited range of motion. Id. Dr. Tun issued Collier with a "Work Status Report" that specified the required activity modification, and read as follow: "Modified Activity (Applies to work and home). This patient is placed on modified activity at work and at home from 5/14/2018 through 7/15/2018. If modified activity is not accommodated by the employer then this patient is considered temporarily and totally disabled from their regular work for the designated time and a separate off work order is not required. Other needs and/or restrictions: No typing. No use of both shoulders and arms." Id. at 1125.

On July 6, 2018, Collier visited Dr. Tun again, who noted that Collier continued to complain about "persistent [p]ain in bilateral shoulder, [s]topped pain medications [, and] [d]oes physical therapy at Henry Mayo." Id. at 1113. Upon Dr. Tun's examination, he found no atrophy with limited range of motion. Id. Dr. Tun administered Collier with cortisone injections to both shoulders extended the modified activity until September 1, 2018. Id.

On August 27, 2018, Collier had a telephone appointment with Dr. Tun to go over her "diagnostic imaging results," during which Collier asked and received an extension of her modified activity until October 31, 2018. Id. at 1089–91. In that call, Dr. Tun reiterated the option to treat the pain with surgery, yet Collier explained that she is about to lose health coverage and therefore cannot do it. Id. at 1089.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

No record demonstrates that Dr. Tun treated Collier thereafter.

      (ii)    <u>Treatment by Dr. Haronian</u>

Beginning on September 5, 2018, in connection with a worker's compensation claim, Collier also sought care from Edwin Haronian, M.D., an Orthopedic Surgeon. Collier Opening Br., Dkt. No. 18, at 8; Lincoln Opening Br., Dkt. No. 19, at 9. Dr. Haronian diagnosed Collier with "Cervical spine radiculopathy [,] Lumbar spine radiculopathy [,] Bilateral shoulder impingement, status post right shoulder arthroscopy [,] Bilateral elbow tendinitis [, and] Bilateral wrist tendinitis. AR Dkt. No. 17-1, at 964. In the same visit, following his diagnosis, Dr. Haronian recommended to Collier to undergo neurodiagnostic testing of her upper and lower extremities, attend 12 sessions of physical therapy for her neck, black, shoulders, wrists, and hands, and also prescribed Collier two gabapentin, a nerve pain medication, at 300 mg. <u>Id.</u> at 965. Dr. Haronian allowed Collier to return to work but indicated that she "should not lift, push, or pull more than 10 pounds. She should not perform bending, twisting activities, or place the spine in unusual or awkward positions. She should not perform repetitive hand motions, pinching or grasping bilaterally." <u>Id.</u> The attached report indicated "[t]he patient should remain on Temporary Total Disability (T.T.D.) if the work modifications cannot be accommodated by the employer."

On October 10, 2018, Collier visited Dr. Haronian for a follow-up, during which he refilled her pain medication and indicated he is still waiting to receive Collier's MRI records. <u>Id.</u> at 953. In that meeting, Dr. Haronian also stated that Collier's current work restrictions will continue until her next visit, scheduled for four weeks from October 10, 2018. <u>Id.</u>

On November 14, 2018, Collier visited Dr. Haronian for another follow-up, where he reviewed Collier's 2016 cervical spine MRI that Collier has brought with her. <u>Id.</u> at 588. In that meeting, Dr. Haronian also stated that Collier's current work restrictions will continue. <u>Id.</u> Additionally, as Dr. Haronian did not have the Qualified Medical Examination ("QME") report from Collier's examination on October 11, 2018, a follow-up visit for "further recommendations" was scheduled for few weeks from November 16, 2018. <u>Id.</u> at 589.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

   On November 29, 2018, Dr. Haronian examined Collier again, following complaints of back pain, where he found some loss of motion. Id. at 591. As for the pain, Dr. Haronian noted that the Norco medication relieved Collier's pain by "at least 30-40%." Id. Following the exam, Dr. Haronian reiterated Collier's work restrictions. Id. at 592. In addition, Dr. Haronian referred Collier to Dr. Jonathan Kohan, M.D., an Orthopedic Pain Management Doctor, to further manage Collier's consumption of opioid medications. Id. at 593

   On January 31, 2019, Dr. Haronian met with Collier for a "comprehensive orthopedic evaluation." He gave the same diagnosis and same work restrictions. See id. at 917–27. During the visit, Dr. Haronian generated a "Permanent and Stationary Report of a Primary Treating Physician" report to summarize the evaluation. See id. The report describes the history of Collier's injury based on information obtained by Mr. Antonia Salazar – Dr. Haronian's medical historian. Id. at 622.

   Of note, Collier stated that "in [late] 2016, she developed the gradual onset of pain in her neck, shoulders, bilateral upper extremities, forearms, elbows, hands, wrists, back, head and lower extremities which she attributed to performing her job duties which for the most part entailed working at an ergonomically incorrect work station. She stated that she also developed hemorrhoids due to prolonged sitting at work on a chair that did not have padding." Id. Collier further reported, "[s]he worked 50-60 hours per week [. . . which] entailed prolonged standing and walking, as well as continuous fine maneuvering of her hands and fingers, and repetitive bending, stooping, squatting, twisting, turning, forceful pulling and pushing, forceful gripping and grasping, lifting and carrying 5 pounds, reaching to all levels." Id. at 918. The report noted that Collier was not working and that her last day at work was May 25, 2018. Id. The Court notes that Collier's last day at work was May 14, 2018, as both parties agree. Collier Opening Br., Dkt. No. 18, at 1; Lincoln Opening Br., Dkt. No. 19, at 7.

   Dr. Haronian concluded that Collier's diagnosis remains the same and that "further conservative treatment is unlikely to provide [Collier] with improvement in her condition. She has reached a level of maximum medical improvement as well as permanent and stationary status." AR Dkt. No. 17-1, at 924.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

Moreover, Dr. Haronian stated, "[a]s it relates to causation, it is with reasonable medical probability, [Collier] has sustained injuries to the cervical and lumbar spine, bilateral shoulders, bilateral elbows, and bilateral wrist due to her continuous trauma activities that occurred at work" and "in regard to the cervical and lumbar spine, I would apportion 20% due to preexisting degenerative changes [. . .] and 80% due to the direct effect of the continuous trauma injury. For the bilateral shoulders, bilateral elbows, and bilateral wrist, 100% of [Collier] disability is the direct effect of the continuous trauma injury." Id. at 925.

Regarding Collier's work restrictions, Dr. Haronian determined she "can return to work with the restrictions that have been provided, however, if the employer is unable to accommodate the work restrictions, then the patient can be considered a [Qualified Injured Worker]." Id. at 924.

On December 11, 2019, Dr. Haronian met with Collier for a follow-up visit because she was still complaining of residual pain. Id. at 214. In his report on the visit, Dr. Haronian stated that Collier has been declared "permanent and stationary" and that "her condition is essentially unchanged." Id.

