**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 21 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| VICKI COLLIER,<br><br>  Plaintiff-Appellant,<br><br> v.<br><br>LINCOLN LIFE ASSURANCE COMPANY OF BOSTON,<br><br>  Defendant-Appellee. | No.   21-55465<br><br>D.C. No.<br>8:20-cv-00839-JVS-KES<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted July 28, 2022
Pasadena, California

Before: Richard A. Paez and Paul J. Watford, Circuit Judges, and Richard D. Bennett,[*] District Judge.

Opinion by Judge Paez

---

[*]      The Honorable Richard D. Bennett, United States District Judge for the District of Maryland, sitting by designation.

**SUMMARY**[**]

**Employee Retirement Income Security Act**

The panel reversed the district court's judgment in favor of Lincoln Life Assurance Company of Boston and remanded in an ERISA action brought by Vicki Collier.

Collier challenged Lincoln's denial of her claim for long-term disability benefits. On de novo review, the district court affirmed Lincoln's denial of Collier's claim, but it adopted new rationales that the ERISA plan administrator did not rely on during the administrative process. Specifically, the district court found for the first time that Collier was not credible and that she had failed to supply objective evidence to support her claim.

The panel held that when a district court reviews de novo a plan administrator's denial of benefits, it examines the administrative record without deference to the administrator's conclusions to determine whether the administrator erred in denying benefits. The district court's task is to determine whether the plan administrator's decision is supported by the record, not to engage in a new determination of whether the claimant is disabled. Accordingly, the district court must examine only the rationales the plan administrator relied on in denying benefits and cannot adopt new rationales that the claimant had no opportunity to respond to during the administrative process.

The panel held that the district court erred because it relied on new rationales to affirm the denial of benefits. As Lincoln did not present these rationales during the administrative process, Collier was afforded no opportunity to respond to them, and was denied her statutory right to "full and fair review" of the denial of her claim. The panel reversed and remanded for the district court to reconsider Collier's claim de novo, with no deference to the administrator's decision, and to determine whether the record evidence supports the reasons on which Lincoln relied to deny benefits.

[**]    This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

2

**COUNSEL**

Glenn R. Kantor (argued), Zoya Yarnykh, and Sally Mermelstein, Kantor & Kantor LLP, Northridge, California; for Plaintiff-Appellant.

Kristina N. Holstrom (argued), Ogletree Deakins Nash Smoak & Stewart PC, Phoenix, Arizona; Byrne J. Decker, Ogletree Deakins Nash Smoak & Stewart PC, Portland, Maine; for Defendant-Appellee.

**OPINION**

PAEZ, Circuit Judge:

Vicki Collier ("Collier") appeals the district court's judgment in favor of Lincoln Life Assurance Company of Boston ("Lincoln") in an action arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Collier filed a claim for long-term disability ("LTD") benefits through her employer-sponsored disability insurance policy ("the Plan"), which was administered by Lincoln. Lincoln denied Collier's claim for LTD benefits. Collier then pursued an internal appeal, but Lincoln again denied her claim. On de novo review, the district court affirmed Lincoln's denial of Collier's claim. In so doing, the district court adopted new rationales that the plan administrator did not rely on during the administrative process.

We reverse and remand. When a district court reviews de novo a plan administrator's denial of benefits, it examines the administrative record without

3

deference to the administrator's conclusions to determine whether the administrator erred in denying benefits.  *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1088–89 (9th Cir. 1999) (en banc).  The district court's task is to determine whether the plan administrator's decision is supported by the record, not to engage in a new determination of whether the claimant is disabled.  Accordingly, the district court must examine only the rationales the plan administrator relied on in denying benefits and cannot adopt new rationales that the claimant had no opportunity to respond to during the administrative process.

The district court erred because it relied on new rationales to affirm the denial of benefits—rationales that Lincoln did not assert during the administrative process. *See Harlick v. Blue Shield of California*, 686 F.3d 699, 719-20 (9th Cir. 2012). Specifically, the district court found for the first time that Collier was not credible, and that she had failed to supply objective medical evidence to support her claim. As Lincoln did not present these rationales during the administrative process, Collier was afforded no opportunity to respond to them, and was denied her statutory right to "full and fair review" of the denial of her claim.  *See* 29 U.S.C. § 1133(2). Accordingly, we reverse and remand for the district court to reconsider Collier's claim de novo, with no deference to the administrator's decision, and to determine whether the record evidence supports the reasons on which Lincoln relied to deny

4

benefits.

