**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00839-JVS-KESx Date: October 5, 2026

Title: VICKI COLLIER v. LINCOLN LIFE ASSURANCE COMPANY OF BOSTON

PRESENT:

THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

| Jazmin Dorado | Not Present |
| --- | --- |
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| --- | --- |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):** **Order re Discovery Privilege Dispute (Dkt. 72)**

## I. BACKGROUND

In this case under the Employee Retirement Income Security Act of 1974 (“ERISA”) 29 U.S.C. §§ 1001, et seq., Plaintiff Vicki Collier (“Plaintiff” or “Collier”) alleges that Defendant Lincoln Life Assurance Company of Boston (“Defendant” or “Lincoln”) improperly denied her claim for long term disability benefits. (Dkt. 1.)

After briefing on the merits, the district court wrote a 36-page decision affirming Lincoln’s decision to deny Collier’s benefits. (Dkt. 29.) In November 2022, the Ninth Circuit reversed and remanded the case for further proceedings. (Dkt. 36.) The Ninth Circuit held that “the district court must examine only the rationales the plan administrator relied on in denying benefits and cannot adopt new rationales that the claimant had no opportunity to respond to during the administrative process.” (Id. at 4.) According to the Ninth Circuit, the two “new” rationales on which the district court relied were a finding that “Collier was not credible, and that she had failed to supply objective medical evidence to support her claim.” (Id.)

The case was stayed until August 2023 while the parties pursued mediation. (Dkt. 39, 43, 46.) After mediation proved unsuccessful, on August 7, 2023, the district court remanded the case to Lincoln. (Dkt. 46.) Collier submitted additional evidence to Lincoln in support of her claim for benefits on June 26, 2024. (See Dkt. 64 at 2.) Lincoln issued a letter upholding its

claim determination denying benefits on January 13, 2025. (Dkt. 73-1 at 6-31.)

On September 18, 2025, the parties filed a status report advising that Lincoln had again denied the claim. (Dkt. 47.) In November 2025, the district court set dates for merits briefing. (Dkt. 56.) After the merits briefing deadlines were extended several times, in June 2026, the parties filed a joint status report advising that the following dispute over privilege had developed:

> Lincoln provided all new information placed in the claim file (the ERISA Administrative Record) to Collier on March 26, 2026. On April 15, 2026, Collier advised Lincoln of her position that she is entitled both to receive a detailed privilege log, and to review all communications between Lincoln and its inside counsel, as well as all communications between Lincoln and its outside counsel, that occurred between August 27, 2023 (the date of the Court's remand order) and January 13, 2025 (the date of Lincoln's final letter). Lincoln disagrees. The parties have since been engaged in extended discussions.
>
> The crux of the issue is the scope and applicability of the "fiduciary exception" to the attorney-client privilege and work product doctrine.
>
> Collier contends that the fiduciary exception applies, because the Court's remand of the case to Lincoln for further consideration triggered a full ERISA appeal with all rights and obligations placed on the parties by the ERISA claims regulations. See Stephen v. Unum Life Ins. Co. of Am., 697 F.3d 917 (9th Cir. 2012); Sizemore v. Pac. Gas & Elec. Ret. Plan, 952 F. Supp. 2d 894, 900–01 (N.D. Cal. 2013); Lewis v. UNUM Corp. Severance Plan, 203 F.R.D. 615, 620 (D. Kan. 2001). Lincoln contends that the fiduciary exception does not apply because the parties' interests diverged on Collier's entitlement to benefits before she filed the current lawsuit and remained diverged during the current lawsuit, including during the remand in which the issue raised in the current lawsuit remained pending. See, e.g., United States v. Mett, 178 F.3d 1058 (9th Cir. 1999); Stephen v. Unum Life Ins. Co. of Am., 697 F.3d 917 (9th Cir. 2012); Whinery v. Life Ins. Co. of N. Am., No. CV 10–9312 PA (AGRx), 2012 WL 8652619 (C.D. Cal. Nov. 7, 2012).

(Dkt. 64 at 2-3.) At about the same time, Defendant served a privilege log with nineteen line items (the "Privilege Log"). (See Dkt. 73-2 at 4-5.) Every document listed on the Privilege Log is asserted to be a privileged attorney-client communication. (Id.) Thirteen are also asserted to be protected attorney work product. (Id.)

The district court agreed to defer merits briefing and ordered the parties to brief this privilege dispute. (Dkt. 69.) Consistent with that order, the parties filed simultaneous opening briefs (Dkt. 72 [Plaintiff]; Dkt. 73 [Defendant]) and simultaneous responsive briefs (Dkt. 75 [Plaintiff]; Dkt. 76 [Defendant]). On September 29, 2026, the magistrate judge conducted a

telephonic hearing. (Dkt. 84.)

For the reasons discussed below, Plaintiff's motion is granted in part and denied in part.

## II. RELIEF REQUESTED

Plaintiff moves to compel Defendant to do three things:

(1) "produce a privilege log compliant with Federal Rule of Civil Procedure 26(b)(5)";

(2) "produce the documents generated during the post-remand administration of Collier's claim" withheld on the basis of privilege because such documents are "subject to the fiduciary exception to the attorney-client privilege and work product doctrines";

(3) submit for in camera review "any document Lincoln contends remains privileged and outside the fiduciary exception." (Dkt. 72-1 at 6.)

As clarified by counsel at the hearing, the Court understands these requests to be:

Request 1: Serve an amended privilege log that (a) states the "document type, author and recipient roles" for all entries (Dkt. 72-1 at 7); (b) logs all relevant documents withheld on the basis of privilege, with relevancy determined by ERISA's definition of relevance, regardless of the documents' author or recipient; and (c) includes all relevant documents starting from the date of the remand order (August 7, 2023) instead of from the date of Collier's first remand submission to Lincoln (June 25, 2024) (id.).