(iii)   Treatment by Dr. Kohan

Collier was also seen by Dr. Jonathan Kohan, M.D., an Orthopedic Pain Management Doctor, on December 13, 2018, for pain management evaluation. Id. at 942. Collier complained to Dr. Kohan that she has been experiencing, mainly, pain in the (1) neck, (2) both shoulders, (3) both elbows, (4) both hands, (5) back, (6) knees, and (7) ankles. Id. 937–38. Collier also reported to Dr. Kohan that her "[n]eck pain constant[ly] increasing by any sitting, standing, driving, any lifting, pushing, pulling, over-the-shoulder activity," and that her "[l]ow back pain has recently exacerbated and has been associated with significant lower extremity pins and needles sensation, tingling sensation, and numbness and cramping." Id. at 942. Additionally, Collier stated that one 5 mg Norco per day had helped her with "severe breakthrough pain that happens at the end of the day after she is active." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

Upon examining Collier, Dr. Kohan found (1) tenderness and moderate spasm over the lumbar spine, (2) normal reflexes and normal motoric in the upper and lower extremities, (3) decreased sensation over C5 and C6, and (4) normal range of motion of the cervical spine, neck, and shoulders. Id. at 942.

Collier met with Dr. Kohan again, on January 29, 2019, for a follow-up visit where Dr. Kohan reviewed Dr. Arora's QME report (see Section 6 below). Id. at 929. In that visit, Dr. Kohan opinioned that Collier's neck and back pain were reasonably determined to be work-related, notwithstanding Dr. Arora's belief that Collier's back, neck, and hemorrhoids were not caused by Collier's work duties. Id. at 929–30.

> (iv)    Physical Therapy

Collier was first referred to physical therapy on August 29, 2014, and then again on June 15, 2016. Id. at 109, 111. For her neck, Collier attended physical therapy from October 19, 2016, to November 12, 2016. Id. at 114. For her shoulders, Collier attended physical therapy from July 31, 2017, to October 12, 2017. Id. at 118.

> (v)    Magnetic Resonance Imaging ("MRI") Testing

Collier underwent three MRIs: (i) Cervical Spine MRI; (ii) Right Shoulder MRI; and (iii) Lumbar Spine MRI.1

The Cervical Spine MRI, on October 8, 2016, found "straightening of normal lordotic curvature," "a 1 mm broad-based posterior disk bulge at C3-C4 level indenting the anterior aspect of the thecal sac," "a 2 mm central posterior disk protrusion at C4-C5 level causing pressure over the anterior aspect of the thecal sac," "a 2 mm broad-based posterior disk/endplate osteophyte complex at C5-C6 level causing pressure over the anterior aspect of the thecal sac," and "a 2 mm broad-based posterior disk protrusion at C6-C7 level causing pressure over the anterior aspect of the thecal sac." Id. at 502. Lastly, the MRI showed "mild narrowing of the left neural foramen and moderately significant narrowing of the right neural foramen." Id. at 503.

---

1 Collier stated to one Dr. Choudhury that she also underwent a brain MRI, in 2006, but no further information is in record. See AR, Dkt. No. 17-1, at 118.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

The right shoulder MRI, on July 5, 2017, found "9 mm A.P. approximately 50% partial-thickness articular surface supraspinatus tendon tear on a background of moderate tendinosis," "[i]nfraspinatus and superior fiber subscapularis mild tendinosis," "[p]roximal long head of biceps mild Tendinosis," "[m]inimal subacromial subdeltoid bursitis," and "[a]cromioclavicular joint osteoarthrosis." Id. at 507.

The Lumbar Spine MRI, on February 15, 2019, found "impression anterior osteophytes at T12 down through L.S.," "[m]ild disc desiccation at L2-L3 down through LS-51," "[a]nterior loss of disc height [. . .] at L5-Sl," "[l]eft lateral annular fissure," and a "mild disc bulge [. . .] at L5-Sl measures 2.6 mm." There was no significant disc herniation or neural foraminal narrowing, the spinal canal was patent, and the exiting nerve roots were found normal. Id. at 500.

(vi)   QME by Dr. Arora

Collier underwent a Qualified Medical Examination ("QME") by Ripu Arora, M.D., a Pain Management Anesthesiologist, on October 11, 2018, in connection to Collier's workers' compensation claim. Id. at 410. On that day, Dr. Arora claimed not to have Collier's medical records to determine Collier's potential impairment, its causation, permanent and stationary status, apportionment of liability, or make any recommendations. Id. at 420. Thus, Dr. Arora only examined Collier that day and noted the following:

- Neck: "there is no obvious deformity. Movements of the neck with flexion of 40 degrees, extension 40 degrees, bilateral rotation 65 degrees, lateral bend 20 degrees, and there is a trigger point spasm with tenderness at the left side on the multifidus. Spurling's test is negative." Id. at 420.
- Right shoulder: "flexion 170 degrees, extension 45 degrees, abduction 110 degrees, adduction 30 degrees, external rotation 40 degrees, and internal rotation 90 degrees." Id.
- Left shoulder: "abduction 180 degrees, adduction 40 degrees, flexion 180 degrees, extension 55 degrees, and external rotation and internal rotation 90 degrees." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

- ▪ Back: "Movements of the spine, flexion 60 degrees, extension 20 degrees, bilateral rotation 70 degrees, lateral bend 20 degrees each, and straight leg raising is negative, and Faber's test is negative. However, there is some tenderness noticed at the sacroiliac joint bilaterally." Id.

Furthermore, after conversing with Collier, Dr. Arora noted that Collier is complaining about neck pain; lower back pain that has recently been getting worse when she drives for hours, sits, or fly for hours; and, pain in different areas of her "head, neck and buttocks in 6-7/10 and sometimes reaches 10/10." Additionally, Collier said her headaches were gone since her Botox injections and that her hemorrhoids have healed. Id.

Upon receiving Collier's medical records on October 24, 2018, Dr. Arora noted, "there are a lot of differences between [Collier's] history provided to me at the time of the October 11th examination and the medical records provided to me [today]." Id. at 378–79. Notably, Dr. Arora asserted that although Collier told him that her shoulder, neck, elbow, lower back, and hemorrhoids started in 2017, her medical records indicated she had experienced these pains since 2005 and on. See id. Dr. Arora concluded that, after reviewing Collier's medical records, "the back pain and the neck pain as well as hemorrhoids are not out of [AAA's] employment." Id. at 379. As for the right shoulder injury, Dr. Arora concluded it "is related out of [AAA's] employment, as a continuous trauma from March 27, 2015, to July 25, 2017[,]" and that Collier "reached permanent and stationary regarding her right shoulder since October 31, 2017." Id. at 380. Lastly, Dr. Arora set Collier's whole person impairment at 0% per lower back, 5% per cervical spine, 0% per left shoulder, 4% per right shoulder – for a total of 9% impairment. Id. at 380–81. The only limitations Dr. Arora articulate were "avoid any heavy lifting more than 20 pounds and reaching above her head." Id. at 381.

**4. Collier's Short-Term Disability**

There is no indication in the records or in the pleading papers by either party that Collier applied for short-term disability benefits. See generally, AR Dkt. No. 17-1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

## 5. Collier's Long Term Disability Claim

Collier submitted her long-term disability claim on February 12, 2019. Id. at 1.