## I.

From 2013 to 2018, Collier worked at the Automobile Club of Southern California ("AAA") as an insurance sales agent. During that time, Collier experienced persistent pain in her neck, shoulders, upper extremities, and lower back, which limited her ability to type and sit for long periods of time. Collier was eventually diagnosed with a variety of physical impairments that restricted her mobility in her back, shoulders, elbows, and wrists. Collier underwent surgery on her right shoulder and later returned to work, but her pain continued. She received a variety of treatments to mitigate the pain, including cortisone, epidural, and Botox injections, oral pain medication, acupuncture, and physical therapy.

In April 2018, she applied for worker's compensation. A worker's compensation representative recommended that AAA institute certain ergonomic accommodations for Collier to allow her to work with less pain. Despite these accommodations,[1] Collier reported that her pain persisted. In May 2018, Collier stopped working at AAA, citing her reported pain.

As an employee of AAA, Collier purchased LTD insurance through the Plan, which qualified her as a Plan participant. Collier was entitled to LTD benefits if she

---

[1] AAA installed a document reader, a vertical mouse, a new keyboard, and an ergonomic chair in Collier's office. AAA promised to supply a standing desk but did not do so.

could show that she was disabled under the terms of the Plan. The Plan provided

that Collier would be considered "disabled" if:

> during the [26 week] Elimination Period and the next 12 months of
> Disability [Collier], as a result of Injury or Sickness, [was] unable to
> perform with reasonable continuity the Substantial and Material Acts
> necessary to pursue [her] Own Occupation in the usual and customary
> way; and thereafter, [Collier was] unable to perform, with reasonable
> continuity, the Substantial and Material Acts of any occupation,
> meaning that as a result of sickness or injury [Collier was] not able to
> engage with reasonable continuity in any occupation in which [she]
> could reasonably be expected to perform satisfactorily in light of [her]
> age, education, training, experience, station in life, and physical and
> mental capacity.[2]

In February of 2019, Collier filed a claim for LTD benefits with Lincoln.

Lincoln obtained Collier's medical records, sent her records to an outside reviewer,

Dr. Akhil Chhatre ("Dr. Chhatre"), and arranged for a vocational analysis of

Collier's occupation. Dr. Chhatre reviewed Collier's medical records but did not

examine Collier. His report concluded that Collier could work full-time without

restrictions. Dr. Chhatre noted that "[t]he claimant has stable exam findings with no

new diagnostic testing or exam changes to suggest an acute neurologic or

(musculoskeletal) MSK derangement." Dr. Chhatre further noted that the "severity

and scope" of Collier's reported pain was "not in line with the chronic and stable

---

[2] "Own Occupation" is defined as the employee's "occupation that he was
performing when his disability or partial disability began." The "substantial and
material acts" of that occupation include "acts that are normally required for the
performance of the [employee's] own occupation and cannot be reasonably
omitted or modified."

conditions that are supported by the medical evidence." A vocational analyst retained by Lincoln reviewed Collier's claim and determined that Collier's occupation as a "Sales Agent, Insurance" could be performed at either sedentary or light work levels. At either level, Collier's occupation required "frequent" fingering tasks, such as typing.

In May 2019, Lincoln denied Collier's claim for LTD benefits. Lincoln concluded that "[b]ased on the medical documentation received in relation to the requirements of [Collier's] occupation, [Collier did] not meet the definition of disability" under the Plan. In its denial letter, Lincoln quoted from and principally relied on Dr. Chhatre's report. The denial letter, however, said nothing about Collier's credibility or the lack of objective medical evidence as grounds for denying benefits.

Collier timely appealed the denial of benefits. In support of her internal appeal, Collier submitted additional medical records, a functional capacity evaluation ("FCE"),[3] declarations from Collier, her family, and a close friend, and her primary care physicians' responses to Dr. Chhatre's report. As part of its review, Lincoln scheduled an independent medical examination for Collier with Dr. Katrina

---

[3] The FCE concluded that Collier was precluded from full-time employment, as she could sit or stand for only thirty minutes at a time and could sit, stand, or walk for a total of up to three hours per day. One of Collier's primary care physicians reviewed and concurred with the FCE results.