Request 2: Produce all the documents listed on Privilege Log or any amended privilege log (or submit them for in camera review) because they are subject to the fiduciary exception to the attorney-client privilege and work product doctrines; and

Request 3: Serve a relevance/privilege log that identifies all documents generated by anyone in connection with the case during the remand period that Defendant "has unilaterally determined do not merit inclusion in a privilege log" because the documents are not relevant under ERISA and then submit those documents, too, for in camera review for relevancy and privilege.

In addition, during the pendency of the instant motion, the parties filed letter briefs for an informal discovery conference ("IDC") concerning whether Plaintiff could compel the deposition of Lincoln's Claim Resolution Specialist, Lindsay Mack. (Dkt. 79, 81, 82.) Ms. Mack provided a declaration in support of Lincoln's opposition, declaring that she "was responsible for handling the review of Vicki Collier's claim for long-term disability benefits following this Court's August 7, 2023 remand order." (Dkt. 73-1 at 34.) She further declared that she conducted an "independent review" and "did not rely on any advice of counsel in making that determination." (Id.) The Court declined to compel her deposition before a ruling on the instant privilege

motion, without prejudice to Plaintiff renewing the request later. (Dkt. 83.)

## III. LEGAL STANDARDS

### A. Relevance and Proportionality.

Rule 1 of the Federal Rules of Civil Procedure directs that all the rules, including the discovery rules, "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." "There probably is no provision in the federal rules that is more important than this mandate. It reflects the spirit in which the rules were conceived and written, and in which they should be, and by and large have been, interpreted ….." Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998) (citations omitted).

Under Federal Rule of Civil Procedure 26, a party may obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). When determining if the proportionality requirement has been met, courts must consider six factors, namely, the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Id.

Generally, the party who resists discovery has the burden to show that discovery should not be allowed and has the burden of clarifying, explaining, and supporting its objections. Nestle Foods Corp. v. Aetna Casualty & Surety Co., 135 F.R.D. 101, 104 (D. N.J. 1990).

### B. ERISA Document Production.

The broad discovery described above is circumscribed in ERISA cases because "the interest in both maintaining costs at a reasonable level and allowing for the prompt and fair resolution of claims, discovery [in ERISA cases] simply cannot be as broad and overreaching as in other types of cases." Waggener v. UNUM Life Ins. Co. of Am., 238 F. Supp. 2d 1179, 1185 (S.D. Cal. 2002). "Normally, no discovery is allowed in an action in federal court seeking review of a denial of benefits under an ERISA plan." Klein v. Northwestern Mut. Life Ins. Co., 806 F. Supp. 2d 1120, 1125 (S.D. Cal. 2011). This is because "a primary goal of ERISA [is] 'to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.'" Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan, 410 F.3d 1173, 1178 (9th Cir. 2005) (quoting Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1472 (9th Cir. 1993)).

Parties who want to conduct discovery outside the administrative record generally need to file a motion and persuade the district court that the discovery sought falls within an allowable exception. Whether to permit such discovery is in the district court's discretion. Burke v. Pitney Bowes Inc. Long-Term Disability Plan, 544 F.3d 1016, 1028 n.15 (9th Cir. 2008).

That said, ERISA's implementing regulations require that the claims file and other relevant documents be produced to claimants as the administrative record. When a plan administrator denies a claim, the claimant "is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information ***relevant*** to the claimant's claim for benefits." 29 C.F.R. § 2560.503(j)(3)(emphasis added). "Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section." Id. Paragraph (m)(8), in turn, defines "relevant" documents, records, and other information as follows:

> **(8)** A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information
> **(i)** Was relied upon in making the benefit determination;
> **(ii)** Was submitted, considered, or ***generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination***;
> **(iii)** Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or
> **(iv)** In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. § 2560.503(m)(8)(emphasis added) (hereafter, "(m)(8)").

## C. Privilege Logs and In Camera Review.

The Federal Rules of Civil Procedure require litigants who withhold "otherwise discoverable" information due to privilege to identify the items withheld on a privilege log, as follows:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> **(i)** expressly make the claim; and
> **(ii)** describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). Because irrelevant documents are not "otherwise discoverable," irrelevant documents do not need to be listed in a privilege log. Perez v. United States, No. 13cv1417-WQH-BGS, 2016 U.S. Dist. LEXIS 11036, at *4 (S.D. Cal. Jan. 29, 2016).

"The information in the privilege log must be sufficiently specific to allow a determination of whether each withheld document is or is not in fact privileged." Laub v. Horbaczewski, No. CV 17-6210-JAK-KS, 2020 U.S. Dist. LEXIS 275258, at *14 (C.D. Cal. Sep. 16, 2020). Typically, a privilege log "should provide the identity and capacity of all individuals who authored, sent, or received each allegedly privileged document, the document's date, a brief description of the document and its contents or subject matter sufficient to determine whether the privilege applies, and the precise privilege or protection asserted." Id.

Generally, courts may not review assertedly privileged documents in camera unless the party opposing the privilege shows a "factual basis sufficient to support a reasonable, good faith belief that in camera inspection may reveal evidence that information in the materials is not privileged." In Re Grand Jury Investigation, 974 F.2d 1068, 1075 (9th Cir. 1992). If such a showing is made, the decision whether to conduct an in camera review "rests within the discretion of the district court." Id. In exercising such discretion, courts consider factors including the amount of the material, the relevance of the material and the likelihood that review will reveal evidence refuting the claim of privilege. Id. at 1072-73.

**D. The Attorney-Client Communication Privilege.**

The attorney-client communication privilege is recognized as "perhaps the most sacred of all legally recognized privileges." United States v. Bauer, 132 F.3d 504, 510 (9th Cir. 1997). The privilege applies when: (1) legal advice is sought; (2) from a professional legal adviser in that capacity; and (3) the communications by the client relate to that purpose; and (4) are made in confidence. Id. Unless waived, the attorney-client privilege shields from disclosure communications between attorneys and their clients in order to promote full, candid communications between clients and their attorneys. See Upjohn Co. v. United States, 449 U.S. 383, 398 (1981). The attorney-client privilege is "narrowly and strictly construed." United States v. Gray, 876 F.2d 1411, 1415 (9th Cir. 1989), cert denied, 495 U.S. 930 (1990).