Subsequently, Lincoln obtained Collier's job description and conducted an occupational analysis by Senior Vocational Rehabilitation Consultant Jane G. Howard on March 2, 2019. Id. at 1155-57.

Ms. Howard determined that Collier's occupation in the national economy was most consistent with Insurance Sales Agent (Dictionary of Occupational Titles "DOT": 250.257-010). Id. at 1156. As described in DOT, the occupation of an Insurance Sales Agent typically performed in both the sedentary and light physical demand environments. Physical demands in sedentary environments include: (1) "[c]onstant sitting"; (2) "[f]requent handling and fingering"; (3) "[n]o and Occasional standing, walking"; (4) "[n]o reaching (reaching can be eliminated by moving objects an ergonomically correct distance from the body), bending/stooping, twisting, kneeling, crouching/squatting, crawling, climbing or balancing." Id. Physical demands in light environments include: (1) "[f]requent standing, handling, and fingering"; (2) "[o]ccasional and Frequent reaching, sitting"; (3) "[o]ccasional, walking, bending/stooping, twisting"; (4) "[n]o climbing, kneeling, crouching/squatting, crawling or balancing." Id. at 1157.

Lincoln then referred all of Collier's medical records to a review by a third party, Network Medical Review Co. Ltd. ("NMR"). Id. at 900–05. The paper peer review was done on May 8, 2019, by Akhil Chhatre, M.D., a Physical Medicine and Rehabilitation Specialist. Id.

In his report, Dr. Chhatre concluded that based on the evidence in Collier's orthopedic assessments and imaging results, "the severity and scope of [Collier's] reported pain . . . are not in line with the chronic and stable conditions that are supported by the medical evidence," and that "[f]rom 05/15/18 to the present, there are no supported impairments." Id. at 903. Accordingly, "[Collier] can work full time (8 hours/day, 5 days/week) without restrictions." Id. Dr. Chhatre supported his conclusion by noting that Collier's "MRI of the cervical spine is from 2016, without any updated findings since then. The right shoulder MRI is undated. [Collier] has stable exam findings with no new

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

diagnostic testing or exam changes to suggest an acute neurologic or (musculoskeletal) M.S.K. derangement." Id. Dr. Chhatre made no reference to Collier's Lumbar Spine MRI from February 15, 2019. See id. at 900–05. The Court also notes that the right shoulder MRI is dated July 5, 2017. Id. at 507.

Dr. Chhatre did not support his determination by a further finding of his own. See generally id. at 900–05. Dr. Chhatre stated he called Collier's treating physicians, Dr. Haronian and Dr. Kohan, to discuss his determination, and left voice mail messages four times – asking for a callback, but did not receive a call back from either. Id. at 901.

After determining that Collier had not been disabled since leaving work on May 14, 2018, Lincoln denied Collier's claim on May 9, 2019, explaining that "[b]ased on the medical documentation received in relation to the requirements of your occupation, you do not meet the definition of Disability[…]. Thus no benefits are payable and we must deny your claim." Id. at 994–99. The letter explained how Disability is defined in the Plan, stated the findings of Lincoln's consulting physician (Dr. Chhatre), the vocational review that the Court has already described, and detailed how Collier could appeal Lincoln's decisions. Id.

**6. Appeal**

On July 18, 2019, Collier submitted a notice of appeal to Lincoln. Id. at 872. On October 24, 2019, Collier submitted additional information to support her appeal, including: (1) a report from Dr. Haronian, responding to Dr. Chhatre's peer review report; (2) declarations by Collier's domestic partner, her daughter, and her friend – all attesting to Collier's daily physical limitations; (3) report of Collier's Functional Capacity Evaluation ("FCE"), conducted on September 12-13, 2019. Id. at 850–55.

Each of the supporting documents is summarized below.

(1) In response to the report from Dr. Chhatre, Dr. Haronian submitted a rebuttal report on October 1, 2019, mainly noting (i) Dr. Chhatre is not an Orthopedic Surgeon, but a Physical Medicine Rehabilitation Specialist; (ii) Dr. Chhatre did not physically examine Collier before issuing his report; (iii) Dr. Chhatre's findings

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

were contradicting to those articulated by the QME that found 9% whole person impairment in Collier; and (iv) Dr. Chhatre seemed to ignore the fact that regardless of the fact Collier's back and neck injuries were present prior to her job, she was currently suffering from pain. Id. at 330.

(2) Of note, the following declarations were made by Collier's family members and her friend:

Collier's domestic partner of 9 years, Mr. Duane Raha, declared under penalty of perjury on August 23, 2019:

> After a few years of working at AAA Insurance, [Collier] would come home complaining of discomfort in her neck and shoulder area. It progressively got worse, and I would accompany her to her doctors' visits. After several months, there were times [Collier] could not sleep due to the pain she was experiencing. [. . .] The pain continued to get progressively worse and since the pain was in her neck and shoulders, we could no longer continue our tennis or running activities, and on occasion we could only go for walks instead. The activities at the gym slowed down as did the yoga classes we attended. Our traveling is nonexistent because [Collier] can no longer ride in a car for more the[n] 30 minutes as the pain has now traveled to her lower extremities. Her recent trip to Georgia to see her daughter made her feel incapacitated for days afterwards. Id. at 348.

Collier's daughter, Ms. Nicolette Collier, declared under penalty of perjury on August 15, 2019:

> This past year has been super difficult on my mom because of the pain in her shoulders and back that has affected her everyday life in numerous ways. Going from working many hours and exercising a couple of hours a day, my mom's exercise now consists of walking her dog around the block once or twice a day, and a lot of stretching, including stretching in a heated room. [. . .] In order to visit my mom on weekends while I am away at college, I have to figure out rides there and back home because it is too painful for my mom

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

to drive three hours to San Luis Obispo to visit me. While we were on a plane to visit my sister in Georgia recently, I saw the complete irritation and pain that my mother's leg was causing her during our flight. Every so often she had to get up and stretch by pacing around the plane, poking/massaging her leg, and stretching as far as she possibly could with the limited space just to get a few minutes of respite without this severe pain. The strength my mother once had is deteriorating and she seems hopeless. Id. at 343–44.

Collier's friend of 13 years, Ms. Lisa Tetreault, declared under penalty of perjury on February 25, 2020:

About three-four years ago, [Collier] started complaining that something was causing pain in her neck and shoulder. The pain continued and seemed to get worse. She completely stopped any exercises that focused on her upper body. She also complained that she couldn't sleep at night because the pain was so intense that it kept her up. She described it as a migraine-type pounding headache. It got to the point it was so bad that she stopped working out. She never had a problem performing any exercises prior to this. [Collier] said she visited the chiropractor, on my recommendation, her primary doctor and then a specialist where they found she needed shoulder surgery. After surgery, she continued to work but seemed to get worse and more body parts were affected. It was then she discovered it may be her environment at work. From three years ago to now [Collier] has changed in so many ways physically. She can no longer work out as she once did. She has confided in me that she has been on pain pills for a very long time. Id. at 74.