Vlachos ("Dr. Vlachos").  In January 2020, Dr. Vlachos reviewed Collier's medical records and examined her in-person.  While Dr. Vlachos observed that Collier had "a number of areas of tenderness," she noted that her symptoms "appear[ed] to be out of proportion to what would be expected based on [her] MRI findings."  Dr. Vlachos concluded that Collier could work full time with restrictions, but that she could only perform fingering tasks, like typing, on an occasional basis.  Dr. Vlachos also stated that Collier "may benefit from voice activated software should she require any computer work."

In April 2020, Lincoln denied Collier's appeal.  Lincoln concluded that after having

> conducted a thorough and independent review of Collier's entire claim . . . the information does not contain physical exam findings, diagnostic test results or other forms of medical documentation supporting her impairments and symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering her unable to perform the duties of her occupation throughout and beyond the Policy's elimination period.

Lincoln further stated that the rationale for its original decision had not changed, noting that its "position remain[ed]" that Collier did not provide sufficient proof of her disability.  As to accommodations, Lincoln simply stated that "ergonomic equipment [was] readily available" without specifying what equipment was available or how it would be implemented to accommodate Collier's restrictions.

Subsequently, Collier filed this action under ERISA § 502(a)(1)(B), 29 U.S.C.

§ 1132(a)(1)(B), for judicial review of Lincoln's denial of her claim for LTD benefits. The district court ordered a bench trial. S*ee Kearney*, 175 F.3d at 1094–95. In its trial briefs, Lincoln argued for the first time that Collier was not credible. Lincoln further argued that because Collier's doctors relied in large part on her subjective reports of pain, their conclusions were not supported and thus did not constitute objective evidence of her disability. Finally, Lincoln asserted that even if Collier were disabled under the Plan's terms, her typing restriction could be accommodated with ergonomic equipment, such as voice-activated software.

At trial, no witnesses testified and the administrative record was the only documentary evidence admitted. After trial, the district court issued findings of fact and conclusions of law affirming Lincoln's denial of LTD benefits. *See* Fed. R. Civ. P. 52(a)(1). Reviewing Lincoln's decision de novo, the court concluded that Collier failed to demonstrate that she was disabled under the Plan. Adopting the reasoning from Lincoln's trial brief, the district court determined that Collier was not disabled for three intertwined reasons: (1) Collier was not credible in her reporting of pain symptoms; (2) Collier's medical providers relied on her pain symptom reports, so their opinions were less credible and the remaining objective medical evidence did not support her allegations; and (3) even if the court believed Collier's reports of pain, her typing restrictions could be readily accommodated with ergonomic equipment, such as voice-activated software. Although Lincoln failed to raise the

9

lack of objective medical evidence or Collier's lack of credibility as grounds for denying benefits, the district court relied on those rationales to conclude that Lincoln properly denied Collier's application for benefits.  The district court concluded that because "a court must 'evaluate the persuasiveness of conflicting testimony and decide which is more likely true'" on de novo review, credibility determinations are inherently part of its review.  *Collier v. Lincoln Life Assurance Co.*, No. SACV 20-839 JVS (KESx), 2021 WL 1851275, at *12 (C.D. Cal. Apr. 16, 2021) (citing *Kearney*, 175 F.3d at 1095).  Collier timely appealed.  Fed. R. App. P. 4(a)(1)(A).[4]

## II.

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal quotation marks and citations omitted).  "The Act furthers these aims in part by regulating the manner in which plans process benefits claims."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003).  ERISA sets minimum procedural requirements when a plan administrator denies a claim for benefits.  *See generally* 29 U.S.C. §§ 1132(a)(1)(B), 1133; 29 C.F.R. § 2560.503–1.

By statute, "every employee benefit plan" shall "provide adequate notice in

---

[4] We review for clear error the district court's findings of fact and de novo its conclusions of law.  *See Abatie*, 458 F.3d at 962.