A party asserting the privilege has the burden of establishing all the elements of the privilege. In re Syncor ERISA Litigation, 229 F.R.D. 636, 644 (C.D. Cal. 2005) (internal citations omitted). In addition, "[a] party claiming the privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." United States v. Martin, 278 F.3d 988, 1000 (9th Cir. 2002) (internal citation omitted).

**E. The Fiduciary Exception.**

**1. Mett.**

The Ninth Circuit is one of several courts that recognize a "fiduciary exception" to the attorney-client communication privilege in the ERISA context. United States v Mett, 178 F.3d 1058, 1062 (9th Cir. 1999). In Mett, the Ninth Circuit held that when an employer is acting in

the capacity of an ERISA fiduciary, a "fiduciary exception" to the attorney-client privilege applies. Id. at 1063 (internal citations omitted). The Ninth Circuit explained that this result derives from two different analytical frameworks. Id. In one approach, the exception is grounded in the fact that an ERISA trustee has a legal duty to disclose to plan beneficiaries all information regarding plan administration, meaning the attorney-client privilege must therefore give way to ERISA legal principles. Id. (internal citations omitted). In the other approach, courts arrive at the same endpoint but by a different analytical route, instead reasoning that the exception applies because the trustee, when acting on behalf of the trust's beneficiaries, "is not the real client" to the extent that the trustee is not being personally served and therefore never was the holder of the privilege to begin with. Id. (internal citations omitted).

In Mett, after reviewing historical precedent, the Ninth Circuit described case law as "mark[ing] out two ends of a spectrum" for applying the fiduciary exception, as follows:

> On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact.

Id. at 1064.

As for the facts in that case, Mr. Mett founded Center Art Galleries ("CAG"), a retail art gallery. CAG established two pension benefit plans for its employees, both covered by ERISA. At all relevant times, Mett and CAG's vice-president, Mr. Wiseman served as trustees for both plans, while CAG served as the plan administrator. Id. at 1060. When CAG fell on hard times after Mett was convicted of felony art fraud, he and Wiseman, "withdrew approximately $ 1.6 million from the pension plans and deposited the funds into CAG's general operating accounts." Id. Both men were indicted and convicted of federal crimes based on the unauthorized pension plan withdrawals.

In appealing their convictions, they argued that the district court erroneously admitted into evidence memoranda sent to them by their then-counsel, Mr. Foley. The district court had relied on the "fiduciary exception" to overcome the claim of attorney-client privilege. Mr. Foley "wore many hats, serving at various times as counsel to Mett and Wiseman personally and in their capacities as ERISA plan trustees, to CAG as a corporation and in its role as plan administrator, and to the ERISA plans themselves." Id. at 1062. The memoranda at issue advised Mett and Wiseman of the potential criminal and civil consequences of the unauthorized withdrawals. Id. The Ninth Circuit concluded that these memoranda "ought to have been treated as privileged matter" because they concerned the trustees' "personal exposure to additional civil and criminal liabilities arising from the pension plan withdrawals" that had already occurred. Id. at 1065. The memoranda did not render advice "on a matter of plan administration" and were

not prepared "for the benefit of the plan or the beneficiaries." Id.

The Ninth Circuit conceded that these memoranda were "related to the administration of the plan in the broadest sense" but found this relationship was insufficient to invoke the fiduciary exception. Id. at 1065. The Ninth Circuit rejected such an "expansive" view of the exception for four reasons: (1) it would "swallow the entirety of the attorney-client privilege for ERISA trustees"; (2) it "unmoors the fiduciary exception from its justifying rationales," because a trustee seeking legal advice "for his own protection" is not acting on behalf of the trust's beneficiaries; (3) as a general rule, "hard cases" involving the attorney-client privilege "should be resolved in favor of the privilege, not in favor of disclosure" because an "uncertain" privilege is "little better than no privilege at all;" and (4) an uncertain attorney-client privilege would likely result in ERISA trustees shying away from seeking legal advice regarding the performance of their duties – a result that ultimately hurts beneficiaries. Id.

Rather than an expansive reach, the Ninth Circuit adopted an approach giving the fiduciary exception "a more modest reach: while the fiduciary exception does apply to advice on matters of plan administration, the attorney-client privilege reasserts itself as to any advice that a fiduciary obtains in an effort to protect herself from civil or criminal liability." Id. at 1066. This more modest approach means that "communication-by-communication analysis, while perhaps untidy, is crucial if the attorney-client privilege and the fiduciary exception are to coexist." Id. at 1065.

**2. Wildbur.**

The Mett Court cited Wildbur v. ARCO Chemical Co., 974 F.2d 631, 645 (5th Cir. 1992) for the premise that the fiduciary exception is "not applicable to counsel retained for purpose of defending the lawsuit in question." Id. at 1065.

In that case, an ARCO employee, Mr. Wildbur, sought an ERISA severance benefit, but, due to corporate restructuring, ARCO disputed that his employment had been terminated. Even after suing ARCO, Wildbur continued to "seek relief via the administrative review procedures provided by the plan." Wildbur, 974 F.2d at 634. In the course of the litigation, Wildbur was permitted to "depose Richard Anderson, an ARCO attorney, about the administration of the plans before September of 1988, when the lawsuit was filed," but the magistrate judge "quashed the deposition of ARCO's trial counsel, Howard Shapiro." Id. at 635. On appeal, Wildbur challenged these discovery rulings based on the fiduciary exception. Id. at 645.