(3) On September 12-13, 2019, Collier underwent an FCE conducted by Dr. Sebastian Jurado, D.P.T. (Doctor of Physical Therapy). AR Dkt. No. 17-1, at 707–44.

After conducting the evaluation, Dr. Jurado noted: "Although [Collier] presented with functional limitations on the first day of testing, her performance and activity tolerance declined on day 2." Id. at 709. Furthermore, Dr. Jurado elaborated: "Although the client did not have a significant increase in heart rate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

after functional tasks on day 2 of testing, the client presented with higher levels of pain and observable pain postures limiting her ability to complete some of the activities." Id.

Dr. Jurado then concluded: "Based on testing, [Collier] is unable to perform sedentary work as she is unable to maintain static sitting for approximately 2 hours continuously and up to 6 hours a day." Id.

Following Collier's appeal and her submission of additional supporting documents, Collier was asked to undergo an Independent Medical Examination ("IME"). Id. at 277–95. The examination was done on January 27, 2020, by Katrina M. Vlachos, M.D., Physical Medicine and Rehabilitation specialist. Id.

In the physical examination of Collier, Dr. Vlachos detailed, *inter alia*, the following findings:

- On evaluation of the cervical spine, there is no loss of normal cervical lordosis, no abnormal curvatures, there is active cervical range of motion is with flexion to 45 degrees, extension to 30 degrees, and rotation to 45 degrees bilaterally. No tenderness was noted of the cervical paraspinal muscles nor in the parascapular region. There was mild tightness along the trapezius bilaterally. Id. at 287.

- On evaluation of the right shoulder, there was no tenderness along the anterior or posterior shoulder. Right shoulder range of motion was 130 degrees of abduction, 80 degrees of external rotation, and 60 degrees of internal rotation. There was no pain with resisted internal or external rotation, nor with Speed's test, but some pain with Hawkins' test on the right shoulder. Id.

- On evaluation of the left shoulder, abduction was 30 degrees, external rotation was 80 degrees, and internal rotation 30 degrees before Collier noted discomfort. There was pain with Hawkins' and Speed's test on the left shoulder. Id.

- On evaluation of the right elbow, flexion was 140 degrees, extension 0 degrees, supination and pronation were 70 and 80 degrees bilaterally. There was no pain or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

limitation with range of motion on the right side. There was tenderness along the lateral epicondyle on the right side, but no tenderness along the medial epicondyle and no pain on the right side with resisted finger extension. Id.

- On evaluation of the left elbow, there was full range of motion with pain noted with supination. There was tenderness along the medial and lateral epicondyles and pain with resisted finger extension. Id.

- On evaluation of both wrists, range of motion was 60 degrees of flexion bilaterally, 60 degrees of extension bilaterally, radial and ulnar deviation were 20 and 30 degrees bilaterally. Id. at 287–88.

  ☐ On evaluation of the right wrist, there was no swelling or discoloration noted, and no tenderness to palpation. There was no pain or limitation on range of motion. There was tenderness to palpation along the dorsal aspect of the wrist. Id.

  ☐ On evaluation of the left wrist, there was discomfort with flexion, but no limitation in motion. Id.

- There were full flexion and extension of the fingers on both hands. Id. at 287.

- There was no significant overreaction during the examination. Id. at 289.

Furthermore, Dr. Vlachos stated in her report: "It is my opinion based on these MRI findings that [Collier's] symptoms appear to be out of proportion to what would be expected based on [the right shoulder and cervical spine] MRI findings. [Collier's] upper extremity pain would not be consistent with the cervical MRI as there was no significant neural foraminal narrowing and that the findings on cervical MRI appeared to be relatively minor. Additionally, [Collier] has been off work for over one year and she continues to have significant symptoms with no apparent improvement upon rest and not working." Id. at 290.

With it, Dr. Vlachos detailed the following medical restrictions for Collier: (1) can

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

sit up to 30 minutes at a time, after which she will need to take a 5-minute break before resuming sitting; (2) can stand or walk up to 30 minutes at a time, after which she will need to take a 5-minute break before resuming her standing or walking; (3) can sit for a total of 6-8 hours a day; (4) can walk or stand for a combined 4 hours total in an 8 hour day; (5) can lift and carry up to 10 pounds "occasionally"; (6) can push and pull up to 20 pounds "occasionally"; (7) perform tasks with regards to fingering, feeling, gripping, and grasping on an "occasional" basis. Id. at 292–93. These restrictions, Dr. Vlachos noted, "would likely be permanent." Id. at 293. Dr. Vlachos recommended "an ergonomic workstation and a sit-stand at desk, so [that Collier will be] able to change positions frequently as this would mitigate her symptoms such that she would be in less pain and be able to function at a higher level." Id.

Finally, Dr. Vlachos concluded that Collier "can work full time, 8 hours per day, 5 days per week, for a total of 40 hours per week with the restrictions and limitations outlined." Id. at 294.

In response to Dr. Vlachos' report, Collier submitted her declaration, which states in its pertinent parts:

"Changing positions from sitting to standing will not show difficulty unless I am asked to do it over and over again. [. . .] It is the repetitive motion over and over again for 8, 10, or 12 hours a day. It is the repetitiveness my body cannot withstand (sitting, standing, keying, gazing, writing, looking right to left). I simply cannot do this. [. . .] The doctor evaluation consisted of a total of 50 minutes. There was no repetitive testing done." Id. at 69.

Lincoln denied Collier's appeal on April 16, 2020. Id. at 12–19. The letter explained that although Lincoln acknowledges that Collier's physical conditions may have caused her some impairments, her medical records do not include support that shows her impairments were rendering her from performing her occupational duties through and for 12 months after the Elimination Period under the Plan. Id. at 17. It also relied on the findings by Lincoln's consulting physician, Dr. Chhatre, and the finding from the IME, by Dr. Vlachos, as grounds for denial – including mentioning of no new exam findings to support acute derangements and various recommendations for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

accommodations that will enable Collier to preform her occupation in a part-time capacity. Id. at 13–17.

## IV.  DISCUSSION

On de novo review, the Court must decide whether the claim decision was correct under the terms of the Plan based on the administrative record as it existed when the decision was made. See Kearney, 175 F.3d at 1090 ("[T]he record that was before the administrator furnishes the primary basis for review."). It is at all times a plaintiff's burden to support and prove her claim. Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 63 F. Supp. 2d 1145, 1157 (C.D. Cal. 1999), aff'd, 380 F.3d 869 (9th Cir. 2004), abrogated on other grounds by Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir.2006) (en banc).

The Court finds that Lincoln properly denied Collier's LTD benefits because Collier failed to show, based on the administrative record at the time as existed when the decision was made, that she was "disabled" and therefore unable to perform her job under the terms of the Plan during the Elimination Period and the 12 months thereafter. Therefore, as explained below, Lincoln's claim denial is affirmed.