10

writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). The notice of claim denial must contain: (1) "[t]he specific reason or reasons for the denial"; (2) "[r]eference to the specific plan provisions on which the determination is based"; (3) "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary"; and (4) "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review."[5]  29 C.F.R. § 2560.503–1(g)(1)(i)–(iv). Additionally, when a plan administrator denies a claim for disability benefits, the administrator must provide "an explanation of the basis for disagreeing with or not following" the conclusions of the claimant's treating "health care professional," the "vocational professional[] who evaluated the claimant," or "medical or vocational experts whose advice was obtained on behalf of the plan in connection with a  claimant's adverse benefit determination." 29 C.F.R. § 2560.503–1(g)(1)(vii)(A)(i)–(ii).

Upon denial of a claim for benefits, the claimant must be provided an

---

[5] We cite to the applicable statutory provisions in force when Collier applied for benefits in May 2018.

opportunity for a "full and fair review" of the denial of benefits.   29 U.S.C.
§ 1133(2); 29 C.F.R. § 2560.503–1(h)(4).  If a plan administrator relies on a new or
additional rationale during the review process, the administrator must provide the
rationale to the claimant and "give [her] a reasonable opportunity to respond."   29
C.F.R. § 2560.503–1(h)(4)(ii).  If the plan administrator denies the appeal, the
claimant may then seek relief in federal court "to recover benefits due to [her] under
the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify
[her] rights to future benefits under the terms of the plan."  ERISA § 502(a)(1)(B);
29 U.S.C. § 1332(a)(1)(B).

The administrative process is procedurally robust for good reason: ERISA
aims to provide "adequate safeguards" to protect "the interests of employees and
their beneficiaries."  29 U.S.C. § 1001(a).  "[W]e have repeatedly stated that ERISA
is remedial legislation that should be construed liberally to protect participants in
employee benefits plans."  *LeGras v. AETNA Life Ins. Co.*, 786 F.3d 1233, 1236 (9th
Cir. 2015) (internal quotations and citations omitted).

In the district court, the parties agreed that de novo review applied to Lincoln's
denial of Collier's claim for LTD benefits, and that is the standard the court applied.
*Bruch*, 489 U.S. at 109; *Kearney*, 175 F.3d at 1088.  When the district court applies
de novo review, it accords no deference to the plan administrator's decision. *Abatie*,
458 F.3d at 963.  Rather, "[t]he court simply proceeds to evaluate whether the plan

administrator correctly or incorrectly denied benefits." *Id.* [6] The district court must base its decision on the administrative record and may supplement the record "only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." *Opeta v. Nw. Airlines Pension Plan for Cont. Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (alterations to original) (quoting *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995)).

We have recognized that a plan administrator undermines ERISA and its implementing regulations when it presents a new rationale to the district court that was not presented to the claimant as a specific reason for denying benefits during the administrative process. 29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503–1(g)(1)(i), (j)(1); *Harlick*, 686 F.3d at 719–21; *Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 906 (9th Cir. 2016). We have expressed disapproval of post hoc arguments advanced by a plan administrator for the first time in litigation. *See, e.g.*, *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1199 n.2 (9th Cir. 2010).

---

[6] Other circuits have adopted a similar approach. *See, e.g.*, *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517–18 (1st Cir. 2005) (describing de novo review as "whether, upon a full review of the administrative record, the decision of the administrator was correct" without giving deference to the administrator's opinions or conclusions); *Perry v. Simplicity Eng'g*, 900 F.2d 963, 965–67 (6th Cir. 1990) (describing the district court's de novo review as "determin[ing] whether the administrator or fiduciary made a correct decision" without giving deference to the plan administrator's decision).

13

For instance, in *Harlick v. Blue Shield of California*, we held that "[a] plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court, unless the plan beneficiary has waived any objection to the reason being advanced for the first time during the judicial proceeding." *Harlick*, 686 F.3d at 719.  This rule allows the claimant to prepare for further administrative review and future litigation, prevents the claimant from being "sandbagged" after litigation has commenced, and disallows the plan administrator from initiating "a new round of review." *Id.* at 720–21 (citation omitted).