In quashing the deposition subpoena to Attorney Shapiro, the magistrate judge reasoned that "there had never been a mutuality of interest that would create a fiduciary relationship between ARCO's trial counsel, Shapiro, and the plan beneficiaries because all of Shapiro's communications with the plan administrator were made for the purpose of defending the pending lawsuit and did not deal with plan administration." Id. Crucially, Plaintiff did not dispute this factual finding, so the Fifth Circuit affirmed the magistrate judge's ruling as to Shapiro.

As to Attorney Anderson, the magistrate judge only allowed discovery about communications before the lawsuit was filed, reasoning that once litigation began, "the mutuality of interests between the plaintiffs and Mr. Anderson, which is a prerequisite to the existence of the fiduciary exception to the attorney/client privilege, ceased to exist, as the interests of the administrator, the remaining beneficiaries, and the plan itself, and the interests of the plan-beneficiaries diverged at that point." Id. Therefore, into Anderson's communications with the plan administrator after the suit was filed were "protected by the attorney-client privilege and/or the work product doctrine." Id. at 645-46. The Fifth Circuit expressed no opinion about the scope of the attorney-client privilege/fiduciary exception but instead affirmed the magistrate judge's ruling based on the attorney work product doctrine – an issue Wildbur had failed to address in his briefs. Id. at 646.

As a result of these unique facts, Wildbur is not very helpful where the parties (1) dispute whether litigation counsel also provided legal advice about plan administration or (2) brief both the attorney-client privilege and attorney work product doctrine. Wildbur certainly does not support a bright-line rule that the fiduciary exception never applies to litigation counsel.

**3. Stephan.**

Getting back to the Ninth Circuit, the Ninth Circuit revisited the fiduciary exception to the attorney-client communications privilege in Stephan v. Unum Life Ins. Co. of Am., 697 F.3d 917 (9th Cir. 2012). In that case, an employee, Mr. Stephan, was covered by a disability insurance plan underwritten and administered by Unum. After Stephan became disabled, Unum calculated his monthly benefits based on his annual salary, but not his annual bonus. Among other issues, the Ninth Circuit held that the district court erred by finding certain internal memoranda between Unum's claims analyst and its in-house counsel were not discoverable. The Ninth Circuit reasoned that the fiduciary exception applied to these memoranda because, unlike the memoranda in Mett, "the disputed documents offer advice solely on how the Plan ought to be interpreted. They do not address any potential civil or criminal liability Unum might face, nor is there any indication that they were prepared with such liability in mind." Id. at 932. It did not matter that the disputed documents had been created "after Unum had received correspondence from Stephan's counsel" and Unum knew that Stephan might sue. Id. Rather, the Ninth Circuit held that "it is not until after the final determination — that is, after the final administrative appeal — that the interests of the Plan fiduciary and the beneficiary diverge" sufficiently to end the application of the fiduciary exception. Id. at 933. Because this case did not involve a remand, it did not address whether the fiduciary exception revives upon remand.

**F. The Attorney Work Product Doctrine.**

**1. Basic Requirements.**

"Because the attorney work product doctrine fosters interests different from the attorney-client privilege, it may be successfully invoked against a pension plan beneficiary even though

the attorney-client privilege is unavailable." Wildbur v. ARCO Chem. Co., 974 F.2d 631, 646 (5th Cir. 1992)

The work-product doctrine protects tangible materials prepared by an attorney or the attorney's agent in anticipation of litigation or for trial. Admiral Ins. Co. v. U.S. Dist. Ct., 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)). The work-product doctrine establishes a qualified immunity, rather than a privilege, and the qualification of the immunity is based on a showing of necessity or good cause. Id. at 1494. A central purpose of the work-product doctrine is to prevent one party from exploiting the other party's efforts to prepare for litigation. Id.

As codified in Federal Rule of Civil Procedure 26(b)(3), "documents and tangible things" prepared in anticipation of litigation or for trial may be discoverable where a party shows it "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i-ii). The party asserting work-product protection bears the burden of proving the doctrine applies. Id.

To qualify for work-product protection, documents must be: (1) prepared in anticipation of litigation or for trial; (2) by or for another party or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). Fed. R. Civ. P. 26(b)(3)(A). Work-product protection is waived when "the disclosure of an otherwise privileged document is made to a third party and that disclosure enables an adversary to gain access to the information." In re Syncor ERISA Litig., 229 F.R.D. 636, 645 (C.D. Cal. 2005).

**2. Dual-Purpose Documents.**

Where preparation for litigation or trial is the sole reason for creating the materials, such "single purpose" documents will be afforded work-product protections under Rule 26(b)(3) unless the protection is waived. United States v. Torf (In re Grand Jury Subpoena), 357 F.3d 900, 907 (2004). However, in some circumstances, documents may be prepared both in anticipation of litigation and for other purposes, in which case such documents are considered "dual purpose" documents. Id. The Ninth Circuit considered "whether protection under the work-product doctrine may be extended to such 'dual purpose' documents" in Torf. Id.

Torf considered whether documents prepared by an environmental investigator hired by counsel in an investigation concerning alleged violations of federal waste management laws both in anticipation of litigation with the government and in connection with statutory cleanup of the environmental sites were subject to work-product protection. Id. The magistrate judge quashed a grand jury subpoena seeking disclosure of the investigator's materials. Id. at 904. The District Judge reversed the magistrate judge's order and held Torf in contempt for refusing to produce the documents. Id. The Ninth Circuit reversed the District Court's order denying the motion to quash. Id.

In resolving whether to extend work-product protections to such "dual purpose" documents, the Ninth Circuit employed a "because of" standard. Id. That analysis, adopted by several other circuits, states that a document should be deemed prepared in anticipation for litigation and therefore eligible for work-product protections under Rule 26(b)(3) "if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." Id. (internal citation and quotation omitted.) The Ninth Circuit emphasized:

> The "because of" standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation."