On de novo review, a court must "evaluate the persuasiveness of conflicting testimony and decide which is more likely true." Kearney, 175 F.3d at 1095. "[A] true medical diagnosis does not by itself establish disability." Jordan, 370 F.3d at 880. "Rather, a claimant must prove tha[t] her impairment is disabling, using objective and subjective medical evidence in the record." Popovich, 281 F. Supp. 3d at 1003 (citing Seleine v. Fluor Corp. Long–Term Disability Plan, 598 F. Supp. 2d 1090, 1101–02 (C.D. Cal. 2009)). There is no presumption in favor of a claimant's treating physician. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) ("[I]f a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled,' . . . [therefore] courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician."). Although there is no clear binding guidance on resolving such conflicts, one court in this District has held that the "credibility of physicians' opinions turns not only on whether they report subjective complaints or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

objective medical evidence of disability, but on (1) the extent of the patient's treatment history, (2) the doctor's specialization or lack thereof, and (3) how much detail the doctor provides supporting her or her conclusions." Shaw v. Life Ins. Co. of N. Am., 144 F. Supp. 3d 1114, 1129 (C.D. Cal. 2015).

Here, the parties dispute whether Collier was disabled from performing her job, as defined by the Plan.

## A. COLLIER'S BURDEN OF PROOF

To receive initial LTD benefits under the Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B), Collier must prove she was disabled for the Elimination Period and for 12 months thereafter, i.e., from May 15 until November 15, 2019. See id. at 1225. Collier would be considered disabled under the Plan if she can prove by a preponderance of the evidence that due to her injuries, she could not perform acts that are normally required, and could not be reasonably omitted or modified, from an Insurance Sales Agent. See id. The proof of Collier's disability must be furnished to Lincoln in writing. Id. at 1256.

The Court finds that Collier did not meet her burden of proof by showing that she was disabled for the Elimination Period and for 12 months thereafter from performing her job as an Insurance Sales Agent.

Collier asserts that she was entitled to LTD benefits under the Plan mainly because during the Elimination Period and for 12 months after (1) she experienced constant pain, (2) each of her treating physicians issued her work restrictions that precluded her from being able to perform her occupation, (3) the FCE expressly indicated that she could not return to work, (4) the medications Collier consumed prevented her from being able to cognitively function at work, and (5) she is credible. Collier Opening Br., Dkt. No. 18, at 7–12.

The Court considers each of Collier's assertions in turn.

### 1. Collier Subjective Complaints of Pain

Collier correctly asserts that nothing in the Plan or relevant case law demands

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

objective medical evidence for a claimant to be entitled to LTD benefits. Collier Resp. Br., Dkt. No. 25, at 6; see generally AR Dkt. No. 17-1, at 1217–59; Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 678 (9th Cir. 2011) (finding that a disability insurer cannot condition coverage on proof by objective indicators).

However, the Court also notes that subjective complaints alone cannot establish disability. Instead, evidence of subjective reasonable complaints can be relied on only when a physician finds objective medical support for it. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) ("a claimant will not be considered disabled based solely on subjective complaints of pain. The claimant must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'") (citing 42 U.S.C. § 423(d)(5)(A) (1988)).

Here, Collier's medical records establish her subjective complaints of pain. See AR Dkt. No. 17-1, at 106–129, 359–76. Yet, two factors prevent the court from relying on those complaints. First, scarce objective medical support exists for Collier's ailments and her complaints of pain. See Section 2 *infra*. Second, Collier's questionable credibility, as evident from her spontaneous statements to her doctors throughout the period at issue, further calls her subjective complaints into question. Shaw, 144 F. Supp. 3d at 1128 ("At the same time, the prospect of receiving disability benefits based on an ailment whose extent is objectively unverifiable provides a strong incentive to falsify or exaggerate ... [;] assessment of the claimant's credibility thus becomes exceptionally important' in such cases.") (citing Fair v. Bowen, 885 F.2d 597, 602 (9th Cir.1989)). Both factors are addressed below.

Thus, although Collier's medical records establish her subjective complaints of pain, without more, the Court cannot rely on this evidence to find disability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

## 2. Treating Physicians' Work-Restrictions

One of Lincoln's main reasons for denying Collier's application for LTD benefits under the Plan is that her treating physicians – Drs. Tun, Haronian, and Kohan never determined that Collier could not work but simply issued her with "common-sense restrictions" that AAA could accommodate. Lincoln Opening Br., Dkt. No. 19, at 25. Although limited in scope, Collier asserts, these restrictions disabled her completely from performing the material duties of her occupation and could not be accommodated. Collier Resp. Br., Dkt. No. 25, at 7.

The Court finds that the work restrictions were based mostly on subjective evidence, i.e., physical examination findings that rely entirely on Collier's stated sensations, because (1) Collier did not produce any other reports for comparison with earlier testing (from 2016 and 2017) – to suggest deterioration in her once-tolerable conditions, (2) Collier did not undergo any objective testing during the Elimination Period, and (3) Collier produced only one Lumbar MRI in February of 2019. See AR Dkt. No. 17-1, at 113, 117, 118–29.

In addition, Collier failed to show that the limited work restrictions could not be accommodated by AAA – as required by the Plan. Id. at 1228.

(i) Dr. Tun's Mere Reliance on Collier's Subjective Statements in Summarizing Findings and Issuing Restrictions

Dr. Tun, from May 14, 2018, to November 1, 2018, provided Collier with work restrictions that prevented her from use of her shoulders and arms, and from typing. Lincoln Reply Br., Dkt. No. 26, at 8. Those restrictions were primarily based on residual pain from a prior right shoulder rotator cuff surgery – that Collier said she was experiencing, on a limited range of motion – founded on Collier's statements with respect to her movement abilities, and on prescriptions of pain medications. See AR Dkt. No. 17-1, at 1115, 1117, 1091.

Hence, Dr. Tun's work restrictions were based on Collier's subjective complaints where he did not rely on any objective findings, such as post-surgery MRIs, X-Rays, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

the like. The Court has already discussed its reasons behind discounting Collier's subjective complaints.

Further, even if the Court were to consider Dr. Tun's restrictions as objective evidence, Dr. Tun still "deemed [Collier] able to return to work at full capacity on 11/1/2018" – approximately two weeks before the elimination period. Id. at 1091.

(ii) Dr. Haronian's Main Reliance on Collier's Subjective Statements in Summarizing Findings and Issuing Restrictions

Like Dr. Tun, from September 5, 2018, until February 15, 2019 (the date of Collier's Lumbar MRI), Dr. Haronian also relied on Collier's subjective complaints of pain in conducting his exams and issuing Collier's work restrictions. See id. 99–105; Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 869 (9th Cir. 2008) (noting that even one relevant MRI from the period at issue can serve as objective support for subjective evidence). Unlike Dr. Tun, Dr. Haronian expressly stated that Collier "may return to the workplace, but should not lift. . .." AR Dkt. No. 17-1, at 965.

Both Dr. Tun and Dr. Haronian indicated that Collier should be considered totally and temporarily disabled if her employer cannot accommodate her work restrictions. e.g., id. at 925, 1125.

To this point, notwithstanding Collier's assertion that she contacted her Manager on or around May of 2018 to ask whether AAA could accommodate her restrictions and was answered in the negative, there is no other record to show that AAA indeed refused to modify Collier's work duties or accommodate her work restrictions. See id. at 68, 1256.