We reiterated this rule in *Demer v. IBM Corp. LTD Plan*.  Relying on *Harlick*, we rejected a newly fashioned rationale raised by a plan administrator for the first time in litigation and adopted by the district court.  *Demer*, 835 F.3d at 906.  We noted that while the district court questioned the claimant's credibility, the plan administrator had never offered lack of credibility as a ground for denying benefits. *Id*.  We then held that the plan administrator could not assert the new rationale for the first time in litigation.  *Id.* at 906–07; *see also Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Illinois*, 983 F.3d 435, 440–42 (9th Cir. 2020) (rejecting a plan administrator's attempt to raise an anti-assignment provision as a rationale to deny benefits for the first time in litigation).

We also recently rejected a plan administrator's attempt to present a new

14

argument for the first time on appeal in *Wolf v. Life Insurance Company of North America*. 46 F.4th 979, 982 (9th Cir. 2022). There, the plan administrator argued that we should apply a less demanding standard than had been used by the district court or during the administrative process to determine whether the death of the claimant's son was an accident covered by the plan. *Id.* at 985. The plan administrator asserted that de novo review allowed us to adopt the new standard. *Id.* We rejected this argument, holding that because the plan administrator waited until appeal to argue that a lower standard applied to the claim, the claimant was prejudicially denied "the opportunity to present on the internal appeal different arguments and evidence that would likely be relevant if he had known [the plan administrator] was applying the lower standard." *Id.* at 987.

Other circuits have similarly held that when a plan administrator presents new rationales in litigation for the first time, the administrator undermines ERISA and its implementing regulations. *See, e.g.*, *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 130 (1st Cir. 2004) (holding that a plan administrator "violated ERISA and its regulations by relying on a reason in court that had not been articulated to the claimant during its internal review"); *Spradley v. Owens-Ill. Hourly Emps. Welfare Ben. Plan*, 686 F.3d 1135, 1140–41 (10th Cir. 2012) (same); *Robinson v. Aetna Life Ins. Co.,* 443 F.3d 389, 395 n.4 (5th Cir. 2006) (same); *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998) (same); *Halpin v. W.W.*

*Grainger, Inc.*, 962 F.2d 685, 696 (7th Cir. 1992) (same).  The Eighth Circuit noted the importance of this rule, even where de novo review applies, because it "ensure[s] expeditious judicial review of ERISA benefit decisions and . . . keep[s] district courts from becoming substitute plan administrators."  *Donatelli v. Home Ins. Co.,* 992 F.2d 763, 765 (8th Cir. 1993).

Collier maintains that the district court violated this rule when it relied on rationales that Lincoln did not raise as grounds for denying her claim for benefits. We agree.[7]  Lincoln did not cite Collier's lack of credibility or the lack of objective evidence when it denied her claim initially and on review.  29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503–1(g)(1)(i), (j)(1); *Harlick*, 686 F.3d at 719–21.  In its initial denial letter, Lincoln informed Collier that she did "not meet the definition of disability" under the Plan and that it was therefore denying benefits.  Lincoln reiterated this reasoning in its denial letter of her internal appeal.  In both letters, Lincoln did not specify that it found Collier not credible, that she failed to present objective medical evidence, or that such evidence was required under the Plan.  Indeed, it omitted portions of both Dr. Chhatre's and Dr. Vlachos's reports where they questioned Collier's credibility in her pain symptom reporting in its final denial letter.  29 C.F.R.

---

[7] Because we reverse and remand so the district court may reconsider Collier's claim in light of our opinion, we need not address Collier's arguments that the district court clearly erred by giving little weight to the functional capacity examination.

16

§ 2560.503–1(g)(1)(vii)(A)(i)–(ii).  It was not until Collier initiated litigation that

Lincoln argued she was not credible and that she failed to present objective evidence

in support of her claim.

By failing to make these arguments during the administrative process, Lincoln

effectively held those reasons "in reserve rather than communicate [them] to

[Collier]."  *Harlick*, 686 F.3d at 720 (quotation omitted).  Lincoln does not argue,

and the record does not indicate, that Collier waived any objection to Lincoln raising

these issues for the first time in district court.  *Id.* at 719.  Indeed, Collier noted in

her trial brief that Lincoln's "attempt to insert an objective evidence requirement

into its policy" during litigation was "belated" and "prohibited."  Because Collier

did not waive these arguments and Lincoln failed to raise them during the

administrative process, Lincoln effectively "sandbagged" Collier with new

rationales at a stage in the proceedings where she could not meaningfully respond.