Id. at 908 (citing United States v. Adlman, 134 F.3d 1194, 1195 (2d Cir. 1998)). The Ninth Circuit further noted that the "because of" analysis involves more than a consideration of one particular motive for the document's creation:

> The question of entitlement to work product protection cannot be decided simply by looking at one motive that contributed to a document's preparation. The circumstances surrounding the document's preparation must also be considered. … [T]he nature of the document and the factual situation of the particular case are key to a determination of whether work product protection applies. When there is a true independent purpose for creating a document, work product protection is less likely, but when two purposes are profoundly interconnected, the analysis is more complicated.

Id. (internal citations and quotations omitted). Applying these principles to the investigator's documents at issue, the Ninth Circuit concluded that "the withheld documents, notwithstanding their dual purpose character, fall within the ambit of the work-product doctrine." Id. at 910. The Ninth Circuit explained that "[t]he documents are entitled to work product protection because, taking into account the facts surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as whole." Id.

**G. The Application of the Fiduciary Exception to a Post-Remand Claim Determination.**

Just a few cases have addressed if/when the fiduciary exception applies after an ERISA case is remanded for a new benefits determination.

**1. Moore**

While not technically a remand case, in Moore v. Metro. Life Ins. Co., 799 F. Supp. 2d

1290, 1296 (M.D. Ala. 2011) the insurer "conducted a further administrative review" about two months after suit was filed. The court ordered production of four documents after in camera review, reasoning "that even after litigation commenced, Met Life was making a determination about Moore's entitlement to benefits" which was "a fiduciary act." Id. at 1297. The documents withheld "concerned with the benefit determination" and not "the fiduciary in any personal capacity." Id. As a result, the fiduciary exception applied, requiring the documents to be produced. Id.

**2. Whinery.**

In Whinery v. Life Ins. Co. of N. Am. ("LINA"), No. CV 10-9312 PA-AGRx, 2012 U.S. Dist. LEXIS 160667 (C.D. Cal. Nov. 7, 2012), the plaintiff, Ms. Whinery, sued seeking accidental death benefits. The district court conducted a bench trial and remanded the case so that LINA could apply a recent definition of "accident" adopted by the Ninth Circuit. On remand, LINA again denied Whinery's claim and filed a supplemental administrative record ("SAR"). Whinery moved to augment the SAR, arguing that "LINA had not included in the [SAR] communications between LINA's legal department and outside counsel and those handling [her] claim on remand and appeal." Id. at *3. Whinery argued that such communications were subject to the fiduciary exception and discoverable.

To assess the merit of Whinery's assertions, the district court ordered LINA to file "what it considers to be communications subject to the attorney-client privilege under seal and in camera." Id. The district court reviewed the documents and concluded that they should not be provided to Whinery or made part of the [SAR]." Id. at *4. The district court reasoned that "[Whinery] had already commenced litigation and this action was technically still pending during the remand," so "the fiduciary exception does not apply." Id. The Court also reasoned that since "Stephan was not decided until LINA had already issued its decision denying [Whinery's] appeal and the matter was back on this Court's active calendar, … LINA had little notice that the communications between its lawyers and those handling the claim might be discoverable." Id.

**3. Sizemore.**

Sizemore v. Pac. Gas & Elec. Ret. Plan, 952 F. Supp. 2d 894 (N.D. Cal. 2013) did not involve a remand. Rather it involved a claims determination followed by two appeals. The first appeal was denied in December 2010, and the second appeal was not filed until May 2011. Id. at 901. The district court ruled that by agreeing to review the second appeal, the plan administrators had "voluntarily stepped back into their role as fiduciaries during the pendency of that second appeal." Id. The district court concluded that the application of the fiduciary exception (1) ended upon the denial of the first appeal but (2) was revived when the second appeal was filed as to documents generated on or after that date. Id. After an in camera review, the court ordered produced a small number of disputed documents that were "related to plan administration and … relevant to plaintiff's allegations." Id.

**4. Jones.**

In Jones v. LINA, the Ninth Circuit remanded the case twice. See Jones v. Metro. Life Ins. Co., 456 Fed. App'x 647 (9th Cir. 2011) and Jones v. Metro. Life Ins. Co., 555 Fed. Appx. 733 (9th Cir. Cal., 2014). After the second remand, the parties had a discovery dispute over the production of "certain attorney communications and documents which plaintiff insists are relevant to her claim on the theory that defendants' attorneys (in-house or litigation counsel) either made the underlying substantive decision to reject plaintiff's appeal regarding the computation of her benefits, or provided advice regarding that decision." Jones v. Life Ins. Co. of N. Am., No. 08-cv-03971-RMW, 2015 U.S. Dist. LEXIS 134945, at *3 (N.D. Cal. Oct. 2, 2015). The district court concluded, "There is no doubt that plaintiff is entitled to discovery of documents that relate to matters of plan administration, regardless of whether the documents may otherwise be protected by the attorney-client privilege." Id. at *5. Documents subject to disclosure would be "memoranda, communications with, and advice from attorneys to LINA that relate to plan interpretation and the computation of plaintiff's benefits." Id. at *6. Documents not subject to disclosure, however, would be documents which do "not render[] advice on a matter of plan administration, but [are] plainly defensive . . . and aimed at advising the trustees [regarding their liability in this case]." Id.

The parties disputed how many documents fell on the two sides of this divide. Plaintiff alleged that litigation counsel "ran the administrative process of computing her benefits" and came up with the offset calculation that she disputed. Id. at *8. The district court found that Plaintiff's "evidence in support of these positions is slim, and amounts primarily to plaintiff's counsel's assertion that he was told that litigation counsel were making the determination on remand in 2012, an assertion that is flatly contradicted by the sworn declaration of LINA appeal specialist Melissa Graham." Id. Nevertheless, due to this dispute, the district court ordered that LINA produce for in camera review for potential inclusion in the administrative record all "documents that relate to LINA's remand determination and which were created prior to the date of the final determination on plaintiff's ERISA claim, June 20, 2012." Id. at *6-7.