(iii)     No Work Restrictions by Dr. Kohan

Finally, as Lincoln correctly noted, Dr. Kohan did not provide any functional limitations for Collier but simply sided with the FCE findings – with no explanation for his support. Lincoln Reply Br., Dkt. No. 26, at 14–15; AR Dkt. No. 17-1, at 334.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

While Collier's subjective evidence cannot be disregarded if her credibility remains intact, physical exams by physicians are sufficient to prove Collier was under appropriate care and treatment but are insufficient to serve as the entire objective evidence that is required. See Fair, 885 F.2d at 602 (finding that the assessment of the claimant's trustworthiness becomes extremely important in excess pain cases); Voight v. Metro. Life Ins. Co., 28 F. Supp. 2d 569, 580 (C.D. Cal. 1998) (denying subjective claims where treating physicians' opinions suffered from a lack of diagnostic precision and objective support).

Considering no objective testing was done until February of 2019, where Collier's treating physicians relied on her subjective complaints in issuing the work restrictions, and where Collier did not furnish proof that her restrictions could not be modified by AAA, the Court finds Collier failed to establish sufficient objective support for her subjective evidence.

In oral argument before the Court, plaintiff counsel reiterates that Collier's prior objective testing – before her shoulder surgery – is sufficient proof to support her subjective complaints during the elimination period.

However, controlling case law indicates otherwise. Objective medical evidence supporting disability is found when EMG testing, MRI exams, and X-Rays are provided *post*-surgery – to most accurately reflect a current condition than a prior one. See Sterio v. HM Life, 369 F. App'x 801, 804 (9th Cir. 2010) ("An EMG test confirmed that Sterio had right sciatic neuropathy after her last hip revision surgery. Two MRI exams revealed excess metal artifacts in Sterio's pelvis region. Two x-ray exams revealed bone thinning in Sterio's right foot."); Scoles v. Intel Corp. Long Term Disability Benefit Plan, 657 F. App'x 667, 669 (9th Cir. 2016) (requesting an *updated* objective medical finding, to determine eligibility for benefits).

Therefore, some objective proof, other than mere pre-operation testing, is required to support Collier's subjective complaints during the elimination period.

In addition, during oral argument, plaintiff counsel reiterated the argument that Collier was disabled because she had work restrictions that prevented her from typing –

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

an allegedly material action that comprised 85% of Collier's time at work.

First, similar to Collier's complaints regarding her neck, shoulder, and back injuries, Collier failed to provide any objective proof that she is suffering from a medical condition in her wrists and fingers which prevents her from typing. Shoulder surgery is not dispositive for the use of one's hands. See Ermovick v. Mitchell Silberberg & Knupp LLP Long Term Disability For All Emps., 472 F. App'x 459 (9th Cir. 2012) (Notwithstanding it being a "any occupation" case, indicating that cautious statements from physicians stating that plaintiff face long-term difficulties with certain movements do not necessarily determine plaintiff cannot preform their job). To the extent that Collier relies on some assertion that her neck, shoulder, and back injuries – and not her wrist or finger injuries – prevented her from typing, she had put forth no evidence of that connection, nor can the Court find any case law to support the same.

Second, Collier's counsel does not address the readily available accommodation for the typing restriction. Namely, the use of voice-recognition software. AR Dkt. No. 17-1, at 15, 38. As the Court stated in oral argument, Collier's assertion that she cannot do her job in the same manner as she has in the past does not mean she cannot do her job *at all*. See Caplan v. CNA Fin. Corp., 544 F. Supp. 2d 984, 988 (N.D. Cal. 2008) (noting restrictions that could be accomodated that would also enable the plaintiff to perform their job preclude a finding that plaintiff was disabled); Graeber v. Hewlett Packard Co. Emp. Benefits Org. Income Prot. Plan, 421 F. Supp. 2d 1246, 1256 (N.D. Cal. 2006), aff'd sub nom. Graeber v. Hewlett Packard Income Prot. Plan, 281 F. App'x 679 (9th Cir. 2008) (considering voice-recognition software as one possible valid accommodation to plaintiff's typing-related work restriction).

Therefore, even if Collier is required to type 85% of the time she is at work and is medically restricted from doing so, Defendants cited to reasonable accommodations that would allow her to perform her job, notwithstanding it being in a different form than before. And as stated above, the Court is unwilling to rely on Collier's self-serving statements regarding possible accommodations without any evidentiary basis for those statements. In any case, the record is entirely devoid of any evidence on which to base such restriction.

Thus, the Court finds counsel's arguments lack merits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

### 3.  FCE Findings and Dr. Jurado's Diagnosis

The FCE evaluation by Dr. Jurado was done on September 12-13, 2019, and thus the Court will consider it only with respect to Collier's functional abilities at that time. AR Dkt. No. 17-1, at 707–44.

Collier considers the FCE findings and Dr. Juardo's conclusion that she cannot return to work with her existing limitations as objective evidence. Collier Resp. Br., Dkt. No. 25, at 13, 18. Lincoln asserts that the FCE should be given little to no weight because Dr. Jurado lacks credibility as he previously worked with Collier's counsel on other cases and was hand-picked by counsel for the instant action. Lincoln Opening Br., Dkt. No. 19, at 14. Additionally, Lincoln contends the FCE was unreliable as it was done in a very subjective manner, where the findings were controlled by Collier's self-reported capacity and whether she exerted full effort during the testing on both days. Id. at 15.

As to Lincoln's first reason to discount Dr. Jurado's credibility, the Court finds Collier has established Dr. Jurado's unbiased work by both counsel Glenn Kantor and Ms. Linda Hayes' declarations. The declarations detailed the independent process that took place, by Ms. Hayes' and without Mr. Kantor's input, in choosing Dr. Jurado to conduct the exam. See Collier Resp. Br., Dkt. No. 25-2, at 51–64.

However, as to Lincoln's second reason to discount the weight that should be given to the FCE, this Court has previously found that FCE is "*generally* a 'reliable and objective method of gauging the extent one can complete work-related tasks.'" (italics added) Groch v. Dearborn Nat'l Life Ins. Co., No. 218CV06614CBMEX, 2020 WL 6374619, at *9 (C.D. Cal. Oct. 29, 2020) (citing Caesar v. Hartford Life & Acc. Ins. Co., 464 Fed. Appx. 431, 435 (6th Cir. 2012). From reviewing Dr. Jurado's methods he used to assess Collier's range of motion and functional capacity (e.g., electronic muscle tester and dual inclinometers), it is apparent that the methods allowed for considerable subjective input from Collier. See, e.g., Taher v. Valerio-Mena, 195 Misc. 2d 687, 690 (Civ. Ct. 2003) (noting susceptibility of inclinometers to manipulations and exaggerations of subjective pain).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

Thus, the Court does not completely disregard the FCE findings and Dr. Juardo's conclusion (both due to the time the FCE was conducted and for the methods it employed) but considers in light with its aforementioned comments on Collier's subjective complaints.