*Harlick*, 686 F.3d at 720 (quoting *Mitchell*, 611 F.3d at 1199 n.2).  While a plan

administrator need not address every piece of evidence submitted by a participant in

support of a claim for benefits, Lincoln's boilerplate statement in its final denial

letter that Collier did not meet the Plan's standard of "disability" fell far short of

providing "specific reason or reasons" for denying her claim for LTD benefits as

required by ERISA.  29 U.S.C. § 1133.

Although we have held that a plan administrator may not hold in reserve a

17

new rationale to present in litigation, we have not clarified whether the district court clearly errs by adopting a newly presented rationale when applying de novo review. We do so now. When a district court conducts a de novo review of a benefits denial, it evaluates the plan administrator's reasons for denying benefits without giving deference to its conclusions or opinions. *Abatie*, 458 F.3d at 963. Thus, had Lincoln cited Collier's lack of credibility as a reason for denying benefits in the administrative process, the district court would have been within its province to review the administrative record and determine whether the evidence supported that decision. *Harlick*, 686 F.3d at 719–21. But a district court cannot adopt post-hoc rationalizations that were not presented to the claimant, including credibility-based rationalizations, during the administrative process. *Id.*

Contrary to the district court's assertion that it "must 'evaluate the persuasiveness of conflicting testimony and decide which is more likely true,'" *Collier*, 2021 WL 1851275, at *12 (citing *Kearney*, 175 F.3d at 1095), credibility determinations are *not* inherently part of the de novo review. *See, e.g., Demer*, 835 F.3d at 906. If the denial was not based on the claimant's credibility, the district court has no reason to make a credibility determination. Thus, when review is de novo and credibility is not at issue, the district court should weigh the record evidence and any evidence admitted by the court to determine whether the plan administrator properly denied benefits. *See Abatie*, 458 F.3d at 963 ("If de novo

18

review applies… [t]he court simply… evaluate[s] whether the plan administrator correctly or incorrectly denied benefits."). The court must refrain from fashioning entirely new rationales to support the administrator's decision. Such an approach would evade ERISA's protections for the same reasons a plan administrator undermines ERISA's protections when asserting new arguments for the first time in litigation. *See, e.g.*, *Harlick*, 686 F.3d at 720.

The rule that a district court cannot adopt post-hoc rationalizations that were not presented to the claimant protects the same procedural fairness concerns underlying the full and fair review prescribed by § 1133. As we have previously recognized, Congress, in creating ERISA, "intended . . . to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980). The district court undermines these goals when it adopts a rationale that the plan administrator did not rely on. We should not lose sight of ERISA's nonadversarial administrative factfinding process, *id.*, which is intended to reduce costs and promote consistent treatment of claims.

### III.

Having concluded that the district court erred in adopting new rationales to uphold the denial of Collier's claim for LTD benefits, we must consider what relief

19

is necessary to remedy the error. When a plan administrator has raised a new rationale in litigation that was not presented during the administrative process, we have ordered various forms of relief. *See Harlick*, 686 F.3d at 721 (remanding to the district court and disallowing the administrator from relying on its newly presented rationale in litigation); *Demer*, 835 F.3d at 895–96 (reversing and remanding to the district court with instructions to remand the case to the plan administrator to re-evaluate the claimant's LTD claim).

Here, we reverse and remand to the district court with directions to reconsider its decision in light of our opinion. Thus, on remand, the district court must review the administrative record afresh to determine whether Lincoln correctly denied Collier's claim for LTD benefits. In conducting this review, the court may not rely on rationales that Lincoln did not raise in the administrative process to deny benefits. Collier urges us to reach the merits of her claim for benefits. We decline the invitation, as that task should be undertaken by the district court in the first instance, unencumbered by the errors that we have addressed above.

Finally, Collier asks that if we remand to the district court, we direct the court to allow her to supplement the record to respond to Lincoln's contention that Dr. Vlachos suggested that ergonomic equipment is readily available to accommodate Collier's impairments. Because Collier did not formally move to supplement the administrative record in the district court, we deny her request. On remand,

20

however, Collier may request leave to supplement the record. *See Opeta*, 484 F.3d at 1217–18.

## IV.

For the above reasons, we reverse the district court's affirmance of Lincoln's denial of benefits and remand to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**.