**5. Romanchuk I and II.**

In Romanchuk v. Bd. of Trs. of the S. Cal. United Food & Commer. Workers Unions & Food (Romanchuk I), No. 2:15-cv-08180-AB-KSx, 2022 U.S. Dist. LEXIS 137569 (C.D. Cal. June 8, 2022), Mr. Romanchuk sought benefits from an employee benefit plan. After some period of litigation, the case was remanded following a Ninth Circuit mandate. Id. at *2. On remand, Romanchuk submitted two claims, one of which the plan trustees granted and one of which they denied. Id. at *3. Upon receipt of the denial, he requested information about how the denial decision was reached, including seven categories of documents. Id. at *5-6. Although Defendants produced some of the requested documents, they did not produce them all, prompting Romanchuk to seek a court order compelling production. Id. at *3.

The Board of Trustees had reached the denial decision at an August 6, 2021 meeting. Per

the meeting minutes (which were produced), counsel, who had attended the meeting, heard the deliberations, and taken notes, was directed to prepare a written decision reflecting the Board's determination. Id. at *6-7. Among other things, Romanchuk sought (1) counsel's notes from the meeting; (2) all drafts counsel prepared of the denial decision; and (3) all drafts of the meeting minutes. Id. at *9-10. He argued that these documents were (1) relevant under ERISA paragraph (m)(8) because they were "generated in the course of making" the denial determination and (2) not privileged because of the fiduciary exception. Id.

The district court first addressed relevance. The district court determined that even though the requested documents were not generated ***by the Board***, which was the decision-maker, they were still generated in the course of making the denial determination and thus relevant under (m)(8). Id. at *19.

Next, the district court considered whether the fiduciary exception barred application of the attorney-client privilege. The court acknowledged that there was a "sufficient degree of adversity" between the parties because litigation had been pending for years. Id. at *26. This divergence of interests, alone, was not enough to preclude application of the fiduciary exception. Instead, the court found relevant "that none of the Plan fiduciaries are named as individual Defendants in the ongoing litigation" and benefits were "payable from the assets of the Plan." Id. These facts were sufficient to reject Defendants' argument that the documents were "produced in part to protect the Trustees against personal civil exposure," like in Mett. Id. at *27. The court concluded that the requested documents were "not protected by the attorney-client privilege." Id.

Finally, the district court considered the application of the work product doctrine. The court found that all of the requested documents, even though they pertained to claim denial, had been "produced in anticipation of litigation, given that the current administrative process only began after years of litigation and on remand from the Ninth Circuit." Id. at *34.

Regarding drafts of the denial decision, the court noted that the denial was part of the Board's ERISA obligations, but given that the denial would "likely be a central point of dispute in any future litigation, it would have been important for [the denial] to be drafted by someone who would understand the legal implications of each phrase in the document." Id. at *35. The court concluded that since a basis to withdraw work product protection was unclear and Romanchuk already had access to the decision itself, Plaintiff was not entitled to receive all drafts of the denial decision. Id. at *35-36.

Regarding the attorney's notes from the meeting, drafts of the meeting minutes, and communications related to the denial, the court required the defendants to log them so that Plaintiff could later challenge the nondisclosure of specific log entries. Id. at *37-39.

The defendants ultimately served privilege logs with approximately 850 entries tied to particular request for production ("RFPs") served by Romanchuk. See Romanchuk v. Bd. of Trs.

of the S. Cal. United Food & Commercial Workers Unions & Food Emp'rs Joint Pension Tr. Fund, No. CV 15-8180-AB-KSx, 2024 U.S. Dist. LEXIS 93542, at *35-36 (C.D. Cal. May 24, 2024) (Romanchuck II). In Romanchuck II, the magistrate judge wrestled with the motion to compel production of multiple entries on the defendants' logs. Without repeating the ruling as to each RFP, the gist was (1) even documents directly related to claim denial were "dual purpose" documents that, in the context of ongoing litigation, had not lost potential work product protection because of ERISA; (2) documents related to claim denial and exchanged between defense counsel but never shared with the client were entitled to work product protection (id. at *37) but (3) documents shared with clients were not (id. at *40). The magistrate judge found RFPs seeking "all documents" on a topic disproportionate to the needs of the case if a key document on the same topic had already been produced. Id. at *45.

## IV. DISCUSSION

The Court discusses the requests out of order for better logical flow.

### A. Request (2).

Plaintiff asks the Court to decide that neither the attorney-client communication privilege nor the attorney work product doctrine shield otherwise relevant documents from disclosure after a mid-litigation remand.

#### 1. Summary of the Parties' Arguments.

Plaintiff argues that, upon remand, the parties' positions "reset" so that, just like during the initial claim determination, the fiduciary exception applies. Essentially, Plaintiff argues that she should have the same access to documents during a pre-litigation claim determination as a mid-litigation claim determination. Plaintiff argues that since the plan administrator is in the same position in both situations (i.e., a fiduciary for the claimant), the application of the fiduciary exception should be the same. If the plan administrator is not acting as a fiduciary even mid-litigation after a remand, then the claimant receives something less on remand than the "full and fair" review required by ERISA. (Dkt. 72-1 at 7.) Plaintiff argues that if the fiduciary exception bars application of the attorney-client privilege, then it should also bar protection under the work product doctrine. (Id. at 14.)