In oral argument before the Court, plaintiff's counsel contested that FCE exams, and the methods used by Dr. Juardo in particular, are easy to manipulate by subjective complaints. Counsel asked the Court to note that the case law on which the Court relied is approximately 18 years old and the accuracy of the methods used has since improved. Counsel did not offer any evidence to support his contention.

Nonetheless, the Court finds that this argument lacks merit. A claimant can easily manipulate FCE's test results: Robertson v. Standard Ins. Co., 139 F. Supp. 3d 1190, 1209 (D. Or. 2015), order clarified, No. 3:14-CV-01572-HZ, 2015 WL 13682034 (D. Or. Nov. 13, 2015) (stating that the court is unable to determine whether the claimant manipulated the FCE's testing results to find that claimant cannot fulfill the sitting requirement for a sedentary occupation or whether the conducting examiner made an error in testing). As a result, the court assigned little weight to reliance on FCE's findings. Id.

Thus, the Court finds that counsel's argument lacks merit, and the Court will not wholly disregard the FCE but will rather give it its appropriate weight.

## 4. Medications' Effect on Collier's Cognitive Function

As for the pain medications consumed by Collier, the Court finds Collier did not experience any adverse effects from the medications, because both Collier and her treating physicians noted as much numerous times on record. AR Dkt. No. 17-1, at 102 ("Her pain regimen has been helpful and this include Norco [. . .] with no nausea, vomiting, constipation, oversedation, or epigastric pain."); id. at 164 ("She does not report any side effects."); id. at 538 ("She does not report any side effects."); id. at 546 ("She denies any side effects."); id. at 591 ("There are no significant reported adverse side effects."); Id. at 88 ("[T]here are no side effects as before."); Id. at 91 ("With respect

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

to her medication, no side effects and she continues to benefit partially from . . ."); Id. at 92 ("Her regimen will be refilled due to lack of side effects.").

Considering the absence of complaints by Collier to her treating physicians regarding the effects of consuming her prescribed narcotics and the statements by her treating physician to the contrary, the Court finds Collier's attestation on the issue unpersuasive. See id. 70, 88, 91, 92, 102, 164, 337, 538, 546, 591.

**5. Collier's Credibility**

Collier asserts there is no evidence to support Lincoln's allegation that she is not credible. Collier Resp. Br., Dkt. No. 25, at 19–22.

Among other reasons, Lincoln argues Collier's complaints and testimonies cannot be relied upon because (i) while visiting other physicians, Collier did not complain about her ongoing pain and injuries, (ii) in a call with Dr. Tun in August 2018, Collier stated she was experiencing shoulder pain with prolonged activity – although she was not working for more than three months at that time, and (iii) during visits to other physicians in November 2018, Collier mentioned she had been exercising for six hours per week at a moderate to strenuous level. See generally Lincoln Opening Br., Dkt. No. 19. In her response to the allegations, Collier states that she is to be believed because (i) she demonstrated "exemplary work ethics," and (ii) although she admits to continue and exercise, "her level of activity falls far short of what Ms. Collier was previously capable of performing." Collier Resp. Br., Dkt. No. 25, at 19–22. Collier does not address Lincoln's other reasons for its argument. Id.

Indeed, Collier visited her internist four days before she stopped working in May of 2018, to address bilateral Tinnitus, but did not mention any of her orthopedic-related pains. AR Dkt. No. 17-1, at 1126–27. Unlike her visit to her Nurse Practitioner in July of 2018, to address her Condyloma, it is reasonable to expect Collier would share with her internist an ongoing pain that limited her every day, especially four days before it became totally debilitating. Id. at 259, 1126–27. Similarly, the Court finds Collier's decision to undergo a cosmetic procedure of injecting Botox to her lips, while she is allegedly disabled from working because she has been suffering massive pains, questionable. Id. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

1092.

In addition, Collier provided no explanation as to why she continued to experience shoulder pain with prolonged activity while she was not working for over three months at that time of her complaint to Dr. Tun. Id. at 278. Similarly, Collier complained of the same and even more severe pain level when she was examined by Dr. Vlachos in January of 2020 – more than a year and a half after being off of work. Id. at 35. Considering that most of the physicians involved in this action indicated Collier needs frequent breaks from sitting/standing/gripping, rest was deemed a useful treatment. See, e.g., Peterson v. Fed. Express Corp. Long Term Disability Plan, No. CV-05-1622-PHX-NVW, 2007 WL 1624644, at *4 (D. Ariz. June 4, 2007) (noting time off work was a helpful treatment for pain that would be aggravated upon returning to work). Thus, Collier's ongoing complaints of pain while off work raises the suspicion Collier was not resting as she asked for from her physicians, and instead remained very active – but not at work.

Moreover, on October 16, 2018, December 12, 2018, March 21, 2019, and on March 28, 2019, Collier spontaneously admitted to various Drs. and nurses she was exercising "360 minutes per week at a moderate to strenuous level." AR Dkt. No. 17-1, at 1074, 1070, 656, 669. Generally, it seems that Collier admitted this exercise routine to any medical personnel who was not Drs. Tun, Haronian, or Kohan. See id. While Collier claimed that she could not exercise at the same level as in the past, Collier Resp. Br., Dkt. No. 25, at 20, that claim is unavailing. From a cursory review of the records, Collier stated to have the same exercise routine back in February 2005 – before any alleged injury occurred. AR Dkt. No. 17-1, at 179.

Furthermore, Collier seems to suggest that exercising less strenuously than she was used to is a reasonable standard to indicate her total disability. See Collier Resp. Br., Dkt. No. 25, at 20; AR Dkt. No. 17-1, at 65, 74. Such suggestion is equally unpersuasive. Instead, her inability to perform exercises that employ the same or higher physical demands as her occupation would help find disability, where any ability to perform such exercises would help establish an ability to perform the duties of the occupation in question. See, e.g., Dorsey v. Metro. Life Ins. Co., No. 215CV02126KJMCKD, 2017 WL 3720346, at *12 (E.D. Cal. Aug. 29, 2017) (finding that plaintiff's complaints about various impairments such as neck and low back pain did not establish disability because,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|----------|------------------------|------|----------------|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

*inter alia*, they were inconsistent with her daily activities that included working out, driving, etc.).

Here, in addition to her spontaneous admissions to Kaiser Permanente medical staff of her daily strenuous exercise, Collier specifically stated to Dr. Vlachos she was biking – which constitutes similar arm movements and hand flexing to that of typing. See AR Dkt. No. 17-1, at 306.

Although the Court agrees with Lincoln that close family members' and friends' testimonials can be self-serving, such testimonials are routinely considered and admitted into evidence by the Courts in our jurisdiction. See, e.g., Demer v. IBM Corp. LTD Plan, 835 F.3d 893, 905 (9th Cir. 2016) (considering a friend's testimony which corroborated claimant's subjective complaints of pain).