Defendant argues that once the parties' interests diverge sufficiently to destroy the fiduciary relationship (which happens, at the latest, when litigation begins), the fiduciary exception ends and cannot be revived. (Dkt. 73 at 5.) Alternatively, even if the fiduciary exception is revived, under Mett, it does not apply to any of the remand-period documents in this case because "Lincoln was simultaneously processing a supplemental claim and defending against fee liability." (Id. at 11-12.) Defendant contends that, like in Romanchuck I and II, the attorney-client privilege and work product doctrine should be treated differently, and that the work product doctrine protects any documents that would not have been created but for the

ongoing litigation. (Id. at 12-13.) Finally, Defendant argues that if this is a "hard" case, then hard cases should be resolved in favor of the privilege, not in favor of disclosure, again citing Mett. (Id. at 13-14.)

**2. Analysis.**

a. Potential fee liability does not defeat the fiduciary exception.

Lincoln's potential fee liability does not make this case analogous to Mett. As Plaintiff points out, unlike in Mett, neither Ms. Mack nor any other individual working at Lincoln has potential personal civil or criminal liability, and none is alleged. (Dkt. 75 at 10.) If potential fee liability (which exists whenever a claim is wrongfully denied) were enough to bring a case within the Mett exception, then this would effectively nullify the fiduciary exception.

b. The fiduciary exception revives upon remand.

Under ERISA, every employee benefit plan must (1) provide written notice of the denial of a claim, including the reasons for the denial; and (2) "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. The usual remedy for a violation of § 1133 is "to remand to the plan administrator so the claimant gets the benefit of a full and fair review." Chuck v. Hewlett Packard Co., 455 F.3d 1026, 1035 (9th Cir. 2006).

It is well established that the trustees and administrators of an ERISA plan who exercise discretion to grant or deny claims are fiduciaries. See 29 U.S.C. § 1002(21)(A); 29 C.F.R. § 2509.75-8. The fiduciary status applies not only to the trustee (usually a corporate entity) but also to the agents by which the corporation must act. Hashimoto v. Bank of Haw., 999 F.2d 408, 411 (9th Cir. 1993).

The Court rejects a bright-line rule that once litigation begins (i.e., once the parties' interests sufficient diverge), then the fiduciary exception ends forever. None of the cases summarized above so hold. Rather, if on remand the plan administrator must again act as a fiduciary, then the fiduciary exception should be revived as to attorneys giving legal advice about plan administration. A contrary rule would free the plan administrators to act as litigation adversaries even while considering a remanded claim, which would defeat the purpose of remand.

The scope of the revived fiduciary exception could reach communications involving Lincoln staff because Lincoln is the plan administrator. If Litigation Counsel (meaning attorneys or support staff at Maynard Nexsen or Ogletree Deakins Nash Smoak and Stewart PC) communicated with anyone at Lincoln about how to evaluate Plaintiff's claim on remand, then the fiduciary exception would likely apply to such communications. If, however, Litigation Counsel communicated with Lincoln about the litigations rather than plan administration (like

communications about this privilege dispute, for example, and the preparation of Ms. Mack's declaration) then there would be no reason to extend the fiduciary exception to such communications.

- Even when the fiduciary exception applies, work product protection may also exist.

The attorney-client communication privilege and the work product doctrine protect different interests. Consistent with Romanchuck I and II, even when the fiduciary exception applies, the work product doctrine (and other discovery doctrines, like proportionality and relevance) may tip the scales against disclosure when a case involves consideration of claim upon remand following years of litigation.

**B. Request (1)(a).**

Plaintiff seeks an order compelling Defendant to serve an amended privilege log that states the "document type, author, and recipient roles" for all entries. (Dkt. 72-1 at 7.)

The current privilege log does not state the document type, e.g., email, email attachment/PDF, letter, spreadsheet, etc. (Dkt. 72-3 at 4.) It identifies the sender in a "from" column, but it leaves open the possibility that the "author" might be someone other than the "sender." (Id.) When every person is first listed in the "from" or "to" columns, their role as "Legal Dept." or "Outside Counsel" is identified – except for "Sprague." (Id.)

Because this Order directs Defendant to serve an amended privilege log for other reasons discussed herein, and because the information requested is the kind typically included in privilege logs and not so burdensome as to be disproportionate to the needs of the case, Defendant's amended privilege log should (1) include a column identifying the document type; (2) identify the role of each person in the "from" or "to" columns; and (3) identify any documents for which the person is "from" column is not the author, and for those documents, identify the author.

Furthermore, if a document is an email, the amended log should indicate (1) whether the logged email has any attachments and, if so (2) whether each attachment has been produced or appears on another line of the log.

The amended log should also add a numbered column (1, 2, 3, etc.) so that the parties can refer to logged items by line number when they meet and confer.

**C. Request (1)(b).**

Plaintiff seeks an order compelling Defendant to serve an amended privilege log that logs all documents that are relevant under (m)(8) but withheld on the basis of privilege.

This request requires the Court to address (1) whether certain kinds of communications

can be excluded based on the author/recipient and, more broadly (2) what kinds of documents are "relevant" in this context.

**1. Authors and Recipients.**

Defendant's Privilege Log does appear to have excluded certain documents categorically. For example, the Privilege Log includes an 8/22/24 communication between in-house counsel and Litigation Counsel about a "query" in-house counsel received from Ms. Mack. (Dkt. 72-3.) It is unclear whether Ms. Mack's query to in-house counsel was not logged because it was verbal or for some other categorical reason. Similarly, the log does not include any internal communications between Litigation Counsel.

The Court will not require Defendant to log all internal communications between Litigation Counsel. Those documents, by definition, were never seen by anyone at Lincoln and could not have influenced the claim administration process. While they could theoretically be "relevant" under (m)(8), given that Litigation Counsel's primary role is defending the litigation, the best way to balance (1) keeping discovery proportionate to the needs of the case; (2) providing Plaintiff with evidence relevant to her ERISA claim; and (3) acknowledging the reality of ongoing litigation during a remand, such documents would almost certainly be protected from disclosure by the attorney work product doctrine, as discussed in Romanchuk I and II, even if the fiduciary exception applied. It would be busy-work to log them.

If, however, a document is "relevant" as discussed below, and anyone at Lincoln was an author, sender, or recipient (including in-house counsel), then Defendant must include it in an amended privilege log.

**2. Relevance.**

Again, (m)(8) defines as "relevant" documents "generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination." 29 C.F.R. § 2560.503(m)(8).

The Court does not interpret this as a merely temporal limit. In other words, if Lincoln's in-house counsel attended a meeting about making a determination on Plaintiff's claim and during that meeting sketched an outline for a brief in a different case, the outline would not be "relevant." While the outline might technically have been generated in the course of making a determination of Plaintiff's claim, it was not part of the process of determining Plaintiff's claim. Stated slightly differently, the fact that a benefit determination needed to be made was not the reason counsel created the hypothetical outline. The outline does not relate to the claim determination process or the reasons Lincoln reached a particular decision.

The preceding paragraph reads a subject matter limitation into (m)(8). The parties disagree over the scope of such a subject matter limitation. Plaintiff argues that anything related

to this case likely falls within the relevant subject matter, since this case is about the denial of her benefits. Consistent with that position, at the hearing, Plaintiff's counsel argued that Defendant should log all litigation-related documents communicated between outside counsel and Lincoln, even bills for legal fees.

The Court disagrees that "anything related to the case" is the right subject matter scope to determine relevancy, seeing at least a possibility that litigation-related documents could exist with no tendency to inform the benefits determination process. Such documents would include things like (1) bills and correspondence about paying bills; (2) client-relationship social communications (like introducing a new attorney at one of Litigation Counsel's firms); (3) transmittal emails (without additional commentary) that merely send documents received from the district court or from opposing counsel to the client; and (4) drafts of anticipated court filings unrelated to reasons for denying the claim (like status reports or filings in this privilege dispute) sent for client input. Such documents can be excluded from the amended privilege log as irrelevant.

On the other hand, any communications Litigation Counsel sent to Lincoln about the denial or the process for determining Plaintiff's claim should be logged to facilitate in camera review. Such communications could include legal advice about (1) the potential impact of a denial on the litigation (including the litigation's schedule or budget); (2) how to decide the claim (including what consultants or medical experts to use or what evidence to consider closely); and (3) the wording of the denial decision (including drafts and redlines).

Lincoln argues that "communications between Lincoln's in-house Legal Department and the litigation counsel defending this action … could not have 'impacted the benefit claim' under any standard." (Dkt. 76 at 12.) But that is not necessarily true of ***all*** such communications. It remains possible that litigation counsel sent a memo to one of Lincoln's in-house attorneys who then verbally told Ms. Mack the memo's contents. In such a scenario, the communication would be directly relevant to the claim determination process and should be logged if withheld on the basis of privilege.

**D. <u>Request (1)(c).</u>**

Lincoln argues that documents created between the date of the Court's remand order (August 7, 2023) and the date of Collier's first remand submission to Lincoln (June 25, 2024) cannot have been "generated in the course of making the benefit determination," because Lincoln was not engaged in making a benefit determination until it received Collier's first remand submission. (Dkt. 76 at 19-20.)

But as discussed above, relevance under (m)(8) is not judged exclusively by the timing of the document's creation. If, anticipating Plaintiff's post-remand submission, Litigation Counsel sent Lincoln a memo detailing how/why the claim should be denied, that hypothetical document would be relevant. If such a document exists and was withheld as privileged, it should be logged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL



to facilitate in camera review.

For these reasons, Defendant may not categorically exclude from the amended privilege log documents dated August 7, 2023, or later just because Collier's first remand submission arrived on June 24, 2024. Defendant can, however, categorically exclude documents generated on or before August 6, 2023, when the parties were litigation adversaries and no remand had yet been ordered.

**E. <u>Request (3).</u>**

There is no authority for requiring Defendant to prepare a relevance/privilege log. District courts routinely rely on counsel to distinguish between relevant and irrelevant documents when responding to discovery. The Court declines to order an amended privilege log more expansive than that described above.

**F. <u>The Deposition of Lindsay Mack.</u>**

Generally, parties in ERISA litigation do not depose the claims handler about his or her decision-making process. If Plaintiff believes that facts in this case justify doing so, she will need to bring a motion seeking leave to pursue that discovery. Such a motion should be filed before the district judge (complying with Local Rule 7-3) rather than the magistrate judge (following Local Rule 37-1) because whether to allow discovery will affect the case schedule. The district judge may or may not refer the motion to the magistrate judge. Any such motion would need to (1) describe the discovery sought; (2) provide reasons justifying conducting such discovery that are not true in every ERISA case; and (3) address why the discovery is proportionate to the needs of the case.

## V. CONCLUSION

(1) By ***October 30, 2026***, Defendant shall serve an amended privilege log – although this deadline shall be stayed if either party appeals this order to the district judge under Rule 72. The amended privilege log will include all relevant documents withheld on the basis of privilege EXCEPT documents internal to Litigation Counsel (as discussed in Section IV.C above).

(2) The amended privilege log will have the contents described in Sections IV.B and D above.

(3) Upon Plaintiff's receipt of the amended privilege log, the parties shall promptly meet and confer. Plaintiff shall notify Defendant if there are any logged documents for which Plaintiff no longer seeks in camera review.

(4) To facilitate in camera review, by ***November 16, 2026***, Defendant shall deliver to the magistrate judge a binder containing a paper copy of each logged document (omitting but identifying any duplicates and any documents for which Plaintiff no longer seeks in camera

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL



review) with tabbed numbers showing how each document in the binder corresponds to the amended privilege log. The set of paper copies should have contiguous page numbers (like BATES numbers) so that the Court can refer to specific pages, if needed.

(5) Defendant shall also email to the magistrate judge's chambers a version of the amended privilege log that contains a blank column where a ruling can be made as to whether each document is properly withheld or must be disclosed.

Initials of Deputy Clerk jd