As such, the Court considers Collier's domestic partner testimonial in full. AR Dkt. No. 17-1, at 348–49. However, with respect to Collier's daughter and Collier's friend testimonials, the Court finds the testimonials inconsistent with Collier's testimonies and medical records, which makes them less credible. For example, on March 21, 2019, during a skincare visit, Collier stated she is "exercise[ing] 420 minutes per week at a moderate to strenuous level," while on February 25, 2020, her friend Lisa Tetreault, stated in her testimony in referring to "three years ago to now," that Collier "stopped working out." Id. at 74, 659. Similarly, Collier's daughter, Nicolette Collier, on August 15, 2019 – only a few months after her mother's statement – stated, "[t]his past year has been super difficult on my mom because [she went] from working many hours and exercising a couple of hours a day [. . .] [to] walking her dog around the block once or twice a day, and a lot of stretching, including stretching in a heated room." Id. at 343–44. Collier's daughter was surely aware of her mother's daily visits to the gym, yet she did not mention it. See id. at 306.

Lastly, Collier's exemplary work ethics and ranking are commendable. Id. at 746–749, 751, 776, 784. However, they cannot serve as indicators to whether Collier was willing to receive 66.67% of her compensation upon finding disability instead of continuing to work for 100% compensation. See id. 7. Again, while commendable, they do not speak to her entitlement to disability benefits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|----------|------------------------|------|----------------|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

In defending the evidence she offers, Collier accurately states that the Court cannot reject her complaints unless it has reason to disbelieve them. Demer, 835 F.3d at 905 (stating a plaintiff should be believed if the insurer has no basis for rejecting his credibility). However, as demonstrated above, Collier provided the Court with a few reasons to disbelieve her complaints and failed to adequately address Lincoln's arguments on the matter.

For the reasons stated above, the Court finds Collier did not satisfy her burden of proof, by a preponderance of the evidence, that she was temporary and totally disabled between May 15, 2018, to November 15, 2019.

**B. LINCOLN'S REBUTTAL**

Lincoln conducted its own review of Collier's records and a physical examination of Collier. The Court addresses the findings of that review below.

The Court first addresses Dr. Chhatre's findings. AR Dkt. No. 17-1, at 886–90. The Court notes Dr. Chhatre never physically examined Collier. See id. Controlling case law already determined that "disabling pain cannot always be measured objectively." Saffon, 522 F.3d at 873 n.3. Considering this, Dr. Chhatre undoubtedly missed a "piece of the puzzle," namely, Collier's subjective complaints about her pain. See Demer, 835 F.3d at 905 ("there is 'nothing inherently objectionable about a [paper] review,' but such 'reviews are particularly troubling when the administrator's consulting physicians—who have never met the claimant—discount the claimant's limitations as subjective or exaggerated.'") (citing Godman v. Hewlett-Packard Co., 631 Fed. Appx. 397, 406 (6th Cir. 2015)). Thus, the Court finds Dr. Chhatre's opinion that "[t]he severity and scope are not in line with the chronic and stable conditions that are supported by the medical evidence" and that Collier "does not have supported impairment," to be an incomplete assessment. AR Dkt. No. 17-1, at 889.

Thus, Dr. Chhatre's conclusion that "Plaintiff could work full-time (8 hours/day, 5 days/week) without restrictions" is not given much weight. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

Dr. Vlachos' IME evaluation was done on January 27, 2020, and thus the Court will consider it with respect to Collier's functional abilities at that time – after the Elimination Period and 12 months thereafter. See Gary v. Unum Life Ins. Co. of Am., 388 F. Supp. 3d 1254, 1282 (D. Or. 2019), rev'd and remanded on other grounds, 831 F. App'x 812 (9th Cir. 2020) (stating that test results reflect plaintiff's abilities at the time of the test).

Dr. Vlachos took into account Collier's treating physicians in arriving at her conclusion and issuing Collier's work restrictions, and so the Court will take Dr. Vlachos' report at face value. AR Dkt. No. 17-1, at 274. Vlachos found nonorganic contributions to Collier's complaints, which can result from low tolerance for pain – an acceptable factor to account for in disability-related claims. See, e.g., Shaw v. AT & T Umbrella Ben. Plan No. 1, 795 F.3d at 543 (6th Cir. 2015) (taking into account low tolerance for light movements with increased pain).

With it, similar to Collier's treating physicians' findings and restrictions, Dr. Vlachos's findings and resulting restrictions were almost entirely based on Collier's examination and her subjective stated abilities and limitations. AR Dkt. No. 17-1, at 268–69. Dr. Vlachos's restrictions were in line with the restrictions that Collier's treating physicians provided. See id. at 258–76. Such restrictions, as related to Collier's own occupational demands, mainly limit Collier from prolonged sitting or standing sessions and repetitive hand movements. See id. at 1198–200. These and similar restrictions do not preclude Collier from performing her job, absent proof that she cannot be accommodated by her employer. See Martin v. Aetna Life Ins. Co., 223 F. Supp. 3d 973, 985 (C.D. Cal. 2016) ("Plaintiff could return to modified work duties, with lifting no greater than three pounds, and no repetitive keying or typing for more than three hours per day. . .. Nothing was said about Plaintiff's definitive inability to stop working.").

Since Dr. Vlachos' findings were almost entirely based on Collier's statements, and because Collier's credibility is at question, the Court considers Dr. Vlachos' findings and restrictions to bear equal weight as those of Collier's treating physicians – all of which were not proven sufficient to consider Collier *totally* disabled from performing her occupation between May 15, 2018, to November 15, 2019.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|---|---|---|---|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

Finally, the Court addresses Dr. Arora's exam and findings. AR Dkt. No. 17-1, at 357–83.

On his review of the entire record on October 24, 2018, Dr. Arora found Collier to have 9% whole person impairment where the only needed limitations were "avoid[ing] any heavy lifting more than 20 pounds and reaching above her head." Id. at 381. Indeed, as Lincoln correctly noticed, there were no restrictions on Collier's using her hands nor on her sitting or standing for prolonged periods. Lincoln Reply Br., Dkt. No. 26, at 7. However, from reviewing Dr. Arora's report, Dr. Arora undoubtedly noticed Collier's hand, neck, and back injuries – all of which he did not find to have been caused by Collier's work at AAA. AR Dkt. No. 17-1, at 380. Thus, the Court finds it reasonable that in issuing the limitations, Dr. Arora merely addressed impairments that he found to have resulted from Collier's work. This is further supported by the fact that the "Future Medical Needs" portion of the report only includes treatment for Collier's shoulder and none of the other found-to-be-impaired body parts. Id.

Thus, Dr. Arora's findings and restrictions are of limited use – for either party – in determining the extent of Collier's disability.

In sum, the Court finds most convincing the extent to which Collier's treating physicians relied on Collier's subjective reports in the absence of corroborating facts and the major inconsistencies between her reported pain and her private exercise activities.

## V. CONCLUSION

For the preceding reasons, the Court **affirms** Lincoln's decision to deny Collier's benefits under the Plan.

**IT IS SO ORDERED.**

Initials of Deputy          lmb

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 20-839 JVS (KESx) | Date | April 16, 2021 |
|----------|------------------------|------|----------------|
| Title | Vicki Collier v. Lincoln Life Assurance Company of Boston | | |

Clerk _____

cc: